**MKRTCHYAN LAW**
Narine Mkrtchyan, Esq. (SBN 243269)
655 N. Central Ave, Suite 1700
Glendale, CA 91203
Telephone No. (818) 388-7022
Web:  www.narinelaw.com
Email: narine57@gmail.com

Attorney for Edmond Babakhanlou

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDMOND BABAKHANLOU,<br><br>Plaintiff,<br><br>vs.<br><br><br>LOS ANGELES COUNTY, LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, DOES 1-25,<br><br>Defendants. | Case No. 2:23-CV-08682-MWC-JPRx<br><br>**HONORABLE  MICHELLE WILLIAMS COURT**<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION IN LIMINE #1 TO EXCLUDE PLAINTIFF'S EXPERT LAMBERT**<br><br>**Pre-trial: February 6, 2026**<br>**Trial: March 2, 2026** |

TO THE HONORABLE COURT:

Plaintiff hereby submits his opposition to defendants Motion in Limine #1 on the following grounds:

1. Defendants failed to conduct discovery, or schedule deposition of expert Lambert when the Expert Discovery Cut-off was extended per their request to address any questions they might have had to this or other experts of Plaintiff;

1

2. In effort to make up for the loss, they demanded Plaintiff to produce his experts on the threshold of trial long after Expert Discovery closed;

3. Now they are attempting to exclude this expert from testimony, in effort to cover up for their lack of diligence after Court denied their request to extend deadlines;

4. Defendants have not identified any legal authority that in a federal civil rights action pertaining to denial of medical care and reasonable accommodations, the expert has to be licensed in a particular state where the action occurred;

5. Nor have defendants been accurate about the qualifications of Ms. Lambert, who is superbly qualified to render opinions in this case, has previously testified in California, has decades of experience in correctional health care, management and administration;

6. Ms. Lambert is permitted to testify about the standard of correctional care provided to Plaintiff based on her review of the materials in this case.

DATED:    January 19, 2026

**MKRTCHYAN LAW**

By: _____/s/Narine Mkrtchyan_____

**NARINE MKRTCHYAN**

Attorney for Plaintiff Edmond Babakhanlou

2

## I. DEFENDANTS HAVE NO GROUNDS TO EXCLUDE EXPERT TESTIMONY WHEN THEY DID NOT MAKE ANY EFFORT TO CONDUCT DISCOVERY

This case had a long history in discovery. Court is aware of this history, as defendants have most recently sought an extension of the discovery deadlines to conduct expert discovery and another session of Plaintiff's deposition when they sat idle during the discovery period, that they sought extensions multiple times. See Docket History. Other than the one deposition of Plaintiff on March 31, 2025, the defendants failed to notice deposition of any other Plaintiff's witnesses, any of his expert witnesses, nor did they file a single motion to compel. Meanwhile, Plaintiff filed multiple discovery motions and ex parte applications, conducted 9-10 depositions of defendants against all odds, when defense counsel were refusing to produce witnesses and Magistrate was not making requisite orders for production of witnesses. Plaintiff had to issue dozens of subpoenas to conduct depositions that were actively obstructed by their counsel. The same holds for trial. Defense counsel refused to cooperate meaningfully in pre-trial document preparation, refused to timely meet and confer beginning in November 2025, did not agree to produce witnesses for trial, necessitating Plaintiff to go through the uncooperative LASD administration at various locations in LA County to serve subpoenas for his trial witnesses and defendants. Defendants with their counsel have actively worked to deny Plaintiff his rights to jury trial, by continuously seeking delay of trial dates with no attempt to resolve the case to date. Plaintiff will seek further court orders to sanction these defense counsel for bad faith conduct in litigation and evasion of subpoenas by their clients. At some point the Court has to put a stop to this abuse.

When they neglected to depose Plaintiff's correctional expert Lambert within the Expert DCO, now they are asking this Court to exclude her testimony on various bogus grounds.

**A. Expert Lambert is Eminently Qualified to Render Opinions**

Plaintiff has articulated the parameters under FRE 702 for expert testimony in his MIL #2 and will not repeat them in the interest of judicial economy. Indeed, it is their expert(s) who are attempting to testify to highly speculative opinions hoping it misleads the jury. See **Doc**. **173** This is not a medical malpractice or professional negligence case that is strictly limited to California standards of care. Plaintiff's claims revolve around the *constitutional* denial of medical care and failure to accommodate his disabilities and/or special needs in jail. To that end, Plaintiff has retained two expert witnesses to provide opinions, his treating provider Dr. Mike Neskovic, and Ms. Lambert, who both provided reports.

For Plaintiff's Eighth Amendment claim, on denial of medical care, it is "well settled that prison officials violate the Constitution when they choose a course of treatment that is *medically unacceptable* under all of the circumstances." *Gordon v. Cty. of Orange*, 6 F.4th 961, 970 (9th Cir. 2021) (quotations omitted). See **Pl. Memorandum of Contentions of Fact and Law.** Plaintiff's medical condition of diabetes required the County to follow the specialized procedure for his care. They had established policies to that end guiding deputies, nurses and physicians on duty. These are national standards governed by the American Diabetes Association, providing guidance to detention facilities how to treat diabetic patients. The constitutional limits to correctional health care are nationally recognized, the same as use of force policies by police agencies are standardized. Defendants have not cited any legal authority that requires Ms. Lambert to be a licensed health care professional, nurse or medical doctor in California, to render opinions about correctional health care standards in this federal civil rights action.

4

Nor can they cite any legal authority for the proposition that an expert witness has to be licensed in the state where the incident occurred to render opinions in a case like this. Defense counsel have demonstrated complete disregard of the law applicable to this case even in their Memorandum of Contentions and proposed jury instructions that will be filed with Court with Plaintiff's objections.

Expert Johnnie Lambert's CV was attached to her compliant Rule 26 report, where she listed her impressive credentials. See **Exhibit A, p. 9**. Her updated list of testimony is further attached herein as **Exhibit B**. Her qualifications are superior over defense expert Paul Adler who has not done actual health care for years devoting his time solely to consulting. She has extensive background in both correctional health care and consulting, has 50 years of experience as a registered nurse, is a certified Correctional Health Care Professional (Advanced) by a member of the National Commission on Correctional Health Care, has worked for many years in policy accreditation for medical providers that will be testifying in this case. She is a member of the American Correctional Nurses Association and the American Nurses Association. She is a certified health care risk manager. She has deep knowledge of California's and national correctional health standards, Title 15 regulations. She was qualified to testify as expert in other California cases. See **Exhibit A, B**. Not only did she provide correctional care _hands-on_ for many years, but she wrote policies and procedures, training materials for nurses and health care providers throughout the nation's jails. She worked in correctional administration and management in various jails in Virginia, Nevada, Florida, Tennessee, Missouri, South Carolina.

**B.  Expert Lambert's Opinions are Highly Probative of Issues**

Defense theory of the case, is that the Plaintiff refused medical care and that the medical providers in jail gave appropriate medical care in light of his refusals, and that his infection was a result of his drug use. They are attacking the

5

knowledge prong of 'deliberate indifference' based on refusals and claim Plaintiff received proper medical care, treating this case as medical malpractice. Ms. Lambert has effectively rebutted this theory in her damaging report, where she detailed her opinions and bases thereof. She reviewed all the pertinent materials in this case, including depositions of these defendants and surmised, the volume of refusals prevalent predominantly at 8000 floor, the diabetic housing, indicated serious non-compliance with policy and procedure and basic standard of care. Therefore, her opinions based on medical records review rebut the premise the Plaintiff refused care because there were  minimal refusals in other housing locations where Plaintiff was transferred after hospitalization and *zero* refusals at the hospital. The 8000 floor with volumes of refusals is where Plaintiff was continuously housed prior to his hospitalization with sepsis in December 2022. Therefore, his deterioration was directly attributable to the failure to provide medical care evident from volumes of <u>pre-typed</u> refusal forms. Plaintiff will testify he did not refuse care. Since nurses were the first in line to provide medical care to Plaintiff, her opinions were focused heavily on nurses and the volume of refusals. She surmised based on medical records, and their deposition testimony, they failed in their duties and did not fulfill the policies and procedure. Merely because she did not name each of them in her report, is of no significance, because based on her report a reasonable inference is drawn she is referencing the nurse defendants and other providers at 8000 floor. She also provided detailed opinions about the deficiencies noted in Plaintiff' medical care, lack of treatment plan, the discrepancies and gaps in the medical records, and failure by provider/physician Dr. Benor to monitor Plaintiff's care and supervise nurses. Plaintiff's expert opinions were then used in amending the Fourth Amended Complaint, where she has been quoted heavily about each and every provider's involvement and deficiency in Plaintiff's care. Expert Rule 26 report is only required to provide a

summary of opinions and bases thereof. See **Pl. MIL #2 on Rule 26 requirements**. Ms. Lambert did not have to detail names of each defendant who failed to follow procedure or standard of care, since Plaintiff's complaint listed multiple defendants initially and there are 100 more providers listed in Plaintiff's medical records. Had defendants had any interest in deposing her about her opinions about the particular nurse/defendant or particular date of medical care, they should have done so within the DCO. If they have failed to conduct discovery as a result of lack of diligence, that is not good cause to exclude an expert opinion.

Merely because, Ms. Lambert's report strikes at the very heart of defense theory, does not make it excludable as 'prejudicial' under FRE 403. The standard of exclusion is '*unfair prejudice*'. Evidence is relevant, even if it is redundant or cumulative. See *Boyd v. City & Cty. of San Francisco*, 576 F.3d 938, 943 (9th Cir. 2009) The standard of excluding evidence is whether the prejudicial effect outweighs any probative value. *Garcia v. Cty. of Riverside* (C.D. Cal. June 7, 2019, No. CV 5:18-00839 SJO (ASx)) 2019 U.S.Dist.LEXIS 167582, at *10.)

"Unfair prejudice" means "undue tendency to suggest decision on an improper basis . . ." *U. S. v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000). Deliberate indifference focuses on how the facility officials and health-care providers intentionally disregarded an inmate's serious medical/mental health need, violating his constitutional rights. *Castro v. County of Los Angeles*, 833 F.3d. 1060 (9th Cir. 2016); Ninth Cir. Model Jury inst. 9.30. See also *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018) ("we hold that claims for violations of the right to adequate medical care 'brought by pretrial detainees against individual defendants under the Fourteenth Amendment' must be evaluated under an objective deliberate indifference standard") (extending Castro); *Sandoval v. Cnty. of San Diego,* 985 F.3d 657 (9th Cir. 2021) (applying Gordon to nurses' alleged failure to provide proper care to pretrial detainee). Delay or failure to

timely provide medical care constitutes deliberate indifference regardless of conflicting administrative concerns. *Jett v. Penner*, 439 F.3d 1091, 1096-98 (9th Cir. 2006)

In this case, clearly Ms. Lambert's opinions are highly probative of the issues on the standard of care provided to Plaintiff, experts nationwide have testified to the same in hundreds of similar cases, under FRE 702. She has provided a compliant Rule 26 report, where she listed all materials she reviewed and bases thereof. This is unlike defense expert Paul Adler who has not even reviewed all materials in this case, and has provided opinions based on his perfunctory and self-serving review of Plaintiff's medical records. See **Pl. MIL #2**.

Expert testimony is admissible as long as it provides sufficient data and bases thereof and utilizes reliable methodology. Expert Lambert has detailed the reasons and bases thereof of her opinions in her report that defendants cannot attack on any solid ground. It is their expert(s) and providers who are expected to take the stand and offer wild speculations about causes of Plaintiff's infections with no reliable data. Court should act as a gatekeeper in excluding highly speculative assertions with no basis. "[N]othing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997). Indeed, Daubert made clear that to be admissible under Rule 702, an expert's opinion "must be supported by appropriate validation" and rest on "more than subjective belief or unsupported speculation." 509 U.S. at 590, 113 S.Ct. 2786. Thus, in assessing whether the expert opinion has the requisite validation for purposes of Rule 702, a court may conclude that it does not because, given the record at hand, "there is simply too great an analytical gap between the data and the opinion proffered."

8

*Joiner*, 522 U.S. at 146, 118 S.Ct. 512. *Rodriguez v. Hosp. San Cristobal, Inc.*, 91 F.4th 59, 70–71 (1st Cir. 2024)

### C. Expert Lambert is Permitted to Testify About Correctional Standard of Care

Although experts may testify to standards of care, they cannot use the judicially defined term and legal conclusions. See Fed. R. Evid. 704 (experts may testify to ultimate issues but must couch the testimony so as not to invade the jury's province).

California federal courts have addressed this exact type of motion of limine numerous times. See e.g., *M.H. v. County of Alameda*, 2015 WL 54400 (N.D. Cal. Jan. 2, 2015); *Williams v. Daszko*, 2018 WL 2684314 (E.D. Cal. June 5, 2018). Legal conclusions are not an appropriate subject of expert testimony. (citing *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004); *Williams v. Lockheed Martin Corp*, 2011 U.S. Dist. LEXIS 58716, 2011 WL 2200631, at *15 (S.D. Cal. June 2, 2011).

For example, in *M.H. v. County of Alameda*, the County Defendants' motion in limine sought to exclude "all Plaintiffs' experts from concluding any of Defendants' actions were objectively unreasonable and/or amounted to deliberate indifference." 2015 WL 54400, at *1. The court found that cases "consistently hold that while an expert cannot testify as to 'deliberate indifference' or 'objective reasonableness' using those specific terms, they may opine as to the appropriate standards of healthcare in a correctional facility, or generally accepted law enforcement standards, custom, or practice." Id. at *2 (citing *Davis v. Mason County*, 927 F.2d 1473, 1484-85 (9th Cir. 1991), superseded by statute on other grounds; *Glenn v. Wash. Cnty.*, 673 F.3d 864, 877 (9th Cir. 2011); *Borgerding v. California*, 370 Fed. App'x 797, 798 (9th Cir. 2010); *Berra v. Lyons*, 2014 U.S. Dist. LEXIS 19285, 2014 WL 585008, at *14 (E.D. Wash. Feb. 14, 2014); *Mark*

9

*H. v. Hamamoto*, 2012 U.S. Dist. LEXIS 114360, 2012 WL 3444138, at *3 (D. Haw. Aug. 14, 2012). "Thus, experts on both sides may testify as to appropriate standards of care—which go to the ultimate issues of 'deliberate indifference' and what conduct is 'objectively reasonable'—so long as they do not use those 'judicially defined' and 'legally specialized' terms." *M.H. v. County of Alameda* supra, 2015 WL 54400, at *2.

The M.H., supra, court further noted that while "Plaintiffs' experts cannot testify as to Defendants' actual, subjective, states of mind…experts may testify as to the relevant standard of care, which officers are expected to know." Id. at *2. Thus, to the extent that Plaintiffs' experts are testifying as to generally accepted healthcare or law enforcement practices, they may opine as to what Defendants "'knew' or 'should have known.' " *M.H. v. County of Alameda*, supra, at *2.

In *Cotton v. City of Eureka*, the Court denied defendant's similar motion to foreclose Mr. Roger Clark's testimony that HCCF policies and professional standards of practice required the County Defendants to medically assess the Decedent and to provide him with immediate medical treatment under the circumstances presented. "Such testimony constitutes circumstantial evidence which, if credited by the trier of fact, could cast doubt on the County Defendants' claim that they were subjectively unaware of the Decedent's need for immediate medical attention. See Gobert, 463 F.3d at 348 n.29 ("We caution that the expert testimony is only probative of what inferences [the defendant physician], himself, *could have* made; whether he *should have* made the connection is irrelevant to this analysis.") (emphasis added); *Watson v. Torruella*, No. CIV S-06-1475*5 5LKK EFB P, 2009 WL 3246805, at *6 (E.D. Cal. Oct. 7, 2009) (finding that expert testimony that the defendant physician failed to follow standard diagnostic procedures could provide the jury with circumstantial evidence that the physician was subjectively aware of the risk his treatment caused); see also Lolli v. County

10

of Orange, 351 F.3d 410, 421 (9th Cir. 2003) ("[T]he officers' indifference to [plaintiff]'s extreme behavior, his obviously sickly appearance and his explicit statements that he needed food because he was a diabetic could easily lead a jury to find that the officers consciously disregarded a serious risk to [plaintiff]'s health. Much like recklessness in criminal law, deliberate indifference to medical needs may be shown by circumstantial evidence when the facts are sufficient to demonstrate that a defendant actually knew of a risk of harm"). *Cotton v. City of Eureka*, Case No: C 08-04386 SBA (N.D. Cal. Sep 07, 2011)

In this case, similarly Ms. Lambert's opinions about standard of care in nursing and the relevant policies on refusal/informed consent, will provide circumstantial evidence for jury to determine whether these defendants displayed deliberate indifference when subjectively they should have been aware of Plaintiff's substantial high risk of contracting a serious infection in light of his chronic medical conditions as an insulin-dependent diabetic with diabetic neuropathy, incarcerated with a wound due to a prior back abscess. If they were aware, but disregarded it by refusing to enter his housing to evaluate him, they are liable for Plaintiff's First claim. Any delay in provision of medical care to a seriously ill patient is actionable. Her knowledge about Title 15 requirements would also be relevant for jury to determine, if reasonable accommodations were available to Plaintiff in this setting, and whether defendants failed to accommodate him under the ADA.

### D. Plaintiff Would be Prejudiced by Exclusion of this Expert

Defendants have listed multiple retained and non-retained experts in their Rule 26 Expert Witness Disclosures. See **Pl. MIL #2, Exhibit A**. Only one of them, Paul Adler, has written a Rule 26 report which is deficient for a number of reasons, articulated in Pl. MIL#2. **See Doc. 173** Their expert Paul Adler who has

not even reviewed all materials in this case, will provide his damaging and speculative opinions in this case along with the defendants in this case and other non-retained experts who have not written a Rule 26 report, whose opinions are not disclosed under Rule 26. See **Pl. MIL #2, #4**. Defendants will attempt to confuse the jury on the standards of care, take advantage of the high burden of proof in 'deliberate indifference' to absolve themselves of liability. Plaintiff would be severely prejudiced and limited in proving his claims and/or rebutting these multiple defense witnesses, if his expert testimony is limited or excluded from this trial.

DATED:      January 19, 2026

**MKRTCHYAN LAW**

By: _____/s/Narine Mkrtchyan_____

**NARINE MKRTCHYAN**

Attorney for Plaintiff Edmond Babakhanlou

12