# EXHIBIT C

I, CAROL A. SOBEL, declare as follows:

1.     I am an attorney admitted to practice law before the courts in the State of California, the Ninth Circuit Court of Appeals and the United States Supreme Court.  I submit this declaration in support of Plaintiff's Motion For Attorney's Fees.  I have personal knowledge of the facts set forth herein and, if called to testify to those facts, I could and would testify competently to said facts.

2.     I graduated from law school and was admitted to practice in 1978.  Following 20 years with the ACLU Foundation of Southern California, I entered private practice in April of 1997.  My practice primarily involves complex civil rights litigation, focusing on the rights of homeless persons, First Amendment rights and, more specifically, protest litigation. Exhibit "A" is my resumé.

3.     I received many awards for my legal work over the years.  In 2008, I was named a California Lawyer of the Year (CLAY) recipient for civil rights by California Lawyer Magazine.  That same year, I was also named as one of the Top 75 Women Litigators in California by the Daily Journal Corporation.  In 2007, I received an Angel Award from California Lawyer Magazine for pro bono work and was also named by the Daily Journal as one of the Top 100 Most Influential Lawyers in California. In 2013 and again in 2014, I was named one of the top 50 women lawyers in Los Angeles.  I am named as a Superlawyer in the area of First Amendment or civil rights litigation consistently for almost two decades. Additional recognition of my legal work is set out in my attached resumé.

4.     For the six years prior to 1997, I held the position of Senior Staff Counsel in the legal department of the ACLU Foundation of Southern California. During that time period, I was responsible for preparing many of the fee motions in cases where the ACLU represented the prevailing party.  Because the ACLU does not bill clients on an hourly basis for its services, I was required to obtain

DECLARATION OF CAROL SOBEL - 1

information to establish reasonable market rates for the ACLU lawyers. It was my practice to obtain current billing rates for lawyers of comparable skill and experience at several firms throughout the City. I did this on an annual basis, contacting partners who were familiar with the ACLU lawyers in question so that they could make an informed judgment about the comparable skill levels of the attorneys at their firms whose rates were used to establish ACLU billing rates. At the time that I consulted these individuals, I was aware that the partners had been personally involved in pro bono litigation with the ACLU and worked directly with the ACLU lawyers for whom I sought to establish market billing rates, so they were able to assess the skill and experience of the ACLU lawyers.

5.    Since entering private practice, I have continued to survey firms each year to obtain relevant comparisons for billing rates. I generally begin this process the first time in each year I prepare a fee motion, or enter into settlement discussions regarding fees. As part of my survey, I make it a point to obtain information concerning rates for attorneys in both larger law firms engaged in complex litigation, as well as smaller boutique civil rights law firms.

6.    To obtain information concerning market rates charged by attorneys in the Los Angeles area, I also review attorney fee applications and awards in other cases than my own. Specifically, I regularly review fee applications submitted by, and awards to, private attorneys practicing the range of civil rights law, as well as court awards made to the ACLU, Disability Rights Legal Center ("DRLC"), Asian Americans Advancing Justice, the Western Center on Law and Poverty ("WCLP"), MALDEF and other public interest groups in Los Angeles. I do this to determine what is being sought and approved as market rates for lawyers from these firms. Because many of the cases brought by public interest groups are co-counseled by attorneys at private commercial firms, I have access to those

DECLARATION OF CAROL SOBEL - 2

billing rates as well.

7.    In addition to these two methods, when I become aware of a case where statutory fees are sought, I regularly obtain fee applications and any resulting awards from on-line public court records from the Los Angeles Superior Court and PACER, as well as legal research databases such as LEXIS and Westlaw.  Included in my review are fee applications by, and awards to, large firms engaged in complex litigation to assess customary billing rates for these firms.  Many of these commercial firms also serve as pro bono counsel on occasion.  I also look at court orders in the past year awarding statutory fees or awarding fees as a discovery sanction.  I subscribe to several websites that report legal news.  I estimate that I review around 100 or more fee motions, supporting declarations and fee awards annually and have done so for more than 30 years.

8.    My declarations in support of fee applications for civil rights and public interest attorneys have been cited repeatedly by courts as evidence of reasonable market rates in Los Angeles and other locations.  Most recently, my declaration was cited with approval in *Valenzuela v. City of Anaheim*, Case No.: SACV 17-00278-CJC (DFMx) (C.D. CA. 2023) [Dkt. 462]; and the companion case of *Craig v. City of Anaheim,* SACV 17-02094-CJC (DFMx) (C.D. CA 2023) [Dkt. 280].  In *Nadarajah v. Holder*, 569 F.3d 906, 912-14 (9th Cir. 2009), the Ninth Circuit referenced my declaration with approval in support of the application of attorneys from the ACLU for fees under the Equal Access to Justice Act ("EAJA").  In *Torrance Unified School District v. Magee*, 2008 U.S. Dist. LEXIS 95074 (C.D. Cal. 2008), granting fees pursuant to the IDEA statute, 20 U.S.C. §1415(i)(3)(c), the Court cited to my declaration as persuasive evidence of market rates.  In *Atkins v. Miller*, CV 01-01574 DDP (C.D. Cal. 2007), Judge Pregerson awarded fees to a 1975 graduate at $675 an hour, specifically citing to

DECLARATION OF CAROL SOBEL - 3

my declaration and that of Barry Litt to support the requested 2006 rate. *Id.* at pp. 8-9 and n.4. Additional cases in which my declarations have been cited favorably include, among others, *Charlebois v. Angels Baseball LP*, SACV 10-0853 DOC (C.D. Cal. May 30, 2012); *Orantes-Hernandez v. Holder*, 713 F. Supp. 2d 929, 963-64(C.D.Cal. 2010); *Hiken v. DOD*, 2013 U.S. Dist. LEXIS 118165 (N.D. Cal. Jan. 14, 2013), *Hiken v. DOD*, 836 F.3d 1037 (9th Cir. 2016); *Vasquez v. Rackauckas*, 2011 U.S. Dist. LEXIS 83696 (C.D. Cal. 2011); *Rauda v. City of Los Angeles*, 2010 U.S. Dist. LEXIS 138837 (C.D. Cal. 2010); *Jochimsen v. County of Los Angeles*, *supra*; *Dugan v. County of Los Angeles,* cv-11-08145 CAS (C.D. Cal. March 3, 2014); *Flores v. City of Westminster*, SACV-11-0278 DOC (C.D. Cal. Oct. 23, 2014); *Xue Lu v. United States*, 2014 U.S. Dist. LEXIS 77789 (C.D. Cal. May 23, 2014); *Wagafe v. Trump*, Case 2:17-cv-00094-RAJ [Doc. 223] (W.D. Wash. Feb. 27, 2019); *Webb v. Officer J. Ackerman*, 13-cv-01992 PLA (C.D. Cal. Jan. 4, 2018) [Doc. 180, p.5]; and *Carrillo v. Schneider Logistics,* awarding fees in Circuit Case No. 12-55042 (9th Cir. Apr. 2014), following the affirmance of a preliminary injunction (*See* 501 Fed. Appx. 713, 2012 U.S. App. LEXIS 26601 (9th Cir. Dec. 28, 2012)). The Ninth Circuit recently cited to my declaration in approving EAJA rates for the ACLU and other immigration attorneys in *Gomez-Sanchez v. Barr, sub nom Gomez-Sanchez v. Sessions,* 892 F.3d 985 (9th Cir. 2018). In *Jochimsen*, a unanimous panel of the California Court of Appeal held I was qualified as an expert on market rates.

9. In addition, I litigated statutory fee issues at the appellate level in several of my cases. Most notably, I was lead counsel before the California Supreme Court in *Tipton-Whittingham v. City of Los Angeles*, 34 Cal. 4th 604 (2004), the companion case to *Graham v. Daimler-Chrysler,* 34 Cal. 4th 533

DECLARATION OF CAROL SOBEL - 4

(2004), establishing the continued vitality of the "catalyst" fee doctrine in California courts and upholding an award of fees of almost $2 million in a multi-plaintiff sexual discrimination/harassment lawsuit on behalf of female employees of the Los Angeles Police Department. *Tipton-Whittingham* was certified to the California Supreme Court on the question of whether California continued to apply the "catalyst" doctrine after the decision by the United States Supreme Court in *Buckhannon v. Board and Care Home v. West Virginia Dept. of Health*, 532 U.S. 598 (2001). *See* 316 F.3d 1058 (9th Cir. 2003).

10. I was also counsel in *Jones v. City of Los Angeles*, 555 Fed. Appx. 659 (2014), establishing entitlement to fees as a "prevailing party" based on the Circuit Court's necessary approval of a settlement that was conditioned on vacatur of the panel decision.

11. I provide training on attorney fees best practices for civil rights and public interest firms, including the Legal Aid Foundation of Los Angeles and the ACLU Foundation of Southern California. I also do CLEs on attorney fees for a number of organizations, including the National Lawyers Guild and the National Police Accountability Project.

12. I have considerable experience reviewing and analyzing billing records in my own cases and in cases for which I provide a supporting declaration on the reasonableness of rates or hours. Many of the cases in which I am counsel involve multiple attorneys. In those instances, I am the attorney who conducts a review of all of the fee records and exercises billing judgment to eliminate any improperly billed time. For example, in the *Tipton-Whittingham* case cited above, it was my responsibility to review the fee records covering six years of hours for attorneys from three firms: the ACLU, the Western Regional Office of the NAACP Legal Defense Fund, and Litt & Estuar. The unadorned lodestar in

DECLARATION OF CAROL SOBEL - 5

*Tipton* was approximately $1,900,000 based on 2000 rates.  I performed similar services in other cases where multiple counsel are involved.

13.   In the fee declarations that I prepare, I apply my understanding of the U.S. Supreme Court decision in *Blum v. Stenson*, 465 U.S. 886 (1984), that "rates charged in private representations may afford relevant comparisons."  *Id.* at 895 n.11. I understand this to mean that fees for civil rights lawyers should approximate rates charged by attorneys of comparable skill, experience and reputation in the relevant legal market, engaged in similarly complex litigation, regardless of whether the attoneys work for a non-profit, represent individuals on contingency, serve as in-house counsel, or charge a minimal rate with the possibility of receiving a market rate award if successful.  *See e.g., Shapiro v. Paradise Valley Unified School Dist.*, 374 F3d 857, 866 (9th Cir. 2004) (because government lawyers and retained insurance defense attorneys generally bill at lower rates, they do not reflect the same legal market as prevailing civil rights lawyers who operate primarily on contingency fees).

14.   To support my opinion here, I attach fee awards and supporting declarations in cases in the Los Angeles legal market.  Each is a true and correct copy of the document available in the Courts' files, with the federal ECF header. Several are now several years old.  If I rely on decisions more than two years old, I compute a current rate by applying an increase based on the legal services component increase in the Consumer Price Index for Los Angeles for the years since the original fee award.  Previously, the rate was approximately 3.1 percent. More recently, the increase tracks the higher annual inflation rates of five percent and higher.  The data is available at http://www.bis.gov/news.release/cpi.102.htm (Table 2. Consumer Price Index for All Urban Consumers (CPI-U): U.S. city average, by detailed expenditure category).

DECLARATION OF CAROL SOBEL - 6

15. I apply several additional principles to establish reasonable market rates. First, when available, I look to rates awarded to the attorney in previous cases because I understand that such awards are strong evidence of reasonable market rates. *See Chaudhry v. City of Los Angeles*, 751 F3d 1096, 1111 (9th Cir. 2014). *See also Davis v. City of San Diego*, 106 Cal.App.4th 893, 904 (2003).

16. Next, I look to billing rates by attorneys engaged in similarly complex litigation as an approved method of setting market rates for civil rights attorneys who do not bill on an hourly basis. *See Blum*, 465 U.S. at 895. This approach recognizes that most civil rights attorneys, including at non-profits, take cases on a contingency basis. I look broadly at awards stablishing reasonable hourly rates in a variety of civil rights cases based on my understanding that the market rate comparison "extends to all attorneys in the relevant community engaged in equally complex Federal litigation, no matter the subject matter." *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010) (internal quotation omitted). California follows the same principle. *See 560 East County Boulevard LLC v. Backcountry Against the Dump, Inc.*, 6 Cal.App.5th 426, 437 (2016).

17. When the specific rate evidence identified in the preceding paragraph is available, I do not rely on surveys because they generally do not meet the standards for the lodestar analysis. In my experience, fee surveys report market rates in sweeping categories with no identification of the comparable skill, experience and reputation of the attorneys included in the survey and often no indication of the relevant legal market. *See e.g., Shirrod v. Director, Office of Workers' Compensation Programs*, 809 F.3d 1082, 1089 (9th Cir. 2015) (reversing where lower court relied on a national survey rather than local rates).

18. Similarly, I do not apply the rates billed by and paid to opposing counsel who are salaried, contract government attorneys, or retained insurance

DECLARATION OF CAROL SOBEL - 7

defense because they generally charge rates well below market and are paid win or lose, so they do not share the risk taken by lawyers who depend upon fee-shifting statutes and other contingent fees.  *See e.g., Shapiro v. Paradise Valley Unified School Dist.*, 374 F.3d 857, 866 (9th Cir. 2004) (because government lawyers and retained insurance defense attorneys generally bill at lower rates, they do not reflect the same legal market).

19.   I apply the rule that the relative "simplicity" or "complexity" of a case is reflected in the efficiency of hours, not the lodestar rate of the attorney.  *See Van Skike v Director, Office of Workers' Compensation Programs,* 557 F.3d 1041, 1046 (9th Cir. 2009).

20.   My rate for 2023 is $1,250.  In May 2019, the rate of $1,000 an hour was used to calculate my fees in *Mitchell v. City of Los Angeles*, Case No. 2:16-cv-01750-SJO-JPR (C.D. Cal.).  In the same year, this rate was applied for the lodestar cross-check in a class action, *Chua v. City of Los Angeles*, Case 2:16-cv-00237-JAK-GJS.  The last court-awarded fee I received in a contested fee motion was from the Ninth Circuit, approving my 2014 rate of $875 an hour in *CPR for Skid Row v. City of Los Angeles*, 779 F.3d 1098 (9th Cir. 2015).

21.   I am informed that fees are sought by this motion for attorneys Narine Mkrtchyan and Thomas Beck at the 2023 rates of $810 and $1,150 an hour, respectively.  In my opinion, both rates are well within the range of rates in the Central District for attorneys of comparable skill and experience engaged in similarly complex litigation.

**NARINE MKRTCHYAN:**

22.   I do not know Ms. Mkrtchyan personally; however, we are both members of the National Police Accountability Project (NPAP) and I became

DECLARATION OF CAROL SOBEL - 8

familiar with her based on her postings on the listserve where members of the organization discuss litigation.   Based on my review of her declaration, I understand Ms. Mkrtchyan was admitted in 2006.

23.   I understand that fees are also being sought for Thomas Beck.  I have known Mr. Beck for approximately 30 years.  Mr. Beck and I graduated from law school in 1978 and were admitted to the Bar the same year.  We met when I moved to an area of police practices litigation at the ACLU from my prior area of focus. In my experience, Mr. Beck is one of the most skilled and experienced attorneys practicing in this civil rights area.

24.    To support my opinion on the reasonableness of the rates, I attach several fee awards for comparably skilled attorneys in the Central District.  Each document bears the official filing stamp of the relevant court.

25.   Attached at Exhibit 2 is the Declaration of Eric Rowen in *Simons v. Superior Court*, LASC Case No. 19STCP01994, in support of a motion for fees to attorneys at Greenberg Traurig. ("*Simons I*") The motion sought fees for 2018 and 2019 in a complex business matter. The Superior Court's award was upheld on appeal in an unpublished decision.  *See* 2022 Cal. App. Unpub. LEXIS 1854. In *Simons I*, fees were approved for Matthew Gershman, listed as a 2007 law graduate, at the rate of $830 an hour for 2019 and $890 for 2020.

26.   A subsequent motion was filed in *Simons* for fees for the appeal ("*Simons II*"). The rates approved for the second fee motion are set forth in the Declaration of Rowen at Exhibit 3.  Fees were approved for Matthew Gershman at the 2021 rate of $935 an hour.  Ex. 3, p.9.  From 2019 to 2021, Mr. Gershman's rate increased almost 13 percent.  Mr. Gershman's approved 2019 rate is slightly higher than Ms. Mkrytchan's requested 2023 rate with five years more experience.

27.   As additional support for my opinion on the reasonableness of the

DECLARATION OF CAROL SOBEL - 9

rates, attached at Exhibit 4 is the Order awarding fees for attorneys at Gibson, Dunn & Crutcher in *Isaacs v. USC Keck School of Medicine*, Case NO. 2:19-CV-08000-DSF-RAO (C.D. CA. 2020), an anti-SLAPP case. While the Court noted that Gibson Dunn's rates were on the "higher side," they were found to be within the range of reasonable rates for the Los Angeles legal market. *Id.* at p. 3. The Court's order did not set out the specific rates, so I attach at Exhibit 5 the Fogelman Declaration in support of the motion for fees.

28.   Mr. Fogelman averred that he is a partner at Gibson Dunn & Crutcher. He attested to the firm's rates for various attorneys, including Katarzyna Ryewska, in a chart of time and rates attached to his declaration at Exhibit A.  In *Isaacs*, the Court approved the 2020 rate of $815 an hour for Ms.  Ryewska. Ex. 5, p.4.  I reviewed Ms. Ryewska's information on the firm's website and believe that she is a 2013 law graduate.  With seven years of experience in 2020, Ms. Ryewska's 2020 rate is slightly higher than Ms. Mkrtchyan's 2023 rate.

29.   As another point of comparison, attached at Exhibit 6 is the recent order of Judge Carney in *Valenzuela v City of Anaheim*, SACV 17-00278-CJC (DFMx) (C.D. CA. 2023) [Dkt. 462].  In *Valenzuela,* the Court approved the 2022 rate of $850 an hour for attorney John Fattahi.  I filed a supporting declaration in the case, which was cited by the Court to support the reasonableness of the requested rates.  I know Mr. Fattahi personally and first met him shortly after he completed his clerkship with Judge Phillips in the Central District of California.  At the time, several of us were mooting Mr. Fattahi for his first appellate argument.  Based on my personal knowledge and review of his online biography, I believe that Mr. Fattahi is a 2006 law graduate.

30.   In *Craig v. City of Anaheim*, the companion case to *Valenzuela v. City of Anaheim*, the Court approved the 2022 rate of $850 an hour for Melanie Partow,

DECLARATION OF CAROL SOBEL - 10

identified as a 2004 law graduate.  Ex. 7, p. 8-9.  I know Ms. Partow well both from her earlier work as an associate of attorney Dale Galipo and as a professor in the civil rights litigation clinic at University of California Irvine, where she co-teaches with attorney Paul Hoffman.

31.    Additional support for the reasonableness of the 2023 rate of $810 an hour for Ms. Mkrtchyan is provided by the fee award in *McKibben v. McMahon*, Case No. EDCV 14-2171 JGB (SPx) (C.D. CA 2019). A copy of the Court's order is attached at Exhibit 8.  [Dkt. 103].  In *McKibben*, the Court approved the 2018 rate of $715 an hour for Melissa Goodman.  The Court noted Ms. Goodman had 15 years of experience at the time.  Ex. 8, p. 19.  I know Ms. Goodman personally from her time at the ACLU of Southern California and am of the belief that she is a 2003 law graduate, who was first admitted to practice in New York.

32.    Applying a CPI of 3.1 percent for 2019, 2020 and 2021 and a slightly higher CPI of 5 percent for 2022 and 2023, the equivalent rate approved in *McKibben* for an attorney with 15 years of experience would now be approximately $864 an hour, almost seven percent above the rate Ms. Mkrtchyan seeks in 2023 with 18 years of experience.  This rate is based solely on inflation increases for the base 2018 rate and does not reflect any rise based on Ms. Mkrtchyan's additional experience.

33.    Attached at Exhibit 9 is the Declaration of Luke Brooks in support of a lodestar cross-check in *Fleming v. Impax Laboratories, Inc.,* Case No. 4-16-cv-06557-HSG (N.D. CA 2022). Although this case was litigated in the Northern District of California, Mr. Brooks' declaration attests to the fact that the fees are based on the firm's customary billing rates for 2021.  *Id.* at ¶ 4.  I have reviewed fee motions and order for the attorneys at Robins, Geller in several cases in various jurisdictions and, on that basis, confirmed the statement in Mr. Brooks'

DECLARATION OF CAROL SOBEL - 11

declaration that the firm applies the same rate regardless of the local jurisdiction.

34.    In Exhibit 9, Eric Niehaus is billed at the 2021 rate of $840 an hour. Mr. Niehaus is identified on the firm's website as a 2005 law graduate.  Ex. 10, p.8 [Ex. A to Brooks' Decl.].

35.    The reasonableness of Ms. Mkrtchyan's requested 2023 rate is also confirmed by reference to the 2022 Real Rate Report.  Based on my review of the Report, I understand that it is primarily based on 2021 rates.  Several courts in the Central District of California cite the Real Rate Report because, unlike other surveys of rates, the Real Rate Report identifies rates by city, experience, firm size, specific litigation areas, and is based on actual billings.  *See e.g., Eksouzian v. Albanese*, No. CV 13-728 PSG (AJWx), 2015 U.S. Dist. LEXIS 189545, 2015 WL 12765585, at *4-5 (C.D. Cal. Oct. 23, 2015);  *Hicks v. Toys 'R' Us-Del., Inc.*, No. CV 13-1302 DSF JCG, 2014 U.S. Dist. LEXIS 135596, 2014 WL 4670896, at *1 (C.D. Cal. Sept. 2, 2014).

36.    Attached at Exhibit 10 is the section of the Real Rate Report for Los Angeles. Ms. Mkrtchyan's requested rate is consistent across the board with 2021 third quartile rates for partners in various areas of complex litigation and, in many instances, consistent with lower rates for associates.  For example, the third quartile for employment and labor law is $870 an hour; for finance and securities the third quartile rate is $1,037 a hour; for intellectual property the third quartile 2021 rate is $1,209 an hour. Ex. 11.

**THOMAS BECK:**

37.    Mr. Beck's requested rate of $1,150 an hour is also reasonable in the Central District legal market for an attorney of his skill, experience and reputation.

38.    For attorneys with comparable experience in areas of complex

DECLARATION OF CAROL SOBEL - 12

litigation, the Real Rate Report documents rates considerably higher than the rate sought by Mr. Beck.  For example, in the area of "Corporate Other," the rate for the third quartile for partners for 2021 was $1,370 an hour.  For the Finance and Securities sector, the rate for a partner was $1,434 an hour.  For Intellectual Property, the rate was $1,209 an hour. Ex. 10.   While the Real Rate Report applies some distinctions based on experience for associates and partners, it does not differentiate based on the length of time an individual has been a partner.  The category of "partner" could well include an individual practicing 10 years and an individual practicing more than 40 years, like Mr. Beck.  The Real Rate Report only provides information up to the third quartile.  I would expect an attorney of Mr. Beck's skill and four decades of experience to be in the fourth quartile.  So, while the Real Rate Report it is helpful, in my experience the omission of fourth quartile rates understates the range of rates.  As applied to Mr. Beck, the Real Rate Report is supported by the fee data provided in the exhibits submitted with my declaration.

39.    In the Declaration of Luke Brooks filed in support of a lodestar cross-check on fees in *Fleming*, customary billing rates are provided for several attorneys at Robbins, Geller, including Darren Robbins at the 2022 rate of $1,325 an hour. Ex, 9.  I reviewed Mr. Robbins' listing on the firm's website and, on that basis, concluded that he is a 1993 law graduate.  His 2022 rate is 15-percent above, the 2023 rate requested for Mr. Beck who has 15 years more experience.

40.    Attached at Exhibit 11 is the order awarding fees in *Garcia v. Seltzer-Dorene Management Co., Inc.*, LASC Case BC 699421 (2021), at 2021 rates for attorneys at Shegerian & Associates, an employment law firm.  Because the Court's Order does not set out the specific rates approved, I provide the Court's tentative order as well. The approved rates for all counsel are contained in Table C.  Ex.11, p.13. The Court approved the 2021 rate of $1300 an hour for Carney Shegerian.

DECLARATION OF CAROL SOBEL - 13

Based on my review of the firm's website, I believe Mr. Shegerian is a 1990 admittee.  In 2021, he had 13 years less experience than Mr. Beck has in 2023.

41.    In Exhibit 2, Eric Rowen of Greenberg Traurig averred that he is a 1982 law graduate.   Ex. 2, p. 7.  In *Simons II,* he averred that his 2021 rate was $1,380 an hour, almost 20 percent higher than the 2023 rate for Mr. Beck.  Ex. 3.

42.    In his declaration filed in *Isaacs v. USC Keck School of Medicine*, Case NO. 2:19-CV-08000-DSF-RAO (C.D. CA. 2020), attorney James Fogelman of Gibson Dunn averred that he is a partner at Gibson Dunn & Crutcher and a 1992 law graduate.  Ex. 5.  In Exhibit A to his declaration, his 2020 rate is listed as $1,265.00.  In 2020, Mr. Fogelman had 28 years of experience.

43.    In *Herring Networks v. Rachel Maddow*, Case No. 19-cv-1713 BAS-AHG (S.D. CA. 2020, Gibson Dunn submitted the declaration of Scott Edelman, listing the firm's customary billing rates in the Los Angeles legal market.  A true and correct copy of the Edelman Declaration is attached at Exhibit 12.   Mr. Edelman averred that the 2020 rate for Theodore Boutrous was $1,525 an hour and that his 2020 rate was $1,395 an hour.  Ex. 12, ¶ 18. I reviewed the firm's website and believe Mr. Boutrous graduated in 1987 and Mr. Edelman in 1984.

44.    The *Herring Networks* case was an anti-SLAPP lawsuit before the Southern District of California.  The Court reduced the requested Los Angeles rates to reflect market rates in San Diego, approving a 2020 rate for Mr. Boutrous at $1,150 and $1,050 as the 2020 rate for Mr. Edelman.  Applying a five percent inflation adjustment for 2021, 2022 and 2023, the equivalent rate for Mr. Edelman would now be $1,215 in the San Diego legal market and $1,615 in the Los Angeles legal market. The equivalent rates for Mr. Boutrous would be approximately $1,765 an hour in the Los Angeles legal market.

45.    The attorney fee award to Gibson Dunn for 2022 rates also supports the reasonableness of the rate of $1300 an hour for Thomas Beck.   In her

DECLARATION OF CAROL SOBEL - 14

declaration filed in support of the fee request, Anne Champion averred that her customary billing rate for 2020 was $1,295 and that it increased nearly 10 percent to $1,430 an hour for 2021. A true and correct copy of the Champion Declaration is attached at Exhibit 13, ¶ 6. Ms. Champion averred she is a 2005 law school graduate. *Id.* ¶ 3. Ms. Champion has less than half the experience of Mr. Beck and was approved at a 2021 customary billing rate rate almost 30 percent higher than the 2023 rate requested by Mr. Beck.

46. One final point of comparison is provided by the Declaration of Michael Strub filed in 2023 in support of a motion for attorney fees in *Nelson v. Phoebe Bridgers*, LASC Case No. 21STCV35635, an anti-SLAPP case. Mr. Strub averred that he is a partner at Greenberg & Gross, a 1990 law graduate, and has a 2022 billing rate of $1,095 an hour. Ex, 14, ¶¶ 1, 23. His declaration also provides the rates for Mssrs. Greenberg and Gross, both listed as 1988 law graduates, at $1,400 an hour. *Id.* ¶23.

47. Based on all of the foregoing, it is my opinion that the 2023 rates of $810 an hour for Ms. Mkrtchyan and $1150 for Mr. Beck are well within the range of reasonable market rates in the Los Angeles legal market for attorneys of their skill and experience.

I declare under penalty of perjury that the foregoing is true and correct. Executed on the 10th of October 2023 at Los Angeles, California.

*Carol Sobel*

CAROL A. SOBEL

DECLARATION OF CAROL SOBEL - 15

*ELM Solutions*

# 2022 Real Rate Report®

The industry's leading analysis of law firm rates, trends, and practices

 Wolters Kluwer

wolterskluwer.com



## Report Editor

**Jeffrey Solomon**
Senior Director, Product Management Legal
Analytics, Wolters Kluwer ELM Solutions

## Lead Data Analysts

**Carol Au**
Business Systems Quantitative Analyst
Wolters Kluwer ELM Solutions

**Pankaj Saha**
Data Engineer
Wolters Kluwer ELM Solutions

## ELM Solutions Creative

**David Andrews**
Senior Graphic Designer
Wolters Kluwer ELM Solutions

## Contributing Analysts and Authors

**Jason Bender**
Legal Analytics Product Manager
Wolters Kluwer ELM Solutions

**Nathan Cemenska**
Associate Director, Product Management
Wolters Kluwer ELM Solutions

**Haemi Jung**
Strategic Business Intelligence Manager
Wolters Kluwer ELM Solutions

**Margie Sleboda**
Lead Technology Product Manager
Wolters Kluwer ELM Solutions

## Executive Sponsor

**Barry Ader**
Vice President, Product Management and
Marketing
Wolters Kluwer ELM Solutions

© 2004 - 2022 Wolters Kluwer ELM Solutions. All rights reserved. This material may not be reproduced, displayed, modified, or distributed in any form without the express prior written permission of the copyright holders. To request permission, please contact:

ELM Solutions, a Wolters Kluwer business
115 Glastonbury Boulevard, Suite 102
Glastonbury, CT 06033 United States
ATTN: Marketing
+1-860-549-8795

**LEGAL CAVEAT**

Wolters Kluwer ELM Solutions has worked to ensure the accuracy of the information in this report; however, Wolters Kluwer ELM Solutions cannot guarantee the accuracy of the information or analyses in all cases. Wolters Kluwer ELM Solutions is not engaged in rendering legal, accounting, or other professional services. This report should not be construed as professional advice on any particular set of facts or circumstances. Wolters Kluwer ELM Solutions is not responsible for any claims or losses that may arise from any errors or omissions in this report or from reliance upon any recommendation made in this report.

# Table of Contents - 2022 Real Rate Report

**A Letter to Our Readers • 4**

**Report Use Considerations • 5**

**Section I: High-Level Data Cuts • 8**
- Partners, Associates, and Paralegals
- Partners, Associates, and Paralegals by Practice Area and Matter Type
- Partners and Associates by City
- Partners and Associates by City and Matter Type
- Partners by City and Years of Experience
- Associates by City and Years of Experience
- Partners and Associates by Firm Size and Matter Type

**Section II: Industry Analysis • 63**
- Partners, Associates, and Paralegals by Industry Group
- Partners and Associates by Industry Group and Matter Type
- Basic Materials and Utilities
- Consumer Goods
- Consumer Services
- Financials (Excluding Insurance)
- Health Care
- Industrials
- Technology and Telecommunications

**Section III: Practice Area Analysis • 84**
- Bankruptcy and Collections
- Commercial
- Corporate: Mergers, Acquisitions, and Divestitures
- Corporate: Regulatory and Compliance
- Corporate: Other
- Employment and Labor
- Environmental
- Finance and Securities
- General Liability (Litigation Only)
- Insurance Defense (Litigation Only)
- Intellectual Property: Patents
- Intellectual Property: Trademarks
- Intellectual Property: Other
- Real Estate

**Section IV: In-Depth Analysis for Select US Cities • 172**
- Boston, MA
- Chicago, IL
- Los Angeles, CA
- New York, NY
- Philadelphia, PA
- San Francisco, CA
- Washington, DC

**Section V: International Analysis • 191**

**Section VI: Matter Staffing Analysis • 221**

**Appendix: Data Methodology • 226**

# A Letter to Our Readers

**Welcome to the Wolters Kluwer ELM Solutions Real Rate Report®, the industry's leading data-driven benchmark report for lawyer rates.**

Our Real Rate Report has been a relied upon data analytics resource to the legal industry since its inception in 2010 and continues to evolve. The Real Rate Report is powered by the Wolters Kluwer ELM Solutions LegalVIEW® data warehouse, which has grown to include $155B+ in anonymized legal data.

Last year, we launched our LegalVIEW Insights report series, which presented the first-of-its-kind legal analysis of total outside spend, vendor counts, staffing ratios, and other matters. This year, LegalVIEW Insights has gone even deeper into these issues and, together with the Real Rate Report, is a great tool to benchmark performance and improve from there.

The legal services industry relies on internal analytics and the use of external data resources, such as the LegalVIEW data warehouse, to support legal management strategies. The depth and details of the data in the Real Rate Report enable you to better benchmark and make more informed investment and resourcing decisions for your organization.

As with past Real Rate Reports, all of the data analyzed are from corporations' and law firms' e-billing and time management solutions. We have included lawyer and paralegal rate data filtered by specific practice and sub-practice areas, metropolitan areas, and types of matters to give legal departments and law firms greater ability to pinpoint areas of opportunity. We strive to make the Real Rate Report a valuable and actionable reference tool for legal departments and law firms.

As always, we welcome your comments and suggestions on what information would make this publication more valuable to you. We thank our data contributors for participating in this program. And we thank you for making Wolters Kluwer ELM Solutions your trusted partner for legal industry domain expertise, data, and analytics and look forward to continuing to provide market-leading, expert solutions that deliver the best business outcomes for collaboration among legal departments and law firms.

Sincerely,

**Barry Ader**
Vice President, Product Management and Marketing
Wolters Kluwer ELM Solutions

# Report Use Considerations

**2022 Real Rate Report**

- Examines law firm rates over time
- Identifies rates by location, experience, firm size, areas of expertise, industry, and timekeeper role (i.e., partner, associate, and paralegal)
- Itemizes variables that drive rates up or down

All the analyses included in the report derive from the actual rates charged by law firm professionals as recorded on invoices submitted and approved for payment.

Examining real, approved rate information, along with the ranges of those rates and their changes over time, highlights the role these variables play in driving aggregate legal cost and income. The analyses can energize questions for both corporate clients and law firm principals.

Clients might ask whether they are paying the right amount for different types of legal services, while law firm principals might ask whether they are charging the right amount for legal services and whether to modify their pricing approach.

**Some key factors[1] that drive rates[2]:**

**Attorney location -** Lawyers in urban and major metropolitan areas tend to charge more when compared with lawyers in rural areas or small towns.

**Litigation complexity -** The cost of representation will be higher if the case is particularly complex or time-consuming; for example, if there are a large number of documents to review, many witnesses to depose, and numerous procedural steps, the case is likely to cost more (regardless of other factors like the lawyer's level of experience).

**Years of experience and reputation -** A more experienced, higher-profile lawyer is often going to charge more, but absorbing this higher cost at the outset may make more sense than hiring a less expensive lawyer who will likely take time and billable hours to come up to speed on unfamiliar legal and procedural issues.

**Overhead -** The costs associated with the firm's support network (paralegals, clerks, and assistants), document preparation, consultants, research, and other expenses.

**Firm size –** The rates can increase if the firm is large and has various timekeeper roles at the firm. For example, the cost to work with an associate or partner at a larger firm will be higher compared to a firm that has one to two associates and a paralegal.

[1] **David Goguen, J.D., University of San Francisco School of Law (2020) Guide to Legal Services Billing Retrieved from:**
  https://www.lawyers.com/legal-info/research/guide-to-legal-services-billing-rates.html
[2] **Source: 2018 RRR.** Factor order validated in multiple analyses since 2010

## Partner with the leader in AI-powered bill review

# LegalVIEW® BillAnalyzer

Many vendors claim to have an advanced and innovative AI model; however, only BillAnalyzer leverages the most extensive industry database, expertise, and AI models to provide the best outcomes for your spend management program.

- ✓ Builds a custom AI model based on your guidelines
- ✓ Over 100 data scientists, 400 compliance experts, and 50 process experts support the BillAnalyzer AI model
- ✓ Industry and peer guideline benchmarking

- ✓ Leverages industry-leading $155B+ in legal performance data
- ✓ Uses your actual historical data to train and optimize your custom AI model
- ✓ Surveys past billing in review to evaluate historical patterns

The benefits you can expect to realize from LegalVIEW BillAnalyzer include:



Control legal spend with up to 10% cost savings



Deliver up to 20% increase in billing guideline compliance



Optimize resources so attorneys can focus on higher value work

elmsolutionssales@wolterskluwer.com

1 800 780 3681 (Toll-free)

www.wolterskluwer.com

Wolters Kluwer

When you have to be right

# Mastering spend. Totally.



## Supercharged cost management

Maximize compliance, minimize spend leakage



## Better analytics, smarter decisions

Act on insights from advanced analytics



## Complete visibility

Visibility and management of all vendor invoices

Wolters Kluwer ELM Solutions redefines spend management and takes it to the next level with total spend management. By incorporating our artificial intelligence and advanced analytics solutions into your spend management program, you can push the very boundaries of cost savings, billing compliance, engagement with outside counsel, and the value of what your legal department delivers to your organization.

elmsolutionssales@wolterskluwer.com

1 800 780 3681 (Toll-free)

www.wolterskluwer.com

 Wolters Kluwer

When you have to be right

# Section I: High-Level Data Cuts

All data and analysis based on data collected thru Q2 2022



# Section I: High-Level Data Cuts

## Partners, Associates, and Paralegals
By Role

**2022 - Real Rates**                                                                                   **Trend Analysis - Mean**

| Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|------|---|----------------|--------|----------------|------|------|------|
| **Partner** | 10592 | $430 | $653 | $969 | $749 | $738 | $705 |
| **Associate** | 9930 | $329 | $485 | $703 | $546 | $541 | $503 |
| **Paralegal** | 4215 | $150 | $225 | $325 | $247 | $244 | $232 |

# Section I: High-Level Data Cuts

## Cities
By Matter Type

**2022 - Real Rates for Associate and Partner**  **Trend Analysis - Mean**

| City | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| **Albany NY** | Non-Litigation | Partner | 17 | $288 | $288 | $305 | $322 | $322 | $354 |
| | | Associate | 15 | $234 | $240 | $243 | $237 | $235 | $233 |
| **Atlanta GA** | Litigation | Partner | 103 | $391 | $525 | $745 | $568 | $513 | $554 |
| | | Associate | 116 | $262 | $345 | $486 | $382 | $349 | $361 |
| | Non-Litigation | Partner | 220 | $478 | $665 | $871 | $700 | $663 | $636 |
| | | Associate | 201 | $370 | $450 | $618 | $504 | $468 | $443 |
| **Austin TX** | Litigation | Partner | 25 | $491 | $643 | $913 | $696 | $668 | $579 |
| | | Associate | 21 | $318 | $463 | $659 | $497 | $492 | $481 |
| | Non-Litigation | Partner | 73 | $409 | $450 | $608 | $526 | $511 | $510 |
| | | Associate | 50 | $319 | $401 | $625 | $450 | $373 | $390 |
| **Baltimore MD** | Litigation | Partner | 66 | $380 | $585 | $625 | $551 | $593 | $566 |
| | | Associate | 76 | $285 | $400 | $482 | $414 | $442 | $426 |
| | Non-Litigation | Partner | 85 | $401 | $606 | $865 | $682 | $656 | $648 |
| | | Associate | 80 | $335 | $482 | $649 | $512 | $507 | $484 |

# Section I: High-Level Data Cuts

## Cities
By Matter Type

**2022 - Real Rates for Associate and Partner**  **Trend Analysis - Mean**

| City | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| **Birmingham AL** | Litigation | Partner | 40 | $320 | $325 | $459 | $387 | $357 | $356 |
| | | Associate | 40 | $275 | $300 | $311 | $292 | $284 | $301 |
| | Non-Litigation | Partner | 57 | $340 | $410 | $480 | $423 | $432 | $428 |
| | | Associate | 48 | $258 | $295 | $339 | $302 | $304 | $300 |
| **Boston MA** | Litigation | Partner | 105 | $397 | $681 | $824 | $632 | $588 | $531 |
| | | Associate | 88 | $315 | $432 | $608 | $475 | $450 | $411 |
| | Non-Litigation | Partner | 173 | $510 | $715 | $972 | $782 | $772 | $728 |
| | | Associate | 186 | $395 | $520 | $690 | $563 | $555 | $515 |
| **Bridgeport CT** | Litigation | Partner | 14 | $478 | $563 | $605 | $535 | $502 | $462 |
| | Non-Litigation | Partner | 18 | $366 | $400 | $584 | $451 | $437 | $402 |
| | | Associate | 12 | $200 | $265 | $295 | $281 | $235 | $242 |
| **Buffalo NY** | Litigation | Partner | 28 | $300 | $340 | $356 | $321 | $330 | $339 |
| | | Associate | 17 | $225 | $245 | $265 | $240 | $238 | $246 |
| | Non-Litigation | Partner | 16 | $325 | $366 | $500 | $397 | $349 | $354 |

# Section I: High-Level Data Cuts

## Cities
### By Matter Type

**2022 - Real Rates for Associate and Partner**

**Trend Analysis - Mean**

| City | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|------|-------------|------|---|----------------|--------|----------------|------|------|------|
| **Buffalo NY** | Non-Litigation | Associate | 11 | $210 | $255 | $285 | $257 | $238 | $242 |
| **Charleston WV** | Litigation | Partner | 25 | $225 | $280 | $310 | $273 | $274 | $276 |
| | Non-Litigation | Partner | 12 | $281 | $325 | $358 | $336 | $345 | $376 |
| **Charlotte NC** | Litigation | Partner | 20 | $513 | $590 | $736 | $635 | $586 | $557 |
| | | Associate | 21 | $325 | $350 | $382 | $369 | $356 | $370 |
| | Non-Litigation | Partner | 84 | $550 | $646 | $782 | $706 | $703 | $674 |
| | | Associate | 85 | $320 | $391 | $526 | $450 | $465 | $412 |
| **Chicago IL** | Litigation | Partner | 266 | $487 | $755 | $975 | $771 | $742 | $694 |
| | | Associate | 248 | $338 | $500 | $652 | $516 | $507 | $474 |
| | Non-Litigation | Partner | 561 | $632 | $890 | $1,200 | $920 | $912 | $871 |
| | | Associate | 473 | $420 | $574 | $750 | $595 | $612 | $575 |
| **Cincinnati OH** | Litigation | Partner | 25 | $326 | $503 | $590 | $474 | $440 | $444 |
| | | Associate | 41 | $259 | $310 | $357 | $312 | $290 | $278 |
| | Non-Litigation | Partner | 38 | $399 | $464 | $538 | $476 | $475 | $454 |

# Section I: High-Level Data Cuts

## Cities
By Matter Type

**2022 - Real Rates for Associate and Partner**  ·  **Trend Analysis - Mean**

| City | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| **Cincinnati OH** | Non-Litigation | Associate | 41 | $270 | $305 | $342 | $307 | $301 | $275 |
| **Cleveland OH** | Litigation | Partner | 66 | $425 | $509 | $675 | $564 | $559 | $575 |
| | | Associate | 58 | $257 | $284 | $350 | $323 | $318 | $310 |
| | Non-Litigation | Partner | 182 | $396 | $495 | $626 | $558 | $526 | $511 |
| | | Associate | 145 | $250 | $295 | $393 | $333 | $325 | $300 |
| **Columbia SC** | Litigation | Partner | 19 | $400 | $445 | $525 | $443 | $381 | $371 |
| | Non-Litigation | Partner | 27 | $331 | $398 | $483 | $417 | $415 | $396 |
| | | Associate | 18 | $232 | $271 | $324 | $281 | $265 | $257 |
| **Columbus OH** | Litigation | Partner | 13 | $405 | $550 | $590 | $532 | $524 | $511 |
| | | Associate | 15 | $255 | $275 | $304 | $288 | $289 | $285 |
| | Non-Litigation | Partner | 37 | $392 | $441 | $573 | $477 | $458 | $469 |
| | | Associate | 23 | $260 | $324 | $361 | $326 | $306 | $269 |
| **Dallas TX** | Litigation | Partner | 70 | $315 | $492 | $646 | $516 | $546 | $478 |
| | | Associate | 60 | $199 | $340 | $587 | $422 | $440 | $416 |

# Section I: High-Level Data Cuts

## Cities
By Matter Type

**2022 - Real Rates for Associate and Partner**                                    **Trend Analysis - Mean**

| City | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| **Dallas TX** | Non-Litigation | Partner | 146 | $495 | $655 | $995 | $759 | $750 | $755 |
| | | Associate | 143 | $345 | $548 | $729 | $553 | $529 | $531 |
| **Dayton OH** | Non-Litigation | Partner | 15 | $320 | $380 | $410 | $379 | $362 | $388 |
| **Denver CO** | Litigation | Partner | 32 | $414 | $495 | $644 | $553 | $512 | $451 |
| | | Associate | 30 | $286 | $345 | $415 | $348 | $349 | $332 |
| | Non-Litigation | Partner | 125 | $450 | $525 | $626 | $559 | $541 | $516 |
| | | Associate | 86 | $285 | $360 | $430 | $377 | $342 | $319 |
| **Detroit MI** | Litigation | Partner | 27 | $275 | $300 | $376 | $335 | $372 | $360 |
| | | Associate | 19 | $215 | $255 | $358 | $281 | $274 | $292 |
| | Non-Litigation | Partner | 60 | $313 | $392 | $454 | $383 | $388 | $369 |
| | | Associate | 32 | $230 | $253 | $280 | $256 | $269 | $248 |
| **Greenville SC** | Non-Litigation | Partner | 34 | $375 | $420 | $477 | $426 | $431 | $429 |
| | | Associate | 14 | $255 | $285 | $318 | $294 | $303 | $308 |
| **Hartford CT** | Litigation | Partner | 24 | $330 | $501 | $591 | $491 | $420 | $425 |

# Section I: High-Level Data Cuts

## Cities
By Matter Type

**2022 - Real Rates for Associate and Partner** | | | | | | **Trend Analysis - Mean**

| City | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| **Hartford CT** | Litigation | Associate | 13 | $293 | $320 | $369 | $327 | $294 | $307 |
| | Non-Litigation | Partner | 27 | $430 | $525 | $614 | $542 | $561 | $546 |
| | | Associate | 22 | $265 | $300 | $340 | $310 | $304 | $295 |
| **Honolulu HI** | Non-Litigation | Partner | 19 | $275 | $300 | $353 | $325 | $350 | $320 |
| | | Associate | 13 | $180 | $200 | $220 | $208 | $210 | $197 |
| **Houston TX** | Litigation | Partner | 60 | $409 | $668 | $880 | $678 | $653 | $618 |
| | | Associate | 67 | $350 | $409 | $548 | $444 | $414 | $381 |
| | Non-Litigation | Partner | 108 | $470 | $831 | $1,127 | $845 | $793 | $796 |
| | | Associate | 136 | $280 | $435 | $691 | $490 | $468 | $433 |
| **Indianapolis IN** | Litigation | Partner | 36 | $325 | $425 | $564 | $439 | $412 | $419 |
| | | Associate | 23 | $218 | $268 | $342 | $292 | $261 | $264 |
| | Non-Litigation | Partner | 37 | $331 | $405 | $473 | $432 | $454 | $456 |
| | | Associate | 21 | $260 | $274 | $320 | $300 | $285 | $274 |
| **Jackson MS** | Litigation | Partner | 66 | $296 | $319 | $375 | $339 | $376 | $368 |

# Section I: High-Level Data Cuts

## Cities
By Matter Type

**2022 - Real Rates for Associate and Partner**  **Trend Analysis - Mean**

| City | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| **Jackson MS** | Litigation | Associate | 56 | $55 | $225 | $250 | $178 | $203 | $175 |
| | Non-Litigation | Partner | 24 | $315 | $420 | $485 | $418 | $394 | $375 |
| | | Associate | 25 | $55 | $126 | $255 | $155 | $125 | $259 |
| **Kansas City MO** | Litigation | Partner | 74 | $413 | $450 | $556 | $472 | $450 | $450 |
| | | Associate | 50 | $252 | $329 | $385 | $319 | $316 | $305 |
| | Non-Litigation | Partner | 101 | $411 | $487 | $615 | $519 | $487 | $464 |
| | | Associate | 73 | $250 | $320 | $385 | $322 | $312 | $285 |
| **Las Vegas NV** | Non-Litigation | Partner | 20 | $350 | $425 | $525 | $440 | $422 | $432 |
| | | Associate | 11 | $238 | $267 | $368 | $301 | $297 | $282 |
| **Little Rock AR** | Non-Litigation | Partner | 11 | $215 | $215 | $308 | $264 | $256 | $298 |
| **Los Angeles CA** | Litigation | Partner | 322 | $516 | $725 | $1,045 | $799 | $739 | $702 |
| | | Associate | 408 | $400 | $615 | $855 | $642 | $606 | $564 |
| | Non-Litigation | Partner | 521 | $596 | $868 | $1,201 | $903 | $902 | $858 |
| | | Associate | 667 | $441 | $603 | $845 | $653 | $712 | $648 |

# Section I: High-Level Data Cuts

## Cities
By Matter Type

**2022 - Real Rates for Associate and Partner**

**Trend Analysis - Mean**

| City | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| **Louisville KY** | Litigation | Partner | 15 | $235 | $335 | $360 | $331 | $332 | $331 |
| | | Associate | 12 | $175 | $200 | $290 | $230 | $239 | $229 |
| **Memphis TN** | Litigation | Partner | 15 | $290 | $415 | $440 | $376 | $357 | $366 |
| | Non-Litigation | Partner | 19 | $308 | $347 | $390 | $356 | $340 | $340 |
| **Miami FL** | Litigation | Partner | 99 | $275 | $450 | $623 | $464 | $489 | $449 |
| | | Associate | 71 | $244 | $320 | $439 | $345 | $331 | $336 |
| | Non-Litigation | Partner | 134 | $450 | $575 | $779 | $608 | $577 | $564 |
| | | Associate | 91 | $305 | $446 | $547 | $435 | $418 | $405 |
| **Milwaukee WI** | Litigation | Partner | 16 | $245 | $338 | $400 | $379 | $390 | $395 |
| | Non-Litigation | Partner | 21 | $305 | $390 | $466 | $499 | $486 | $483 |
| | | Associate | 18 | $260 | $290 | $352 | $309 | $314 | $312 |
| **Minneapolis MN** | Litigation | Partner | 66 | $388 | $626 | $702 | $584 | $529 | $472 |
| | | Associate | 55 | $370 | $461 | $526 | $446 | $386 | $353 |
| | Non-Litigation | Partner | 119 | $491 | $627 | $763 | $626 | $600 | $578 |

# Section I: High-Level Data Cuts

## Cities
By Matter Type

**2022 - Real Rates for Associate and Partner**    **Trend Analysis - Mean**

| City | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|------|-------------|------|---|----------------|--------|----------------|------|------|------|
| **Minneapolis MN** | Non-Litigation | Associate | 83 | $340 | $421 | $528 | $425 | $408 | $384 |
| **Nashville TN** | Litigation | Partner | 24 | $275 | $320 | $456 | $363 | $378 | $403 |
| | Non-Litigation | Partner | 78 | $412 | $484 | $576 | $505 | $481 | $470 |
| | | Associate | 59 | $270 | $330 | $384 | $340 | $315 | $285 |
| **New Orleans LA** | Litigation | Partner | 47 | $290 | $332 | $412 | $343 | $330 | $340 |
| | | Associate | 42 | $231 | $243 | $340 | $278 | $290 | $275 |
| | Non-Litigation | Partner | 32 | $295 | $347 | $405 | $419 | $380 | $391 |
| | | Associate | 21 | $244 | $250 | $278 | $273 | $303 | $258 |
| **New York NY** | Litigation | Partner | 614 | $475 | $675 | $1,088 | $808 | $784 | $746 |
| | | Associate | 631 | $323 | $460 | $729 | $545 | $527 | $509 |
| | Non-Litigation | Partner | 1,376 | $765 | $1,235 | $1,638 | $1,189 | $1,139 | $1,090 |
| | | Associate | 1,809 | $550 | $776 | $1,050 | $796 | $766 | $716 |
| **Oklahoma City OK** | Non-Litigation | Partner | 14 | $235 | $338 | $393 | $337 | $319 | $311 |
| **Omaha NE** | Litigation | Partner | 12 | $293 | $339 | $353 | $329 | $338 | $341 |

# Section I: High-Level Data Cuts

## Cities
By Matter Type

**2022 - Real Rates for Associate and Partner**          **Trend Analysis - Mean**

| City | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| **Omaha NE** | Non-Litigation | Partner | 30 | $298 | $376 | $420 | $360 | $354 | $346 |
| | | Associate | 11 | $200 | $215 | $306 | $250 | $242 | $238 |
| **Orlando FL** | Litigation | Partner | 32 | $410 | $474 | $501 | $467 | $477 | $446 |
| | | Associate | 22 | $255 | $334 | $390 | $317 | $306 | $283 |
| | Non-Litigation | Partner | 35 | $399 | $425 | $475 | $441 | $477 | $460 |
| | | Associate | 22 | $233 | $273 | $347 | $320 | $322 | $297 |
| **Philadelphia PA** | Litigation | Partner | 330 | $485 | $636 | $837 | $664 | $625 | $621 |
| | | Associate | 330 | $365 | $430 | $530 | $447 | $414 | $392 |
| | Non-Litigation | Partner | 374 | $530 | $741 | $925 | $762 | $735 | $706 |
| | | Associate | 322 | $375 | $446 | $540 | $482 | $441 | $423 |
| **Phoenix AZ** | Litigation | Partner | 36 | $300 | $450 | $585 | $457 | $465 | $420 |
| | | Associate | 19 | $215 | $265 | $348 | $283 | $282 | $225 |
| | Non-Litigation | Partner | 74 | $353 | $425 | $539 | $470 | $423 | $391 |
| | | Associate | 43 | $225 | $290 | $340 | $305 | $270 | $259 |

# Section I: High-Level Data Cuts

## Cities
By Matter Type

**2022 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| City | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| **Pittsburgh PA** | Litigation | Partner | 57 | $425 | $614 | $767 | $599 | $565 | $539 |
| | | Associate | 66 | $267 | $430 | $522 | $404 | $391 | $350 |
| | Non-Litigation | Partner | 128 | $445 | $603 | $808 | $627 | $646 | $582 |
| | | Associate | 113 | $340 | $409 | $513 | $434 | $401 | $389 |
| **Portland ME** | Non-Litigation | Partner | 38 | $250 | $385 | $450 | $376 | $384 | $373 |
| **Portland OR** | Litigation | Partner | 36 | $348 | $476 | $585 | $481 | $440 | $417 |
| | | Associate | 47 | $360 | $420 | $484 | $425 | $389 | $354 |
| | Non-Litigation | Partner | 46 | $432 | $502 | $668 | $540 | $511 | $481 |
| | | Associate | 83 | $364 | $423 | $507 | $433 | $379 | $358 |
| **Raleigh NC** | Non-Litigation | Partner | 31 | $300 | $428 | $563 | $454 | $464 | $443 |
| **Richmond VA** | Litigation | Partner | 36 | $350 | $680 | $723 | $591 | $544 | $570 |
| | | Associate | 31 | $323 | $425 | $450 | $397 | $391 | $359 |
| | Non-Litigation | Partner | 53 | $536 | $765 | $920 | $756 | $715 | $690 |
| | | Associate | 54 | $425 | $489 | $625 | $515 | $474 | $453 |

# Section I: High-Level Data Cuts

## Cities
By Matter Type

**2022 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| City | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| **Rochester NY** | Non-Litigation | Partner | 12 | $270 | $360 | $488 | $386 | $341 | $446 |
| | | Associate | 13 | $220 | $310 | $375 | $314 | $278 | $287 |
| **Sacramento CA** | Non-Litigation | Partner | 11 | $381 | $437 | $682 | $534 | $559 | $516 |
| **Salt Lake City UT** | Litigation | Partner | 14 | $246 | $353 | $468 | $363 | $333 | $379 |
| | Non-Litigation | Partner | 42 | $297 | $371 | $447 | $391 | $363 | $353 |
| | | Associate | 22 | $220 | $240 | $270 | $248 | $247 | $228 |
| **San Diego CA** | Litigation | Associate | 23 | $151 | $225 | $300 | $255 | $258 | $264 |
| | Non-Litigation | Partner | 89 | $332 | $540 | $1,066 | $699 | $667 | $649 |
| | | Associate | 71 | $250 | $325 | $424 | $373 | $378 | $351 |
| **San Francisco CA** | Litigation | Partner | 143 | $423 | $675 | $995 | $742 | $711 | $691 |
| | | Associate | 98 | $325 | $430 | $731 | $525 | $517 | $470 |
| | Non-Litigation | Partner | 221 | $475 | $750 | $950 | $758 | $746 | $741 |
| | | Associate | 151 | $338 | $486 | $702 | $545 | $563 | $507 |
| **San Jose CA** | Litigation | Partner | 33 | $654 | $921 | $1,133 | $916 | $907 | $864 |

# Section I: High-Level Data Cuts

## Cities
By Matter Type

**2022 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| City | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| San Jose CA | Litigation | Associate | 22 | $461 | $580 | $745 | $608 | $593 | $498 |
| | Non-Litigation | Partner | 50 | $660 | $864 | $1,303 | $969 | $985 | $887 |
| | | Associate | 46 | $380 | $460 | $775 | $616 | $639 | $567 |
| Seattle WA | Litigation | Partner | 76 | $497 | $655 | $760 | $635 | $567 | $510 |
| | | Associate | 61 | $394 | $468 | $530 | $447 | $453 | $395 |
| | Non-Litigation | Partner | 148 | $410 | $526 | $760 | $571 | $547 | $547 |
| | | Associate | 113 | $310 | $395 | $502 | $422 | $401 | $377 |
| St. Louis MO | Litigation | Partner | 46 | $260 | $350 | $435 | $376 | $373 | $388 |
| | | Associate | 17 | $197 | $225 | $250 | $228 | $237 | $232 |
| | Non-Litigation | Partner | 57 | $352 | $419 | $540 | $451 | $446 | $473 |
| Tampa FL | Litigation | Partner | 31 | $369 | $508 | $595 | $490 | $467 | $452 |
| | | Associate | 15 | $269 | $298 | $368 | $316 | $302 | $306 |
| Trenton NJ | Non-Litigation | Partner | 21 | $408 | $600 | $700 | $569 | $620 | $581 |
| | | Associate | 12 | $480 | $495 | $500 | $448 | $376 | $387 |

# Section I: High-Level Data Cuts

## Cities
By Matter Type

**2022 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| City | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| **Washington DC** | Litigation | Partner | 490 | $716 | $925 | $1,062 | $922 | $897 | $842 |
| | | Associate | 428 | $504 | $670 | $707 | $631 | $604 | $558 |
| | Non-Litigation | Partner | 1,026 | $643 | $871 | $1,080 | $898 | $876 | $853 |
| | | Associate | 882 | $459 | $612 | $736 | $631 | $603 | $570 |
| **Wheeling WV** | Litigation | Partner | 22 | $746 | $821 | $850 | $777 | $748 | $801 |

# Section I: High-Level Data Cuts

## Cities
By Years of Experience

**2022 - Real Rates for Associate**                                    **Trend Analysis - Mean**

| City | Years of Experience | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|------|---------------------|---|----------------|--------|----------------|------|------|------|
| **Atlanta GA** | Fewer Than 3 Years | 23 | $307 | $338 | $397 | $357 | $334 | $292 |
| | 3 to Fewer Than 7 Years | 57 | $322 | $390 | $473 | $423 | $365 | $325 |
| | 7 or More Years | 63 | $325 | $413 | $587 | $453 | $459 | $416 |
| **Austin TX** | 7 or More Years | 11 | $339 | $570 | $692 | $524 | $446 | $429 |
| **Baltimore MD** | Fewer Than 3 Years | 15 | $349 | $400 | $475 | $417 | $395 | $341 |
| | 7 or More Years | 35 | $290 | $394 | $656 | $471 | $471 | $474 |
| **Birmingham AL** | 7 or More Years | 16 | $280 | $310 | $340 | $322 | $304 | $313 |
| **Boston MA** | Fewer Than 3 Years | 13 | $414 | $500 | $520 | $479 | $438 | |
| | 3 to Fewer Than 7 Years | 42 | $350 | $430 | $565 | $474 | $475 | $456 |
| | 7 or More Years | 51 | $363 | $450 | $630 | $511 | $524 | $497 |
| **Charlotte NC** | Fewer Than 3 Years | 12 | $293 | $295 | $335 | $344 | $368 | $315 |
| | 3 to Fewer Than 7 Years | 16 | $337 | $360 | $406 | $381 | $363 | $343 |
| | 7 or More Years | 21 | $365 | $405 | $570 | $500 | $480 | $432 |
| **Chicago IL** | Fewer Than 3 Years | 22 | $302 | $464 | $526 | $426 | $397 | $514 |

# Section I: High-Level Data Cuts

## Cities
By Years of Experience

**2022 - Real Rates for Associate**                              **Trend Analysis - Mean**

| City | Years of Experience | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|
| **Chicago IL** | 3 to Fewer Than 7 Years | 76 | $364 | $537 | $730 | $552 | $554 | $522 |
| | 7 or More Years | 106 | $401 | $576 | $759 | $594 | $587 | $571 |
| **Cleveland OH** | Fewer Than 3 Years | 18 | $250 | $285 | $360 | $309 | $309 | |
| | 3 to Fewer Than 7 Years | 47 | $260 | $295 | $415 | $336 | $331 | $282 |
| | 7 or More Years | 48 | $264 | $295 | $375 | $350 | $333 | $326 |
| **Dallas TX** | 3 to Fewer Than 7 Years | 23 | $335 | $395 | $615 | $506 | $499 | $546 |
| | 7 or More Years | 31 | $320 | $436 | $647 | $517 | $520 | $514 |
| **Denver CO** | 3 to Fewer Than 7 Years | 16 | $310 | $356 | $399 | $356 | $347 | $298 |
| | 7 or More Years | 29 | $285 | $380 | $453 | $393 | $346 | $337 |
| **Detroit MI** | 7 or More Years | 12 | $243 | $250 | $350 | $293 | $293 | $295 |
| **Hartford CT** | 7 or More Years | 11 | $293 | $338 | $379 | $336 | $292 | $308 |
| **Houston TX** | 3 to Fewer Than 7 Years | 20 | $420 | $517 | $580 | $497 | $497 | $494 |
| | 7 or More Years | 27 | $316 | $419 | $615 | $488 | $521 | $471 |
| **Indianapolis IN** | 7 or More Years | 11 | $260 | $288 | $350 | $300 | $267 | $259 |

# Section I: High-Level Data Cuts

## Cities
By Years of Experience

**2022 - Real Rates for Associate**                                    **Trend Analysis - Mean**

| City | Years of Experience | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|
| **Kansas City MO** | 3 to Fewer Than 7 Years | 15 | $270 | $325 | $360 | $318 | $295 | $283 |
| | 7 or More Years | 28 | $292 | $334 | $391 | $333 | $312 | $302 |
| **Los Angeles CA** | Fewer Than 3 Years | 63 | $429 | $595 | $654 | $556 | $524 | $488 |
| | 3 to Fewer Than 7 Years | 144 | $486 | $688 | $838 | $662 | $626 | $530 |
| | 7 or More Years | 171 | $351 | $550 | $840 | $600 | $634 | $586 |
| **Miami FL** | 3 to Fewer Than 7 Years | 19 | $300 | $360 | $457 | $380 | $331 | $313 |
| | 7 or More Years | 36 | $295 | $450 | $595 | $460 | $433 | $385 |
| **Minneapolis MN** | Fewer Than 3 Years | 11 | $374 | $405 | $446 | $408 | | $230 |
| | 3 to Fewer Than 7 Years | 27 | $340 | $451 | $510 | $421 | $358 | $356 |
| | 7 or More Years | 27 | $423 | $468 | $585 | $478 | $438 | $392 |
| **Nashville TN** | 7 or More Years | 12 | $219 | $245 | $345 | $282 | $266 | $262 |
| **New Orleans LA** | 3 to Fewer Than 7 Years | 12 | $232 | $243 | $265 | $261 | $242 | $245 |
| | 7 or More Years | 18 | $243 | $312 | $343 | $306 | $318 | $294 |
| **New York NY** | Fewer Than 3 Years | 142 | $443 | $622 | $775 | $629 | $600 | $652 |

# Section I: High-Level Data Cuts

## Cities
By Years of Experience

**2022 - Real Rates for Associate**                                    **Trend Analysis - Mean**

| City | Years of Experience | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|------|---------------------|---|----------------|--------|----------------|------|------|------|
| **New York NY** | 3 to Fewer Than 7 Years | 260 | $425 | $668 | $995 | $724 | $684 | $622 |
| | 7 or More Years | 453 | $439 | $713 | $1,015 | $740 | $727 | $703 |
| **Orlando FL** | 7 or More Years | 12 | $266 | $335 | $390 | $323 | $324 | $311 |
| **Philadelphia PA** | Fewer Than 3 Years | 42 | $350 | $420 | $429 | $396 | $401 | $375 |
| | 3 to Fewer Than 7 Years | 114 | $366 | $438 | $500 | $442 | $400 | $373 |
| | 7 or More Years | 152 | $390 | $509 | $565 | $491 | $437 | $430 |
| **Phoenix AZ** | 7 or More Years | 13 | $227 | $265 | $396 | $317 | $278 | $246 |
| **Pittsburgh PA** | Fewer Than 3 Years | 12 | $323 | $420 | $475 | $400 | $379 | |
| | 3 to Fewer Than 7 Years | 42 | $270 | $407 | $523 | $407 | $376 | $340 |
| | 7 or More Years | 28 | $340 | $425 | $535 | $434 | $402 | $370 |
| **Portland OR** | 3 to Fewer Than 7 Years | 42 | $348 | $390 | $428 | $390 | $340 | $303 |
| | 7 or More Years | 52 | $420 | $490 | $537 | $473 | $408 | $395 |
| **San Diego CA** | 3 to Fewer Than 7 Years | 17 | $268 | $325 | $380 | $347 | $398 | $347 |
| | 7 or More Years | 27 | $311 | $380 | $421 | $431 | $465 | $389 |

# Section I: High-Level Data Cuts

## Cities
By Years of Experience

**2022 - Real Rates for Associate**                              **Trend Analysis - Mean**

| City | Years of Experience | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|
| San Francisco CA | Fewer Than 3 Years | 18 | $486 | $510 | $597 | $537 | $455 | $497 |
| | 3 to Fewer Than 7 Years | 33 | $334 | $509 | $702 | $546 | $528 | $465 |
| | 7 or More Years | 59 | $328 | $465 | $717 | $545 | $536 | $504 |
| San Jose CA | 7 or More Years | 14 | $406 | $497 | $605 | $596 | $706 | $630 |
| Seattle WA | 3 to Fewer Than 7 Years | 31 | $290 | $321 | $339 | $329 | $304 | $285 |
| | 7 or More Years | 41 | $348 | $429 | $473 | $427 | $400 | $377 |
| St. Louis MO | 7 or More Years | 13 | $200 | $225 | $275 | $260 | $262 | $259 |
| Washington DC | Fewer Than 3 Years | 73 | $400 | $506 | $610 | $509 | $425 | $532 |
| | 3 to Fewer Than 7 Years | 183 | $455 | $580 | $698 | $599 | $535 | $495 |
| | 7 or More Years | 206 | $547 | $695 | $870 | $731 | $683 | $634 |

# Section I: High-Level Data Cuts

## Cities
By Years of Experience

**2022 - Real Rates for Partner**

**Trend Analysis - Mean**

| City | Years of Experience | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|
| **Albany NY** | 21 or More Years | 14 | $305 | $305 | $325 | $341 | $377 | $376 |
| **Atlanta GA** | Fewer Than 21 Years | 83 | $440 | $579 | $780 | $616 | $558 | $565 |
| | 21 or More Years | 124 | $473 | $625 | $895 | $680 | $624 | $602 |
| **Austin TX** | Fewer Than 21 Years | 22 | $423 | $495 | $772 | $620 | $585 | $543 |
| | 21 or More Years | 39 | $450 | $550 | $858 | $624 | $568 | $532 |
| **Baltimore MD** | Fewer Than 21 Years | 31 | $373 | $509 | $762 | $583 | $547 | $531 |
| | 21 or More Years | 72 | $509 | $625 | $710 | $642 | $669 | $618 |
| **Birmingham AL** | Fewer Than 21 Years | 36 | $310 | $353 | $409 | $362 | $364 | $359 |
| | 21 or More Years | 32 | $375 | $480 | $553 | $470 | $455 | $439 |
| **Boston MA** | Fewer Than 21 Years | 74 | $475 | $650 | $868 | $686 | $708 | $644 |
| | 21 or More Years | 131 | $415 | $719 | $909 | $735 | $724 | $654 |
| **Bridgeport CT** | 21 or More Years | 19 | $375 | $537 | $600 | $499 | $487 | $441 |
| **Buffalo NY** | Fewer Than 21 Years | 20 | $329 | $343 | $352 | $331 | $326 | $333 |
| | 21 or More Years | 15 | $319 | $340 | $380 | $358 | $352 | $356 |

# Section I: High-Level Data Cuts

## Cities
By Years of Experience

**2022 - Real Rates for Partner**       **Trend Analysis - Mean**

| City | Years of Experience | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|
| **Charleston WV** | 21 or More Years | 24 | $268 | $300 | $325 | $301 | $302 | $307 |
| **Charlotte NC** | Fewer Than 21 Years | 43 | $507 | $596 | $679 | $626 | $596 | $553 |
|  | 21 or More Years | 42 | $575 | $701 | $930 | $774 | $775 | $710 |
| **Chicago IL** | Fewer Than 21 Years | 183 | $532 | $768 | $1,057 | $812 | $783 | $772 |
|  | 21 or More Years | 335 | $575 | $810 | $1,168 | $889 | $879 | $850 |
| **Cincinnati OH** | Fewer Than 21 Years | 18 | $403 | $485 | $538 | $479 | $404 | $425 |
|  | 21 or More Years | 29 | $425 | $490 | $575 | $498 | $492 | $472 |
| **Cleveland OH** | Fewer Than 21 Years | 68 | $393 | $435 | $550 | $501 | $478 | $460 |
|  | 21 or More Years | 116 | $456 | $527 | $740 | $613 | $580 | $573 |
| **Columbia SC** | 21 or More Years | 18 | $388 | $446 | $550 | $463 | $423 | $399 |
| **Columbus OH** | 21 or More Years | 26 | $418 | $495 | $627 | $520 | $494 | $470 |
| **Dallas TX** | Fewer Than 21 Years | 53 | $401 | $525 | $643 | $569 | $550 | $542 |
|  | 21 or More Years | 72 | $525 | $683 | $993 | $757 | $830 | $769 |
| **Denver CO** | Fewer Than 21 Years | 47 | $426 | $490 | $543 | $499 | $494 | $460 |

# Section I: High-Level Data Cuts

## Cities
By Years of Experience

**2022 - Real Rates for Partner**                                        **Trend Analysis - Mean**

| City | Years of Experience | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|------|--------------------|---|----------------|--------|----------------|------|------|------|
| **Denver CO** | 21 or More Years | | | | | | | |
| | | 75 | $452 | $582 | $700 | $607 | $583 | $541 |
| **Detroit MI** | Fewer Than 21 Years | | | | | | | |
| | | 18 | $250 | $378 | $440 | $360 | $377 | $337 |
| | 21 or More Years | | | | | | | |
| | | 47 | $297 | $340 | $455 | $369 | $390 | $360 |
| **Greenville SC** | Fewer Than 21 Years | | | | | | | |
| | | 11 | $358 | $375 | $385 | $373 | $354 | $378 |
| | 21 or More Years | | | | | | | |
| | | 18 | $389 | $441 | $531 | $458 | $462 | $452 |
| **Hartford CT** | Fewer Than 21 Years | | | | | | | |
| | | 16 | $360 | $475 | $519 | $452 | $397 | $425 |
| | 21 or More Years | | | | | | | |
| | | 27 | $385 | $525 | $730 | $565 | $555 | $536 |
| **Honolulu HI** | 21 or More Years | | | | | | | |
| | | 15 | $287 | $300 | $361 | $333 | $375 | $369 |
| **Houston TX** | Fewer Than 21 Years | | | | | | | |
| | | 51 | $475 | $715 | $915 | $745 | $691 | $734 |
| | 21 or More Years | | | | | | | |
| | | 59 | $501 | $854 | $1,060 | $850 | $794 | $785 |
| **Indianapolis IN** | Fewer Than 21 Years | | | | | | | |
| | | 22 | $270 | $405 | $450 | $384 | $383 | $399 |
| | 21 or More Years | | | | | | | |
| | | 37 | $346 | $448 | $649 | $477 | $470 | $452 |
| **Jackson MS** | Fewer Than 21 Years | | | | | | | |
| | | 15 | $296 | $333 | $382 | $338 | $355 | $329 |
| | 21 or More Years | | | | | | | |
| | | 22 | $295 | $360 | $485 | $401 | $399 | $370 |

# Section I: High-Level Data Cuts

## Cities
By Years of Experience

**2022 - Real Rates for Partner**

**Trend Analysis - Mean**

| City | Years of Experience | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|
| **Kansas City MO** | Fewer Than 21 Years | 46 | $400 | $450 | $537 | $473 | $411 | $397 |
| | 21 or More Years | 68 | $440 | $553 | $658 | $539 | $497 | $491 |
| **Las Vegas NV** | Fewer Than 21 Years | 12 | $284 | $381 | $495 | $389 | $349 | $343 |
| | 21 or More Years | 13 | $350 | $425 | $515 | $468 | $456 | $472 |
| **Los Angeles CA** | Fewer Than 21 Years | 183 | $533 | $801 | $1,075 | $804 | $797 | $682 |
| | 21 or More Years | 333 | $550 | $765 | $1,133 | $863 | $842 | $808 |
| **Memphis TN** | Fewer Than 21 Years | 14 | $288 | $331 | $380 | $345 | $317 | $328 |
| | 21 or More Years | 15 | $355 | $415 | $425 | $394 | $382 | $375 |
| **Miami FL** | Fewer Than 21 Years | 57 | $370 | $450 | $598 | $490 | $498 | $443 |
| | 21 or More Years | 104 | $388 | $581 | $749 | $584 | $580 | $536 |
| **Milwaukee WI** | 21 or More Years | 16 | $302 | $454 | $613 | $589 | $515 | $530 |
| **Minneapolis MN** | Fewer Than 21 Years | 36 | $470 | $530 | $607 | $532 | $486 | $499 |
| | 21 or More Years | 84 | $507 | $675 | $796 | $656 | $620 | $589 |
| **Nashville TN** | Fewer Than 21 Years | 28 | $375 | $405 | $535 | $449 | $405 | $397 |

# Section I: High-Level Data Cuts

## Cities
By Years of Experience

**2022 - Real Rates for Partner**                                            **Trend Analysis - Mean**

| City | Years of Experience | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|------|--------------------|---|----------------|--------|----------------|------|------|------|
| **Nashville TN** | 21 or More Years | 44 | $425 | $475 | $553 | $498 | $489 | $469 |
| **New Orleans LA** | Fewer Than 21 Years | 22 | $313 | $329 | $347 | $341 | $322 | $346 |
|  | 21 or More Years | 39 | $309 | $360 | $438 | $407 | $365 | $382 |
| **New York NY** | Fewer Than 21 Years | 420 | $641 | $1,021 | $1,460 | $1,058 | $1,028 | $979 |
|  | 21 or More Years | 919 | $637 | $1,070 | $1,560 | $1,091 | $1,060 | $995 |
| **Oklahoma City OK** | 21 or More Years | 15 | $220 | $343 | $390 | $326 | $328 | $313 |
| **Omaha NE** | Fewer Than 21 Years | 12 | $255 | $273 | $345 | $293 | $295 | $307 |
|  | 21 or More Years | 19 | $341 | $390 | $420 | $379 | $383 | $363 |
| **Orlando FL** | Fewer Than 21 Years | 15 | $396 | $404 | $453 | $432 | $502 | $450 |
|  | 21 or More Years | 25 | $411 | $470 | $475 | $438 | $453 | $428 |
| **Philadelphia PA** | Fewer Than 21 Years | 163 | $453 | $600 | $739 | $618 | $599 | $561 |
|  | 21 or More Years | 287 | $525 | $715 | $900 | $738 | $708 | $697 |
| **Phoenix AZ** | Fewer Than 21 Years | 22 | $302 | $426 | $467 | $412 | $381 | $378 |
|  | 21 or More Years | 60 | $375 | $468 | $584 | $499 | $481 | $425 |

# Section I: High-Level Data Cuts

## Cities
By Years of Experience

**2022 - Real Rates for Partner**                    **Trend Analysis - Mean**

| City | Years of Experience | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|
| **Pittsburgh PA** | Fewer Than 21 Years | 41 | $420 | $605 | $754 | $598 | $572 | $490 |
| | 21 or More Years | 76 | $428 | $564 | $756 | $603 | $611 | $565 |
| **Portland ME** | Fewer Than 21 Years | 12 | $308 | $340 | $416 | $347 | $351 | $347 |
| | 21 or More Years | 19 | $218 | $385 | $450 | $358 | $385 | $346 |
| **Portland OR** | Fewer Than 21 Years | 33 | $400 | $465 | $639 | $522 | $471 | $418 |
| | 21 or More Years | 35 | $450 | $502 | $653 | $533 | $516 | $485 |
| **Raleigh NC** | Fewer Than 21 Years | 15 | $281 | $366 | $467 | $393 | $414 | $430 |
| | 21 or More Years | 24 | $275 | $425 | $595 | $454 | $487 | $468 |
| **Richmond VA** | Fewer Than 21 Years | 25 | $585 | $723 | $775 | $682 | $652 | $626 |
| | 21 or More Years | 30 | $425 | $680 | $976 | $713 | $629 | $625 |
| **Salt Lake City UT** | Fewer Than 21 Years | 19 | $293 | $368 | $430 | $364 | $334 | $349 |
| | 21 or More Years | 24 | $314 | $425 | $515 | $424 | $392 | $375 |
| **San Diego CA** | Fewer Than 21 Years | 23 | $380 | $425 | $680 | $563 | $608 | $531 |
| | 21 or More Years | 58 | $447 | $707 | $1,212 | $822 | $739 | $654 |

# Section I: High-Level Data Cuts

## Cities
By Years of Experience

**2022 - Real Rates for Partner**      **Trend Analysis - Mean**

| City | Years of Experience | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|
| San Francisco CA | Fewer Than 21 Years | 89 | $481 | $750 | $987 | $768 | $715 | $692 |
| | 21 or More Years | 149 | $523 | $755 | $994 | $784 | $768 | $764 |
| San Jose CA | Fewer Than 21 Years | 13 | $661 | $945 | $1,382 | $1,016 | $970 | $851 |
| | 21 or More Years | 51 | $665 | $864 | $1,251 | $963 | $982 | $910 |
| Seattle WA | Fewer Than 21 Years | 63 | $400 | $500 | $668 | $542 | $476 | $448 |
| | 21 or More Years | 81 | $495 | $600 | $760 | $625 | $575 | $564 |
| St. Louis MO | Fewer Than 21 Years | 30 | $363 | $402 | $461 | $416 | $431 | $427 |
| | 21 or More Years | 55 | $300 | $429 | $544 | $441 | $431 | $455 |
| Tampa FL | Fewer Than 21 Years | 22 | $312 | $372 | $510 | $409 | $402 | $376 |
| | 21 or More Years | 37 | $375 | $498 | $570 | $495 | $514 | $486 |
| Trenton NJ | 21 or More Years | 15 | $419 | $553 | $700 | $573 | $642 | $617 |
| Washington DC | Fewer Than 21 Years | 364 | $650 | $856 | $980 | $850 | $818 | $780 |
| | 21 or More Years | 673 | $675 | $890 | $1,096 | $920 | $899 | $870 |
| Wheeling WV | Fewer Than 21 Years | 12 | $737 | $762 | $774 | $723 | $720 | $528 |

# Section I: High-Level Data Cuts

## Cities
By Matter Type

**2022 - Real Rates for Associate and Partner**  **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|
| **Albany NY** | Partner | 19 | $288 | $305 | $325 | $325 | $353 | $359 |
| | Associate | 19 | $230 | $240 | $250 | $250 | $236 | $236 |
| **Atlanta GA** | Partner | 294 | $450 | $616 | $842 | $659 | $615 | $605 |
| | Associate | 297 | $325 | $414 | $579 | $459 | $426 | $404 |
| **Austin TX** | Partner | 90 | $420 | $495 | $709 | $572 | $548 | $527 |
| | Associate | 65 | $317 | $406 | $630 | $465 | $407 | $411 |
| **Baltimore MD** | Partner | 140 | $395 | $600 | $774 | $621 | $631 | $612 |
| | Associate | 140 | $303 | $412 | $582 | $462 | $476 | $451 |
| **Baton Rouge LA** | Partner | 13 | $295 | $335 | $436 | $372 | $365 | $367 |
| **Birmingham AL** | Partner | 87 | $325 | $393 | $480 | $405 | $396 | $389 |
| | Associate | 82 | $264 | $300 | $325 | $298 | $295 | $301 |
| **Boise City ID** | Partner | 13 | $242 | $295 | $311 | $310 | $319 | $295 |
| **Boston MA** | Partner | 257 | $450 | $695 | $903 | $725 | $713 | $663 |
| | Associate | 258 | $357 | $500 | $661 | $534 | $523 | $476 |

# Section I: High-Level Data Cuts

## Cities
By Matter Type

**2022 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **Bridgeport CT** | Partner | 29 | $375 | $515 | $589 | $491 | $479 | $432 |
| | Associate | 14 | $246 | $295 | $350 | $302 | $270 | $265 |
| **Buffalo NY** | Partner | 41 | $325 | $341 | $360 | $344 | $336 | $343 |
| | Associate | 27 | $211 | $250 | $265 | $245 | $238 | $246 |
| **Burlington VT** | Partner | 13 | $210 | $265 | $300 | $279 | $258 | $268 |
| **Charleston SC** | Partner | 13 | $283 | $300 | $442 | $352 | $358 | $340 |
| **Charleston WV** | Partner | 34 | $250 | $300 | $325 | $295 | $291 | $300 |
| **Charlotte NC** | Partner | 103 | $549 | $639 | $772 | $693 | $668 | $639 |
| | Associate | 105 | $320 | $365 | $472 | $432 | $435 | $403 |
| **Chicago IL** | Partner | 762 | $600 | $829 | $1,135 | $877 | $865 | $820 |
| | Associate | 664 | $400 | $540 | $722 | $568 | $584 | $546 |
| **Cincinnati OH** | Partner | 58 | $395 | $474 | $564 | $475 | $463 | $451 |
| | Associate | 72 | $260 | $305 | $350 | $309 | $296 | $276 |
| **Cleveland OH** | Partner | 212 | $397 | $500 | $638 | $559 | $536 | $531 |

# Section I: High-Level Data Cuts

## Cities
By Matter Type

**2022 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **Cleveland OH** | Associate | | | | | | | |
| | | 184 | $255 | $295 | $380 | $330 | $322 | $303 |
| **Columbia SC** | Partner | | | | | | | |
| | | 41 | $350 | $410 | $510 | $426 | $401 | $383 |
| | Associate | | | | | | | |
| | | 32 | $250 | $315 | $345 | $305 | $273 | $256 |
| **Columbus OH** | Partner | | | | | | | |
| | | 49 | $400 | $471 | $590 | $493 | $492 | $486 |
| | Associate | | | | | | | |
| | | 33 | $255 | $290 | $350 | $310 | $297 | $276 |
| **Dallas TX** | Partner | | | | | | | |
| | | 196 | $420 | $565 | $918 | $667 | $676 | $658 |
| | Associate | | | | | | | |
| | | 186 | $303 | $493 | $690 | $512 | $497 | $494 |
| **Dayton OH** | Partner | | | | | | | |
| | | 15 | $353 | $385 | $423 | $396 | $403 | $414 |
| **Denver CO** | Partner | | | | | | | |
| | | 146 | $445 | $521 | $626 | $558 | $535 | $496 |
| | Associate | | | | | | | |
| | | 112 | $285 | $356 | $425 | $370 | $344 | $324 |
| **Detroit MI** | Partner | | | | | | | |
| | | 83 | $297 | $350 | $443 | $367 | $383 | $366 |
| | Associate | | | | | | | |
| | | 49 | $215 | $253 | $301 | $266 | $271 | $266 |
| **Greenville SC** | Partner | | | | | | | |
| | | 38 | $375 | $420 | $488 | $428 | $428 | $425 |
| | Associate | | | | | | | |
| | | 19 | $265 | $295 | $346 | $311 | $314 | $312 |

# Section I: High-Level Data Cuts

## Cities
By Matter Type

**2022 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **Hartford CT** | Partner | 47 | $356 | $506 | $599 | $518 | $500 | $497 |
| | Associate | 33 | $274 | $319 | $350 | $316 | $300 | $301 |
| **Honolulu HI** | Partner | 23 | $275 | $300 | $360 | $324 | $354 | $350 |
| | Associate | 15 | $189 | $200 | $206 | $205 | $205 | $198 |
| **Houston TX** | Partner | 153 | $440 | $750 | $1,025 | $783 | $736 | $732 |
| | Associate | 188 | $315 | $425 | $610 | $473 | $444 | $416 |
| **Indianapolis IN** | Partner | 71 | $328 | $421 | $523 | $436 | $433 | $436 |
| | Associate | 41 | $250 | $271 | $342 | $296 | $272 | $268 |
| **Jackson MS** | Partner | 83 | $300 | $323 | $404 | $358 | $382 | $370 |
| | Associate | 69 | $55 | $225 | $250 | $171 | $174 | $187 |
| **Jacksonville FL** | Partner | 22 | $280 | $300 | $483 | $372 | $456 | $387 |
| **Kansas City MO** | Partner | 159 | $411 | $470 | $575 | $499 | $472 | $457 |
| | Associate | 114 | $250 | $325 | $385 | $321 | $314 | $294 |
| **Las Vegas NV** | Partner | 31 | $300 | $406 | $511 | $425 | $435 | $426 |

# Section I: High-Level Data Cuts

## Cities
By Matter Type

**2022 - Real Rates for Associate and Partner**　　　　　　　　**Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **Las Vegas NV** | Associate | 15 | $250 | $308 | $361 | $314 | $313 | $283 |
| **Little Rock AR** | Partner | 16 | $215 | $250 | $311 | $271 | $260 | $287 |
| | Associate | 17 | $150 | $150 | $185 | $173 | $171 | $188 |
| **Los Angeles CA** | Partner | 743 | $550 | $825 | $1,140 | $863 | $844 | $796 |
| | Associate | 1007 | $429 | $610 | $847 | $649 | $676 | $618 |
| **Louisville KY** | Partner | 22 | $265 | $325 | $360 | $326 | $343 | $339 |
| | Associate | 20 | $196 | $248 | $271 | $240 | $232 | $232 |
| **Madison WI** | Partner | 11 | $378 | $425 | $535 | $447 | $426 | $437 |
| **Memphis TN** | Partner | 30 | $290 | $359 | $425 | $365 | $349 | $354 |
| **Miami FL** | Partner | 214 | $364 | $528 | $688 | $542 | $535 | $504 |
| | Associate | 156 | $271 | $387 | $476 | $393 | $379 | $372 |
| **Milwaukee WI** | Partner | 36 | $290 | $375 | $464 | $448 | $449 | $448 |
| | Associate | 23 | $265 | $290 | $361 | $312 | $310 | $300 |
| **Minneapolis MN** | Partner | 168 | $454 | $626 | $728 | $611 | $576 | $543 |

# Section I: High-Level Data Cuts

## Cities
By Matter Type

**2022 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|
| **Minneapolis MN** | Associate | 135 | $344 | $435 | $526 | $433 | $398 | $371 |
| **Nashville TN** | Partner | 101 | $380 | $470 | $558 | $478 | $462 | $454 |
| | Associate | 69 | $250 | $323 | $380 | $327 | $299 | $273 |
| **New Haven CT** | Partner | 11 | $308 | $438 | $533 | $431 | $428 | $449 |
| **New Orleans LA** | Partner | 75 | $295 | $334 | $412 | $373 | $351 | $362 |
| | Associate | 59 | $237 | $250 | $337 | $277 | $293 | $270 |
| **New York NY** | Partner | 1791 | $625 | $1,050 | $1,538 | $1,076 | $1,043 | $990 |
| | Associate | 2292 | $460 | $713 | $980 | $731 | $707 | $664 |
| **Oklahoma City OK** | Partner | 23 | $220 | $313 | $365 | $311 | $309 | $299 |
| | Associate | 12 | $200 | $219 | $268 | $242 | $208 | $208 |
| **Omaha NE** | Partner | 40 | $297 | $355 | $411 | $349 | $352 | $344 |
| | Associate | 13 | $192 | $215 | $270 | $240 | $237 | $233 |
| **Orlando FL** | Partner | 61 | $400 | $460 | $475 | $455 | $477 | $454 |
| | Associate | 44 | $249 | $293 | $390 | $318 | $312 | $290 |

# Section I: High-Level Data Cuts

## Cities
By Matter Type

**2022 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|
| **Philadelphia PA** | Partner | 605 | $509 | $695 | $884 | $716 | $686 | $670 |
| | Associate | 583 | $369 | $433 | $530 | $465 | $429 | $409 |
| **Phoenix AZ** | Partner | 105 | $330 | $427 | $561 | $466 | $435 | $400 |
| | Associate | 60 | $225 | $280 | $342 | $299 | $273 | $249 |
| **Pittsburgh PA** | Partner | 167 | $435 | $605 | $804 | $619 | $623 | $567 |
| | Associate | 165 | $320 | $415 | $520 | $423 | $397 | $373 |
| **Portland ME** | Partner | 43 | $250 | $385 | $450 | $398 | $409 | $386 |
| | Associate | 22 | $180 | $200 | $250 | $219 | $252 | $244 |
| **Portland OR** | Partner | 73 | $400 | $498 | $640 | $517 | $489 | $457 |
| | Associate | 109 | $362 | $423 | $503 | $430 | $383 | $357 |
| **Raleigh NC** | Partner | 47 | $275 | $395 | $539 | $431 | $453 | $437 |
| | Associate | 24 | $213 | $275 | $303 | $272 | $329 | $342 |
| **Richmond VA** | Partner | 81 | $490 | $695 | $810 | $686 | $639 | $634 |
| | Associate | 78 | $355 | $450 | $557 | $474 | $447 | $420 |

# Section I: High-Level Data Cuts

## Cities
By Matter Type

**2022 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|
| **Rochester NY** | Partner | 14 | $261 | $360 | $425 | $369 | $325 | $389 |
| | Associate | 18 | $221 | $278 | $365 | $298 | $267 | $274 |
| **Sacramento CA** | Partner | 17 | $375 | $430 | $659 | $503 | $478 | $436 |
| | Associate | 13 | $263 | $350 | $375 | $320 | $341 | $333 |
| **Salt Lake City UT** | Partner | 53 | $290 | $370 | $449 | $384 | $355 | $361 |
| | Associate | 24 | $220 | $240 | $270 | $252 | $244 | $227 |
| **San Antonio TX** | Partner | 12 | $406 | $440 | $450 | $436 | $499 | $422 |
| **San Diego CA** | Partner | 107 | $316 | $457 | $996 | $643 | $637 | $569 |
| | Associate | 90 | $225 | $300 | $380 | $340 | $342 | $306 |
| **San Francisco CA** | Partner | 320 | $440 | $718 | $979 | $751 | $732 | $721 |
| | Associate | 239 | $334 | $458 | $706 | $537 | $544 | $494 |
| **San Jose CA** | Partner | 72 | $658 | $878 | $1,209 | $949 | $956 | $880 |
| | Associate | 61 | $401 | $505 | $749 | $613 | $621 | $544 |
| **Seattle WA** | Partner | 194 | $443 | $548 | $760 | $592 | $554 | $535 |

# Section I: High-Level Data Cuts

## Cities
By Matter Type

**2022 - Real Rates for Associate and Partner**                                    **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|------|------|---|---------------|--------|----------------|------|------|------|
| **Seattle WA** | Associate | 158 | $322 | $405 | $530 | $431 | $422 | $384 |
| **St. Louis MO** | Partner | 92 | $337 | $396 | $485 | $421 | $419 | $440 |
| | Associate | 22 | $200 | $250 | $280 | $251 | $253 | $251 |
| **Tallahassee FL** | Partner | 11 | $345 | $515 | $678 | $531 | $486 | $487 |
| **Tampa FL** | Partner | 69 | $345 | $411 | $560 | $462 | $475 | $453 |
| | Associate | 27 | $250 | $290 | $325 | $302 | $304 | $298 |
| **Trenton NJ** | Partner | 28 | $412 | $543 | $685 | $555 | $599 | $572 |
| | Associate | 15 | $393 | $495 | $530 | $445 | $383 | $372 |
| **Washington DC** | Partner | 1316 | $665 | $888 | $1,080 | $905 | $881 | $850 |
| | Associate | 1177 | $469 | $630 | $730 | $631 | $604 | $566 |
| **Wheeling WV** | Partner | 37 | $771 | $837 | $917 | $835 | $770 | $778 |
| | Associate | 101 | $392 | $518 | $654 | $514 | $487 | $519 |

# Section I: High-Level Data Cuts

## Detailed Practice Area
By Matter Type

**2022 — Real Rates for Associate, Paralegal, Partner**

**Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| **Bankruptcy and Collections** | Litigation | Partner | 231 | $325 | $425 | $604 | $495 | $489 | $468 |
| | | Associate | 156 | $255 | $310 | $395 | $352 | $366 | $362 |
| | | Paralegal | 105 | $160 | $200 | $255 | $212 | $196 | $198 |
| | Non-Litigation | Partner | 223 | $340 | $410 | $548 | $484 | $525 | $567 |
| | | Associate | 122 | $254 | $345 | $420 | $374 | $448 | $457 |
| | | Paralegal | 99 | $140 | $194 | $235 | $200 | $195 | $216 |
| **Commercial** | Litigation | Partner | 845 | $450 | $649 | $949 | $740 | $686 | $657 |
| | | Associate | 798 | $328 | $444 | $650 | $520 | $484 | $447 |
| | | Paralegal | 387 | $186 | $265 | $345 | $274 | $259 | $251 |
| | Non-Litigation | Partner | 508 | $513 | $690 | $973 | $776 | $780 | $786 |
| | | Associate | 349 | $353 | $464 | $629 | $534 | $550 | $555 |
| | | Paralegal | 110 | $200 | $272 | $356 | $284 | $274 | $282 |
| **Corporate: Antitrust and Competition** | Litigation | Partner | 24 | $887 | $1,068 | $1,321 | $1,060 | $926 | $795 |

# Section I: High-Level Data Cuts

**Detailed Practice Area**
By Matter Type

**2022 — Real Rates for Associate, Paralegal, Partner**                    **Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| Corporate: Antitrust and Competition | Litigation | Paralegal | 35 | $311 | $360 | $419 | $370 | $317 | $279 |
| | Non-Litigation | Partner | 43 | $888 | $1,208 | $1,444 | $1,182 | $1,082 | $1,050 |
| | | Associate | 62 | $583 | $703 | $912 | $713 | $665 | $651 |
| Corporate: Governance | Non-Litigation | Partner | 144 | $858 | $1,062 | $1,462 | $1,128 | $1,075 | $1,066 |
| | | Associate | 133 | $538 | $710 | $883 | $719 | $690 | $667 |
| | | Paralegal | 40 | $277 | $325 | $375 | $310 | $307 | $281 |
| Corporate: Information and Technology | Non-Litigation | Partner | 31 | $551 | $755 | $965 | $818 | $768 | $771 |
| | | Associate | 29 | $360 | $462 | $578 | $496 | $452 | $502 |
| Corporate: Mergers, Acquisitions and Divestitures | Non-Litigation | Partner | 364 | $651 | $923 | $1,379 | $1,029 | $931 | $948 |
| | | Associate | 430 | $486 | $695 | $955 | $736 | $630 | $619 |
| | | Paralegal | 118 | $302 | $390 | $468 | $379 | $331 | $303 |
| Corporate: Other | Litigation | Partner | 883 | $520 | $725 | $950 | $774 | $757 | $715 |
| | | Associate | 743 | $375 | $520 | $687 | $540 | $517 | $487 |

# Section I: High-Level Data Cuts

## Detailed Practice Area
By Matter Type

**2022 — Real Rates for Associate, Paralegal, Partner**                      **Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| **Corporate: Other** | Litigation | Paralegal | 324 | $190 | $265 | $336 | $261 | $263 | $241 |
| | Non-Litigation | Partner | 1,641 | $539 | $875 | $1,212 | $916 | $854 | $832 |
| | | Associate | 1,450 | $430 | $622 | $800 | $649 | $612 | $585 |
| | | Paralegal | 501 | $200 | $300 | $410 | $307 | $283 | $260 |
| **Corporate: Partnerships and Joint Ventures** | Non-Litigation | Partner | 68 | $986 | $1,424 | $1,740 | $1,277 | $1,207 | $1,175 |
| | | Associate | 95 | $734 | $977 | $1,180 | $943 | $895 | $778 |
| **Corporate: Regulatory and Compliance** | Litigation | Partner | 233 | $650 | $835 | $1,017 | $869 | $860 | $814 |
| | | Associate | 219 | $430 | $541 | $723 | $580 | $588 | $558 |
| | | Paralegal | 88 | $214 | $275 | $353 | $292 | $281 | $270 |
| | Non-Litigation | Partner | 794 | $535 | $726 | $965 | $785 | $755 | $745 |
| | | Associate | 696 | $400 | $533 | $695 | $567 | $534 | $518 |
| | | Paralegal | 174 | $184 | $221 | $300 | $246 | $241 | $242 |
| **Corporate: Tax** | Litigation | Paralegal | 14 | $153 | $175 | $190 | $192 | $187 | $160 |

# Section I: High-Level Data Cuts

## Detailed Practice Area
By Matter Type

**2022 — Real Rates for Associate, Paralegal, Partner**

**Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| **Corporate: Tax** | Non-Litigation | Partner | 266 | $641 | $905 | $1,165 | $943 | $939 | $914 |
| | | Associate | 190 | $499 | $659 | $877 | $699 | $660 | $607 |
| | | Paralegal | 44 | $210 | $277 | $362 | $292 | $302 | $310 |
| **Corporate: Treasury** | Non-Litigation | Partner | 35 | $800 | $935 | $1,019 | $968 | $900 | $997 |
| | | Associate | 33 | $399 | $502 | $698 | $590 | $515 | $487 |
| **Employment and Labor: ADA** | Litigation | Partner | 11 | $446 | $502 | $634 | $532 | $513 | $486 |
| | | Associate | 21 | $340 | $372 | $415 | $380 | $361 | $347 |
| **Employment and Labor: Agreements** | Litigation | Partner | 34 | $436 | $711 | $874 | $721 | $677 | $680 |
| | | Associate | 18 | $347 | $475 | $654 | $507 | $497 | $530 |
| | Non-Litigation | Associate | 41 | $266 | $350 | $420 | $359 | $352 | $383 |
| | | Paralegal | 15 | $158 | $180 | $186 | $179 | $192 | $186 |
| **Employment and Labor: Compensation and Benefits** | Litigation | Partner | 26 | $427 | $554 | $667 | $612 | $605 | $606 |
| | | Associate | 15 | $292 | $385 | $547 | $453 | $427 | $422 |

# Section I: High-Level Data Cuts

## Detailed Practice Area
By Matter Type

**2022 — Real Rates for Associate, Paralegal, Partner**

**Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| Employment and Labor: Immigration | Non-Litigation | Partner | 50 | $496 | $617 | $748 | $638 | $601 | $582 |
| | | Associate | 45 | $315 | $455 | $567 | $462 | $401 | $382 |
| | | Paralegal | 25 | $153 | $200 | $218 | $183 | $179 | $197 |
| Employment and Labor: Other | Litigation | Partner | 277 | $500 | $685 | $873 | $710 | $681 | $619 |
| | | Associate | 247 | $334 | $428 | $575 | $461 | $470 | $442 |
| | | Paralegal | 83 | $180 | $234 | $290 | $229 | $226 | $217 |
| | Non-Litigation | Partner | 702 | $425 | $504 | $690 | $592 | $569 | $591 |
| | | Associate | 483 | $315 | $375 | $473 | $417 | $408 | $408 |
| | | Paralegal | 158 | $150 | $205 | $277 | $223 | $237 | $236 |
| Employment and Labor: Union Relations and Negotiations / NLRB | Non-Litigation | Partner | 111 | $470 | $525 | $653 | $591 | $593 | $550 |
| | | Associate | 56 | $318 | $350 | $428 | $376 | $416 | $395 |
| Employment and Labor: Wages, Tips and Overtime | Litigation | Partner | 44 | $440 | $490 | $668 | $551 | $514 | $505 |
| | | Associate | 39 | $310 | $363 | $485 | $413 | $383 | $348 |

# Section I: High-Level Data Cuts

## Detailed Practice Area
By Matter Type

**2022 — Real Rates for Associate, Paralegal, Partner**

**Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| Employment and Labor: Wages, Tips and Overtime | Litigation | Paralegal | 14 | $144 | $193 | $300 | $222 | $197 | $174 |
| | Non-Litigation | Associate | 15 | $294 | $325 | $350 | $322 | $340 | $359 |
| Employment and Labor: Wrongful Termination | Litigation | Partner | 20 | $327 | $603 | $705 | $553 | $518 | $555 |
| | | Paralegal | 11 | $120 | $150 | $240 | $183 | $216 | $191 |
| | Non-Litigation | Associate | 21 | $250 | $285 | $350 | $299 | $332 | $330 |
| Environmental | Litigation | Partner | 63 | $415 | $530 | $641 | $575 | $519 | $522 |
| | | Associate | 56 | $340 | $400 | $558 | $473 | $381 | $372 |
| | | Paralegal | 11 | $182 | $200 | $300 | $239 | $232 | $237 |
| | Non-Litigation | Partner | 88 | $450 | $532 | $751 | $657 | $627 | $588 |
| | | Associate | 46 | $345 | $444 | $605 | $484 | $511 | $435 |
| Finance and Securities: Debt/Equity Offerings | Non-Litigation | Partner | 108 | $690 | $973 | $1,600 | $1,105 | $966 | $972 |
| | | Associate | 92 | $442 | $689 | $1,140 | $754 | $614 | $590 |
| | | Paralegal | 36 | $258 | $366 | $410 | $349 | $282 | $287 |

# Section I: High-Level Data Cuts

## Detailed Practice Area
By Matter Type

**2022 — Real Rates for Associate, Paralegal, Partner**                    **Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| **Finance and Securities: Fiduciary Services** | Litigation | Associate | 22 | $383 | $472 | $565 | $471 | $418 | $384 |
| | | Paralegal | 14 | $197 | $246 | $295 | $247 | $234 | $207 |
| | Non-Litigation | Partner | 44 | $454 | $540 | $912 | $694 | $687 | $675 |
| | | Associate | 21 | $290 | $350 | $390 | $394 | $410 | $391 |
| **Finance and Securities: Investments and Other Financial Instruments** | Litigation | Partner | 30 | $787 | $962 | $1,211 | $941 | $881 | $1,002 |
| | | Associate | 35 | $541 | $640 | $769 | $678 | $559 | $568 |
| | | Paralegal | 28 | $236 | $253 | $313 | $280 | $269 | $256 |
| | Non-Litigation | Partner | 688 | $737 | $1,020 | $1,354 | $1,060 | $1,091 | $1,001 |
| | | Associate | 753 | $501 | $690 | $908 | $725 | $767 | $700 |
| | | Paralegal | 224 | $218 | $292 | $388 | $309 | $325 | $285 |
| **Finance and Securities: Loans and Financing** | Litigation | Partner | 67 | $415 | $541 | $711 | $664 | $633 | $546 |
| | | Associate | 71 | $265 | $315 | $479 | $411 | $402 | $367 |
| | | Paralegal | 36 | $170 | $230 | $250 | $223 | $225 | $208 |

# Section I: High-Level Data Cuts

## Detailed Practice Area
By Matter Type

**2022 — Real Rates for Associate, Paralegal, Partner**

**Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| **Finance and Securities: Loans and Financing** | Non-Litigation | Partner | 1,006 | $575 | $866 | $1,327 | $961 | $959 | $896 |
| | | Associate | 968 | $435 | $640 | $905 | $685 | $693 | $629 |
| | | Paralegal | 424 | $207 | $295 | $399 | $304 | $316 | $292 |
| **Finance and Securities: Other** | Non-Litigation | Partner | 16 | $672 | $909 | $1,513 | $1,028 | $999 | $1,051 |
| **Finance and Securities: SEC Filings and Financial Reporting** | Non-Litigation | Partner | 65 | $761 | $1,183 | $1,691 | $1,175 | $1,200 | $1,048 |
| | | Associate | 55 | $667 | $897 | $1,179 | $901 | $805 | $679 |
| | | Paralegal | 21 | $360 | $475 | $475 | $427 | $380 | $333 |
| **Finance and Securities: Securities and Banking Regulations** | Non-Litigation | Partner | 41 | $850 | $1,229 | $1,425 | $1,124 | $1,009 | $1,036 |
| | | Associate | 15 | $535 | $680 | $929 | $689 | $634 | $619 |
| **General Liability: Asbestos/Mesothelioma** | Litigation | Partner | 98 | $225 | $275 | $321 | $319 | $330 | $362 |
| | | Associate | 60 | $195 | $250 | $275 | $253 | $253 | $256 |
| | | Paralegal | 84 | $100 | $115 | $127 | $126 | $128 | $129 |
| | Non-Litigation | Partner | 37 | $260 | $325 | $385 | $441 | $397 | $338 |

# Section I: High-Level Data Cuts

## Detailed Practice Area
By Matter Type

**2022 — Real Rates for Associate, Paralegal, Partner**

**Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| General Liability: Asbestos/Mesothelioma | Non-Litigation | Paralegal | 25 | $100 | $115 | $146 | $144 | $140 | $117 |
| General Liability: Auto and Transportation | Litigation | Partner | 21 | $165 | $315 | $375 | $305 | $234 | $262 |
| | | Paralegal | 16 | $90 | $148 | $210 | $149 | $117 | $119 |
| General Liability: Consumer Related Claims | Litigation | Partner | 61 | $300 | $536 | $702 | $543 | $545 | $468 |
| | | Associate | 41 | $323 | $392 | $455 | $402 | $424 | $360 |
| | | Paralegal | 23 | $125 | $140 | $223 | $181 | $189 | $161 |
| General Liability: Crime, Dishonesty and Fraud | Litigation | Partner | 18 | $506 | $525 | $599 | $558 | $544 | $509 |
| | | Associate | 11 | $379 | $463 | $575 | $468 | $424 | $355 |
| | | Paralegal | 12 | $200 | $220 | $250 | $246 | $248 | $196 |
| General Liability: Other | Litigation | Partner | 122 | $275 | $691 | $950 | $687 | $676 | $606 |
| General Liability: Personal Injury/Wrongful Death | Litigation | Partner | 225 | $195 | $250 | $415 | $377 | $350 | $330 |
| | | Associate | 161 | $173 | $200 | $275 | $273 | $276 | $246 |
| | | Paralegal | 170 | $90 | $108 | $135 | $129 | $130 | $120 |

# Section I: High-Level Data Cuts

## Detailed Practice Area
By Matter Type

**2022 — Real Rates for Associate, Paralegal, Partner**

**Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| **General Liability: Premises** | Litigation | Partner | 56 | $294 | $404 | $518 | $436 | $424 | $387 |
| | | Associate | 44 | $233 | $270 | $325 | $299 | $283 | $278 |
| | | Paralegal | 30 | $125 | $156 | $190 | $162 | $168 | $159 |
| **General Liability: Product and Product Liability** | Litigation | Partner | 246 | $315 | $400 | $580 | $457 | $481 | $463 |
| | | Associate | 199 | $243 | $305 | $407 | $341 | $336 | $324 |
| | | Paralegal | 198 | $125 | $135 | $196 | $167 | $169 | $163 |
| **General Liability: Property Damage** | Litigation | Partner | 50 | $371 | $468 | $600 | $496 | $493 | $475 |
| | | Associate | 44 | $285 | $314 | $388 | $342 | $344 | $335 |
| | | Paralegal | 15 | $128 | $160 | $193 | $174 | $180 | $193 |
| **General Liability: Toxic Tort** | Litigation | Partner | 25 | $285 | $332 | $553 | $502 | $420 | $439 |
| | | Associate | 23 | $225 | $225 | $450 | $359 | $324 | $348 |
| | | Paralegal | 16 | $100 | $108 | $158 | $152 | $162 | $179 |
| **Government Relations** | Non-Litigation | Partner | 53 | $760 | $891 | $1,088 | $951 | $773 | $818 |

# Section I: High-Level Data Cuts

## Detailed Practice Area
By Matter Type

**2022 — Real Rates for Associate, Paralegal, Partner**          **Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| **Government Relations** | Non-Litigation | Associate | 68 | $491 | $646 | $755 | $601 | $530 | $579 |
| **Insurance Defense: Asbestos/Mesothelioma** | Litigation | Partner | 24 | $175 | $175 | $180 | $186 | $194 | $209 |
| **Insurance Defense: Auto and Transportation** | Litigation | Partner | 1,169 | $165 | $180 | $205 | $223 | $219 | $226 |
| | | Associate | 889 | $145 | $162 | $180 | $165 | $164 | $158 |
| | | Paralegal | 830 | $85 | $95 | $100 | $92 | $91 | $88 |
| **Insurance Defense: Consumer Related Claims** | Litigation | Partner | 53 | $177 | $225 | $350 | $312 | $312 | $397 |
| **Insurance Defense: Insurer Work Comp** | Litigation | Partner | 262 | $155 | $165 | $185 | $182 | $192 | $200 |
| | | Associate | 204 | $145 | $154 | $160 | $154 | $153 | $154 |
| | | Paralegal | 207 | $80 | $95 | $103 | $97 | $95 | $93 |
| **Insurance Defense: Marine** | Litigation | Paralegal | 11 | $73 | $75 | $100 | $88 | $83 | $90 |
| **Insurance Defense: Other** | Litigation | Partner | 1,696 | $175 | $198 | $245 | $241 | $243 | $230 |
| | | Associate | 1,080 | $160 | $175 | $200 | $187 | $185 | $183 |
| | | Paralegal | 891 | $90 | $95 | $105 | $100 | $97 | $96 |

# Section I: High-Level Data Cuts

## Detailed Practice Area
By Matter Type

**2022 — Real Rates for Associate, Paralegal, Partner**  **Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| Insurance Defense: Personal Injury/Wrongful Death | Litigation | Partner | 198 | $160 | $180 | $200 | $191 | $186 | $189 |
| | | Associate | 157 | $145 | $159 | $175 | $163 | $161 | $158 |
| | | Paralegal | 97 | $80 | $85 | $90 | $84 | $82 | $82 |
| Insurance Defense: Pollution | Litigation | Partner | 120 | $190 | $220 | $250 | $255 | $242 | $233 |
| | | Associate | 53 | $180 | $195 | $215 | $212 | $209 | $205 |
| | | Paralegal | 45 | $90 | $95 | $100 | $104 | $98 | $103 |
| Insurance Defense: Premises | Litigation | Partner | 756 | $170 | $185 | $225 | $216 | $221 | $220 |
| Insurance Defense: Product and Product Liability | Litigation | Partner | 106 | $178 | $183 | $200 | $203 | $193 | $196 |
| | | Associate | 71 | $155 | $170 | $185 | $189 | $172 | $172 |
| | | Paralegal | 47 | $85 | $95 | $100 | $96 | $92 | $95 |
| Insurance Defense: Professional Liability | Litigation | Partner | 111 | $185 | $215 | $292 | $264 | $256 | $243 |
| | | Associate | 55 | $173 | $190 | $293 | $223 | $226 | $205 |
| | | Paralegal | 43 | $80 | $95 | $110 | $110 | $103 | $103 |

# Section I: High-Level Data Cuts

## Detailed Practice Area
By Matter Type

**2022 — Real Rates for Associate, Paralegal, Partner**

**Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| Insurance Defense: Property Damage | Litigation | Partner | 606 | $175 | $210 | $250 | $228 | $227 | $226 |
| | | Associate | 495 | $160 | $182 | $220 | $194 | $189 | $184 |
| | | Paralegal | 323 | $85 | $95 | $110 | $98 | $94 | $95 |
| Insurance Policies and Coverage: Policy Coverage Dispute | Litigation | Partner | 11 | $304 | $335 | $525 | $479 | $495 | $575 |
| Intellectual Property: Licensing | Non-Litigation | Partner | 23 | $893 | $1,026 | $1,272 | $1,083 | $1,111 | $990 |
| Intellectual Property: Other | Non-Litigation | Partner | 65 | $410 | $600 | $837 | $656 | $635 | $624 |
| | | Associate | 41 | $365 | $425 | $600 | $480 | $429 | $397 |
| | | Paralegal | 22 | $186 | $219 | $290 | $235 | $218 | $215 |
| Intellectual Property: Patents | Litigation | Partner | 258 | $631 | $875 | $1,049 | $865 | $801 | $771 |
| | | Associate | 252 | $495 | $690 | $818 | $665 | $594 | $553 |
| | | Paralegal | 147 | $245 | $305 | $350 | $304 | $277 | $265 |
| | Non-Litigation | Partner | 276 | $385 | $523 | $782 | $616 | $575 | $552 |
| | | Associate | 295 | $271 | $379 | $614 | $459 | $422 | $404 |

# Section I: High-Level Data Cuts

## Detailed Practice Area
By Matter Type

**2022 — Real Rates for Associate, Paralegal, Partner**

**Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| **Intellectual Property: Patents** | Non-Litigation | Paralegal | 123 | $213 | $254 | $306 | $262 | $228 | $219 |
| **Intellectual Property: Trademarks** | Litigation | Partner | 19 | $612 | $763 | $965 | $782 | $673 | $610 |
| | | Associate | 16 | $451 | $589 | $719 | $584 | $488 | $453 |
| | Non-Litigation | Partner | 115 | $450 | $573 | $725 | $608 | $620 | $629 |
| | | Associate | 75 | $325 | $390 | $479 | $423 | $411 | $391 |
| | | Paralegal | 75 | $210 | $238 | $321 | $258 | $254 | $241 |
| **Miscellaneous: Billing or Administrative Matter** | Non-Litigation | Partner | 76 | $904 | $1,005 | $1,187 | $1,059 | $1,080 | $969 |
| | | Associate | 51 | $488 | $613 | $790 | $645 | $689 | $642 |
| **Miscellaneous: General Advice & Counsel** | Non-Litigation | Partner | 91 | $718 | $955 | $1,236 | $984 | $972 | $933 |
| | | Associate | 45 | $401 | $490 | $699 | $590 | $641 | $609 |
| | | Paralegal | 17 | $285 | $375 | $450 | $362 | $321 | $361 |
| **Real Estate: Construction/ Development** | Litigation | Partner | 21 | $465 | $695 | $760 | $645 | $576 | $509 |
| | | Associate | 13 | $338 | $360 | $520 | $410 | $357 | $308 |

# Section I: High-Level Data Cuts

## Detailed Practice Area
By Matter Type

**2022 — Real Rates for Associate, Paralegal, Partner**

**Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| Real Estate: Easement and Right of Way | Non-Litigation | Partner | 17 | $350 | $395 | $505 | $449 | $434 | $506 |
| Real Estate: Land Use/Zoning/Restrictive Covenants | Non-Litigation | Partner | 48 | $476 | $565 | $740 | $629 | $628 | $591 |
|  |  | Associate | 20 | $240 | $403 | $565 | $430 | $428 | $389 |
| Real Estate: Leasing | Litigation | Partner | 36 | $250 | $380 | $600 | $446 | $501 | $344 |
|  |  | Associate | 30 | $260 | $383 | $525 | $391 | $390 | $249 |
|  | Non-Litigation | Partner | 106 | $395 | $536 | $726 | $574 | $555 | $537 |
|  |  | Associate | 76 | $291 | $413 | $471 | $406 | $402 | $393 |
| Real Estate: Other | Litigation | Partner | 109 | $440 | $550 | $730 | $614 | $653 | $531 |
|  |  | Associate | 91 | $333 | $401 | $503 | $437 | $443 | $431 |
|  |  | Paralegal | 53 | $190 | $260 | $325 | $252 | $242 | $222 |
|  | Non-Litigation | Partner | 139 | $385 | $530 | $729 | $571 | $512 | $532 |
|  |  | Associate | 92 | $295 | $385 | $509 | $417 | $370 | $374 |
|  |  | Paralegal | 42 | $168 | $215 | $254 | $217 | $218 | $200 |

# Section I: High-Level Data Cuts

## Detailed Practice Area
By Matter Type

**2022 — Real Rates for Associate, Paralegal, Partner**

**Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| Real Estate: Property/Land Acquisition or Divestiture | Non-Litigation | Partner | 118 | $475 | $626 | $915 | $744 | $658 | $614 |
| | | Associate | 87 | $379 | $520 | $608 | $557 | $514 | $420 |
| | | Paralegal | 25 | $190 | $250 | $360 | $278 | $252 | $233 |
| Real Estate: Titles | Litigation | Partner | 223 | $295 | $325 | $400 | $354 | $344 | $328 |
| | | Associate | 124 | $224 | $250 | $300 | $269 | $278 | $257 |
| | Non-Litigation | Partner | 758 | $260 | $306 | $400 | $350 | $341 | $324 |
| | | Associate | 584 | $215 | $250 | $300 | $289 | $281 | $261 |
| | | Paralegal | 446 | $105 | $135 | $165 | $150 | $144 | $142 |
| Requests for Information: Subpoena | Litigation | Partner | 121 | $395 | $645 | $933 | $699 | $703 | $672 |
| | | Associate | 92 | $310 | $549 | $691 | $536 | $502 | $454 |
| | | Paralegal | 51 | $195 | $250 | $339 | $268 | $259 | $238 |

# Section I: High-Level Data Cuts

## Firm Size
By Matter Type

**2022 — Real Rates for Associate and Partner**
**Trend Analysis - Mean**

| Firm Size | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| **50 Lawyers or Fewer** | Litigation | Partner | 664 | $265 | $345 | $450 | $388 | $376 | $356 |
| | | Associate | 459 | $195 | $250 | $325 | $275 | $283 | $256 |
| | Non-Litigation | Partner | 952 | $295 | $399 | $525 | $424 | $420 | $405 |
| | | Associate | 628 | $219 | $265 | $336 | $285 | $276 | $287 |
| **51-200 Lawyers** | Litigation | Partner | 756 | $305 | $400 | $586 | $467 | $455 | $435 |
| | | Associate | 476 | $225 | $281 | $385 | $323 | $313 | $293 |
| | Non-Litigation | Partner | 1013 | $375 | $480 | $635 | $533 | $542 | $528 |
| | | Associate | 611 | $250 | $325 | $425 | $362 | $361 | $342 |
| **201-500 Lawyers** | Litigation | Partner | 822 | $425 | $555 | $719 | $604 | $573 | $558 |
| | | Associate | 708 | $300 | $380 | $465 | $411 | $389 | $381 |
| | Non-Litigation | Partner | 1428 | $422 | $567 | $785 | $644 | $633 | $616 |
| | | Associate | 1147 | $315 | $420 | $560 | $461 | $439 | $423 |
| **501-1,000 Lawyers** | Litigation | Partner | 1012 | $605 | $760 | $995 | $846 | $810 | $765 |
| | | Associate | 1135 | $400 | $535 | $695 | $577 | $542 | $509 |

# Section I: High-Level Data Cuts

**Firm Size**
By Matter Type

**2022 — Real Rates for Associate and Partner**                                    **Trend Analysis - Mean**

| Firm Size | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| **501-1,000 Lawyers** | Non-Litigation | Partner | 1973 | $625 | $890 | $1,275 | $977 | $943 | $912 |
| | | Associate | 2243 | $450 | $627 | $845 | $669 | $660 | $612 |
| **More Than 1,000 Lawyers** | Litigation | Partner | 707 | $715 | $895 | $1,148 | $955 | $919 | $891 |
| | | Associate | 838 | $450 | $570 | $760 | $621 | $600 | $572 |
| | Non-Litigation | Partner | 1741 | $841 | $1,065 | $1,360 | $1,113 | $1,073 | $1,025 |
| | | Associate | 2027 | $505 | $685 | $918 | $730 | $722 | $676 |



# Section II: Industry Analysis

All data and analysis based on data collected thru Q2 2022

wolterskluwer.com

# Section II: Industry Analysis

**All**
By Matter Type

**2022 — Real Rates for Associate and Partner**                                  **Trend Analysis - Mean**

| Industry | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| **Basic Materials and Utilities** | Litigation | Partner | 323 | $283 | $395 | $590 | $454 | $445 | $439 |
| | | Associate | 251 | $230 | $300 | $395 | $328 | $302 | $306 |
| | Non-Litigation | Partner | 399 | $472 | $658 | $1,089 | $848 | $816 | $753 |
| | | Associate | 308 | $386 | $595 | $955 | $686 | $696 | $548 |
| **Consumer Goods** | Litigation | Partner | 226 | $305 | $366 | $510 | $466 | $453 | $439 |
| | | Associate | 151 | $225 | $281 | $390 | $328 | $307 | $305 |
| | Non-Litigation | Partner | 316 | $460 | $617 | $814 | $652 | $629 | $616 |
| | | Associate | 148 | $314 | $385 | $510 | $435 | $446 | $412 |
| **Consumer Services** | Litigation | Partner | 638 | $425 | $605 | $840 | $674 | $612 | $622 |
| | | Associate | 636 | $335 | $440 | $599 | $506 | $454 | $435 |
| | Non-Litigation | Partner | 764 | $472 | $638 | $945 | $780 | $689 | $698 |
| | | Associate | 757 | $388 | $530 | $734 | $608 | $514 | $495 |
| **Financials Excluding Insurance** | Litigation | Partner | 1,126 | $375 | $561 | $808 | $639 | $621 | $596 |
| | | Associate | 982 | $272 | $389 | $569 | $442 | $439 | $414 |
| | Non-Litigation | Partner | 2,911 | $560 | $875 | $1,270 | $938 | $943 | $901 |
| | | Associate | 2,764 | $419 | $610 | $875 | $666 | $677 | $638 |

# Section II: Industry Analysis

**All**
By Matter Type

**2022 — Real Rates for Associate and Partner**

**Trend Analysis - Mean**

| Industry | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| **Health Care** | Litigation | Partner | 657 | $425 | $680 | $925 | $685 | $713 | $670 |
| | | Associate | 598 | $373 | $500 | $670 | $506 | $519 | $476 |
| | Non-Litigation | Partner | 424 | $471 | $610 | $950 | $694 | $762 | $751 |
| | | Associate | 360 | $319 | $468 | $676 | $491 | $553 | $527 |
| **Industrials** | Litigation | Partner | 214 | $498 | $700 | $1,095 | $808 | $691 | $595 |
| | | Associate | 156 | $429 | $540 | $742 | $588 | $495 | $418 |
| | Non-Litigation | Partner | 712 | $435 | $628 | $1,031 | $776 | $705 | $670 |
| | | Associate | 627 | $367 | $494 | $752 | $567 | $517 | $473 |
| **Insurance** | Litigation | Partner | 353 | $300 | $390 | $605 | $533 | $522 | $463 |
| | | Associate | 242 | $250 | $316 | $665 | $448 | $445 | $394 |
| | Non-Litigation | Partner | 1,069 | $290 | $380 | $654 | $536 | $522 | $545 |
| | | Associate | 807 | $229 | $283 | $475 | $394 | $396 | $392 |
| **Technology and Telecommunications** | Litigation | Partner | 601 | $550 | $704 | $987 | $782 | $735 | $689 |
| | | Associate | 640 | $361 | $489 | $710 | $544 | $504 | $467 |
| | Non-Litigation | Partner | 1,309 | $510 | $710 | $975 | $774 | $743 | $725 |
| | | Associate | 1,255 | $350 | $495 | $698 | $540 | $510 | $511 |

# Section II: Industry Analysis

**All**
By Role

**2022 — Real Rates for Associate, Paralegal, Partner**                    **Trend Analysis - Mean**

| Industry | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|
| **Basic Materials and Utilities** | Partner | 682 | $365 | $550 | $836 | $678 | $654 | $599 |
|  | Associate | 540 | $280 | $400 | $680 | $528 | $510 | $415 |
|  | Paralegal | 299 | $115 | $178 | $300 | $221 | $222 | $183 |
| **Consumer Goods** | Partner | 517 | $361 | $496 | $707 | $574 | $559 | $539 |
|  | Associate | 286 | $255 | $350 | $450 | $382 | $380 | $363 |
|  | Paralegal | 197 | $125 | $160 | $225 | $187 | $189 | $186 |
| **Consumer Services** | Partner | 1,291 | $450 | $624 | $880 | $733 | $654 | $663 |
|  | Associate | 1,312 | $353 | $491 | $700 | $563 | $486 | $469 |
|  | Paralegal | 478 | $187 | $270 | $350 | $279 | $251 | $242 |
| **Financials Excluding Insurance** | Partner | 3,804 | $491 | $760 | $1,140 | $848 | $855 | $816 |
|  | Associate | 3,608 | $360 | $541 | $800 | $603 | $618 | $578 |
|  | Paralegal | 1,488 | $184 | $250 | $349 | $265 | $267 | $253 |
| **Health Care** | Partner | 1,005 | $450 | $665 | $927 | $689 | $733 | $700 |
|  | Associate | 910 | $340 | $489 | $670 | $500 | $534 | $496 |
|  | Paralegal | 415 | $154 | $235 | $291 | $235 | $231 | $219 |
| **Industrials** | Partner | 834 | $445 | $650 | $1,051 | $783 | $701 | $646 |

# Section II: Industry Analysis

**All**
By Role

**2022 — Real Rates for Associate, Paralegal, Partner**                          **Trend Analysis - Mean**

| Industry | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|----------|------|---|----------------|--------|----------------|------|------|------|
| **Industrials** | Associate | 724 | $375 | $500 | $748 | $571 | $511 | $455 |
| | Paralegal | 340 | $185 | $292 | $400 | $297 | $263 | $245 |
| **Insurance** | Partner | 5,555 | $175 | $210 | $275 | $289 | $288 | $291 |
| | Associate | 4,174 | $160 | $183 | $235 | $235 | $235 | $230 |
| | Paralegal | 3,144 | $90 | $95 | $111 | $111 | $112 | $111 |
| **Technology and Telecommunications** | Partner | 1,753 | $525 | $710 | $979 | $777 | $741 | $714 |
| | Associate | 1,781 | $350 | $495 | $700 | $541 | $508 | $497 |
| | Paralegal | 653 | $190 | $245 | $323 | $257 | $252 | $239 |

# Section II: Industry Analysis

## Basic Materials and Utilities
By Practice Area and Matter Type

**2022 — Real Rates for Associate and Partner**

**Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| **Commercial** | Litigation | Partner | 16 | $448 | $721 | $1,045 | $734 | $617 | $636 |
| | Non-Litigation | Partner | 49 | $582 | $663 | $875 | $758 | $647 | $647 |
| **Corporate: Mergers, Acquisitions and Divestitures** | Non-Litigation | Partner | 57 | $485 | $1,272 | $1,650 | $1,049 | $997 | $955 |
| **Corporate: Regulatory and Compliance** | Non-Litigation | Partner | 39 | $449 | $598 | $805 | $636 | $691 | $729 |
| | | Associate | 20 | $354 | $445 | $598 | $500 | $440 | $501 |
| **Corporate: Tax** | Non-Litigation | Partner | 12 | $480 | $778 | $1,283 | $915 | $727 | $583 |
| **Employment and Labor: Other** | Non-Litigation | Partner | 46 | $414 | $450 | $504 | $466 | $475 | $476 |
| | | Associate | 17 | $288 | $340 | $378 | $342 | $337 | $297 |
| **Environmental** | Non-Litigation | Partner | 49 | $428 | $531 | $779 | $610 | $572 | $561 |
| | | Associate | 28 | $330 | $426 | $588 | $475 | $514 | $439 |

# Section II: Industry Analysis

## Consumer Goods
By Practice Area and Matter Type

**2022 — Real Rates for Associate and Partner**  **Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| **Commercial** | Litigation | Partner | 76 | $368 | $479 | $680 | $569 | $633 | $550 |
| | | Associate | 51 | $365 | $395 | $469 | $416 | $467 | $401 |
| | Non-Litigation | Partner | 120 | $448 | $586 | $707 | $615 | $576 | $550 |
| | | Associate | 65 | $330 | $370 | $485 | $404 | $402 | $393 |
| **Corporate: Regulatory and Compliance** | Non-Litigation | Partner | 30 | $791 | $901 | $1,000 | $888 | $831 | $825 |
| **Employment and Labor: Other** | Non-Litigation | Partner | 52 | $443 | $535 | $688 | $582 | $540 | $584 |
| | | Associate | 18 | $310 | $368 | $380 | $373 | $385 | $365 |
| **Environmental** | Litigation | Partner | 13 | $350 | $437 | $675 | $676 | $391 | $370 |
| **Intellectual Property: Patents** | Non-Litigation | Partner | 11 | $458 | $500 | $609 | $520 | $617 | $526 |

# Section II: Industry Analysis

## Consumer Services
By Practice Area and Matter Type

**2022 — Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| **Bankruptcy and Collections** | Litigation | Partner | 15 | $273 | $315 | $619 | $454 | $485 | $546 |
| **Commercial** | Litigation | Partner | 237 | $450 | $675 | $893 | $724 | $631 | $657 |
| | | Associate | 227 | $356 | $445 | $610 | $529 | $447 | $425 |
| | Non-Litigation | Partner | 68 | $489 | $626 | $786 | $677 | $641 | $641 |
| | | Associate | 52 | $353 | $442 | $595 | $493 | $428 | $453 |
| **Corporate: Mergers, Acquisitions and Divestitures** | Non-Litigation | Partner | 45 | $497 | $742 | $1,734 | $1,010 | $804 | $879 |
| **Corporate: Other** | Non-Litigation | Partner | 172 | $593 | $972 | $1,732 | $1,058 | $855 | $806 |
| | | Associate | 139 | $577 | $734 | $1,178 | $818 | $602 | $543 |
| **Corporate: Regulatory and Compliance** | Non-Litigation | Partner | 217 | $481 | $583 | $788 | $670 | $655 | $659 |
| | | Associate | 198 | $368 | $490 | $685 | $551 | $508 | $498 |
| **Employment and Labor: Discrimination, Retaliation and Harassment / EEO** | Litigation | Partner | 70 | $300 | $365 | $480 | $398 | $374 | $391 |
| | | Associate | 56 | $296 | $341 | $423 | $355 | $328 | $301 |
| **Employment and Labor: Other** | Litigation | Partner | 73 | $395 | $540 | $672 | $546 | $494 | $482 |
| | | Associate | 56 | $275 | $325 | $426 | $344 | $350 | $339 |
| | Non-Litigation | Partner | 47 | $450 | $490 | $588 | $543 | $520 | $529 |
| | | Associate | 57 | $380 | $450 | $500 | $431 | $453 | $389 |
| **Employment and Labor: Union Relations and Negotiations / NLRB** | Litigation | Partner | 18 | $379 | $485 | $669 | $542 | $559 | $622 |

# Section II: Industry Analysis

## Consumer Services
By Practice Area and Matter Type

**2022 — Real Rates for Associate and Partner**

**Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| **Employment and Labor: Union Relations and Negotiations / NLRB** | Non-Litigation | Partner | 23 | $550 | $653 | $886 | $750 | $673 | $542 |
| **Employment and Labor: Wages, Tips and Overtime** | Litigation | Partner | 25 | $450 | $485 | $529 | $487 | $430 | $431 |
| | | Associate | 25 | $280 | $350 | $475 | $371 | $368 | $341 |
| **Intellectual Property: Patents** | Non-Litigation | Partner | 63 | $418 | $518 | $651 | $613 | $552 | $623 |
| **Intellectual Property: Trademarks** | Non-Litigation | Partner | 12 | $466 | $585 | $691 | $604 | $612 | $553 |
| **Real Estate: Leasing** | Non-Litigation | Partner | 26 | $395 | $453 | $600 | $528 | $491 | $502 |
| | | Associate | 28 | $309 | $413 | $472 | $420 | $418 | $384 |
| **Real Estate: Other** | Litigation | Partner | 29 | $400 | $575 | $700 | $578 | $588 | $510 |
| | | Associate | 22 | $291 | $338 | $371 | $354 | $374 | $382 |
| | Non-Litigation | Partner | 58 | $383 | $470 | $782 | $563 | $472 | $493 |
| | | Associate | 53 | $290 | $375 | $500 | $383 | $340 | $337 |

# Section II: Industry Analysis

**Financials Excluding Insurance**
By Practice Area and Matter Type

**2022 — Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| **Bankruptcy and Collections** | Litigation | Partner | 153 | $333 | $430 | $586 | $501 | $504 | $474 |
| | | Associate | 104 | $270 | $322 | $410 | $366 | $386 | $377 |
| | Non-Litigation | Partner | 195 | $325 | $400 | $495 | $443 | $438 | $411 |
| | | Associate | 101 | $248 | $333 | $393 | $340 | $329 | $312 |
| **Commercial** | Litigation | Partner | 267 | $426 | $585 | $862 | $707 | $630 | $589 |
| | | Associate | 204 | $275 | $400 | $590 | $476 | $429 | $392 |
| | Non-Litigation | Partner | 145 | $620 | $905 | $1,264 | $963 | $1,004 | $1,023 |
| | | Associate | 112 | $393 | $563 | $806 | $628 | $671 | $697 |
| **Corporate: Corporate Development** | Non-Litigation | Partner | 28 | $511 | $721 | $1,042 | $856 | $866 | $695 |
| **Corporate: Governance** | Non-Litigation | Partner | 23 | $724 | $1,000 | $1,560 | $1,042 | $1,031 | $1,014 |
| | | Associate | 23 | $514 | $610 | $856 | $702 | $665 | $634 |
| **Corporate: Mergers, Acquisitions and Divestitures** | Non-Litigation | Partner | 27 | $773 | $975 | $1,155 | $962 | $1,100 | $1,129 |
| | | Associate | 17 | $532 | $623 | $888 | $656 | $708 | $704 |
| **Corporate: Other** | Litigation | Partner | 237 | $395 | $577 | $849 | $690 | $678 | $644 |
| | | Associate | 181 | $289 | $416 | $602 | $471 | $493 | $455 |
| | Non-Litigation | Partner | 463 | $651 | $1,095 | $1,449 | $1,076 | $978 | $940 |
| | | Associate | 468 | $500 | $701 | $944 | $738 | $686 | $659 |
| **Corporate: Regulatory and Compliance** | Litigation | Partner | 85 | $610 | $778 | $1,010 | $854 | $851 | $835 |

# Section II: Industry Analysis

### Financials Excluding Insurance
By Practice Area and Matter Type

**2022 — Real Rates for Associate and Partner**  **Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| Corporate: Regulatory and Compliance | Litigation | Associate | 73 | $420 | $535 | $679 | $562 | $568 | $579 |
| | Non-Litigation | Partner | 89 | $927 | $1,130 | $1,424 | $1,176 | $1,075 | $1,119 |
| | | Associate | 101 | $558 | $725 | $910 | $767 | $719 | $734 |
| Corporate: Tax | Non-Litigation | Partner | 66 | $766 | $1,061 | $1,423 | $1,112 | $1,124 | $1,106 |
| | | Associate | 53 | $419 | $591 | $953 | $754 | $731 | $705 |
| Corporate: Treasury | Non-Litigation | Partner | 31 | $800 | $940 | $1,019 | $961 | $887 | $1,022 |
| | | Associate | 23 | $380 | $450 | $648 | $544 | $460 | $443 |
| Employment and Labor: Compensation and Benefits | Non-Litigation | Partner | 59 | $673 | $765 | $904 | $836 | $851 | $705 |
| | | Associate | 61 | $336 | $442 | $531 | $484 | $575 | $433 |
| Employment and Labor: Discrimination, Retaliation and Harassment / EEO | Litigation | Partner | 40 | $394 | $490 | $663 | $568 | $651 | $554 |
| | | Associate | 23 | $295 | $323 | $380 | $389 | $504 | $360 |
| Employment and Labor: ERISA | Non-Litigation | Partner | 17 | $605 | $795 | $795 | $735 | $726 | $832 |
| Employment and Labor: Other | Litigation | Partner | 135 | $616 | $820 | $968 | $857 | $855 | $758 |
| | | Associate | 126 | $382 | $530 | $625 | $527 | $562 | $517 |
| | Non-Litigation | Partner | 196 | $375 | $503 | $806 | $656 | $628 | $620 |
| | | Associate | 112 | $295 | $379 | $600 | $498 | $466 | $439 |
| Employment and Labor: Wrongful Termination | Litigation | Partner | 12 | $540 | $624 | $684 | $606 | $492 | $779 |
| Finance and Securities: Debt/Equity Offerings | Non-Litigation | Partner | 60 | $646 | $781 | $1,030 | $876 | $904 | $903 |

# Section II: Industry Analysis

**Financials Excluding Insurance**
By Practice Area and Matter Type

**2022 — Real Rates for Associate and Partner**                                         **Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| Finance and Securities: Debt/Equity Offerings | Non-Litigation | Associate | 41 | $381 | $457 | $582 | $513 | $547 | $551 |
| Finance and Securities: Fiduciary Services | Litigation | Partner | 35 | $508 | $604 | $776 | $644 | $694 | $667 |
| | | Associate | 22 | $383 | $472 | $565 | $471 | $418 | $384 |
| | Non-Litigation | Partner | 44 | $454 | $540 | $912 | $694 | $687 | $675 |
| | | Associate | 21 | $290 | $350 | $390 | $394 | $410 | $391 |
| Finance and Securities: Investments and Other Financial Instruments | Litigation | Partner | 30 | $787 | $962 | $1,211 | $941 | $881 | $1,002 |
| | | Associate | 35 | $541 | $640 | $769 | $678 | $559 | $568 |
| | Non-Litigation | Partner | 688 | $737 | $1,020 | $1,354 | $1,060 | $1,091 | $1,001 |
| | | Associate | 753 | $501 | $690 | $908 | $725 | $767 | $700 |
| Finance and Securities: Loans and Financing | Litigation | Partner | 67 | $415 | $541 | $711 | $664 | $633 | $546 |
| | | Associate | 71 | $265 | $315 | $479 | $411 | $402 | $367 |
| | Non-Litigation | Partner | 973 | $564 | $855 | $1,319 | $950 | $942 | $891 |
| | | Associate | 919 | $428 | $635 | $904 | $679 | $680 | $625 |
| Finance and Securities: Securities and Banking Regulations | Non-Litigation | Partner | 41 | $850 | $1,229 | $1,425 | $1,124 | $1,009 | $1,036 |
| | | Associate | 15 | $535 | $680 | $929 | $689 | $634 | $619 |
| General Liability: Consumer Related Claims | Litigation | Partner | 11 | $393 | $662 | $753 | $616 | $634 | $532 |
| Miscellaneous: General Advice & Counsel | Non-Litigation | Partner | 37 | $680 | $871 | $1,050 | $871 | $832 | $897 |
| Real Estate: Other | Litigation | Partner | 69 | $453 | $610 | $753 | $641 | $671 | $540 |

# Section II: Industry Analysis

**Financials Excluding Insurance**
By Practice Area and Matter Type

**2022 — Real Rates for Associate and Partner**                                    **Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| **Real Estate: Other** | Litigation | Associate | 65 | $350 | $435 | $525 | $465 | $440 | $436 |
| | Non-Litigation | Partner | 23 | $540 | $765 | $870 | $740 | $593 | $733 |
| | | Associate | 16 | $462 | $630 | $802 | $632 | $488 | $581 |

# Section II: Industry Analysis

## Healthcare
By Practice Area and Matter Type

**2022 — Real Rates for Associate and Partner**          **Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| **Corporate: Regulatory and Compliance** | Litigation | Partner | 42 | $631 | $844 | $924 | $807 | $807 | $778 |
| | Non-Litigation | Partner | 83 | $445 | $585 | $876 | $657 | $613 | $617 |
| | | Associate | 66 | $316 | $383 | $670 | $454 | $438 | $413 |
| **Employment and Labor: Discrimination, Retaliation and Harassment / EEO** | Litigation | Partner | 11 | $391 | $628 | $711 | $570 | $575 | $552 |

# Section II: Industry Analysis

## Industrials
By Practice Area and Matter Type

**2022 — Real Rates for Associate and Partner**                              **Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| Commercial | Litigation | Partner | 16 | $471 | $545 | $1,441 | $837 | $718 | $720 |
| | | Associate | 11 | $284 | $349 | $690 | $529 | $652 | $591 |
| | Non-Litigation | Partner | 36 | $565 | $878 | $1,062 | $860 | $679 | $646 |
| | | Associate | 17 | $343 | $428 | $709 | $531 | $461 | $434 |
| Corporate: Mergers, Acquisitions and Divestitures | Non-Litigation | Partner | 107 | $758 | $1,115 | $1,650 | $1,190 | $1,050 | $926 |
| | | Associate | 164 | $529 | $770 | $925 | $762 | $715 | $619 |
| Corporate: Other | Litigation | Partner | 106 | $586 | $891 | $1,120 | $883 | $846 | $739 |
| | | Associate | 86 | $459 | $620 | $778 | $622 | $560 | $486 |
| | Non-Litigation | Partner | 348 | $436 | $656 | $1,073 | $781 | $743 | $752 |
| | | Associate | 329 | $365 | $485 | $735 | $547 | $533 | $539 |
| Corporate: Regulatory and Compliance | Non-Litigation | Partner | 42 | $625 | $968 | $1,144 | $902 | $753 | $643 |
| | | Associate | 30 | $512 | $635 | $816 | $660 | $548 | $486 |
| Corporate: Tax | Non-Litigation | Partner | 28 | $628 | $947 | $1,022 | $894 | $754 | $759 |
| Employment and Labor: Compensation and Benefits | Non-Litigation | Partner | 19 | $514 | $623 | $910 | $698 | $786 | $740 |
| Employment and Labor: Other | Non-Litigation | Partner | 96 | $418 | $484 | $612 | $544 | $554 | $564 |
| | | Associate | 53 | $306 | $412 | $450 | $400 | $380 | $401 |
| Environmental | Litigation | Partner | 12 | $493 | $568 | $654 | $569 | $550 | $562 |

# Section II: Industry Analysis

## Industrials
By Practice Area and Matter Type

**2022 — Real Rates for Associate and Partner**　　　　　　　　　　**Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| Environmental | Non-Litigation | Partner | 21 | $495 | $685 | $1,150 | $861 | $756 | $634 |
| Intellectual Property: Other | Non-Litigation | Partner | 14 | $405 | $513 | $823 | $646 | $648 | $629 |
| Intellectual Property: Patents | Non-Litigation | Partner | 37 | $306 | $370 | $450 | $444 | $422 | $436 |
| | | Associate | 23 | $175 | $239 | $265 | $226 | $275 | $287 |

# Section II: Industry Analysis

## Insurance
By Practice Area and Matter Type

**2022 — Real Rates for Associate and Partner**                     **Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| **Corporate: Other** | Non-Litigation | Partner | 141 | $400 | $685 | $940 | $755 | $707 | $743 |
| | | Associate | 92 | $386 | $475 | $738 | $580 | $526 | $532 |
| **Corporate: Tax** | Non-Litigation | Partner | 40 | $791 | $960 | $1,155 | $995 | $1,039 | $1,022 |
| **Employment and Labor: Other** | Non-Litigation | Partner | 74 | $415 | $470 | $649 | $595 | $543 | $572 |
| | | Associate | 40 | $303 | $364 | $500 | $451 | $424 | $390 |
| **Insurance Defense: Asbestos/Mesothelioma** | Litigation | Partner | 24 | $175 | $175 | $180 | $186 | $194 | $209 |
| **Insurance Defense: Auto and Transportation** | Litigation | Partner | 1,169 | $165 | $180 | $205 | $223 | $219 | $226 |
| | | Associate | 889 | $145 | $162 | $180 | $165 | $164 | $158 |
| **Insurance Defense: Consumer Related Claims** | Litigation | Partner | 53 | $177 | $225 | $350 | $312 | $312 | $397 |
| **Insurance Defense: Insurer Work Comp** | Litigation | Partner | 262 | $155 | $165 | $185 | $182 | $192 | $200 |
| | | Associate | 204 | $145 | $154 | $160 | $154 | $153 | $154 |
| **Insurance Defense: Marine** | Litigation | Partner | 34 | $164 | $200 | $245 | $207 | $263 | $231 |
| **Insurance Defense: Other** | Litigation | Partner | 1,696 | $175 | $198 | $245 | $241 | $243 | $230 |
| | | Associate | 1,080 | $160 | $175 | $200 | $187 | $185 | $183 |
| **Insurance Defense: Personal Injury/Wrongful Death** | Litigation | Partner | 198 | $160 | $180 | $200 | $191 | $187 | $189 |
| | | Associate | 156 | $145 | $159 | $175 | $163 | $161 | $158 |
| **Insurance Defense: Pollution** | Litigation | Partner | 120 | $190 | $220 | $250 | $255 | $242 | $233 |

# Section II: Industry Analysis

## Insurance
By Practice Area and Matter Type

**2022 — Real Rates for Associate and Partner**          **Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| **Insurance Defense: Pollution** | Litigation | Associate | 53 | $180 | $195 | $215 | $212 | $209 | $205 |
| **Insurance Defense: Premises** | Litigation | Partner | 756 | $170 | $185 | $225 | $216 | $221 | $220 |
| **Insurance Defense: Product and Product Liability** | Litigation | Partner | 106 | $178 | $183 | $200 | $203 | $193 | $196 |
| | | Associate | 71 | $155 | $170 | $185 | $189 | $172 | $172 |
| **Insurance Defense: Professional Liability** | Litigation | Partner | 111 | $185 | $215 | $292 | $264 | $256 | $243 |
| | | Associate | 55 | $173 | $190 | $293 | $223 | $226 | $205 |
| **Insurance Defense: Property Damage** | Litigation | Partner | 606 | $175 | $210 | $250 | $228 | $227 | $226 |
| | | Associate | 495 | $160 | $182 | $220 | $194 | $189 | $184 |

# Section II: Industry Analysis

**Technology and Telecommunications**
By Practice Area and Matter Type

**2022 — Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| **Bankruptcy and Collections** | Litigation | Partner | 14 | $520 | $570 | $628 | $567 | $578 | $493 |
| **Commercial** | Litigation | Partner | 100 | $606 | $871 | $1,084 | $894 | $845 | $776 |
| | | Associate | 164 | $350 | $571 | $756 | $567 | $557 | $439 |
| | Non-Litigation | Partner | 50 | $400 | $613 | $881 | $649 | $666 | $633 |
| | | Associate | 32 | $391 | $432 | $721 | $540 | $506 | $473 |
| **Corporate: Antitrust and Competition** | Litigation | Partner | 17 | $837 | $949 | $1,080 | $992 | $810 | $811 |
| | | Associate | 49 | $55 | $496 | $655 | $454 | $493 | $672 |
| | Non-Litigation | Partner | 33 | $949 | $1,210 | $1,453 | $1,227 | $1,141 | $1,069 |
| | | Associate | 51 | $590 | $720 | $912 | $732 | $694 | $659 |
| **Corporate: Governance** | Non-Litigation | Partner | 63 | $1,000 | $1,238 | $1,553 | $1,269 | $1,270 | $1,172 |
| | | Associate | 59 | $695 | $780 | $949 | $807 | $781 | $707 |
| **Corporate: Mergers, Acquisitions and Divestitures** | Non-Litigation | Partner | 60 | $749 | $868 | $978 | $899 | $804 | $842 |
| | | Associate | 76 | $486 | $486 | $668 | $587 | $492 | $559 |
| **Corporate: Other** | Litigation | Partner | 120 | $597 | $803 | $1,022 | $836 | $864 | $771 |
| | | Associate | 93 | $401 | $488 | $683 | $550 | $514 | $480 |
| | Non-Litigation | Partner | 275 | $631 | $864 | $1,065 | $874 | $825 | $810 |
| | | Associate | 205 | $450 | $578 | $710 | $583 | $565 | $545 |
| **Corporate: Regulatory and Compliance** | Litigation | Partner | 20 | $694 | $830 | $838 | $795 | $779 | $799 |

# Section II: Industry Analysis

**Technology and
Telecommunications**
By Practice Area and Matter Type

## 2022 — Real Rates for Associate and Partner

**Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| Corporate: Regulatory and Compliance | Litigation | Associate | 22 | $392 | $481 | $510 | $469 | $458 | $509 |
| | Non-Litigation | Partner | 233 | $605 | $760 | $920 | $770 | $726 | $711 |
| | | Associate | 210 | $396 | $510 | $612 | $519 | $488 | $479 |
| Corporate: Tax | Non-Litigation | Partner | 80 | $689 | $919 | $1,132 | $936 | $930 | $878 |
| | | Associate | 75 | $553 | $732 | $934 | $738 | $613 | $611 |
| Employment and Labor: Agreements | Litigation | Partner | 12 | $751 | $843 | $1,171 | $895 | $848 | $827 |
| | Non-Litigation | Partner | 27 | $430 | $600 | $698 | $565 | $698 | $668 |
| Employment and Labor: Compensation and Benefits | Non-Litigation | Partner | 31 | $540 | $650 | $800 | $708 | $723 | $709 |
| | | Associate | 11 | $383 | $622 | $745 | $569 | $459 | $452 |
| Employment and Labor: Discrimination, Retaliation and Harassment / EEO | Litigation | Partner | 19 | $423 | $532 | $655 | $537 | $559 | $553 |
| | | Associate | 17 | $347 | $375 | $395 | $377 | $354 | $349 |
| | Non-Litigation | Partner | 44 | $475 | $525 | $658 | $566 | $541 | $547 |
| Employment and Labor: Other | Litigation | Partner | 25 | $612 | $690 | $810 | $700 | $530 | $570 |
| | | Associate | 22 | $393 | $466 | $575 | $489 | $376 | $345 |
| | Non-Litigation | Partner | 152 | $470 | $475 | $678 | $553 | $569 | $617 |
| | | Associate | 130 | $325 | $340 | $401 | $366 | $371 | $412 |
| General Liability: Consumer Related Claims | Litigation | Associate | 19 | $387 | $428 | $530 | $451 | $447 | $413 |
| Government Relations | Non-Litigation | Partner | 26 | $776 | $901 | $1,084 | $938 | $678 | $755 |

# Section II: Industry Analysis

## Technology and Telecommunications
By Practice Area and Matter Type

**2022 — Real Rates for Associate and Partner**          **Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| **Government Relations** | Non-Litigation | Associate | 48 | $414 | $633 | $726 | $543 | $510 | $539 |
| **Intellectual Property: Patents** | Litigation | Partner | 111 | $606 | $832 | $1,077 | $849 | $783 | $755 |
| | | Associate | 105 | $495 | $670 | $824 | $657 | $607 | $561 |
| | Non-Litigation | Partner | 106 | $418 | $755 | $994 | $726 | $602 | $538 |
| | | Associate | 148 | $325 | $484 | $724 | $543 | $477 | $442 |
| **Intellectual Property: Trademarks** | Litigation | Partner | 11 | $721 | $942 | $1,054 | $870 | $746 | $618 |
| | Non-Litigation | Partner | 38 | $443 | $549 | $650 | $568 | $602 | $644 |
| | | Associate | 39 | $303 | $360 | $410 | $368 | $360 | $366 |



# Section III: Practice Area Analysis

All data and analysis based on data collected thru Q2 2022

# Section III: Practice Area Analysis

## Bankruptcy and Collections
By City

**2022 — Real Rates for Associate and Partner**

**Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|------|------|---|---------------|--------|----------------|------|------|------|
| **Atlanta GA** | Partner | 11 | $525 | $603 | $650 | $607 | $557 | $523 |
| | Associate | 13 | $275 | $325 | $390 | $366 | $408 | $380 |
| **Baltimore MD** | Partner | 14 | $321 | $380 | $472 | $395 | $438 | $436 |
| **Chicago IL** | Partner | 16 | $525 | $748 | $1,256 | $893 | $983 | $1,059 |
| | Associate | 13 | $260 | $656 | $910 | $619 | $789 | $734 |
| **Dallas TX** | Partner | 13 | $381 | $525 | $666 | $539 | $502 | $635 |
| **Houston TX** | Associate | 16 | $375 | $384 | $473 | $427 | $436 | $425 |
| **Los Angeles CA** | Associate | 15 | $375 | $415 | $835 | $560 | $376 | $337 |
| **Miami FL** | Partner | 11 | $265 | $375 | $418 | $351 | $401 | $486 |
| **New York NY** | Partner | 60 | $400 | $604 | $815 | $638 | $654 | $638 |
| | Associate | 36 | $300 | $375 | $429 | $385 | $433 | $453 |
| **Philadelphia PA** | Partner | 46 | $400 | $495 | $619 | $497 | $494 | $481 |
| | Associate | 30 | $290 | $350 | $420 | $369 | $340 | $344 |
| **Pittsburgh PA** | Partner | 17 | $338 | $435 | $460 | $409 | $444 | $404 |
| | Associate | 13 | $248 | $341 | $354 | $333 | $361 | $307 |

# Section III: Practice Area Analysis

## Bankruptcy and Collections
By Matter Type and YOE

**2022 — Real Rates for Partner**　　　　　　　　　　　　　　　**Trend Analysis - Mean**

| Years of Experience | Matter Type | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|
| **Fewer Than 21 Years** | Litigation | | | | | | | |
| | | 64 | $325 | $400 | $525 | $455 | $487 | $454 |
| | Non-Litigation | | | | | | | |
| | | 76 | $350 | $402 | $496 | $440 | $514 | $538 |
| **21 or More Years** | Litigation | | | | | | | |
| | | 108 | $325 | $445 | $600 | $505 | $493 | $488 |
| | Non-Litigation | | | | | | | |
| | | 122 | $325 | $410 | $526 | $462 | $466 | $500 |

# Section III: Practice Area Analysis

## Bankruptcy and Collections
By Matter Type and YOE

**2022 — Real Rates for Associate**

**Trend Analysis - Mean**

| Years of Experience | Matter Type | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|
| **3 to Fewer Than 7 Years** | Litigation | 18 | $276 | $348 | $446 | $395 | $364 | $380 |
| | Non-Litigation | 35 | $289 | $345 | $400 | $349 | $346 | $306 |

# Section III: Practice Area Analysis

## Bankruptcy and Collections
By Firm Size and Matter Type

**2022 — Real Rates for Associate and Partner**　　　　　　　　　　　　　　**Trend Analysis - Mean**

| Firm Size | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| 50 Lawyers or Fewer | Litigation | Partner | 59 | $275 | $325 | $390 | $360 | $363 | $333 |
| | | Associate | 44 | $225 | $267 | $332 | $284 | $280 | $258 |
| | Non-Litigation | Partner | 49 | $270 | $295 | $325 | $301 | $301 | $366 |
| | | Associate | 25 | $225 | $244 | $258 | $251 | $230 | $241 |
| 51-200 Lawyers | Litigation | Partner | 47 | $334 | $378 | $489 | $416 | $392 | $392 |
| | | Associate | 24 | $230 | $280 | $320 | $296 | $259 | $248 |
| | Non-Litigation | Partner | 30 | $345 | $400 | $476 | $406 | $404 | $399 |
| 201-500 Lawyers | Litigation | Partner | 61 | $398 | $468 | $604 | $502 | $493 | $464 |
| | | Associate | 43 | $294 | $318 | $422 | $365 | $341 | $317 |
| | Non-Litigation | Partner | 85 | $385 | $452 | $580 | $493 | $464 | $442 |
| | | Associate | 44 | $281 | $350 | $393 | $341 | $343 | $306 |
| 501-1,000 Lawyers | Litigation | Partner | 34 | $525 | $618 | $721 | $633 | $701 | $678 |
| | | Associate | 24 | $313 | $375 | $471 | $385 | $505 | $513 |
| | Non-Litigation | Partner | 20 | $506 | $617 | $685 | $613 | $638 | $701 |
| | | Associate | 15 | $352 | $383 | $446 | $412 | $485 | $480 |
| More Than 1,000 Lawyers | Litigation | Partner | 13 | $546 | $1,045 | $1,249 | $932 | $711 | $775 |
| | | Associate | 12 | $340 | $760 | $866 | $632 | $442 | $450 |

# Section III: Practice Area Analysis

## Bankruptcy and Collections
By Firm Size and Matter Type

**2022 — Real Rates for Associate and Partner**  **Trend Analysis - Mean**

| Firm Size | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| **More Than 1,000 Lawyers** | Non-Litigation | Partner | 32 | $460 | $657 | $990 | $779 | $914 | $1,041 |

# Section III: Practice Area Analysis

## Commercial
By City

**2022 — Real Rates for Associate and Partner**

**Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|
| **Atlanta GA** | Partner | 39 | $493 | $625 | $853 | $695 | $699 | $736 |
| | Associate | 39 | $310 | $342 | $440 | $407 | $431 | $406 |
| **Austin TX** | Partner | 14 | $378 | $450 | $495 | $514 | $534 | $510 |
| **Birmingham AL** | Partner | 16 | $385 | $427 | $461 | $416 | $419 | $397 |
| | Associate | 12 | $293 | $304 | $334 | $312 | $302 | $296 |
| **Boston MA** | Partner | 20 | $690 | $821 | $1,049 | $843 | $696 | $701 |
| | Associate | 24 | $479 | $638 | $865 | $680 | $588 | $509 |
| **Charlotte NC** | Associate | 18 | $325 | $344 | $416 | $404 | $466 | $422 |
| **Chicago IL** | Partner | 103 | $593 | $858 | $1,111 | $871 | $794 | $818 |
| | Associate | 93 | $325 | $515 | $694 | $541 | $555 | $575 |
| **Cleveland OH** | Partner | 40 | $397 | $480 | $565 | $534 | $518 | $571 |
| | Associate | 30 | $255 | $270 | $290 | $281 | $291 | $310 |
| **Dallas TX** | Partner | 22 | $547 | $665 | $1,023 | $734 | $781 | $742 |
| | Associate | 21 | $370 | $528 | $725 | $561 | $520 | $511 |
| **Denver CO** | Partner | 29 | $495 | $555 | $657 | $586 | $565 | $515 |

# Section III: Practice Area Analysis

## Commercial
By City

**2022 — Real Rates for Associate and Partner**　　　　　　　　　　**Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **Denver CO** | Associate | 25 | $298 | $415 | $455 | $395 | $368 | $336 |
| **Houston TX** | Partner | 14 | $469 | $626 | $859 | $644 | $672 | $768 |
|  | Associate | 13 | $360 | $509 | $590 | $498 | $467 | $502 |
| **Indianapolis IN** | Partner | 12 | $406 | $445 | $556 | $477 | $474 | $440 |
| **Kansas City MO** | Partner | 35 | $410 | $450 | $536 | $484 | $467 | $466 |
|  | Associate | 25 | $315 | $374 | $387 | $345 | $339 | $329 |
| **Los Angeles CA** | Partner | 78 | $693 | $849 | $1,071 | $878 | $840 | $813 |
|  | Associate | 111 | $464 | $686 | $876 | $688 | $722 | $674 |
| **Miami FL** | Partner | 52 | $485 | $601 | $688 | $610 | $562 | $504 |
|  | Associate | 40 | $315 | $449 | $524 | $432 | $390 | $396 |
| **Minneapolis MN** | Partner | 53 | $576 | $655 | $800 | $673 | $657 | $576 |
|  | Associate | 58 | $399 | $457 | $529 | $465 | $459 | $380 |
| **New York NY** | Partner | 174 | $628 | $1,128 | $1,499 | $1,108 | $1,040 | $1,033 |
|  | Associate | 174 | $434 | $680 | $990 | $721 | $617 | $685 |
| **Philadelphia PA** | Partner | 116 | $543 | $728 | $903 | $755 | $677 | $652 |

# Section III: Practice Area Analysis

## Commercial
By City

**2022 — Real Rates for Associate and Partner**

**Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **Philadelphia PA** | Associate | 106 | $384 | $430 | $538 | $482 | $446 | $420 |
| **Pittsburgh PA** | Partner | 18 | $481 | $661 | $763 | $657 | $635 | $543 |
| | Associate | 17 | $280 | $425 | $515 | $414 | $443 | $377 |
| **Portland OR** | Partner | 16 | $500 | $585 | $655 | $576 | $557 | $495 |
| | Associate | 31 | $400 | $435 | $501 | $448 | $406 | $370 |
| **San Francisco CA** | Partner | 43 | $420 | $675 | $1,015 | $735 | $696 | $738 |
| | Associate | 34 | $330 | $400 | $533 | $479 | $476 | $445 |
| **Seattle WA** | Partner | 30 | $490 | $556 | $713 | $611 | $531 | $476 |
| | Associate | 19 | $380 | $440 | $538 | $455 | $357 | $345 |
| **St. Louis MO** | Partner | 16 | $410 | $561 | $700 | $569 | $603 | $643 |
| **Washington DC** | Partner | 162 | $689 | $821 | $1,058 | $910 | $854 | $869 |
| | Associate | 104 | $456 | $584 | $739 | $622 | $589 | $555 |

# Section III: Practice Area Analysis

## Commercial
By Matter Type and YOE

**2022 — Real Rates for Partner**                    **Trend Analysis - Mean**

| Years of Experience | Matter Type | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|
| **Fewer Than 21 Years** | Litigation | | | | | | | |
| | | 253 | $405 | $589 | $863 | $670 | $633 | $597 |
| | Non-Litigation | | | | | | | |
| | | 146 | $470 | $628 | $869 | $686 | $662 | $697 |
| **21 or More Years** | Litigation | | | | | | | |
| | | 418 | $495 | $694 | $995 | $774 | $722 | $694 |
| | Non-Litigation | | | | | | | |
| | | 256 | $572 | $740 | $1,031 | $832 | $825 | $834 |

# Section III: Practice Area Analysis

## Commercial
By Matter Type and YOE

**2022 — Real Rates for Associate**                    **Trend Analysis - Mean**

| Years of Experience | Matter Type | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|
| **Fewer Than 3 Years** | Litigation | 59 | $319 | $420 | $569 | $453 | $398 | $372 |
|  | Non-Litigation | 23 | $321 | $368 | $401 | $412 | $361 | $428 |
| **3 to Fewer Than 7 Years** | Litigation | 161 | $300 | $418 | $596 | $491 | $441 | $394 |
|  | Non-Litigation | 56 | $335 | $409 | $510 | $455 | $439 | $475 |
| **7 or More Years** | Non-Litigation | 78 | $382 | $501 | $605 | $554 | $561 | $572 |

# Section III: Practice Area Analysis

## Commercial
By Firm Size and Matter Type

**2022 — Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| Firm Size | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| **50 Lawyers or Fewer** | Litigation | Partner | 103 | $300 | $379 | $511 | $426 | $422 | $401 |
| | | Associate | 83 | $225 | $275 | $328 | $296 | $334 | $261 |
| | Non-Litigation | Partner | 54 | $320 | $400 | $489 | $424 | $437 | $429 |
| | | Associate | 25 | $292 | $335 | $363 | $338 | $316 | $312 |
| **51–200 Lawyers** | Litigation | Partner | 143 | $350 | $482 | $625 | $533 | $492 | $455 |
| | | Associate | 89 | $265 | $328 | $396 | $335 | $321 | $288 |
| | Non-Litigation | Partner | 73 | $403 | $500 | $582 | $522 | $548 | $535 |
| | | Associate | 34 | $268 | $321 | $358 | $326 | $335 | $359 |
| **201–500 Lawyers** | Litigation | Partner | 168 | $450 | $561 | $740 | $624 | $592 | $575 |
| | | Associate | 153 | $330 | $400 | $450 | $411 | $403 | $386 |
| | Non-Litigation | Partner | 102 | $561 | $673 | $795 | $706 | $686 | $636 |
| | | Associate | 82 | $367 | $434 | $530 | $462 | $429 | $436 |
| **501–1,000 Lawyers** | Litigation | Partner | 243 | $630 | $769 | $1,022 | $887 | $817 | $834 |
| | | Associate | 282 | $392 | $500 | $712 | $576 | $501 | $489 |
| | Non-Litigation | Partner | 165 | $664 | $805 | $1,147 | $946 | $931 | $913 |
| | | Associate | 130 | $397 | $533 | $686 | $589 | $600 | $581 |
| **More Than 1,000 Lawyers** | Litigation | Partner | 151 | $879 | $1,103 | $1,345 | $1,132 | $1,012 | $995 |

# Section III: Practice Area Analysis

**2022 — Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| Firm Size | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| **More Than 1,000 Lawyers** | Litigation | Associate | 173 | $591 | $740 | $945 | $752 | $679 | $646 |
| | Non-Litigation | Partner | 96 | $872 | $978 | $1,176 | $1,033 | $1,043 | $1,061 |
| | | Associate | 71 | $520 | $675 | $875 | $717 | $756 | $714 |

# Section III: Practice Area Analysis

**Corporate: Mergers, Acquisitions, and Divestitures**
By City

**2022 — Real Rates for Associate and Partner**          **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|
| **Chicago IL** | Partner | 30 | $782 | $985 | $1,251 | $1,056 | $907 | $915 |
| | Associate | 32 | $497 | $602 | $810 | $683 | $570 | $638 |
| **Los Angeles CA** | Partner | 18 | $813 | $869 | $1,043 | $981 | $1,002 | $943 |
| | Associate | 30 | $486 | $500 | $691 | $615 | $627 | $578 |
| **New York NY** | Partner | 98 | $1,368 | $1,650 | $1,739 | $1,531 | $1,385 | $1,259 |
| | Associate | 198 | $713 | $925 | $1,160 | $915 | $834 | $749 |
| **Philadelphia PA** | Partner | 28 | $598 | $673 | $1,004 | $820 | $691 | $754 |
| | Associate | 25 | $443 | $460 | $550 | $554 | $432 | $419 |
| **Pittsburgh PA** | Partner | 16 | $604 | $699 | $837 | $727 | $595 | $665 |
| **San Francisco CA** | Partner | 24 | $810 | $868 | $1,061 | $966 | $879 | $959 |
| **Washington DC** | Partner | 50 | $698 | $1,013 | $1,315 | $1,006 | $956 | $942 |
| | Associate | 39 | $607 | $739 | $830 | $722 | $686 | $578 |

# Section III: Practice Area Analysis

## Corporate: Mergers, Acquisitions, and Divestitures
By Matter Type and YOE

**2022 — Real Rates for Partner**

**Trend Analysis - Mean**

| Years of Experience | Matter Type | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|
| **Fewer Than 21 Years** | Non-Litigation | | | | | | | |
| | | 88 | $649 | $868 | $1,368 | $982 | $845 | $869 |
| **21 or More Years** | Non-Litigation | | | | | | | |
| | | 167 | $625 | $870 | $1,368 | $992 | $944 | $962 |

wolterskluwer.com

# Section III: Practice Area Analysis

## Corporate: Mergers, Acquisitions, and Divestitures
By Matter Type and YOE

**2022 — Real Rates for Associate**  |  **Trend Analysis - Mean**

| Years of Experience | Matter Type | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|
| **Fewer Than 3 Years** | Non-Litigation | 27 | $460 | $486 | $702 | $602 | $519 | $450 |
| **3 to Fewer Than 7 Years** | Non-Litigation | 67 | $460 | $529 | $919 | $686 | $545 | $539 |
| **7 or More Years** | Non-Litigation | 82 | $620 | $734 | $979 | $798 | $641 | $655 |

# Section III: Practice Area Analysis

**Corporate: Mergers, Acquisitions, and Divestitures**
By Firm Size and Matter Type

**2022 — Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| Firm Size | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| **51-200 Lawyers** | Non-Litigation | Partner | 23 | $390 | $485 | $770 | $550 | $561 | $632 |
| **201-500 Lawyers** | Non-Litigation | Partner | 56 | $572 | $704 | $916 | $741 | $653 | $663 |
|  |  | Associate | 41 | $443 | $460 | $510 | $476 | $424 | $396 |
| **501-1,000 Lawyers** | Non-Litigation | Partner | 111 | $700 | $1,216 | $1,650 | $1,149 | $1,021 | $1,061 |
|  |  | Associate | 155 | $620 | $829 | $1,115 | $820 | $676 | $660 |
| **More Than 1,000 Lawyers** | Non-Litigation | Partner | 151 | $868 | $1,121 | $1,407 | $1,183 | $1,074 | $1,058 |
|  |  | Associate | 217 | $536 | $698 | $925 | $749 | $702 | $699 |

# Section III: Practice Area Analysis

## Corporate: Other
By City

**2022 — Real Rates for Associate and Partner**

**Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **Atlanta GA** | Partner | 70 | $442 | $613 | $971 | $703 | $736 | $678 |
| | Associate | 60 | $385 | $450 | $588 | $479 | $481 | $470 |
| **Austin TX** | Partner | 17 | $387 | $450 | $538 | $502 | $460 | $482 |
| **Baltimore MD** | Partner | 19 | $426 | $614 | $767 | $606 | $664 | $672 |
| | Associate | 25 | $311 | $374 | $546 | $452 | $500 | $482 |
| **Birmingham AL** | Partner | 16 | $375 | $423 | $471 | $437 | $419 | $444 |
| | Associate | 15 | $294 | $303 | $341 | $314 | $315 | $334 |
| **Boston MA** | Partner | 47 | $513 | $735 | $903 | $733 | $743 | $672 |
| | Associate | 45 | $395 | $475 | $610 | $510 | $491 | $460 |
| **Charlotte NC** | Partner | 12 | $539 | $652 | $837 | $751 | $573 | $657 |
| **Chicago IL** | Partner | 192 | $740 | $918 | $1,199 | $962 | $938 | $880 |
| | Associate | 179 | $495 | $600 | $730 | $616 | $564 | $576 |
| **Cleveland OH** | Partner | 39 | $485 | $525 | $760 | $616 | $607 | $630 |
| | Associate | 17 | $287 | $313 | $399 | $332 | $375 | $342 |
| **Dallas TX** | Partner | 34 | $506 | $739 | $1,038 | $774 | $654 | $719 |

# Section III: Practice Area Analysis

## Corporate: Other
By City

**2022 — Real Rates for Associate and Partner**　　　　　　　　　**Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|------|------|---|-----------|--------|-----------|------|------|------|
| **Dallas TX** | Associate | 35 | $495 | $596 | $775 | $622 | $527 | $521 |
| **Denver CO** | Partner | 11 | $505 | $565 | $586 | $613 | $634 | $508 |
| **Houston TX** | Partner | 29 | $544 | $905 | $1,123 | $855 | $782 | $782 |
| | Associate | 34 | $445 | $595 | $706 | $592 | $580 | $512 |
| **Indianapolis IN** | Partner | 11 | $423 | $500 | $668 | $561 | $495 | $432 |
| **Kansas City MO** | Partner | 34 | $441 | $490 | $589 | $530 | $544 | $532 |
| | Associate | 16 | $337 | $384 | $426 | $378 | $367 | $314 |
| **Los Angeles CA** | Partner | 194 | $600 | $875 | $1,185 | $908 | $894 | $874 |
| | Associate | 188 | $484 | $645 | $840 | $665 | $655 | $639 |
| **Miami FL** | Partner | 31 | $475 | $525 | $646 | $574 | $501 | $579 |
| | Associate | 19 | $290 | $411 | $450 | $370 | $428 | $427 |
| **Minneapolis MN** | Partner | 26 | $510 | $624 | $714 | $619 | $625 | $590 |
| | Associate | 15 | $312 | $395 | $551 | $419 | $468 | $410 |
| **Nashville TN** | Partner | 12 | $431 | $498 | $601 | $521 | $496 | $407 |
| **New Orleans LA** | Partner | 20 | $337 | $368 | $428 | $382 | $376 | $374 |

# Section III: Practice Area Analysis

## Corporate: Other
By City

**2022 — Real Rates for Associate and Partner**          **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **New York NY** | Partner | 485 | $793 | $1,326 | $1,665 | $1,219 | $1,103 | $1,079 |
| | Associate | 538 | $590 | $789 | $1,065 | $806 | $746 | $709 |
| **Orlando FL** | Partner | 22 | $415 | $474 | $544 | $484 | $507 | $481 |
| | Associate | 13 | $230 | $325 | $400 | $314 | $267 | $274 |
| **Philadelphia PA** | Partner | 145 | $625 | $818 | $958 | $800 | $774 | $763 |
| | Associate | 135 | $415 | $450 | $535 | $484 | $450 | $439 |
| **Phoenix AZ** | Partner | 24 | $330 | $510 | $688 | $557 | $471 | $413 |
| | Associate | 24 | $252 | $303 | $355 | $337 | $286 | $269 |
| **Pittsburgh PA** | Partner | 21 | $420 | $585 | $819 | $601 | $676 | $528 |
| | Associate | 18 | $286 | $415 | $580 | $441 | $412 | $381 |
| **Portland OR** | Partner | 13 | $465 | $495 | $528 | $508 | $542 | $624 |
| | Associate | 17 | $360 | $416 | $449 | $413 | $392 | $382 |
| **Raleigh NC** | Partner | 11 | $253 | $400 | $497 | $387 | $402 | $462 |
| **San Diego CA** | Partner | 37 | $375 | $467 | $1,161 | $673 | $684 | $605 |
| | Associate | 37 | $211 | $285 | $380 | $315 | $329 | $383 |

# Section III: Practice Area Analysis

## Corporate: Other
By City

**2022 — Real Rates for Associate and Partner**      **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|
| **San Francisco CA** | Partner | 50 | $595 | $910 | $1,080 | $852 | $789 | $789 |
| | Associate | 28 | $338 | $620 | $778 | $623 | $609 | $549 |
| **San Jose CA** | Partner | 23 | $690 | $933 | $1,114 | $943 | $968 | $810 |
| | Associate | 15 | $469 | $590 | $746 | $615 | $626 | $598 |
| **Seattle WA** | Partner | 41 | $575 | $716 | $776 | $699 | $614 | $614 |
| | Associate | 33 | $395 | $472 | $535 | $478 | $475 | $417 |
| **Tampa FL** | Partner | 14 | $379 | $430 | $574 | $485 | $505 | $484 |
| **Washington DC** | Partner | 432 | $770 | $950 | $1,098 | $956 | $913 | $877 |
| | Associate | 395 | $550 | $670 | $705 | $665 | $642 | $585 |

# Section III: Practice Area Analysis

**Corporate: Other**
By Matter Type and YOE

**2022 — Real Rates for Partner**                                          **Trend Analysis - Mean**

| Years of Experience | Matter Type | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|
| **Fewer Than 21 Years** | Litigation | | | | | | | |
| | | 238 | $494 | $698 | $940 | $737 | $702 | $661 |
| | Non-Litigation | | | | | | | |
| | | 418 | $473 | $777 | $1,100 | $837 | $790 | $757 |
| **21 or More Years** | Litigation | | | | | | | |
| | | 425 | $545 | $756 | $995 | $814 | $805 | $746 |
| | Non-Litigation | | | | | | | |
| | | 826 | $580 | $900 | $1,248 | $951 | $886 | $859 |

# Section III: Practice Area Analysis

## Corporate: Other
By Matter Type and YOE

**2022 — Real Rates for Associate**                    **Trend Analysis - Mean**

| Years of Experience | Matter Type | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|
| **Fewer Than 3 Years** | Litigation | 31 | $344 | $440 | $593 | $463 | $418 | $358 |
| | Non-Litigation | 59 | $366 | $535 | $739 | $568 | $507 | $424 |
| **3 to Fewer Than 7 Years** | Litigation | 81 | $356 | $472 | $695 | $528 | $500 | $452 |
| | Non-Litigation | 177 | $378 | $498 | $718 | $582 | $541 | $511 |
| **7 or More Years** | Litigation | 146 | $385 | $525 | $656 | $534 | $511 | $493 |
| | Non-Litigation | 270 | $419 | $635 | $824 | $676 | $635 | $619 |

# Section III: Practice Area Analysis

## Corporate: Other
By Firm Size and Matter Type

**2022 — Real Rates for Associate and Partner**

**Trend Analysis - Mean**

| Firm Size | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| 50 Lawyers or Fewer | Litigation | Partner | 97 | $350 | $450 | $575 | $461 | $458 | $440 |
| | | Associate | 50 | $216 | $299 | $354 | $301 | $283 | $323 |
| | Non-Litigation | Partner | 155 | $333 | $426 | $534 | $446 | $430 | $426 |
| | | Associate | 91 | $221 | $290 | $369 | $307 | $279 | $313 |
| 51-200 Lawyers | Litigation | Partner | 138 | $371 | $579 | $757 | $594 | $555 | $533 |
| | | Associate | 84 | $280 | $377 | $451 | $395 | $383 | $378 |
| | Non-Litigation | Partner | 141 | $399 | $495 | $700 | $561 | $604 | $594 |
| | | Associate | 84 | $275 | $350 | $485 | $391 | $415 | $389 |
| 201-500 Lawyers | Litigation | Partner | 182 | $516 | $675 | $951 | $731 | $664 | $662 |
| | | Associate | 139 | $341 | $448 | $590 | $495 | $443 | $451 |
| | Non-Litigation | Partner | 341 | $482 | $625 | $890 | $696 | $655 | $663 |
| | | Associate | 267 | $385 | $460 | $631 | $506 | $476 | $447 |
| 501-1,000 Lawyers | Litigation | Partner | 242 | $657 | $935 | $1,075 | $919 | $915 | $846 |
| | | Associate | 254 | $459 | $648 | $695 | $615 | $609 | $551 |
| | Non-Litigation | Partner | 439 | $760 | $997 | $1,423 | $1,100 | $1,005 | $959 |
| | | Associate | 462 | $557 | $695 | $855 | $726 | $670 | $619 |
| More Than 1,000 Lawyers | Litigation | Partner | 197 | $711 | $880 | $1,154 | $955 | $944 | $870 |

wolterskluwer.com

# Section III: Practice Area Analysis

## Corporate: Other
By Firm Size and Matter Type

**2022 — Real Rates for Associate and Partner**          **Trend Analysis - Mean**

| Firm Size | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| **More Than 1,000 Lawyers** | Litigation | Associate | 198 | $467 | $565 | $710 | $615 | $594 | $527 |
| | Non-Litigation | Partner | 461 | $950 | $1,170 | $1,450 | $1,212 | $1,102 | $1,055 |
| | | Associate | 471 | $590 | $738 | $985 | $792 | $730 | $706 |

# Section III: Practice Area Analysis

## Corporate: Regulatory and Compliance
By City

**2022 — Real Rates for Associate and Partner**

**Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **Atlanta GA** | Partner | 20 | $731 | $797 | $884 | $820 | $774 | $590 |
| | Associate | 13 | $531 | $592 | $805 | $653 | $608 | $451 |
| **Baltimore MD** | Partner | 14 | $625 | $773 | $842 | $738 | $680 | $666 |
| | Associate | 16 | $332 | $460 | $644 | $472 | $507 | $427 |
| **Birmingham AL** | Associate | 12 | $273 | $292 | $332 | $304 | $295 | $317 |
| **Boston MA** | Partner | 16 | $717 | $796 | $920 | $870 | $785 | $728 |
| | Associate | 11 | $445 | $625 | $714 | $612 | $471 | $446 |
| **Chicago IL** | Partner | 60 | $564 | $879 | $1,062 | $837 | $788 | $818 |
| | Associate | 46 | $404 | $582 | $745 | $590 | $589 | $595 |
| **Denver CO** | Partner | 15 | $419 | $538 | $622 | $561 | $534 | $552 |
| **Kansas City MO** | Partner | 18 | $442 | $501 | $605 | $539 | $500 | $503 |
| | Associate | 11 | $280 | $320 | $329 | $310 | $331 | $294 |
| **Los Angeles CA** | Partner | 55 | $801 | $938 | $1,140 | $968 | $875 | $884 |
| | Associate | 72 | $495 | $666 | $855 | $675 | $647 | $675 |
| **Miami FL** | Partner | 30 | $492 | $600 | $833 | $680 | $746 | $717 |

# Section III: Practice Area Analysis

## Corporate: Regulatory and Compliance
By City

**2022 — Real Rates for Associate and Partner**  **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **Miami FL** | Associate | 16 | $360 | $450 | $571 | $473 | $518 | $542 |
| **Nashville TN** | Partner | 33 | $450 | $558 | $635 | $539 | $503 | $485 |
| | Associate | 21 | $248 | $375 | $473 | $367 | $334 | $280 |
| **New York NY** | Partner | 121 | $697 | $980 | $1,381 | $1,066 | $1,010 | $1,003 |
| | Associate | 137 | $490 | $682 | $835 | $710 | $684 | $648 |
| **Philadelphia PA** | Partner | 50 | $598 | $800 | $898 | $764 | $775 | $709 |
| | Associate | 35 | $325 | $430 | $519 | $497 | $474 | $406 |
| **Pittsburgh PA** | Partner | 12 | $444 | $737 | $827 | $659 | $665 | $664 |
| | Associate | 24 | $359 | $465 | $503 | $435 | $408 | $423 |
| **Portland OR** | Associate | 36 | $429 | $474 | $527 | $476 | $435 | $373 |
| **Richmond VA** | Partner | 11 | $397 | $595 | $690 | $544 | $523 | $452 |
| **San Francisco CA** | Partner | 32 | $556 | $740 | $830 | $772 | $703 | $749 |
| | Associate | 16 | $440 | $551 | $763 | $571 | $549 | $516 |
| **Seattle WA** | Partner | 27 | $555 | $760 | $806 | $705 | $729 | $673 |
| | Associate | 22 | $395 | $505 | $572 | $482 | $433 | $390 |

# Section III: Practice Area Analysis

**Corporate: Regulatory and Compliance**
By City

**2022 — Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **Washington DC** | Partner | | | | | | | |
| | | 333 | $625 | $859 | $1,052 | $863 | $862 | $841 |
| | Associate | | | | | | | |
| | | 315 | $464 | $582 | $715 | $606 | $579 | $564 |

# Section III: Practice Area Analysis

## Corporate: Regulatory and Compliance
By Matter Type and YOE

**2022 — Real Rates for Partner**                    **Trend Analysis - Mean**

| Years of Experience | Matter Type | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|
| **Fewer Than 21 Years** | Litigation | 59 | $551 | $705 | $903 | $755 | $804 | $760 |
| | Non-Litigation | 217 | $495 | $725 | $935 | $747 | $700 | $679 |
| **21 or More Years** | Litigation | 118 | $678 | $852 | $1,103 | $906 | $856 | $818 |
| | Non-Litigation | 383 | $563 | $725 | $1,000 | $804 | $773 | $764 |

# Section III: Practice Area Analysis

## Corporate: Regulatory and Compliance
By Matter Type and YOE

**2022 — Real Rates for Associate**

**Trend Analysis - Mean**

| Years of Experience | Matter Type | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|
| **Fewer Than 3 Years** | Litigation | 15 | $370 | $450 | $589 | $475 | $499 | |
| | Non-Litigation | 64 | $395 | $482 | $588 | $492 | $513 | $501 |
| **3 to Fewer Than 7 Years** | Litigation | 33 | $460 | $639 | $739 | $614 | $587 | $536 |
| | Non-Litigation | 136 | $390 | $519 | $670 | $548 | $507 | $482 |
| **7 or More Years** | Litigation | 53 | $488 | $581 | $798 | $631 | $615 | $580 |
| | Non-Litigation | 156 | $416 | $575 | $800 | $625 | $573 | $566 |

# Section III: Practice Area Analysis

## Corporate: Regulatory and Compliance
By Firm Size and Matter Type

**2022 — Real Rates for Associate and Partner**          **Trend Analysis - Mean**

| Firm Size | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| 50 Lawyers or Fewer | Litigation | Partner | 14 | $463 | $629 | $1,085 | $751 | $707 | $557 |
| | Non-Litigation | Partner | 115 | $450 | $544 | $617 | $526 | $544 | $525 |
| | | Associate | 61 | $250 | $306 | $364 | $290 | $305 | $341 |
| 51-200 Lawyers | Litigation | Partner | 17 | $600 | $700 | $798 | $734 | $685 | $609 |
| | Non-Litigation | Partner | 98 | $407 | $492 | $642 | $568 | $553 | $562 |
| | | Associate | 63 | $325 | $404 | $586 | $469 | $409 | $392 |
| 201-500 Lawyers | Litigation | Partner | 59 | $528 | $675 | $899 | $706 | $663 | $672 |
| | | Associate | 43 | $381 | $554 | $673 | $517 | $458 | $469 |
| | Non-Litigation | Partner | 111 | $533 | $649 | $777 | $664 | $623 | $616 |
| | | Associate | 91 | $387 | $474 | $565 | $502 | $439 | $397 |
| 501-1,000 Lawyers | Litigation | Partner | 74 | $720 | $884 | $1,108 | $940 | $947 | $935 |
| | | Associate | 84 | $474 | $609 | $807 | $624 | $623 | $596 |
| | Non-Litigation | Partner | 247 | $713 | $910 | $1,085 | $948 | $914 | $871 |
| | | Associate | 269 | $485 | $578 | $695 | $618 | $592 | $557 |
| More Than 1,000 Lawyers | Litigation | Partner | 65 | $830 | $895 | $1,246 | $1,010 | $972 | $939 |
| | | Associate | 76 | $460 | $535 | $745 | $583 | $613 | $602 |
| | Non-Litigation | Partner | 190 | $830 | $1,008 | $1,175 | $1,001 | $911 | $918 |

# Section III: Practice Area Analysis

## Corporate: Regulatory and Compliance
By Firm Size and Matter Type

**2022 — Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| Firm Size | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| **More Than 1,000 Lawyers** | Non-Litigation | Associate | 192 | $500 | $661 | $809 | $671 | $631 | $604 |

# Section III: Practice Area Analysis

## Employment and Labor
By City

**2022 — Real Rates for Associate and Partner**     **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **Atlanta GA** | Partner | 52 | $390 | $466 | $566 | $476 | $498 | $489 |
| | Associate | 42 | $297 | $348 | $390 | $342 | $328 | $317 |
| **Baltimore MD** | Partner | 24 | $597 | $627 | $813 | $697 | $623 | $592 |
| | Associate | 19 | $412 | $500 | $581 | $541 | $457 | $436 |
| **Boston MA** | Partner | 27 | $450 | $578 | $707 | $587 | $549 | $569 |
| | Associate | 23 | $367 | $421 | $496 | $430 | $474 | $489 |
| **Chicago IL** | Partner | 108 | $490 | $655 | $768 | $685 | $713 | $652 |
| | Associate | 86 | $310 | $395 | $501 | $426 | $452 | $427 |
| **Cincinnati OH** | Partner | 11 | $419 | $488 | $590 | $502 | $439 | $420 |
| **Cleveland OH** | Partner | 36 | $375 | $424 | $510 | $471 | $466 | $467 |
| | Associate | 34 | $266 | $295 | $342 | $326 | $312 | $307 |
| **Dallas TX** | Partner | 41 | $379 | $449 | $583 | $496 | $536 | $515 |
| | Associate | 20 | $312 | $342 | $383 | $360 | $401 | $358 |
| **Denver CO** | Partner | 28 | $455 | $528 | $664 | $574 | $538 | $530 |
| | Associate | 18 | $296 | $329 | $351 | $349 | $313 | $316 |

# Section III: Practice Area Analysis

## Employment and Labor
By City

**2022 — Real Rates for Associate and Partner**          **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **Houston TX** | Partner | 21 | $456 | $540 | $667 | $562 | $568 | $591 |
| **Kansas City MO** | Partner | 19 | $383 | $410 | $434 | $417 | $421 | $407 |
| | Associate | 14 | $250 | $270 | $321 | $284 | $295 | $294 |
| **Los Angeles CA** | Partner | 115 | $525 | $666 | $935 | $743 | $694 | $640 |
| | Associate | 98 | $325 | $390 | $495 | $446 | $494 | $467 |
| **Memphis TN** | Partner | 12 | $350 | $415 | $468 | $406 | $378 | $381 |
| **Miami FL** | Partner | 14 | $438 | $486 | $673 | $592 | $615 | $553 |
| | Associate | 14 | $278 | $415 | $652 | $476 | $424 | $386 |
| **Minneapolis MN** | Partner | 30 | $454 | $600 | $686 | $572 | $562 | $550 |
| | Associate | 19 | $342 | $410 | $475 | $395 | $417 | $428 |
| **Nashville TN** | Partner | 26 | $392 | $458 | $488 | $448 | $429 | $434 |
| | Associate | 16 | $251 | $270 | $321 | $279 | $282 | $278 |
| **New York NY** | Partner | 222 | $470 | $605 | $850 | $701 | $680 | $674 |
| | Associate | 182 | $325 | $413 | $553 | $488 | $485 | $455 |
| **Orlando FL** | Partner | 11 | $470 | $475 | $475 | $485 | $462 | $466 |

# Section III: Practice Area Analysis

**Employment and Labor**
By City

**2022 — Real Rates for Associate and Partner**                **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|------|------|---|------|------|------|------|------|------|
| **Philadelphia PA** | Partner | 99 | $525 | $659 | $810 | $678 | $665 | $655 |
|  | Associate | 104 | $375 | $442 | $500 | $448 | $428 | $405 |
| **Phoenix AZ** | Partner | 14 | $437 | $536 | $563 | $506 | $514 | $454 |
| **Pittsburgh PA** | Partner | 26 | $519 | $630 | $756 | $644 | $592 | $576 |
|  | Associate | 26 | $318 | $350 | $392 | $388 | $389 | $367 |
| **Portland OR** | Associate | 26 | $320 | $376 | $428 | $390 | $344 | $344 |
| **San Diego CA** | Partner | 18 | $407 | $456 | $553 | $528 | $564 | $491 |
|  | Associate | 25 | $300 | $325 | $380 | $351 | $373 | $361 |
| **San Francisco CA** | Partner | 54 | $404 | $576 | $728 | $597 | $566 | $549 |
|  | Associate | 40 | $303 | $336 | $422 | $368 | $370 | $368 |
| **San Jose CA** | Partner | 15 | $632 | $730 | $856 | $779 | $704 | $722 |
| **Seattle WA** | Partner | 39 | $421 | $500 | $650 | $549 | $498 | $541 |
|  | Associate | 33 | $307 | $354 | $466 | $411 | $427 | $377 |
| **St. Louis MO** | Partner | 12 | $396 | $435 | $548 | $495 | $485 | $519 |
| **Tampa FL** | Partner | 16 | $370 | $375 | $483 | $440 | $445 | $492 |

# Section III: Practice Area Analysis

**Employment and Labor**
By City

**2022 — Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **Washington DC** | Partner | | | | | | | |
| | | 147 | $619 | $730 | $860 | $759 | $736 | $740 |
| | Associate | | | | | | | |
| | | 90 | $420 | $510 | $625 | $521 | $503 | $499 |

# Section III: Practice Area Analysis

## Employment and Labor
By Matter Type and YOE

**2022 — Real Rates for Partner**  ·  **Trend Analysis - Mean**

| Years of Experience | Matter Type | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|
| **Fewer Than 21 Years** | Litigation | 148 | $372 | $475 | $666 | $535 | $513 | $484 |
| | Non-Litigation | 303 | $395 | $476 | $634 | $541 | $538 | $522 |
| **21 or More Years** | Litigation | 298 | $443 | $585 | $801 | $648 | $595 | $592 |
| | Non-Litigation | 591 | $470 | $580 | $743 | $634 | $620 | $612 |

# Section III: Practice Area Analysis

## Employment and Labor
By Matter Type and YOE

**2022 — Real Rates for Associate**                                      **Trend Analysis - Mean**

| Years of Experience | Matter Type | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|
| **Fewer Than 3 Years** | Litigation | 37 | $329 | $350 | $420 | $391 | $362 | $316 |
| | Non-Litigation | 43 | $298 | $325 | $369 | $343 | $322 | $445 |
| **3 to Fewer Than 7 Years** | Litigation | 89 | $290 | $355 | $455 | $384 | $346 | $331 |
| **7 or More Years** | Litigation | 166 | $322 | $396 | $517 | $435 | $408 | $396 |
| | Non-Litigation | 242 | $315 | $380 | $495 | $418 | $416 | $406 |

# Section III: Practice Area Analysis

## Employment and Labor
By Firm Size and Matter Type

**2022 — Real Rates for Associate and Partner**

**Trend Analysis - Mean**

| Firm Size | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| 50 Lawyers or Fewer | Litigation | Partner | 58 | $313 | $398 | $496 | $421 | $402 | $411 |
| | | Associate | 37 | $250 | $280 | $342 | $297 | $311 | $295 |
| | Non-Litigation | Partner | 47 | $375 | $450 | $550 | $471 | $452 | $435 |
| | | Associate | 19 | $265 | $285 | $350 | $297 | $254 | $300 |
| 51-200 Lawyers | Litigation | Partner | 48 | $300 | $370 | $485 | $405 | $429 | $431 |
| | | Associate | 24 | $250 | $290 | $345 | $310 | $306 | $318 |
| | Non-Litigation | Partner | 126 | $406 | $525 | $723 | $581 | $574 | $550 |
| | | Associate | 80 | $244 | $289 | $365 | $328 | $358 | $351 |
| 201-500 Lawyers | Litigation | Partner | 132 | $404 | $476 | $595 | $532 | $505 | $517 |
| | | Associate | 117 | $304 | $350 | $411 | $385 | $390 | $378 |
| | Non-Litigation | Partner | 238 | $375 | $445 | $545 | $491 | $485 | $494 |
| | | Associate | 135 | $295 | $340 | $413 | $362 | $348 | $351 |
| 501-1,000 Lawyers | Litigation | Partner | 167 | $475 | $634 | $765 | $682 | $645 | $589 |
| | | Associate | 140 | $310 | $387 | $475 | $425 | $432 | $392 |
| | Non-Litigation | Partner | 403 | $470 | $528 | $665 | $601 | $575 | $574 |
| | | Associate | 293 | $306 | $335 | $425 | $394 | $400 | $384 |
| More Than 1,000 Lawyers | Litigation | Partner | 126 | $628 | $795 | $918 | $791 | $793 | $789 |

# Section III: Practice Area Analysis

## Employment and Labor
By Firm Size and Matter Type

**2022 — Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| Firm Size | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| **More Than 1,000 Lawyers** | Litigation | Associate | 146 | $415 | $495 | $575 | $509 | $510 | $502 |
| | Non-Litigation | Partner | 202 | $655 | $750 | $876 | $808 | $796 | $780 |
| | | Associate | 211 | $380 | $450 | $546 | $494 | $492 | $471 |

# Section III: Practice Area Analysis

## Environmental
By City

**2022 — Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **Los Angeles CA** | Partner | 11 | $515 | $550 | $663 | $753 | $568 | $557 |
| **New York NY** | Partner | 27 | $414 | $525 | $616 | $616 | $656 | $590 |
| | Associate | 26 | $298 | $340 | $400 | $382 | $502 | $432 |
| **Washington DC** | Partner | 14 | $660 | $803 | $957 | $812 | $745 | $744 |
| | Associate | 18 | $400 | $565 | $695 | $567 | $543 | $475 |

# Section III: Practice Area Analysis

**Environmental**
By Matter Type and YOE

**2022 — Real Rates for Partner**                                    **Trend Analysis - Mean**

| Years of Experience | Matter Type | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|
| **Fewer Than 21 Years** | Litigation | | | | | | | |
| | | 12 | $348 | $404 | $446 | $428 | $466 | $455 |
| | Non-Litigation | | | | | | | |
| | | 12 | $456 | $515 | $644 | $586 | $475 | $427 |
| **21 or More Years** | Litigation | | | | | | | |
| | | 33 | $483 | $590 | $662 | $650 | $560 | $548 |
| | Non-Litigation | | | | | | | |
| | | 57 | $448 | $542 | $840 | $681 | $644 | $614 |

# Section III: Practice Area Analysis

**Environmental**
By Matter Type and YOE

**2022 — Real Rates for Associate**

**Trend Analysis - Mean**

| Years of Experience | Matter Type | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|
| **7 or More Years** | Litigation | | | | | | | |
| | | 13 | $370 | $425 | $500 | $441 | $368 | $377 |

# Section III: Practice Area Analysis

## Environmental
By Firm Size and Matter Type

**2022 — Real Rates for Associate and Partner**

**Trend Analysis - Mean**

| Firm Size | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| **51-200 Lawyers** | Litigation | Partner | 16 | $350 | $415 | $535 | $444 | $464 | $456 |
| | Non-Litigation | Partner | 38 | $401 | $474 | $552 | $487 | $506 | $490 |
| | | Associate | 14 | $294 | $325 | $383 | $361 | $360 | $304 |
| **201-500 Lawyers** | Litigation | Partner | 15 | $550 | $617 | $654 | $598 | $557 | $528 |
| | Non-Litigation | Partner | 13 | $530 | $701 | $743 | $695 | $645 | $614 |
| **501-1,000 Lawyers** | Litigation | Partner | 14 | $517 | $583 | $625 | $594 | $593 | $608 |
| | | Associate | 22 | $400 | $530 | $670 | $525 | $394 | $406 |
| | Non-Litigation | Partner | 11 | $809 | $938 | $972 | $871 | $716 | $715 |
| | | Associate | 12 | $426 | $575 | $642 | $546 | $481 | $473 |
| **More Than 1,000 Lawyers** | Non-Litigation | Partner | 14 | $678 | $948 | $1,440 | $1,085 | $1,002 | $944 |

# Section III: Practice Area Analysis

## Finance and Securities
By City

**2022 — Real Rates for Associate and Partner**  **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **Atlanta GA** | Partner | 50 | $751 | $871 | $1,045 | $897 | $789 | $839 |
| | Associate | 55 | $448 | $599 | $743 | $619 | $539 | $548 |
| **Baltimore MD** | Partner | 34 | $566 | $650 | $1,108 | $806 | $649 | $631 |
| | Associate | 13 | $360 | $482 | $680 | $526 | $453 | $492 |
| **Boston MA** | Partner | 59 | $735 | $1,016 | $1,340 | $1,062 | $1,076 | $964 |
| | Associate | 84 | $518 | $678 | $874 | $701 | $703 | $629 |
| **Charlotte NC** | Partner | 45 | $580 | $692 | $798 | $743 | $779 | $696 |
| | Associate | 40 | $355 | $440 | $640 | $529 | $532 | $465 |
| **Chicago IL** | Partner | 172 | $751 | $1,000 | $1,324 | $1,066 | $1,034 | $1,001 |
| | Associate | 152 | $523 | $630 | $851 | $682 | $677 | $598 |
| **Cincinnati OH** | Associate | 14 | $250 | $278 | $317 | $278 | $266 | $254 |
| **Cleveland OH** | Partner | 54 | $450 | $495 | $627 | $578 | $552 | $568 |
| **Dallas TX** | Partner | 46 | $572 | $925 | $1,072 | $897 | $925 | $847 |
| | Associate | 52 | $484 | $625 | $751 | $628 | $606 | $597 |
| **Denver CO** | Partner | 20 | $473 | $510 | $584 | $549 | $529 | $513 |

# Section III: Practice Area Analysis

## Finance and Securities
By City

**2022 — Real Rates for Associate and Partner**  **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **Denver CO** | Associate | 21 | $303 | $335 | $379 | $353 | $336 | $315 |
| **Houston TX** | Partner | 32 | $855 | $1,345 | $1,526 | $1,212 | $1,229 | $1,075 |
| | Associate | 40 | $530 | $691 | $836 | $669 | $663 | $614 |
| **Kansas City MO** | Partner | 28 | $500 | $570 | $665 | $589 | $520 | $469 |
| | Associate | 14 | $356 | $395 | $436 | $388 | $349 | $322 |
| **Los Angeles CA** | Partner | 148 | $795 | $1,166 | $1,372 | $1,109 | $1,096 | $1,072 |
| | Associate | 217 | $517 | $759 | $993 | $760 | $844 | $756 |
| **Miami FL** | Partner | 23 | $492 | $591 | $779 | $661 | $683 | $687 |
| | Associate | 16 | $385 | $467 | $604 | $524 | $428 | $457 |
| **Minneapolis MN** | Partner | 20 | $626 | $841 | $876 | $782 | $717 | $693 |
| **New York NY** | Partner | 629 | $973 | $1,330 | $1,650 | $1,302 | $1,264 | $1,182 |
| | Associate | 829 | $587 | $813 | $1,067 | $827 | $809 | $750 |
| **Philadelphia PA** | Partner | 75 | $700 | $875 | $989 | $891 | $876 | $823 |
| | Associate | 69 | $410 | $459 | $575 | $525 | $476 | $476 |
| **Phoenix AZ** | Partner | 26 | $384 | $425 | $480 | $459 | $468 | $472 |

wolterskluwer.com

# Section III: Practice Area Analysis

## Finance and Securities
By City

**2022 — Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|------|------|---|---------------|--------|---------------|------|------|------|
| **Phoenix AZ** | Associate | 12 | $184 | $215 | $271 | $250 | $254 | $239 |
| **Pittsburgh PA** | Partner | 48 | $491 | $668 | $872 | $695 | $757 | $657 |
| | Associate | 35 | $425 | $503 | $559 | $508 | $466 | $396 |
| **Portland OR** | Associate | 15 | $369 | $409 | $515 | $425 | $394 | $350 |
| **Richmond VA** | Partner | 28 | $766 | $878 | $1,029 | $907 | $797 | $780 |
| **San Diego CA** | Partner | 16 | $355 | $565 | $783 | $680 | $831 | $819 |
| **San Francisco CA** | Partner | 31 | $798 | $969 | $1,054 | $954 | $1,051 | $1,052 |
| | Associate | 29 | $580 | $702 | $890 | $723 | $722 | $697 |
| **San Jose CA** | Partner | 11 | $1,120 | $1,473 | $1,669 | $1,359 | $1,343 | $1,197 |
| **Seattle WA** | Partner | 32 | $480 | $518 | $668 | $580 | $591 | $561 |
| | Associate | 24 | $299 | $355 | $522 | $404 | $472 | $472 |
| **Washington DC** | Partner | 162 | $795 | $1,000 | $1,330 | $1,064 | $1,038 | $971 |
| | Associate | 86 | $510 | $670 | $905 | $715 | $703 | $646 |

# Section III: Practice Area Analysis

## Finance and Securities
By Matter Type and YOE

**2022 — Real Rates for Partner**　　　　　　　　　　　　**Trend Analysis - Mean**

| Years of Experience | Matter Type | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|
| **Fewer Than 21 Years** | Litigation | 52 | $471 | $574 | $780 | $672 | $626 | $564 |
| | Non-Litigation | 510 | $550 | $792 | $1,230 | $901 | $931 | $864 |
| **21 or More Years** | Litigation | 83 | $542 | $683 | $1,005 | $801 | $788 | $809 |
| | Non-Litigation | 851 | $675 | $995 | $1,450 | $1,057 | $1,058 | $987 |

# Section III: Practice Area Analysis

## Finance and Securities
By Matter Type and YOE

**2022 — Real Rates for Associate**                    **Trend Analysis - Mean**

| Years of Experience | Matter Type | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|
| **Fewer Than 3 Years** | Non-Litigation | 124 | $343 | $485 | $675 | $520 | $571 | $578 |
| **3 to Fewer Than 7 Years** | Litigation | 19 | $288 | $360 | $456 | $375 | $340 | $376 |
| | Non-Litigation | 232 | $361 | $526 | $800 | $601 | $608 | $518 |
| **7 or More Years** | Litigation | 28 | $304 | $515 | $730 | $548 | $511 | $491 |
| | Non-Litigation | 312 | $445 | $663 | $1,000 | $743 | $749 | $717 |

# Section III: Practice Area Analysis

## Finance and Securities
By Firm Size and Matter Type

**2022 — Real Rates for Associate and Partner**

**Trend Analysis - Mean**

| Firm Size | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| **50 Lawyers or Fewer** | Non-Litigation | Partner | 117 | $381 | $487 | $624 | $535 | $524 | $493 |
| | | Associate | 68 | $275 | $340 | $432 | $378 | $370 | $339 |
| **51-200 Lawyers** | Litigation | Partner | 24 | $358 | $460 | $690 | $533 | $510 | $560 |
| | | Associate | 12 | $257 | $363 | $577 | $412 | $407 | $391 |
| | Non-Litigation | Partner | 229 | $416 | $500 | $716 | $584 | $604 | $577 |
| | | Associate | 146 | $271 | $380 | $479 | $412 | $404 | $377 |
| **201-500 Lawyers** | Litigation | Partner | 32 | $447 | $540 | $631 | $573 | $608 | $595 |
| | | Associate | 50 | $276 | $302 | $392 | $348 | $347 | $361 |
| | Non-Litigation | Partner | 325 | $545 | $740 | $1,111 | $840 | $848 | $797 |
| | | Associate | 290 | $369 | $535 | $721 | $569 | $551 | $540 |
| **501-1,000 Lawyers** | Litigation | Partner | 47 | $676 | $886 | $1,090 | $933 | $907 | $903 |
| | | Associate | 50 | $485 | $547 | $636 | $590 | $523 | $495 |
| | Non-Litigation | Partner | 564 | $871 | $1,100 | $1,565 | $1,198 | $1,182 | $1,092 |
| | | Associate | 662 | $565 | $733 | $965 | $783 | $787 | $712 |
| **More Than 1,000 Lawyers** | Litigation | Partner | 54 | $645 | $838 | $1,113 | $905 | $859 | $917 |
| | | Associate | 41 | $438 | $577 | $828 | $655 | $572 | $556 |
| | Non-Litigation | Partner | 566 | $950 | $1,250 | $1,525 | $1,243 | $1,197 | $1,127 |

# Section III: Practice Area Analysis

### Finance and Securities
By Firm Size and Matter Type

**2022 — Real Rates for Associate and Partner**    **Trend Analysis - Mean**

| Firm Size | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| **More Than 1,000 Lawyers** | Non-Litigation | Associate | 633 | $595 | $820 | $1,053 | $827 | $812 | $746 |

# Section III: Practice Area Analysis

## General Liability - Litigation only
By City

**2022 — Real Rates for Associate and Partner**

**Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **Atlanta GA** | Partner | 16 | $238 | $300 | $550 | $427 | $407 | $426 |
| | Associate | 13 | $210 | $270 | $598 | $386 | $276 | $269 |
| **Baltimore MD** | Partner | 16 | $488 | $600 | $625 | $536 | $624 | $619 |
| | Associate | 24 | $400 | $448 | $513 | $445 | $484 | $445 |
| **Birmingham AL** | Partner | 12 | $400 | $480 | $564 | $457 | $360 | $345 |
| **Boston MA** | Partner | 14 | $185 | $225 | $331 | $345 | $381 | $374 |
| | Associate | 11 | $170 | $180 | $275 | $220 | $357 | $290 |
| **Charleston WV** | Partner | 11 | $200 | $268 | $310 | $261 | $265 | $268 |
| **Chicago IL** | Partner | 41 | $215 | $320 | $895 | $538 | $539 | $497 |
| | Associate | 31 | $225 | $235 | $353 | $373 | $409 | $296 |
| **Dallas TX** | Partner | 11 | $190 | $250 | $434 | $316 | $335 | $295 |
| **Indianapolis IN** | Partner | 14 | $220 | $250 | $472 | $365 | $318 | $348 |
| **Jackson MS** | Partner | 54 | $283 | $319 | $375 | $337 | $383 | $373 |
| | Associate | 34 | $225 | $240 | $251 | $240 | $245 | $250 |
| **Kansas City MO** | Partner | 14 | $304 | $398 | $549 | $406 | $432 | $478 |

# Section III: Practice Area Analysis

## General Liability - Litigation only
By City

**2022 — Real Rates for Associate and Partner**

**Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|
| **Kansas City MO** | Associate | 14 | $250 | $325 | $368 | $297 | $305 | $315 |
| **Los Angeles CA** | Partner | 40 | $410 | $835 | $995 | $744 | $604 | $515 |
| | Associate | 38 | $361 | $475 | $735 | $533 | $514 | $390 |
| **Miami FL** | Partner | 15 | $162 | $165 | $278 | $249 | $257 | $267 |
| **Minneapolis MN** | Partner | 14 | $339 | $340 | $675 | $449 | $371 | $355 |
| **Nashville TN** | Partner | 13 | $275 | $295 | $300 | $308 | $330 | $333 |
| **New Orleans LA** | Partner | 31 | $285 | $315 | $335 | $311 | $301 | $308 |
| | Associate | 27 | $212 | $238 | $242 | $230 | $221 | $225 |
| **New York NY** | Partner | 81 | $295 | $530 | $662 | $572 | $597 | $518 |
| | Associate | 80 | $175 | $300 | $400 | $332 | $384 | $367 |
| **Philadelphia PA** | Partner | 41 | $475 | $625 | $715 | $604 | $530 | $484 |
| | Associate | 53 | $412 | $430 | $565 | $444 | $414 | $381 |
| **Phoenix AZ** | Partner | 12 | $236 | $275 | $401 | $315 | $353 | $281 |
| | Associate | 11 | $183 | $215 | $247 | $240 | $210 | $179 |
| **Pittsburgh PA** | Associate | 11 | $245 | $334 | $435 | $356 | $319 | $334 |

# Section III: Practice Area Analysis

## General Liability - Litigation only
By City

**2022 — Real Rates for Associate and Partner**　　　　　**Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **Portland OR** | Partner | 11 | $288 | $305 | $333 | $318 | $291 | $276 |
| **San Francisco CA** | Partner | 14 | $284 | $430 | $525 | $484 | $458 | $400 |
| | Associate | 13 | $288 | $430 | $430 | $375 | $404 | $346 |
| **St. Louis MO** | Partner | 17 | $200 | $300 | $357 | $303 | $360 | $353 |
| **Washington DC** | Partner | 49 | $895 | $950 | $950 | $953 | $870 | $817 |
| | Associate | 37 | $486 | $670 | $695 | $575 | $558 | $559 |

# Section III: Practice Area Analysis

## General Liability - Litigation only
By Matter Type and YOE

**2022 — Real Rates for Partner**

**Trend Analysis - Mean**

| Years of Experience | Matter Type | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|
| **Fewer Than 21 Years** | Litigation | | | | | | | |
| | | 185 | $250 | $370 | $675 | $496 | $465 | $415 |
| **21 or More Years** | Litigation | | | | | | | |
| | | 388 | $270 | $387 | $614 | $472 | $481 | $455 |

wolterskluwer.com

# Section III: Practice Area Analysis

## General Liability - Litigation only
By Matter Type and YOE

**2022 — Real Rates for Associate**                    **Trend Analysis - Mean**

| Years of Experience | Matter Type | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|
| **Fewer Than 3 Years** | Litigation | 12 | $195 | $228 | $276 | $236 | $275 | |
| **3 to Fewer Than 7 Years** | Litigation | 74 | $240 | $333 | $435 | $374 | $359 | $320 |
| **7 or More Years** | Litigation | 133 | $250 | $375 | $470 | $393 | $394 | $350 |

# Section III: Practice Area Analysis

## General Liability - Litigation only

By Firm Size and Matter Type

**2022 — Real Rates for Associate and Partner**

**Trend Analysis - Mean**

| Firm Size | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| **50 Lawyers or Fewer** | Litigation | Partner | 206 | $210 | $275 | $340 | $293 | $273 | $257 |
| | | Associate | 131 | $165 | $210 | $250 | $223 | $213 | $201 |
| **51-200 Lawyers** | Litigation | Partner | 207 | $225 | $319 | $384 | $330 | $322 | $314 |
| | | Associate | 156 | $200 | $225 | $263 | $236 | $227 | $222 |
| **201-500 Lawyers** | Litigation | Associate | 93 | $280 | $330 | $400 | $344 | $328 | $312 |
| **501-1,000 Lawyers** | Litigation | Partner | 107 | $575 | $700 | $950 | $752 | $710 | $651 |
| | | Associate | 99 | $392 | $464 | $599 | $492 | $489 | $432 |
| **More Than 1,000 Lawyers** | Litigation | Partner | 85 | $715 | $895 | $1,060 | $912 | $890 | $834 |
| | | Associate | 97 | $430 | $525 | $616 | $547 | $577 | $577 |

# Section III: Practice Area Analysis

**Insurance Defense - Litigation only**
By City

**2022 — Real Rates for Associate and Partner**

**Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|------|------|---|---------------|--------|----------------|------|------|------|
| **Albany NY** | Partner | 13 | $150 | $150 | $195 | $168 | $181 | $182 |
| **Atlanta GA** | Partner | 112 | $180 | $190 | $235 | $244 | $227 | $256 |
| | Associate | 127 | $165 | $187 | $240 | $208 | $195 | $202 |
| **Baltimore MD** | Partner | 40 | $175 | $184 | $195 | $213 | $210 | $262 |
| | Associate | 49 | $150 | $160 | $180 | $180 | $180 | $183 |
| **Baton Rouge LA** | Partner | 13 | $170 | $171 | $243 | $192 | $182 | $174 |
| **Birmingham AL** | Partner | 38 | $154 | $180 | $194 | $328 | $297 | $222 |
| | Associate | 26 | $155 | $155 | $190 | $177 | $170 | $168 |
| **Boston MA** | Partner | 48 | $180 | $213 | $220 | $262 | $235 | $235 |
| | Associate | 34 | $155 | $175 | $185 | $234 | $264 | $230 |
| **Buffalo NY** | Partner | 71 | $160 | $175 | $200 | $181 | $177 | $182 |
| | Associate | 62 | $140 | $147 | $160 | $150 | $151 | $148 |
| **Charleston SC** | Partner | 15 | $170 | $175 | $200 | $191 | $199 | $197 |
| | Associate | 16 | $145 | $165 | $165 | $156 | $153 | $148 |
| **Charleston WV** | Partner | 53 | $169 | $175 | $191 | $196 | $195 | $194 |

wolterskluwer.com

# Section III: Practice Area Analysis

**Insurance Defense -
Litigation only**
By City

**2022 — Real Rates for Associate and Partner**            **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|
| **Charleston WV** | Associate | 17 | $150 | $160 | $165 | $164 | $182 | $190 |
| **Charlotte NC** | Partner | 22 | $180 | $185 | $195 | $202 | $218 | $187 |
| | Associate | 13 | $158 | $168 | $205 | $199 | $191 | $162 |
| **Chicago IL** | Partner | 191 | $180 | $215 | $276 | $262 | $270 | $265 |
| | Associate | 159 | $159 | $178 | $220 | $202 | $203 | $224 |
| **Cincinnati OH** | Partner | 20 | $155 | $165 | $180 | $182 | $181 | $180 |
| | Associate | 15 | $140 | $155 | $205 | $170 | $170 | $160 |
| **Cleveland OH** | Partner | 40 | $174 | $180 | $184 | $186 | $186 | $182 |
| | Associate | 34 | $160 | $160 | $160 | $161 | $165 | $159 |
| **Columbia SC** | Partner | 46 | $180 | $180 | $190 | $183 | $182 | $172 |
| | Associate | 41 | $160 | $165 | $170 | $163 | $163 | $156 |
| **Columbus OH** | Partner | 19 | $170 | $173 | $177 | $178 | $170 | $175 |
| | Associate | 11 | $146 | $155 | $162 | $166 | $151 | $150 |
| **Dallas TX** | Partner | 60 | $182 | $225 | $275 | $265 | $246 | $242 |
| | Associate | 44 | $165 | $193 | $220 | $216 | $192 | $189 |

# Section III: Practice Area Analysis

## Insurance Defense - Litigation only
By City

**2022 — Real Rates for Associate and Partner**

**Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|
| **Denver CO** | Partner | 42 | $161 | $180 | $226 | $198 | $190 | $185 |
| | Associate | 46 | $140 | $150 | $170 | $160 | $163 | $162 |
| **Des Moines IA** | Partner | 13 | $169 | $190 | $200 | $183 | $179 | $176 |
| **Detroit MI** | Partner | 123 | $160 | $173 | $175 | $182 | $194 | $175 |
| | Associate | 116 | $153 | $162 | $162 | $159 | $164 | $154 |
| **Greenville SC** | Associate | 15 | $140 | $165 | $165 | $167 | $160 | $160 |
| **Harrisburg PA** | Partner | 21 | $162 | $167 | $200 | $178 | $179 | $176 |
| **Hartford CT** | Partner | 19 | $190 | $223 | $460 | $331 | $326 | $272 |
| | Associate | 14 | $174 | $181 | $211 | $214 | $210 | $211 |
| **Honolulu HI** | Partner | 11 | $152 | $195 | $219 | $186 | $190 | $180 |
| **Houston TX** | Partner | 52 | $193 | $225 | $270 | $307 | $323 | $298 |
| | Associate | 38 | $180 | $200 | $225 | $232 | $232 | $238 |
| **Indianapolis IN** | Partner | 27 | $155 | $176 | $185 | $175 | $164 | $176 |
| **Jackson MS** | Partner | 19 | $135 | $155 | $200 | $178 | $194 | $194 |
| **Jacksonville FL** | Partner | 17 | $180 | $180 | $183 | $181 | $181 | $178 |

# Section III: Practice Area Analysis

## Insurance Defense - Litigation only
By City

### 2022 — Real Rates for Associate and Partner

### Trend Analysis - Mean

| City | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **Kansas City MO** | Partner | 49 | $185 | $232 | $278 | $249 | $238 | $198 |
| | Associate | 44 | $170 | $185 | $204 | $190 | $179 | $184 |
| **Las Vegas NV** | Partner | 33 | $185 | $215 | $230 | $209 | $204 | $206 |
| **Lexington KY** | Partner | 14 | $160 | $161 | $164 | $162 | $164 | $165 |
| | Associate | 27 | $140 | $140 | $143 | $142 | $140 | $138 |
| **Little Rock AR** | Partner | 14 | $165 | $190 | $205 | $316 | $321 | $230 |
| **Los Angeles CA** | Partner | 306 | $225 | $240 | $266 | $291 | $306 | $332 |
| | Associate | 225 | $185 | $200 | $225 | $227 | $224 | $219 |
| **Louisville KY** | Partner | 15 | $133 | $154 | $167 | $176 | $162 | $153 |
| **Miami FL** | Partner | 98 | $180 | $185 | $220 | $228 | $239 | $232 |
| | Associate | 69 | $168 | $174 | $199 | $196 | $178 | $165 |
| **Milwaukee WI** | Partner | 27 | $175 | $185 | $185 | $191 | $192 | $192 |
| **Minneapolis MN** | Partner | 70 | $175 | $180 | $224 | $208 | $205 | $211 |
| | Associate | 40 | $160 | $165 | $185 | $171 | $175 | $183 |
| **Morgantown WV** | Partner | 12 | $160 | $169 | $181 | $171 | $168 | $167 |

# Section III: Practice Area Analysis

## Insurance Defense - Litigation only
By City

**2022 — Real Rates for Associate and Partner**　　　　　　　　　　**Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|------|------|---|------|------|------|------|------|------|
| **Nashville TN** | Partner | 22 | $165 | $175 | $185 | $188 | $183 | $170 |
| | Associate | 15 | $146 | $150 | $169 | $165 | $144 | $132 |
| **New Orleans LA** | Partner | 45 | $175 | $195 | $225 | $256 | $197 | $242 |
| | Associate | 18 | $149 | $171 | $177 | $169 | $147 | $157 |
| **New York NY** | Partner | 299 | $175 | $200 | $230 | $265 | $261 | $259 |
| | Associate | 256 | $159 | $175 | $200 | $244 | $242 | $210 |
| **Oklahoma City OK** | Partner | 14 | $150 | $155 | $225 | $196 | $275 | $210 |
| **Orlando FL** | Partner | 33 | $166 | $180 | $180 | $186 | $178 | $168 |
| | Associate | 25 | $150 | $155 | $170 | $159 | $161 | $152 |
| **Philadelphia PA** | Partner | 219 | $175 | $185 | $215 | $207 | $225 | $230 |
| | Associate | 201 | $160 | $170 | $196 | $192 | $191 | $189 |
| **Phoenix AZ** | Partner | 74 | $175 | $190 | $220 | $215 | $237 | $211 |
| | Associate | 54 | $175 | $191 | $210 | $198 | $194 | $188 |
| **Pittsburgh PA** | Partner | 60 | $170 | $175 | $175 | $176 | $170 | $172 |
| | Associate | 53 | $155 | $160 | $160 | $160 | $158 | $158 |

# Section III: Practice Area Analysis

## Insurance Defense - Litigation only
By City

**2022 — Real Rates for Associate and Partner**

**Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **Portland OR** | Partner | 28 | $190 | $230 | $255 | $245 | $243 | $238 |
| | Associate | 25 | $171 | $187 | $200 | $196 | $198 | $191 |
| **Providence RI** | Partner | 15 | $174 | $175 | $223 | $203 | $196 | $193 |
| **Raleigh NC** | Partner | 15 | $183 | $190 | $195 | $196 | $200 | $226 |
| | Associate | 14 | $140 | $158 | $165 | $176 | $191 | $179 |
| **Richmond VA** | Partner | 34 | $178 | $195 | $200 | $330 | $317 | $311 |
| | Associate | 20 | $166 | $175 | $200 | $180 | $181 | $178 |
| **Salt Lake City UT** | Partner | 27 | $171 | $199 | $249 | $223 | $205 | $214 |
| **San Diego CA** | Partner | 52 | $215 | $253 | $346 | $438 | $454 | $449 |
| **San Francisco CA** | Partner | 165 | $217 | $250 | $280 | $305 | $314 | $344 |
| | Associate | 65 | $180 | $195 | $240 | $226 | $237 | $210 |
| **Seattle WA** | Partner | 55 | $197 | $250 | $375 | $344 | $339 | $306 |
| | Associate | 28 | $177 | $190 | $240 | $213 | $208 | $208 |
| **Springfield IL** | Partner | 12 | $165 | $166 | $166 | $165 | $165 | $171 |
| **St. Louis MO** | Partner | 39 | $166 | $180 | $210 | $202 | $186 | $196 |

# Section III: Practice Area Analysis

## Insurance Defense - Litigation only
By City

**2022 — Real Rates for Associate and Partner**

**Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **Tampa FL** | Partner | 36 | $176 | $184 | $220 | $202 | $201 | $202 |
| | Associate | 38 | $180 | $205 | $235 | $205 | $198 | $181 |
| **Tulsa OK** | Partner | 15 | $150 | $150 | $225 | $195 | $190 | $193 |
| | Associate | 19 | $225 | $235 | $242 | $229 | $218 | $212 |
| **Washington DC** | Partner | 62 | $250 | $510 | $883 | $633 | $598 | $599 |
| | Associate | 36 | $351 | $565 | $832 | $573 | $528 | $511 |

# Section III: Practice Area Analysis

**Insurance Defense - Litigation only**
By Matter Type and YOE

**2022 — Real Rates for Partner**

**Trend Analysis - Mean**

| Years of Experience | Matter Type | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|
| **Fewer Than 21 Years** | Litigation | | | | | | | |
| | | 773 | $175 | $187 | $225 | $221 | $217 | $219 |
| **21 or More Years** | Litigation | | | | | | | |
| | | 1,599 | $170 | $190 | $230 | $224 | $219 | $217 |

# Section III: Practice Area Analysis

## Insurance Defense - Litigation only
By Matter Type and YOE

**2022 — Real Rates for Associate**　　　　　　　　　　　　　**Trend Analysis - Mean**

| Years of Experience | Matter Type | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|
| **Fewer Than 3 Years** | Litigation | 124 | $160 | $175 | $200 | $192 | $179 | $194 |
| **3 to Fewer Than 7 Years** | Litigation | 330 | $160 | $180 | $215 | $226 | $216 | $207 |
| **7 or More Years** | Litigation | 503 | $155 | $175 | $200 | $208 | $207 | $203 |

# Section III: Practice Area Analysis

## Insurance Defense - Litigation only
By Firm Size and Matter Type

**2022 — Real Rates for Associate and Partner**

**Trend Analysis - Mean**

| Firm Size | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| **50 Lawyers or Fewer** | Litigation | Partner | 1,480 | $165 | $180 | $215 | $217 | $210 | $209 |
| | | Associate | 1,072 | $145 | $161 | $185 | $172 | $170 | $165 |
| **51-200 Lawyers** | Litigation | Partner | 870 | $175 | $190 | $224 | $213 | $216 | $207 |
| | | Associate | 668 | $160 | $170 | $188 | $178 | $181 | $175 |
| **201-500 Lawyers** | Litigation | Partner | 435 | $225 | $245 | $280 | $310 | $325 | $308 |
| | | Associate | 274 | $185 | $200 | $240 | $240 | $231 | $224 |
| **501-1,000 Lawyers** | Litigation | Partner | 106 | $230 | $275 | $475 | $410 | $423 | $476 |
| | | Associate | 100 | $200 | $270 | $514 | $376 | $340 | $357 |
| **More Than 1,000 Lawyers** | Litigation | Partner | 36 | $800 | $1,038 | $1,233 | $1,012 | $967 | $903 |
| | | Associate | 62 | $489 | $624 | $863 | $654 | $615 | $607 |

# Section III: Practice Area Analysis

**Intellectual Property: Other**
By City

**2022 — Real Rates for Partner**                    **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **New York NY** | Partner | | | | | | | |
| | | 13 | $575 | $700 | $875 | $734 | $729 | $885 |

# Section III: Practice Area Analysis

## Intellectual Property: Other
By Matter Type and YOE

**2022 — Real Rates for Partner**                                         **Trend Analysis - Mean**

| Years of Experience | Matter Type | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|
| **Fewer Than 21 Years** | Non-Litigation | | | | | | | |
| | | 12 | $300 | $559 | $724 | $600 | $583 | $571 |
| **21 or More Years** | Litigation | | | | | | | |
| | | 11 | $587 | $625 | $702 | $672 | $751 | $774 |
| | Non-Litigation | | | | | | | |
| | | 29 | $510 | $700 | $875 | $711 | $699 | $713 |

# Section III: Practice Area Analysis

**Intellectual Property: Other**
By Firm Size and Matter Type

**2022 — Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| Firm Size | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| **50 Lawyers or Fewer** | Non-Litigation | Partner | 12 | $299 | $368 | $507 | $420 | $448 | $499 |
| **201-500 Lawyers** | Non-Litigation | Partner | 16 | $416 | $524 | $587 | $538 | $510 | $501 |
| **More Than 1,000 Lawyers** | Non-Litigation | Partner | 15 | $824 | $965 | $1,105 | $968 | $926 | $967 |
| | | Associate | 14 | $453 | $595 | $650 | $585 | $562 | $497 |

# Section III: Practice Area Analysis

## Intellectual Property: Patents
By City

**2022 — Real Rates for Associate and Partner**    **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **Atlanta GA** | Partner | 15 | $621 | $692 | $782 | $699 | $618 | $587 |
| | Associate | 16 | $451 | $502 | $608 | $520 | $494 | $457 |
| **Austin TX** | Partner | 21 | $535 | $743 | $858 | $680 | $660 | $598 |
| | Associate | 24 | $401 | $569 | $683 | $530 | $506 | $516 |
| **Boston MA** | Partner | 31 | $550 | $693 | $836 | $675 | $682 | $654 |
| | Associate | 14 | $351 | $483 | $747 | $527 | $480 | $487 |
| **Chicago IL** | Partner | 30 | $447 | $573 | $849 | $693 | $629 | $644 |
| | Associate | 22 | $395 | $495 | $595 | $504 | $499 | $474 |
| **Cleveland OH** | Associate | 22 | $150 | $200 | $211 | $239 | $240 | $264 |
| **Dallas TX** | Partner | 11 | $728 | $924 | $995 | $886 | $748 | $685 |
| | Associate | 13 | $608 | $690 | $758 | $667 | $568 | $574 |
| **Houston TX** | Partner | 23 | $325 | $492 | $876 | $632 | $564 | $566 |
| | Associate | 45 | $200 | $245 | $335 | $297 | $257 | $237 |
| **Los Angeles CA** | Partner | 28 | $708 | $950 | $1,100 | $943 | $873 | $852 |
| | Associate | 83 | $575 | $765 | $890 | $736 | $698 | $660 |

# Section III: Practice Area Analysis

## Intellectual Property: Patents
By City

**2022 — Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|
| **New York NY** | Partner | 45 | $618 | $895 | $1,089 | $866 | $817 | $772 |
| | Associate | 57 | $519 | $625 | $859 | $662 | $601 | $561 |
| **Philadelphia PA** | Partner | 31 | $603 | $746 | $840 | $758 | $670 | $686 |
| | Associate | 26 | $391 | $423 | $475 | $432 | $384 | $392 |
| **Salt Lake City UT** | Partner | 12 | $350 | $371 | $413 | $381 | $285 | $334 |
| **San Francisco CA** | Partner | 28 | $767 | $1,085 | $1,307 | $1,038 | $939 | $904 |
| | Associate | 27 | $464 | $690 | $897 | $684 | $637 | $634 |
| **San Jose CA** | Partner | 14 | $527 | $784 | $1,079 | $791 | $752 | $748 |
| | Associate | 14 | $451 | $632 | $832 | $704 | $610 | $418 |
| **Washington DC** | Partner | 103 | $589 | $900 | $1,035 | $853 | $806 | $738 |
| | Associate | 91 | $386 | $695 | $823 | $648 | $545 | $528 |

# Section III: Practice Area Analysis

**Intellectual Property: Patents**
By Matter Type and YOE

**2022 — Real Rates for Partner**                    **Trend Analysis - Mean**

| Years of Experience | Matter Type | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|
| **Fewer Than 21 Years** | Litigation | 91 | $694 | $893 | $996 | $856 | $746 | $710 |
| | Non-Litigation | 91 | $408 | $525 | $755 | $603 | $526 | $521 |
| **21 or More Years** | Litigation | 109 | $623 | $895 | $1,105 | $878 | $847 | $817 |
| | Non-Litigation | 111 | $422 | $623 | $871 | $692 | $619 | $582 |

# Section III: Practice Area Analysis

**Intellectual Property: Patents**
By Matter Type and YOE

**2022 — Real Rates for Associate**                          **Trend Analysis - Mean**

| Years of Experience | Matter Type | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|
| **Fewer Than 3 Years** | Non-Litigation | 18 | $326 | $403 | $512 | $427 | $341 | |
| **3 to Fewer Than 7 Years** | Litigation | 51 | $485 | $670 | $852 | $652 | $545 | $503 |
| | Non-Litigation | 27 | $386 | $690 | $874 | $651 | $490 | $388 |
| **7 or More Years** | Litigation | 56 | $555 | $695 | $886 | $706 | $628 | $575 |

# Section III: Practice Area Analysis

**Intellectual Property: Patents**
By Firm Size and Matter Type

**2022 — Real Rates for Associate and Partner**                **Trend Analysis - Mean**

| Firm Size | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| **50 Lawyers or Fewer** | Litigation | Partner | 34 | $409 | $539 | $629 | $562 | $551 | $556 |
| | | Associate | 14 | $311 | $499 | $625 | $488 | $410 | $390 |
| | Non-Litigation | Partner | 40 | $295 | $335 | $395 | $365 | $391 | $384 |
| | | Associate | 56 | $202 | $248 | $312 | $282 | $301 | $305 |
| **51-200 Lawyers** | Litigation | Partner | 28 | $612 | $745 | $838 | $766 | $629 | $596 |
| | | Associate | 18 | $298 | $453 | $730 | $511 | $426 | $394 |
| | Non-Litigation | Partner | 65 | $434 | $520 | $620 | $549 | $520 | $523 |
| | | Associate | 26 | $312 | $367 | $445 | $387 | $335 | $336 |
| **201-500 Lawyers** | Litigation | Partner | 39 | $608 | $764 | $989 | $802 | $766 | $705 |
| | | Associate | 29 | $425 | $505 | $664 | $561 | $475 | $436 |
| | Non-Litigation | Partner | 50 | $427 | $542 | $723 | $588 | $603 | $588 |
| | | Associate | 35 | $331 | $391 | $465 | $410 | $415 | $398 |
| **501-1,000 Lawyers** | Litigation | Partner | 88 | $760 | $950 | $1,155 | $988 | $905 | $884 |
| | | Associate | 108 | $532 | $695 | $886 | $708 | $648 | $644 |
| | Non-Litigation | Partner | 48 | $763 | $862 | $1,057 | $937 | $870 | $807 |
| | | Associate | 80 | $420 | $581 | $698 | $592 | $563 | $546 |

# Section III: Practice Area Analysis

## Intellectual Property: Patents
By Firm Size and Matter Type

**2022 — Real Rates for Associate and Partner**

**Trend Analysis - Mean**

| Firm Size | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| **More Than 1,000 Lawyers** | Litigation | Partner | 63 | $873 | $946 | $1,073 | $985 | $973 | $922 |
| | | Associate | 83 | $555 | $742 | $796 | $707 | $668 | $612 |
| | Non-Litigation | Partner | 28 | $772 | $1,095 | $1,197 | $982 | $875 | $884 |
| | | Associate | 48 | $589 | $803 | $899 | $723 | $657 | $613 |

# Section III: Practice Area Analysis

## Intellectual Property: Trademarks
By City

**2022 — Real Rates for Associate and Partner**

**Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|------|------|---|---------------|--------|----------------|------|------|------|
| **Chicago IL** | Partner | 22 | $420 | $723 | $808 | $638 | $609 | $653 |
| **New York NY** | Partner | 15 | $458 | $593 | $941 | $678 | $659 | $637 |
| | Associate | 13 | $300 | $395 | $635 | $458 | $408 | $401 |
| **Washington DC** | Partner | 22 | $520 | $660 | $936 | $711 | $702 | $715 |
| | Associate | 17 | $390 | $542 | $695 | $532 | $542 | $475 |

# Section III: Practice Area Analysis

## Intellectual Property: Trademarks
By Matter Type and YOE

**2022 — Real Rates for Partner**

**Trend Analysis - Mean**

| Years of Experience | Matter Type | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|
| **Fewer Than 21 Years** | Non-Litigation | | | | | | | |
| | | 21 | $454 | $489 | $734 | $598 | $595 | $586 |
| **21 or More Years** | Litigation | | | | | | | |
| | | 12 | $693 | $886 | $1,035 | $848 | $708 | $639 |
| | Non-Litigation | | | | | | | |
| | | 54 | $500 | $589 | $699 | $614 | $627 | $643 |

# Section III: Practice Area Analysis

## Intellectual Property: Trademarks
By Matter Type and YOE

**2022 — Real Rates for Associate**

**Trend Analysis - Mean**

| Years of Experience | Matter Type | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|
| **3 to Fewer Than 7 Years** | Non-Litigation | 13 | $357 | $383 | $410 | $402 | $353 | $360 |

# Section III: Practice Area Analysis

## Intellectual Property: Trademarks
By Firm Size and Matter Type

**2022 — Real Rates for Associate and Partner**　　　　　　**Trend Analysis - Mean**

| Firm Size | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| **50 Lawyers or Fewer** | Non-Litigation | Partner | 25 | $383 | $420 | $495 | $448 | $468 | $511 |
| | | Associate | 17 | $260 | $300 | $319 | $293 | $294 | $312 |
| **201-500 Lawyers** | Non-Litigation | Partner | 24 | $500 | $589 | $660 | $582 | $606 | $585 |
| | | Associate | 22 | $346 | $400 | $435 | $395 | $377 | $374 |
| **501-1,000 Lawyers** | Non-Litigation | Partner | 22 | $523 | $702 | $928 | $692 | $701 | $693 |
| | | Associate | 12 | $394 | $574 | $670 | $536 | $505 | $485 |
| **More Than 1,000 Lawyers** | Non-Litigation | Partner | 23 | $698 | $820 | $1,014 | $850 | $836 | $818 |
| | | Associate | 17 | $410 | $492 | $700 | $546 | $529 | $480 |

# Section III: Practice Area Analysis

**Real Estate**
By City

**2022 — Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **Atlanta GA** | Partner | 41 | $301 | $408 | $545 | $452 | $388 | $379 |
| | Associate | 38 | $250 | $300 | $413 | $329 | $317 | $290 |
| **Baltimore MD** | Partner | 24 | $300 | $315 | $395 | $338 | $331 | $382 |
| | Associate | 20 | $275 | $285 | $300 | $282 | $263 | $340 |
| **Birmingham AL** | Partner | 18 | $293 | $301 | $335 | $321 | $318 | $319 |
| | Associate | 14 | $220 | $250 | $285 | $254 | $255 | $268 |
| **Boston MA** | Partner | 36 | $250 | $396 | $529 | $453 | $449 | $366 |
| | Associate | 41 | $225 | $260 | $435 | $342 | $316 | $269 |
| **Bridgeport CT** | Partner | 15 | $265 | $400 | $600 | $433 | $427 | $401 |
| **Charlotte NC** | Associate | 12 | $225 | $238 | $260 | $252 | $246 | $258 |
| **Chicago IL** | Partner | 58 | $272 | $384 | $716 | $518 | $548 | $456 |
| | Associate | 52 | $249 | $396 | $557 | $410 | $392 | $341 |
| **Cincinnati OH** | Partner | 12 | $429 | $467 | $575 | $493 | $445 | $416 |
| | Associate | 22 | $286 | $307 | $339 | $308 | $306 | $277 |
| **Cleveland OH** | Partner | 32 | $250 | $403 | $500 | $391 | $403 | $386 |

# Section III: Practice Area Analysis

## Real Estate
By City

**2022 — Real Rates for Associate and Partner**　　　　　　　　　　　**Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|
| **Cleveland OH** | Associate | 23 | $180 | $250 | $299 | $255 | $241 | $237 |
| **Dallas TX** | Partner | 32 | $373 | $488 | $525 | $471 | $462 | $371 |
| | Associate | 30 | $210 | $295 | $300 | $292 | $284 | $285 |
| **Denver CO** | Partner | 31 | $360 | $498 | $644 | $519 | $504 | $453 |
| | Associate | 24 | $270 | $275 | $398 | $342 | $289 | $271 |
| **Hartford CT** | Partner | 12 | $273 | $365 | $730 | $503 | $436 | $381 |
| **Honolulu HI** | Partner | 13 | $245 | $276 | $300 | $280 | $305 | $276 |
| **Houston TX** | Associate | 22 | $269 | $324 | $350 | $311 | $330 | $329 |
| **Indianapolis IN** | Partner | 17 | $253 | $400 | $405 | $373 | $379 | $375 |
| | Associate | 16 | $237 | $260 | $260 | $258 | $257 | $238 |
| **Jacksonville FL** | Partner | 11 | $299 | $313 | $348 | $390 | $443 | $379 |
| **Kansas City MO** | Partner | 23 | $344 | $385 | $483 | $439 | $337 | $327 |
| | Associate | 24 | $240 | $250 | $315 | $281 | $239 | $232 |
| **Los Angeles CA** | Partner | 106 | $342 | $400 | $722 | $510 | $510 | $487 |
| | Associate | 112 | $298 | $395 | $592 | $438 | $409 | $358 |

# Section III: Practice Area Analysis

## Real Estate
By City

**2022 — Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|
| **Miami FL** | Partner | 69 | $300 | $488 | $695 | $505 | $453 | $396 |
| | Associate | 59 | $221 | $290 | $461 | $344 | $331 | $286 |
| **Minneapolis MN** | Partner | 14 | $250 | $260 | $400 | $364 | $326 | $257 |
| **New York NY** | Partner | 155 | $350 | $480 | $714 | $586 | $559 | $545 |
| | Associate | 134 | $290 | $325 | $548 | $445 | $413 | $363 |
| **Orlando FL** | Partner | 12 | $313 | $400 | $400 | $403 | $396 | $394 |
| | Associate | 13 | $220 | $248 | $260 | $258 | $280 | $255 |
| **Philadelphia PA** | Partner | 70 | $347 | $447 | $712 | $522 | $475 | $450 |
| | Associate | 58 | $325 | $435 | $550 | $425 | $370 | $328 |
| **Phoenix AZ** | Partner | 24 | $300 | $330 | $375 | $364 | $297 | $306 |
| **Pittsburgh PA** | Partner | 16 | $295 | $380 | $425 | $361 | $360 | $294 |
| | Associate | 11 | $175 | $186 | $320 | $256 | $214 | $212 |
| **Portland ME** | Partner | 15 | $250 | $385 | $410 | $337 | $381 | $253 |
| **San Diego CA** | Partner | 30 | $250 | $306 | $489 | $457 | $439 | $400 |
| | Associate | 16 | $225 | $225 | $255 | $260 | $266 | $255 |

# Section III: Practice Area Analysis

## Real Estate
By City

**2022 — Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|------|------|---|---------------|--------|---------------|------|------|------|
| **San Francisco CA** | Partner | 42 | $338 | $390 | $675 | $524 | $496 | $486 |
| | Associate | 21 | $265 | $586 | $948 | $613 | $534 | $435 |
| **Seattle WA** | Partner | 26 | $331 | $472 | $695 | $535 | $536 | $489 |
| | Associate | 14 | $270 | $319 | $530 | $387 | $361 | $368 |
| **St. Louis MO** | Partner | 24 | $350 | $353 | $399 | $390 | $366 | $375 |
| **Tampa FL** | Partner | 25 | $310 | $345 | $540 | $417 | $436 | $367 |
| | Associate | 11 | $280 | $288 | $297 | $287 | $277 | $278 |
| **Washington DC** | Partner | 41 | $391 | $540 | $795 | $625 | $575 | $460 |
| | Associate | 17 | $233 | $275 | $488 | $387 | $452 | $385 |

# Section III: Practice Area Analysis

## Real Estate
By Matter Type and YOE

**2022 — Real Rates for Partner**                                                    **Trend Analysis - Mean**

| Years of Experience | Matter Type | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|
| **Fewer Than 21 Years** | Litigation | | | | | | | |
| | | 102 | $307 | $400 | $525 | $429 | $423 | $387 |
| | Non-Litigation | | | | | | | |
| | | 246 | $275 | $330 | $430 | $393 | $385 | $384 |
| **21 or More Years** | Litigation | | | | | | | |
| | | 218 | $295 | $375 | $601 | $461 | $496 | $381 |
| | Non-Litigation | | | | | | | |
| | | 578 | $295 | $388 | $578 | $484 | $450 | $429 |

# Section III: Practice Area Analysis

## Real Estate
By Matter Type and YOE

**2022 — Real Rates for Associate**                                                                 **Trend Analysis - Mean**

| Years of Experience | Matter Type | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|
| **Fewer Than 3 Years** | Litigation | 11 | $255 | $293 | $330 | $295 | $280 | |
| | Non-Litigation | 44 | $245 | $325 | $467 | $361 | $301 | $430 |
| **3 to Fewer Than 7 Years** | Litigation | 28 | $202 | $273 | $348 | $299 | $315 | $250 |
| **7 or More Years** | Litigation | 51 | $249 | $295 | $427 | $336 | $314 | $283 |
| | Non-Litigation | 193 | $227 | $285 | $468 | $354 | $327 | $305 |

# Section III: Practice Area Analysis

## Real Estate
By Firm Size and Matter Type

**2022 — Real Rates for Associate and Partner**                                    **Trend Analysis - Mean**

| Firm Size | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|-----------|-------------|------|---|----------------|--------|----------------|------|------|------|
| **50 Lawyers or Fewer** | Litigation | Partner | 137 | $252 | $310 | $400 | $347 | $312 | $302 |
| | | Associate | 95 | $206 | $250 | $315 | $262 | $246 | $228 |
| | Non-Litigation | Partner | 376 | $250 | $300 | $386 | $328 | $315 | $312 |
| | | Associate | 260 | $200 | $225 | $275 | $240 | $229 | $235 |
| **51-200 Lawyers** | Litigation | Partner | 113 | $295 | $400 | $545 | $431 | $439 | $344 |
| | | Associate | 66 | $196 | $315 | $425 | $324 | $298 | $238 |
| | Non-Litigation | Partner | 231 | $295 | $353 | $480 | $397 | $405 | $377 |
| | | Associate | 140 | $225 | $260 | $321 | $285 | $269 | $265 |
| **201-500 Lawyers** | Litigation | Partner | 83 | $341 | $430 | $601 | $493 | $467 | $441 |
| | | Associate | 66 | $280 | $299 | $350 | $337 | $331 | $311 |
| | Non-Litigation | Partner | 208 | $325 | $400 | $505 | $458 | $436 | $434 |
| | | Associate | 193 | $253 | $288 | $326 | $321 | $308 | $305 |
| **501-1,000 Lawyers** | Non-Litigation | Partner | 99 | $525 | $648 | $785 | $681 | $635 | $640 |

# Section III: Practice Area Analysis

## Real Estate
By Firm Size and Matter Type

**2022 — Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| Firm Size | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| **501-1,000 Lawyers** | Non-Litigation | Associate | 108 | $340 | $475 | $585 | $497 | $448 | $421 |
| **More Than 1,000 Lawyers** | Non-Litigation | Partner | 66 | $726 | $875 | $1,108 | $986 | $877 | $837 |
| | | Associate | 83 | $470 | $595 | $641 | $623 | $600 | $541 |



# Section IV: In-Depth Analysis for Select US Cities

All data and analysis based on data collected thru Q2 2022

# Section IV: In-Depth Analysis for Select US Cities

## Boston MA
By Practice Area and Firm Size

**2022 — Real Rates for Associate and Partner**  **Trend Analysis - Mean**

| Practice Area | Firm Size | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| **Commercial** | More Than 1,000 Lawyers | Associate | 14 | $695 | $818 | $977 | $831 | $787 | $767 |
| **Corporate: Other** | 51-200 Lawyers | Associate | 16 | $301 | $450 | $586 | $447 | $455 | $455 |
| | More Than 1,000 Lawyers | Partner | 15 | $818 | $902 | $1,033 | $961 | $1,035 | $831 |
| **Finance and Securities: Investments and Other Financial Instruments** | 501-1,000 Lawyers | Partner | 15 | $1,016 | $1,230 | $1,506 | $1,226 | $1,134 | $998 |
| | | Associate | 13 | $526 | $645 | $698 | $680 | $654 | $635 |
| | More Than 1,000 Lawyers | Partner | 13 | $1,118 | $1,300 | $1,498 | $1,313 | $1,189 | $1,085 |
| | | Associate | 32 | $650 | $775 | $1,000 | $817 | $799 | $725 |
| **Insurance Defense: Other** | 51-200 Lawyers | Partner | 14 | $220 | $278 | $400 | $470 | $484 | $521 |
| **Insurance Defense: Property Damage** | 51-200 Lawyers | Partner | 12 | $219 | $220 | $325 | $266 | $270 | $251 |
| **Intellectual Property: Patents** | 201-500 Lawyers | Partner | 13 | $550 | $737 | $861 | $709 | $725 | $687 |

# Section IV: In-Depth Analysis for Select US Cities

## Chicago IL
By Practice Area and Firm Size

### 2022 — Real Rates for Associate and Partner

### Trend Analysis - Mean

| Practice Area | Firm Size | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| **Commercial** | 201-500 Lawyers | Partner | 20 | $453 | $706 | $1,025 | $766 | $707 | $692 |
| | 501-1,000 Lawyers | Partner | 24 | $703 | $772 | $978 | $839 | $771 | $736 |
| | | Associate | 30 | $330 | $462 | $578 | $497 | $458 | $470 |
| | More Than 1,000 Lawyers | Partner | 42 | $904 | $1,096 | $1,390 | $1,141 | $1,028 | $1,082 |
| | | Associate | 36 | $585 | $705 | $871 | $721 | $689 | $698 |
| **Corporate: Mergers, Acquisitions and Divestitures** | More Than 1,000 Lawyers | Partner | 12 | $1,157 | $1,306 | $1,522 | $1,307 | $942 | $1,032 |
| | | Associate | 18 | $601 | $782 | $955 | $790 | $553 | $748 |
| **Corporate: Other** | 201-500 Lawyers | Partner | 54 | $712 | $902 | $1,023 | $884 | $847 | $833 |
| | | Associate | 77 | $487 | $573 | $732 | $592 | $545 | $567 |
| | 501-1,000 Lawyers | Partner | 22 | $765 | $970 | $1,135 | $979 | $890 | $785 |
| | | Associate | 13 | $503 | $535 | $669 | $606 | $525 | $525 |
| | More Than 1,000 Lawyers | Partner | 103 | $760 | $925 | $1,280 | $1,035 | $1,021 | $983 |
| | | Associate | 87 | $520 | $648 | $728 | $648 | $589 | $602 |
| **Corporate: Regulatory and Compliance** | 201-500 Lawyers | Partner | 15 | $584 | $835 | $953 | $792 | $747 | $771 |
| | More Than 1,000 Lawyers | Partner | 30 | $823 | $1,027 | $1,124 | $999 | $884 | $898 |
| | | Associate | 26 | $404 | $651 | $758 | $616 | $648 | $657 |
| **Corporate: Tax** | More Than 1,000 Lawyers | Partner | 30 | $920 | $1,030 | $1,225 | $1,050 | $1,036 | $1,021 |

wolterskluwer.com

# Section IV: In-Depth Analysis for Select US Cities

## Chicago IL
By Practice Area and Firm Size

### 2022 — Real Rates for Associate and Partner

### Trend Analysis - Mean

| Practice Area | Firm Size | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| Corporate: Tax | More Than 1,000 Lawyers | Associate | 13 | $601 | $692 | $856 | $708 | $716 | $644 |
| Employment and Labor: Compensation and Benefits | More Than 1,000 Lawyers | Partner | 11 | $733 | $870 | $1,213 | $988 | $1,012 | $813 |
| Employment and Labor: Discrimination, Retaliation and Harassment / EEO | 501-1,000 Lawyers | Associate | 12 | $310 | $333 | $384 | $344 | $379 | $338 |
| Employment and Labor: Other | 201-500 Lawyers | Partner | 12 | $376 | $520 | $971 | $662 | $596 | $665 |
| | 501-1,000 Lawyers | Partner | 29 | $475 | $561 | $725 | $596 | $555 | $553 |
| | | Associate | 24 | $339 | $387 | $465 | $422 | $372 | $391 |
| | More Than 1,000 Lawyers | Partner | 20 | $627 | $720 | $953 | $866 | $892 | $808 |
| | | Associate | 20 | $413 | $530 | $617 | $552 | $594 | $555 |
| Finance and Securities: Investments and Other Financial Instruments | 501-1,000 Lawyers | Associate | 16 | $548 | $592 | $740 | $636 | $598 | $548 |
| Finance and Securities: Loans and Financing | 201-500 Lawyers | Associate | 11 | $512 | $560 | $627 | $574 | $553 | $459 |
| | 501-1,000 Lawyers | Partner | 14 | $825 | $945 | $1,079 | $977 | $963 | $916 |
| | | Associate | 11 | $552 | $600 | $762 | $666 | $678 | $599 |
| | More Than 1,000 Lawyers | Partner | 73 | $1,173 | $1,295 | $1,544 | $1,348 | $1,273 | $1,220 |
| | | Associate | 69 | $715 | $851 | $995 | $854 | $819 | $730 |
| Insurance Defense: Other | 50 Lawyers or Fewer | Partner | 42 | $245 | $300 | $335 | $291 | $282 | $268 |
| | 51-200 Lawyers | Partner | 14 | $193 | $195 | $228 | $209 | $229 | $231 |
| Insurance Defense: Property Damage | 50 Lawyers or Fewer | Partner | 38 | $265 | $290 | $327 | $284 | $274 | $269 |

# Section IV: In-Depth Analysis for Select US Cities

## Chicago IL
By Practice Area and Firm Size

**2022 — Real Rates for Associate and Partner**

**Trend Analysis - Mean**

| Practice Area | Firm Size | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| **Insurance Defense: Property Damage** | 50 Lawyers or Fewer | Associate | 32 | $215 | $248 | $268 | $229 | $205 | $215 |
| **Intellectual Property: Patents** | 51-200 Lawyers | Partner | 14 | $428 | $493 | $548 | $480 | $485 | $473 |

# Section IV: In-Depth Analysis for Select US Cities

## Los Angeles CA
By Practice Area and Firm Size

**2022 — Real Rates for Associate and Partner**

**Trend Analysis - Mean**

| Practice Area | Firm Size | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| **Commercial** | 501-1,000 Lawyers | Partner | 22 | $729 | $866 | $992 | $889 | $801 | $777 |
| | | Associate | 34 | $619 | $740 | $842 | $727 | $648 | $568 |
| | More Than 1,000 Lawyers | Partner | 32 | $881 | $1,058 | $1,199 | $1,054 | $1,073 | $1,110 |
| | | Associate | 49 | $611 | $845 | $1,030 | $828 | $796 | $787 |
| **Corporate: Mergers, Acquisitions and Divestitures** | More Than 1,000 Lawyers | Associate | 22 | $486 | $486 | $643 | $587 | $588 | $540 |
| **Corporate: Other** | 50 Lawyers or Fewer | Partner | 13 | $396 | $428 | $574 | $478 | $424 | $442 |
| | 51-200 Lawyers | Partner | 25 | $525 | $645 | $743 | $676 | $711 | $728 |
| | 201-500 Lawyers | Partner | 29 | $582 | $747 | $912 | $757 | $731 | $715 |
| | | Associate | 24 | $412 | $500 | $660 | $538 | $489 | $474 |
| | 501-1,000 Lawyers | Partner | 35 | $659 | $830 | $1,139 | $929 | $870 | $870 |
| | | Associate | 35 | $550 | $743 | $856 | $729 | $676 | $652 |
| | More Than 1,000 Lawyers | Partner | 74 | $965 | $1,220 | $1,370 | $1,183 | $1,120 | $1,051 |
| | | Associate | 91 | $615 | $745 | $944 | $781 | $783 | $745 |
| **Corporate: Regulatory and Compliance** | 501-1,000 Lawyers | Partner | 13 | $795 | $910 | $1,103 | $965 | $881 | $875 |
| | | Associate | 15 | $468 | $550 | $715 | $600 | $608 | $634 |
| | More Than 1,000 Lawyers | Partner | 28 | $877 | $1,080 | $1,224 | $1,083 | $993 | $1,003 |
| | | Associate | 41 | $610 | $775 | $945 | $763 | $719 | $732 |

# Section IV: In-Depth Analysis for Select US Cities

## Los Angeles CA
By Practice Area and Firm Size

**2022 — Real Rates for Associate and Partner**                          **Trend Analysis - Mean**

| Practice Area | Firm Size | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| Employment and Labor: Other | 501-1,000 Lawyers | Partner | 33 | $567 | $677 | $870 | $748 | $653 | $612 |
| | | Associate | 32 | $325 | $380 | $525 | $459 | $479 | $471 |
| | More Than 1,000 Lawyers | Partner | 25 | $705 | $935 | $1,068 | $928 | $838 | $827 |
| | | Associate | 12 | $398 | $426 | $537 | $501 | $561 | $608 |
| Finance and Securities: Investments and Other Financial Instruments | 501-1,000 Lawyers | Partner | 13 | $676 | $950 | $1,037 | $999 | $842 | $798 |
| | More Than 1,000 Lawyers | Partner | 40 | $1,210 | $1,309 | $1,434 | $1,332 | $1,283 | $1,236 |
| | | Associate | 76 | $845 | $1,017 | $1,135 | $992 | $958 | $882 |
| Finance and Securities: Loans and Financing | 50 Lawyers or Fewer | Associate | 15 | $265 | $285 | $434 | $344 | $394 | $367 |
| | 201-500 Lawyers | Associate | 11 | $500 | $540 | $638 | $563 | $417 | $344 |
| | 501-1,000 Lawyers | Associate | 13 | $550 | $645 | $930 | $689 | $683 | $614 |
| Insurance Defense: Auto and Transportation | 50 Lawyers or Fewer | Partner | 22 | $250 | $250 | $265 | $280 | $238 | $239 |
| Insurance Defense: Other | 50 Lawyers or Fewer | Partner | 30 | $249 | $252 | $265 | $274 | $317 | $431 |
| | | Associate | 46 | $215 | $225 | $235 | $220 | $211 | $204 |
| | 51-200 Lawyers | Partner | 17 | $230 | $250 | $265 | $283 | $247 | $266 |
| | | Associate | 20 | $170 | $170 | $200 | $190 | $195 | $196 |
| Intellectual Property: Patents | More Than 1,000 Lawyers | Partner | 11 | $982 | $1,046 | $1,209 | $1,128 | $1,077 | $1,025 |
| | | Associate | 38 | $670 | $765 | $891 | $771 | $722 | $638 |

# Section IV: In-Depth Analysis for Select US Cities

## New York NY
By Practice Area and Firm Size

**2022 — Real Rates for Associate and Partner**  ·  **Trend Analysis - Mean**

| Practice Area | Firm Size | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| **Bankruptcy and Collections** | 50 Lawyers or Fewer | Partner | 11 | $333 | $390 | $450 | $411 | $402 | $394 |
| | 201-500 Lawyers | Partner | 15 | $414 | $604 | $668 | $589 | $555 | $519 |
| | | Associate | 15 | $300 | $334 | $412 | $365 | $350 | $338 |
| **Commercial** | 50 Lawyers or Fewer | Partner | 17 | $330 | $458 | $535 | $486 | $449 | $515 |
| | 201-500 Lawyers | Partner | 28 | $525 | $609 | $790 | $680 | $773 | $764 |
| | | Associate | 21 | $378 | $428 | $486 | $438 | $494 | $522 |
| | 501-1,000 Lawyers | Partner | 72 | $993 | $1,414 | $1,725 | $1,347 | $1,240 | $1,320 |
| | | Associate | 96 | $565 | $870 | $1,086 | $819 | $613 | $760 |
| | More Than 1,000 Lawyers | Partner | 45 | $1,149 | $1,331 | $1,558 | $1,346 | $1,266 | $1,209 |
| | | Associate | 39 | $646 | $826 | $1,023 | $827 | $799 | $777 |
| **Corporate: Antitrust and Competition** | 501-1,000 Lawyers | Associate | 37 | $597 | $721 | $968 | $783 | $791 | $727 |
| **Corporate: Governance** | 501-1,000 Lawyers | Partner | 37 | $1,457 | $1,560 | $1,731 | $1,560 | $1,482 | $1,380 |
| | | Associate | 53 | $623 | $868 | $1,046 | $840 | $749 | $725 |
| | More Than 1,000 Lawyers | Associate | 12 | $564 | $640 | $787 | $686 | $650 | $654 |
| **Corporate: Mergers, Acquisitions and Divestitures** | 501-1,000 Lawyers | Partner | 52 | $1,410 | $1,650 | $1,698 | $1,556 | $1,393 | $1,309 |
| | | Associate | 116 | $723 | $955 | $1,160 | $929 | $799 | $736 |
| | More Than 1,000 Lawyers | Partner | 43 | $1,350 | $1,650 | $1,757 | $1,521 | $1,499 | $1,290 |

wolterskluwer.com

# Section IV: In-Depth Analysis for Select US Cities

**New York NY**
By Practice Area and Firm Size

**2022 — Real Rates for Associate and Partner**

**Trend Analysis - Mean**

| Practice Area | Firm Size | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| **Corporate: Mergers, Acquisitions and Divestitures** | More Than 1,000 Lawyers | Associate | 80 | $649 | $917 | $1,130 | $899 | $926 | $834 |
| **Corporate: Other** | 50 Lawyers or Fewer | Partner | 40 | $368 | $515 | $611 | $490 | $528 | $499 |
| | | Associate | 29 | $235 | $350 | $375 | $317 | $360 | $344 |
| | 51-200 Lawyers | Partner | 36 | $450 | $583 | $705 | $617 | $642 | $597 |
| | 201-500 Lawyers | Partner | 64 | $560 | $894 | $1,147 | $919 | $795 | $853 |
| | | Associate | 52 | $355 | $522 | $694 | $574 | $498 | $517 |
| | 501-1,000 Lawyers | Partner | 183 | $1,271 | $1,515 | $1,744 | $1,436 | $1,286 | $1,230 |
| | | Associate | 226 | $701 | $855 | $1,100 | $875 | $776 | $727 |
| | More Than 1,000 Lawyers | Partner | 140 | $1,210 | $1,550 | $1,720 | $1,454 | $1,302 | $1,252 |
| | | Associate | 198 | $667 | $875 | $1,105 | $882 | $837 | $808 |
| **Corporate: Partnerships and Joint Ventures** | 501-1,000 Lawyers | Partner | 41 | $1,341 | $1,564 | $1,760 | $1,516 | $1,267 | $1,300 |
| | | Associate | 71 | $713 | $970 | $1,182 | $927 | $821 | $788 |
| **Corporate: Regulatory and Compliance** | 51-200 Lawyers | Partner | 11 | $474 | $604 | $720 | $593 | $558 | $660 |
| | | Associate | 15 | $454 | $640 | $684 | $678 | $443 | $464 |
| | 201-500 Lawyers | Partner | 19 | $638 | $694 | $880 | $777 | $712 | $812 |
| | | Associate | 15 | $396 | $513 | $638 | $616 | $483 | $426 |
| | 501-1,000 Lawyers | Partner | 48 | $928 | $1,335 | $1,560 | $1,294 | $1,204 | $1,185 |

# Section IV: In-Depth Analysis for Select US Cities

## New York NY
By Practice Area and Firm Size

### 2022 — Real Rates for Associate and Partner

### Trend Analysis - Mean

| Practice Area | Firm Size | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| Corporate: Regulatory and Compliance | 501-1,000 Lawyers | Associate | 59 | $500 | $747 | $926 | $768 | $784 | $721 |
| | More Than 1,000 Lawyers | Partner | 28 | $884 | $1,170 | $1,386 | $1,165 | $1,064 | $1,034 |
| | | Associate | 36 | $570 | $725 | $760 | $701 | $704 | $681 |
| Corporate: Tax | 501-1,000 Lawyers | Partner | 16 | $927 | $1,225 | $1,568 | $1,235 | $1,106 | $1,146 |
| | More Than 1,000 Lawyers | Partner | 30 | $1,000 | $1,210 | $1,553 | $1,243 | $1,220 | $1,179 |
| | | Associate | 28 | $690 | $879 | $1,003 | $945 | $857 | $797 |
| Employment and Labor: Discrimination, Retaliation and Harassment / EEO | More Than 1,000 Lawyers | Associate | 11 | $385 | $390 | $487 | $430 | $444 | $416 |
| Employment and Labor: Other | 201-500 Lawyers | Partner | 33 | $450 | $493 | $689 | $621 | $585 | $651 |
| | 501-1,000 Lawyers | Partner | 81 | $472 | $573 | $891 | $751 | $688 | $663 |
| | | Associate | 54 | $325 | $440 | $635 | $538 | $542 | $469 |
| | More Than 1,000 Lawyers | Partner | 23 | $700 | $918 | $1,090 | $975 | $920 | $951 |
| | | Associate | 28 | $450 | $498 | $685 | $629 | $531 | $634 |
| Environmental | 51-200 Lawyers | Partner | 12 | $348 | $455 | $519 | $443 | $450 | $444 |
| Finance and Securities: Debt/Equity Offerings | 501-1,000 Lawyers | Partner | 31 | $1,269 | $1,650 | $1,734 | $1,448 | $1,220 | $1,159 |
| | | Associate | 30 | $713 | $955 | $1,178 | $927 | $685 | $674 |
| | More Than 1,000 Lawyers | Partner | 15 | $1,067 | $1,332 | $1,810 | $1,368 | $883 | $1,072 |
| | | Associate | 29 | $438 | $621 | $1,108 | $754 | $597 | $662 |

# Section IV: In-Depth Analysis for Select US Cities

**New York NY**
By Practice Area and Firm Size

**2022 — Real Rates for Associate and Partner**

**Trend Analysis - Mean**

| Practice Area | Firm Size | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| Finance and Securities: Investments and Other Financial Instruments | 51-200 Lawyers | Partner | 13 | $650 | $749 | $894 | $799 | $844 | $848 |
| | | Associate | 20 | $500 | $614 | $736 | $620 | $558 | $582 |
| | 201-500 Lawyers | Partner | 36 | $1,109 | $1,111 | $1,111 | $1,090 | $1,034 | $963 |
| | 501-1,000 Lawyers | Partner | 127 | $1,070 | $1,405 | $1,766 | $1,413 | $1,396 | $1,282 |
| | | Associate | 227 | $685 | $835 | $1,095 | $881 | $894 | $793 |
| | More Than 1,000 Lawyers | Partner | 73 | $950 | $1,229 | $1,605 | $1,269 | $1,266 | $1,155 |
| | | Associate | 68 | $531 | $782 | $972 | $769 | $748 | $679 |
| Finance and Securities: Loans and Financing | 50 Lawyers or Fewer | Partner | 14 | $627 | $806 | $890 | $798 | $686 | $592 |
| | 201-500 Lawyers | Partner | 58 | $1,200 | $1,475 | $1,620 | $1,342 | $1,309 | $1,222 |
| | | Associate | 90 | $633 | $760 | $950 | $748 | $745 | $750 |
| | 501-1,000 Lawyers | Partner | 83 | $1,170 | $1,520 | $1,759 | $1,462 | $1,362 | $1,277 |
| | | Associate | 104 | $735 | $955 | $1,119 | $917 | $864 | $776 |
| | More Than 1,000 Lawyers | Partner | 100 | $1,268 | $1,479 | $1,675 | $1,441 | $1,398 | $1,352 |
| | | Associate | 129 | $750 | $940 | $1,108 | $934 | $922 | $873 |
| Finance and Securities: SEC Filings and Financial Reporting | 501-1,000 Lawyers | Partner | 15 | $1,692 | $1,737 | $1,786 | $1,648 | $1,491 | $1,378 |
| Finance and Securities: Securities and Banking Regulations | 201-500 Lawyers | Partner | 15 | $1,078 | $1,365 | $1,505 | $1,245 | $999 | $1,184 |
| | | Associate | 17 | $323 | $531 | $650 | $556 | $492 | $626 |

wolterskluwer.com

# Section IV: In-Depth Analysis for Select US Cities

**New York NY**
By Practice Area and Firm Size

**2022 — Real Rates for Associate and Partner**                 **Trend Analysis - Mean**

| Practice Area | Firm Size | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| **Finance and Securities: Securities and Banking Regulations** | 501-1,000 Lawyers | Partner | 14 | $1,125 | $1,330 | $1,397 | $1,270 | $1,286 | $1,201 |
| **Insurance Defense: Auto and Transportation** | 51-200 Lawyers | Partner | 15 | $178 | $185 | $220 | $195 | $187 | $176 |
| | | Associate | 11 | $160 | $165 | $180 | $169 | $163 | $154 |
| **Insurance Defense: Other** | 50 Lawyers or Fewer | Partner | 30 | $217 | $250 | $285 | $277 | $273 | $262 |
| | | Associate | 22 | $185 | $195 | $230 | $235 | $214 | $183 |
| | 51-200 Lawyers | Partner | 38 | $198 | $225 | $281 | $249 | $244 | $247 |
| | | Associate | 25 | $175 | $180 | $209 | $197 | $202 | $182 |
| | 201-500 Lawyers | Partner | 22 | $208 | $240 | $356 | $330 | $268 | $295 |
| | | Associate | 13 | $195 | $270 | $526 | $370 | $294 | $299 |
| **Insurance Defense: Personal Injury/Wrongful Death** | 50 Lawyers or Fewer | Associate | 36 | $157 | $160 | $169 | $160 | $160 | $152 |
| **Insurance Defense: Property Damage** | 50 Lawyers or Fewer | Partner | 30 | $175 | $195 | $213 | $206 | $203 | $180 |
| | | Associate | 21 | $150 | $160 | $165 | $168 | $163 | $149 |
| | 51-200 Lawyers | Partner | 34 | $190 | $210 | $315 | $252 | $270 | $255 |
| **Intellectual Property: Patents** | 501-1,000 Lawyers | Partner | 16 | $912 | $952 | $1,165 | $988 | $930 | $962 |
| | | Associate | 22 | $523 | $599 | $877 | $661 | $588 | $601 |
| | More Than 1,000 Lawyers | Partner | 15 | $895 | $1,046 | $1,210 | $1,045 | $1,066 | $997 |
| | | Associate | 20 | $739 | $820 | $915 | $801 | $743 | $686 |

# Section IV: In-Depth Analysis for Select US Cities

## New York NY
By Practice Area and Firm Size

**2022 — Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| Practice Area | Firm Size | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| **Miscellaneous: General Advice & Counsel** | More Than 1,000 Lawyers | Partner | 11 | $1,550 | $1,695 | $1,875 | $1,684 | $1,585 | $1,427 |
| **Real Estate: Other** | 501-1,000 Lawyers | Associate | 14 | $503 | $614 | $713 | $643 | $623 | $655 |

wolterskluwer.com

# Section IV: In-Depth Analysis for Select US Cities

## Philadelphia PA
By Practice Area and Firm Size

**2022 — Real Rates for Associate and Partner**

**Trend Analysis - Mean**

| Practice Area | Firm Size | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| **Bankruptcy and Collections** | 201-500 Lawyers | Partner | 18 | $495 | $564 | $650 | $568 | $524 | $541 |
| | | Associate | 17 | $300 | $375 | $485 | $393 | $311 | $304 |
| **Commercial** | 51-200 Lawyers | Partner | 22 | $675 | $960 | $1,096 | $867 | $678 | $628 |
| | | Associate | 16 | $373 | $425 | $486 | $446 | $390 | $347 |
| | 201-500 Lawyers | Partner | 39 | $625 | $732 | $826 | $740 | $627 | $619 |
| | | Associate | 48 | $407 | $437 | $503 | $447 | $357 | $348 |
| | 501-1,000 Lawyers | Partner | 24 | $564 | $728 | $891 | $789 | $742 | $752 |
| | More Than 1,000 Lawyers | Partner | 13 | $864 | $945 | $1,285 | $1,049 | $919 | $921 |
| | | Associate | 19 | $485 | $624 | $829 | $683 | $638 | $586 |
| **Corporate: Other** | 51-200 Lawyers | Partner | 31 | $588 | $732 | $918 | $736 | $779 | $710 |
| | | Associate | 31 | $389 | $425 | $500 | $439 | $429 | $410 |
| | 201-500 Lawyers | Partner | 27 | $560 | $650 | $860 | $710 | $642 | $669 |
| | | Associate | 30 | $396 | $428 | $455 | $431 | $374 | $342 |
| | 501-1,000 Lawyers | Partner | 26 | $652 | $719 | $935 | $777 | $794 | $803 |
| | | Associate | 19 | $409 | $488 | $535 | $466 | $433 | $476 |
| | More Than 1,000 Lawyers | Partner | 50 | $818 | $895 | $1,033 | $962 | $925 | $908 |
| | | Associate | 49 | $444 | $530 | $568 | $553 | $530 | $523 |

# Section IV: In-Depth Analysis for Select US Cities

## Philadelphia PA
By Practice Area and Firm Size

**2022 — Real Rates for Associate and Partner**　　　　　　　　　　**Trend Analysis - Mean**

| Practice Area | Firm Size | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| Corporate: Regulatory and Compliance | 501-1,000 Lawyers | Associate | 11 | $325 | $468 | $781 | $605 | $427 | $452 |
| | More Than 1,000 Lawyers | Partner | 19 | $688 | $830 | $891 | $804 | $847 | $783 |
| Employment and Labor: Other | 501-1,000 Lawyers | Partner | 19 | $525 | $585 | $640 | $594 | $598 | $603 |
| Insurance Defense: Auto and Transportation | 50 Lawyers or Fewer | Partner | 39 | $178 | $185 | $200 | $186 | $181 | $182 |
| | | Associate | 40 | $170 | $170 | $200 | $178 | $169 | $158 |
| Insurance Defense: Other | 50 Lawyers or Fewer | Partner | 52 | $185 | $200 | $224 | $204 | $196 | $182 |
| | | Associate | 50 | $170 | $175 | $200 | $180 | $169 | $162 |
| | 51-200 Lawyers | Partner | 21 | $175 | $180 | $200 | $192 | $200 | $233 |
| | | Associate | 15 | $160 | $163 | $186 | $170 | $161 | $166 |
| | 201-500 Lawyers | Partner | 33 | $185 | $210 | $240 | $219 | $223 | $224 |
| | | Associate | 16 | $183 | $195 | $200 | $191 | $187 | $197 |
| Insurance Defense: Property Damage | 50 Lawyers or Fewer | Partner | 33 | $180 | $194 | $200 | $194 | $191 | $191 |
| | | Associate | 34 | $171 | $180 | $187 | $178 | $172 | $174 |
| | 51-200 Lawyers | Partner | 11 | $180 | $199 | $210 | $210 | $222 | $231 |
| | | Associate | 11 | $173 | $180 | $220 | $198 | $199 | $181 |
| Intellectual Property: Patents | 201-500 Lawyers | Associate | 13 | $365 | $420 | $450 | $423 | $352 | $322 |
| | 501-1,000 Lawyers | Partner | 12 | $660 | $760 | $825 | $785 | $660 | $730 |

# Section IV: In-Depth Analysis for Select US Cities

## San Francisco CA
By Practice Area and Firm Size

**2022 — Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| Practice Area | Firm Size | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| Commercial | 51-200 Lawyers | Partner | 11 | $420 | $500 | $720 | $602 | $562 | $633 |
|  | 501-1,000 Lawyers | Partner | 18 | $694 | $945 | $1,050 | $936 | $873 | $922 |
|  |  | Associate | 14 | $356 | $480 | $738 | $561 | $518 | $403 |
| Corporate: Mergers, Acquisitions and Divestitures | More Than 1,000 Lawyers | Partner | 14 | $868 | $868 | $1,007 | $931 | $933 | $955 |
| Corporate: Other | 501-1,000 Lawyers | Partner | 21 | $795 | $961 | $1,125 | $994 | $894 | $871 |
|  |  | Associate | 12 | $662 | $829 | $1,014 | $808 | $716 | $592 |
|  | More Than 1,000 Lawyers | Partner | 12 | $958 | $1,080 | $1,194 | $1,102 | $1,039 | $926 |
| Corporate: Regulatory and Compliance | 501-1,000 Lawyers | Partner | 16 | $693 | $760 | $974 | $849 | $783 | $863 |
| Employment and Labor: Other | 501-1,000 Lawyers | Partner | 18 | $486 | $585 | $636 | $594 | $608 | $560 |
|  | More Than 1,000 Lawyers | Partner | 11 | $790 | $833 | $914 | $847 | $809 | $890 |
| Finance and Securities: Investments and Other Financial Instruments | 501-1,000 Lawyers | Associate | 13 | $620 | $780 | $890 | $755 | $745 | $753 |
| Insurance Defense: Other | 50 Lawyers or Fewer | Partner | 26 | $205 | $250 | $265 | $245 | $236 | $248 |
|  | 201-500 Lawyers | Partner | 41 | $255 | $280 | $285 | $331 | $356 | $397 |
| Intellectual Property: Patents | 501-1,000 Lawyers | Partner | 11 | $978 | $1,266 | $1,383 | $1,177 | $1,040 | $1,075 |

# Section IV: In-Depth Analysis for Select US Cities

## Washington DC
By Practice Area and Firm Size

**2022 — Real Rates for Associate and Partner**     **Trend Analysis - Mean**

| Practice Area | Firm Size | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| Commercial | 201-500 Lawyers | Partner | 39 | $749 | $820 | $1,026 | $882 | $778 | $717 |
| | | Associate | 39 | $463 | $545 | $693 | $576 | $521 | $476 |
| | 501-1,000 Lawyers | Partner | 50 | $712 | $850 | $1,150 | $972 | $873 | $911 |
| | More Than 1,000 Lawyers | Partner | 39 | $955 | $1,065 | $1,375 | $1,156 | $1,016 | $997 |
| | | Associate | 27 | $634 | $837 | $1,046 | $842 | $698 | $643 |
| Corporate: Mergers, Acquisitions and Divestitures | 201-500 Lawyers | Partner | 11 | $611 | $751 | $988 | $803 | $780 | $738 |
| | More Than 1,000 Lawyers | Partner | 22 | $1,061 | $1,286 | $1,369 | $1,224 | $1,142 | $1,010 |
| | | Associate | 27 | $655 | $785 | $835 | $776 | $756 | $632 |
| Corporate: Other | 50 Lawyers or Fewer | Partner | 25 | $495 | $618 | $761 | $606 | $585 | $583 |
| | | Associate | 16 | $350 | $417 | $697 | $497 | $461 | $537 |
| | 51-200 Lawyers | Partner | 29 | $752 | $826 | $884 | $821 | $839 | $798 |
| | 201-500 Lawyers | Partner | 78 | $740 | $868 | $1,008 | $888 | $806 | $751 |
| | | Associate | 64 | $453 | $562 | $680 | $577 | $550 | $478 |
| | 501-1,000 Lawyers | Partner | 136 | $925 | $950 | $999 | $975 | $941 | $910 |
| | | Associate | 182 | $670 | $695 | $695 | $668 | $650 | $581 |
| | More Than 1,000 Lawyers | Partner | 142 | $885 | $1,082 | $1,274 | $1,101 | $1,024 | $976 |
| | | Associate | 117 | $536 | $703 | $915 | $751 | $702 | $641 |

# Section IV: In-Depth Analysis for Select US Cities

## Washington DC
By Practice Area and Firm Size

**2022 — Real Rates for Associate and Partner**

**Trend Analysis - Mean**

| Practice Area | Firm Size | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| Corporate: Regulatory and Compliance | 51-200 Lawyers | Partner | 30 | $589 | $835 | $931 | $780 | $808 | $831 |
| | | Associate | 30 | $395 | $455 | $590 | $489 | $501 | $505 |
| | 201-500 Lawyers | Partner | 44 | $706 | $797 | $907 | $812 | $752 | $714 |
| | | Associate | 41 | $476 | $553 | $672 | $573 | $541 | $498 |
| | 501-1,000 Lawyers | Partner | 128 | $856 | $950 | $1,112 | $979 | $975 | $933 |
| | | Associate | 143 | $561 | $646 | $717 | $659 | $621 | $595 |
| | More Than 1,000 Lawyers | Partner | 76 | $935 | $1,108 | $1,274 | $1,101 | $1,014 | $991 |
| | | Associate | 79 | $503 | $647 | $824 | $669 | $651 | $615 |
| Corporate: Tax | More Than 1,000 Lawyers | Partner | 32 | $1,040 | $1,187 | $1,437 | $1,221 | $1,198 | $1,069 |
| | | Associate | 38 | $529 | $780 | $1,036 | $825 | $739 | $715 |
| Employment and Labor: Other | 201-500 Lawyers | Partner | 14 | $544 | $735 | $763 | $693 | $712 | $639 |
| | 501-1,000 Lawyers | Partner | 24 | $498 | $662 | $1,065 | $814 | $800 | $739 |
| | | Associate | 13 | $414 | $435 | $629 | $500 | $464 | $463 |
| | More Than 1,000 Lawyers | Partner | 29 | $616 | $783 | $845 | $796 | $715 | $811 |
| | | Associate | 13 | $480 | $538 | $615 | $583 | $467 | $536 |
| Finance and Securities: Investments and Other Financial Instruments | 501-1,000 Lawyers | Partner | 28 | $986 | $1,148 | $1,371 | $1,187 | $1,051 | $1,054 |
| | More Than 1,000 Lawyers | Partner | 23 | $982 | $1,178 | $1,375 | $1,184 | $1,200 | $1,036 |

# Section IV: In-Depth Analysis for Select US Cities

## Washington DC
By Practice Area and Firm Size

### 2022 — Real Rates for Associate and Partner

| Practice Area | Firm Size | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| **Finance and Securities: Loans and Financing** | 201-500 Lawyers | Partner | 12 | $726 | $1,125 | $1,295 | $1,013 | $854 | $854 |
| | | Associate | 14 | $400 | $512 | $650 | $582 | $528 | $498 |
| **Intellectual Property: Patents** | 201-500 Lawyers | Partner | 18 | $904 | $989 | $1,032 | $931 | $901 | $730 |
| | 501-1,000 Lawyers | Partner | 36 | $872 | $950 | $1,121 | $1,002 | $986 | $917 |
| | | Associate | 37 | $689 | $740 | $1,003 | $776 | $690 | $649 |
| | More Than 1,000 Lawyers | Partner | 14 | $898 | $988 | $1,279 | $1,081 | $1,006 | $890 |
| | | Associate | 20 | $697 | $775 | $841 | $757 | $658 | $614 |
| **Miscellaneous: General Advice & Counsel** | More Than 1,000 Lawyers | Partner | 12 | $1,321 | $1,400 | $1,496 | $1,394 | $1,260 | $1,162 |

wolterskluwer.com



# Section V: International Analysis

All data and analysis based on data collected thru Q2 2022

# Section IV: International Analysis

**Countries**

**2022 — Real Rates for Partners, Associates, and Paralegals**

| Country | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---------|------|---|----------------|--------|----------------|------|------|------|
| **Argentina** | Partner | 22 | $52 | $58 | $240 | $135 | $122 | $160 |
| | Associate | 28 | $50 | $222 | $280 | $213 | $151 | $155 |
| **Australia** | Partner | 133 | $491 | $561 | $649 | $570 | $550 | $495 |
| | Associate | 192 | $261 | $322 | $423 | $347 | $348 | $319 |
| | Paralegal | 42 | $176 | $204 | $260 | $220 | $196 | $215 |
| **Austria** | Partner | 11 | $420 | $499 | $994 | $684 | $612 | $508 |
| | Associate | 19 | $425 | $444 | $834 | $598 | $555 | $517 |
| **Belgium** | Partner | 44 | $389 | $560 | $848 | $635 | $688 | $605 |
| | Associate | 78 | $231 | $339 | $582 | $446 | $393 | $391 |
| | Paralegal | 15 | $185 | $265 | $419 | $297 | $312 | $276 |
| **Bermuda** | Partner | 22 | $740 | $843 | $905 | $823 | $816 | $797 |
| **Brazil** | Partner | 70 | $295 | $350 | $500 | $396 | $419 | $429 |
| | Associate | 109 | $121 | $200 | $330 | $225 | $237 | $243 |

# Section IV: International Analysis

**Countries**

**2022 — Real Rates for Partners, Associates, and Paralegals**

| Country | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|
| **Brazil** | Paralegal | 36 | $49 | $75 | $75 | $81 | $99 | $107 |
| **Canada** | Partner | 501 | $450 | $593 | $800 | $629 | $603 | $594 |
| | Associate | 222 | $325 | $465 | $595 | $483 | $458 | $417 |
| | Paralegal | 241 | $145 | $230 | $300 | $232 | $222 | $215 |
| **Cayman Islands** | Partner | 20 | $1,100 | $1,240 | $1,297 | $1,184 | $1,039 | $990 |
| **China** | Partner | 111 | $523 | $658 | $857 | $703 | $697 | $699 |
| | Associate | 219 | $260 | $380 | $525 | $417 | $406 | $416 |
| | Paralegal | 63 | $240 | $265 | $353 | $282 | $271 | $294 |
| **Czech Republic** | Partner | 12 | $252 | $368 | $456 | $371 | $329 | $344 |
| | Associate | 24 | $253 | $268 | $352 | $300 | $253 | $245 |
| **Denmark** | Associate | 21 | $186 | $270 | $344 | $268 | $292 | $322 |
| **Finland** | Partner | 17 | $426 | $507 | $553 | $509 | $521 | $478 |
| | Associate | 19 | $249 | $269 | $395 | $324 | $322 | $321 |

# Section IV: International Analysis        Countries

**2022 — Real Rates for Partners, Associates, and Paralegals**

| Country | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|
| **Finland** | Paralegal | 12 | $165 | $172 | $186 | $170 | $161 | $124 |
| **France** | Partner | 126 | $473 | $574 | $719 | $604 | $609 | $567 |
| | Associate | 217 | $313 | $379 | $520 | $427 | $422 | $377 |
| | Paralegal | 36 | $159 | $220 | $305 | $220 | $225 | $214 |
| **Germany** | Partner | 248 | $365 | $517 | $712 | $569 | $549 | $522 |
| | Associate | 310 | $323 | $376 | $444 | $416 | $409 | $411 |
| | Paralegal | 60 | $201 | $225 | $261 | $241 | $215 | $210 |
| **Greece** | Associate | 13 | $122 | $159 | $220 | $169 | $176 | $204 |
| **Hong Kong** | Partner | 62 | $670 | $853 | $961 | $835 | $859 | $873 |
| | Associate | 88 | $260 | $377 | $587 | $420 | $537 | $409 |
| | Paralegal | 43 | $229 | $302 | $382 | $325 | $316 | $306 |
| **Hungary** | Associate | 11 | $172 | $175 | $185 | $220 | $233 | $165 |
| **India** | Partner | 12 | $300 | $395 | $471 | $385 | $367 | $359 |

# Section IV: International Analysis

**Countries**

**2022 — Real Rates for Partners, Associates, and Paralegals**

| Country | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---------|------|---|----------------|--------|----------------|------|------|------|
| **India** | Associate | 21 | $176 | $200 | $249 | $213 | $197 | $202 |
| **Indonesia** | Associate | 15 | $125 | $210 | $293 | $217 | $262 | $262 |
| **Ireland** | Partner | 45 | $490 | $590 | $669 | $608 | $576 | $534 |
| | Associate | 71 | $311 | $393 | $431 | $385 | $397 | $365 |
| | Paralegal | 24 | $161 | $197 | $240 | $210 | $225 | $206 |
| **Israel** | Partner | 28 | $385 | $500 | $534 | $448 | $403 | $372 |
| | Associate | 30 | $228 | $275 | $300 | $266 | $249 | $262 |
| **Italy** | Partner | 36 | $383 | $531 | $598 | $555 | $577 | $515 |
| | Associate | 115 | $228 | $290 | $413 | $343 | $366 | $320 |
| | Paralegal | 17 | $122 | $159 | $222 | $179 | $161 | $143 |
| **Japan** | Partner | 59 | $318 | $440 | $561 | $483 | $511 | $538 |
| | Associate | 55 | $244 | $289 | $440 | $349 | $389 | $392 |
| | Paralegal | 35 | $88 | $131 | $177 | $147 | $159 | $160 |

# Section IV: International Analysis

**Countries**

**2022 — Real Rates for Partners, Associates, and Paralegals**

| Country | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|
| **Korea, Republic of** | Partner | 106 | $513 | $605 | $678 | $613 | $592 | $617 |
| | Associate | 98 | $270 | $324 | $400 | $335 | $308 | $298 |
| | Paralegal | 19 | $163 | $182 | $236 | $200 | $219 | $203 |
| **Luxembourg** | Partner | 27 | $630 | $662 | $735 | $671 | $641 | $685 |
| | Associate | 56 | $302 | $394 | $456 | $392 | $411 | $436 |
| **Mexico** | Partner | 26 | $356 | $446 | $514 | $469 | $417 | $448 |
| | Associate | 30 | $262 | $329 | $389 | $335 | $327 | $307 |
| | Paralegal | 13 | $102 | $120 | $139 | $123 | $145 | $132 |
| **Netherlands** | Partner | 81 | $400 | $489 | $669 | $545 | $597 | $537 |
| | Associate | 185 | $270 | $349 | $442 | $370 | $397 | $357 |
| **New Zealand** | Partner | 19 | $475 | $514 | $558 | $510 | $500 | $462 |
| | Associate | 22 | $237 | $331 | $433 | $364 | $308 | $327 |
| **Norway** | Partner | 20 | $370 | $411 | $551 | $500 | $527 | $487 |

# Section IV: International Analysis

Countries

**2022 — Real Rates for Partners, Associates, and Paralegals**

| Country | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|
| **Norway** | Associate | 18 | $201 | $248 | $299 | $265 | $244 | $263 |
| **Philippines** | Associate | 13 | $194 | $241 | $307 | $229 | $181 | $209 |
| **Poland** | Partner | 22 | $185 | $265 | $354 | $291 | $297 | $239 |
| | Associate | 68 | $147 | $182 | $209 | $193 | $196 | $191 |
| **Portugal** | Associate | 18 | $136 | $143 | $172 | $166 | $200 | $205 |
| **Russian Federation** | Partner | 28 | $401 | $675 | $783 | $639 | $670 | $656 |
| | Associate | 53 | $296 | $350 | $503 | $425 | $358 | $365 |
| | Paralegal | 25 | $150 | $150 | $230 | $202 | $174 | $176 |
| **Singapore** | Partner | 46 | $506 | $665 | $899 | $722 | $630 | $704 |
| | Associate | 86 | $358 | $465 | $669 | $500 | $470 | $481 |
| | Paralegal | 16 | $252 | $286 | $376 | $305 | $298 | $276 |
| **South Africa** | Partner | 33 | $247 | $350 | $422 | $387 | $307 | $299 |
| | Associate | 29 | $122 | $180 | $216 | $194 | $192 | $160 |

wolterskluwer.com

# Section IV: International Analysis

**Countries**

**2022 — Real Rates for Partners, Associates, and Paralegals**

| Country | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|
| **Spain** | Partner | 32 | $480 | $657 | $714 | $592 | $607 | $561 |
| | Associate | 96 | $285 | $402 | $523 | $423 | $413 | $397 |
| **Sweden** | Associate | 17 | $297 | $365 | $399 | $345 | $349 | $335 |
| **Switzerland** | Partner | 31 | $426 | $490 | $591 | $547 | $545 | $522 |
| | Associate | 37 | $318 | $363 | $455 | $404 | $386 | $362 |
| **Taiwan** | Partner | 18 | $269 | $354 | $413 | $357 | $437 | $408 |
| | Associate | 38 | $180 | $230 | $265 | $247 | $231 | $222 |
| **Thailand** | Partner | 19 | $456 | $677 | $771 | $614 | $602 | $599 |
| | Associate | 11 | $219 | $325 | $440 | $334 | $317 | $365 |
| | Paralegal | 17 | $220 | $265 | $303 | $276 | $240 | $248 |
| **Turkey** | Partner | 14 | $207 | $221 | $433 | $340 | $469 | $406 |
| | Associate | 46 | $196 | $205 | $313 | $259 | $251 | $224 |
| **United Arab Emirates** | Partner | 24 | $550 | $684 | $758 | $668 | $695 | $720 |

# Section IV: International Analysis

**Countries**

**2022 — Real Rates for Partners, Associates, and Paralegals**

| Country | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|
| **United Arab Emirates** | Associate | 31 | $387 | $504 | $634 | $494 | $451 | $467 |
| | Paralegal | 14 | $220 | $289 | $361 | $292 | $274 | $272 |
| **United Kingdom** | Partner | 535 | $629 | $802 | $1,027 | $877 | $850 | $787 |
| | Associate | 902 | $400 | $523 | $705 | $573 | $551 | $514 |
| | Paralegal | 290 | $170 | $220 | $280 | $238 | $231 | $195 |
| **United States** | Partner | 10,592 | $430 | $653 | $969 | $749 | $738 | $705 |
| | Associate | 9,930 | $329 | $485 | $703 | $546 | $541 | $503 |
| | Paralegal | 4,215 | $150 | $225 | $325 | $247 | $244 | $232 |

# Section IV: International Analysis

**Australia**
By Role

**2022 — Real Rates for Partners, Associates, and Paralegals**

| Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|------|---|----------------|--------|----------------|------|------|------|
| **Partner** | 133 | $491 | $561 | $649 | $570 | $550 | $495 |
| **Associate** | 192 | $261 | $322 | $423 | $347 | $348 | $319 |
| **Paralegal** | 42 | $176 | $204 | $260 | $220 | $196 | $215 |

# Section IV: International Analysis

## Australia
By Practice Area and Matter Type

### 2022 — Real Rates for Partners, Associates, and Paralegals

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| **Corporate: Other** | Litigation | Partner | 15 | $619 | $662 | $665 | $672 | $605 | $543 |
| | | Associate | 16 | $285 | $375 | $440 | $379 | $349 | $292 |
| **Corporate: Regulatory and Compliance** | Non-Litigation | Partner | 17 | $479 | $545 | $582 | $549 | $546 | $489 |
| | | Associate | 28 | $267 | $272 | $335 | $308 | $331 | $305 |
| **Employment and Labor: Other** | Non-Litigation | Associate | 13 | $225 | $269 | $304 | $275 | $276 | $293 |
| **Intellectual Property: Trademarks** | Non-Litigation | Associate | 15 | $280 | $323 | $425 | $359 | $311 | $286 |

# Section IV: International Analysis

## 2022 — Real Rates for Partners and Associates

| Industry Group | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| **Financials Excluding Insurance** | Non-Litigation | Partner | 40 | $551 | $610 | $664 | $628 | $633 | $608 |
| | | Associate | 56 | $276 | $370 | $480 | $381 | $369 | $341 |
| **Technology and Telecommunications** | Non-Litigation | Partner | 38 | $377 | $535 | $573 | $487 | $458 | $451 |
| | | Associate | 47 | $232 | $270 | $333 | $297 | $304 | $291 |

# Section IV: International Analysis

**Australia**
By Firm Size

**2022 — Real Rates for Partners and Associates**

| Firm Size | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|
| **50 Lawyers or Fewer** | Associate | 11 | $265 | $333 | $398 | $330 | $262 | $285 |
| **51-200 Lawyers** | Partner | 18 | $457 | $542 | $583 | $545 | $471 | $371 |
| | Associate | 22 | $256 | $288 | $325 | $308 | $256 | $267 |
| **201-500 Lawyers** | Partner | 20 | $559 | $613 | $652 | $615 | $607 | $572 |
| | Associate | 30 | $276 | $334 | $445 | $356 | $330 | $336 |
| **More Than 1,000 Lawyers** | Partner | 40 | $560 | $643 | $756 | $670 | $683 | $611 |
| | Associate | 63 | $294 | $400 | $514 | $408 | $430 | $391 |

# Section IV: International Analysis

**Canada**
By Role

**2022 — Real Rates for Partners, Associates, and Paralegals**

| Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|------|---|---------------|--------|---------------|------|------|------|
| **Partner** | | | | | | | |
| | 501 | $450 | $593 | $800 | $629 | $603 | $594 |
| **Associate** | | | | | | | |
| | 222 | $325 | $465 | $595 | $483 | $458 | $417 |
| **Paralegal** | | | | | | | |
| | 241 | $145 | $230 | $300 | $232 | $222 | $215 |

wolterskluwer.com

# Section IV: International Analysis

## 2022 — Real Rates for Partners, Associates, and Paralegals

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| **Commercial** | Litigation | Partner | 116 | $399 | $521 | $635 | $529 | $542 | $533 |
| | Non-Litigation | Partner | 104 | $582 | $761 | $900 | $752 | $715 | $675 |
| | | Associate | 42 | $476 | $545 | $744 | $606 | $556 | $504 |
| | | Paralegal | 41 | $251 | $300 | $353 | $307 | $281 | $267 |
| **Corporate: Other** | Litigation | Partner | 24 | $533 | $646 | $775 | $634 | $594 | $589 |
| | Non-Litigation | Partner | 108 | $599 | $793 | $902 | $761 | $692 | $680 |
| | | Associate | 37 | $441 | $540 | $717 | $594 | $524 | $476 |
| | | Paralegal | 36 | $170 | $263 | $323 | $256 | $241 | $238 |
| **Corporate: Regulatory and Compliance** | Non-Litigation | Partner | 25 | $617 | $716 | $821 | $735 | $682 | $632 |
| | | Associate | 12 | $537 | $567 | $601 | $579 | $566 | $433 |
| **Employment and Labor: Other** | Litigation | Partner | 12 | $415 | $526 | $552 | $507 | $591 | $568 |
| | Non-Litigation | Partner | 16 | $411 | $450 | $531 | $482 | $535 | $582 |
| **Finance and Securities: Investments and Other Financial Instruments** | Non-Litigation | Partner | 57 | $620 | $785 | $885 | $770 | $782 | $757 |
| | | Paralegal | 24 | $250 | $330 | $365 | $318 | $299 | $294 |
| **Finance and Securities: Loans and Financing** | Non-Litigation | Partner | 14 | $646 | $815 | $986 | $836 | $638 | $644 |
| **Intellectual Property: Patents** | Non-Litigation | Partner | 11 | $335 | $560 | $614 | $526 | $501 | $445 |

# Section IV: International Analysis

**2022 — Real Rates for Partners and Associates**

| Industry Group | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| **Financials Excluding Insurance** | Litigation | Partner | 212 | $375 | $495 | $593 | $508 | $516 | $508 |
| | Non-Litigation | Partner | 217 | $605 | $785 | $901 | $769 | $732 | $712 |
| | | Associate | 73 | $475 | $590 | $747 | $621 | $576 | $532 |
| **Industrials** | Non-Litigation | Partner | 16 | $461 | $549 | $788 | $670 | $674 | $605 |
| **Technology and Telecommunications** | Litigation | Partner | 12 | $627 | $746 | $896 | $762 | $646 | $581 |
| | Non-Litigation | Partner | 31 | $426 | $534 | $635 | $541 | $554 | $552 |
| | | Associate | 14 | $348 | $411 | $480 | $406 | $403 | $352 |

# Section IV: International Analysis

**2022 — Real Rates for Partners and Associates**

| Firm Size | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|
| 50 Lawyers or Fewer | Partner | 39 | $350 | $375 | $525 | $432 | $458 | $431 |
|  | Associate | 29 | $268 | $329 | $450 | $344 | $336 | $315 |
| 51-200 Lawyers | Partner | 77 | $474 | $550 | $720 | $576 | $557 | $537 |
| 201-500 Lawyers | Partner | 174 | $547 | $735 | $885 | $711 | $661 | $651 |
|  | Associate | 77 | $425 | $505 | $600 | $519 | $483 | $456 |
| 501-1,000 Lawyers | Partner | 158 | $496 | $630 | $818 | $660 | $623 | $618 |
|  | Associate | 69 | $404 | $563 | $721 | $589 | $563 | $472 |
| More Than 1,000 Lawyers | Partner | 11 | $678 | $735 | $1,582 | $1,025 | $907 | $871 |

# Section IV: International Analysis

**France**
By Role

**2022 — Real Rates for Partners, Associates, and Paralegals**

| Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|------|---|----------------|--------|----------------|------|------|------|
| **Partner** | 126 | $473 | $574 | $719 | $604 | $609 | $567 |
| **Associate** | 217 | $313 | $379 | $520 | $427 | $422 | $377 |
| **Paralegal** | 36 | $159 | $220 | $305 | $220 | $225 | $214 |

# Section IV: International Analysis

**France**
By Role

## 2022 — Real Rates for Partners, Associates, and Paralegals

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| **Corporate: Other** | Non-Litigation | Partner | 14 | $285 | $370 | $574 | $520 | $533 | $508 |
| | | Associate | 17 | $255 | $390 | $538 | $441 | $443 | $310 |
| **Corporate: Regulatory and Compliance** | Non-Litigation | Partner | 11 | $702 | $843 | $925 | $796 | $605 | $521 |
| | | Associate | 12 | $336 | $389 | $573 | $448 | $402 | $302 |
| **Finance and Securities: Investments and Other Financial Instruments** | Non-Litigation | Partner | 15 | $515 | $544 | $701 | $607 | $641 | $612 |
| | | Associate | 37 | $331 | $364 | $520 | $418 | $412 | $447 |

# Section IV: International Analysis

## France
By Industry Group and Matter Type

**2022 — Real Rates for Partners and Associates**

| Industry Group | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| **Financials Excluding Insurance** | Non-Litigation | Partner | 60 | $476 | $540 | $646 | $569 | $590 | $568 |
| | | Associate | 130 | $304 | $370 | $494 | $410 | $415 | $393 |
| **Technology and Telecommunications** | Non-Litigation | Partner | 25 | $468 | $574 | $574 | $549 | $546 | $513 |
| | | Associate | 33 | $318 | $320 | $433 | $378 | $385 | $312 |

# Section IV: International Analysis

**France**
By Firm Size

**2022 — Real Rates for Partners and Associates**

| Firm Size | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|
| **501-1,000 Lawyers** | Partner | 17 | $520 | $540 | $613 | $566 | $608 | $524 |
| | Associate | 38 | $290 | $350 | $410 | $367 | $372 | $382 |
| **More Than 1,000 Lawyers** | Partner | 63 | $535 | $677 | $841 | $699 | $706 | $658 |
| | Associate | 127 | $338 | $435 | $551 | $468 | $478 | $419 |

# Section IV: International Analysis

**Germany**
By Role

**2022 — Real Rates for Partners, Associates, and Paralegals**

| Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|
| **Partner** | | | | | | | |
| | 248 | $365 | $517 | $712 | $569 | $549 | $522 |
| **Associate** | | | | | | | |
| | 310 | $323 | $376 | $444 | $416 | $409 | $411 |
| **Paralegal** | | | | | | | |
| | 60 | $201 | $225 | $261 | $241 | $215 | $210 |

# Section IV: International Analysis

### Germany
By Practice Area and Matter Type

## 2022 — Real Rates for Partners, Associates, and Paralegals

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| **Commercial** | Non-Litigation | Partner | | | | | | | |
| | | | 19 | $347 | $362 | $409 | $381 | $396 | $404 |
| **Corporate: Mergers, Acquisitions and Divestitures** | Non-Litigation | Associate | | | | | | | |
| | | | 14 | $374 | $647 | $852 | $668 | $465 | $528 |
| **Corporate: Other** | Litigation | Associate | | | | | | | |
| | | | 21 | $375 | $405 | $440 | $427 | $380 | $316 |
| | Non-Litigation | Partner | | | | | | | |
| | | | 11 | $401 | $477 | $736 | $607 | $599 | $563 |
| | | Associate | | | | | | | |
| | | | 19 | $320 | $395 | $523 | $488 | $467 | $462 |
| **Corporate: Regulatory and Compliance** | Non-Litigation | Partner | | | | | | | |
| | | | 54 | $381 | $469 | $634 | $568 | $479 | $449 |
| | | Associate | | | | | | | |
| | | | 74 | $325 | $353 | $411 | $384 | $398 | $398 |
| **Employment and Labor: Other** | Non-Litigation | Associate | | | | | | | |
| | | | 15 | $292 | $306 | $322 | $306 | $277 | $293 |
| **Intellectual Property: Other** | Non-Litigation | Partner | | | | | | | |
| | | | 11 | $340 | $341 | $343 | $346 | $310 | $283 |
| **Intellectual Property: Patents** | Litigation | Partner | | | | | | | |
| | | | 31 | $423 | $587 | $806 | $610 | $571 | $531 |
| | Non-Litigation | Partner | | | | | | | |
| | | | 33 | $318 | $345 | $508 | $407 | $409 | $397 |
| | | Associate | | | | | | | |
| | | | 22 | $343 | $380 | $393 | $388 | $354 | $320 |
| **Intellectual Property: Trademarks** | Non-Litigation | Partner | | | | | | | |
| | | | 12 | $470 | $715 | $725 | $647 | $539 | $443 |
| | | Associate | | | | | | | |
| | | | 20 | $370 | $447 | $570 | $475 | $409 | $380 |

wolterskluwer.com

# Section IV: International Analysis

**Germany**
By Industry Group and Matter Type

## 2022 — Real Rates for Partners and Associates

| Industry Group | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| **Financials Excluding Insurance** | Non-Litigation | Partner | 36 | $674 | $708 | $774 | $717 | $738 | $715 |
| | | Associate | 68 | $357 | $444 | $564 | $474 | $475 | $495 |
| **Health Care** | Non-Litigation | Partner | 23 | $393 | $415 | $489 | $476 | $475 | $452 |
| | | Associate | 19 | $295 | $329 | $413 | $354 | $360 | $366 |
| **Industrials** | Non-Litigation | Partner | 19 | $327 | $339 | $343 | $413 | $470 | $420 |
| **Technology and Telecommunications** | Litigation | Partner | 23 | $451 | $637 | $806 | $625 | $511 | $507 |
| | | Associate | 17 | $321 | $399 | $405 | $392 | $337 | $352 |
| | Non-Litigation | Partner | 97 | $353 | $494 | $710 | $583 | $537 | $479 |
| | | Associate | 116 | $340 | $369 | $407 | $399 | $380 | $348 |

# Section IV: International Analysis

**Germany**
By Firm Size

## 2022 — Real Rates for Partners, Associates, and Paralegals

| Firm Size | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|
| **50 Lawyers or Fewer** | Partner | 13 | $321 | $423 | $445 | $374 | $372 | $329 |
| **201-500 Lawyers** | Partner | 42 | $353 | $409 | $477 | $414 | $416 | $408 |
| | Associate | 41 | $353 | $353 | $385 | $364 | $351 | $339 |
| **More Than 1,000 Lawyers** | Partner | 124 | $540 | $688 | $771 | $669 | $652 | $642 |
| | Associate | 202 | $324 | $389 | $513 | $433 | $434 | $437 |

# Section IV: International Analysis

**2022 — Real Rates for Partners, Associates, and Paralegals**

| Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|------|------|------|------|------|------|------|------|
| **Partner** | | | | | | | |
| | 535 | $629 | $802 | $1,027 | $877 | $850 | $787 |
| **Associate** | | | | | | | |
| | 902 | $400 | $523 | $705 | $573 | $551 | $514 |
| **Paralegal** | | | | | | | |
| | 290 | $170 | $220 | $280 | $238 | $231 | $195 |

# Section IV: International Analysis

## United Kingdom
By Practice Area and Matter Type

### 2022 — Real Rates for Partners, Associates, and Paralegals

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| **Commercial** | Litigation | Associate | 18 | $365 | $411 | $594 | $429 | $382 | $446 |
| | | Paralegal | 16 | $63 | $167 | $230 | $158 | $179 | $186 |
| | Non-Litigation | Partner | 15 | $501 | $532 | $640 | $645 | $681 | $663 |
| | | Associate | 20 | $282 | $413 | $497 | $431 | $456 | $440 |
| | | Paralegal | 12 | $129 | $195 | $202 | $186 | $203 | $184 |
| **Corporate: Mergers, Acquisitions and Divestitures** | Non-Litigation | Partner | 37 | $1,225 | $1,410 | $2,350 | $1,615 | $1,438 | $960 |
| | | Associate | 57 | $620 | $856 | $1,063 | $881 | $813 | $557 |
| **Corporate: Other** | Litigation | Partner | 37 | $604 | $665 | $805 | $744 | $734 | $803 |
| | | Associate | 55 | $348 | $465 | $552 | $473 | $479 | $472 |
| | | Paralegal | 19 | $198 | $265 | $293 | $259 | $198 | $192 |
| | Non-Litigation | Partner | 52 | $737 | $883 | $1,111 | $939 | $938 | $814 |
| | | Associate | 87 | $452 | $613 | $850 | $660 | $606 | $569 |
| | | Paralegal | 33 | $245 | $280 | $347 | $306 | $258 | $129 |
| **Corporate: Regulatory and Compliance** | Non-Litigation | Partner | 45 | $605 | $778 | $977 | $820 | $717 | $707 |
| | | Associate | 71 | $401 | $497 | $633 | $543 | $447 | $454 |
| | | Paralegal | 16 | $240 | $277 | $281 | $265 | $217 | $183 |
| **Corporate: Tax** | Non-Litigation | Partner | 20 | $608 | $809 | $1,046 | $848 | $837 | $846 |

# Section IV: International Analysis

## United Kingdom
By Practice Area and Matter Type

### 2022 — Real Rates for Partners, Associates, and Paralegals

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| **Corporate: Tax** | Non-Litigation | Associate | 36 | $346 | $471 | $608 | $490 | $569 | $509 |
| **Employment and Labor: Agreements** | Non-Litigation | Associate | 26 | $325 | $452 | $546 | $423 | $359 | $403 |
| **Employment and Labor: Other** | Litigation | Partner | 15 | $854 | $971 | $1,119 | $963 | $1,030 | $842 |
| | Non-Litigation | Partner | 46 | $561 | $716 | $811 | $702 | $593 | $631 |
| | | Associate | 46 | $383 | $558 | $667 | $550 | $462 | $446 |
| **Finance and Securities: Investments and Other Financial Instruments** | Non-Litigation | Partner | 80 | $644 | $797 | $969 | $819 | $879 | $802 |
| | | Associate | 129 | $391 | $512 | $641 | $539 | $557 | $532 |
| **Finance and Securities: Loans and Financing** | Non-Litigation | Partner | 60 | $864 | $1,290 | $1,466 | $1,152 | $1,078 | $1,095 |
| | | Associate | 115 | $614 | $785 | $980 | $762 | $713 | $663 |
| **Intellectual Property: Patents** | Litigation | Partner | 22 | $655 | $778 | $982 | $802 | $804 | $754 |
| | | Paralegal | 14 | $196 | $233 | $272 | $230 | $221 | $161 |
| | Non-Litigation | Partner | 13 | $363 | $428 | $487 | $431 | $481 | $450 |
| **Intellectual Property: Trademarks** | Non-Litigation | Partner | 12 | $595 | $679 | $901 | $702 | $667 | $692 |
| | | Associate | 25 | $320 | $424 | $450 | $406 | $395 | $381 |
| | | Paralegal | 21 | $205 | $220 | $248 | $239 | $229 | $201 |
| **Miscellaneous: General Advice & Counsel** | Non-Litigation | Partner | 13 | $590 | $657 | $800 | $740 | $722 | $669 |
| | | Associate | 28 | $420 | $506 | $599 | $529 | $498 | $480 |

# Section IV: International Analysis

## United Kingdom
By Industry Group and Matter Type

### 2022 — Real Rates for Partners and Associates

| Industry Group | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| **Financials Excluding Insurance** | Litigation | Partner | 21 | $795 | $878 | $1,157 | $962 | $875 | $794 |
| | | Associate | 44 | $348 | $493 | $634 | $509 | $507 | $496 |
| | Non-Litigation | Partner | 246 | $718 | $870 | $1,100 | $914 | $916 | $888 |
| | | Associate | 469 | $413 | $540 | $741 | $585 | $590 | $558 |
| **Industrials** | Non-Litigation | Partner | 51 | $590 | $1,284 | $2,229 | $1,286 | $1,238 | $706 |
| | | Associate | 73 | $510 | $852 | $1,048 | $805 | $713 | $596 |
| **Technology and Telecommunications** | Litigation | Partner | 20 | $674 | $751 | $852 | $751 | $698 | $707 |
| | | Associate | 29 | $364 | $475 | $551 | $451 | $403 | $389 |
| | Non-Litigation | Partner | 74 | $527 | $707 | $869 | $704 | $670 | $644 |
| | | Associate | 129 | $353 | $471 | $571 | $474 | $416 | $429 |

# Section IV: International Analysis

## United Kingdom
By Firm Size

### 2022 — Real Rates for Partners and Associates

| Firm Size | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|
| **50 Lawyers or Fewer** | Partner | 13 | $619 | $657 | $727 | $643 | $615 | $589 |
| | Associate | 17 | $410 | $420 | $476 | $441 | $396 | $374 |
| **51-200 Lawyers** | Partner | 15 | $488 | $646 | $822 | $689 | $604 | $491 |
| | Associate | 11 | $362 | $485 | $597 | $541 | $410 | $352 |
| **201-500 Lawyers** | Partner | 34 | $668 | $794 | $866 | $781 | $837 | $699 |
| | Associate | 65 | $418 | $512 | $628 | $535 | $543 | $463 |
| **501-1,000 Lawyers** | Partner | 15 | $617 | $943 | $1,199 | $952 | $1,098 | $1,172 |
| | Associate | 33 | $276 | $481 | $660 | $494 | $636 | $655 |
| **More Than 1,000 Lawyers** | Partner | 339 | $689 | $870 | $1,101 | $905 | $874 | $838 |
| | Associate | 609 | $420 | $546 | $723 | $585 | $565 | $530 |



# Section VI:
# Matter
# Staffing
# Analysis

All data and analysis based on
data collected thru Q2 2022

# Section VI: Matter Staffing Analysis

## Short Litigation Matters, 40 to 100 Total Hours Billed

2019 to 2022 -- Percentage of Hours Billed per Matter



# Section VI: Matter Staffing Analysis

## Long Litigation Matters, More Than 100 Total Hours Billed

2019 to 2022 -- Percentage of Hours Billed per Matter



# Section VI: Matter Staffing Analysis

## Short Non-Litigation Matters, 40 to 100 Total Hours Billed

2019 to 2022 -- Percentage of Hours Billed per Matter



# Section VI: Matter Staffing Analysis

## Long Non-Litigation Matters, More Than 100 Total Hours Billed

2019 to 2022 -- Percentage of Hours Billed per Matter





# Section VII:
# Data
# Methodology

All data and analysis based on
data collected thru Q2 2022

# Appendix: Data Methodology

## Invoice Information

Data in Wolters Kluwer ELM Solutions' reference database and the 2022 Real Rate Report were taken from invoice line-item entries contained in invoices received and approved by participating companies.

Invoice data were received in the Legal Electronic Data Exchange Standard (LEDES) format (LEDES.org). The following information was extracted from those invoices and their line items:

- Law firm (which exists as a random number in the ELM Solutions reference database)
- Timekeeper ID (which exists as a random number in the ELM Solutions reference database)
- Matter ID (which exists as a random number in the ELM Solutions reference database)
- Timekeeper's position (role) within the law firm (partner, associate, paralegal, etc.)
- Uniform Task-Based Management System Code Set, Task Codes, and Activity Codes (UTBMS.com)
- Date of service
- Hours billed
- Hourly rate billed
- Fees billed

## Non-Invoice Information

To capture practice area details, the matter ID within each invoice was associated with matter profiles containing areas of work in the systems of each company. The areas of work were then systematically categorized into legal practice areas. Normalization of practice areas was done based on company mappings to system-level practice areas available in the ELM Solutions system and by naming convention.

The majority of analyses included in this report have been mapped to one of 11 practice areas, further divided into sub-areas and litigation/non-litigation (for more information on practice areas and sub-areas, please refer to pages 232-234).

To capture location and jurisdiction details, law firms and timekeepers were systematically mapped to the existing profiles within ELM Solutions systems, as well as with publicly available data sources for further validation and normalization. Where city location information is provided, it includes any address within that city's defined Core-Based Statistical Area (CBSA) as defined by the Office of Management and Budget (OMB). The CBSAs are urban centers with populations of 10,000 or more and include all adjacent counties that are economically integrated with that urban center.

Where the analyses focus on partners, associates, and paralegals, the underlying data occasionally included some sub-roles, such as "senior partner" or "junior associate." In such instances, those timekeeper sub-roles were placed within the broader partner, associate, and paralegal segments.

Demographics regarding law firm size, location, and lawyer years of experience were augmented by incorporating publicly available information.

# Appendix: Data Methodology
## A Note on US Cities

Throughout the report, we have used city names to refer to CBSA and consistently used the principal city in the CBSA to refer to the entire area. The following are the shorthand city names used in this report and the corresponding CBSA designations, as defined by the OMB.

| Principal City | CBSA Name |
|---|---|
| Akron, OH | Akron, OH |
| Albany, NY | Albany-Schenectady-Troy, NY |
| Albuquerque, NM | Albuquerque, NM |
| Atlanta, GA | Atlanta-Sandy Springs-Alpharetta, GA |
| Austin, TX | Austin-Round Rock-Georgetown, TX |
| Baltimore, MD | Baltimore-Columbia-Towson, MD |
| Baton Rouge, LA | Baton Rouge, LA |
| Birmingham, AL | Birmingham-Hoover, AL |
| Boise City, ID | Boise City, ID |
| Boston, MA | Boston-Cambridge-Newton, MA-NH |
| Bridgeport, CT | Bridgeport-Stamford-Norwalk, CT |
| Buffalo, NY | Buffalo-Cheektowaga, NY |
| Burlington, VT | Burlington-South Burlington, VT |
| Charleston, SC | Charleston-North Charleston, SC |
| Charleston, WV | Charleston, WV |
| Charlotte, NC | Charlotte-Concord-Gastonia, NC-SC |
| Chicago, IL | Chicago-Naperville-Elgin, IL-IN-WI |
| Cincinnati, OH | Cincinnati, OH-KY-IN |
| Cleveland, OH | Cleveland-Elyria, OH |
| Columbia, SC | Columbia, SC |
| Columbus, OH | Columbus, OH |
| Dallas, TX | Dallas-Fort Worth-Arlington, TX |
| Dayton, OH | Dayton-Kettering, OH |
| Denver, CO | Denver-Aurora-Lakewood, CO |
| Detroit, MI | Detroit-Warren-Dearborn, MI |
| Fresno, CA | Fresno, CA |
| Grand Rapids, MI | Grand Rapids-Kentwood, MI |
| Greenville, SC | Greenville-Anderson, SC |
| Harrisburg, PA | Harrisburg-Carlisle, PA |

# Appendix: Data Methodology
## A Note on US Cities

| Principal City | CBSA Name |
| --- | --- |
| Hartford, CT | Hartford-East Hartford-Middletown, CT |
| Honolulu, HI | Urban Honolulu HI |
| Houston, TX | Houston-The Woodlands-Sugar Land, TX |
| Indianapolis, IN | Indianapolis-Carmel-Anderson, IN |
| Jackson, MS | Jackson, MS |
| Jacksonville, FL | Jacksonville, FL |
| Kansas City, MO | Kansas City, MO-KS |
| Lafayette, LA | Lafayette, LA |
| Las Vegas, NV | Las Vegas-Henderson-Paradise, NV |
| Lexington, KY | Lexington-Fayette, KY |
| Little Rock, AR | Little Rock-North Little Rock-Conway, AR |
| Los Angeles, CA | Los Angeles-Long Beach-Anaheim, CA |
| Louisville, KY | Louisville/Jefferson County, KY-IN |
| Madison, WI | Madison, WI |
| Memphis, TN | Memphis-Forrest City, TN-MS-AR |
| Miami, FL | Miami-Fort Lauderdale-Pompano Beach, FL |
| Milwaukee, WI | Milwaukee-Waukesha, WI |
| Minneapolis, MN | Minneapolis-St. Paul-Bloomington, MN-WI |
| Nashville, TN | Nashville-Davidson-Murfreesboro-Franklin, TN |
| New Haven, CT | New Haven-Milford, CT |
| New Orleans, LA | New Orleans-Metairie, LA |
| New York, NY | New York-Newark-Jersey City, NY-NJ-PA |
| Oklahoma City, OK | Oklahoma City, OK |
| Omaha, NE | Omaha-Council Bluffs, NE-IA |
| Orlando, FL | Orlando-Kissimmee-Sanford, FL |
| Philadelphia, PA | Philadelphia-Camden-Wilmington, PA-NJ-DE-MD |
| Phoenix, AZ | Phoenix-Mesa-Chandler, AZ |
| Pittsburgh, PA | Pittsburgh, PA |
| Portland, ME | Portland-South Portland, ME |
| Portland, OR | Portland-Vancouver-Hillsboro, OR-WA |
| Providence, RI | Providence-Warwick, RI-MA |
| Raleigh, NC | Raleigh-Cary, NC |
| Reno, NV | Reno-Carson City-Fernley, NV |

# Appendix: Data Methodology
## A Note on US Cities

| Principal City | CBSA Name |
|---|---|
| Richmond, VA | Richmond, VA |
| Rochester, NY | Rochester, NY |
| Sacramento, CA | Sacramento-Roseville-Folsom, CA |
| Salt Lake City, UT | Salt Lake City, UT |
| San Diego, CA | San Diego-Chula Vista-Carlsbad, CA |
| San Francisco, CA | San Francisco-Oakland-Berkeley, CA |
| San Jose, CA | San Jose-Sunnyvale-Santa Clara, CA |
| San Juan, PR | San Juan-Bayamon-Caguas, PR |
| Savannah, GA | Savannah, GA |
| Seattle, WA | Seattle-Tacoma-Bellevue, WA |
| St. Louis, MO | St. Louis, MO-IL |
| Syracuse, NY | Syracuse, NY |
| Tallahassee, FL | Tallahassee, FL |
| Tampa, FL | Tampa-St. Petersburg-Clearwater, FL |
| Toledo, OH | Toledo, OH |
| Trenton, NJ | Trenton-Princeton, NJ |
| Tulsa, OK | Tulsa, OK |
| Washington, DC | Washington-Arlington-Alexandria, DC-VA-MD-WV |
| Wheeling, WV | Wheeling, WV-OH |

# Appendix: Data Methodology

## Anonymization of the Dataset

Prior to inclusion in the ELM Solutions reference database, we systematically scrubbed the data of any information that would identify a particular matter, company, law firm, invoice, or timekeeper (individual). To ensure relationships necessary for analysis, those variables were assigned randomly generated numbers. To maintain data integrity and allow for proper analysis, these numbers are linked across data tables to enforce their associations.

To further ensure anonymity and confidentiality:

- The information is published in such a manner as to make it reasonably impervious to reverse analysis should some attempt be made to determine what data might pertain to any company, law firm, timekeeper, invoice, or matter.

- The 2022 Real Rate Report will not reveal which ELM Solutions client or clients are included or excluded in its analyses.

- Clients are not and will not be informed as to whether their data are included within a particular facet of analysis.

- No textual description of any legal work performed by any individual exists in the ELM Solutions reference database.

## A Note on Insurance Litigation

We aim to provide a point of comparison for companies purchasing law firm services. To improve comparability, we removed data related to insurance company defense litigation for all analyses unless noted otherwise. Insurance litigation tends to be less expensive than other types of litigation, as it is typically more repetitive and less complex.

## "Real Rate" Definition

The information in this report consists of data taken from client invoices submitted by law firms for work performed from 2018 through 2022. All invoices were submitted through the ELM Solutions billing systems.

The analyses contained in this report are derived from aggregating hours, fees, and rates submitted as line items on those invoices. For a line item to qualify for inclusion in this report, it had to undergo multiple and rigorous testing processes to ensure its validity.

For example, for a rate to be loaded to the ELM Solutions reference database and used in this report, it must have been part of an invoice line entry in which all of the following items were included:

- Name of the biller
- Role of the biller
- Date of activity
- Hourly rate charged
- Time charged
- UTBMS code associated with the time charged
- Total amount charged for the activity

In addition, each line item's hourly rate was validated against its "real rate" (calculated by dividing the total amount charged for the activity by the time charged). Any line items with an hourly rate that did not align closely with the real rate were not loaded to the reference database.

Real Rate = Line-Item Total/Line-Item Hours (Units)
Example: $4,000/10 Hours = Real Rate of $400

Adjustments the client made to line-item amounts after submission are not factored into the dataset. These types of adjustments may impact the effective rate paid by the client to the law firm but do not reflect the real rate billed.

# Appendix: Data Methodology

In short, the real rate is the rate appearing on an approved invoice at the invoice line-item level.

Aggregations of data taken from millions of these line-item-level invoice entries are the core of the information analyzed.

**A Note on Negotiated Rates and Billing**

Practices law firms can generally follow vary for submitting "negotiated" rates on invoices. Firms may submit the negotiated rate as the hourly rate identified on the invoice line item, insert a vendor line-item adjustment to ensure compliance, or provide a vendor invoice level adjustment to bring the total amount of the fees into compliance with agreed-on discounts. Although the former two are considered part of the real rate calculation, the latter can be problematic. It is not directly linked to a line item, and therefore, to determine the rate, it should not be assumed that the adjustment is related to a specific line item. Invoice-level adjustments may represent a credit or some other type of adjustment placed on the invoice. To ensure these types of adjustments would not adversely impact the analysis contained within the 2022 Real Rate Report, the team reviewed the population of invoices and line items to determine what the deviation of the real rate might be based on inclusion or exclusion. The analysis demonstrated that the variance was not significant (less than 1%).

As such, we decided not to include the vendor-level adjustments in the report.

**Types of Matters Included in the Analysis**

Matters within the ELM Solutions system are associated with areas of work described and defined by ELM Solutions clients. Those areas of work were analyzed and systematically categorized into legal practice areas. Normalization of practice areas was supported by mappings to system-level practice areas available in the ELM Solutions system and by naming convention.

All data included within this report have been mapped to a corresponding practice area. The majority of our analyses focus on the following 12 practice areas:

- Bankruptcy and Collections
- Commercial
- Corporate
- Employment and Labor
- Environmental
- Finance and Securities
- General Liability
- Government Relations
- Insurance Defense
- Intellectual Property
- Marketing and Advertising
- Real Estate

Within each client's areas of work, sub-areas are often identified. The lists that follow identify client areas of work and, within those areas, the sub-areas underneath each practice area. Often, the same sub-area appears within different practice areas. For example, the sub-area "General/Other" when listed under "Commercial and Contracts" refers to general work provided regarding commercial and contracts matters. When listed under the "Employment and Labor" practice area, the same sub-area refers to work provided on employment and labor. Where applicable and practicable, each area and sub-area has been further subdivided into litigation and non-litigation work for granular analysis.

# Appendix: Data Methodology

**Bankruptcy and Collections**

Chapter 11
Collections

General/Other
Workouts and Restructuring

---

**Commercial (Commercial Transactions and Agreements)**

Contract Breach or Dispute
General, Drafting, and Review
General/Other

---

**Corporate[1]**

Antitrust and Competition
Corporate Development
General/Other
Governance
Information and Technology
Mergers, Acquisitions, and Divestitures

Partnerships and Joint Ventures
Regulatory and Compliance
Tax
Treasury
White Collar/Fraud/Abuse

---

**Employment and Labor**

ADA
Agreements
Compensation and Benefits
Discrimination, Retaliation, and Harassment/EEO
Employee Dishonesty/Misconduct
ERISA

General/Other
Immigration
Union Relations and Negotiations/NLRB
Wages, Tips, and Overtime
Wrongful Termination

---

**Environmental**

General/Other
Health and Safety

Superfund
Waste/Remediation

---

**Finance and Securities**

Commercial Loans and Financing
Debt/Equity Offerings
Fiduciary Services
General/Other

Investments and Other Financial Instruments
Loans and Financing
SEC Filings and Financial Reporting
Securities and Banking Regulations

---

**General Liability**

Asbestos/Mesothelioma
Auto and Transportation
Consumer Related Claims
Crime, Dishonesty and Fraud
General/Other

Personal Injury/Wrongful Death
Premises
Product and Product Liability
Property Damage
Toxic Tort

---

1 All references to "Corporate: General/Other" in the Real Rate Report are the aggregation of all Corporate sub-areas excluding the Mergers, Acquisitions, and Divestitures sub-area and the Regulatory and Compliance sub-area.

---

# Appendix: Data Methodology

**Government Relations**

General/Other
Lobbying and Relations

---

**Insurance Defense**

Auto and Transportation
General/Other
Personal Injury/Wrongful Death
Product and Product Liability
Professional Liability
Property Damage
Toxic Tort

---

**Intellectual Property[2]**

General/Other
Licensing
Patents
Trademarks

---

**Marketing and Advertising**

General/Other

---

**Real Estate**

Construction/Development
Easement and Right of Way
General/Other
Land Use/Zoning/Restrictive Covenants
Landlord/Tenant Issues
Leasing
Property/Land Acquisition or Disposition
Titles

---

2 All references to "Intellectual Property: General/Other" in the Real Rate Report are the aggregation of all Intellectual Property sub-areas excluding the Patents and Trademarks sub-areas.

---

 **Wolters Kluwer**

ELM Solutions

# About Wolters Kluwer ELM Solutions

Wolters Kluwer ELM Solutions is the market-leading global provider of enterprise legal spend and matter management, contract lifecycle management, and legal analytics solutions. We provide a comprehensive suite of tools that address the growing needs of corporate legal operations departments to increase operational efficiency and reduce costs. Corporate legal and insurance claims departments trust our innovative technology and end-to-end customer experience to drive world-class business outcomes. Wolters Kluwer ELM Solutions was named a leader in both the IDC MarketScape: Worldwide Enterprise Legal Spend Management 2020 Vendor Assessment and IDC MarketScape: Worldwide Enterprise Matter Management 2020 Vendor Assessment. The award-winning products include Passport®, one of the highest rated ELM solutions in the latest Hyperion MarketView™ Legal Market Intelligence Report; TyMetrix® 360°, the industry's leading SaaS-based e-billing and matter management solution; CLM Matrix, named a "strong performer" in the 2019 Q1 CLM Forrester Wave report; and the LegalVIEW® portfolio of legal analytics solutions based upon the industry's largest and most comprehensive legal spend database, with more than $155 billion in invoices.

Case 8:19-cv-01561-DOC-DFM   Document 387-6   Filed 04/06/25   Page 252 of 484
Page ID #:33505
Case 2:20-cv-04093-SB-PLA   Document 83-2   Filed 02/13/23   Page 1 of 83   Page ID #:1164

KATIE TOWNSEND (SBN 254321)
  ktownsend@rcfp.org
JENNIFER A. NELSON (admitted pro hac vice)
  jnelson@rcfp.org
The Reporters Committee for
Freedom of the Press
1156 15th Street NW, Suite 1020
Washington, D.C. 20005
Telephone: 202.795.9300
Facsimile:  202.795.9310

SCOTT A. EDELMAN, SBN 116927
  sedelman@gibsondunn.com
THEODORE J. BOUTROUS JR., SBN 132099
  tboutrous@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone:  213.229.7000
Facsimile:   213.229.7520

ANNE CHAMPION (admitted pro hac vice)
  achampion@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, 48th Floor
New York, NY 10166
Telephone:  212.351.5361
Facsimile:   212.351.5281

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ROYAL HOLDINGS TECHNOLOGIES CORP. D/B/A X.LABS**, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>**IP VIDEO MARKET INFO INC.**, a Hawaii corporation,<br><br>Defendant. | CASE NO. 2:20-cv-4093<br>**DECLARATION OF ANNE CHAMPION IN SUPPORT OF DEFENDANT'S MOTION FOR ATTORNEYS' FEES AND COSTS**<br>**(Cal. Civ. Proc. Code § 425.16(c)(1))**<br><br>Action Filed:  May 4, 2020<br>Judge:  Hon. Stanley Blumenfeld Jr.<br>Hearing Date:  March 17, 2023 |

I, Anne Champion, declare as follows:

1. I am an attorney and partner at the law firm of Gibson, Dunn & Crutcher LLP ("Gibson Dunn"), counsel of record for Defendant IP Video Market Info Inc. ("IPVM") in this matter. I make this declaration in support of IPVM's motion for an award of attorneys' fees pursuant to California's anti-SLAPP law, Cal. Civ. Proc. § 425.16(c)(1). The portion of these fees and costs sought by IPVM with respect to work performed by Gibson Dunn total $136,545 in fees, and $5,441.80 in costs. I have personal knowledge of the matters stated in this declaration, and could testify competently thereto.

## GIBSON DUNN'S RETENTION & WORK DEFENDING IPVM IN THIS CASE

2. Gibson Dunn is a global law firm with over 1,800 attorneys worldwide. Gibson Dunn's attorneys have significant experience with media and First Amendment litigation in the U.S. Due to my experience with First Amendment and media litigation, I was recommended to IP Video Market Info Inc. ("IPVM"), to assist it with responding to pre-suit correspondence from X.Labs. IPVM first contacted me in April of 2020. Though we engaged in correspondence with counsel for X.Labs at that time and attempted to dissuade X.Labs from filing suit, X.Labs fsiled its complaint in this case on May 4, 2020. ECF No. 1. Because IPVM is a small company, for which the fees and costs associated with defending this litigation posed a substantial burden, we contacted the Reporters Committee for Freedom of the Press ("Reporters Committee" or "RCFP") to assist with the representation. As set forth in the Declaration of Katie Townsend, the Reporters Committee has substantial experience and expertise representing reporters and publications with respect to claims relating to their journalistic work, and is able to do so on a *pro bono* basis. By partnering with large law firms, RCFP is able to provide such services to a broader range of

1

DECLARATION OF A. CHAMPION IN SUPPORT OF DEFENDANT'S MOTION FOR ATTORNEY'S FEES AND COSTS

Case 8:19-cv-01531-DOC-DFM   Document 387-3   Filed 09/06/25   Page 254 of 484
Page ID #:33589
Case 2:20-cv-04093-SB-PLA   Document 83-2   Filed 02/13/23   Page 3 of 83   Page ID #:1166

litigants. Working alongside the Reporters Committee allowed us to deliver the highest quality legal services to IPVM in a manner that would be affordable to IPVM. While we informed X.Labs at the outset that we would be moving to strike under California's anti-SLAPP law, and that X.Labs would be liable for attorneys' fees if IPVM were successful, X.Labs did not withdraw its complaint. Indeed, we made numerous offers throughout the course of the litigation to settle the dispute, none of which X.Labs accepted.

3. **Gibson Dunn's Team.** I have led Gibson Dunn's work in this matter. I am a 2005 graduate of the George Washington University School of Law. Following law school, I clerked on the U.S. Court of Appeals for the Third Circuit, and I have been a partner at Gibson Dunn since 2015. I have gained significant experience and expertise in media law matters and intellectual property disputes throughout my law school education and time at Gibson Dunn. A copy of my profile page from the Gibson Dunn website is attached hereto as Exhibit 1. Multiple other Gibson Dunn attorneys have provided assistance throughout this case. Because the case was filed in California federal court, I enlisted the help of two Los Angeles partners, Theodore J. Boutrous and Scott Edelman, who both have substantial experience in media and First Amendment related work, for strategic advice. I also enlisted help from several associates and an experienced paralegal.

4. Specifically, Gibson Dunn worked closely with lawyers from the Reporters Committee on the motions to strike and the Ninth Circuit briefs filed in this matter. That work was primarily performed by Meredith Simons, an associate attorney in our Los Angeles office, and Sarah Segal, an associate attorney in our New York Office. Ms. Simons graduated from Duke University School of Law in 2017, and clerked on the U.S. Court of Appeals for the Ninth Circuit. A copy of Ms. Simon's profile page on Gibson Dunn's website is

2

DECLARATION OF A. CHAMPION IN SUPPORT OF DEFENDANT'S MOTION FOR
ATTORNEY'S FEES AND COSTS

Case 2:19-cv-01582-DOC-DFM    Document 387-6    Filed 04/06/25    Page 255 of 484
Case 2:20-cv-04093-SB-PLA    Document 83-2    Filed 02/13/23    Page 4 of 83    Page ID #:1167
Page ID #:33570

attached hereto as Exhibit 2. Ms. Segal graduated from the Cardozo School of Law in 2016, and has substantial media law and intellectual property experience. Ms. Segal provided significant assistance in this matter until she left Gibson Dunn for an in-house attorney role at Warner Music Group in 2022. A copy of Ms. Segal's LinkedIn Profile showing her professional experience and education is attached hereto as Exhibit 3. In addition, Daniel Tom, a senior paralegal in our San Francisco Office who has significant experience with California federal court matters, has provided assistance throughout this matter. Mr. Tom has worked as a paralegal for nearly forty years, and holds a paralegal certificate and a Masters Degree in Legal Studies from Washington University School of Law in St. Louis. Several other attorneys worked on this matter, including associates who assisted with cite-checking and research, and associates who served as "judges" to "moot" Ms. Townsend of the Reporters' Committee for the oral arguments in this matter. However, IPVM and Gibson Dunn limit their fee request here to work performed by the core members of the team representing IPVM: myself, Ms. Simons, Ms. Segal, and Mr. Tom.

5. Gibson Dunn was retained to represent IPVM on a modified fee basis—IPVM agreed to pay Gibson Dunn $100,000 in fees (plus expenses) in connection with the preparation of the Anti-SLAPP Motion to Strike, and further agreed that if the motion were successful, IPVM would file a motion seeking fees and expenses, and compensate Gibson Dunn up to its full fees and expenses if that motion were successful. Because, as detailed in the Memorandum of Points and Authorities, it became necessary to file a second Anti-SLAPP Motion to Strike after X.Labs amended its complaint, as well as to appeal the district court's partial denial to the Court of Appeals for the Ninth Circuit, the scope of work expanded beyond what was initially anticipated. Thus, IPVM agreed to and did pay Gibson Dunn further fees and expenses in connection with this matter,

3

DECLARATION OF A. CHAMPION IN SUPPORT OF DEFENDANT'S MOTION FOR ATTORNEY'S FEES AND COSTS

Case 2:19-cv-01531-DOC-DFM    Document 387-3    Filed 09/06/25    Page 256 of 484
Case 2:20-cv-04093-SB-PLA    Document 83-2    Filed 02/13/23    Page 5 of 83    Page ID #:1168
Page ID #:33579

compensating Gibson Dunn for a total of $136,545 in fees and $26,399.07 in expenses, for a total of $162,944.07. Although the value of the time spent by Gibson Dunn attorneys, and the expenses incurred, exceed these amounts, IPVM and Gibson Dunn limit their request to the amount of fees paid to date by IPVM— $136,545. IPVM also seeks only a portion of the costs and expenses it has actually paid. Specifically, IPVM seeks $5,441.80 in costs and expenses directly related to researching, filing, and serving the motions to strike and appeal brief and appellate appendix. We have excluded from this amount copying costs, shipping costs, PACER charges, conference calling costs, and other expenses actually incurred and paid by IPVM over the course of this matter.

6.    At the time Gibson Dunn was retained in 2020 through 2022, the standard hourly rates for the persons whose fees we are seeking in this were as follows:

| Timekeeper | 2020 | 2021 | 2022 |
|---|---|---|---|
| Anne Champion (partner) | $1,295 | $1,430 | NA |
| Sarah Segal (associate) | $885.00 | NA | NA |
| Meredith Simons (associate) | $740.00 | $845.00 | $960.00 |
| Daniel Tom (paralegal) | $505.00 | $530.00 | $555.00 |

7.    However, the effective hourly rates here are lower because Gibson Dunn and IPVM do not seek fees for all work performed by Gibson Dunn attorneys. Gibson Dunn attorneys and staff performed work in all of the categories below, but limit their request to fees actually paid by IPVM, which includes a subset of work in categories a-i:

a. Reviewing and analyzing Plaintiff's Complaint and discussing initial strategy to defeat Plaintiff's claims;

b. Drafting a special motion to strike pursuant to the Anti-SLAPP law;

c. Reviewing and analyzing Plaintiff's First Amended Complaint and discussing strategy to defeat Plaintiff's amended allegations;

4

DECLARATION OF A. CHAMPION IN SUPPORT OF DEFENDANT'S MOTION FOR
ATTORNEY'S FEES AND COSTS

d. Drafting a second special motion to strike pursuant to the Anti-SLAPP law addressing new allegations in Plaintiff's First Amended Complaint;

e. Reviewing and responding to Plaintiff's opposition brief;

f. Preparing for and attending the hearing on the Anti-SLAPP motion;

g. Analyzing this Court's order granting in part and denying in part the Anti-SLAPP motion and discussing appeal strategy;

h. Appealing this Court's order to the Ninth Circuit, including drafting an opening brief and reply brief;

i. Preparing for and attending the Ninth Circuit oral argument on Defendant's appeal;

j. Preparing for ongoing proceedings in this matter after the Ninth Circuit reversed and remanded to this Court for further proceedings;

k. Drafting a brief setting forth Defendant's proposal for how to proceed with this matter following the withdrawal of Plaintiff's counsel for nonpayment of legal fees; and

l. Researching and drafting the motion seeking an order of dismissal with prejudice and for attorneys' fees, plus supporting documents.

8. Gibson Dunn attorneys and paralegals are required to enter time spent and work performed on a contemporaneous and regular basis. A chart of the detailed time entries for the core timekeepers during the relevant periods for tasks related to the motions to strike and the appeal is attached here to as Exhibit 4. These entries have been reviewed to ensure that they do not reflect the content of privileged communications or attorney work product. I reviewed these time entries on a monthly basis, contemporaneous with the performance of the work, and I believe them to be an accurate record of work performed on this matter with respect to fees sought in this application. Moreover, the time spent on the tasks specified was reasonable and commensurate with my experience in other cases.

DECLARATION OF A. CHAMPION IN SUPPORT OF DEFENDANT'S MOTION FOR ATTORNEY'S FEES AND COSTS

Case 8:19-cv-01582-DOC-DFM   Document 387-6   Filed 09/06/25   Page 258 of 484
Case 2:20-cv-04093-SB-PLA   Document 83-2   Filed 02/13/23   Page 7 of 83   Page ID #:1170
Page ID #:33573

The attached spreadsheet does not include all time logged by attorneys working on this matter. For example, it excludes entries not directly related to the motions to strike or the appeal, including, for example, hours logged related to correspondence, extensions of time, and the like. It also excludes entries for attorneys whose fees we are not seeking to recover, *e.g.*, attorneys who helped "moot" Ms. Townsend for arguments or who provided strategic input (*i.e.*, Mr. Boutrous and Mr. Edelman). The time for which compensation is sought includes 31.9 hours for myself, 76.2 hours for Ms. Simons, 53.4 hours for Ms. Segal, and 23.6 hours for Mr. Tom. *See* Ex. 4. The total value of the time shown for these entries according to Gibson Dunn's standard rates is $162,107.35, but IPVM and Gibson Dunn seek only that portion of these fees actually paid by IPVM, $136,545. This is a discount of over 15%. The effective hourly rate for the fees sought here, averaging the rates over the relevant time period, is shown in the table below:

| Timekeeper | Hours | Effective Hourly Rate | Apportioned Fees |
|---|---|---|---|
| Champion, Anne M. | 31.9 | $1,094.36 | $34,910.05 |
| Segal, Sarah L. | 53.4 | $745.45 | $39,806.83 |
| Simons, Meredith S. | 76.2 | $672.90 | $51,288.26 |
| Tom, Daniel K.L. | 23.6 | $446.60 | $10,539.85 |
| Total | 185.1 | | $136,545.00 |

9. Gibson Dunn's standard rates, and these effective rates, are reasonable. Gibson Dunn is an elite, global law firm. This matter demanded substantial legal work and expertise, in particular due to the number of claims asserted by X.Labs, and X.Labs filing of an amended complaint that was more than double the size of the original complaint. It was necessary to conduct extensive legal research to determine, for example, the relationship between the

6

DECLARATION OF A. CHAMPION IN SUPPORT OF DEFENDANT'S MOTION FOR
ATTORNEY'S FEES AND COSTS

Case 8:19-cv-01634-DOC-DFM   Document 388-3   Filed 04/06/25   Page 259 of 484
Page ID #:33573
Case 2:20-cv-04093-SB-PLA   Document 83-2   Filed 02/13/23   Page 8 of 83   Page ID #:1171

defamation claims and other claims asserted, as well as to find analogous cases. Based on a review of relevant caselaw and fee applications submitted in this and other districts, industry surveys, as well as familiarity with rates charged by competitors, it is my belief that these rates are commensurate with those charged for attorneys at peer firms with similar skills and experience.

10. For example, the Wolters Kluwer Real Rate Report for 2022, reports mean rates for litigation partners in the Los Angeles area at the top end to be $1,045 per hour, while associate rates on the top end are $855 per hour. A true and correct copy of an excerpt of the Wolters Kluwer Real Rate Report for 2022 is attached hereto as Exhibit 5.

11. Similarly, the Public Rates Report issued by Thomson Reuters in September 2018 shows the rates sought for attorneys in fee applications around the country. A true and correct copy of an extract of data from the Public Rates Report issued by Thomson Reuters in 2018 is attached hereto as Exhibit 6. This extract shows the range of rates for applications filed in the Central District of California in 2015, the most recent year for which this report is available. The hourly rates for partners go up to $1,300, and for associates, up to $625. While the data available for the Central District does not appear to include specifically paralegal rates, it reflects hourly rates for non-attorney paraprofessionals of up to $525 and $450, as of several years ago.

12. IPVM and Gibson Dunn also seek expenses and costs associated with the work performed on the motions to strike and appeal. A detailed breakdown of the costs sought is attached hereto as Exhibit 7. These expenses and costs consist of Westlaw research and printing charges for legal research, filing fees, and costs of delivery and serving copies of the appellate brief. The total costs IPVM and Gibson Dunn seek in this matter total $5,441.80.

DECLARATION OF A. CHAMPION IN SUPPORT OF DEFENDANT'S MOTION FOR
ATTORNEY'S FEES AND COSTS

13.    I personally reviewed the work performed by Gibson Dunn attorneys and paralegals in this matter, and, together with Katie Townsend at the Reporters Committee, worked to ensure that all briefs and other filings made with the district court and the Ninth Circuit were prepared in an efficient matter and met the highest standards of quality.  In order to ensure that work was being performed effectively and efficiently, we divided work between attorneys at Gibson Dunn, and attorneys at the Reporters Committee.  Attorneys at Gibson Dunn took primary responsibility for researching and drafting specific arguments, while attorneys at the Reporters Committee took responsibility for others.  Given our greater administrative resources, Gibson Dunn, and in particular, Mr. Tom, also generally handled logistical issues such as e-filing, courtesy copies, and service.  I believe that all of the work performed by these professionals, along with work performed by attorneys at the Reporters Committee, was necessary and reasonable for the effective defense of IPVM in this matter.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 13th day of February 2023 at New York, New York.

_____
Anne Champion

8

DECLARATION OF A. CHAMPION IN SUPPORT OF DEFENDANT'S MOTION FOR
ATTORNEY'S FEES AND COSTS

Case 8:19-cv-01028-DOC-DFM   Document 387-6   Filed 09/06/25   Page 261 of 484
Case 2:20-cv-04093-SB-PLA   Document 63-2   Filed 02/13/23   Page 10 of 83   Page ID
#:1173

# EXHIBIT 1

Exhibit 1 - Page 9

2/9/23, 12:23 PM                                    Anne Champion - Partner at Gibson Dunn

# GIBSON DUNN



Anne Champion

Partner

### CONTACT INFO

achampion@gibsondunn.com

TEL: +1 212.351.5361

FAX: +1 212.351.5281

New York

200 Park Avenue, New York, NY 10166-0193 USA

### PRACTICE

| Transnational Litigation | Class Actions |

| Environmental Litigation and Mass Tort | Intellectual Property |

| Judgment and Arbitral Award Enforcement | Litigation |

| Media, Entertainment and Technology |

Exhibit 1 - Page 10

Case 2:19-cv-01532-DOC-DFM    Document 387-6    Filed 09/06/25    Page 263 of 484
Page ID #:33570
Case 2:20-cv-04093-SB-PLA   Document 83-2   Filed 02/13/23   Page 12 of 83   Page ID
#:1175

# BIOGRAPHY

Anne M. Champion is a partner in the New York office of Gibson, Dunn & Crutcher. She is a member of Gibson Dunn's Transnational Litigation, Environmental Litigation, Media Law, and Intellectual Property Practice Groups.

Ms. Champion has played a lead role in a wide range of high-stakes litigation matters, including trials. Her practice focuses on complex international disputes, including RICO, fraud, and tort claims, and includes federal and state court litigation and international arbitration. She also has significant experience in First Amendment and intellectual property disputes, and an active pro bono docket.

Most recently *Benchmark Litigation* named Ms. Champion to its 2022 list of the "Top 250 Women in Litigation." Ms. Champion was also recognized by *Who's Who Legal* in its 2022 Environment Guide. She has twice been named "Litigator of the Week" by *The American Lawyer*. On July 17, 2020, she received recognition along with Ted Boutrous and Matthew McGill for defeating an attempt to block the publication of Mary Trump's now-best seller *Too Much and Never Enough: How My Family Created the World's Most Dangerous Man*. She previously received the award on September 27, 2019 for the successful defeat of a petition to confirm an $18 billion sham Egyptian arbitration award against Chevron Corporation and Chevron USA, Inc. In addition, *The Legal 500 US* has recognized Ms. Champion as a "Next Generation Lawyer" in the area of international litigation. Ms. Champion and her efforts to resolve the cold case murder of a childhood friend are featured on the podcast *Bonaparte* from Imperative Entertainment.

## Recent highlights include:

- Representing CNN and White House correspondent Jim Acosta in their successful suit to reinstate Mr. Acosta's White House press credentials. After the district court entered a temporary restraining order requiring the Trump Administration immediately to restore Mr. Acosta's White House press credentials days after Plaintiffs filed suit, the parties resolved their dispute.

- Representing White House correspondent Brian Karem in his suit to reinstate his White House press credentials. After the district court granted Mr. Karem's motion for a preliminary injunction to reinstate his credentials, the Government appealed, and the D.C. Circuit affirmed decision in Mr. Karem's favor, *Karem v. Trump*, 960 F.3d 656 (D.C. Cir. 2020).

- Representing shareholders of Devas Multimedia in proceedings to enforce arbitral awards and judgments against India and its state-owned enterprise, Antrix Corporation.

- Representing a U.S. investor in an ICSID arbitration in an expropriation claim against the Republic of Colombia.

- Chevron Corporation: Representing Chevron Corporation and Chevron U.S.A., Inc., in their successful defense of a petition to confirm a sham $18 billion Egyptian arbitral award in the Northern District of California, *Waleed Al-Qarqani v. Chevron Corporation*, 4:18-cv-03297-JSW (N.D. Cal.).

- Chevron Corporation: Represented Chevron Corporation in its successful racketeering suit against Steven Donziger, a U.S. lawyer who masterminded a fraudulent scheme against the

Exhibit 1 - Page 11

company involving environmental litigation in Ecuador. The trial victory resulted in an injunction barring enforcement of a $9 billion Ecuadorian judgment in any U.S. court. The court found that Donziger and his co-conspirators had procured the Ecuadorian judgment through bribery and fraud, and had in fact ghostwritten the Ecuadorian judgment, along with a key damages report submitted to the Ecuadorian court by a purportedly neutral special master. The trial court's judgment was affirmed in full by the Second Circuit. *Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362 (S.D.N.Y. 2014); *aff'd Chevron Corp. v. Donziger*, 833 F.3d 74 (2d Cir. 2016), *denied*, 137 S. Ct. 2268, 198 L. Ed. 2d 700 (2017). Multiple foreign courts and an international arbitration tribunal have since agreed, based on the RICO trial evidence, that the Ecuadorian judgment is not enforceable.

- Citizens of Albany County: Ms. Champion was one of the lead partners on the trial team that prevailed in a Voting Rights Act trial against the County of Albany and the County of Albany Board of Elections. *Pope v. County of Albany*, 94 F. Supp. 3d 302 (N.D.N.Y. 2015). Following a multi-week trial, the district court held that the County had violated Section 2 of the Voting Rights Act by adopting a redistricting plan that failed to add a fifth majority-minority district to the County Legislature following the 2010 Census, diluting the strength of minority voters. As a result of the trial victory, the County Legislature was required to revise the districts to add a majority-minority district.

- Dole Food Company, Inc.: Ms. Champion represented Dole Food Company in a wrongful death case brought by dozens of Colombian plaintiffs who alleged Dole had provided support for the Colombian paramilitary organization, the AUC. After years of litigation, and after Ms. Champion deposed a former paramilitary leader who testified that the Plaintiffs' lawyers had attempted to bribe him to provide false testimony against Dole in the case, Plaintiffs voluntarily dismissed their claims with prejudice just months before trial.

- S. mobile phone carrier: Won complete summary judgment of non-infringement for a U.S. mobile phone carrier in a patent infringement action involving Wi-Fi cellular switching technology in the Eastern District of Texas, affirmed by the Federal Circuit.

- The Cablevision Systems Corporation: Won complete summary judgment of non-infringement for Cablevision in a patent infringement action involving interactive call processing and pay-per-view systems in the Central District of California. Cablevision faced 40 patents and hundreds of claims at the outset of the litigation, and Ms. Champion also represented Cablevision on a related appeal that resulted in a precedential decision in which the U.S. Court of Appeals for the Federal Circuit affirmed a district court's power to require patent plaintiffs to limit their asserted claims during the course of discovery. *In re Katz Interactive Call Processing Patent Litigation*, 639 F.3d 1303 (Fed. Cir. 2011).

- Confidential Client: Won summary judgment in lieu of complaint in New York State court in an action against guarantors of a real estate loan, resulting in a judgment of over $100 million after just months of litigation.

Ms. Champion earned her Bachelor of Science in physics with distinction from the University of Iowa and received the James A. Van Allen and the Myrtle K. Meier awards for excellence in physics. She earned her Juris Doctor, *summa cum laude,* from George Washington University School of Law, where she was the recipient of the Raymond F. Hossfeld Merit Scholarship. She served as an articles editor for *The George Washington Law Review* and published her case note, *Another Brick in the Wall: United States v. Samuel and the Lower Courts' Narrow Reading of Apprendi v. New Jersey Before Blakely v. Washington,* 72 Geo. Wash. L. Rev. 1004 (2004). Upon graduation, she was

Exhibit 1 - Page 12

Case 2:19-cv-01531-DOC-DFM    Document 387-6    Filed 09/06/25    Page 265 of 484
Page ID #:33589
Case 2:20-cv-04093-SB-PLA    Document 83-2    Filed 02/13/23    Page 14 of 83    Page ID
#:1177

awarded the Willard Waddington-Gatchell prize for academic excellence and the John F. Evans prize for outstanding achievement in the clinical law program, D.C. Law Students in Court, and was elected to the Order of the Coif.

Following law school, Ms. Champion clerked for the Honorable Max Rosenn on the United States Court of Appeals for the Third Circuit.

Ms. Champion is admitted to practice in the courts of the State of New York, the United States District Courts for the Southern, Eastern, and Northern Districts of New York, the Eastern District of Texas, and the United States Courts of Appeals for the Second Circuit, the D.C. Circuit, and the Federal Circuit.

Ms. Champion is proficient in Spanish and Italian.

### EDUCATION

The George Washington University - 2005 Juris Doctor

City University of New York (CUNY) - 2002 Master of Arts

University of Iowa - 1995 Bachelor of Science

### ADMISSIONS

New York Bar

Exhibit 1 - Page 13

Case 2:19-cv-01542-DOC-DFM   Document 387-6   Filed 09/06/25   Page 266 of 484
Case 2:20-cv-04093-SB-PLA   Document 63-2   Filed 02/13/23   Page 15 of 83   Page ID
#:1178

# EXHIBIT 2

Exhibit 2 - Page 14

Case 2:19-cv-01532-DOC-DFM     Document 387-6     Filed 09/06/25     Page 267 of 484
Case 2:20-cv-04093-SB-PLA   Document 83-2   Filed 02/13/23   Page 16 of 83   Page ID
Page ID #:3750
#:1179

# GIBSON DUNN



**Meredith S. Simons**

Associate Attorney

## CONTACT INFO

msimons@gibsondunn.com

TEL: +1 213.229.7939

FAX: +1 213.229.6939

Los Angeles

333 South Grand Avenue, Los Angeles, CA 90071-3197 USA

## PRACTICE

| Litigation | Antitrust and Competition |

| Fashion, Retail and Consumer Products | Intellectual Property |

| Media, Entertainment and Technology |

## BIOGRAPHY

Exhibit 2 - Page 15

Case 2:19-cv-01532-DOC-DFM   Document 387-6   Filed 09/06/25   Page 268 of 484
Case 2:20-cv-04093-SB-PLA   Document 83-2   Filed 02/13/23   Page 17 of 83   Page ID
#:1180
Page ID #:3758

Meredith Simons is an associate in the Los Angeles office of Gibson, Dunn & Crutcher. She practices in the firm's Litigation department.

Prior to joining the firm, Ms. Simons served as a law clerk to the Honorable Richard C. Tallman of the United States Court of Appeals for the Ninth Circuit.

Ms. Simons graduated *summa cum laude* from Duke University School of Law in 2017. While at Duke, she served as an Executive Editor of *Duke Law Journal*, a legal writing tutor, and a teaching assistant. Ms. Simons graduated *summa cum laude* and Phi Beta Kappa from University of Oklahoma in 2009, with bachelor's degrees in Philosophy and International & Area Studies.

Ms. Simons is a member of the California bar and is admitted to practice before the Ninth Circuit Court of Appeals.

## EDUCATION

Duke University - 2017 Juris Doctor

University of Oklahoma - 2009 Bachelor of Arts

## ADMISSIONS

California Bar

Exhibit 2 - Page 16

Case 2:19-cv-01582-DOC-DFM   Document 387-6   Filed 09/06/25   Page 269 of 484
Case 2:20-cv-04093-SB-PLA   Document 83-2   Filed 02/13/23   Page 18 of 83   Page ID
#:1181

# EXHIBIT 3

Exhibit 3 - Page 17



Exhibit 3 - Page 18



disclosure, service provider, and intellectual property assignment agreements for clients in a variety of industries, including media, entertainment, software, video game, film, and music industries.
• Provide transactional support across multiple deal teams.
• Draft privacy policies, terms of use, terms of service, and cookie consent pop-ups.
• Conduct risk assessment and counsel clients on transactional, data privacy, and intellectual property protection issues; analyze litigation exposure in mergers and acquisitions; advise on risks related to licensing issues.
• Advise organizations on corporate governance and formation issues, including compliance with ethical best practices.
• Counsel client in launching a successful initiative to revitalize New York City, including its marketing and branding campaign.
• Recipient of the 2020 Frank Wheat Team Pro Bono Award for small business COVID-19 relief counseling efforts.

**Associate**
Weil, Gotshal & Manges LLP
Sep 2016 - Jul 2019 · 2 yrs 11 mos
Greater New York City Area

Broad-based practice encompassing corporate governance, intellectual property law, antitrust law, commercial litigation, and patent litigation in federal court. Negotiate commission agreements and licensing agreements between arts organization and artist involving Central Park exhibition. Litigate false advertising and unfair competition counterclaims under Lanham Act and state common law. Counsel rock band with 501(c)(3) corporate governance, including reviewing performance contracts; advising on charitable concert performances; and drafting company bylaws, board resolutions, and certificates of change. Represent developer of prescription eyelash enhancer in patent infringement claim and Walker Process counterclaim. Represent global biopharmaceutical company in monopolization claims against competitor. Defend auto parts manufacturer in price-fixing class action following DOJ investigation. Prepare quarterly audit reports. Communicate directly with clients regarding case management strategies. Draft complaints, briefs, pretrial motions, memoranda, and discovery requests and responses. Take and defend 30(b)(1) and 30(b)(6) depositions.

**Legal Intern - Corporate Counsel**
Michael Kors
Jan 2016 - Apr 2016 · 4 mos
New York, NY

Reviewed and drafted a range of commercial contracts, including territorial and product license agreements and amendments, services agreements, model/photographer agreements, independent contractor agreements, and technology agreements. Drafted and served cease and desist letters. Responded to small claims court summons.

Show all 11 experiences →

## Education

**Cardozo School of Law**
Doctor of Law (JD)
2013 - 2016
Grade: cum laude
Activities and societies: Concentration – Intellectual Property, Media & Entertainment Law.

Cardozo Law Review, Volume 37, Notes Editor; Dean's Merit Scholarship; Charles H. Revson Law Student Public Interest Fellowship

Publication: Note, Keeping It in the Kitchen: An Analysis of Intellectual Property Protection Through Trade Secrets in the Restaurant Industry, 37 CARDOZO L. REV. 1523 (2016)

Public Interest Law Students Association, Vice President; Student Bar Association, Senator; The Student Life Committee, Member; The Cardozo Jurist, Writer; Cardozo Advocates for Battered Women; Election Protection

**Franklin & Marshall College**
Bachelor of Arts, Double Major: Psychology, Spanish
2007 - 2011
Activities and societies: Phi Beta Kappa, Delta Sigma Pi (National Spanish Honor Society), John Marshall Pre-law Honor Society, Satell Life After College Success Program, Alpha Phi, Dance Team, Manheim Summer Mentoring Program, Orphanage Outreach Volunteer.

**Universidad Complutense de Madrid**
2009
Study Abroad Program  Fluency in Spanish; gained insight into Spanish business and culture

## Skills

**Spanish**
14 endorsements

**Research**
Endorsed by D. Alfred Owens who is highly skilled at this
9 endorsements

**Legal Writing**
7 endorsements

Show all 50 skills →

## Honors & awards

**Cum Laude**
Issued by Benjamin N. Cardozo School of Law · May 2016
Associated with Benjamin N. Cardozo School of Law, Yeshiva University

**Charles H. Revson Law Students Public Interest (LSPIN) Fellowship Grant**

See my recommendations

Promoted
Subscribe Now: $2/Week
Understand the market's highs and lows with this Barron's offer.

Subscriber only access
Explore the ranked list of the 100 Best Places to Work in NY

Exhibit 3 - Page 19

Case 2:19-cv-01532-DOC-DFM   Document 387-6   Filed 09/06/25   Page 272 of 484
Case 2:20-cv-04093-SB-PLA   Document 63-2   Filed 02/13/23   Page 21 of 83   Page ID
Page ID #:33587
#:1184



Exhibit 3 - Page 20



Exhibit 3 - Page 21



Exhibit 3 - Page 22

Case 2:19-cv-01532-DOC-DFM Document 387-6 Filed 09/06/25 Page 275 of 484
Case 2:20-cv-04093-SB-PLA Document 83-2 Filed 02/13/23 Page 24 of 83 Page ID #:1187
Page ID #:1187



Exhibit 3 - Page 23

Case 2:19-cv-01532-DOC-DFM   Document 387-3   Filed 09/06/25   Page 276 of 484
Case 2:20-cv-04093-SB-PLA   Document 83-2   Filed 02/13/23   Page 25 of 83   Page ID
#:1188
Page ID #:3759

Legal Assistance

2 endorsements

Community Outreach

2 endorsements

Fundraising

2 endorsements

Exhibit 3 - Page 24

Case 2:19-cv-01531-DOC-DFM   Document 387-6   Filed 02/06/25   Page 277 of 484
Case 2:20-cv-04093-SB-PLA   Document 83-2   Filed 02/13/23   Page 26 of 83   Page ID
Page ID #:1189
#:1189



Exhibit 3 - Page 25

Case 2:19-cv-01532-DOC-DFM   Document 387-3   Filed 04/06/25   Page 278 of 484
Case 2:20-cv-04093-SB-PLA   Document 83-2   Filed 02/13/23   Page 27 of 83   Page ID
#:1190
Page ID #:33592



Exhibit 3 - Page 26

Case 2:19-cv-01532-DOC-DFM    Document 387-6    Filed 09/06/25    Page 279 of 484
Case 2:20-cv-04093-SB-PLA    Document 83-2    Filed 02/13/23    Page 28 of 83    Page ID
#:1191



Exhibit 3 - Page 27

Case 2:19-cv-01532-DOC-DFM   Document 337-3   Filed 09/06/25   Page 280 of 484
Case 2:20-cv-04093-SB-PLA   Document 83-2   Filed 02/13/23   Page 29 of 83   Page ID
#:1192

# EXHIBIT 4

Exhibit 4 - Page 28

**FEES INCURRED BY IPVM**

| Date | Timekeeper | Rate | Hours | Fees | Narrative |
|---|---|---|---|---|---|
| 5/21/2020 | Segal, Sarah L. | $885.00 | 0.6 | $531.00 | Teleconference with A. Champion and RCFP regarding strategy relating to state law claims (0.5); teleconference with A. Champion regarding state law claim strategy (0.1). |
| 6/1/2020 | Segal, Sarah L. | $885.00 | 0.5 | $442.50 | Teleconference with A. Champion and RCFP regarding state law claims strategy (0.4); teleconference with A. Champion regarding drafting motion to strike strategy (0.1). |
| 6/1/2020 | Champion, Anne M. | $1,295.00 | 0.7 | $906.50 | Teleconference with team regarding MTD drafting and follow up with M. Simons. |
| 6/4/2020 | Simons, Meredith S. | $740.00 | 1.49 | $1,102.60 | Research California and Ninth Circuit law re intentional interference with contractual relations and interference with economic relations. |

Exhibit 4 - Page 29

| Date | Name | Rate | Hours | Amount | Description |
|---|---|---|---|---|---|
| 6/5/2020 | Simons, Meredith S. | $740.00 | 1.88 | $1,391.20 | Research Ninth Circuit law re interference with contractual and economic relations and applicability of First Amendment defenses to such claims. |
| 6/8/2020 | Simons, Meredith S. | $740.00 | 4.5 | $3,330.00 | Draft motion to strike claims re contractual and economic interference. |
| 6/9/2020 | Segal, Sarah L. | $885.00 | 0.4 | $354.00 | Analyze outline of motion to strike state law claims (0.3); review related correspondence between A. Champion and M. Simons (0.1). |
| 6/17/2020 | Segal, Sarah L. | $885.00 | 0.9 | $796.50 | Analyze and review motion to strike (0.1); attend teleconference regarding motion to strike strategy with RCFP (0.8). |
| 6/17/2020 | Simons, Meredith S. | $740.00 | 1.02 | $754.80 | Review draft anti-SLAPP motion (0.3); confer with team re same (0.7). |

Exhibit 4 - Page 30

| Date | Name | Rate | Hours | Amount | Description |
|---|---|---|---|---|---|
| 6/17/2020 | Champion, Anne M. | $1,295.00 | 0.9 | $1,165.50 | Teleconference with co-counsel to discuss brief drafting (.8); correspond with opposing counsel to schedule meet and confer on motion (.1). |
| 6/21/2020 | Simons, Meredith S. | $740.00 | 0.63 | $466.20 | Revise draft motion to strike. |
| 6/22/2020 | Segal, Sarah L. | $885.00 | 0.2 | $177.00 | Email with Reporters Committee regarding Motion to Strike/Motion to Dismiss (0.2). |
| 6/22/2020 | Simons, Meredith S. | $740.00 | 1.24 | $917.60 | Attend meet and confer re motion to strike (0.5); confer with A. Champion and J. Nelson re meet and confer and draft motion to strike (0.3); research C.D. Cal. rules and Judge Kronstadt's standing order re scheduling motion hearings (0.4). |
| 6/22/2020 | Champion, Anne M. | $1,295.00 | 1.2 | $1,554.00 | Prepare notes for meet and confer (.5); participate in meet and confer (.4); follow up teleconference with team (.3). |

Exhibit 4 - Page 31

| Date | Name | Rate | Hours | Amount | Description |
|---|---|---|---|---|---|
| 6/23/2020 | Segal, Sarah L. | $885.00 | 2.5 | $2,212.50 | Edit and revise antiSLAPP motion and motion to dismiss (0.8); research issues for antiSLAPP motion (0.5); email with A. Champion regarding edits to motion (0.2). |
| 6/23/2020 | Simons, Meredith S. | $740.00 | 0.61 | $451.40 | Analyze complaint's allegations regarding false or harmful statements (0.4); revise complaint (0.2). |
| 6/24/2020 | Segal, Sarah L. | $885.00 | 0.2 | $177.00 | Analyze M. Simons edits to defamation section of motion (0.1); review M. Simons analysis of state law interference and unfair competition claims (0.1). |
| 6/25/2020 | Segal, Sarah L. | $885.00 | 1.3 | $1,150.50 | Analyze correspondence regarding meet and confer and communicate with RCFP (0.6); teleconferences regarding fee shifting research (0.7). |
| 6/25/2020 | Simons, Meredith S. | $740.00 | 0.31 | $229.40 | Review and revise e-mail to opposing counsel re meet and confer. |

Exhibit 4 - Page 32

| Date | Name | Rate | Hours | Amount | Description |
|---|---|---|---|---|---|
| 6/25/2020 | Champion, Anne M. | $1,295.00 | 0.9 | $1,165.50 | Draft response to email from opposing counsel and incorporate edits from team and send (.5); teleconference with team regarding draft brief (.4). |
| 6/26/2020 | Segal, Sarah L. | $885.00 | 0.4 | $354.00 | Analyze and review AntiSLAPP motion draft and related correspondence with A. Champion, M. Simons and RFCP (0.4). |
| 6/26/2020 | Champion, Anne M. | $1,295.00 | 2.5 | $3,237.50 | Edit motion to strike and dismiss and send to team. |
| 6/27/2020 | Segal, Sarah L. | $885.00 | 0.2 | $177.00 | Analyze correspondence regarding AntiSLAPP motion edits (0.2). |
| 6/27/2020 | Simons, Meredith S. | $740.00 | 0.4 | $296.00 | Revise draft motion to strike. |
| 6/28/2020 | Segal, Sarah L. | $885.00 | 0.6 | $531.00 | Analyze and review draft AntiSLAPP motion (0.3); email regarding fee shifting issue (0.3). |

Exhibit 4 - Page 33

| Date | Name | Rate | Hours | Amount | Description |
|---|---|---|---|---|---|
| 6/29/2020 | Segal, Sarah L. | $885.00 | 2.6 | $2,301.00 | Teleconference with A. Champion, M. Simons, and RCFP regarding motion to strike (0.7); teleconference with A. Champion and M. Simons regarding state law claims (0.2); research issues relating to fee shifting (0.5); summarize research relating to fee shifting (0.5); edit and revise motion to strike and review related correspondence (0.7). |
| 6/29/2020 | Simons, Meredith S. | $740.00 | 1 | $740.00 | Review draft motion to strike (0.2); confer with team re draft motion to strike (0.7); confer with S. Segal re nature of claims (0.1). |
| 6/29/2020 | Champion, Anne M. | $1,295.00 | 1.4 | $1,813.00 | Team call (.6); review brief to cut length (.8). |
| 6/30/2020 | Segal, Sarah L. | $885.00 | 0.4 | $354.00 | Analyze correspondence with client and RCFP regarding motion to strike issues and strategy (0.4). |
| 6/30/2020 | Simons, Meredith S. | $740.00 | 3.9 | $2,886.00 | Cite-check anti-SLAPP motion to strike. |

Exhibit 4 - Page 34

| Date | Name | Rate | Hours | Amount | Description |
|---|---|---|---|---|---|
| 7/1/2020 | Simons, Meredith S. | $740.00 | 2.99 | $2,212.60 | Cite-check and revise anti-SLAPP motion to strike. |
| 7/1/2020 | Segal, Sarah L. | $885.00 | 2.5 | $2,212.50 | Edit and revise motion to strike; (1.5); communicate with team regarding motion to strike strategy (1.0). |
| 7/2/2020 | Segal, Sarah L. | $885.00 | 0.7 | $619.50 | Communicate with team regarding Motion to Strike filing (0.5); analyze and review final motion to strike filing (0.2). |
| 7/2/2020 | Tom, Daniel K.L. | $505.00 | 0.4 | $202.00 | Analyze, lodge Motion to Strike and Motion to Dismiss with the Court pursuant to Local Rules. |
| 7/2/2020 | Champion, Anne M. | $1,295.00 | 1.2 | $1,554.00 | Finalize brief for filing. |
| 7/24/2020 | Champion, Anne M. | $1,295.00 | 0.6 | $777.00 | Review amended complaint and correspond with team regarding same (.4); correspond with team regarding schedule for response (.2). |
| 7/28/2020 | Simons, Meredith S. | $740.00 | 0.39 | $288.60 | Confer with A. Champion, K. Townsend, J. Nelson, and L. Wygert re motion to dismiss amended complaint. |

Exhibit 4 - Page 35

| Date | Name | Rate | Hours | Amount | Description |
|---|---|---|---|---|---|
| 7/31/2020 | Simons, Meredith S. | $740.00 | 0.93 | $688.20 | Finalize and file joint stipulation to extend time to respond to amended complaint and supporting documents. |
| 8/5/2020 | Simons, Meredith S. | $740.00 | 0.36 | $266.40 | Confer with A. Champion and Reporters Committee co-counsel re response to amended complaint. |
| 8/6/2020 | Segal, Sarah L. | $885.00 | 0.1 | $88.50 | Communicate with A. Champion regarding revised trademark section (0.6). |
| 8/9/2020 | Segal, Sarah L. | $885.00 | 1.7 | $1,504.50 | Review and analyze amended complaint (1.4); email with A. Champion regarding revised motion to strike/motion to dismiss strategy (0.3). |
| 8/12/2020 | Simons, Meredith S. | $740.00 | 2.6 | $1,924.00 | Analyze amended complaint (1.2); research California state-law claims (1.4). |
| 8/13/2020 | Simons, Meredith S. | $740.00 | 1.9 | $1,406.00 | Draft response to amended complaint re intentional and negligent interference claims, consumer protection claims, and trade libel. |

Exhibit 4 - Page 36

| 8/14/2020 | Simons, Meredith S. | $740.00 | 0.4 | $296.00 | Draft and file notice of lodging of proposed order re request for extension of page limit. |
|---|---|---|---|---|---|
| 8/19/2020 | Segal, Sarah L. | $885.00 | 5.8 | $5,133.00 | Research issues relating to false advertising standing (2.5); draft summary of findings and communicate with A. Champion regarding same (1.5); edit and revise motion to strike/motion to dismiss brief (1.8). |
| 8/19/2020 | Simons, Meredith S. | $740.00 | 0.42 | $310.80 | Attend meet and confer re motion to strike and dismiss amended complaint (0.3); confer with A. Champion and J. Nelson re meet and confer (0.1). |
| 8/19/2020 | Champion, Anne M. | $1,295.00 | 3.3 | $4,273.50 | Prepare for and conduct meet and confer, follow up (1.1); review and edit draft motion brief (2.2). |
| 8/20/2020 | Champion, Anne M. | $1,295.00 | 1.1 | $1,424.50 | Finish edits to draft brief. |
| 8/23/2020 | Champion, Anne M. | $1,295.00 | 0.3 | $388.50 | Teleconference with client. |
| 8/24/2020 | Simons, Meredith S. | $740.00 | 0.59 | $436.60 | Cite-check legal citations in motion to strike and dismiss First Amended Complaint. |

Exhibit 4 - Page 37

| Date | Name | Rate | Hours | Amount | Description |
|---|---|---|---|---|---|
| 8/24/2020 | Champion, Anne M. | $1,295.00 | 1.8 | $2,331.00 | Revise motion to strike and dismiss (1.3); teleconference with team to discuss finalization of brief (.3); teleconference with M. Simons to discuss finalization (.2). |
| 8/25/2020 | Simons, Meredith S. | $740.00 | 2.78 | $2,057.20 | Cite-check factual assertions and citations to the record in motion to strike and dismiss First Amended Complaint. |
| 8/25/2020 | Champion, Anne M. | $1,295.00 | 3.1 | $4,014.50 | Edit motion to strike and dismiss, send to client and team for comment. |
| 8/26/2020 | Segal, Sarah L. | $885.00 | 6.4 | $5,664.00 | Edit, revise, and finalize motion to strike/motion to dismiss brief (1.4); communicate with M. Simons, A. Champion, and co-counsel regarding brief strategy (1.0). |

Exhibit 4 - Page 38

| Date | Name | Rate | Hours | Amount | Description |
|---|---|---|---|---|---|
| 8/26/2020 | Simons, Meredith S. | $740.00 | 9.4 | $6,956.00 | Cite-check and proofread motion to strike and dismiss First Amended Complaint (3.6); revise same to incorporate edits of A. Champion, J. Nelson, and S. Segal (1.4); draft proposed order (0.4); prepare motion to strike and dismiss First Amended Complaint and supporting documents for filing (2.3); correspond with team re same (0.7). |
| 8/26/2020 | Tom, Daniel K.L. | $505.00 | 1.2 | $606.00 | Analyze, prepare and lodge Special Motion to Strike and Motion to Dismiss to the Court pursuant to Local Rules (1.2) |
| 8/26/2020 | Champion, Anne M. | $1,295.00 | 2.4 | $3,108.00 | Review motion to strike and correspond with team regarding same; finalize for filing. |
| 9/15/2020 | Champion, Anne M. | $1,295.00 | 0.3 | $388.50 | Review and send comment on draft article regarding new case. |
| 10/8/2020 | Champion, Anne M. | $1,295.00 | 0.5 | $647.50 | Teleconference with RCFP regarding reply brief. |

Exhibit 4 - Page 39

Case 2:19-cv-01631-DOC-DFM   Document 387-6   Filed 02/06/25   Page 292 of 484   Page ID #:33565

| Date | Name | Rate | Hours | Amount | Description |
|---|---|---|---|---|---|
| 10/11/2020 | Segal, Sarah L. | $885.00 | 1.6 | $1,416.00 | Legal research for motion to strike (1.2); email with A. Champion regarding research analysis (0.4). |
| 10/12/2020 | Segal, Sarah L. | $885.00 | 2.1 | $1,858.50 | Legal research for motion to strike (1.8); email with A. Champion regarding research analysis (0.3). |
| 10/13/2020 | Segal, Sarah L. | $885.00 | 2.1 | $1,858.50 | Research issues relating to motion to strike review and analyze opposition to Motion to Dismiss. |
| 10/14/2020 | Segal, Sarah L. | $885.00 | 0.4 | $354.00 | Research issues relating to motion to strike. |
| 10/16/2020 | Segal, Sarah L. | $885.00 | 0.8 | $708.00 | Research issues relating to motion to strike (0.8). |
| 10/19/2020 | Segal, Sarah L. | $885.00 | 1.4 | $1,239.00 | Research issues relating to motion to strike (1.4). |
| 10/19/2020 | Tom, Daniel K.L. | $505.00 | 0.4 | $202.00 | Analyze and lodge Re-Notice of Hearing relating to Motion to Dismiss (0.2); analyze and lodge Notice of Related Cases (0.2) |
| 10/19/2020 | Champion, Anne M. | $1,295.00 | 1.2 | $1,554.00 | Edit reply in support of motion to strike and correspond with S. Segal regarding same. |

Exhibit 4 - Page 40

| | | | | | |
|---|---|---|---|---|---|
| 10/20/2020 | Segal, Sarah L. | $885.00 | 8.6 | $7,611.00 | Legal research (3.5); review Opposition to Motion to Dismiss (0.5); review and analyze recent electronic filings and notice of related cases (0.7); communicate with A. Champion regarding case strategy (0.3); draft Reply to Opposition to Motion to Dismiss (3.6). |
| 10/21/2020 | Segal, Sarah L. | $885.00 | 4.7 | $4,159.50 | Legal research (1.4); draft section of Reply (1.0); email with A. Champion regarding argument (0.3). |
| 10/21/2020 | Champion, Anne M. | $1,295.00 | 2.6 | $3,367.00 | Revise reply brief in support of motion to strike. |
| 10/22/2020 | Segal, Sarah L. | $885.00 | 3.7 | $3,274.50 | Edit and revise reply (1.5); research issues (1.0); email with A. Champion regarding brief strategy (0.2). |
| 10/25/2020 | Champion, Anne M. | $1,295.00 | 0.8 | $1,036.00 | Edit reply brief. |
| 10/28/2020 | Tom, Daniel K.L. | $505.00 | 0.2 | $101.00 | Analyze and lodge Reply in Support of Special Motion to Strike. |
| 10/28/2020 | Champion, Anne M. | $1,295.00 | 1.8 | $2,331.00 | Finalize reply brief for filing. |

Exhibit 4 - Page 41

| Date | Name | Rate | Hours | Amount | Description |
|---|---|---|---|---|---|
| 12/17/2020 | Champion, Anne M. | $1,295.00 | 0.8 | $1,036.00 | Review tentative order for IPVM case and correspond with team regarding same. |
| 12/18/2020 | Champion, Anne M. | $1,295.00 | 1.5 | $1,942.50 | Teleconference to prepare for argument; attend argument; post argument discussion with client and team. |
| 1/7/2021 | Champion, Anne M. | $1,430.00 | 0.6 | $858.00 | Teleconference with team to discuss next steps in appeal and research issues. |
| 1/11/2021 | Tom, Daniel K.L. | $530.00 | 0.4 | $212.00 | Analyze, prepare and lodge Notice of Appeal. |
| 1/12/2021 | Champion, Anne M. | $1,430.00 | 0.4 | $572.00 | Meet and confer regarding stay. |
| 1/14/2021 | Tom, Daniel K.L. | $530.00 | 0.4 | $212.00 | Analyze, prepare and lodge Stipulation to Stay Proceedings Pending Appeal |
| 1/25/2021 | Tom, Daniel K.L. | $530.00 | 0.3 | $159.00 | Analyze, prepare and lodge Mediation Questionnaire to the Court. |
| 3/1/2021 | Simons, Meredith S. | $845.00 | 0.57 | $481.65 | Confer with A. Champion, K. Townsend, and J. Nelson re appeal brief. |
| 3/2/2021 | Simons, Meredith S. | $845.00 | 1.58 | $1,335.10 | Draft jurisdiction section of appeal brief. |

Exhibit 4 - Page 42

| Date | Timekeeper | Rate | Hours | Amount | Description |
|---|---|---|---|---|---|
| 3/15/2021 | Simons, Meredith S. | $845.00 | 1.23 | $1,039.35 | Research Ninth Circuit law re economic claims based on defamatory statements (0.7); outline state-law section of appeal brief (0.5). |
| 3/18/2021 | Simons, Meredith S. | $845.00 | 0.42 | $354.90 | Confer with client and team re mediation conference. |
| 3/22/2021 | Simons, Meredith S. | $845.00 | 3.33 | $2,813.85 | Research Ninth Circuit law re disposing of non-defamation claims on anti-SLAPP motions to strike (1); draft opening appeal brief (2.3). |
| 3/23/2021 | Simons, Meredith S. | $845.00 | 3.44 | $2,906.80 | Draft and revise opening appeal brief. |
| 3/24/2021 | Tom, Daniel K.L. | $530.00 | 0.9 | $477.00 | Analyze docket and prepare material in support of appeal |
| 4/29/2021 | Simons, Meredith S. | $845.00 | 0.35 | $295.75 | Confer with A. Champion and Reporters' Committee team re Ninth Circuit appeal. |
| 6/16/2021 | Simons, Meredith S. | $845.00 | 0.4 | $338.00 | Research and draft standard of review section of appellate brief. |
| 6/17/2021 | Simons, Meredith S. | $845.00 | 1.51 | $1,275.95 | Research Ninth Circuit law re considering the context of statements in defamation cases. |

Exhibit 4 - Page 43

| Date | Name | Rate | Hours | Amount | Description |
|---|---|---|---|---|---|
| 6/17/2021 | Tom, Daniel K.L. | $530.00 | 3.2 | $1,696.00 | Analyze docket, prepare appellant's appendix |
| 6/18/2021 | Tom, Daniel K.L. | $530.00 | 2.3 | $1,219.00 | Revise appellant's appendix in accordance with attorney comments |
| 6/21/2021 | Simons, Meredith S. | $845.00 | 1.5 | $1,267.50 | Revise opening appeal brief to include citations to appellate appendix. |
| 6/22/2021 | Simons, Meredith S. | $845.00 | 7.39 | $6,244.55 | Cite-check appeal brief (2); revise appeal brief to incorporate cite-check edits and record cites and to reduce length (5.4). |
| 6/22/2021 | Tom, Daniel K.L. | $530.00 | 1.8 | $954.00 | Revise appellant's appendix in accordance with attorney further comments |
| 6/23/2021 | Simons, Meredith S. | $845.00 | 3.7 | $3,126.50 | Revise draft appeal brief to incorporate record cites and comments of A. Champion (2.6); correspond with A. Champion and K. Townsend re appeal brief (0.4); research Ninth Circuit law re burden of proof on falsity when evaluating an anti-SLAPP motion to strike defamation claims (0.8). |

Exhibit 4 - Page 44

| Date | Name | Rate | Hours | Amount | Description |
|---|---|---|---|---|---|
| 6/23/2021 | Tom, Daniel K.L. | $530.00 | 1.8 | $954.00 | Revise appellant's appendix in accordance with attorney further comments. |
| 6/24/2021 | Simons, Meredith S. | $845.00 | 2.18 | $1,842.10 | Revise appeal brief to incorporate final fact- and cite-check edits. |
| 6/24/2021 | Tom, Daniel K.L. | $530.00 | 1 | $530.00 | Revise appellant's appendix in accordance with attorney further comments (0.7); prepare proposed addendum to the opening brief (0.3). |
| 6/25/2021 | Simons, Meredith S. | $845.00 | 2 | $1,690.00 | Revise opening brief to implement final edits and prepare for filing. |
| 6/25/2021 | Tom, Daniel K.L. | $530.00 | 3.1 | $1,643.00 | Revise appellant's excerpts of record in accordance with attorney further comments (0.5); analyze and revise opening brief (2.0); prepare and lodge opening brief and excerpts of record to the court (0.6) |
| 6/28/2021 | Tom, Daniel K.L. | $530.00 | 3.8 | $2,014.00 | Revise appellant's appendix in accordance with notice of deficiency |

Exhibit 4 - Page 45

| | | | | | |
|---|---|---|---|---|---|
| 12/10/2021 | Simons, Meredith S. | $845.00 | 1.17 | $988.65 | Analyze X.Labs' response brief (0.5); review IPVM's opening brief (0.4); review Ninth Circuit docket (0.2) calendar reply brief deadline (0.1). |
| 1/12/2022 | Simons, Meredith S. | $960.00 | 1.65 | $1,584.00 | Cite check Ninth Circuit reply brief. |
| 1/13/2022 | Tom, Daniel K.L. | $555.00 | 1.7 | $943.50 | Analyze and revise factual references in reply brief |
| 1/14/2022 | Simons, Meredith S. | $960.00 | 0.46 | $441.60 | Verify accuracy of record cite-check for Ninth Circuit reply brief (0.3); correspond with GDC and RCFP team re filing (0.2). |
| 1/14/2022 | Tom, Daniel K.L. | $555.00 | 0.4 | $222.00 | Review and lodge Reply brief to the court. |
| 1/18/2022 | Tom, Daniel K.L. | $555.00 | 0.3 | $166.50 | Prepare Certificate of Briefs in Paper Format and Reply Brief pursuant the Clerk's request. |
| 3/11/2022 | Simons, Meredith S. | $960.00 | 1.5 | $1,440.00 | Participate in moot oral argument with K. Townsend and team. |
| 3/15/2022 | Simons, Meredith S. | $960.00 | 1.5 | $1,440.00 | Participate in moot Ninth Circuit oral argument. |

Exhibit 4 - Page 46

| | | | | | |
|---|---|---|---|---|---|
| 3/18/2022 | Simons, Meredith S. | $960.00 | 0.6 | $576.00 | Attend Ninth Circuit oral argument. |
| **TOTALS** | | | **185.12** | **$162,107.35** | |

| | | Total Hours | Apportioned Fees | Effective Hourly Rate | |
|---|---|---|---|---|---|
| | | | | | 0.842312209 |
| | Simons, Meredith S. | 76.22 | $ 51,288.26 | $ 672.90 | **Multiplier** |
| | Segal, Sarah L. | 53.4 | $39,806.83 | $ 745.45 | |
| | Tom, Daniel K.L. | 23.6 | $10,539.85 | $ 446.60 | |
| | Champion, Anne M. | 31.9 | $34,910.05 | $ 1,094.36 | |
| | **Total** | **185.12** | **$ 136,545.00** | | |
| | | | | | |

Exhibit 4 - Page 47

Case 2:19-cv-01532-DOC-DFM   Document 387-6   Filed 09/06/25   Page 300 of 484
Case 2:20-cv-04093-SB-PLA   Document 63-2   Filed 02/13/23   Page 49 of 83   Page ID
Page ID #:37675
#:1212

# EXHIBIT 5

Exhibit 5 - Page 48



*ELM Solutions*

# 2022 Real Rate Report®

The industry's leading analysis of law firm rates, trends, and practices

Wolters Kluwer



# Section I: High-Level Data Cuts

All data and analysis based on data collected thru Q2 2022

Exhibit 5 - Page 50

Case 2:19-cv-01532-DOC-DFM   Document 387-6   Filed 09/06/25   Page 303 of 484
Page ID #:33570
Case 2:20-cv-04093-SB-PLA   Document 83-2   Filed 02/13/23   Page 52 of 83   Page ID
#:1215

# Section I: High-Level Data Cuts

**Cities**
By Matter Type

**2022 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| City | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| **Jackson MS** | Litigation | Associate | 56 | $55 | $225 | $250 | $178 | $203 | $175 |
| | Non-Litigation | Partner | 24 | $315 | $420 | $485 | $418 | $394 | $375 |
| | | Associate | 25 | $55 | $126 | $255 | $155 | $125 | $259 |
| **Kansas City MO** | Litigation | Partner | 74 | $413 | $450 | $556 | $472 | $450 | $450 |
| | | Associate | 50 | $252 | $329 | $385 | $319 | $316 | $305 |
| | Non-Litigation | Partner | 101 | $411 | $487 | $615 | $519 | $487 | $464 |
| | | Associate | 73 | $250 | $320 | $385 | $322 | $312 | $285 |
| **Las Vegas NV** | Non-Litigation | Partner | 20 | $350 | $425 | $525 | $440 | $422 | $432 |
| | | Associate | 11 | $238 | $267 | $368 | $301 | $297 | $282 |
| **Little Rock AR** | Non-Litigation | Partner | 11 | $215 | $215 | $308 | $264 | $256 | $298 |
| **Los Angeles CA** | Litigation | Partner | 322 | $516 | $725 | $1,045 | $799 | $739 | $702 |
| | | Associate | 408 | $400 | $615 | $855 | $642 | $606 | $564 |
| | Non-Litigation | Partner | 521 | $596 | $868 | $1,201 | $903 | $902 | $858 |
| | | Associate | 667 | $441 | $603 | $845 | $653 | $712 | $648 |

Case 2:19-cv-01532-DOC-DFM    Document 387-6    Filed 09/06/25    Page 304 of 484
Page ID #:33679
Case 2:20-cv-04093-SB-PLA   Document 83-2   Filed 02/13/23   Page 53 of 83   Page ID
#:1216

# Section I: High-Level Data Cuts

## Cities
By Matter Type

**2022 - Real Rates for Associate and Partner**          **Trend Analysis - Mean**

| City | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| **Minneapolis MN** | Non-Litigation | Associate | 83 | $340 | $421 | $528 | $425 | $408 | $384 |
| **Nashville TN** | Litigation | Partner | 24 | $275 | $320 | $456 | $363 | $378 | $403 |
| | Non-Litigation | Partner | 78 | $412 | $484 | $576 | $505 | $481 | $470 |
| | | Associate | 59 | $270 | $330 | $384 | $340 | $315 | $285 |
| **New Orleans LA** | Litigation | Partner | 47 | $290 | $332 | $412 | $343 | $330 | $340 |
| | | Associate | 42 | $231 | $243 | $340 | $278 | $290 | $275 |
| | Non-Litigation | Partner | 32 | $295 | $347 | $405 | $419 | $380 | $391 |
| | | Associate | 21 | $244 | $250 | $278 | $273 | $303 | $258 |
| **New York NY** | Litigation | Partner | 614 | $475 | $675 | $1,088 | $808 | $784 | $746 |
| | | Associate | 631 | $323 | $460 | $729 | $545 | $527 | $509 |
| | Non-Litigation | Partner | 1,376 | $765 | $1,235 | $1,638 | $1,189 | $1,139 | $1,090 |
| | | Associate | 1,809 | $550 | $776 | $1,050 | $796 | $766 | $716 |
| **Oklahoma City OK** | Non-Litigation | Partner | 14 | $235 | $338 | $393 | $337 | $319 | $311 |
| **Omaha NE** | Litigation | Partner | 12 | $293 | $339 | $353 | $329 | $338 | $341 |

Exhibit 5 - Page 52

Case 2:19-cv-01582-DOC-DFM   Document 387-6   Filed 09/06/25   Page 305 of 484
Case 2:20-cv-04093-SB-PLA   Document 83-2   Filed 02/13/23   Page 54 of 83   Page ID #:1217
Page ID #:37570

# **EXHIBIT 6**

Exhibit 6 - Page 53

| Firm Name | Professional | Professional Type Desc | Court Type | Rate | Court Name |
|---|---|---|---|---|---|
| Reed Smith LLP | Attorney | Partner | U.S.B.C. | $620 | California Central |
| Reed Smith LLP | Attorney | Associate | U.S.B.C. | $490 | California Central |
| Reed Smith LLP | Attorney | Associate | U.S.B.C. | $480 | California Central |
| Alston & Bird LLP | Attorney | Associate | U.S.B.C. | $545 | California Central |
| Alston & Bird LLP | Attorney | Partner | U.S.B.C. | $685 | California Central |
| Alston & Bird LLP | Attorney | Counsel | U.S.B.C. | $795 | California Central |
| Klee, Tuchin, Bogdanoff & Stern, LLP | Attorney | Partner | U.S.B.C. | $1,300 | California Central |
| Klee, Tuchin, Bogdanoff & Stern, LLP | Attorney | Partner | U.S.B.C. | $675 | California Central |
| Klee, Tuchin, Bogdanoff & Stern, LLP | Attorney | Associate | U.S.B.C. | $440 | California Central |
| Klee, Tuchin, Bogdanoff & Stern, LLP | Attorney | Associate | U.S.B.C. | $475 | California Central |
| Klee, Tuchin, Bogdanoff & Stern, LLP | Attorney | Partner | U.S.B.C. | $1,080 | California Central |
| Klee, Tuchin, Bogdanoff & Stern, LLP | Attorney | Partner | U.S.B.C. | $1,080 | California Central |
| Klee, Tuchin, Bogdanoff & Stern, LLP | Attorney | Counsel | U.S.B.C. | $650 | California Central |
| Klee, Tuchin, Bogdanoff & Stern, LLP | Attorney | Associate | U.S.B.C. | $395 | California Central |
| Klee, Tuchin, Bogdanoff & Stern, LLP | Attorney | Partner | U.S.B.C. | $675 | California Central |
| Klee, Tuchin, Bogdanoff & Stern, LLP | Attorney | Associate | U.S.B.C. | $440 | California Central |
| Klee, Tuchin, Bogdanoff & Stern, LLP | Attorney | Associate | U.S.B.C. | $475 | California Central |
| Klee, Tuchin, Bogdanoff & Stern, LLP | Attorney | Partner | U.S.B.C. | $1,080 | California Central |
| Klee, Tuchin, Bogdanoff & Stern, LLP | Attorney | Associate | U.S.B.C. | $395 | California Central |

Exhibit 6 - Page 54

| Klee, Tuchin, Bogdanoff & Stern, LLP | Attorney | Partner | U.S.B.C. | $675 | California Central |
|---|---|---|---|---|---|
| Klee, Tuchin, Bogdanoff & Stern, LLP | Attorney | Associate | U.S.B.C. | $475 | California Central |
| Klee, Tuchin, Bogdanoff & Stern, LLP | Attorney | Counsel | U.S.B.C. | $650 | California Central |
| Klee, Tuchin, Bogdanoff & Stern, LLP | Attorney | Partner | U.S.B.C. | $675 | California Central |
| Klee, Tuchin, Bogdanoff & Stern, LLP | Attorney | Partner | U.S.B.C. | $1,080 | California Central |
| Klee, Tuchin, Bogdanoff & Stern, LLP | Attorney | Partner | U.S.B.C. | $655 | California Central |
| Klee, Tuchin, Bogdanoff & Stern, LLP | Attorney | Partner | U.S.B.C. | $1,080 | California Central |
| Klee, Tuchin, Bogdanoff & Stern, LLP | Attorney | Partner | U.S.B.C. | $695 | California Central |
| Klee, Tuchin, Bogdanoff & Stern, LLP | Attorney | Associate | U.S.B.C. | $475 | California Central |
| Klee, Tuchin, Bogdanoff & Stern, LLP | Attorney | Associate | U.S.B.C. | $495 | California Central |
| Klee, Tuchin, Bogdanoff & Stern, LLP | Attorney | Associate | U.S.B.C. | $380 | California Central |
| Klee, Tuchin, Bogdanoff & Stern, LLP | Attorney | Associate | U.S.B.C. | $440 | California Central |
| Glaser Weil Fink Howard Avchen & Shapiro LLP | Attorney | Of Counsel | U.S.B.C. | $525 | California Central |
| Glaser Weil Fink Howard Avchen & Shapiro LLP | Attorney | Associate | U.S.B.C. | $375 | California Central |
| Glaser Weil Fink Howard Avchen & Shapiro LLP | Attorney | Associate | U.S.B.C. | $435 | California Central |
| Glaser Weil Fink Howard Avchen & Shapiro LLP | Attorney | Partner | U.S.B.C. | $570 | California Central |
| Glaser Weil Fink Howard Avchen & Shapiro LLP | Attorney | Partner | U.S.B.C. | $686 | California Central |

Exhibit 6 - Page 55

| | | | | | |
|---|---|---|---|---|---|
| Glaser Weil Fink Howard Avchen & Shapiro LLP | Attorney | Partner | U.S.B.C. | $749 | California Central |
| Glaser Weil Fink Howard Avchen & Shapiro LLP | Attorney | Associate | U.S.B.C. | $340 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Attorney | Of Counsel | U.S.B.C. | $695 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Attorney | Partner | U.S.B.C. | $650 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Attorney | Partner | U.S.B.C. | $895 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Attorney | Of Counsel | U.S.B.C. | $825 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Attorney | Of Counsel | U.S.B.C. | $695 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Attorney | Associate | U.S.B.C. | $495 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Attorney | Partner | U.S.B.C. | $825 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Attorney | Partner | U.S.B.C. | $975 | California Central |
| Klee, Tuchin, Bogdanoff & Stern, LLP | Attorney | Partner | U.S.B.C. | $655 | California Central |
| Klee, Tuchin, Bogdanoff & Stern, LLP | Attorney | Partner | U.S.B.C. | $795 | California Central |
| Klee, Tuchin, Bogdanoff & Stern, LLP | Attorney | Associate | U.S.B.C. | $450 | California Central |
| Klee, Tuchin, Bogdanoff & Stern, LLP | Attorney | Partner | U.S.B.C. | $1,075 | California Central |
| Klee, Tuchin, Bogdanoff & Stern, LLP | Attorney | Associate | U.S.B.C. | $475 | California Central |
| Klee, Tuchin, Bogdanoff & Stern, LLP | Attorney | Associate | U.S.B.C. | $395 | California Central |
| Klee, Tuchin, Bogdanoff & Stern, LLP | Attorney | Counsel | U.S.B.C. | $650 | California Central |

Exhibit 6 - Page 56

| | | | | | |
|---|---|---|---|---|---|
| Klee, Tuchin, Bogdanoff & Stern, LLP | Attorney | Partner | U.S.B.C. | $650 | California Central |
| Klee, Tuchin, Bogdanoff & Stern, LLP | Attorney | Partner | U.S.B.C. | $630 | California Central |
| Klee, Tuchin, Bogdanoff & Stern, LLP | Attorney | Partner | U.S.B.C. | $630 | California Central |
| Klee, Tuchin, Bogdanoff & Stern, LLP | Attorney | Partner | U.S.B.C. | $795 | California Central |
| Klee, Tuchin, Bogdanoff & Stern, LLP | Attorney | Partner | U.S.B.C. | $795 | California Central |
| Klee, Tuchin, Bogdanoff & Stern, LLP | Attorney | Partner | U.S.B.C. | $1,080 | California Central |
| Klee, Tuchin, Bogdanoff & Stern, LLP | Attorney | Partner | U.S.B.C. | $1,080 | California Central |
| Klee, Tuchin, Bogdanoff & Stern, LLP | Attorney | Associate | U.S.B.C. | $475 | California Central |
| Klee, Tuchin, Bogdanoff & Stern, LLP | Attorney | Associate | U.S.B.C. | $330 | California Central |
| Klee, Tuchin, Bogdanoff & Stern, LLP | Attorney | Associate | U.S.B.C. | $625 | California Central |
| Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP | Attorney | Attorney | U.S.B.C. | $540 | California Central |
| Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP | Attorney | Associate | U.S.B.C. | $430 | California Central |
| Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP | Attorney | Partner | U.S.B.C. | $450 | California Central |
| Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP | Attorney | Partner | U.S.B.C. | $620 | California Central |
| Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP | Attorney | Attorney | U.S.B.C. | $510 | California Central |
| Norton Rose Fulbright | Attorney | Partner | U.S.B.C. | $600 | California Central |
| Norton Rose Fulbright | Attorney | Partner | U.S.B.C. | $600 | California Central |
| Norton Rose Fulbright | Attorney | Associate | U.S.B.C. | $410 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Attorney | Partner | U.S.B.C. | $825 | California Central |

Exhibit 6 - Page 57

| | | | | | |
|---|---|---|---|---|---|
| Norton Rose Fulbright | Attorney | Partner | U.S.B.C. | $600 | California Central |
| Norton Rose Fulbright | Attorney | Partner | U.S.B.C. | $600 | California Central |
| Norton Rose Fulbright | Attorney | Associate | U.S.B.C. | $410 | California Central |
| Norton Rose Fulbright | Attorney | Partner | U.S.B.C. | $600 | California Central |
| Norton Rose Fulbright | Attorney | Associate | U.S.B.C. | $410 | California Central |
| Norton Rose Fulbright | Attorney | Partner | U.S.B.C. | $600 | California Central |
| Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP | Attorney | Attorney | U.S.B.C. | $670 | California Central |
| Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP | Attorney | Attorney | U.S.B.C. | $670 | California Central |
| Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP | Attorney | Partner | U.S.B.C. | $450 | California Central |
| Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP | Attorney | Partner | U.S.B.C. | $620 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Attorney | Partner | U.S.B.C. | $825 | California Central |
| Fulbright & Jaworski LLP | Attorney | Partner | U.S.B.C. | $600 | California Central |
| Fulbright & Jaworski LLP | Attorney | Associate | U.S.B.C. | $410 | California Central |
| Fulbright & Jaworski LLP | Attorney | Associate | U.S.B.C. | $510 | California Central |
| Fulbright & Jaworski LLP | Attorney | Partner | U.S.B.C. | $600 | California Central |
| Alston & Bird LLP | Attorney | Partner | U.S.B.C. | $685 | California Central |
| Alston & Bird LLP | Attorney | Counsel | U.S.B.C. | $795 | California Central |
| Alston & Bird LLP | Attorney | Associate | U.S.B.C. | $545 | California Central |

Exhibit 6 - Page 58

| Firm Name | Professional Type Desc | Court Type | Rate | Fee Application Year | Court Name |
|---|---|---|---|---|---|
| Jenner & Block LLP | Paraprofessional | U.S.B.C. | $275 | 2010 | California Central |
| Jenner & Block LLP | Paraprofessional | U.S.B.C. | $170 | 2010 | California Central |
| Venable LLP | Paraprofessional | U.S.B.C. | $205 | 2011 | California Central |
| Reed Smith LLP | Paraprofessional | U.S.B.C. | $345 | 2015 | California Central |
| Reed Smith LLP | Paraprofessional | U.S.B.C. | $325 | 2015 | California Central |
| Alston & Bird LLP | Paraprofessional | U.S.B.C. | $245 | 2015 | California Central |
| Alston & Bird LLP | Paraprofessional | U.S.B.C. | $255 | 2015 | California Central |
| DLA Piper LLP | Paraprofessional | U.S.B.C. | $238 | 2010 | California Central |
| DLA Piper LLP | Paraprofessional | U.S.B.C. | $229 | 2010 | California Central |
| Greenberg Glusker Fields Claman & Machtinger LLP | Paraprofessional | U.S.B.C. | $285 | 2013 | California Central |
| Greenberg Glusker Fields Claman & Machtinger LLP | Paraprofessional | U.S.B.C. | $320 | 2013 | California Central |
| Greenberg Glusker Fields Claman & Machtinger LLP | Paraprofessional | U.S.B.C. | $275 | 2013 | California Central |
| Greenberg Glusker Fields Claman & Machtinger LLP | Paraprofessional | U.S.B.C. | $200 | 2013 | California Central |
| Greenberg Glusker Fields Claman & Machtinger LLP | Paraprofessional | U.S.B.C. | $245 | 2013 | California Central |
| Greenberg Glusker Fields Claman & Machtinger LLP | Paraprofessional | U.S.B.C. | $245 | 2013 | California Central |
| Greenberg Glusker Fields Claman & Machtinger LLP | Paraprofessional | U.S.B.C. | $250 | 2013 | California Central |
| Greenberg Glusker Fields Claman & Machtinger LLP | Paraprofessional | U.S.B.C. | $250 | 2013 | California Central |
| Greenberg Glusker Fields Claman & Machtinger LLP | Paraprofessional | U.S.B.C. | $275 | 2013 | California Central |
| Greenberg Glusker Fields Claman & Machtinger LLP | Paraprofessional | U.S.B.C. | $100 | 2013 | California Central |
| Greenberg Glusker Fields Claman & Machtinger LLP | Paraprofessional | U.S.B.C. | $150 | 2013 | California Central |

Exhibit 6 - Page 59

| Firm | Type | Court | Rate | Year | Location |
|---|---|---|---|---|---|
| Greenberg Glusker Fields Claman & Machtinger LLP | Paraprofessional | U.S.B.C. | $170 | 2013 | California Central |
| Shulman Hodges & Bastian LLP | Paraprofessional | U.S.B.C. | $450 | 2011 | California Central |
| Shulman Hodges & Bastian LLP | Paraprofessional | U.S.B.C. | $175 | 2011 | California Central |
| Shulman Hodges & Bastian LLP | Paraprofessional | U.S.B.C. | $195 | 2011 | California Central |
| Shulman Hodges & Bastian LLP | Paraprofessional | U.S.B.C. | $150 | 2011 | California Central |
| Shulman Hodges & Bastian LLP | Paraprofessional | U.S.B.C. | $110 | 2011 | California Central |
| Shulman Hodges & Bastian LLP | Paraprofessional | U.S.B.C. | $185 | 2011 | California Central |
| Shulman Hodges & Bastian LLP | Paraprofessional | U.S.B.C. | $110 | 2014 | California Central |
| Shulman Hodges & Bastian LLP | Paraprofessional | U.S.B.C. | $150 | 2014 | California Central |
| Shulman Hodges & Bastian LLP | Paraprofessional | U.S.B.C. | $185 | 2014 | California Central |
| Shulman Hodges & Bastian LLP | Paraprofessional | U.S.B.C. | $185 | 2014 | California Central |
| Shulman Hodges & Bastian LLP | Paraprofessional | U.S.B.C. | $225 | 2014 | California Central |
| Shulman Hodges & Bastian LLP | Paraprofessional | U.S.B.C. | $225 | 2014 | California Central |
| Klee, Tuchin, Bogdanoff & Stern, | Paraprofessional | U.S.B.C. | $290 | 2015 | California Central |
| Klee, Tuchin, Bogdanoff & Stern, | Paraprofessional | U.S.B.C. | $290 | 2015 | California Central |
| Klee, Tuchin, Bogdanoff & Stern, | Paraprofessional | U.S.B.C. | $250 | 2012 | California Central |
| Klee, Tuchin, Bogdanoff & Stern, | Paraprofessional | U.S.B.C. | $290 | 2015 | California Central |
| Glaser Weil Fink Howard Avchen & Shapiro LLP | Paraprofessional | U.S.B.C. | $300 | 2015 | California Central |
| Shulman Hodges & Bastian LLP | Paraprofessional | U.S.B.C. | $225 | 2010 | California Central |
| Shulman Hodges & Bastian LLP | Paraprofessional | U.S.B.C. | $185 | 2010 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $305 | 2015 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $305 | 2015 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $205 | 2010 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $225 | 2010 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $225 | 2010 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $225 | 2010 | California Central |

Exhibit 6 - Page 60

| | | | | | |
|---|---|---|---|---|---|
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $195 | 2010 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $290 | 2014 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $295 | 2014 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $295 | 2014 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $250 | 2011 | California Central |
| Stutman, Treister & Glatt PC | Paraprofessional | U.S.B.C. | $240 | 2010 | California Central |
| Stutman, Treister & Glatt PC | Paraprofessional | U.S.B.C. | $240 | 2010 | California Central |
| Stutman, Treister & Glatt PC | Paraprofessional | U.S.B.C. | $240 | 2010 | California Central |
| Stutman, Treister & Glatt PC | Paraprofessional | U.S.B.C. | $200 | 2008 | California Central |
| Stutman, Treister & Glatt PC | Paraprofessional | U.S.B.C. | $200 | 2008 | California Central |
| Patton Boggs LLP | Paraprofessional | U.S.B.C. | $110 | 2009 | California Central |
| Patton Boggs LLP | Paraprofessional | U.S.B.C. | $215 | 2009 | California Central |
| Patton Boggs LLP | Paraprofessional | U.S.B.C. | $240 | 2009 | California Central |
| Patton Boggs LLP | Senior Paraprofessional | U.S.B.C. | $260 | 2009 | California Central |
| Patton Boggs LLP | Senior Paraprofessional | U.S.B.C. | $260 | 2008 | California Central |
| Patton Boggs LLP | Paraprofessional | U.S.B.C. | $120 | 2008 | California Central |
| Patton Boggs LLP | Senior Paraprofessional | U.S.B.C. | $215 | 2008 | California Central |
| Patton Boggs LLP | Paraprofessional | U.S.B.C. | $215 | 2008 | California Central |
| Patton Boggs LLP | Paraprofessional | U.S.B.C. | $195 | 2008 | California Central |
| Patton Boggs LLP | Senior Paraprofessional | U.S.B.C. | $210 | 2010 | California Central |
| Patton Boggs LLP | Senior Paraprofessional | U.S.B.C. | $200 | 2010 | California Central |
| Patton Boggs LLP | Paraprofessional | U.S.B.C. | $240 | 2010 | California Central |
| Patton Boggs LLP | Paraprofessional | U.S.B.C. | $215 | 2010 | California Central |
| Patton Boggs LLP | Paraprofessional | U.S.B.C. | $195 | 2010 | California Central |
| Patton Boggs LLP | Paraprofessional | U.S.B.C. | $120 | 2010 | California Central |
| Patton Boggs LLP | Senior Paraprofessional | U.S.B.C. | $265 | 2010 | California Central |
| Patton Boggs LLP | Paraprofessional | U.S.B.C. | $110 | 2010 | California Central |
| Patton Boggs LLP | Senior Paraprofessional | U.S.B.C. | $220 | 2010 | California Central |
| Patton Boggs LLP | Senior Paraprofessional | U.S.B.C. | $215 | 2010 | California Central |
| Patton Boggs LLP | Senior Paraprofessional | U.S.B.C. | $220 | 2010 | California Central |

Exhibit 6 - Page 61

| | | | | | |
|---|---|---|---|---|---|
| Klee, Tuchin, Bogdanoff & Stern, | Paraprofessional | U.S.B.C. | $215 | 2009 | California Central |
| Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP | Paraprofessional | U.S.B.C. | $220 | 2010 | California Central |
| Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP | Paraprofessional | U.S.B.C. | $220 | 2010 | California Central |
| Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP | Paraprofessional | U.S.B.C. | $220 | 2010 | California Central |
| Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP | Paraprofessional | U.S.B.C. | $190 | 2008 | California Central |
| Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP | Paraprofessional | U.S.B.C. | $190 | 2008 | California Central |
| Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP | Paraprofessional | U.S.B.C. | $190 | 2008 | California Central |
| Klee, Tuchin, Bogdanoff & Stern, | Paraprofessional | U.S.B.C. | $250 | 2010 | California Central |
| Klee, Tuchin, Bogdanoff & Stern, | Paraprofessional | U.S.B.C. | $290 | 2015 | California Central |
| Klee, Tuchin, Bogdanoff & Stern, | Paraprofessional | U.S.B.C. | $195 | 2008 | California Central |
| BLAKELEY & BLAKELEY | Paraprofessional | U.S.B.C. | $145 | 2014 | California Central |
| Norton Rose Fulbright | Senior Paraprofessional | U.S.B.C. | $295 | 2014 | California Central |
| Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP | Paraprofessional | U.S.B.C. | $240 | 2015 | California Central |
| Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP | Paraprofessional | U.S.B.C. | $240 | 2015 | California Central |
| Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP | Paraprofessional | U.S.B.C. | $240 | 2015 | California Central |
| Norton Rose Fulbright | Senior Paraprofessional | U.S.B.C. | $310 | 2015 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $305 | 2015 | California Central |
| Norton Rose Fulbright | Senior Paraprofessional | U.S.B.C. | $310 | 2015 | California Central |
| Norton Rose Fulbright | Senior Paraprofessional | U.S.B.C. | $310 | 2015 | California Central |
| Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP | Paraprofessional | U.S.B.C. | $240 | 2015 | California Central |
| Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP | Paraprofessional | U.S.B.C. | $240 | 2015 | California Central |
| Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP | Paraprofessional | U.S.B.C. | $240 | 2015 | California Central |

Exhibit 6 - Page 62

| Firm | Role | Court | Rate | Year | District |
|---|---|---|---|---|---|
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $295 | 2014 | California Central |
| Reed Smith LLP | Paraprofessional | U.S.B.C. | $275 | 2008 | California Central |
| Reed Smith LLP | Paraprofessional | U.S.B.C. | $235 | 2008 | California Central |
| Reed Smith LLP | Paraprofessional | U.S.B.C. | $290 | 2008 | California Central |
| Venable LLP | Paraprofessional | U.S.B.C. | $310 | 2014 | California Central |
| Reed Smith LLP | Paraprofessional | U.S.B.C. | $235 | 2010 | California Central |
| Reed Smith LLP | Paraprofessional | U.S.B.C. | $270 | 2010 | California Central |
| Reed Smith LLP | Paraprofessional | U.S.B.C. | $300 | 2010 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $305 | 2015 | California Central |
| Peitzman Weg LLP | Paraprofessional | U.S.B.C. | $195 | 2012 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $295 | 2014 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $295 | 2014 | California Central |
| Fulbright & Jaworski LLP | Senior Paraprofessional | U.S.B.C. | $295 | 2014 | California Central |
| Fulbright & Jaworski LLP | Senior Paraprofessional | U.S.B.C. | $295 | 2014 | California Central |
| Fulbright & Jaworski LLP | Paraprofessional | U.S.B.C. | $275 | 2015 | California Central |
| Fulbright & Jaworski LLP | Senior Paraprofessional | U.S.B.C. | $310 | 2015 | California Central |
| Skadden, Arps, Slate, Meagher & Flom LLP | Paraprofessional | U.S.B.C. | $295 | 2010 | California Central |
| Skadden, Arps, Slate, Meagher & Flom LLP | Paraprofessional | U.S.B.C. | $175 | 2010 | California Central |
| Skadden, Arps, Slate, Meagher & Flom LLP | Paraprofessional | U.S.B.C. | $100 | 2010 | California Central |
| Skadden, Arps, Slate, Meagher & Flom LLP | Paraprofessional | U.S.B.C. | $295 | 2010 | California Central |
| Skadden, Arps, Slate, Meagher & Flom LLP | Paraprofessional | U.S.B.C. | $290 | 2010 | California Central |
| Skadden, Arps, Slate, Meagher & Flom LLP | Paraprofessional | U.S.B.C. | $90 | 2010 | California Central |
| Skadden, Arps, Slate, Meagher & Flom LLP | Paraprofessional | U.S.B.C. | $220 | 2010 | California Central |

Exhibit 6 - Page 63

| Firm | Role | Court | Rate | Year | District |
|---|---|---|---|---|---|
| Skadden, Arps, Slate, Meagher & Flom LLP | Paraprofessional | U.S.B.C. | $220 | 2010 | California Central |
| Skadden, Arps, Slate, Meagher & Flom LLP | Paraprofessional | U.S.B.C. | $80 | 2010 | California Central |
| Klee, Tuchin, Bogdanoff & Stern, | Paraprofessional | U.S.B.C. | $215 | 2010 | California Central |
| Klee, Tuchin, Bogdanoff & Stern, | Paraprofessional | U.S.B.C. | $215 | 2010 | California Central |
| Klee, Tuchin, Bogdanoff & Stern, | Paraprofessional | U.S.B.C. | $215 | 2014 | California Central |
| Klee, Tuchin, Bogdanoff & Stern, | Paraprofessional | U.S.B.C. | $215 | 2014 | California Central |
| Klee, Tuchin, Bogdanoff & Stern, | Paraprofessional | U.S.B.C. | $215 | 2014 | California Central |
| Klee, Tuchin, Bogdanoff & Stern, | Paraprofessional | U.S.B.C. | $215 | 2014 | California Central |
| Jenner & Block LLP | Paraprofessional | U.S.B.C. | $310 | 2014 | California Central |
| Danning, Gill, Diamond & Kollitz, | Paraprofessional | U.S.B.C. | $195 | 2013 | California Central |
| Danning, Gill, Diamond & Kollitz, | Paraprofessional | U.S.B.C. | $195 | 2013 | California Central |
| Danning, Gill, Diamond & Kollitz, | Paraprofessional | U.S.B.C. | $230 | 2013 | California Central |
| Danning, Gill, Diamond & Kollitz, | Paraprofessional | U.S.B.C. | $230 | 2013 | California Central |
| Klee, Tuchin, Bogdanoff & Stern, | Paraprofessional | U.S.B.C. | $215 | 2010 | California Central |
| Skadden, Arps, Slate, Meagher & Flom LLP | Paraprofessional | U.S.B.C. | $80 | 2014 | California Central |
| Skadden, Arps, Slate, Meagher & Flom LLP | Paraprofessional | U.S.B.C. | $90 | 2014 | California Central |
| Skadden, Arps, Slate, Meagher & Flom LLP | Paraprofessional | U.S.B.C. | $100 | 2014 | California Central |
| Skadden, Arps, Slate, Meagher & Flom LLP | Paraprofessional | U.S.B.C. | $220 | 2014 | California Central |
| Skadden, Arps, Slate, Meagher & Flom LLP | Paraprofessional | U.S.B.C. | $175 | 2014 | California Central |
| Skadden, Arps, Slate, Meagher & Flom LLP | Paraprofessional | U.S.B.C. | $80 | 2014 | California Central |
| Skadden, Arps, Slate, Meagher & Flom LLP | Paraprofessional | U.S.B.C. | $295 | 2014 | California Central |
| Skadden, Arps, Slate, Meagher & Flom LLP | Paraprofessional | U.S.B.C. | $205 | 2014 | California Central |
| Skadden, Arps, Slate, Meagher & Flom LLP | Paraprofessional | U.S.B.C. | $205 | 2014 | California Central |

Exhibit 6 - Page 64

| | | | | | |
|---|---|---|---|---|---|
| Skadden, Arps, Slate, Meagher & Flom LLP | Paraprofessional | U.S.B.C. | $295 | 2014 | California Central |
| Skadden, Arps, Slate, Meagher & Flom LLP | Paraprofessional | U.S.B.C. | $170 | 2014 | California Central |
| Skadden, Arps, Slate, Meagher & Flom LLP | Paraprofessional | U.S.B.C. | $290 | 2014 | California Central |
| Skadden, Arps, Slate, Meagher & Flom LLP | Paraprofessional | U.S.B.C. | $220 | 2014 | California Central |
| Skadden, Arps, Slate, Meagher & Flom LLP | Paraprofessional | U.S.B.C. | $220 | 2014 | California Central |
| Danning, Gill, Diamond & Kollitz, | Paraprofessional | U.S.B.C. | $185 | 2009 | California Central |
| Danning, Gill, Diamond & Kollitz, | Paraprofessional | U.S.B.C. | $185 | 2009 | California Central |
| Danning, Gill, Diamond & Kollitz, | Paraprofessional | U.S.B.C. | $185 | 2009 | California Central |
| Jenner & Block LLP | Paraprofessional | U.S.B.C. | $285 | 2012 | California Central |
| Jenner & Block LLP | Paraprofessional | U.S.B.C. | $270 | 2011 | California Central |
| Landau, Gottfried & Berger, LLP | Paraprofessional | U.S.B.C. | $150 | 2010 | California Central |
| Osler Hoskin & Harcourt LLP | Paraprofessional | U.S.B.C. | $400 | 2013 | California Central |
| Osler Hoskin & Harcourt LLP | Paraprofessional | U.S.B.C. | $400 | 2014 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $205 | 2010 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $235 | 2010 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $205 | 2010 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $185 | 2010 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $225 | 2010 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $225 | 2010 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $235 | 2010 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $295 | 2013 | California Central |

Exhibit 6 - Page 65

| | | | | | |
|---|---|---|---|---|---|
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $295 | 2013 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $265 | 2013 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $275 | 2013 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $295 | 2013 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $295 | 2013 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $295 | 2013 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $295 | 2013 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $295 | 2013 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $295 | 2013 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $295 | 2013 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $295 | 2013 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $295 | 2014 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $265 | 2014 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $295 | 2014 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $295 | 2014 | California Central |
| Ringstad & Sanders LLP | Paraprofessional | U.S.B.C. | $150 | 2011 | California Central |
| Ringstad & Sanders LLP | Paraprofessional | U.S.B.C. | $160 | 2011 | California Central |
| Ringstad & Sanders LLP | Paraprofessional | U.S.B.C. | $160 | 2011 | California Central |
| Ringstad & Sanders LLP | Paraprofessional | U.S.B.C. | $200 | 2011 | California Central |
| Ringstad & Sanders LLP | Paraprofessional | U.S.B.C. | $160 | 2011 | California Central |

Exhibit 6 - Page 66

| | | | | | |
|---|---|---|---|---|---|
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $295 | 2014 | California Central |
| Winston & Strawn LLP | Paraprofessional | U.S.B.C. | $203 | 2010 | California Central |
| Osler Hoskin & Harcourt LLP | Paraprofessional | U.S.B.C. | $400 | 2013 | California Central |
| Osler Hoskin & Harcourt LLP | Paraprofessional | U.S.B.C. | $400 | 2013 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $265 | 2014 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $295 | 2014 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $295 | 2014 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $295 | 2014 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $295 | 2014 | California Central |
| Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP | Paraprofessional | U.S.B.C. | $230 | 2011 | California Central |
| Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP | Paraprofessional | U.S.B.C. | $230 | 2011 | California Central |
| Gibson Dunn & Crutcher, LLP | Legal Assistant | U.S.B.C. | $130 | 2009 | California Central |
| Gibson Dunn & Crutcher, LLP | Paraprofessional | U.S.B.C. | $160 | 2009 | California Central |
| Gibson Dunn & Crutcher, LLP | Paraprofessional | U.S.B.C. | $235 | 2009 | California Central |
| Gibson Dunn & Crutcher, LLP | Paraprofessional | U.S.B.C. | $235 | 2009 | California Central |
| Gibson Dunn & Crutcher, LLP | Paraprofessional | U.S.B.C. | $290 | 2009 | California Central |
| Gibson Dunn & Crutcher, LLP | Senior Paraprofessional | U.S.B.C. | $350 | 2009 | California Central |
| Gibson Dunn & Crutcher, LLP | Senior Paraprofessional | U.S.B.C. | $355 | 2009 | California Central |
| Gibson Dunn & Crutcher, LLP | Paraprofessional | U.S.B.C. | $290 | 2009 | California Central |
| Venable LLP | Paraprofessional | U.S.B.C. | $190 | 2010 | California Central |
| Venable LLP | Paraprofessional | U.S.B.C. | $265 | 2010 | California Central |
| Venable LLP | Paraprofessional | U.S.B.C. | $290 | 2010 | California Central |
| Venable LLP | Paraprofessional | U.S.B.C. | $200 | 2010 | California Central |
| Venable LLP | Paraprofessional | U.S.B.C. | $285 | 2010 | California Central |
| DLA Piper LLP | Paraprofessional | U.S.B.C. | $229 | 2009 | California Central |
| DLA Piper LLP | Paraprofessional | U.S.B.C. | $238 | 2009 | California Central |
| Jenner & Block LLP | Paraprofessional | U.S.B.C. | $270 | 2011 | California Central |

Exhibit 6 - Page 67

Case 2:19-cv-01631-DOC-DFM   Document 307-6   Filed 02/06/25   Page 320 of 484   Page ID #:33695

| Firm | Role | Court | Rate | Year | District |
|---|---|---|---|---|---|
| Jenner & Block LLP | Paraprofessional | U.S.B.C. | $160 | 2011 | California Central |
| Jenner & Block LLP | Paraprofessional | U.S.B.C. | $170 | 2011 | California Central |
| Jenner & Block LLP | Paraprofessional | U.S.B.C. | $280 | 2011 | California Central |
| Jenner & Block LLP | Paraprofessional | U.S.B.C. | $270 | 2011 | California Central |
| Arent Fox LLP | Paraprofessional | U.S.B.C. | $165 | 2011 | California Central |
| Arent Fox LLP | Legal Assistant | U.S.B.C. | $210 | 2011 | California Central |
| Dewey & Leboeuf LLP | Paraprofessional | U.S.B.C. | $225 | 2011 | California Central |
| Dewey & Leboeuf LLP | Paraprofessional | U.S.B.C. | $525 | 2011 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $205 | 2010 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $205 | 2010 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $150 | 2010 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $225 | 2010 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $235 | 2010 | California Central |
| Morgan Lewis & Bockius, LLP | Paraprofessional | U.S.B.C. | $255 | 2011 | California Central |
| Morgan Lewis & Bockius, LLP | Paraprofessional | U.S.B.C. | $185 | 2011 | California Central |
| Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP | Paraprofessional | U.S.B.C. | $220 | 2011 | California Central |
| Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP | Paraprofessional | U.S.B.C. | $220 | 2011 | California Central |
| Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP | Paraprofessional | U.S.B.C. | $220 | 2011 | California Central |
| Foley & Lardner LLP | Paraprofessional | U.S.B.C. | $215 | 2011 | California Central |
| Foley & Lardner LLP | Paraprofessional | U.S.B.C. | $80 | 2011 | California Central |
| Foley & Lardner LLP | Paraprofessional | U.S.B.C. | $235 | 2011 | California Central |
| Foley & Lardner LLP | Paraprofessional | U.S.B.C. | $190 | 2011 | California Central |
| Foley & Lardner LLP | Paraprofessional | U.S.B.C. | $205 | 2011 | California Central |
| Landau, Gottfried & Berger, LLP | Paraprofessional | U.S.B.C. | $165 | 2011 | California Central |
| Landau, Gottfried & Berger, LLP | Paraprofessional | U.S.B.C. | $150 | 2012 | California Central |
| Landau, Gottfried & Berger, LLP | Paraprofessional | U.S.B.C. | $150 | 2012 | California Central |
| Landau, Gottfried & Berger, LLP | Paraprofessional | U.S.B.C. | $150 | 2012 | California Central |

Exhibit 6 - Page 68

| Firm | Role | Court | Rate | Year | District |
|---|---|---|---|---|---|
| Landau, Gottfried & Berger, LLP | Paraprofessional | U.S.B.C. | $165 | 2011 | California Central |
| Landau, Gottfried & Berger, LLP | Paraprofessional | U.S.B.C. | $165 | 2011 | California Central |
| Landau, Gottfried & Berger, LLP | Paraprofessional | U.S.B.C. | $165 | 2011 | California Central |
| Landau, Gottfried & Berger, LLP | Paraprofessional | U.S.B.C. | $165 | 2011 | California Central |
| Landau, Gottfried & Berger, LLP | Paraprofessional | U.S.B.C. | $165 | 2011 | California Central |
| Landau, Gottfried & Berger, LLP | Paraprofessional | U.S.B.C. | $150 | 2011 | California Central |
| Landau, Gottfried & Berger, LLP | Paraprofessional | U.S.B.C. | $150 | 2010 | California Central |
| Landau, Gottfried & Berger, LLP | Paraprofessional | U.S.B.C. | $150 | 2010 | California Central |
| Landau, Gottfried & Berger, LLP | Paraprofessional | U.S.B.C. | $150 | 2010 | California Central |
| Landau, Gottfried & Berger, LLP | Paraprofessional | U.S.B.C. | $150 | 2010 | California Central |
| Landau, Gottfried & Berger, LLP | Paraprofessional | U.S.B.C. | $150 | 2010 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $295 | 2014 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $295 | 2014 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $290 | 2014 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $295 | 2014 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $295 | 2014 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $290 | 2014 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $295 | 2014 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $295 | 2014 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $295 | 2013 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $265 | 2013 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $90 | 2013 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $295 | 2013 | California Central |

Exhibit 6 - Page 69

| Firm | Role | Court | Rate | Year | District |
|---|---|---|---|---|---|
| Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP | Paraprofessional | U.S.B.C. | $240 | 2013 | California Central |
| Sheppard Mullin Richter & Hampton LLP | Paraprofessional | U.S.B.C. | $195 | 2013 | California Central |
| Sheppard Mullin Richter & Hampton LLP | Paraprofessional | U.S.B.C. | $195 | 2013 | California Central |
| Sheppard Mullin Richter & Hampton LLP | Paraprofessional | U.S.B.C. | $50 | 2013 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $290 | 2014 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $265 | 2014 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $295 | 2014 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $295 | 2014 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $295 | 2014 | California Central |
| Arent Fox LLP | Paraprofessional | U.S.B.C. | $165 | 2014 | California Central |
| Arent Fox LLP | Paraprofessional | U.S.B.C. | $210 | 2014 | California Central |
| Arent Fox LLP | Paraprofessional | U.S.B.C. | $195 | 2014 | California Central |
| Arent Fox LLP | Paraprofessional | U.S.B.C. | $195 | 2014 | California Central |
| Arent Fox LLP | Paraprofessional | U.S.B.C. | $205 | 2014 | California Central |
| Arent Fox LLP | Paraprofessional | U.S.B.C. | $245 | 2014 | California Central |
| Arent Fox LLP | Paraprofessional | U.S.B.C. | $270 | 2014 | California Central |
| Arent Fox LLP | Paraprofessional | U.S.B.C. | $285 | 2014 | California Central |
| Arent Fox LLP | Paraprofessional | U.S.B.C. | $230 | 2014 | California Central |
| Arent Fox LLP | Paraprofessional | U.S.B.C. | $310 | 2014 | California Central |
| Arent Fox LLP | Paraprofessional | U.S.B.C. | $305 | 2014 | California Central |
| Arent Fox LLP | Paraprofessional | U.S.B.C. | $315 | 2014 | California Central |
| Stutman, Treister & Glatt PC | Paraprofessional | U.S.B.C. | $225 | 2014 | California Central |
| Stutman, Treister & Glatt PC | Paraprofessional | U.S.B.C. | $205 | 2014 | California Central |
| Klee, Tuchin, Bogdanoff & Stern, | Paraprofessional | U.S.B.C. | $260 | 2014 | California Central |
| Fulbright & Jaworski LLP | Senior Paraprofessional | U.S.B.C. | $295 | 2014 | California Central |
| Fulbright & Jaworski LLP | Senior Paraprofessional | U.S.B.C. | $295 | 2014 | California Central |

Exhibit 6 - Page 70

| Firm | Role | Court | Rate | Year | District |
|---|---|---|---|---|---|
| Fulbright & Jaworski LLP | Senior Paraprofessional | U.S.B.C. | $295 | 2014 | California Central |
| Fulbright & Jaworski LLP | Senior Paraprofessional | U.S.B.C. | $295 | 2014 | California Central |
| Fulbright & Jaworski LLP | Paraprofessional | U.S.B.C. | $207 | 2014 | California Central |
| Fulbright & Jaworski LLP | Paraprofessional | U.S.B.C. | $295 | 2014 | California Central |
| Fulbright & Jaworski LLP | Senior Paraprofessional | U.S.B.C. | $295 | 2014 | California Central |
| Fulbright & Jaworski LLP | Paraprofessional | U.S.B.C. | $175 | 2014 | California Central |
| Fulbright & Jaworski LLP | Paraprofessional | U.S.B.C. | $175 | 2014 | California Central |
| Fulbright & Jaworski LLP | Senior Paraprofessional | U.S.B.C. | $280 | 2013 | California Central |
| Archer Norris | Paraprofessional | U.S.B.C. | $100 | 2013 | California Central |
| Arent Fox LLP | Paraprofessional | U.S.B.C. | $310 | 2014 | California Central |
| Arent Fox LLP | Paraprofessional | U.S.B.C. | $300 | 2014 | California Central |
| Arent Fox LLP | Paraprofessional | U.S.B.C. | $165 | 2014 | California Central |
| Arent Fox LLP | Paraprofessional | U.S.B.C. | $210 | 2014 | California Central |
| Arent Fox LLP | Paraprofessional | U.S.B.C. | $295 | 2014 | California Central |
| Arent Fox LLP | Paraprofessional | U.S.B.C. | $165 | 2014 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $290 | 2014 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $406 | 2014 | California Central |
| Fulbright & Jaworski LLP | Senior Paraprofessional | U.S.B.C. | $295 | 2014 | California Central |
| Fulbright & Jaworski LLP | Senior Paraprofessional | U.S.B.C. | $295 | 2014 | California Central |
| Fulbright & Jaworski LLP | Senior Paraprofessional | U.S.B.C. | $295 | 2014 | California Central |
| Sullivan, Hill, Lewin, Rez & Engel | Paraprofessional | U.S.B.C. | $135 | 2014 | California Central |
| Venable LLP | Paraprofessional | U.S.B.C. | $295 | 2014 | California Central |
| Venable LLP | Paraprofessional | U.S.B.C. | $290 | 2014 | California Central |
| Arent Fox LLP | Legal Assistant | U.S.B.C. | $155 | 2014 | California Central |
| Glaser Weil Fink Howard Avchen & Shapiro LLP | Paraprofessional | U.S.B.C. | $250 | 2013 | California Central |
| Klee, Tuchin, Bogdanoff & Stern, | Paraprofessional | U.S.B.C. | $250 | 2013 | California Central |
| Klee, Tuchin, Bogdanoff & Stern, | Paraprofessional | U.S.B.C. | $250 | 2013 | California Central |
| Klee, Tuchin, Bogdanoff & Stern, | Paraprofessional | U.S.B.C. | $260 | 2014 | California Central |
| Klee, Tuchin, Bogdanoff & Stern, | Paraprofessional | U.S.B.C. | $260 | 2013 | California Central |
| Sidley Austin LLP | Senior Legal Assistant | U.S.B.C. | $300 | 2012 | California Central |
| Sidley Austin LLP | Legal Assistant | U.S.B.C. | $240 | 2012 | California Central |

Case 2:19-cv-01632-DOC-DFM   Document 307-6   Filed 02/06/25   Page 323 of 484   Page ID #:33698

Exhibit 6 - Page 71

Case 2:19-cv-01632-DOC-DFM   Document 307-6   Filed 08/06/25   Page 324 of 484   Page ID #:3699

| | | | | | |
|---|---|---|---|---|---|
| Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP | Paraprofessional | U.S.B.C. | $240 | 2013 | California Central |
| Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP | Paraprofessional | U.S.B.C. | $240 | 2013 | California Central |
| Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP | Paraprofessional | U.S.B.C. | $240 | 2013 | California Central |
| Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP | Paraprofessional | U.S.B.C. | $240 | 2012 | California Central |
| Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP | Paraprofessional | U.S.B.C. | $240 | 2012 | California Central |
| Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP | Paraprofessional | U.S.B.C. | $240 | 2012 | California Central |
| Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP | Paraprofessional | U.S.B.C. | $240 | 2012 | California Central |
| Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP | Paraprofessional | U.S.B.C. | $240 | 2012 | California Central |
| Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP | Paraprofessional | U.S.B.C. | $240 | 2012 | California Central |
| Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP | Paraprofessional | U.S.B.C. | $240 | 2014 | California Central |
| Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP | Paraprofessional | U.S.B.C. | $230 | 2013 | California Central |
| Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP | Paraprofessional | U.S.B.C. | $230 | 2013 | California Central |
| Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP | Paraprofessional | U.S.B.C. | $240 | 2013 | California Central |
| Venable LLP | Paraprofessional | U.S.B.C. | $285 | 2012 | California Central |
| Venable LLP | Paraprofessional | U.S.B.C. | $285 | 2012 | California Central |
| Venable LLP | Paraprofessional | U.S.B.C. | $285 | 2012 | California Central |
| Venable LLP | Paraprofessional | U.S.B.C. | $285 | 2012 | California Central |
| Venable LLP | Paraprofessional | U.S.B.C. | $285 | 2012 | California Central |
| Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP | Paraprofessional | U.S.B.C. | $240 | 2012 | California Central |
| Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP | Paraprofessional | U.S.B.C. | $230 | 2012 | California Central |

Exhibit 6 - Page 72

| Firm | Role | Court | Rate | Year | District |
|---|---|---|---|---|---|
| Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP | Paraprofessional | U.S.B.C. | $230 | 2012 | California Central |
| Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP | Paraprofessional | U.S.B.C. | $240 | 2012 | California Central |
| Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP | Paraprofessional | U.S.B.C. | $230 | 2012 | California Central |
| Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP | Paraprofessional | U.S.B.C. | $230 | 2012 | California Central |
| Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP | Paraprofessional | U.S.B.C. | $240 | 2012 | California Central |
| Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP | Paraprofessional | U.S.B.C. | $200 | 2012 | California Central |
| Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP | Paraprofessional | U.S.B.C. | $230 | 2012 | California Central |
| Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP | Paraprofessional | U.S.B.C. | $230 | 2012 | California Central |
| Reed Smith LLP | Paraprofessional | U.S.B.C. | $315 | 2014 | California Central |
| Danning, Gill, Diamond & Kollitz, | Paraprofessional | U.S.B.C. | $195 | 2011 | California Central |
| Danning, Gill, Diamond & Kollitz, | Paraprofessional | U.S.B.C. | $230 | 2011 | California Central |
| Danning, Gill, Diamond & Kollitz, | Paraprofessional | U.S.B.C. | $195 | 2011 | California Central |
| Fulbright & Jaworski LLP | Paraprofessional | U.S.B.C. | $295 | 2014 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $295 | 2014 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $295 | 2014 | California Central |
| Fulbright & Jaworski LLP | Paraprofessional | U.S.B.C. | $295 | 2014 | California Central |
| BLAKELEY & BLAKELEY | Paraprofessional | U.S.B.C. | $145 | 2013 | California Central |
| BLAKELEY & BLAKELEY | Paraprofessional | U.S.B.C. | $145 | 2014 | California Central |
| BLAKELEY & BLAKELEY | Legal Assistant | U.S.B.C. | $65 | 2014 | California Central |
| BLAKELEY & BLAKELEY | Legal Assistant | U.S.B.C. | $65 | 2014 | California Central |
| Venable LLP | Paraprofessional | U.S.B.C. | $300 | 2013 | California Central |
| Venable LLP | Paraprofessional | U.S.B.C. | $290 | 2013 | California Central |
| Arent Fox LLP | Legal Assistant | U.S.B.C. | $210 | 2013 | California Central |
| Arent Fox LLP | Paraprofessional | U.S.B.C. | $150 | 2013 | California Central |

Exhibit 6 - Page 73

| | | | | | |
|---|---|---|---|---|---|
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $295 | 2013 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $265 | 2013 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $295 | 2013 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $90 | 2013 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $295 | 2013 | California Central |
| Fulbright & Jaworski LLP | Senior Paraprofessional | U.S.B.C. | $295 | 2014 | California Central |
| Fulbright & Jaworski LLP | Paraprofessional | U.S.B.C. | $295 | 2013 | California Central |
| Fulbright & Jaworski LLP | Paraprofessional | U.S.B.C. | $265 | 2013 | California Central |
| Fulbright & Jaworski LLP | Senior Paraprofessional | U.S.B.C. | $280 | 2013 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $275 | 2013 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $275 | 2013 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $275 | 2013 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $275 | 2013 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $275 | 2013 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $275 | 2013 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $295 | 2013 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $295 | 2013 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $295 | 2013 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $295 | 2013 | California Central |

Exhibit 6 - Page 74

| | | | | | |
|---|---|---|---|---|---|
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $275 | 2013 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $275 | 2013 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $295 | 2013 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $275 | 2013 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $275 | 2013 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $295 | 2013 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $275 | 2013 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $275 | 2013 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $275 | 2013 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $295 | 2013 | California Central |
| Fulbright & Jaworski LLP | Senior Paraprofessional | U.S.B.C. | $280 | 2013 | California Central |
| Fulbright & Jaworski LLP | Paraprofessional | U.S.B.C. | $280 | 2013 | California Central |
| Fulbright & Jaworski LLP | Paraprofessional | U.S.B.C. | $280 | 2013 | California Central |
| Fulbright & Jaworski LLP | Paraprofessional | U.S.B.C. | $250 | 2013 | California Central |
| Fulbright & Jaworski LLP | Paraprofessional | U.S.B.C. | $280 | 2013 | California Central |
| Fulbright & Jaworski LLP | Paraprofessional | U.S.B.C. | $295 | 2013 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $275 | 2012 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $275 | 2012 | California Central |
| Fulbright & Jaworski LLP | Paraprofessional | U.S.B.C. | $280 | 2013 | California Central |
| Fulbright & Jaworski LLP | Paraprofessional | U.S.B.C. | $265 | 2013 | California Central |
| Fulbright & Jaworski LLP | Paraprofessional | U.S.B.C. | $295 | 2013 | California Central |
| Fulbright & Jaworski LLP | Paraprofessional | U.S.B.C. | $295 | 2013 | California Central |
| Fulbright & Jaworski LLP | Paraprofessional | U.S.B.C. | $280 | 2013 | California Central |

Exhibit 6 - Page 75

| Fulbright & Jaworski LLP | Paraprofessional | U.S.B.C. | $280 | 2013 | California Central |
|---|---|---|---|---|---|
| Fulbright & Jaworski LLP | Paraprofessional | U.S.B.C. | $295 | 2013 | California Central |
| Fulbright & Jaworski LLP | Paraprofessional | U.S.B.C. | $280 | 2013 | California Central |
| Fulbright & Jaworski LLP | Paraprofessional | U.S.B.C. | $295 | 2013 | California Central |
| Fulbright & Jaworski LLP | Paraprofessional | U.S.B.C. | $295 | 2013 | California Central |
| Fulbright & Jaworski LLP | Paraprofessional | U.S.B.C. | $280 | 2013 | California Central |
| Fulbright & Jaworski LLP | Paraprofessional | U.S.B.C. | $295 | 2013 | California Central |
| Fulbright & Jaworski LLP | Paraprofessional | U.S.B.C. | $265 | 2012 | California Central |
| Irell & Manella LLP | Senior Legal Assistant | U.S.B.C. | $225 | 2013 | California Central |
| Irell & Manella LLP | Senior Paraprofessional | U.S.B.C. | $225 | 2013 | California Central |
| Irell & Manella LLP | Senior Legal Assistant | U.S.B.C. | $225 | 2013 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $295 | 2013 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $275 | 2013 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $235 | 2013 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $275 | 2013 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $245 | 2013 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $275 | 2013 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $275 | 2013 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $290 | 2013 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $150 | 2013 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $240 | 2013 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $275 | 2013 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $295 | 2013 | California Central |

Exhibit 6 - Page 76

Case 2:19-cv-01582-DOC-DFM   Document 387-6   Filed 09/06/25   Page 329 of 484
Page ID #:33604

| Firm | Role | Court | Rate | Year | District |
|---|---|---|---|---|---|
| Buchalter Nemer | Paraprofessional | U.S.B.C. | $150 | 2011 | California Central |
| Buchalter Nemer | Paraprofessional | U.S.B.C. | $150 | 2011 | California Central |
| Best Best & Krieger LLP | Paraprofessional | U.S.B.C. | $219 | 2011 | California Central |
| Best Best & Krieger LLP | Paraprofessional | U.S.B.C. | $205 | 2011 | California Central |
| Best Best & Krieger LLP | Paraprofessional | U.S.B.C. | $120 | 2011 | California Central |
| Best Best & Krieger LLP | Paraprofessional | U.S.B.C. | $221 | 2011 | California Central |
| Best Best & Krieger LLP | Paraprofessional | U.S.B.C. | $214 | 2011 | California Central |
| Best Best & Krieger LLP | Paraprofessional | U.S.B.C. | $220 | 2011 | California Central |
| Patton Boggs LLP | Paraprofessional | U.S.B.C. | $190 | 2011 | California Central |
| Patton Boggs LLP | Paraprofessional | U.S.B.C. | $215 | 2011 | California Central |
| Patton Boggs LLP | Paraprofessional | U.S.B.C. | $130 | 2011 | California Central |
| Greenberg Traurig LLP | Paraprofessional | U.S.B.C. | $100 | 2013 | California Central |
| Fulbright & Jaworski LLP | Paraprofessional | U.S.B.C. | $295 | 2013 | California Central |
| Fulbright & Jaworski LLP | Paraprofessional | U.S.B.C. | $265 | 2013 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $295 | 2013 | California Central |
| Stutman, Treister & Glatt PC | Paraprofessional | U.S.B.C. | $240 | 2012 | California Central |
| Stutman, Treister & Glatt PC | Paraprofessional | U.S.B.C. | $240 | 2012 | California Central |
| Stutman, Treister & Glatt PC | Paraprofessional | U.S.B.C. | $240 | 2012 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $275 | 2012 | California Central |
| Loeb & Loeb | Paraprofessional | U.S.B.C. | $260 | 2012 | California Central |
| Greenberg, Whitcombe & Takeuchi, LLP | Paraprofessional | U.S.B.C. | $80 | 2012 | California Central |
| Fulbright & Jaworski LLP | Paraprofessional | U.S.B.C. | $265 | 2012 | California Central |
| Stutman, Treister & Glatt PC | Paraprofessional | U.S.B.C. | $240 | 2012 | California Central |
| Stutman, Treister & Glatt PC | Paraprofessional | U.S.B.C. | $240 | 2012 | California Central |
| Stutman, Treister & Glatt PC | Paraprofessional | U.S.B.C. | $240 | 2012 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $275 | 2012 | California Central |
| Pachulski Stang Ziehl Young Jones & Weintraub | Paraprofessional | U.S.B.C. | $275 | 2012 | California Central |
| Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP | Paraprofessional | U.S.B.C. | $240 | 2012 | California Central |

Exhibit 6 - Page 77

| | | | | | |
|---|---|---|---|---|---|
| Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP | Paraprofessional | U.S.B.C. | $240 | 2012 | California Central |
| Stutman, Treister & Glatt PC | Paraprofessional | U.S.B.C. | $240 | 2012 | California Central |
| Stutman, Treister & Glatt PC | Paraprofessional | U.S.B.C. | $240 | 2012 | California Central |
| Stutman, Treister & Glatt PC | Paraprofessional | U.S.B.C. | $240 | 2012 | California Central |
| Arent Fox LLP | Paraprofessional | U.S.B.C. | $160 | 2011 | California Central |
| Kelley Drye & Warren LLP | Paraprofessional | U.S.B.C. | $190 | 2011 | California Central |
| Kelley Drye & Warren LLP | Paraprofessional | U.S.B.C. | $220 | 2011 | California Central |
| Kelley Drye & Warren LLP | Paraprofessional | U.S.B.C. | $190 | 2011 | California Central |
| Kelley Drye & Warren LLP | Paraprofessional | U.S.B.C. | $220 | 2011 | California Central |
| Kelley Drye & Warren LLP | Paraprofessional | U.S.B.C. | $220 | 2010 | California Central |
| Irell & Manella LLP | Paraprofessional | U.S.B.C. | $200 | 2011 | California Central |
| Irell & Manella LLP | Paraprofessional | U.S.B.C. | $200 | 2011 | California Central |
| Irell & Manella LLP | Paraprofessional | U.S.B.C. | $200 | 2011 | California Central |
| O'Melveny & Myers LLP | Paraprofessional | U.S.B.C. | $310 | 2011 | California Central |
| O'Melveny & Myers LLP | Paraprofessional | U.S.B.C. | $310 | 2010 | California Central |
| Hunton & Williams LLP | Paraprofessional | U.S.B.C. | $140 | 2008 | California Central |
| Hunton & Williams LLP | Paraprofessional | U.S.B.C. | $125 | 2008 | California Central |
| Hunton & Williams LLP | Paraprofessional | U.S.B.C. | $125 | 2008 | California Central |
| Hunton & Williams LLP | Paraprofessional | U.S.B.C. | $140 | 2008 | California Central |
| Winston & Strawn LLP | Senior Paraprofessional | U.S.B.C. | $225 | 2008 | California Central |
| Winston & Strawn LLP | Senior Paraprofessional | U.S.B.C. | $260 | 2008 | California Central |
| Winston & Strawn LLP | Senior Paraprofessional | U.S.B.C. | $250 | 2008 | California Central |
| Sheppard Mullin Richter & Hampton LLP | Paraprofessional | U.S.B.C. | $140 | 2008 | California Central |
| Sheppard Mullin Richter & Hampton LLP | Paraprofessional | U.S.B.C. | $130 | 2008 | California Central |
| Sheppard Mullin Richter & Hampton LLP | Paraprofessional | U.S.B.C. | $190 | 2008 | California Central |
| Sheppard Mullin Richter & Hampton LLP | Paraprofessional | U.S.B.C. | $255 | 2008 | California Central |
| Peitzman, Weg & Kempinsky LLP | Paraprofessional | U.S.B.C. | $190 | 2008 | California Central |
| Hunton & Williams LLP | Paraprofessional | U.S.B.C. | $130 | 2008 | California Central |
| Hunton & Williams LLP | Paraprofessional | U.S.B.C. | $130 | 2008 | California Central |

Exhibit 6 - Page 78

Case 2:19-cv-01632-DOC-DFM   Document 307-6   Filed 02/05/25   Page 330 of 484   Page ID #:33695

| | | | | | |
|---|---|---|---|---|---|
| McLeod, Moscarino, Witham and Flynn LLP | Paraprofessional | U.S.B.C. | $125 | 2012 | California Central |

Exhibit 6 - Page 79

Case 8:19-cv-01582-DOC-DFM   Document 387-6   Filed 09/06/25   Page 332 of 484
Case 2:20-cv-04093-SB-PLA   Document 83-2   Filed 02/13/23   Page 81 of 83   Page ID
#:1244
Page ID #:33607

# EXHIBIT 7

Exhibit 7 - Page 80

| COSTS SOUGHT BY IPVM | | | |
|---|---|---|---|
| Date | Billed Amt | Post Date | Narrative |
| 5/19/2020 | $14.21 | 5/26/2020 | SEGAL,SARAH L    05/19/20    43785-00001 WESTLAW RESEARCH AND PRINTING CHARGES |
| 5/21/2020 | $97.60 | 5/26/2020 | SEGAL,SARAH L    05/21/20    43785-00001 WESTLAW RESEARCH AND PRINTING CHARGES |
| 6/5/2020 | $400.00 | 6/8/2020 | SIMONS,MEREDITH S    06/05/20    43785-00001 WESTLAW RESEARCH AND PRINTING CHARGES |
| 6/29/2020 | $1.74 | 7/6/2020 | SEGAL,SARAH L    06/29/20    43785-00001 WESTLAW RESEARCH AND PRINTING CHARGES |
| 8/12/2020 | $6.00 | 8/18/2020 | SIMONS,MEREDITH S    08/12/20    43785-00001 WESTLAW RESEARCH AND PRINTING CHARGES |
| 8/19/2020 | $2.42 | 8/24/2020 | SEGAL,SARAH L    08/19/20    43785-00001 WESTLAW RESEARCH AND PRINTING CHARGES |
| 8/26/2020 | $11.50 | 8/31/2020 | SIMONS,MEREDITH S    08/26/20    43785-00001 WESTLAW RESEARCH AND PRINTING CHARGES |
| 10/12/2020 | $970.98 | 10/19/2020 | Segal, Sarah L.  10/12/2020  Practical Law US |
| 10/12/2020 | $120.00 | 10/19/2020 | SEGAL,SARAH L    10/12/20    43785-00001 WESTLAW RESEARCH AND PRINTING CHARGES |
| 10/13/2020 | $360.00 | 10/19/2020 | SEGAL,SARAH L    10/13/20    43785-00001 WESTLAW RESEARCH AND PRINTING CHARGES |
| 10/14/2020 | $120.00 | 10/19/2020 | SEGAL,SARAH L    10/14/20    43785-00001 WESTLAW RESEARCH AND PRINTING CHARGES |
| 10/15/2020 | $120.00 | 10/19/2020 | SEGAL,SARAH L    10/15/20    43785-00001 WESTLAW RESEARCH AND PRINTING CHARGES |
| 10/19/2020 | $2.00 | 10/26/2020 | SEGAL,SARAH L    10/19/20    43785-00001 WESTLAW RESEARCH AND PRINTING CHARGES |
| 10/20/2020 | $1,164.41 | 10/26/2020 | SEGAL,SARAH L    10/20/20    43785-00001 WESTLAW RESEARCH AND PRINTING CHARGES |
| 10/21/2020 | $240.00 | 10/26/2020 | SEGAL,SARAH L    10/21/20    43785-00001 WESTLAW RESEARCH AND PRINTING CHARGES |
| 10/22/2020 | $120.00 | 10/26/2020 | CHAMPION,ANNE M    10/22/20    43785-00001 WESTLAW RESEARCH AND PRINTING CHARGES |
| 10/22/2020 | $120.00 | 10/26/2020 | SEGAL,SARAH L    10/22/20    43785-00001 WESTLAW RESEARCH AND PRINTING CHARGES |
| 10/23/2020 | $960.00 | 10/26/2020 | SEGAL,SARAH L    10/23/20    43785-00001 WESTLAW RESEARCH AND PRINTING CHARGES |

Exhibit 7 - Page 81

Case 2:19-cv-01582-DOC-DFM    Document 387-6    Filed 02/06/25    Page 334 of 484
Case 2:20-cv-04093-SB-PLA    Document 83-2    Filed 02/13/23    Page 83 of 83    Page ID
#:1246
Page ID #:1369

| 1/11/2021 | $505.00 | 1/27/2021 | VENDOR: DANIEL TOM INVOICE#: 4417944301272001 DATE: 1/11/2021  Filing Fees/Pay.gov / C.D. Cal./Filing fee for Notice of Appeal |
| 4/15/2021 | $3.77 | 6/14/2021 | VENDOR: FIRST LEGAL NETWORK, LLC INVOICE#: 20186805 DATE: 4/15/2021  Cust: 82322/Outside Process Server/4/7/21 Order# 7795721 Deliver chambers copy to USDC/SDC-Los Angeles, 350 West First St., Los Angeles /D. Tom |
| 7/4/2021 | $32.38 | 7/23/2021 | VENDOR: WESTERN MESSENGER SERVICE, INC INVOICE#: 1234082 DATE: 7/4/2021  Cust #30269/Messenger and Courier Expense/7/1/21 Control #3438648 from GDC-SF to US Court of Appeals-Ninth Circuit, 95 7th St., San Francisco /M. Simons |
| 11/16/2021 | $11.74 | 12/3/2021 | VENDOR: UNITED PARCEL SERVICE, INC. INVOICE#: UPS-20211120 DATE: 11/20/2021  Ship Date 11/16/2021  Tracking No: 1Z59X8111295481268  Service Chg:   From: VERONICA MARGARYAN, ROYAL HOLDINGS TECHNOLOGIES, WOODLAND HILLS, CA  To: GIBSON, DUNN & CRUTCHER, SAN FRANCISCO, CA |
| 11/16/2021 | $11.74 | 12/3/2021 | VENDOR: UNITED PARCEL SERVICE, INC. INVOICE#: UPS-20211120 DATE: 11/20/2021  Ship Date 11/16/2021  Tracking No: 1Z59X8111293880821  Service Chg:   From: VERONICA MARGARYAN, ROYAL HOLDINGS TECHNOLOGIES, WOODLAND HILLS, CA  To: GIBSON, DUNN & CRUTCHER, SAN FRANCISCO, CA |
| 1/23/2022 | $46.31 | 1/28/2022 | VENDOR: WESTERN MESSENGER SERVICE, INC INVOICE#: 1237700 DATE: 1/23/2022  Cust #30269/Messenger and Courier Expense/1/18/22 Control #3482918 from GDC-SF to Ninth Circuit Court of Appeals, 95 Seventh St., San Francisco, Attn: Molly Dyer /D. Tom |
| TOTAL | $5,441.80 | | |

Exhibit 7 - Page 82

Case 8:19-cv-01531-DOC-DFM   Document 387-3   Filed 09/06/25   Page 335 of 484
Page ID #:37600
Case 8:17-cv-00491-CJC-KES   Document 280   Filed 02/21/23   Page 1 of 15   Page ID #:7704

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| **KATHY CRAIG**, *et al.*, | ) **Case No.: SACV 17-00491-CJC(KESx)** |
| | ) |
| **Plaintiffs,** | ) |
| | ) **ORDER GRANTING PLAINTIFFS'** |
| **v.** | ) **MOTION FOR ATTORNEY FEES** |
| | ) **[Dkt. 271]** |
| **COUNTY OF ORANGE**, *et al.*, | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

## I.  INTRODUCTION & BACKGROUND

Plaintiffs Kathy Craig and Gary Witt filed this lawsuit after Orange County Sheriff's Deputy Nicholas Petropulos fatally shot their son, Brandon Lee Witt. Following an April 2019 trial on Plaintiffs' claims for (1) excessive force under 42 U.S.C. § 1983, (2) battery, (3) negligence, and (4) violation of the Bane Act, Cal. Civ. Code § 52.1(b), the jury found in favor of Plaintiffs on all their claims and awarded Plaintiffs a total of $3.4 million in damages—$1.8 million for loss of life, $200,000 for pre-death pain and suffering, and $700,000 each for past loss of companionship and

Case 8:19-cv-01582-DOC-DFM   Document 387-3   Filed 02/06/25   Page 336 of 484
Case 8:17-cv-00491-CJC-KES   Document 280   Filed 02/21/23   Page 2 of 15   Page ID #:7705
Page ID #:37659

association.  (Dkts. 189, 202.)  The Court awarded Plaintiffs $1,250,415 in attorney fees for the time spent on the trial and post-trial law and motion practice.  (Dkt. 245 [Order Granting in Substantial Part Plaintiffs' Motion for Attorneys' Fees, hereinafter "Order"].)

Defendants appealed to the Ninth Circuit, arguing that the Court "improperly awarded compensatory damages for 'the loss of life experienced by' Witt." *Craig v. Petropulos*, 856 F. App'x 649, 649 (9th Cir. 2021).  The Ninth Circuit affirmed, explaining that it had "recently rejected [Defendants'] arguments in *Valenzuela v. City of Anaheim*, 6 F.4th 1098, 1102–05 (9th Cir. 2021), when [it] upheld the jury's loss of life award and determined that California state law prohibiting such damages was 'inconsistent with [42 U.S.C.] § 1983,'" and that this case was "indistinguishable" from *Valenzuela*.  *Craig*, 856 F. App'x at 650.  Defendants' petition for panel rehearing and rehearing en banc was denied.  Defendants then appealed to the Supreme Court, but—after requesting a response to the petition—the Supreme Court denied certiorari.  *County of Orange v. Craig*, 143 S. Ct. 526 (2022) (mem.).

Now before the Court is Plaintiffs' motion for attorney fees for their work responding to Defendants' appeals to the Ninth Circuit and the Supreme Court.  (Dkt. 271 [hereinafter "Mot."].)  Plaintiffs request a lodestar amount of $368,797.10 in attorney fees.  (Dkt. 277 [Reply] at 15.)  In opposition, Defendants argue that (1) counsel's hourly rates are excessive, and (2) much of the time spent duplicated efforts between this case and *Valenzuela*, in which many of the same lawyers are separately seeking fees.  (Dkt. 276 [hereinafter "Opp."].)  For the following reasons, Plaintiffs' motion is **GRANTED**.[1] The Court awards Plaintiffs $368,797.10 in attorney fees.

---

[1]  Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing.  *See* Fed. R. Civ. P. 78; Local Rule 7-15.  Accordingly, the hearing set for February 27, 2023 at 1:30 p.m. is hereby vacated and off calendar.

Case 8:19-cv-01582-DOC-DFM    Document 387-6    Filed 09/06/25    Page 337 of 484
Case 8:17-cv-00491-CJC-KES    Document 280    Filed 02/21/23    Page 3 of 15    Page ID #:7706
Page ID #:37650

## II. ANALYSIS

"The general rule in our legal system is that each party must pay its own attorney's fees and expenses." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 550 (2010).  In an action brought pursuant to 42 U.S.C. § 1983, however, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs."  42 U.S.C. § 1988(b).  A party is considered the prevailing party if it succeeds on any significant issue in litigation that achieves some of the benefit sought in bringing the lawsuit. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  Defendants do not dispute that Plaintiffs prevailed on their claim on appeal that the scope of recoverable survival damages in California for Section 1983 claims includes survival damages for the decedent's loss of life—a question that was previously unclear.  Rather, Defendants contend that the fees Plaintiffs seek are unreasonable.

In assessing the reasonableness of a fee award, a district court considers twelve factors: "(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to the acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases." *Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), *cert. denied*, 425 U.S. 951 (1976).

There is a strong presumption that the lodestar figure represents a reasonable fee. *Morales v. City of San Rafael*, 96 F.3d 359, 363 n.8 (9th Cir. 1996); *see also Harris v. Marhoerfer*, 24 F.3d 16, 18 (9th Cir. 1994) ("Only in rare instances should the lodestar

-3-

figure be adjusted on the basis of other considerations.").  The lodestar amount is the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433.  Under the lodestar approach, many of the *Kerr* factors have been subsumed as a matter of law.  *Morales*, 96 F.3d at 364 & n.9.

### A.    Hourly Rates

The Court first determines Plaintiffs' counsel's reasonable hourly rates.  "The hourly rate for successful civil rights attorneys is to be calculated by considering certain factors, including the novelty and difficulty of the issues, the skill required to try the case, whether or not the fee is contingent, the experience held by counsel, and fee awards in similar cases." *Moreno v. City of Sacramento*, 534 F.3d 1106, 114 (9th Cir. 2008).  Courts also are guided by "the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Trevino v. Gates*, 99 F.3d 911, 925 (9th Cir. 1996); *see also Dang v. Cross*, 422 F.3d 800, 813 (9th Cir. 2005).  Once the party claiming fees presents evidence supporting the claimed rate, the burden shifts to the party opposing fees to present equally specific countervailing evidence.  *See Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992).

### 1.    Dale Galipo

Dale Galipo, the lead trial lawyer who then reviewed and edited the appellate briefs, requests an hourly rate of $1,200.  (Mot. at 23.)  Mr. Galipo graduated from UCLA School of Law in 1984.  (Dkt. 232 [Declaration of Dale K. Galipo, hereinafter "Galipo Decl."] ¶ 3; Mot. at 22.)  Since 1991, he has managed his own law firm, and he has specialized in civil rights cases over the last two decades.  (*See id.* ¶ 4.)

-4-

Case 8:19-cv-01532-DOC-DFM   Document 387-3   Filed 02/06/25   Page 339 of 484
Case 8:17-cv-00491-CJC-KES   Document 280   Filed 02/21/23   Page 5 of 15   Page ID #:7708
Page ID #:37652

To support his hourly rate after trial, Mr. Galipo submitted declarations from several prominent civil rights attorneys attesting to his skill and experience. (*See* Dkt. 231 [Declarations of Thomas Beck, John Burton, Carl Douglas, John Fattahi, Paul Hoffman, and Ronald Brower].) As the Court noted in its order granting post-trial fees, "[h]is track record backs this up." (Order at 4.) At that time, the Court noted that since 2015, Mr. Galipo had successfully resolved cases in settlements totaling over $70 million, and that in the two years prior, he had prevailed in fourteen jury trials, including twelve civil rights cases. (Galipo Decl. ¶ 4.) In 2018, he was nominated for Trial Lawyer of the Year by the Consumer Attorneys Association of Los Angeles ("CAALA"), and in 2019, he was elected to the American College of Trial Lawyers and the Inner Circle of Advocates. (*Id.* ¶¶ 15, 17, 20.)

After trial, the Court found that $1,000 was a reasonable hourly rate for Mr. Galipo. The Court explained that with thirty-five years of experience, this rate was consistent with the prevailing rate in the Central District for attorneys of comparable skill, experience, and reputation. (Order at 5.)

Since 2019, Mr. Galipo has continued to develop his impressive track record. In just the last few years, he prevailed in at least eight civil rights jury trials, with verdicts totaling over $43.2 million, and has settled another ten cases for another $42.65 million. (Dkt. 272 [Supplemental Declaration of Dale Galipo, hereinafter "Supp. Galipo Decl."] ¶¶ 3–4.) He has also argued seven cases before the Ninth Circuit, including *Valenzuela*. (*Id.* ¶¶ 8–9.) In 2020, he was awarded Trial Lawyer of the Year by the CAALA and Consumer Attorneys of California's Consumer Attorney of the Year. (*Id.* ¶¶ 5–6.)

The Court finds that a $1,200 hourly rate is reasonable for Mr. Galipo's work over the past three years. Mr. Galipo has continued to demonstrate the value of his advocacy with over $85 million in recovery in civil rights cases in just a few years. Although this

Case 8:23-cv-01532-DOC-DFM   Document 387-3   Filed 04/06/25   Page 340 of 484
Case 8:17-cv-00491-CJC-KES   Document 280   Filed 02/21/23   Page 6 of 15   Page ID #:7709
Page ID #:37655

rate is high, it reflects Mr. Galipo's strong reputation within the legal community and his continued consistent record of success. It is also consistent with the prevailing rate of other attorneys who practice civil rights litigation in the Central District who graduated law school when Mr. Galipo did. *See Donastorg v. City of Ontario*, 2021 WL 6103545, at *8 (C.D. Cal. Sept. 23, 2021) ("According to the 2020 Real Rate Report, partners working in commercial litigation at large firms in Los Angeles earn between $941 and $1,235."); *cf. McKibben*, 2019 WL 1109683, at *14 (approving in 2019 adjusted lodestar rates of $887 to $1230 per hour for attorneys practicing civil rights litigation with 26 to 49 years of experience); (Dkt. 275 [Declaration of Carol A. Sobel, hereinafter "Sobel Decl."] ¶¶ 28–39 [collecting evidence that Mr. Galipo's requested rate is consistent with the market rate]). Indeed, other courts in this district found $1,100 to be a reasonable fee for Mr. Galipo as long as three years ago. (Supp. Galipo Decl. ¶ 7 [listing two cases from 2020 and 2021 in which courts awarded Mr. Galipo $1,100 per hour]); *Donastorg*, 2021 WL 6103545, at *8 (citing the 2020 Real Rate Report and explaining that "Mr. Galipo's requested rate of $1,100 does not outpace what other litigation partners earn"); *see French v. City of Los Angeles*, 2022 WL 2189649, at *17 (C.D. Cal. May 10, 2022). When it comes to police excessive force cases, Mr. Galipo continues to be without question at the top of his field.

### 2.    Kelsi Brown Corkran

Kelsi Brown Corkran, who led Plaintiffs' team in preparing and finalizing the brief in opposition to Defendants' petition for a writ of certiorari, seeks an hourly rate of $1,075—her billing rate when she left private practice in 2021. (Mot. at 22–23; Dkt. 271-1 [Declaration of Kelsi Corkran, hereinafter "Corkran Decl."] ¶¶ 12, 16.) Ms. Corkran graduated from the University of Chicago with a law degree and a master's degree in public policy in 2005. (Corkran Decl. ¶ 2.) After law school, she clerked for Judge David S. Tatel on the D.C. Circuit. (*Id.* ¶ 3.) From 2006 to 2012, she was an

Case 8:19-cv-01530-DOC-DFM    Document 387-3    Filed 09/05/25    Page 341 of 484
Page ID #:37656
Case 8:17-cv-00491-CJC-KES    Document 280    Filed 02/21/23    Page 7 of 15    Page ID #:7710

attorney with the Civil Appellate Staff at the Department of Justice in Washington, DC, where she was lead counsel for the federal government in over 30 federal appeals involving complex administrative and constitutional law issues. (*Id.* ¶ 4.) She then became an associate and then counsel at Bancroft PLLC, an appellate litigation boutique in Washington, DC, until she clerked for Justice Ruth Bader Ginsburg in 2013. (*Id.* ¶¶ 5–6.) From 2014 to 2021, she was a partner at Orrick, Herrington, & Sutcliffe, LLC, in Washington, DC, where she became the head of the Supreme Court practice in 2020. (*Id.* ¶ 7.) In 2014, she was named a 40 Under 40 Rising Star by the National Law Journal, and she was nationally ranked in appellate litigation by Chambers USA in 2019 and 2020. (*Id.* ¶ 8.) Since 2021, she has been the Supreme Court Director at the Institute for Constitutional Advocacy & Protection ("ICAP"), a public interest litigation boutique affiliated with Georgetown University Law Center, where she is also a Senior Lecturer in Law. (*Id.* ¶ 9.) In the over 15 years that she has practiced primarily before the Supreme Court and federal courts of appeals, she has argued two cases before the Supreme Court and over 30 cases in the courts of appeals across 12 of the 13 federal circuits. (*Id.* ¶ 10.)

The Court finds that $1,075 is a reasonable hourly rate for Ms. Corkran. This rate reflects Ms. Corkran's substantial experience in appellate law, her strong reputation within the field, the novelty and difficulty of the issues presented on appeal, and the skill required to litigate the appeal. It is also consistent with the prevailing rate of other attorneys who practice civil rights litigation and who graduated law school eighteen years ago. *See Donastorg*, 2021 WL 6103545, at *8 ("According to the 2020 Real Rate Report, partners working in commercial litigation at large firms in Los Angeles earn between $941 and $1,235."); *cf. McKibben*, 2019 WL 1109683, at *14 (approving in 2019 hourly rates of $603 to $855 for attorneys practicing civil rights litigation with 9 to 15 years of experience and $738 to $1220 for those with 23 to 33 years of experience); (Sobel Decl. ¶¶ 40–44 [collecting evidence that Ms. Corkran's requested rate is consistent with the market rate]).

Case 8:19-cv-01531-DOC-DFM    Document 387-6    Filed 09/06/25    Page 342 of 484
Case 8:17-cv-00491-CJC-KES    Document 280    Filed 02/21/23    Page 8 of 15    Page ID #:7711
Page ID #:32655

### 3.    Melanie Partow

Melanie Partow, who was primarily responsible for the day-to-day litigation of the case, for researching, drafting, and editing Plaintiffs' Ninth Circuit answering brief and response to the petition for rehearing and rehearing en banc, for collaborating with Supreme Court counsel on the brief in opposition to the petition for certiorari, and for researching and drafting this motion for fees, seeks an hourly rate of $850. (Mot. at 23; Dkt. 273 [Supplemental Declaration of Melanie Partow, hereinafter "Supp. Partow Decl."] ¶ 20; Mot. at 21.)  Ms. Partow graduated from Southwestern Law School in 2004. (Dkt. 234 [Declaration of Melanie T. Partow, hereinafter "Partow Decl."] ¶ 2.)  She received a master's degree in international human rights law from Oxford University in 2010. (*Id.* ¶ 13.)  After law school, she clerked for the Chief Prosecutor of the International Criminal Court in the Hague. (*Id.* ¶ 3.)  Ms. Partow was then admitted to the California Bar in 2006. (*Id.* ¶ 4.)  From the beginning of her career, Ms. Partow has litigated civil rights cases, including police excessive force cases, at Schonbrun DeSimone Seplow Harris & Hoffman, LLP, and Helmer Friedman, LLP. (*Id.*)  In 2009, she joined Mr. Galipo's law firm as an associate attorney. (*Id.*)  Since then, she has litigated more than one hundred police misconduct excessive force cases with Mr. Galipo. (*Id.*)  In the ten years before the Court's order awarding fees after trial, she had worked on numerous appeals and second-chaired twelve jury trials and one bench trial. (*Id.* ¶¶ 7, 10.)  In 2015 and 2016, she was selected to the Super Lawyers Rising Stars Southern California list. (*Id.* ¶ 15.)  She also teaches international human rights law and civil rights litigation at the law schools of the University of Southern California and University of California, Irvine. (*Id.* ¶ 16; Supp. Partow Decl. ¶ 11.)

After trial, the Court found that $675 was a reasonable hourly rate for Ms. Partow, concluding that it was consistent with the prevailing rate of other attorneys in the Central District who practice civil rights litigation with comparable experience, and reflected Ms.

Partow's substantial experience in police misconduct excessive force cases and her strong reputation within the field.  (Order at 6.)  Since then, Ms. Partow has opened a solo practice specializing in police excessive force appeals.  (Supp. Partow Decl. ¶ 10.)  In 2019, she joined the U.S. Department of Defense, Office of the Military Commissions, where she serves as a trial attorney for a capitally charged defendant before the Military Commissions in Guantanamo Bay, Cuba.  (*Id.* ¶ 12.)  In 2022, she passed the California State Bar examination to become a California Certified Legal Specialist in Civil Appellate Practice.  (*Id.* ¶ 13.)

The Court finds that $850 is a reasonable hourly rate for Ms. Partow.  This rate reflects Ms. Partow's increased experience over the last few years, her continued strong reputation within the field, the novelty and difficulty of the issues presented on appeal, and the skill required to litigate the appeal.  It is also consistent with the prevailing rate of other attorneys in the Central District who practice civil rights litigation and who graduated law school nineteen years ago.  *See Donastorg*, 2021 WL 6103545, at *8 (explaining that the 2020 Real Rate Report lists partners working in commercial litigation at large firms in Los Angeles as earning between $941 and $1,235, with the median rate for litigation partners in Los Angeles at $660 per hour); *cf. McKibben*, 2019 WL 1109683, at *14; (Sobel Decl. ¶¶ 45–49 [collecting evidence that Ms. Partow's requested rate is consistent with the market rate]).

### 4.    Joseph Mead

Joseph Mead, who helped research and draft the brief in opposition to Defendants' petition for a writ of certiorari, seeks an hourly rate of $850.  (Mot. at 22–23; Dkt. 271-2 [Declaration of Joseph Mead, hereinafter "Mead Decl."] ¶ 10.)  After he graduated from the University of Michigan Law School, *magna cum laude*, in 2007, Mr. Mead clerked for judges in the Eastern District of Michigan and on the Sixth Circuit.  (Mead Decl. ¶ 2.)

Case 8:19-cv-01582-DOC-DFM    Document 387-5    Filed 09/06/25    Page 344 of 484
Case 8:17-cv-00491-CJC-KES    Document 280    Filed 02/21/23    Page 10 of 15    Page ID
#:7713
Page ID #:33659

From 2010 through 2014, he worked for the U.S. Department of Justice, Civil Division, Federal Programs Branch, via the Honors Program. (*Id.* ¶ 3.) In 2014, he became a faculty member at Cleveland State University, where he held a joint appointment at the Cleveland-Marshall College of Law and the Maxine Goodman Levin College of Urban Affairs, and obtained tenure in 2020. (*Id.* ¶¶ 4, 7.) That same year, he also joined the ACLU of Ohio as a volunteer litigator and served as Associate General Counsel from 2017 to 2020. (*Id.* ¶ 5.) In 2021, he joined ICAP as Senior Counsel, where he has represented clients in constitutional litigation at the Supreme Court of the United States, state supreme courts, and federal appellate courts. (*Id.* ¶ 9.)

The Court finds that $850 is a reasonable hourly rate for Mr. Mead. This rate reflects Mr. Mead's substantial experience in appellate law and particular credentials, his strong reputation within the field, the novelty and difficulty of the issues presented, and the skill required to litigate the appeal. It is also consistent with the prevailing rate of other attorneys in the Central District who practice civil rights litigation and who graduated law school sixteen years ago. *See Donastorg*, 2021 WL 6103545, at *9 (explaining that according to the 2020 Real Rate Report, litigation associates in Los Angeles make a median of $535 per hour, with rates of $740 in the upper quartile, and that partners make a median of $660 per hour, with those working in commercial litigation at large firms earning between $941 and $1,235 per hour); *cf. McKibben*, 2019 WL 1109683, at *14; (Sobel Decl. ¶¶ 50–55 [collecting evidence that Mr. Mead's requested rate is consistent with the market rate]).

### 5.    Scott Hughes

Scott Hughes, who was primarily responsible for settlement efforts, legal research for and editing of the Ninth Circuit brief, and client communication, seeks an hourly rate of $780. (Mot. at 22–23; Dkt. 274 [Supplemental Declaration of Scott D. Hughes,

Case 8:19-cv-01531-DOC-DFM   Document 387-6   Filed 09/06/25   Page 345 of 484
Case 8:17-cv-00491-CJC-KES   Document 280   Filed 02/21/23   Page 11 of 15   Page ID
#:7714

hereinafter "Supp. Hughes Decl."] ¶ 18.)  Before law school, Mr. Hughes enlisted in the U.S. Marine Corps as a Marine Police Officer.  (Dkt. 233 [Declaration of Scott D. Hughes] ¶ 7.)  He received a master's degree in criminology from SUNY Albany in 2003 and graduated from law school at Western State University College of Law in 2007.  (*Id.* ¶ 8.)  Since 2010, he has managed his own law firm focusing on personal injury and criminal defense cases in state and federal court.  (*Id.* ¶ 10.)  Due to his police background, other attorneys began referring civil rights cases to him involving police misconduct resulting in serious injury or death.  (*Id.*)  He has tried over nineteen civil and criminal cases.  (Supp. Hughes Decl. ¶ 11.)  Several times in recent years, he has been named a Super Lawyer Rising Star.  (*Id.* ¶ 14.)  He has also been named Top 40 Under 40 by the National Trial Lawyers.  (*Id.*)  In recent years, he has personally handled six civil rights cases that resulted in six- and seven-figure settlements and verdicts.  (*Id.* ¶ 11.)

After trial, the Court found that $625 was a reasonable hourly rate for Mr. Hughes, explaining that it corresponded to the prevailing rate for civil rights attorneys with similar experience and accounted for his unique police expertise and his accolades.  (Order at 6–7.)  The Court finds that $780 is a reasonable hourly rate for Mr. Hughes' work on appeal.  This rate reflects Mr. Hughes' particular experience and accolades, the novelty and difficulty of the issues on appeal, and the skill required to litigate the appeal, and is consistent with the prevailing rate of other attorneys who practice civil rights litigation and who graduated law school sixteen years ago.  *See Donastorg*, 2021 WL 6103545, at *9 (explaining that according to the 2020 Real Rate Report, litigation associates in Los Angeles make a median of $535 per hour, with rates of $740 in the upper quartile, and that partners make a median of $660 per hour, with those working in commercial litigation at large firms earning between $941 and $1,235 per hour); *cf. McKibben*, 2019 WL 1109683, at *14; (Sobel Decl. ¶ 57 ["The rate of $780 an hour for an attorney with 16 years' experience is well within the range of reasonable rates in the Los Angeles legal market."]).

-11-

Case 8:19-cv-01582-DOC-DFM   Document 387-3   Filed 09/06/25   Page 346 of 484
Case 8:17-cv-00491-CJC-KES   Document 280   Page ID #:33669 02/21/23   Page 12 of 15   Page ID
#:7715

### 6.   Elizabeth Cruikshank

Elizabeth Cruikshank, who assisted with drafting the brief in opposition to Defendants' petition for certiorari, seeks an hourly rate of $733.  (Mot. at 22–23; Dkt. 271-3 [Declaration of Elizabeth Cruikshank, hereinafter "Cruikshank Decl."] ¶ 9.)  She graduated from Columbia Law School in 2015, where she was awarded the Ruth Bader Ginsburg Prize for receiving highest academic honors all three years of law school.  (Cruikshank Decl. ¶ 2.)  She was an associate in the litigation department at Cravath, Swaine & Moore LLP for one year and then had clerkships on the Ninth Circuit and Southern District of New York.  (*Id.* ¶¶ 3–4.)  From 2018 to 2021, she was a part of the Supreme Court and Appellate practice group at Orrick, Herrington & Sutcliffe LLP.  (*Id.* ¶¶ 5–6.)  In 2021, she joined ICAP as Senior Counsel.

The Court finds that $733 is a reasonable hourly rate for Ms. Cruikshank.  This rate reflects Ms. Cruikshank's substantial experience and performance in appellate law, the skill required to succeed on appeal, and the novelty and difficulty of the issues presented on appeal, and is consistent with the prevailing rate of other attorneys with her credentials who graduated law school eight years ago.  *See Donastorg*, 2021 WL 6103545, at *9 ("The 2020 Real Rate Report provides that the median rate for litigation associates in Los Angeles is $535, with rates of $740 in the upper quartile."); *cf. McKibben*, 2019 WL 1109683, at *14; (Sobel Decl. ¶¶ 58–61 [collecting evidence that Ms. Cruikshank's requested rate is consistent with the market rate]).

### B.   Billed Hours

The Court now determines whether the billed hours are reasonable.  A court may award attorney fees only for the number of hours it concludes were reasonably expended on the litigation.  *Hensley*, 461 U.S. at 434 ("[Counsel] should make a good faith effort to

Case 8:19-cv-01515-DOC-DFM    Document 387-3    Filed 09/05/25    Page 347 of 484
Case 8:17-cv-00491-CJC-KES    Document 280   Filed 02/21/23   Page 13 of 15   Page ID
Page ID #:33690
#:7716

exclude . . . hours that are excessive, redundant, or otherwise unnecessary."). "[T]he fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of th[e] hours worked." *Gates*, 987 F.2d at 1397–98.

In support of the motion for fees, each attorney has submitted time records detailing the work each performed on the case. Mr. Galipo, Ms. Partow, and Mr. Hughes were primarily responsible for tasks related to the Ninth Circuit appeal and billed 291 hours to those tasks. Ms. Corkran, Mr. Mead, and Ms. Cruikshank were primarily responsible for tasks related to the Supreme Court petition and billed 77.3 hours to those tasks. The Court has carefully reviewed these attorneys' billing records and finds that the billed hours are reasonable.

Defendants argue that Plaintiffs' fee request should be denied because it is "an attempt to be paid twice for submitting essentially the same work product" in *Valenzuela*. (Dkt. 276 [Opposition, hereinafter "Opp."] at 5.) They point to numerous examples of *Valenzuela* briefing looking similar or identical to briefing in this case. (*See id.* at 8–11.) But there is no indication that the fact that *Valenzuela* and this case were very similar is not reflected in the hours billed. Indeed, Ms. Corkran explains that the number of hours billed in this case is significantly lower than the number of hours billed in similar cases because of counsel's ability to draw on work from *Valenzuela*. (Corkran Decl. ¶ 15; *see* Mot. at 22; Reply at 8.) And Plaintiffs retained the ICAP team because of their expertise and familiarity with the issues in *Valenzuela*. (Reply at 1, 8.) Just because this case was similar to *Valenzuela* does not mean it did not have to be litigated and that substantial time was not required to draft and edit the multiple briefs submitted. Moreover, the opening brief before the Ninth Circuit in this case was filed before the opening brief in *Valenzuela*, meaning that at least for that brief, counsel did not have substantial *Valenzuela* work product to draw on. (*See id.* at 3.) The Court has reviewed counsel's

billing records and finds that the amount of time spent appears reasonable even given this case's similarity to *Valenzuela*.

Plaintiffs' counsel also request compensation for their work related to their motion for attorneys' fees. Time spent establishing an entitlement to fees under 42 U.S.C. § 1988 is compensable. *See Clark v. City of Los Angeles*, 803 F.2d 987, 992 (9th Cir. 1986). Plaintiffs' counsel included time spent preparing the motion in their original time records. In preparing the reply, Ms. Partow billed an additional 33.4 hours. (*See* Dkt. 278-1.) The Court will include this additional billed time in its lodestar calculation.

## C.    Lodestar Calculation

Based on the above analysis, the lodestar amounts for Plaintiffs' counsel are as follows:

| Attorney | Hourly Rate | Hours | Lodestar |
|---|---|---|---|
| Dale Galipo | $1,200 | 61.9 | $74,280 |
| Kelsi Brown Corkran | $1,075 | 44.9 | $48,267.50 |
| Melanie Partow | $850 | 226.5[2] | $192,525 |
| Joseph Mead | $850 | 16.2 | $13,770 |
| Scott Hughes | $780 | 36 | $28,080 |
| Elizabeth Cruikshank | $733 | 16.2 | $11,874.60 |
| **Total** | | | **$368,797.10** |

//

//

---

[2] This number is calculated based on 193.1 (total billed hours) plus 33.4 (hours spent preparing reply).

Case 8:19-cv-01016-DOC-DFM   Document 387-6   Filed 09/06/25   Page 349 of 484
Case 8:17-cv-00491-CJC-KES   Document 280   Filed 02/21/23   Page 15 of 15   Page ID
#:7718

## III.  CONCLUSION

For the foregoing reasons, Plaintiffs' motion for attorney fees is **GRANTED**. Plaintiffs are awarded $368,797.10 in attorney fees.

DATED:     February 21, 2023

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE

CC: FISCAL

-15-

# CAROL A. SOBEL

725 Arizona Avenue• Suite 300 • Santa Monica, CA 90401 •
Tel. 310 393-3055 • Email carolsobellaw@gmail.com

## Employment:

LAW OFFICE OF CAROL A. SOBEL                                    APRIL, 1997 TO PRESENT
Solo civil rights law firm.

SENIOR STAFF COUNSEL                                           1990 TO APRIL, 1997
*ACLU Foundation of Southern California*

Responsible for conducting civil rights and civil liberties litigation in state and federal courts in California;
supervise litigation by ACLU volunteer counsel and other ACLU legal staff.

STAFF ATTORNEY                                                1985 TO 1990
*ACLU Foundation of Southern Califonria*

Civil liberties litigation, primarily in the areas of Establishment Clause and Free Exercise violations, as well as other
First Amendment rights.

ASSOCIATE DIRECTOR                                            1979 TO 1985
*ACLU Foundation of Southern California*
*American Civil Liberties Union of Southern California*

Under the direction of the Executive Director, responsible for administration of two non-profit organizations,
including working with Boards of Directors on development of policy on civil liberties issues.  Engaged in litigation
and assisted Legal Director in coordination and supervision of pro bono attorneys.

DEVELOPMENT DIRECTOR                                          1977 TO 1979
*ACLU Foundation of Southern California*
*American Civil Liberties Union of Southern California*

Responsible for conducting a variety of fundraising efforts to meet a million-dollar plus annual budget for a
501(c)(3) and a 501(c)(4).

## Admitted to Practice:

California Supreme Court                                      November, 1978

United States Supreme Court                                  September, 1991

Ninth Circuit Court of Appeals                               August, 1986

U.S.D.C. Central District of California                      February, 1986

U.S.D.C.  Eastern District of California                     June, 1990

## Litigation Experience:

### Federal courts:   (Partial listing of published opinions and significant cases)

*CPR for SKID ROW*,
779 F.3d 1098 (9th Cir. 2015)
Partial reversal of summary judgment in favor of the Defendant and holding that California Penal Code §403
could not lawfully be applied to criminalize the expressive activity of the Plaintiffs for protesting on Skid
Row.
(Lead counsel and argued on appeal)

*Desertrain v. City of Los Angeles*
754 F.3d 1114 (9th Cir. 2014)
Reversal of summary judgment in favor of the Defendants and holding that Los Angeles Municipal Code §85.02, prohibiting parking a vehicle on public streets or parking lots any time of day or night if a person "lives" in the vehicle, is unconstitutionally vague.
(Lead counsel and argued on appeal)

*Lavan v. City of Los Angeles*
693 F.3d 1022 (9th Cir. 2012), *affirming* grant of preliminary injunction 797 F.Supp.2d 1005 (C.D. Cal. 2011)
Preliminary injunction barring City from confiscating and immediately destroying the property of homeless individuals on Los Angeles' Skid Row.
(Lead Counsel)

*Long Beach Area Peace Network v. City of Long Beach*
522 F.3d 1010 (9th Cir. 2008), as amended July 24, 2009
Upholding and reversing in part on appeal a decision of the district court granting Plaintiffs' request for a preliminary injunction to enjoin a municipal parade ordinance that included vague permit standards setting, *inter alia*, advance-notice requirements  police charges based on the past unlawful conduct of third parties without adequate standards to limit the discretion of public officials charged with implementing the parade ordinance.
(Lead counsel)

*Fitzgerald v. City of Los Angeles*
485 F.Supp.2d 1137 (CD CA 2008)
Extending injunction against police sweeps of homeless persons on Los Angeles' Skid Row on the grounds of searching for parole and probation violations.  See below for discussion of permanent injunction in 2003.
(Co-Counsel)

*Multi-Ethnic Immigrant Worker Organizing Network (MIWON) v. City of Los Angeles*
246 F.R.D. 621 (C.D. Cal. 2007)
Order granting class certification in challenge to police assault on a lawful assembly of immigrant rights supporters by the Los Angeles Police Department on May Day, 2007.
(Class Co-Counsel)

*Edward Jones, et al., v. City of Los Angeles*,
444 F.3d 1118 (9th Cir. 2006), vacated pursuant to settlement 505 F.3d 1006 (2007)
Challenge to City of Los Angeles Municipal Code §41.18(d), prohibiting sitting, lying or sleeping on any street or sidewalk anywhere in the City at any time of day or night.  Plaintiffs, all of whom are homeless persons, brought an 8th Amendment as-applied challenge to their arrests and citations for violating the ordinance when their was no available adequate shelter.
(Co-counsel)

*Terry Tipton-Whittingham, et al. v. City of Los Angeles*
316 F.3d 1059 (9thCir. 2003)
Challenge by City of Los Angeles to interim fee award granting plaintiffs' fees as "catalysts" under state civil rights fee shifting statutes.  Following oral argument, the Ninth Circuit certified issue of continued availability of "catalyst" fees under California law after adverse decision by the United States Supreme Court rejecting catalyst fee doctrine under federal law absent express legislative authorization.  Certified for hearing  before the California Supreme Court and ultimately upheld the catalyst fee doctrine under California law.
(Co-counsel*;* argued in Ninth Circuit)

*Fitzgerald v. City of Los Angeles*
2003 U.S. Dist. LEXIS 27382 (CD CA 2003)
Permanent injunction enjoining Fourth Amendment violations by the Los Angeles Police Department (LAPD). The injunction prevents the LAPD  from engaging in stops of homeless persons for parole and probation sweeps on Skid Row without reasonable suspicion to believe that specific individuals are on parole or probation and subject to a search condition, or that the individual has engaged in, or is about to commit a crime.
(Lead counsel)

*Khademi v. South Orange County Community College District*
194 F.Supp.2d 1011 (C.D. CA 2002)
First Amendment facial challenge invalidating college policy  regulating time, place and manner of student speech on campus.
(Lead counsel)

*Mardi Gras of San Luis Obispo v. City of San Luis Obispo*
189 F. Supp.2d 1018 (C.D. Cal. 2002)
Preliminary injunction to enjoin a municipal parade ordinance that required lengthy advance-notice requirement and permitted high insurance and police charges based on the past unlawful conduct of third parties without adequate standards to limit the discretion of public officials charged with implementing the parade ordinance.

*Bauer v. Sampson*
261 F.3d 775 (9th Cir. 2001)
First Amendment challenge to disciplinary action against college professor for publication of an alternative newsletter criticizing elected and appointed public officials and disclosing wrongdoing by college officials and personnel. The college sought to discipline the professor for violating the district's policies on discrimination and work-place violence. The polices were declared unconstitutional as applied to the professor's speech.

*H.C. v. Koppel*
203 F.3d 610 (9th Cir. 2000)
Dismissal of federal civil rights action filed in federal court against state court judge and appointed counsel for minor in family law matter. Circuit held that Younger Abstention applied and non-custodial parent had adequate state court remedy.

*Justin v. City of Los Angeles*
2000 U.S. Dist. LEXIS (CD Cal. 2000)
Class action to enjoin police sweeps of homeless population on Los Angeles' Skid Row. Permanent injunction stipulated to in settlement following certification of the injunctive relief class.
(Lead counsel)

*Los Angeles Alliance for Survival, et al. v. City of Los Angeles*
987 F. Supp. 819 (1997); 157 F.3d 1162 (9th Cir. 1998); on certification to the California Supreme Court, 22 Cal.4th 352 (2000); 224 F.3d 1076 (9th Cir. 2000)
Injunction issued in challenge to municipal ordinance barring so-called "aggressive solicitation" in broad areas of traditional public fora. Preliminary injunction entered by district court based on California Constitution. On appeal, the Ninth Circuit certified the California Constitution question to the California Supreme Court. Following decision by the California Supreme Court, the Ninth Circuit upheld the original injunction.
(Co-counsel)

*Service Employees International Union 660 v. City of Los Angeles*
114 F. Supp.2d 966 (C.D. Cal. 2000)
Challenge to the "no-protest zone" at the Democratic National Convention in Los Angeles in 2000, as well as a preliminary injunction to enjoin the City of Los Angeles parade ordinance.
(Co-counsel)

*United States v. Wunsch*
54 F.3d 579 (9th Cir. 1995);84 F.3d 1110 (9th Cir. 1996) (reargument)
First Amendment challenge to discipline of male attorney for "gender bias" in sending note to female Asst. U.S. Attorney after she successfully moved to disqualify him as defense counsel in a criminal case. Ninth Circuit invalidated the penalty and declared unconstitutional California's "offensive personality" regulation on attorneys' professional conduct. (Argued and briefed on appeal).

*American Jewish Congress v. City of Beverly Hills*
65 F.3d 1539 (9th Cir. 1995);90 F.3d 379 (9th Cir. 1996) (en banc)
First Amendment challenge to display of a religious symbol on public property and to permit scheme for expressive activities in public fora in the City of Beverly Hills. The en banc panel held the permit scheme unconstitutional and found that a preference had occurred for the display of a particular religious symbol. The en banc decision was unanimous. (Argued and briefed on appeal)

*Baca v. Moreno Valley Unified School District*
936 F. Supp. 719 (C.D. Cal. 1996)
First Amendment challenge to school board regulations preventing speakers from making disparaging remarks about public employees during public board meetings.

*Wallin v. City of Los Angeles*,
1194 U.S. App. LEXIS 2343 (9th Cir. 2004)

Circuit dismissed appeal of defendant City and law enforcement officers from denial of qualified immunity. Appellee, a female officer with the Los Angeles Police Department, alleged that appellants violated her right to equal protection, due process and right to petition the government because they violated LAPD confidentiality regulations and delayed the investigation into her allegations of co-worker rape.

(Lead counsel)

*National Abortion Federation v. Operation Rescue*
8 F.3d 680 (9th Cir. 1993)
Class-action state-wide injunction against blockades of women's health care clinics by anti-abortion activists. First case decided under the "frustrate and hinder" clause of 42 U.S.C. § 1985(3), the 1871 Ku Klux Klan Act. Appeals court held cause of action under "frustrate and hinder" clause was properly plead and reversed 12(b)(6) ruling on that claim.

(Co-lead counsel throughout; argued on appeal)

*Hewitt v. Joyner*

940 F.2d 1561 (9th Cir. 1991)

Establishment Clause challenge to Christian theme park, Desert Christ Park, owned and operated by San Bernardino County. Ninth Circuit held County ownership and operation of the park violated the Establishment Clause.

(Lead counsel throughout litigation; argued on appeal).

*Standing Deer v. Carlson*

831 F.2d 1525 (9th Cir. 1986)

First Amendment challenge for Native Americans at Lompoc Federal Penitentiary to regulation barring religious headbands in the dining facilities for purported health reasons.

(Argued and briefed on appeal)

*Burbridge v. Sampson*

74 F.Supp.2d 940 (C.D. Ca. 1999)

First Amendment challenge to community college policy regulating student speech in public fora on campus. Court issued a preliminary injunction, declaring the college's speech regulations unconstitutional.

*Rubin v. City of Santa Monica*

823 F.Supp. 709 (C.D. Ca. 1993)

First Amendment challenge to city permit scheme limiting access to public parks for protected expressive activities. Court issued a preliminary injunction and declared the permit scheme unconstitutionally on vagueness grounds and procedural due process grounds. (Lead counsel)

## State Court

*Terry Tipton-Whittingham, et al. v. City of Los Angeles*

34 Cal.4th 604 (2002)

California continues to recognize "catalyst" fee awards to prevailing parties under the private attorney-general statute (Cal. Code of Civ. Proc. §1021.5) and Fair Employment and Housing Act (FEHA) despite change in federal civil rights fee-shifting law. Under California law, there is no requirement of a judicial determination establishing a change in the legal obligations of the parties.

(Co-counsel and argued at California Supreme Court)

*Los Angeles Alliance for Survival v. City of Los Angeles*

22 Cal.4th 352 (2000)

Ordinance restricting certain activity as "aggressive solicitation" was not content-based under California Constitution

(co-counsel)

*Williams v. Garcetti*

5 Cal.4th 561 (1993), *sub nom Williams v. Reiner*, 13 Cal.App.4th 392 (1991)

Challenge on due process grounds to portion of STEPP law which imposed a criminal penalty on parents of minor children engaged in or at risk of delinquent conduct.

(Argued and brief on appeal to California Supreme Court)

*Sands v. Morongo Unified School District*

53 Cal.3d 863 , *cert denied*, 112 U.S. 3026 (1991)

225 Cal.App.3d 1385 (1989)

Establishment Clause challenge invalidating prayers at public high-school graduations.

(Argued and briefed as lead counsel throughout litigation)

*Walker v. Superior Court of Sacramento*

47 Cal.3d 112 (1988)

Establishment Clause/Free Exercise/Due Process challenge to criminal prosecution of Christian Science parents for death resulting from use of prayer instead of traditional medicine in treatment of ill child. (Wrote amicus brief on due process issues).

*Irvine Valley College Academic Senate, et al. v. South Orange County Community College District*

129 Cal.App.4th 1482 (2005)

Statutory construction of plain language of Education Code §87360, bolstered by legislative intent, requires actual joint agreement and mutual development of revisions to faculty hiring policies.

(co-counsel, drafted final briefs on appeal)

*Fashion 21, et al. v. Coalition for Humane Immigrant Rights (CHIRLA), et al.*

111 Cal.App.4th 1128 (2004)

Special motion to strike defamation complaint by retainer against garment worker advocates must be granted as the plaintiff retailer could not establish a probability of prevailing on the merits of their claims. Garment worker advocates properly relied on draft labor commission regulations suggesting retailer could be liable for sweatshop conditions of manufacturing of its retail goods.

(lead counsel at all stages)

*Gonzalez v. Superior Court*

33 Cal.App.4th 1539 (1995)

Challenge to discovery order in sexual harassment case requiring plaintiff to disclose name of confidential informant who provided her with photographic evidence of harassment. "After-acquired evidence" rule applied to require disclosure.

(Lead counsel in trial court and appeal)

*Lantz. v. Superior Court of Kern County*

28 Cal.App.4th 1839 (1994)

Privacy rights challenge to interpretation of Consumer Personnel Records Statute (CCP § 1985(3), requiring strict adherence to statutory procedures and limiting exemption of local government agencies from adhering to statutory requirements.

(Lead counsel throughout litigation)

*Rudnick v. McMillan*

25 Cal.App.4th 1183 (1994)

Defamation verdict involving public figure plaintiff and local environmentalist author of letter to editor overturned on basis that letter was protected opinion and public figure subject to constitutional malice proof burden. Wrote amicus brief which formed basis of appellate ruling.

*Westside Sane/Freeze v. Hahn*

224 Cal.App.3d 546 (1990)

Challenge to restrictions on First Amendment petition activities in shopping center.

(Co-counsel, co-wrote appeal)

*City of Glendale v. Robert George*

208 Cal.App.3d 1394 (1989)

Reversal of trial court order imposing prior restraints on speech of "Presidential Santa" on the basis that he constituted a public nuisance to his neighbors in a residential area.

(Argued and briefed on appeal)

*McCarthy v. Fletcher*

207 Cal.App.3d 130 (1989)

Challenge to removal of textbooks from school reading list based on community-based religious objections. Court of Appeal reversed summary judgment decision, holding that there was sufficient evidence of constitutionally impermissible factors in evaluation of appropriateness of class-room reading materials.

(Argued and brief on appeal)

*Fiske v. Gillespie*

200 Cal.App.3d 130 (1988)

Challenge to sex-based actuarial presumptions in insurance industry rate for particular types of life insurance and annuity benefits.

(Co-Counsel, Argued on appeal)

Publications:

(Partial listing)s

*Catalyst Fees After Buckhannon*
Civil Rights Litigation and Attorney Fees Annual Handbook
(January 2006)

*Free Speech and Harassment: An Overview*
*in the Public Employee Sector*
CPER: CALIFORNIA PUBLIC EMPLOYEE RELATIONS
Institute of Industrial Relations - UC Berkeley
June 1999  No. 136

*Defeating Employer Defenses to Supervisor Liability*
*After* Ellerth *and* Faragher
ADVOCATE, October 1998

*Student Expression Under California Law*
UCLA Journal of Education
Volume 3, pp. 127-137 (1989)

*Should Attorneys Be Disciplined For Gender Bias*
Point/Counterpoint ABA Journal   August, 1995

*Fight Illegal Police Practices in State Court*
Los Angeles Daily Journal
March 6, 1992

*Judicial Oversight Limited by Supreme Court*
Los Angeles Daily Journal
May 6, 1991

*Jury Nullification is Conscience of Community*
Los Angeles Daily Journal
August 31, 1990

*A Basic Right Merits Shield From The Mob*
Los Angeles Times
August 11, 1991 p.M5

*Prop 115 revisited: Police charged with crimes*
*deserve fair trials too*
Los Angeles Daily News
May 7, 1991

*Prayer Doesn't Belong at Graduation*
USA Today
May 15, 1991 p. A10

*Killea Tactic Can Only Hurt the Church in the Long Run*
Los Angeles Times (San Diego)
November 20, 1989 p.B7

*The Fifth is a Shield for All*
Los Angeles Times
August 6, 1988   II8
(authored for Exec. Dir. ACLU)

*Which Way Will Rehnquist Court Turn?*
Los Angeles Daily News
June 18, 1986 p.21

*Constitution Exacts Cost for Religious Freedom*
Los Angeles Daily News
June 8, 1986 FOCUS   p.3

## Education:

| | |
|---|---|
| Peoples College of Law | J.D.  May, 1978 |
| Douglass College.For Women, Rutgers University | B.A .  June, 1968 |

## Professional and Community Activities:

| | |
|---|---|
| Adjunct Professor - Loyola Law School<br>Civil Rights Advocacy Practicum | 2007-present |
| Blue Ribbon Panel on LAPD Rampart Inquiry, Member | 2004-2006 |
| Ninth Circuit Gender Bias Task Force<br>Convenor, Advisory Committee on Employment Law | 1992-1993 |
| Ninth Circuit Conference on "Ethnicity, Race, and Religion in the Ninth Circuit"<br>Member, Working Subcommittee | 1993 |
| Los Angeles Public Interest Law Journal<br>Advisory Board | 2007-present |

| | |
|---|---|
| Los Angeles Center for Law and Community Action<br>Member, Board of Directors | 2015-present |
| National Police Accountability Project<br>Member, Advisory Board and Board of Directors | 2006-present |
| National Lawyers Guild, Los Angeles - President | 2001-2008 |
| National Lawyers Guild - National Executive Vice President | 2009-2011 |
| National Lawyers Guild Far West Regional Vice-President | 2003-2005 |
| National Lawyers Guild, National Executive Committee | 2003-2012 |
| NLG National Mass Defense Committee, Co-chair | 2003-2012 |
| Women Lawyers Association of Los Angeles<br>Member, ProChoice Committee | 1985-2002 |
| The California Anti-SLAPP Project<br>Member, Board of Directors | 1995-2010 |

## Awards:
## (Partial listing)

| | |
|---|---|
| PEN Freedom to Write Award | 1991 |
| American Jewish Congress Tzedek Award | 1992 |
| Planned Parenthood Los Angeles, Distinguished Service Award | 1990 |
| Freethought Heroine Award | 1992 |
| National Lawyers Guild - Los Angeles | 1999 |
| ACLU of Southern California Pro Bono Attorney Award | 2001 |
| Asian Pacific American Legal Center Pro Bono Award | 2003 |
| California Lawyer: Super Lawyer -Civil Rights/Constitutional Law | 2004-2019 |
| ACLU of Southern California Freedom of Expression Award | 2007 |
| Daily Journal Top 100 Most Influential Lawyers in California | 2007 |

| | |
|---|---|
| National Lawyers Guild - Ernie Goodman Award | 2007 |
| Angel Award - California Lawyer Magazine Award for pro bono work | 2007 |
| CLAY Award (California Lawyer of the Year - civil rights) - California Lawyer Magazine | 2008 |
| Top 75 Women Litigators in California - Daily Journal | 2008, 2013 |
| California Super Lawyers - Top 50 Women Lawyers in Southern California | 2014 |
| National Lawyers Guild, Los Angeles Law for the People Award | 2014 |
| ACLU Lifetime Achievement Award | 2017 |

Electronically FILED by Superior Court of California, County of Los Angeles on 01/14/2022 01:11 PM Sherri R. Carter, Executive Officer/Clerk of Court, by S. Bolden,Deputy Clerk

GREENBERG TRAURIG, LLP
Eric V. Rowen (SBN 106234)
Matthew R. Gershman (SBN 253031)
1840 Century Park East, Suite 1900
Los Angeles, California 90067
Telephone:    (310) 586-7700
Facsimile:    (310) 586-7800
Email:        RowenE@GTlaw.com
              GershmanM@GTlaw.com

Attorneys for Respondents

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| ANN M. SIMONS, individually and as the Designated Representative of Family 3,<br><br>Petitioner,<br><br>v.<br><br>THE ENTERPRISE, a business enterprise, GILAD LUMER, individually and as the Designated Family Representative of Family 1, HARRY LUMER, SR., individually and as the Designated Family Representative of Family 2, STUART RUBIN, individually and as a Representative of Family 4, and DAVID WANK, individually and as the Representative of Family 5,<br><br>Respondents.<br><br>AND RELATED CROSS-ACTION. | CASE NO. 19STCP01994<br>[Related to Case No. BS127141]<br><br>[Assigned for all purposes to Hon. Randolph M. Hammock, Dept. 47]<br><br>**DECLARATION OF ERIC V. ROWEN IN SUPPORT OF RESPONDENTS' MOTION FOR ATTORNEYS' FEES**<br><br>[Filed Concurrently with Notice of Motion and Motion for Attorneys' Fees and [Proposed] Order]<br><br>Date:  March 11, 2022<br>Time:  9:00 a.m.<br>Dept.:  47<br><br>**RESERVATION NO. 338002096520**<br><br>Action filed:  May 21, 2019 |

DECLARATION OF ERIC V. ROWEN IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

*ACTIVE 62180462v4*

## DECLARATION OF ERIC V. ROWEN

I, Eric V. Rowen, declare as follows:

1.    I am an attorney at law duly licensed to practice by the State of California and before this Court.  I am a shareholder at Greenberg Traurig, LLP, and am counsel responsible for the representation of Respondents The Enterprise, Gilad Lumer, Harry Lumer, Sr., Stuart Rubin, and David Wank ("Respondents").  As such, I have personal knowledge of the following facts, except as to those matters which are based on information and belief, as to which I believe them to be true, and I would competently testify thereto if necessary.

**The Enterprise Agreement and underlying arbitration**

2.    Respondents and Petitioner Ann Simons ("Petitioner") entered into an Enterprise Agreement in 2001.  In 2008, the Enterprise Agreement was amended to provide for a reorganization and termination of Petitioner's position as Vice President.  Attached hereto as **Exhibit 1** is a copy of the Enterprise Agreement.

3.    In 2008, Petitioner filed the underlying arbitration, seeking to unwind the amendment to the Enterprise Agreement, and Justice John Zebrowski (Ret.) was appointed as the arbitrator in early 2009.  The arbitration proceeded in phases, with issues relating to governance and the validity of the Amendment to be resolved first in Phase 1.  On March 3, 2010, Justice Zebrowski issued a Partial Final Award for the first phase, which confirmed the validity of the amendment to the Enterprise Agreement and new management structure.  Attached as **Exhibit 2** is a copy of the March 3, 2010 Phase 1 Partial Final Award.

**This Court confirms Justice Zebrowski's Phase I Partial Final Arbitration Award.**

4.    In June 2010, Respondents filed a petition to confirm the Phase 1 Partial Final Award, a copy of which is attached as **Exhibit 3**.  The Court subsequently entered an Order in favor of Respondents and against Petitioner.  Attached as **Exhibit 4** is a copy of the Court's (Hon. Judge Alarcon) Order confirming the Phase I Partial Final Award.

**Petitioner tries and fails to replace Justice Zebrowski in the arbitration.**

5.    Unhappy with the prior outcome from Phase I, Petitioner sent a letter to the AAA requesting disqualification of Justice Zebrowski in 2014.  Petitioner's effort was unsuccessful.

**Justice Zebrowski orders a further phasing of the arbitration.**

6.    In 2015, after Petitioner's attempts to replace the arbitrator failed, Justice Zebrowski asked the parties to provide updated statements identifying the issues to be tried in Phase II.  On May 15, 2015, both sides updated their arbitration claims.

7.    After briefing and argument, and in order to expedite the separation of the two side's respective business interests, Justice Zebrowski ordered further phasing and determined that the separation

DECLARATION OF ERIC V. ROWEN IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

*ACTIVE 62180462v4*

issues would be adjudicated before any claims for monetary relief.  A copy of Justice Zebrowski's Order explaining that is attached as **Exhibit 5.**

**Phase II concludes with Justice Zebrowski issuing the Phase II Partial Final Arbitration Award.**

8.    Phase II evidentiary hearings were held in December 2015, as well as an additional 18 days spanning August 2017 to August 2018.  After closing briefing and argument, and after receiving and considering comments from both sides about a tentative ruling, Justice Zebrowski issued his Phase II Partial Final Arbitration Award, a copy of which is attached as **Exhibit 6.**

**Petitioner unsuccessfully seeks to vacate the Phase II Partial Final Arbitration Award.**

9.    On May 21, 2019, Petitioner filed her petition to vacate the Phase II Partial Final Award.  Respondents filed a cross-petition for confirmation of the Phase II Partial Final Award.  Although Petitioner had filed a lengthy petition to vacate at the outset of this action, Petitioner additionally filed a motion to vacate.

10.    The parties then filed their respective opposition papers to the dueling cross-petitions.

11.    On February 27, 2020, this Department heard the matter and—based on Petitioner's false assertions at the hearing—ordered supplemental briefing.  The parties then filed their respective supplemental briefs, along with briefing regarding Petitioner's objections to Respondent's brief.

12.    On April 7, 2020, this Court issued its ruling, denying Petitioner's petition and motion to vacate, and granting Respondents' cross-petition to confirm the Phase II Partial Final Arbitration Award.  Attached as **Exhibit 7** is a copy of the Court's April 7, 2020 Minute Order.  Respondents submitted a proposed form of judgment, to which Petitioner did not object, and, on May 12, 2020, almost a full year after this action began, this Court entered Judgment in Respondents' favor, providing that "Respondents are the prevailing parties" and "may seek their attorneys' fees for this action by motion."  Attached as **Exhibit 8** is a copy of the Notice of Entry of Judgment.

**Petitioner's Merits Appeal**

13.    On May 28, 2020, Petitioner filed a notice of appeal from this Court's May 12, 2020 Judgment.

14.    Due to Respondent Harry Lumer's senior status and the imminent risks posed at the time by COVID-19, Respondents filed a motion for calendar preference on July 8, 2020.  Attached as **Exhibit 9** is a copy of Respondents' motion for calendar preference (exhibits omitted for brevity).  Petitioner opposed.  Respondents filed their reply brief on July 24, 2020.  Attached as **Exhibit 10** is a copy of Respondents' reply.  The Court of Appeal denied calendar preference.

15.    The Reporter's Transcript was finished on October 9, 2020.  Over a month later, on November 12, 2020, Petitioner filed a request for an extension to file her opening brief, which

3

DECLARATION OF ERIC V. ROWEN IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

*ACTIVE 62180462v4*

Respondents did not oppose and which was granted. On December 10, 2020, Petitioner filed a second request for an extension to file her opening brief; Respondents again did not oppose, and it was granted. Then, on January 14, 2021, Petitioner filed a third request for an extension of time to file her opening brief; this time, Respondents opposed. Attached as **Exhibit 11** is a copy of Respondents' opposition to Petitioner's third request (exhibits omitted for brevity). The Court of Appeal granted Petitioner's third extension request, but also held no further extensions would be granted. Attached hereto as **Exhibit 12** is a copy of the Court of Appeal's order.

16.    Almost a full year after taking the appeal, on March 8, 2021, Petitioner filed her opening brief. Petitioner also filed an eleven-volume appendix totaling 4,435 pages. Attached hereto as **Exhibit 13** is a copy of Petitioner's opening brief.

17.    Respondents then filed their respondents' brief and a motion for judicial notice. Attached hereto as **Exhibits 14** and **15** are copies of the respondents' brief and motion for judicial notice, respectively.

18.    After the respondents' brief was filed, the Fourth Appellate District issued a new decision relevant to the appeal; Respondents filed a supplemental authority letter, bringing the new decision to the Court of Appeal's attention under Rule of Court 8.254. Attached as **Exhibit 16** is a copy of the supplemental authority letter.

19.    Petitioner opposed Respondents' motion for judicial notice and also filed an appellant's reply brief.

20.    On August 16, 2021, the Court of Appeal sent the parties a letter requesting supplemental briefing on a certain issue in the appeal, and the parties filed their supplemental letter briefs on August 27, 2021. Attached hereto as **Exhibits 17** and **18** are copies of the Court's letter and Respondents' supplemental letter brief.

21.    The Court of Appeal heard oral argument on September 13, 2021, and, within the month, issued its unpublished Opinion in favor of Respondents. Attached as **Exhibit 19** is a copy of the Court of Appeal's Opinion. The Court of Appeal rejected every one of Petitioner's attacks on this Court's judgment and the underlying arbitration award, holding "the trial court properly denied the petition to vacate the arbitration award," and that "there is no merit to Simons's objections to the arbitrator's award." The Opinion further concluded Respondents were entitled to an interlocutory judgment confirming the Phase II Partial Final Arbitration Award and "may recover their appellate costs."

22.    The Court of Appeal issued the remittitur on December 6, 2021. Attached as **Exhibit 20** is a copy of the Court of Appeal's Remittitur. The remittitur stated that the Court of Appeal's September

DECLARATION OF ERIC V. ROWEN IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

*ACTIVE 62180462v4*

30 opinion had "now become final," and confirmed again that Respondents "may recover their appellate costs."

**Petitioner's Fees/Costs Appeal**

23.     Still pending before the Court of Appeal as Case No. B309885 is Petitioner's separate appeal taken from this Court's post-judgment orders awarding Respondents their prevailing-party attorney's fees and costs.  This Court may recall Petitioner opposed Respondents' post-judgment fee motion.  Attached as **Exhibit 21** is a copy of my declaration (without exhibits) filed on July 1, 2020 in support of Respondents' post-judgment fee motion.  Attached as **Exhibit 22** is a copy of Petitioner's opposition (without exhibits).

24.     This Court heard Respondents' last prevailing-party fee motion on October 7, 2020. Attached as **Exhibit 23** is a copy of the transcript from the October 7, 2020 hearing.  Attached as **Exhibit 24** is a copy of the Court's October 8, 2020 Order granting Respondents' last prevailing-party fee motion.

25.     To be clear, this information regarding Petitioner's appeal from the post-judgment fee and cost award is provided for context.  The work performed for those post-judgment proceedings and Petitioner's appeal therefrom is not included in the lodestar for this motion.  Only the work involved with Petitioner's appeal from the judgment, and the work to prepare this fees motion is included in this motion's fee request.

**Respondents' Requested Attorneys' Fees**

26.     Respondents had a core team of attorneys handle Petitioner's appeal from the judgment. That team included myself, shareholder Scott Bertzyk, shareholder Matthew R. Gershman, and associate Layal Bishara.

27.     I am a commercial civil litigation shareholder at Greenberg Traurig, LLP, and the Co-Chair of the Real Estate Litigation Practice and Chair of the Western Region Real Estate Litigation Group.  I have particular experience in litigation involving real estate, real estate financing, commercial real estate leasing, real estate related bankruptcies, and trusts holding vast real estate assets, as well as experience in litigation and pre-litigation counseling involving securitized loan portfolios, bond financings, loan and loan portfolio workouts and restructurings, construction financing, partnership and joint venture disputes, complex eminent domain, lease disputes, entitlements, title issues, title insurance, and real property related environmental matters.  Attached as **Exhibit 25** is a copy of my biography pulled from the firm's website. I have been lead counsel in the underlying arbitration and related court proceedings since inception in 2008 and have headed up the litigation team in this action, setting overall strategy, supervising drafting of briefing, handling trial court appearances, and otherwise directing the litigation.

DECLARATION OF ERIC V. ROWEN IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

*ACTIVE 62180462v4*

28.     Scott D. Bertzyk is a shareholder in Greenberg Traurig, LLP's litigation and appellate groups, with particular experience in disputes involving real estate, family trust management, and appellate issues.  Attached as **Exhibit 26** is a copy of Mr. Bertzyk's biography pulled from the firm's website.  Mr. Bertzyk had primary responsibility for directing briefing strategy on appeal, revisions to appellate court draft papers, and handling the appellate oral argument.

29.     Matthew R. Gershman is a shareholder in Greenberg Traurig, LLP's litigation and appellate groups, with particular experience in disputes involving real estate, family trust management, copyright and trademark claims, and class actions.  Attached as **Exhibit 27** is a copy of Mr. Gershman's biography pulled from the firm's website.  Mr. Gershman had primary responsibility for drafting the appellate court filings and for managing the case on a day-to-day basis.

30.     One litigation associate provided additional assistance for the appeal.  Ms. Bishara was principally responsible for research support, as well as initial drafting of Respondents' motion for calendar preference and a motion for judicial notice.  Attached as **Exhibit 28** is a copy of Ms. Bishara's biography from the firm's website.

31.     Care was taken in the staffing and delegation of responsibility to avoid overlap and duplication.  Thus, Mr. Gershman ran point on the briefs and was the principal appellate drafter on the team, while I supervised overall strategy and had final review on briefs and other court filings.  Mr. Bertzyk took the lead on oral argument, directing briefing strategy, and aided in revising the respondents' brief and supplemental letter brief.  And Ms. Bishara contributed primarily in a support and research role, and occasionally with initial drafting, as detailed above.  The delegation of work by experience level is further evidenced in the breakdown of billed hours detailed in charts provided below.  Additionally, for the sake of computing a conservative lodestar, other billing timekeepers on the appeal—such as paralegal support—have not been included in this fee request.

32.     I have reviewed the time entries for this matter to determine how much time was billed by each attorney timekeeper in the core team (and the year in which that time was billed) for work on Petitioner's appeal taken from the judgment.  The total hours incurred by each such attorney with respect to this appeal are as set forth in the chart below:

DECLARATION OF ERIC V. ROWEN IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

*ACTIVE 62180462v4*

| Timekeeper | Title | Law School graduation year | Hours (and year in which hours worked) | Totals |
|---|---|---|---|---|
| Eric Rowen | Shareholder | 1982 | 1.6 (2020) | 9.0 |
| | | | 7.4 (2021) | |
| Scott Bertzyk | Shareholder | 1984 | 32.5 (2021) | 32.5 |
| Matthew Gershman | Shareholder | 2007 | 14.9 (2020) | 116.6 |
| | | | 101.7 (2021) | |
| Layal Bishara | Associate | 2019 | 6.4 (2020) | 28 |
| | | | 21.6 (2021) | |
| | | | | **186.1** |

33. Only 2.4 of these total hours—billed at $3,002.00 dollars—come from time entries commonly referred to as "block-billed" entries. In these few instances, I carefully analyzed the block-billed entries to determine the portion attributable to these appellate proceedings, to arrive at 2.4 total hours from block-billed time. In doing so, I was conservative in leaning toward not including billed time from those handful of entries.

34. The work performed by each attorney also breaks down further as follows:

| **Motion Practice re: Calendar Preference** | | | | | |
|---|---|---|---|---|---|
| Year | Timekeeper | Research | Legal Analysis, Planning & Outlining, and Drafting/Revising | Overseeing Strategy | Totals |
| 2020 | Rowen | 0 | 0 | .4 | .4 |
| | Gershman | 0 | 11.1 | 1.5 | 12.6 |
| | Bishara | 0 | 4 | 0 | 4 |
| **Totals** | | **0** | **15.1** | **1.9** | **17** |

| **Motion Practice re: Petitioner's Extensions** | | | | | |
|---|---|---|---|---|---|
| Year | Timekeeper | Research | Legal Analysis, Planning & Outlining, and Drafting/Revising | Overseeing Strategy | Totals |
| 2020 | Rowen | 0 | 0 | 1.2 | 1.2 |
| | Gershman | 0 | 1.8 | .2 | 2 |
| 2021 | Rowen | 0 | 0 | 1.5 | 1.5 |
| | Gershman | 0 | .7 | 0 | .7 |
| **Totals** | | **0** | **2.5** | **2.9** | **5.4** |

7

DECLARATION OF ERIC V. ROWEN IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

*ACTIVE 62180462v4*

| Respondents' Brief, Motion for Judicial Notice, Supplemental Authority Letter | | | | | |
|---|---|---|---|---|---|
| Year | Timekeeper | Research | Legal Analysis, Planning & Outlining, and Drafting/Revising | Overseeing Strategy | Totals |
| 2020 | Gershman | 0 | 0 | .3 | .3 |
| | Bishara | 1.3 | 0 | 0 | 1.3 |
| 2021 | Rowen | 0 | .5 | 3.8 | 4.3 |
| | Gershman | 0 | 75.4 | 0 | 75.4 |
| | Bertzyk | 0 | 14 | 0 | 14 |
| | Bishara | 12 | 3.6 | 0 | 15.6 |
| **Totals** | | **13.3** | **93.5** | **4.1** | **110.9** |

| Supplemental Letter Brief requested by Court of Appeal | | | | | |
|---|---|---|---|---|---|
| Year | Timekeeper | Research | Legal Analysis, Planning & Outlining, and Drafting/Revising | Overseeing Strategy | Totals |
| 2021 | Rowen | 0 | .7 | .4 | 1.1 |
| | Gershman | 0 | 22.3 | .9 | 23.2 |
| | Bertzyk | 0 | 5.5 | 0 | 5.5 |
| | Bishara | 4.5 | 1.5 | 0 | 6 |
| **Totals** | | **4.5** | **30** | **1.3** | **35.8** |

| Preparing for and Attending Oral Argument (and other miscellaneous tasks) | | |
|---|---|---|
| Year | Timekeeper | **Time** |
| 2020 | Bishara | 1.1 |
| 2021 | Rowen | .5 |
| | Gershman | 2.4 |
| | Bertzyk | 13 |
| **Total** | | **17** |

35.    With respect to the immediately above chart—"Preparing for and Attending Oral Argument (and other miscellaneous tasks)"—15 of the 17 hours consisted of preparing for and attending oral argument, and the remaining 2 hours involved corresponding with the court, and dealing with transcript designations.

36.    Respondents' core team of professionals each charged the following hourly rates for work on this appeal:

8

DECLARATION OF ERIC V. ROWEN IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

*ACTIVE 62180462v4*

| Timekeeper | Title | Law School graduation year | Hourly Rate(s) (and year in which hourly rate applied) |
|---|---|---|---|
| Rowen | Shareholder | 1982 | $1,315 (2020) |
| | | | $1,380 (2021) |
| Bertzyk | Shareholder | 1984 | $1,260 (2021) |
| Gershman | Shareholder | 2007 | $890 (2020) |
| | | | $935 (2021) |
| Bishara | Associate | 2019 | $515 (2020) |
| | | | $585 (2021) |

37.    Thus, the lodestar for these appellate services based on the hours and rates identified above, are as set forth in the chart below:

| Timekeeper | Hours (and year in which hours worked) | Hourly Rate(s) (and year in which hourly rate applied) | Fees |
|---|---|---|---|
| Rowen | 1.6 (2020) | $1,315 (2020) | $2,104.00 |
| | 7.4 (2021) | $1,380 (2021) | $10,212.00 |
| Bertzyk | 32.5 (2021) | $1,260 (2021) | $40,950.00 |
| Gershman | 14.9 (2020) | $890 (2020) | $13,261.00 |
| | 101.7 (2021) | $935 (2021) | $95,089.50 |
| Bishara | 6.4 (2020) | $515 (2020) | $3,296.00 |
| | 21.6 (2021) | $585 (2021) | $12,636.00 |
| **TOTAL** | **186.1** | | **$177,548.50** |

38.    I personally reviewed the billings on which the summaries above are based, and I supervised the preparation of these summaries based on review of contemporaneous firm records reflecting total billings, and time records reflecting the work performed by our team on a month-by-month basis. I personally am familiar with the way in which such records are kept and can attest that our time records are inputted at or near the time of the events reflected therein and are kept and maintained electronically in the ordinary course of our firm's business.

39.    I also supervise collections on billings for this matter, and the hourly rates identified above that were billed for this appellate work are, in fact, paid in this case.

40.    The work involved in this appeal was substantial and caused Respondents to incur the fees requested. Not only did Respondents need to deal with Petitioner's numerous delays and then respond to a lengthy opening brief with eleven volumes of exhibits appended, but Respondents also were directed by the Court of Appeal to file a supplemental letter brief. Ultimately, the work underlying this fees request was successful, resulting in a 38-page Opinion in Respondents' favor.

41.    All things considered, and as detailed herein and in the Motion, these fees were necessarily and reasonably incurred, especially considering the work involved, the experience and skill of the attorneys involved, and the prevailing rates at other comparable law firms in Los Angeles.

9

DECLARATION OF ERIC V. ROWEN IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

*ACTIVE 62180462v4*

42.     For context, Greenberg Traurig, LLP, was ranked in May 2017 as the largest U.S. law firm, with more than 35 locations at that time throughout the United States and abroad and more than 1,700 attorneys in the United States.  Attached as **Exhibit 29** is a copy of an article titled "Turning 50, Greenberg Traurig Tops the Law360 400," <www.law360.com/articles/929048>.  The firm has grown now to have 41 offices worldwide.  The Real Estate Litigation Practice Group that I chair was awarded 2017 "Law Firm of The Year – Real Estate Litigation," U.S. News—Best Lawyers.

43.     With that context in mind, attached as **Exhibit 30** is a copy of The National Law Journal's 2015 survey of hourly billing rates.  According to the 2015 Survey, five years before this appeal was even filed, when rates were generally lower than those charged in 2020 and 2021, the average partner hourly rates at 49 other comparable firms ranged from $715 to $1,055, and the average associate hourly rates at those same firms ranged from $290 to $678.

44.     By way of further example, in 2018 to support her own fee application in prior litigation between these same parties as evidence of reasonable hourly rates, Petitioner submitted a Thomson Reuters California Region survey from December 2016—which shows that four years before this appeal was filed, when rates were generally lower than those charged in 2020 and 2021, partner hourly billing rates ranged from $675 (for a 6th-year partner) to $1,350 (for a 32-year partner), while associate hourly billing rates ranged from $675 to $995 (excluding one outlier 16-year associate's billing rate).  While Petitioners' entire fee application from that prior action are in the Court's records, the filing exceeds 500 pages; accordingly, for the Court's convenience, attached as **Exhibit 31** is a copy of the relevant portions of Petitioners' fee application from that prior action (Case No. BC667970), as well the Thomson Reuters California Region surveys on which Petitioner relied and that she submitted to the Court.  Though the Court denied Petitioner's fee application in that prior litigation, it was because Petitioner was not a prevailing party in that matter either.  Attached as **Exhibit 32** is a copy of the Court's April 18, 2018 Minute Order denying Petitioner's fee application in that case on that ground.

45.     Additionally, a June 2021 Report by PricewaterhouseCoopers LLP ("PWC Survey") further supports the conclusion that the above-referenced hourly rates are consistent with, or less than, the prevailing rates charged by non-IP litigation practice groups that operate offices in Los Angeles.  I understand that Greenberg Traurig, LLP's subscription agreement with PricewaterhouseCoopers LLP does not permit me to include the PWC Survey as an exhibit to this declaration.  However, according to the PWC Survey, at other firms in Los Angeles with non-IP litigation practice groups, (i) the 1st Quartile for the hourly rate of equity non-IP litigation partners with 36-40 years' experience was $1,321, as compared to my hourly rates of $1,315 in 2020 and $1,380 in 2021, respectively, and to Mr. Bertzyk's hourly rate in 2021 of $1,260, (ii) the 1st Quartile for the hourly rate of equity non-IP litigation partners

10

DECLARATION OF ERIC V. ROWEN IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

*ACTIVE 62180462v4*

with 11-15 years' experience was $1,175 (and the median rate was $1,070), as compared to Mr. Gershman's hourly rates in 2020 and 2021 of $890 and $935, respectively, and (iii) the 1st Quartile for the hourly rate of 1st-year and 2nd-year non-IP litigation associates was $600 and $653, respectively, as compared to Ms. Bishara's hourly rate as a 1st and 2nd-year associate of $515 and $585, respectively.

46.    In sum, based on the PWC Survey, and consistent with my extensive experience and successful track record, my rates in 2020 and 2021 would rank right around the first quartile of 2021 rates charged by comparably experienced equity partners in non-IP litigation practice groups in Los Angeles, though it still would be less than (or in 2021, slightly higher than) rates charged in 2016 by a partner with lesser experience according to Petitioner's Thomson Reuters California Region Survey.  Mr. Bertzyk's rate in 2021 would rank below the first quartile of 2021 rates charged by comparably experienced equity partners in non-IP litigation practice groups in Los Angeles, though it still would be less than rates charged in 2016 by a partner with lesser experience according to Petitioner's Thomson Reuters California Region Survey.  Moreover, when comparing 2016 rates to our rates in 2020 or 2021, one must keep in mind that 2016 rates were generally lower than those charged in 2020 and 2021.  Indeed, a recent ABA Journal article stated that partners at comparable firms have increased their hourly rates to $2,000.  A copy of the ABA Journal article is attached hereto as **Exhibit 33**.  As for the rest of the core team of professionals, based on the PWC Survey, all their rates during 2020 or 2021 would rank far below the first quartile of 2021 rates charged by comparably experienced non-IP litigation attorneys in comparable practice groups in Los Angeles, and Mr. Gershman's rates would rank below even the median 2021 rate charged by comparably experienced equity partners in non-IP litigation practice groups in Los Angeles.  The 2020 and 2021 rates for Mr. Gershman and Ms. Bishara also compare similarly to the rates noted in the surveys from several years prior in 2015 (by the National Law Journal) and 2016 (by Thomas Reuters).

47.    Moreover, the fees requested here also are reasonable when considering the stakes.  The arbitration award at issue concerned the in-kind allocation of assets based on relative equity values, where (i) Petitioner's expert in the arbitration opined the assets had a total equity value of $399,900,000, and (ii) Respondents' expert opined the total equity value was $127,617,000.  A copy of the relevant excerpt from Petitioner's expert's exhibit in the underlying arbitration, showing his opinion of total equity value, is attached as **Exhibit 34**, and a copy of Respondents' expert's opinion showing the same is attached as **Exhibit 35**.  Either way, as shown in **Exhibit 6** (at pp. 9-11), Justice Zebrowski's Phase II Partial Final Arbitration Award awarded assets equal to 78% of the total equity value to Respondents, and assets equal to 22% of the total equity value to Petitioner.  Thus, the stakes here were objectively large.

48.    In addition to the appellate fees requested, the lodestar fees for preparing this motion and its supporting papers are as follows:

DECLARATION OF ERIC V. ROWEN IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

*ACTIVE 62180462v4*

| Timekeeper | Hours (and year in which hours worked) | Hourly Rate(s) (and year in which hourly rate applied) | Fees |
|---|---|---|---|
| Rowen | 1.7 (2022) | $1,450 (2022) | $2,465.00 |
| Gershman | 1.2 (2021) | $935 (2021) | $1,122.00 |
| | 5.5 (2022) | $990 (2022) | $5,445.00 |
| Bishara | 5.8 (2021) | $585 (2021) | $3,393.00 |
| | 9 (2022) | $665 (2022) | $5,985.00 |
| **TOTAL** | **23.2** | | **$18,410.00** |

49.     Thus, adding the fees incurred for this motion to the requested appellate fees equals a total fee request of $195,958.50.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed this 14th day of January 2022.

_____/s/ Eric V. Rowen_____

12

DECLARATION OF ERIC V. ROWEN IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

*ACTIVE 62180462v4*

Case 8:19-cv-01532-DOC-DFM   Document 387-3   Filed 09/05/25   Page 371 of 484
Page ID #:27684
Case 4:16-cv-06557-HSG   Document 127-9   Filed 01/18/22   Page 1 of 177

ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS (213113)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
        – and –
SPENCER A. BURKHOLZ (147029)
THEODORE J. PINTAR (131372)
LUKE O. BROOKS (212802)
ERIC I. NIEHAUS (239023)
JEFFREY J. STEIN (265268)
ERIKA OLIVER (306614)
NATALIE F. LAKOSIL (322836)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
spenceb@rgrdlw.com
tedp@rgrdlaw.com
lukeb@rgrdlaw.com
eniehaus@rgrdlaw.com
jstein@rgrdlaw.com
eoliver@rgrdlaw.com
nlakosil@rgrdlaw.com

Lead Counsel for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| GREG FLEMING, Individually and on Behalf of All Others Similarly Situated, <br><br>                     Plaintiff, <br><br>   vs. <br><br> IMPAX LABORATORIES INC., et al., <br><br>                  Defendants. | Case No. 4:16-cv-06557-HSG <br><br> <u>CLASS ACTION</u> <br><br> DECLARATION OF LUKE O. BROOKS FILED ON BEHALF OF ROBBINS GELLER RUDMAN & DOWD LLP IN SUPPORT OF APPLICATION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES <br><br> DATE:  March 31, 2022 <br> TIME:   2:00 p.m. <br> CTRM:  2, 4th Floor <br> JUDGE:  Honorable Haywood S. Gilliam, Jr. |

4869-4996-0199.v1

Case 2:13-cv-01532-DOC-DFM   Document 387-5   Filed 02/06/25   Page 372 of 484
Page ID #:37685
Case 4:16-cv-06557-HSG   Document 127-9   Filed 01/18/22   Page 2 of 177

I, LUKE O. BROOKS, declare as follows:

1.      I am a member of the firm of Robbins Geller Rudman & Dowd LLP ("Robbins Geller" or the "Firm").  I am submitting this declaration in support of my Firm's application for an award of attorneys' fees, expenses and charges ("expenses") in connection with services rendered in the above-entitled action (the "Litigation").

2.      This Firm is Lead Counsel of record for Lead Plaintiff New York Hotel Trades Council & Hotel Association of New York City, Inc. Pension Fund, class representative Sheet Metal Workers' Pension Plan of Southern California, Arizona and Nevada and the Class herein.

3.      The information in this declaration regarding the Firm's time and expenses is taken from time and expense reports and supporting documentation prepared and/or maintained by the Firm in the ordinary course of business.  I am the partner who oversaw and/or conducted the day-to-day activities in the Litigation and I reviewed these reports (and backup documentation where necessary or appropriate) in connection with the preparation of this declaration.  The purpose of this review was to confirm both the accuracy of the entries on the printouts as well as the necessity for, and reasonableness of, the time and expenses committed to the Litigation.  As a result of this review, reductions were made to both time and expenses in the exercise of billing judgment.  Based on this review and the adjustments made, I believe that the time reflected in the Firm's lodestar calculation and the expenses for which payment is sought herein are reasonable and were necessary for the effective and efficient prosecution and resolution of the Litigation.  In addition, I believe that these expenses are reasonable and were necessary for the effective and efficient prosecution and resolution of the Litigation.

4.      After the reductions referred to above, the number of hours spent on the Litigation by the Firm is 4,718.00.  A breakdown of the lodestar is provided in the attached Exhibit A.  The lodestar amount for attorney/paraprofessional time based on the Firm's 2021 rates is $3,815,664.75.  The hourly rates shown in Exhibit A are the Firm's regular 2021 rates in contingent cases set by the

DECL OF LUKE BROOKS ON BEHALF OF ROBBINS GELLER RUDMAN & DOWD LLP IN SUPPORT OF APP FOR AWARD OF FEES AND EXPENSES - 4:16-cv-06557-HSG          - 1 -
4869-4996-0199.v1

Case 2:19-cv-01532-DOC-DFM    Document 387-3    Filed 09/06/25    Page 373 of 484
Page ID #:37680
Case 4:16-cv-06557-HSG   Document 127-3   Filed 01/18/22   Page 3 of 177

Firm for each individual. These hourly rates are consistent with hourly rates submitted by the Firm to state and federal courts during 2021 in other securities class action litigation. The Firm's rates are set based on periodic analysis of rates charged by firms performing comparable work both on the plaintiff and defense side. For personnel who are no longer employed by the Firm, the "current rate" used for the lodestar calculation is based upon the rate for that person in his or her final year of employment with the Firm.

5. The Firm seeks an award of $176,501.78 in expenses and charges in connection with the prosecution of the Litigation. Those expenses and charges are summarized by category in the attached Exhibit B.

6. The following is additional information regarding certain of these expenses:

(a) Filing, Witness and Other Fees: $2,273.35. These expenses have been paid to the Court for filing fees and to attorney service firms or individuals who either: (i) served process of the complaint or subpoenas; or (ii) obtained copies of court documents for plaintiffs. The vendors who were paid for these services are set forth in the attached Exhibit C.

(b) Transportation, Hotels & Meals: $3,834.77. In connection with the prosecution of this case, the Firm has paid for travel expenses to attend court hearings. The date, destination and purpose of each trip is set forth in the attached Exhibit D.

(c) Court Hearing Transcripts: $256.75. The vendors who were paid for these services are listed in the attached Exhibit E.

(d) Consultants/Investigators: $97,882.00.

(i) Tasta Group (dba Caliber Advisors, Inc.) ("Caliber"): $55,387.50. Lead Plaintiff retained the services of Caliber, a valuations and economic consulting firm and its managing director, Bjorn Steinholt, CFA, to assist in financial analysis of materiality, loss causation, market efficiency, and damages. Caliber specializes in financial analyses and related economic

7.    The expenses pertaining to this case are reflected in the books and records of this Firm.  These books and records are prepared from receipts, expense vouchers, check records and other documents and are an accurate record of the expenses.

8.    The identification and background of my Firm and its partners is attached hereto as Exhibit F.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 18th day of January, 2022, at San Diego, California.

*s/Luke O. Brooks*
LUKE O. BROOKS

DECL OF LUKE BROOKS ON BEHALF OF ROBBINS GELLER RUDMAN & DOWD LLP IN SUPPORT OF APP FOR AWARD OF FEES AND EXPENSES - 4:16-cv-06557-HSG                - 5 -

4869-4996-0199.v1

Case 2:19-cv-01532-DOC-DFM    Document 387-6    Filed 02/06/25    Page 375 of 484
Page ID #:37690
Case 4:16-cv-06557-HSG    Document 1279-9    Filed 01/18/22    Page 4 of 177

consulting services with Mr. Steinholt having more than 25 years of experience providing capital markets consulting. Mr. Steinholt provided Lead Counsel with substantial assistance in its economic analysis of market efficiency, materiality, loss causation and damages. Lead Counsel worked closely with Mr. Steinholt throughout the mediation process with Judge Phillips and, after reaching the Settlement, Mr. Steinholt assisted Lead Counsel in developing the proposed plan for allocating the settlement proceeds to eligible Class Members as set forth in the Notice.

(ii)    Gryphon Investigations (dba Gryphon Strategies) ("Gryphon"): $20,665.00. Gryphon is a private investigative firm retained by Lead Counsel to assist in the factual investigation of the claims alleged in the Second Amended Complaint. Gryphon's investigators reviewed and analyzed materials in preparation for the investigation, assisted in researching, identifying, and confirming the employment status of prospective witnesses, and conducted interviews with targeted witnesses, and prepared witness interview memoranda in connection with the Second Amended Complaint.

(iii)    Fideres Partners LLP ("Fideres"): $15,000.00. Fideres is a leading provider of economic analysis with specialization in antitrust matters. Fideres assisted Lead Counsel in understanding the structure of the generic drug market, and how that structure facilitated the alleged conspiracy. Fideres also provided statistical analyses related to various aspects of the generic drug market that were used in the First and Second Amended Complaints, and assisted in quantifying the impact of the alleged conspiracy.

(iv)    Soundview Intelligence LLC ("Soundview"): $6,829.50. Soundview is a private investigative firm retained by Lead Counsel to assist in the factual investigation of the claims alleged in the First Amended Complaint. Soundview's investigator reviewed and analyzed materials in preparation for the investigation, assisted in researching, identifying, and confirming the

Case 2:13-cv-01532-DOC-DFM    Document 387-5    Filed 04/06/25    Page 376 of 484
Page ID #:37699
Case 4:16-cv-06557-HSG    Document 127-9    Filed 01/18/22   Page 5 of 177

employment status of prospective witnesses, conducted interviews with targeted witnesses, and prepared witness interview memoranda in connection with the First Amended Complaint.

(e)     Outside Photocopies: $248.65.  The Firm paid $248.65 to an outside vendor for blowback printing and coil binding.

(f)     Online Legal and Financial Research: $9,556.98.  This category includes vendors such as LexisNexis Products, Thomson Financial, and Westlaw.  These resources were used to obtain access to SEC filings, factual databases, legal research and for cite-checking of briefs.  This expense represents the expenses incurred by Robbins Geller for use of these services in connection with this Litigation.  The charges for these vendors vary depending upon the type of services requested.  For example, Robbins Geller has flat-rate contracts with some of these providers for use of their services.  When Robbins Geller utilizes online services provided by a vendor with a flat-rate contract, access to the service is by a billing code entered for the specific case being litigated.  At the end of each billing period in which such service is used, Robbins Geller's costs for such services are allocated to specific cases based on the percentage of use in connection with that specific case in the billing period.  As a result of the contracts negotiated by Robbins Geller with certain providers, the Class enjoys substantial savings in comparison with the "market-rate" for *a la carte* use of such services which some law firms pass on to their clients.  For example, the "market rate" charged to others by LexisNexis for the types of services used by Robbins Geller is more expensive than the rates negotiated by Robbins Geller.

(g)     Mediation Fees (Phillips ADR Enterprises, P.C.): $62,097.50.  The parties retained former United States District Judge, Layn Phillips of Phillips ADR, to serve as mediator.  Judge Phillips conducted a full-day mediation, followed by additional mediation sessions and negotiations leading to the settlement of the Litigation.

DECL OF LUKE BROOKS ON BEHALF OF ROBBINS GELLER RUDMAN & DOWD LLP IN
SUPPORT OF APP FOR AWARD OF FEES AND EXPENSES - 4:16-cv-06557-HSG          - 4 -
4869-4996-0199.v1

Case 2:19-cv-01532-DOC-DFM   Document 387-6   Filed 09/06/25   Page 377 of 484
Case 4:16-cv-06557-HSG   Document 127-9   Filed 01/18/22   Page 7 of 177
Page ID #:37690

# EXHIBIT A

Case 2:19-cv-01512-DOC-DFM   Document 387-6   Filed 09/06/25   Page 378 of 484
Page ID #:23691
Case 4:16-cv-06557-HSG   Document 127-9   Filed 01/18/22   Page 8 of 177

**EXHIBIT A**

*Fleming v. Impax Laboratories Inc., et al.*, Case No. 4:16-cv-06557-HSG
Robbins Geller Rudman & Dowd LLP
Inception through January 13, 2022

| NAME | | HOURS | RATE | LODESTAR |
|---|---|---|---|---|
| Alba, Mario | (P) | 38.60 | 870 | $    33,582.00 |
| Brooks, Luke O. | (P) | 844.80 | 945 | 798,336.00 |
| Burkholz, Spencer A. | (P) | 47.50 | 1200 | 57,000.00 |
| Daley, Joseph D. | (P) | 6.10 | 970 | 5,917.00 |
| Gusikoff Stewart, Ellen A. | (P) | 6.00 | 1080 | 6,480.00 |
| Lau, Angel P. | (P) | 908.80 | 760 | 690,688.00 |
| Love, Andrew S. | (P) | 48.50 | 1150 | 55,775.00 |
| Niehaus, Eric I. | (P) | 597.45 | 840 | 501,858.00 |
| Pintar, Theodore J. | (P) | 163.90 | 1100 | 180,290.00 |
| Robbins, Darren J. | (P) | 26.65 | 1325 | 35,311.25 |
| Stein, Jeffrey J. | (P) | 304.55 | 780 | 237,549.00 |
| Lakosil, Natalie F. | (A) | 17.10 | 425 | 7,267.50 |
| McGuire, Sean C. | (A) | 15.00 | 450 | 6,750.00 |
| Oliver, Erika L. | (A) | 446.30 | 520 | 232,076.00 |
| Tull, Joseph J. | (A) | 8.30 | 175 | 1,452.50 |
| Alexander, Susan K. | (OC) | 570.50 | 1150 | 656,075.00 |
| McCormick, Tricia | (OC) | 28.50 | 935 | 26,647.50 |
| Schroder, Stephanie M. | (OC) | 48.00 | 895 | 42,960.00 |
| Walton, David C. | (OC) | 2.50 | 1080 | 2,700.00 |
| Koelbl, Terry R. | (FA) | 159.00 | 600 | 95,400.00 |
| Barhoum, Anthony J. | (EA) | 20.20 | 430 | 8,686.00 |
| Cabusao, Reggie F. | (EA) | 18.75 | 335 | 6,281.25 |
| Uralets, Boris | (EA) | 10.20 | 415 | 4,233.00 |
| Roelen, Scott R. | (RA) | 17.80 | 295 | 5,251.00 |
| Lewis, Bradley P. | (LS) | 5.00 | 150 | 750.00 |
| Torres, Michael | (LS) | 8.60 | 375 | 3,225.00 |
| Paralegals | | 327.65 | 275-350 | 109,861.25 |
| Document Clerks | | 21.75 | 150 | 3,262.50 |
| *TOTAL* | | *4,718.00* | | *$  3,815,664.75* |

(P) Partner                                    (EA) Economic Analyst
(A) Associate                                  (RA) Research Analyst
(OC) Of Counsel                                (LS) Litigation Support
(FA) Forensic Accountant

Case 8:23-cv-01582-DOC-DFM    Document 388-6    Filed 02/06/25    Page 379 of 484
Page ID #:33692
Case 2:19-cv-08000-DSF-RAO    Document 99-1    Filed 02/18/20    Page 1 of 251    Page ID
#:2552

James P. Fogelman, SBN 161584
Shannon E. Mader, SBN 235271
Katarzyna Ryzewska, SBN 300386
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, California 90071-3197
Telephone: (213) 229-7000
Facsimile: (213) 229-7520
JFogelman@gibsondunn.com
SMader@gibsondunn.com
KRyzewska@gibsondunn.com

Attorneys for Defendant
USC Keck School of Medicine

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DR. JEFFREY ISAACS,<br><br>Plaintiff,<br><br>v.<br><br>USC KECK SCHOOL OF MEDICINE. GIESEL SCHOOL OF MEDICINE AT DARTMOUTH, DARTMOUTH HITCHCOCK MEDICAL CENTER, NH BOARD OF MEDICINE, GIBSON, DUNN & CRUTCHER, LLP and JOHN or JANE DOE,<br><br>Defendants. | CASE NO. 2:19-CV-08000-DSF-RAO<br><br>**DECLARATION OF JAMES P. FOGELMAN IN SUPPORT OF DEFENDANT USC KECK SCHOOL OF MEDICINE'S MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>[Defendant's Notice of Motion and Motion for Attorneys' Fees and Cots, Declarations of Shannon Mader and Katarzyna Ryzewska, and Proposed Order Filed Concurrently herewith]<br><br>**Hearing**<br>Date:       March 30, 2020<br>Time:       1:30 PM<br>Location:  Courtroom 7D<br>Judge:     Hon. Dale S. Fischer |

Gibson, Dunn &
Crutcher LLP

DECLARATION OF JAMES P. FOGELMAN IN SUPPORT OF DEFENDANT USC KECK SCHOOL OF
MEDICINE'S MOTION FOR ATTORNEYS' FEES AND COSTS

# DECLARATION OF JAMES P. FOGELMAN

I, James P. Fogelman, declare:

1.    I am an attorney duly licensed to practice before this Court.  I am partner with the law firm of Gibson, Dunn & Crutcher LLP ("Gibson Dunn"), and I am one of the attorneys of record for USC Keck School of Medicine ("USC") in this action.  I am submitting this declaration in support of USC's Motion Attorneys' Fees and Costs.  I have personal knowledge of the facts set forth herein and if called as a witness, I could and would competently testify hereto.

2.    I graduated from the Wharton School of Economics at the University of Pennsylvania in 1989 and from the UCLA School of Law in 1992.  I was admitted to practice in the state and federal courts in California in 1992. I am also admitted to practice law in Nevada, Washington, D.C., and New York.  I have been an attorney with Gibson Dunn since 1992, and have been a partner with the firm since 2002.  I am also Co-Chair of Gibson Dunn's Law Firm Defense Practice Group.  Over my quarter-century of practice, I have developed expertise in representing clients in sports litigation, fantasy sports litigation, gaming and casino litigation, entertainment litigation, real estate litigation, and law firm defense litigation. My 2019 standard hourly billing rate was $1,265/hour. My 2020 standard hourly billing rate is $1,350/hour.

3.    Gibson Dunn is an international law firm with over 1,200 attorneys in 20 offices worldwide.  The firm was named Litigation Department of the Year by The American Lawyer in 2010, 2012, 2016, and 2019.

4.    I reviewed all of Gibson Dunn bills related to this matter.  In recording their time, attorneys at Gibson Dunn are required to specify the client and matter number, the nature of the work performed, and the amount of time expended on that task, and the bills reflect this information.  I am, therefore, familiar with the work performed and the amounts charged.  A chart detailing contemporaneous time entries is attached hereto as **Exhibit A**.  Exhibit A includes descriptions of the work performed by the attorneys. It also reflects their regular billing rates.

Gibson, Dunn &
Crutcher LLP

1

DECLARATION OF JAMES P. FOGELMAN IN SUPPORT OF DEFENDANT USC KECK SCHOOL OF
MEDICINE'S MOTION FOR ATTORNEYS' FEES AND COSTS

5. The work that Gibson Dunn attorneys have performed in connection with this matter has included, but is not limited to: reviewing Plaintiff's voluminous filings; researching and analyzing Plaintiff's claims; researching and reviewing Plaintiff's litigation history; researching and drafting three motions to dismiss and an anti-SLAPP motion; researching and drafting oppositions to Plaintiff's preliminary injunction motions, motion for leave to amend, and motion for reconsideration; and meeting and conferring with Plaintiff and his attorneys.

6. I personally have spent over 8.3 hours in connection with the matter. Shannon Mader spent over 48 hours on the matter, and Katarzyna Ryzewska spent over 167 hours on the matter. The total number of hours spent by all attorneys was 223.3. All told, USC incurred well over $182,925.97 in attorneys' fees to date, with approximately $142.384.95 incurred in the Prior Action and $40,541.02 in the present action, with approximately $5,092.64 attributable to the anti-SLAPP Motion to Strike (entries highlighted in blue in Exhibit A). Additionally USC incurred $1,009.32 in costs, with $371.34 in costs from the Prior Action ($168.80 of which is recoverable under L.R. 54-3.10 – entries highlighted in green in Exhibit A), and $637.98 from the present action ($104.53 of which is recoverable under L.R. 54-3.10 – entries highlighted in green in Exhibit A). USC is seeking a total of $182,925.97 in attorneys' fees plus $1,009.32 in costs by way of this Motion.  This total represents the total amount charged to the client, but not the significant amount of time and resources expended by Gibson Dunn in defending themselves in the present action. Based on my experience, I believe these fees were reasonably and necessarily incurred.

7. Based on my experience, including bringing and defending against various motions to dismiss, anti-SLAPP motions, and motions for preliminary injunctions, I believe that the attorneys' fees incurred by USC in this matter were both necessary and reasonable, particularly given the successful outcome of USC's Motion to Dismiss and anti-SLAPP Motion. I also believe that USC staffed and litigated this case in a reasonable, efficient, and appropriate manner.  The work has been performed primarily

2

Gibson, Dunn &
Crutcher LLP

DECLARATION OF JAMES P. FOGELMAN IN SUPPORT OF DEFENDANT USC KECK SCHOOL OF
MEDICINE'S MOTION FOR ATTORNEYS' FEES AND COSTS

Case 2:19-cv-01532-DOC-DFM    Document 387-6    Filed 04/06/25    Page 382 of 484
Case 2:19-cv-08000-DSF-RAO    Document 99-1    Filed 02/18/20    Page 4 of 251    Page ID
#:2555
Page ID #:33697

by three attorneys, one partner, one of counsel, and one associate, with the associate performing the largest share of the work for efficiency purposes.

8.    This amount does not reflect the significant amount of time and resources expended by Gibson Dunn, USC's counsel of record, in defending themselves in the present action.

9.    It is my belief that the fees charged by Gibson Dunn are reasonable. I have attached hereto as **Exhibit B** a true and correct copy of the Public Rates report, published by Thomson Reuters, showing the prevailing rates for California attorneys. The Public Rates report shows that the rates charged by Gibson Dunn are within the range of rates charged generally by similar firms engaged in similar work. For instance, the rates charged by Pachulski Stang Ziehl Young Jones & Weintraub in the 2019 *Sedgwick LLP* matter in the Northern District are roughly equivalent to the rates charged by Gibson Dunn here. Moreover, the hourly rates charged by Gibson Dunn for this matter are lower than the rates charged by the firm generally. The fact that thousands of sophisticated clients are willing to, and do, pay these rates on an ongoing basis is, in itself, evidence that the rates reflect the reasonable value of the services rendered by Gibson Dunn.

I declare under penalty of perjury and under the laws of the United States of America that the foregoing is true and correct. I have executed this declaration in Los Angeles, California on  February 18, 2020.

By:    _____

James P. Fogelman

Gibson, Dunn &
Crutcher LLP

3

DECLARATION OF JAMES P. FOGELMAN IN SUPPORT OF DEFENDANT USC KECK SCHOOL OF
MEDICINE'S MOTION FOR ATTORNEYS' FEES AND COSTS

*Isaacs v. Dartmouth Hitchcock Medical Center, et al.*

USC Attorneys' Fees Summary

| Date | Timekeeper | Tobill Amt | ToBill Hrs | Narrative |
|---|---|---|---|---|
| 6/5/2019 | Fogelman, James P. | $379.50 | 0.3 | Review complaint (.2) ; discuss with client (.1). |
| 6/6/2019 | Mader, Shannon E. | $4,026.00 | 4.4 | Draft outline of potential motion to dismiss arguments. |
| 6/6/2019 | Fogelman, James P. | $253.00 | 0.2 | Emails with client, plaintiff, team re service (.1); emails with team re potential motion to dismiss. |
| 6/7/2019 | Fogelman, James P. | $379.50 | 0.3 | Telephone conferences with client, team re strategy. |
| 6/10/2019 | Mader, Shannon E. | $915.00 | 1 | Confer with J. Fogelman and K. Ryzewska regarding case background and strategy. |
| 6/10/2019 | Fogelman, James P. | $253.00 | 0.2 | Strategize re motion to dismiss with team. |
| 6/17/2019 | Mader, Shannon E. | $457.50 | 0.5 | Meet and confer with plaintiff regarding motion to dismiss. |
| 6/17/2019 | Ryzewska, Katarzyna | $1,059.50 | 1.3 | Prepare for and hold meet and confer with Isaacs (1.1); draft update for J. Fogelman (.2). |
| 6/20/2019 | Ryzewska, Katarzyna | $5,297.50 | 6.5 | Draft motion to dismiss and related filings. |
| 6/21/2019 | Mader, Shannon E. | $3,202.50 | 3.5 | Revise motion to dismiss. |
| 6/21/2019 | Ryzewska, Katarzyna | $2,200.50 | 2.7 | Draft motion to dismiss and related filings. |
| 6/23/2019 | Ryzewska, Katarzyna | $2,037.50 | 2.5 | Finalize motion to dismiss. |
| 6/24/2019 | Mader, Shannon E. | $1,555.50 | 1.7 | Revise motion to dismiss. |
| 6/24/2019 | Ryzewska, Katarzyna | $2,608.00 | 3.2 | Draft motion to dismiss and related filings. |
| 6/24/2019 | Fogelman, James P. | $379.50 | 0.3 | Review draft motion to dismiss (.2); emails with team re same (.1). |
| 6/25/2019 | Ryzewska, Katarzyna | $326.00 | 0.4 | Review motion to dismiss and send to client. |
| 6/25/2019 | Fogelman, James P. | $379.50 | 0.3 | Telephone conference with team re revisions to draft motion to dismiss. |
| 6/26/2019 | Ryzewska, Katarzyna | $3,178.50 | 3.9 | Finalize and file motion to dismiss. |
| 6/26/2019 | Mader, Shannon E. | $366.00 | 0.4 | Review declaration and request for judicial notice. |
| 7/12/2019 | Ryzewska, Katarzyna | $407.50 | 0.5 | Review Dartmouth Motion to Dismiss. |
| 7/19/2019 | Fogelman, James P. | $126.50 | 0.1 | Emails with team re amended complaint, motion to dismiss. |
| 7/19/2019 | Ryzewska, Katarzyna | $1,059.50 | 1.3 | Modify deadlines based on amended complaint (.3); review amended complaint (1). |
| 7/22/2019 | Mader, Shannon E. | $274.50 | 0.3 | Emails with K. Ryzewska regarding motion to dismiss; confer with K. Ryzewska regarding motion to dismiss (.1). |
| 7/23/2019 | Ryzewska, Katarzyna | $5,705.00 | 7 | Draft second motion to dismiss. |
| 7/24/2019 | Mader, Shannon E. | $91.50 | 0.1 | Revise meet and confer email to plaintiffs. |
| 7/24/2019 | Ryzewska, Katarzyna | $3,178.50 | 3.9 | Draft second motion to dismiss. |
| 7/25/2019 | Mader, Shannon E. | $1,098.00 | 1.2 | Confer with K. Ryzewska regarding meet and confer with Plaintiff (.5); meet and confer with Plaintiff regarding motion to dismiss(.5); emails with K. Ryzewska regarding motion to dismiss. |
| 7/25/2019 | Ryzewska, Katarzyna | $5,949.50 | 7.3 | Meet and confer with Isaacs (.5); draft second motion to dismiss (6.8). |

Case No. 2:19-CV-08000-DSF-RAO

**FILED**
Superior Court of California
County of Los Angeles

DEC 1 0 2021

Sherri R. Carter, Executive Officer/Clerk

R. Inostroza

BY: R. INOSTROZA, DEPUTY

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

# FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT

| | |
|---|---|
| ALBERT GARCIA and STEPHANIE GARCIA,<br><br>Plaintiffs,<br><br>vs.<br><br>SELTZER-DOREN MANAGEMENT COMPANY, INC. dba SIERRA MANAGEMENT, GRESHAM APARTMENTS INVESTORS, and SELTZER-DOREN COMPANY & AFFILIATES,<br><br>Defendants. | Case No.: BC 699 421<br>*(Consolidated with Case No. BC 699 422)*<br><br>**The Honorable Richard L. Fruin**<br><br>[~~PROPOSED~~] **ORDER GRANTING PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES**<br><br><br><br>Hearing Date:    December 7, 2021<br>Trial:               August 2, 2021<br>Action Filed:    March 26. 2018 |

[~~PROPOSED~~] ORDER

Plaintiff Albert Garcia and Stephanie Garcias' motion for attorney fees pursuant to Government Code section 12965(b) came on for hearing on December 7, 2021.

Having read and considered plaintiffs' motion and defendants' opposition, and having heard oral arguments of counsel, and good cause appearing,

IT IS ORDERED that plaintiffs' motion is GRANTED.

Defendants are ordered to pay $1,263,133.95 *$1,389,447.35* in attorney fees, as stated in the Court's tentative ruling, attached hereto as Exhibit 1.

IT IS SO ORDERED

Dated: December 10, 2021

By: _____
The Honorable Richard L. Fruin

-2-
[PROPOSED] ORDER

# 12  TENTATIVE RULINGS            9:15 a.m., Tuesday, December 7, 2021

ALBERT GARCIA, STEPHANIE GARCIA v. SELTZER-DOREN MANAGEMENT
COMPANY, INC. dba SIERRA MANAGEMENT, GRESHAM APARTMENTS INVESTORS,
SELTZER-DOREN COMPANY & AFFLIATES, Case BC 699421.

### A. RULING ON PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES PLUS A MULTIPLIER:

**Attorneys' Fees Sought in Plaintiffs' Motion:**

Prevailing plaintiffs by statute are authorized to seek an award for their attorneys' fees to the extent reasonably incurred to prosecute FEHA claims.

Plaintiffs in this fee motion seek attorneys' fees in the amount of $1,578,665 and ask the Court to exercise its discretion to increase that amount with a fee enhancement (a "multiplier") of 1.75, for a total attorneys' fees award of $2,762,663.75.

The court must review the attorneys' time records to prepare a lodestar analysis. The lodestar is calculated by a multiplying the number of hours for necessary legal services x a reasonable hourly rate for each timekeeper performing such tasks. Ketchum v. Moses (2001) 24 Cal. App.4th 1122, 1132 (attorneys' fees awarded after grant of a special motion to strike); Horsford v. Board of Trustees (2005) 132 Cal.App.4th 359, 394 (attorneys' fees awarded after a plaintiffs proved employment discrimination in a jury trial).

The Court in preparing a lodestar calculation has prepared the tabulations that are provided in the Appendix. Table A organizes plaintiffs' attorneys' time records to show by year the number of hours each timekeeper has charged to the litigation.

Table B reflects minor reductions in the hours reported for various timekeepers. Plaintiffs conceded a reduction in the hours reported by Messrs. Morrison and Ross, after receiving defendants' opposition to the fee motion. The Court also discovered and corrected an overcounting of 1.2 hours in Lim's time records. (Any undercounting of hours was not corrected.)

Table C contains any adjustments in the hours and billing rates for certain timekeepers by the Court in preparing its lodestar calculation.

1

**Plaintiffs Are Prevailing Parties Under the FEHA Attorneys' Fee Statute**

Plaintiffs prevailed at trial on claims alleging discrimination and retaliation under the Fair Employment and Housing Act (FEHA), Government Code section 12900 et seq. Plaintiffs, therefore, are entitled to recover their reasonable attorneys' fees under Government Code section 12965(b), reading: "In civil actions brought under this section, the court, in its discretion, may award reasonable attorney's fees and costs...."

As stated in Horsford v. Board of Trustees 132 Cal. App. 4th supra at 394, an award of attorneys' fees "accomplishes the Legislature's expressly stated purpose of FEHA 'to provide effective remedies that will eliminate these discriminatory practices' [as identified in Gov. Code section 12920]. In order to be effective in accomplishing the legislative purpose of assuring the availability of counsel to bring meritorious actions under FEHA the goal of an award of attorney fees 'is to fix a fee at the fair market value for a particular action' [citing Ketchum v. Moses, supra, at 1132]."

Albert Garcia sued the two defendants for discrimination and retaliation based on medical condition (thyroid cancer) in violation of FEHA and for wrongful termination. The jury awarded Albert Garcia $2,352,924 in economic and non-economic damages, and further found, on clear and convincing evidence, that the defendants' conduct constituted "malice, oppression and/or fraud." In the phase 2 trial, the jury imposed $4 million in punitive damages in favor of Albert Garcia. (See, Exh. 11.)

Stephanie Garcia sued defendants for association discrimination and retaliation (based on Albert's medical condition) in violation of FEHA and for wrongful termination. (After her death Stephanie's estate was substituted in as a plaintiff.) The jury awarded the Stephanie Garcia Estate economic damages of $30,726, and further found, on clear and convincing evidence, that the defendants' conduct constituted "malice, oppression and/or fraud." In the phase 2 trial, they jury imposed punitive damages in the sum of $1,250,000 in favor of the Stephanie Garcia Estate. (Exh. 11.)

The Court, in October, denied defendants' motions for a new trial and for judgment notwithstanding the verdict.

**Trial Court Proceedings:**

The litigation spanned four years. Plaintiffs were represented by attorneys from two law firms: Ross & Morrison and Shegerian & Associates.

2

Plaintiffs retained the Ross & Morrison Law Firm in November 2017; that law firm filed separate complaints for Albert Garcia and Stephanie Garcia that were consolidated for discovery and trial.

Ross & Morrison negotiated the association of Shegerian & Associates as trial counsel in October 2018. The Shegerian Firm, however, billed limited hours to the case before this year. Carney Shegerian was plaintiffs' trial lawyer. Before 2021, he billed only 3.5 hours to the matter.

The matter was tried to a jury from July 6 to August 6, 2021 with the trial proceedings adjourned at various times to accommodate the availability of individual jurors. Mr. Shegerian was assisted during trial by Anthony Nguyen and Mark Lim.

The trial was transmitted over a video conferencing platform and was accessible to remote viewers. The proceedings available through the video facility could also be seen on a large monitor in the courtroom. Half of the jury elected to sit in the audience area of the courtroom to maintain social distancing from one another as recommended by the pandemic emergency orders. The video facility permitting the jurors seated in the audience area to better follow the trial testimony. Using the video facility counsel examining from behind the counsel table could be seen as well as the judge presiding from the bench. The video cameras did not show the witnesses testifying from the witness chair. The jury box was not visible, although the jurors spaced in the audience area could be seen. All persons in the courtroom were wearing masks over their mouth and nostrils. The video platform also allowed for remote examination of witnesses, should that be needed, and the monitor mounted on the wall was also used to project trial exhibits and excerpts played from video-graphed depositions.

The Court was surprised to see Mr. Morrison appear on the monitor before the voir dire panel was admitted into the courtroom on the first day of the trial. The Court told counsel he did not want attorneys to watch the trial remotely if they intended to seek to recover attorneys' fees for their time watching the trial. Mr. Shegerian assured the Court that attorneys who were not present the courtroom would not be seeking to charge for any time spent in watching the trial. However, the time records attached to this fee motion (Exhs. 1 and 2) show Morrison and Ross viewed large periods of the trial, and, while their time records state "no charge" for their trial-watching time, they seek to charge for hours spent in conferring with the trial team based on their watching of the trial proceedings over the teleconferencing facilty. The Court was unaware during the trial that Morrison and Ross were viewing the trial as neither turned on their cameras after the Court commented on the first day.

3

### Findings re Hours and Hourly Fee Rates for Shegerian & Associates:

An attorney's billing rate sought in a fee motion must be shown to be necessary to a plaintiff's success; otherwise it is not under the statute "reasonably spent." [1]

Shegerian & Associates seek attorneys' fees for lawyers employed by that firm at the following hourly rates: Carney Shegerian--$1,300; Anthony Nguyen--$1,000; Jill McDonell--$1,000; Mark Lim--$700; Zackery Lynch--$375; and William Reed--$850. Time records are provided for all of those lawyers. Exhibits 3, 4, 5, 6, 7 and 8. Those lawyers, other than McDonell and Lynch, provide declarations in support of the fee request.

Little information is provided about the firm's practices in preparing time records. Mr. Nguyen made this brief statement (repeated in other declarations): "I am familiar with the proper procedure for calculating hourly bills. I understand which tasks are billable and which are not." Mr. Nguyen does not say whether the attorneys prepare the time records contemporaneously with the legal task that is reported; or whether the attorneys use actual time for their entries. The appellate decisions indicate that the trial court is to accept, unless suspicion is aroused, attorney time representations, and the Court will accept the number of hours claimed by Shegerian & Associates as substantially correct.

Having observed plaintiffs' trial team, Messrs. Shegerian, Nguyen and Lim, over the course of the trial, the Court formed a favorable opinion of their trial skills. Mr. Shegerian has previously tried cases in Department 15. He is a successful plaintiff's-side trial lawyer in employment cases. His trial skills are praised by other plaintiff's-side employment lawyers—in the declarations of Nicholas C. Rowley, Abash Homampour, Gary A. Dordick and Reza Mirroknian—in support of his requested $1,300 per hour rate. Mr. Rowley says: "As far as the Southern California legal community goes, Mr. Shegerian is among the best of the best. There is no employment lawyer in the country who has his success record or who tries as many cases." Rowley decl., para. 11. Mr. Dordick says: "I know Mr. Shegerian to be the preeminent employment lawyer in the country." Dordick decl., para 10. The Court will approve a billing rate for Mr Shegerian in this matter at $1,300 per hour.

The Court will approve a billing rate of $900 per hour for Mr. Nguyen, a 2008 law graduate. That hourly rate was approved for him by Judge Victor Chavez in 2020. Nuygen decl., para. 10. At the trial Nguyen examined two

---

[1] "'Reasonably spent' means that time spent 'in the form of inefficient or duplicative efforts is not subject to compensation. (Id at [Kitchum] 1132.'" Horsford v. Board of Trustees, 132 Cal.App.4th supra at 394.

4

witnesses and gave the rebuttal closing in the phase 2 trial. His ability during the trial to marshal the witness and documentary evidence assisted the lead examining attorney. Mr. Shegerian testified to his value to the trial team.

The billing rates charged by the attorneys practicing at Shegerian & Associates are recommended by the four declarants in a non-specific manner. Mr. Dordick says: "I also understand that Mr. Nguyen, Ms. McDonell (sic), Mr. Lim, Mr. Ross, Mr. Morrison, and Mr. Lynch, are requesting hourly rates of $1,000, $1,000, $850, $700, $975, $975, and $375, respectively. Based on my knowledge of their experience and abilities, I believe their requested rates to be within the range of comparable market rates charged by attorneys in Los Angeles." Dordick decl, para. 10. These comments are echoed in the Rowley, Homampour and Mirroknian declarations. These declarants, however, do not display any familiarity with the facts of this case nor of the actual contributions made in this case by each of the referenced attorneys. They further do not define in any way what is meant by their term "within the range of comparable market rates." The declarations provide little support for the requested lodestar rates. The Court assumes, however, because the declarants do not say otherwise, that these plaintiff's-side employment trial lawyers are proposing market rates for lawyers representing plaintiffs in contingent fee cases. As the appellate decisions state, an appropriate multiplier for a contingent fee case may be embodied in the hourly rate approved in a lodestar analysis rather than added after the lodestar calculation is made. Ketchum v. Moses, 24 Cal. App.4th supra at 1133; Horsford v. Board of Trustees, 132 Cal.App.4th supra at 394.

The Court will approve a $650 hourly rate for Mr. Lim, a 2016 law graduate. That rate for Mr. Lim was previously approved by Judge Victor Chavez. Lim examined two witnesses at trial and otherwise maintained contact with the potential witnesses during the trial.

The remaining three attorneys providing legal services for the Shegerian Law Firm with their billing rates are Jill McConell ($1,000 per hour), William Reed ($850), and Zachery Lynch ($375). McConell, a 1992 law graduate, contributed 9.9 hours, all on September 27, 2021, in preparing oppositions to defendants' motions for new trial and JNOV. (Exh. 7.) She is a specialist in preparing appellate and motion briefs. Shegerian decl., para. 24. Plaintiffs' briefs filed in opposition to defendants' post-trial motions were well researched and written. The Court will approve a lodestar $900 hourly rate for McConell.

William Reed provided legal services in attending with Mr. Morrison a mediation on July 22, 2019. His legal services were not otherwise used in the litigation. (His charge of 0.3 hours on 10/19/21 to review the Orrick declaration appears to be billed in error—there is no Orrick declaration). The Court believes that a $450 hourly rate is appropriate for Mr. Reed's contribution to the case. In

the mediation (which was unsuccessful) Mr. Morrison was the lead attorney; his firm was then managing the Garcia litigation. Whatever knowledge Reed gained about the case was not material as Reed provided no further legal services for the in the Garcia case.

The Court will approve an hourly rate for Mr. Lynch in the amount requested ($375). Lynch billed time to the case in the months April through September 2021; his time entries (in Exh. 6) indicate that he assisted the trial team in making contacts with the trial witnesses.

**Findings re Hours and Hourly Fee Rates of Ross & Morrison:**

Andrew J. Morrison and Gary B. Ross filed declarations to support their fee request, testifying that Exhibits 1 and 2 to be "a true and correct copy of my time records detailing the time and hours I spent on this case." The declarations, however, provide no information concerning their time keeping practices such as whether each attorney recorded time entries concurrently as the legal services are provided. The time records show Ross and Morrison communicated with each other constantly about the litigation, even about routine matters. For instance, Morrison's entry for July 9, 2018 states: "review and analysis of defendants' responses to Form Interrogatories; conclude not to make a motion to compel"; while Ross' entry for the same date states "receipt, review and preliminary analysis of defendants' responses to plaintiff's first set of Form Interrogatories; strategy and analysis re: whether the bring a discovery motion (motion to compel further responses)."

Defendants' opposition complains that the Ross & Morrison time entries show extensive duplication, saying that "100 out of the total 350 entries (160 hours out of total 380 hours billed) by Mr. Ross are described as tasks performed by Mr. Morrison." Opp. 7: 11 and 22-23. Conferencing is appropriate, and often beneficial, when several attorneys are working as a team, but the extent of the conferencing in this case between Morrison and Ross when both are experienced employment lawyers and are claiming $975 per hour billing rates is a concern.

In October 2018 Ross & Morrison entered negotiations to associate a different law firm, Shegerian & Associates, to represent the plaintiffs at trial. Morrison's October 12 time entry reads: "telephone call from Gary Ross ... (he's on his way to meet client with Carney Shegerian)," while Ross' time entry three days later reads: "10/12-10/15 extensive communications with client, ADM and co-counsel re: retention of co-counsel for trial...." Ross & Morrison formally associated Shegerian & Associates as co-counsel on November 13, 2018. It is not a criticism that Ross & Morrison selected the Shegerian firm to be trial counsel but that circumstance should be considered in determining a lodestar calculation of the Ross & Morrison legal fees. In the legal market,

6

premium legal rates are accorded to lawyers who undertake to prove the case to a jury, while lesser rates are accorded to attorneys who provide legal services up to the trial.

## A. Reduction in Hours Claimed by Ross & Morrison:

Plaintiffs in their reply concede that 15.15 hours of Morrison's time was for clerical functions and should not have been included in the lodestar calculation. Plaintiffs likewise concede that 4.9 hours of Ross' time should not have been billed. The time adjustments for specific dates are shown in the Nguyen declaration filed on November 24. (These adjustments are also reflected in Table B.) These minor reductions do not address all of defendants' duplicate-billing concerns, but the Court, on the evidence it has, concludes not to make further reductions in the hours claimed for duplicate billing.

The Court will, however, deduct the Ross & Morrison hours for the time that they billed during the trial period, that is between July 5 through August 6, 2021. In this period Morrison and Ross provided to the Shegerian trial team their observations based on their remote viewing of the trial. For instance, Mr. Morrison in his time entry for July 13 (Exh. 1) states:

> "Review and analysis of text from Gary Ross including discussion re potential issues due to juror attrition; email responding to same (1.25); review and analysis of brief re grossing up damages and mitigation (.08); attend trial via Court Connect - attorneys only (1.09); strategy and legal analysis re: CACI issue; read CACIs; read court of appeals ruling; draft email; shorten email; send email (1.58); extensive strategy and legal analysis re: principal/agent issues (1.08)"

The Shegerian team consisted of three experienced and prepared trial attorneys. Plaintiffs' fee motion, in the declarations, have not provided any evidence that the contributions from Messrs. Morrison and Ross based on their remote observation of the trial provided material benefit to the trial team. The Court need not make a finding that the observations of Morrison and Ross rendered during the trial had no value; they were simply duplicative of the legal services rendered by the trial team and, thus, were not reasonably necessary. The Court finds that the time was beyond what was required given the competence of the trial team.

The time, moreover, is based on counsel's remote viewing of the trial proceedings. The Court stated expressly on the trial's first day that it would not approve legal fees based on counsel's remote viewing of the trial proceedings. Plaintiffs did not at any time request any exception from that ruling.

The hours that are deducted from Mr. Morrison's time entries in July and August are 16.58; and from Mr. Ross' time entries 36.00 hours.

7

## B. Reduction in Billing Rates Claimed by Ross & Morrison:

The hourly rates claimed by Ross & Morrison ($975 per hour for each partner) are not shown to be market rates for the legal services they provided. Plaintiffs provide no evidence that other courts have approved their legal fees in any lodestar calculation. Mr. Ross identifies two employment cases in which he was the prevailing attorney (see, Ross decl. referencing Dudley v. Sycamore Hathaway, BC 500071 and Beck v. Sybase, Inc., BC 1738551), but he noticeably does not state when those victories were achieved nor what lodestar legal fee he received from the trial judges.

The Court of Appeals criticized the performance of Ross & Morrison in this action, and that fact bears upon a lodestar calculation of their reasonable legal fee. Ross & Morrison, as plaintiffs' counsel, submitted an opposition to a motion for summary judgment from Gresham Apartments Investors that failed to comply with CRC, Rule 3.116 dealing with the submission of deposition testimony as an exhibit. The trial judge for that reason struck and, therefore, did not consider the deposition evidence that was submitted to oppose the motion. The trial judge, therefore, granted the motion and dismissed defendant Gresham Apartments Investors from the action. The appellate court said: "although the [trial] court did not expressly grant summary judgment because of the procedural default, it effectively did." Slip Op. 15. The loss was rectified when the appellate court reversed the judgment that had dismissed that defendant but said the dismissal occurred because Ross & Morrison did "something we would not expect most lawyers to do." Slip Op. 14.

The appeal from the loss of the summary judgment motion caused harm to plaintiffs. It delayed the trial for more than two years, and during that delay plaintiff Stephanie Garcia contracted COVID-19 and died. Because of her death, her estate was barred from recovering non-economic damages. CCP section 377.34. The jury likely would have awarded non-economic damages to her: it awarded economic damages to her estate. That the appellate court concluded the trial judge abused its discretion in striking plaintiffs' opposing evidence because their counsel failed to submit the evidence in a manner compliant with Rule 3.1116 does not change the fact that the trial court granted summary judgment against plaintiffs' claims against Gresham Apartments Investors because Ross & Morrison did not file a rule-compliant opposition.

Plaintiffs' motion provides no explanation for how the default occurred. There is no statement, for instance, that plaintiffs' counsel were familiar with and tried to follow Rule 3.116 for submitting deposition excerpts as exhibits to a summary judgment motion. Plaintiffs' motion, furthermore, does not discuss the impact that plaintiffs' counsel's failure should have on their claims for high end legal fees.

8

Plaintiffs' failure to address this issue is separately a reason to reduce the legal fees claimed by Messrs. Morrison and Ross in their fee motion.

The Court recognizes that the Court of Appeal reversed the trial judge. The Court, however, assumes that the trial judge would have denied the summary judgment had it been required to accept the deposition exhibits that were stricken. The loss of the motion ultimately did not deprive plaintiffs an opportunity to prosecute their claims against Gresham Apartments Investors, although it reduced the damages recoverable by the Stephanie Garcia estate and caused greater expense in the prosecution of plaintiffs' claims. Defendants should not bear the expense caused by the failure of plaintiffs' counsel to comply with CRC Rule 3.1116.

In the absence of any other benchmark, the Court will approve a lodestar attorney's fee for Messrs. Morrison and Ross of $735 per hour. This is the hourly rate that defense counsel, who testifies he specializes like Ross & Morrison in employment litigation, received in representing defendant Gresham Apartments Investors in this case. Mackey decl., para. 15.

**Findings re Plaintiffs' Fee Enhancement Claim:**

"[T]he lodestar is the basic fee for comparable legal services in the community; it may be adjusted based on factors including as relevant herein, (1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award. (Sorano III, supra, 20 Cal.3d at p.49.) The purpose of such adjustment is to fix a fee at the fair market value for the particular action." Ketchum v. Moses (2001) 34 Cal.4th 1122, 1132.

Only one of the four factors identified in the Ketchum decision is applicable to plaintiffs' fee motion.

The case did not present novel or difficult questions. The underlying facts for the wrongful termination claims were not disputed at trial. As the Court said in its written rulings denying defendants' post-trial motions: "Selzer–Doran Management manages 35 other apartment buildings, and, as a practice, employs couples to serve as resident managers in each apartment building, providing them with the use of an apartment during their employment as their principal compensation. Defendants argued that although Albert was an exemplary employee, no complaints ever having been received about him, the termination of the Garcias as employees and as tenants was justified because complaints had been received about Stephanie and defendants had concluded that her personality was not conducive to her duties in showing and renting vacant apartments." The principal issue at trial, given that defendants were

9

informed of Albert's medical condition, was whether defendants' reason for terminating the Garcias' employment and evicting them from their home was pretextual. This issue is not novel; it is the issue in FEHA termination cases. Presenting evidence on the issue was not uniquely difficult. Defendants had little documentation to support their contention that Stephanie's performance was deficient or that they had given notice to Stephanie that her performance as a rental manager was deficient. (The Court sustained Mr. Shegerian's immediate objection to defendants' attempt to introduce the vacancy rates in other Seltzer-Doren managed buildings because defendants had objected to plaintiffs' efforts before trial to obtain that information.) Whether Gresham Apartments Investors was liable for the termination decision made by its management agent Seltzer-Doren was potentially a significant issue but not one that required legal analysis at trial because the issue was decided before trial by the Court of Appeals.

Ross & Morrison did not find the need to take extensive factual discovery. The parties exchanged written discovery which is standard for an employment case. Ross & Morrison took four depositions, all of employees of defendants, and defended only the two depositions taken of the plaintiffs. The depositions taken after the matter was remanded back to the trial court were of each side's designated experts. The meager discovery supports the view that the case did not present novel or difficult issues.

The second factor—the skill displayed at trial—does not merit a fee enhancement. The skill of plaintiffs' lead trial counsel has earned for him a lodestar attorney's fee of $1,300 per hour. The trial team, as a unit, was effective in investigating and in presenting facts at trial to support plaintiffs' argument that they were subject to unlawful discrimination. Shegerian's examination of adverse witnesses was prepared, aggressive and focused, as needed in this case, but that would be expected from a $1,300 per hour lawyer. The lodestar fee rate establishes the presumptive market value for a lawyer's time. The Court finds no basis to go beyond that presumptive value in this case.

The Court disagrees with Mr. Nugyen's argument that the fact the jury returned a substantial verdict for the plaintiffs in itself establishes the verdict was produced by the skills of their lawyers. Reply 1: 14–16. The substantial verdict in this case derived from its facts: defendants expelled plaintiffs from their home and their employment because Albert Garcia required treatment and recuperation time for throat cancer and defendants argued their failure to accommodate Albert's medical condition with explanations that the jury, apparently, did not find credible.

This Court, when considering whether a multiplier to a lodestar is appropriate, is guided by our Supreme Court in its Ketchum decision:

10

"[A] trial court should award a multiplier for exceptional representation only when the quality of representation far exceeds the quality of representation that would have been provided by an attorney of comparable skill and experience billing at the hourly rate used in the lodestar calculation. Otherwise, the fee award will result in unfair double counting be unreasonable." 24 Cal 4th, supra, at 1139.

Applying that guidance to this case, the question is: did the Shegerian trial team obtain results that would not have been expected from another high-priced plaintiff's-side employment lawyer (say, Gary Dordick)? The fee motion provides no evidence to conclude that the quality of plaintiffs' trial lawyers "far exceeds" that would have been obtained by another lawyer of comparable skills.

Plaintiffs gesture to the third factor—that taking this case "precluded other employment"—but no facts are offered to support any such assertion. Shegerian states: "The trial in this case demanded that Plaintiff's counsel spend more than 10 hours per day on multiple days. Thus, this commitment had a dramatic ability of (sic) counsel's ability to accept work in other cases." Shegerian decl. para. 21. Mr. Shegerian offers no facts for his statement. Did his firm turn down other meritorious cases? The 10 hour work days occurred when Mr. Shegerian was trying this action, altogether nine days. The Garcia trial, moreover, occurred during the first month in which the LASC re-opened for civil jury trials. The fact that Shegerian does not identify any other trial for which he was committed (and which he could not continue to a future date) suggests his statement is formulaic and not based on fact. Ross & Morrison, the other law firm representing plaintiffs, do not say that their firm was precluded from representing other clients because of the demands of this case. Their time records do not indicate their commitment to this case precluded other legal work.

There is, in sum, no evidence that either Shegerian or Ross & Morrison rejected other cases because of their commitment to this case. There being no supporting facts, the Court disregards entirely the assertions that plaintiffs' counsel were precluded from other work because of the demands of this case.

The fourth factor—that counsel represented plaintiffs under a contingency contract—does merit a modest increase in the lodestar amount. The multiplier in a contingency case recognizes that there will be a delay, even in a successful case, in the payment of front-end legal fees and costs. There has been a delay, in this case, in payment to plaintiffs' counsel as legal fees, assuming that counsel would otherwise have been paid on a monthly basis. However, most of Shegerian & Associates' legal fees were incurred within the last ten months, substantially mitigating any burden due to a delay in payment. (The attorneys' fee award will draw 10 percent interest once entered in the

11

judgment.) The legal fees incurred by Ross & Morrison have accrued over four years, although two of those years can be attributed to their procedural default that resulted in a grant of summary judgment subsequently reversed on appeal. The high hourly fees claimed as lodestar rates by lawyers representing clients with FEHA claims suggest that those rates already include a contingency premium. Those high hourly rates claimed by attorneys in employment cases are attested to in plaintiffs' motion. Rowley decl., para. 9; Dordick decl., para. 9; Homampur decl., para. 15; and Mackey decl., paras. 15 and 16. As the Horsford decision states: "The contingency adjustment may be made at the lodestar phase of the court's calculation or by applying a multiplier to the noncontingency lodestar calculation (but not both)." 132 Cal.App.4th supra at 395.

Plaintiffs also make an argument that is beyond the analysis structure prescribed by controlling authority, namely that in establishing a fee enhancement the Court should award a high multiple because the Dow Jones Average has increased dramatically since when this case was filed. That argument is specious. The lodestar–plus–multiplier approach "anchors the trial court's analysis to an objective determination of the value of the attorney's services, ensuring that the amount awarded is not arbitrary." Ketchum v. Moses 24 Cal.4th supra at 1134. Investing after–tax earnings in the stock market is a bet on a roulette wheel; it does not provide an "objective determination" to recognize what a willing buyer and a willing seller will pay in a marketplace for legal services rendered on a noncontingent basis. The Court thinks less of plaintiffs' motion for making this fallacious argument.

The Court, after reviewing the factors pertinent to this case, shall award a 1.1 multiplier to the lodestar calculation.

Attorneys' Fee Award.

The attorneys' fee awarded to plaintiffs in this case is $1,263,133.95. That calculation of this amount is shown on Table C in the Appendix. The lodestar is to be multiplied by a 1.1 fee enhancement.

## B. RULING ON DEFENDANTS' MOTION TO TAX COSTS

The Court has reviewed the motion but has not prepared a written tentative ruling.

12

BC699421 - TIME SHEET TABULATION
RE: MOTION FOR ATTORNEY FEES

**[TABLE A]    ORIGINAL HOURS**

| Attorney | Rate/hr | Exh. Total | Exh # | Table Total | HOURS BILLED BY YEAR | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | 2017 | 2018 | 2019 | 2020 | 2021 |
| Ross | $975.00 | 382.20 | #2 | 410.18 | 26.85 | 118.80 | 155.03 | 44.75 | 64.75 |
| Morrison | $975.00 | 529.00 | #1 | 529.20 | 2.45 | 146.69 | 252.01 | 79.29 | 48.76 |
| Shegerian | $1,300.00 | 195.70 | #3 | 195.70 | 0.00 | 2.60 | 0.60 | 0.30 | 192.20 |
| Nguyen | $1,000.00 | 180.10 | #4 | 181.10 | 0.00 | 5.00 | 7.10 | 0.80 | 168.20 |
| Lim | $700.00 | 279.90 | #5 | 278.70 | 0.00 | 0.00 | 24.60 | 7.90 | 246.20 |
| Reed | $850.00 | 15.80 | #8 | 15.80 | 0.00 | 0.00 | 15.50 | 0.00 | 0.30 |
| Lynch | $350.00 | 94.60 | #6 | 94.60 | 0.00 | 0.00 | 0.00 | 0.00 | 94.60 |
| McDonell | $1,000.00 | 9.90 | #7 | 9.90 | 0.00 | 0.00 | 0.00 | 0.00 | 9.90 |

**TABLE B-1**

| | EXH* | Conceded | Reduced | TOTAL |
|---|---|---|---|---|
| Ross | 382.20 | 4.90 | 16.58 | 360.72 |
| Morrison | 529.00 | 15.15 | 36.00 | 477.85 |
| Shegerian | 195.70 | 0.00 | 0.00 | 195.70 |
| Nguyen | 180.10 | 0.00 | 0.00 | 180.10 |
| Lim | 279.90 | 0.00 | 1.20 | 278.70 |
| Reed | 15.80 | 0.00 | 0.00 | 15.80 |
| Lynch | 94.60 | 0.00 | 0.00 | 94.60 |
| McDonell | 9.90 | 0.00 | 0.00 | 9.90 |

**[TABLE B]    AMENDED HOURS**

| Attorney | Rate/hr | Exh. Total | Exh # | Table Total | HOURS BILLED BY YEAR | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | 2017 | 2018 | 2019 | 2020 | 2021 |
| Ross | $975.00 | 360.72 | #2 | 410.18 | 26.85 | 115.55 | 153.68 | 44.45 | 28.75 |
| Morrison | $975.00 | 477.85 | #1 | 514.05 | 2.45 | 144.62 | 239.51 | 78.79 | 32.10 |
| Shegerian | $1,300.00 | 195.70 | #3 | 195.70 | 0.00 | 2.60 | 0.60 | 0.30 | 192.20 |
| Nguyen | $1,000.00 | 180.10 | #4 | 181.10 | 0.00 | 5.00 | 7.10 | 0.80 | 168.20 |
| Lim | $700.00 | 278.70 | #5 | 278.70 | 0.00 | 0.00 | 24.60 | 7.90 | 246.20 |
| Reed | $850.00 | 15.80 | #8 | 15.80 | 0.00 | 0.00 | 15.50 | 0.00 | 0.30 |
| Lynch | $350.00 | 94.60 | #6 | 94.60 | 0.00 | 0.00 | 0.00 | 0.00 | 94.60 |
| McDonell | $1,000.00 | 9.90 | #7 | 9.90 | 0.00 | 0.00 | 0.00 | 0.00 | 9.90 |

**[TABLE C]    AMENDED HOURS & RATES**

| Attorney | Rate/hr | HOURS | FEES | Table Total | FEES PER YEAR | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | 2017 | 2018 | 2019 | 2020 | 2021 |
| Ross | $735.00 | 360.72 | $265,129.20 | 0.00 | $19,734.75 | $84,929.25 | $112,954.80 | $32,670.75 | $21,131.25 |
| Morrison | $735.00 | 477.85 | $351,219.75 | 0.00 | $1,800.75 | $106,295.70 | $176,039.85 | $57,910.65 | $23,593.50 |
| Shegerian | $1,300.00 | 195.70 | $254,410.00 | 0.00 | $0.00 | $3,380.00 | $780.00 | $390.00 | $249,860.00 |
| Nguyen | $900.00 | 180.10 | $162,090.00 | 0.00 | $0.00 | $4,500.00 | $6,390.00 | $720.00 | $151,380.00 |
| Lim | $650.00 | 278.70 | $181,155.00 | 0.00 | $0.00 | $0.00 | $15,990.00 | $5,135.00 | $160,030.00 |
| Reed | $450.00 | 15.80 | $7,110.00 | 0.00 | $0.00 | $0.00 | $6,975.00 | $0.00 | $135.00 |
| Lynch | $350.00 | 94.60 | $33,110.00 | 0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $33,110.00 |
| McDonell | $900.00 | 9.90 | $8,910.00 | 0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $8,910.00 |

$1,263,133.95

Case 2:19-cv-01531-DOC-DFM   Document 387-6   Filed 04/06/25   Page 399 of 484
Page ID #:33672
Case 2:19-cv-08000-DSF-RAO   Document 112   Filed 05/15/20   Page 1 of 3   Page ID #:2872

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DR. JEFFREY ISAACS,<br>        Plaintiff,<br><br>              v.<br><br>USC KECK SCHOOL OF<br>MEDICINE, et al.,<br>        Defendants. | CV 19-8000 DSF (RAOx)<br><br>Order GRANTING Motion for<br>Attorney's Fees and Costs (Dkt.<br>No. 99) |

Defendant USC Keck School of Medicine (USC) has moved for attorney's fees and costs incurred in this action and a previous related action. The Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78; Local Rule 7-15.

USC's request for fees and costs incurred in this action is based on (1) the 2008 settlement agreement between the parties and (2) its successful motion to strike under California Code of Civil Procedure § 425.16. Its request for fees and costs incurred in the previous case is based on Federal Rule of Civil Procedure 41(d).

USC is entitled to reasonable fees incurred in filing the anti-SLAPP motion under § 425.16. USC represents that those fees are $5,092.64 for 6.2 hours of work. The number of hours billed and the total fees for the motion are eminently reasonable.

The Court will also award fees and costs pursuant to the 2008 settlement agreement. The fees provision in that contract is not a typical fees provision that applies to enforcement of the contract itself. The provision at issue instead reflects an agreement by Plaintiff to pay

Case 2:19-cv-08512-DOC-DFM   Document 387-3   Filed 09/06/25   Page 400 of 484
Page ID #:33675
Case 2:19-cv-08000-DSF-RAO   Document 112   Filed 05/15/20   Page 2 of 3   Page ID #:2873

fees and costs associated with cases he might bring in the future "based on any events, acts or omission through and including the date [of the contract]." Dkt. 1-2 at 35 of 53. This provides fee shifting for Plaintiff's attempts to litigate (or re-litigate) matters that happened before the settlement agreement but does not provide fee shifting for disputes over interpretation or enforcement of the 2008 settlement agreement itself.

While some of the claims and issues raised by this case involve USC's alleged failure to comply with the settlement agreement, a large proportion of the case involves matters that occurred before the 2008 settlement. Most obviously, the "constructive fraud" and "fraud" claims, which allege that USC never intended to comply with the settlement agreement and thereby fraudulently induced Plaintiff to enter into that agreement through its false promises, are entirely based on actions prior to the consummation of the settlement. And while the other claims technically are based on actions subsequent to the 2008 settlement, references to and claims about acts prior to the 2008 settlement are pervasive throughout the complaint. See, e.g., Compl. ¶¶ 9, 22, 56, 61, 62, 184, 249, 254, 256, 276, 277, 314, 326.

Rule 41(d) states that a court "may order the plaintiff to pay all or part of the costs of [a] previous action" "based on or including the same claim against the same defendant." The Court finds that Rule 41(d) "costs" can include attorney's fees under appropriate circumstances, including the circumstances of this case. For the same reasons discussed above, USC would have been entitled to fees in the prior case except that it was unable to prevail in that case due to Plaintiff's voluntary dismissal. But that dismissal was illusory. This case is a direct continuation of the prior case. Plaintiff could have – and should have – simply filed an amended complaint in the prior case rather than filing a new case. In this context, it is reasonable to treat the later case as a continuation of the earlier one, and Rule 41(d) allows costs, including attorney's fees, to be awarded for the earlier case given that fees and costs are available under the 2008 settlement agreement.

2

Case 2:19-cv-08532-DOC-DFM   Document 387-6   Filed 04/05/25   Page 401 of 484
Page ID #:33676
Case 2:19-cv-08000-DSF-RAO   Document 112   Filed 05/15/20   Page 3 of 3   Page ID #:2874

The requested amount of fees and costs is reasonable.[1]  USC's counsel's hourly rate is on the higher side, but within the range charged in the local market for attorneys of comparable quality and size.  Plaintiff provides no evidence or argument to support a different rate.  The hours billed – 226.2 total hours for both cases – are quite reasonable given the need to oppose a motion for a preliminary injunction and to file three motions to dismiss involving a lengthy complaint with numerous claims.  As counsel notes, Plaintiff had sufficient time to challenge specific entries, but did not do so.  The Court has reviewed the billing and finds that it is sufficiently detailed to allow the Court to evaluate the reasonableness of the work performed.  There was no "block billing," and counsel billed in tenths of an hour, in accord with the Court's requirements.  The matter was very efficiently staffed, with the work being performed primarily by a single associate.

The motion for fees and costs is GRANTED.  Plaintiff is ordered to pay $182,925.97 in fees and $1,009.32 in costs to Defendant University of Southern California, Keck School of Medicine.

IT IS SO ORDERED.

Date: May 15, 2020

Dale S. Fischer
United States District Judge

---

[1] James P. Fogelman, the Gibson, Dunn & Crutcher LLP partner in charge of the litigation, declared that no fees were sought for defending the firm itself.

3

Electronically FILED by Superior Court of California, County of Los Angeles on 01/11/2023 07:52 PM David W. Slayton, Executive Officer/Clerk of Court, by K. Hung,Deputy Clerk

ALAN A. GREENBERG, State Bar No. 150827
  *AGreenberg@GGTrialLaw.com*
WAYNE R. GROSS, State Bar No. 138828
  *WGross@GGTrialLaw.com*
MICHAEL H. STRUB JR., State Bar No. 153828
  *MStrub@GGTrialLaw.com*
DAVID T. SHACKELFORD, State Bar No. 318149
  *DShackelford@GGTrialLaw.com*
GREENBERG GROSS LLP
650 Town Center Drive, Suite 1700
Costa Mesa, California 92626
Telephone: (949) 383-2800
Facsimile: (949) 383-2801

Attorneys for Defendant Phoebe Bridgers

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES, CENTRAL DISTRICT

| | |
|---|---|
| CHRIS NELSON, an individual,<br><br>    Mr. Nelson,<br><br>    v.<br><br>PHOEBE BRIDGERS, an individual; and DOES 1 to 10, inclusive,<br><br>    Defendants. | Case No. 21STCV35635<br><br>**DECLARATION OF MICHAEL H. STRUB, JR. IN SUPPORT OF DEFENDANT PHOEBE BRIDGERS'S MOTION FOR ATTORNEY'S FEES**<br><br>Filed Concurrently with Notice of Motion and Motion, Memorandum of Points and Authorities, Declaration of Deborah S. Mallgrave, and [Proposed] Order<br><br>Date:    March 9, 2023<br>Time:    8:30 a.m.<br>Dept.:    72<br><br>Reservation No.: 013205082792<br><br>Assigned for All Purposes to:<br>Hon. Curtis A. Kin, Dept. 72<br><br>Action Filed:      September 28, 2021 |

STRUB DECLARATION IN SUPPORT OF MOTION FOR ATTORNEY'S FEES

## DECLARATION OF MICHAEL H. STRUB JR.

I, Michael H. Strub Jr., declare as follows:

1.      I am an attorney, duly licensed to practice law in the State of California.  I am a partner with the law firm Greenberg Gross LLP, counsel of record for defendant Phoebe Bridgers in this action.  The facts stated herein are within my personal knowledge and if called upon to testify, I can truthfully and competently do so as to all matters herein.

2.      I make this declaration in support of defendant Phoebe Bridgers's Motion for Attorney's Fees (the "Motion") related to her successful special motion to strike pursuant to California Code of Civil Procedure section 425.16 (the "anti-SLAPP motion").

3.      In pursuing the anti-SLAPP motion, Ms. Bridgers has incurred attorney's fees in the amount of $585,196.50.  Ms. Bridgers also has incurred $36,902.50 in fees in connection with this motion.  Ms. Bridgers is therefore entitled to a total award of $622,099.00 in attorney's fees for successfully pursuing the anti-SLAPP motion.

4.      The attorney's fees incurred in the representation of Ms. Bridgers in this matter are reflected in the billing records of Greenberg Gross.  Attached hereto as **Exhibit A** are true and correct redacted copies of Greenberg Gross invoices through December 31, 2022 reflecting the fees that she was billed in this matter.  Reported in tenths of an hour, these invoices describe in detail the legal work that Greenberg Gross performed in pursing the anti-SLAPP motion and the resulting fees incurred.  One erroneous entry for $328.50 has been redacted from the June 2022 invoice and subtracted from the total of fees requested.

5.      Greenberg Gross was well aware of Ms. Bridgers's reputation advocating for women's rights and social justice and agreed to represent Ms. Bridgers on a partial pro bono basis given that Mr. Nelson's claims arose from Ms. Bridgers's brave choice to speak out against her former abuser.  Specifically, Greenberg Gross provided Ms. Bridgers with a 30 percent discount on its ordinary and customary billing rate.

6.      The information regarding Greenberg Gross's time and fees is taken from time and expense records prepared and maintained contemporaneously by the firm in the ordinary course of business.  I reviewed the printed billing records to confirm the accuracy of the entries on the

STRUB DECLARATION IN SUPPORT OF MOTION FOR ATTORNEY'S FEES

printouts as well as the reasonableness of the time and expenses in the litigation.  I also directed the review and redaction of information protected by the attorney-client privilege and work product doctrine from the billing records.

## I.       Hours expended in litigation

7.       On February 14, 2022, Ms. Bridgers filed her anti-SLAPP motion.  There are numerous published decisions interpreting and applying the anti-SLAPP statute, and the anti-SLAPP motion required substantial research and analysis concerning the issues that triggered that statute as applied to Mr. Nelson's complaint.  These included establishing that Instagram was a public forum, that Ms. Bridgers's statements were on an issue of public interest, that Mr. Nelson was a limited purpose public figure, and that Mr. Nelson had not proven actual malice by clear and convincing evidence.

8.       Ms. Bridgers's anti-SLAPP motion was originally scheduled to be heard on March 10, 2022.  On February 22, 2022, Mr. Nelson filed an *ex parte* application to take discovery, including taking Ms. Bridgers's deposition.  The same day, Ms. Bridgers filed an opposition to the *ex parte* application.

9.       On March 3, 2022, Mr. Nelson filed a noticed motion to permit the deposition of Ms. Bridgers and to require her to produce documents.  Ms. Bridgers opposed the motion.

10.       Attached hereto as **Exhibit B** is a true and correct copy of the notice of deposition and request for production of documents, which Mr. Nelson served on April 4, 2022.

11.       On April 5, 2022, prior to the deposition, Ms. Bridgers's and Mr. Nelson's counsel executed the Protective Order, which the Court approved on April 11, 2022.

12.       On April 8, 2022, at her deposition, Ms. Bridgers produced 332 pages of documents responsive to Mr. Nelson's discovery request.  I designated the entire deposition transcript and document production as "Confidential" under the Protective Order.

13.       On May 11, 2022, Mr. Nelson's counsel notified Ms. Bridgers's counsel that Mr. Nelson was disputing all Ms. Bridgers's confidentiality designations, and they filed an *ex parte* application asking the Court to de-designate the deposition transcript and her text messages.

-3-
STRUB DECLARATION IN SUPPORT OF MOTION FOR ATTORNEY'S FEES

14.     On July 13, 2022, Ms. Bridgers filed a motion to uphold the confidentiality designations.

15.     On July 26, 2022, Mr. Nelson filed his opposition to the anti-SLAPP motion.  In support of his opposition, Mr. Nelson lodged conditionally under seal material designated as confidential under the Protective Order.  On August 1, 2022, Mr. Nelson filed a motion to seal records lodged in connection with the anti-SLAPP motion and to strike irrelevant material from those records (the "Motion to Seal and Strike").  The motion was scheduled to be heard on November 8, 2022, but was later continued to November 16.

16.     On August 11, 2022, this Court heard arguments related to the anti-SLAPP motion and the motion to uphold confidentiality designations and took the matters under submission.

17.     On October 26, 2022, I sent an email to Mr. Hughes and Ms. Hunter of Clark Hill, LLP proposing to significantly limit the scope of Ms. Bridgers's confidentiality designations in an attempt to meet and confer with Mr. Nelson's counsel regarding the Motion to Seal and Strike.  As part of those efforts, I agreed to multiple extensions for Mr. Nelson to file his opposition to the Motion to Seal and Strike so the parties could attempt to resolve the issue.  Attached hereto as **Exhibit C** is a true and correct copy of a series of email communications that I had with Mr. Hughes and Ms. Hunter of Clark Hill, LLP between Wednesday, October 26, 2022, and Monday, October 31, 2022.   Ultimately, Mr. Nelson's counsel refused to meet and confer on the subject of the redactions and insisted that every portion of Ms. Bridgers's deposition testimony and document production be included in the public record.  Attached hereto as **Exhibit D** is a true and correct copy of an email that I received from Mr. Hughes on November 1, 2022.  On November 1, 2022, Mr. Nelson filed his opposition to Ms. Bridgers's Motion to Seal and Strike.

18.     On November 3, 2022, Ms. Bridgers filed her reply in support of her Motion to Seal and Strike and also provided the Court with the redactions that Ms. Bridgers's counsel proposed to Mr. Nelson's counsel.

19.     On November 16, 2022, the Court heard Ms. Bridgers's Motion to Seal and Strike.

-4-

STRUB DECLARATION IN SUPPORT OF MOTION FOR ATTORNEY'S FEES

## II.    Explanation of fees sought by this motion

20.    Throughout the case, Greenberg Gross staffed the matter leanly. I managed the case as lead counsel with the assistance primarily of one associate, Colin Quinlan, and one paralegal, Emily Long. Cheryl Winsten, my assistant, also performed a number of tasks that in my experience at my prior law firms typically are performed by paralegals. These tasks were not billed to Ms. Bridgers.

21.    The time spent by my firm in this case was reasonable and necessary in light of the amount of work accomplished and the results obtained and was directly related to the anti-SLAPP motion proceedings. As demonstrated in the detailed time entries included in Exhibit A to this declaration, pursuing the anti-SLAPP motion and litigating related issues took considerable time and legal skill.

22.    Ms. Bridgers's counsel's hourly rates for 2022 range from $295-$345 for paralegals and other professionals, $500-$695 for associates and counsel, and $1095-$1400 for partners. Below is a chart that summarizes the number of hours spent by professionals from my firm who performed work on this case since its inception through December 31, 2022. This chart does not include additional time spent on this Motion after December 31, 2022.

23.    The chart includes the name of the professionals who worked on this case, their position at Greenberg Gross, their law school graduation year (where applicable), their standard hourly billing rates for 2022, the number of hours they spent, the resulting lodestar for each such timekeeper, and the lodestar reflecting the 30 percent courtesy discount provided to Ms. Bridgers in this matter.

| Name of Professional, Position & Law School Graduation Year | Hours (2022) | Hourly Rate (2022) | Total Fees (2022) |
|---|---|---|---|
| Alan A. Greenberg (Partner, 1988) | 3.4 | $1,400.00 | $4,760.00 |
| Wayne R. Gross (Partner, 1988) | 25.9 | $1,400.00 | $36,260.00 |
| Michael H. Strub, Jr. (Partner, 1990) | 312.1 | $1,095.00 | $341,749.50 |
| Claire-Lise Y. Kutlay (Counsel, 2015) | 9.4 | $695.00 | $6,533.00 |

STRUB DECLARATION IN SUPPORT OF MOTION FOR ATTORNEY'S FEES

| Colin V. Quinlan (Associate, 2014) | 267 | $695.00 | $185,565.00 |
|---|---|---|---|
| David T. Shackelford (Associate, 2017) | 39.6 | $655.00 | $25,938.00 |
| Desiree M. Murray (Associate, 2019) | 0.9 | $495.00 | $445.50 |
| Adrianna Gutierrez (Paralegal) | 0.1 | $345.00 | $34.50 |
| Emily Long (Paralegal) | 15.3 | $295.00 | $4,513.00 |
| **TOTAL (2022)** | 673.7 | | $605,799.00 |

| Name of Professional, Position & Law School Graduation Year | Honrs (2021) | Hourly Rate (2021) | Total Fees (2021) |
|---|---|---|---|
| Alan A. Greenberg (Partner, 1988) | .3 | $1,200.00 | $360.00 |
| Michael H. Strub, Jr. (Partner, 1990) | 12.8 | $985.00 | $12,608.00 |
| Colin V. Quinlan (Associate, 2014) | 5.6 | $595.00 | $3,332.00 |
| **TOTAL (2021)** | 18.7 | | $16,300.00 |

24.     As of December 31, 2022, the number of hours spent on this case by the listed time keepers in my firm was 692.4 hours.  The total lodestar for attorney and paralegal time billed through December 31, 2022 is $622,099.00.

25.     Ms. Bridgers has incurred $36,902.50 in fees on this motion through December 31, 2022, which includes 44.7 hours by her attorneys.  That amount is included in the amount of $622,099.00.

26.     Greenberg Gross is an elite litigation firm that serves clients from offices in Los Angeles and Orange County, California; Las Vegas, Nevada; and New York, New York. Greenberg Gross is routinely retained to represent leading companies, executives, celebrities, artists, and other high-profile individuals in complex litigation matters.  Its attorneys have a great deal of experience in a wide range of areas of law, including complex litigation, fraud, business, torts, contract law, and defamation.  The firm has earned numerous accolades, including being named as one of California's Top Boutiques by the *Daily Journal*.

STRUB DECLARATION IN SUPPORT OF MOTION FOR ATTORNEY'S FEES

27.     The hourly rates in the above chart are the standard rate schedule set by my firm for its attorneys and paralegals in 2022.  Based on my experience, I believe the rates charged by my firm do not exceed the rates charged by other firms in the Los Angeles are that handle complex business litigation.  The skill and experience of each of the attorneys and legal professionals that worked on this case justifies their hourly rates.

28.     I am a partner at Greenberg Gross.  I have been litigating cases for more than 30 years in state and federal courts throughout the country.  I have regularly appeared on the list of California's Super Lawyers.  I am admitted to practice in California and the District of Columbia, and admitted to the bar of the United States Supreme Court, the Ninth Circuit Court of Appeals, every district court in California, and the United States Court of International Trade.  I earned my Bachelor of Science in Foreign Service degree from Georgetown University in 1987, and earned my juris doctorate from University of Texas School of Law, highest honors, in 1990.

29.     Alan A. Greenberg is one of the founding partners of Greenberg Gross. Mr. Greenberg has been litigating cases for more than 30 years in both state and federal court throughout the U.S., representing entities and individuals in high-profile, bet-the-company litigation and arbitration.  Two of his trial verdicts have been listed as among the Top Verdicts of the Year in California.  Mr. Greenberg has been recognized as an "Elite Boutique Trailblazer" by the *National Law Journal,* a "California Trailblazer" by *The Recorder*, a Top 100 Lawyers in California by the *Daily Journal,* and has been named to the list of The Best Lawyers in America and Super Lawyers.  Mr. Greenberg is admitted to practice in California, New York, and Nevada, as well as several federal district and appellate courts.  Mr. Greenberg earned his Bachelor of Arts degree from Cornell University in 1985, and earned his juris doctorate from Boston University, *cum laude,* in 1988.

30.     Wayne R. Gross is one of the founding partners of Greenberg Gross.  Mr. Gross has been litigating cases for more than 30 years in both state and federal court throughout the U.S., representing entities and individuals in high-profile, bet-the-company litigation and arbitration.  Three of his trial verdicts have been listed as among the Top Verdicts of the Year in California. Mr. Gross has been repeatedly selected for inclusion in The Best Lawyers in America, including

-7-
STRUB DECLARATION IN SUPPORT OF MOTION FOR ATTORNEY'S FEES

most recently being named "Lawyer of the Year – Litigation – Regulatory Enforcement" in Los Angeles by The Best Lawyers in America 2021. He has been recognized as an "Elite Boutique Trailblazer" and a "Winning Litigator" by the *National Law Journal,* has been included three times as Top 100 Lawyers in California by the *Daily Journal,* and has been named to the list of The Best Lawyers in America and Super Lawyers. Mr. Gross is admitted to practice in California, as well as several federal district and appellate courts. Mr. Gross earned his Bachelor of Science degree from the University of San Francisco, *cum laude,* in 1985, and earned his juris doctorate from the University of California, Hastings College of Law, *magna cum laude,* in 1988.

31. Claire-Lise Y. Kutlay is counsel in the Los Angeles office of Greenberg Gross, and has been litigating cases for seven years in both state and federal court through the U.S., representing individuals and entities in high-profile, bet-the-company litigation and arbitration. Ms. Kutlay's experience includes serving as the lead associate during two jury trials, second chair in a bench trial, and lead (and sole) counsel in a bench trial and separate arbitration. Two of her trial verdicts have been listed as among the Top Verdicts of the Year in California in 2018. In each year from 2020 to 2022, Ms. Kutlay has been named a "Rising Star" for Southern California by SuperLawyers—a distinction received by less than 2.5% of attorneys. Ms. Kutlay is admitted to practice in California, as well as several federal district and appellate courts. Ms. Kutlay earned her Bachelor of Arts degree in 2011 from the University of Victoria, and earned her juris doctorate from the University of California, Irvine School of Law, *cum laude*, in 2015.

32. Colin V. Quinlan is an associate in the Los Angeles office of Greenberg Gross, and has been litigating cases for seven years in both state and federal court through the U.S. Prior to joining Greenberg Gross, Mr. Quinlan clerked for Judge James Donato of the U.S. District Court for the Northern District of California. Mr. Quinlan has represented clients in a range of high-stakes matters ranging from trade secrets and intellectual property litigation to governmental investigations. Mr. Quinlan is admitted to practice in California and New York, as well as the United States District Court for the Southern District of New York. Mr. Quinlan earned his Bachelor of Arts degree from the University of Chicago in 2009, and earned his juris doctorate from the Columbia Law School in 2014.

33.     David T. Shackelford is an associate in the Los Angeles office of Greenberg Gross, and has been litigating cases for five years in both state and federal court through the U.S.  His experience includes representing individuals and entities in a range of high-stake complex commercial litigation matters ranging from breach of contract disputes to intellectual property litigation.  Mr. Shackelford is admitted to practice in California, as well as several federal district and appellate courts.  He earned his Bachelor of Science degree from University of Utah, *magna cum laude,* in 2013, and earned his juris doctorate from Harvard Law School in 2017.

34.     Desiree N. Murray is an associate in the Orange County office of Greenberg Gross, and has been litigating cases for three years in both state and federal court.  Ms. Murray is admitted to practice in California, as well as the United States District Court for the Central District of California.  Ms. Murray earned her Bachelor of Arts degree in 2016 from American University, and earned her juris doctorate from the University of California, Irvine School of Law, *cum laude*, in 2019.

35.     Adrianna Gutierrez was a paralegal in the Los Angeles office of Greenberg Gross. She has been working as a civil litigation paralegal for over 17 years.

36.     Emily Long is a paralegal in the Los Angeles office of Greenberg Gross.  She has been working as a civil litigation paralegal for over two years.  Her work on this matter included preparing the redactions to Ms. Bridgers's deposition transcript and document production, organizing the evidence and preparing exhibits for motions.

37.     Attached hereto as **Exhibit E** is a true and correct copy of the 2017 National Law Journal Billing Survey.  Each firm that I previously have been employed by raised its rates each calendar year, typically by approximately 10%.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: January 11, 2023

Michael H. Strub Jr.

-9-
STRUB DECLARATION IN SUPPORT OF MOTION FOR ATTORNEY'S FEES

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 14-2171 JGB (SPx)** | Date | February 28, 2019 |
|---|---|---|---|
| Title | ***Dan McKibben, et al. v. John McMahon et al.*** | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**    **Order (1) GRANTING Plaintiffs' Motion for Attorneys' Fees (Dkt. No. 86); and (2) GRANTING Plaintiffs' Motion for Final Approval of Class Settlement (Dkt. No. 90)  (IN CHAMBERS)**

On January 18, 2019, Plaintiffs[1] Pedro Guzman, Nick Ou, Sean Lint, Anthony Oliver, Timothy Walker, Ilich Vargas, William Kennedy, Jonathan Robertson, Steve Aka Lynn Price, Bryan Bagwell, Christopher Crawford[2], Frederick Crockan, Taheash White, Michael Aka Madison Hatfield, and Kevin Aka Veronica Pratt (collectively, "Plaintiffs" or "Named Plaintiffs") filed a Motion for Final Approval of Class Settlement.  ("MFACS," Dkt. No. 90.) On November 7, 2018, Plaintiffs moved for attorneys' fees and costs. ("MAF," Dkt. No 86.) These matters are unopposed.  The Court held a hearing on these matters on February 11, 2019. Upon consideration of the papers filed in support of these motions, as well as oral arguments presented by the parties, the Court GRANTS Plaintiff's MFACS and GRANTS Plaintiffs' MAF.

## I.  BACKGROUND

On May 20, 2015 Plaintiffs filed a Second Amended Complaint against Defendants Sheriff John McMahon, Greg Garland, Jeff Rose, Sergeant James Mahan, Corporal Armando

---

[1] Plaintiff Dan McKibben passed away while this lawsuit was pending, and is not listed as a Plaintiff.  His name is still used as the Case Name.

[2] At the February 11, 2019 hearing, Plaintiffs' Counsel reported that Christopher Crawford passed away while this motion was pending.

---

Page **1** of 22              **CIVIL MINUTES—GENERAL**         Initials of Deputy Clerk <u>MG</u>

Case 2:19-cv-01532-DOC-DFM   Document 387-3   Filed 09/06/25   Page 412 of 484
Page ID #:33585
Case 5:14-cv-02171-JGB-SP   Document 103   Filed 02/28/19   Page 2 of 22   Page ID #:1546

Castillo, the County of San Bernardino ("the County"), and San Bernardino Sheriff's Department ("SBCSD") (collectively "Defendants"). ("SAC," Dkt. 37.) Plaintiffs sue each individual defendant in both his individual and official capacity. (Id.) Plaintiffs allege three causes of action: (1) violation of 42 U.S.C. § 1983 for depriving Plaintiffs of equal protection afforded by the 14th Amendment based on sexual orientation, gender identity, and gender; (2) violation of Cal. Civ. Code § 52.1 for interfering with Plaintiffs' rights to equal protection under the California Constitution; and (3) injunctive relief under Article 1, § 7 of the California Constitution and violation of Cal. Govt. Code §1135(A) by the County, SBCSD, and McMahon. (Id.)

On August 15, 2018, Plaintiffs filed a Motion for Preliminary Approval of Class Action Settlement. On September 10, 2018, the Court granted the preliminary approval of this class action settlement and granted conditional certification of the proposed settlement classes. ("Preliminary Approval Order," Dkt. No 84.) In the Preliminary Approval Order, the Court ordered:

1.  The Settlement Agreement is preliminarily approved as fair, reasonable, and adequate for members of the settlement class.

2.  The following settlement classes are certified for settlement purpose only:

    a.  Damages Class: Individuals who, between October 22, 2012 (two years prior to the filing of the original complaint, which is the statute of limitations period under 42 U.S.C. § 1983) and March 31, 2018 (the end of the month in which the settlement was reached in principle) were gay, bisexual, and/or transgender inmates housed in the Alternative Lifestyle Tank of the San Bernardino County Jail facility known as West Valley Detention Center.

    b.  Injunctive Relief Class: Individuals who currently are, or in the future will be, gay, bisexual, and/or transgender inmates housed in the San Bernardino County jails, including but not limited to those housed in the Alternative Lifestyle Tank.

3.  Barrett S. Litt, David McLane, and Lindsay Battles of Kaye, McLane, Bednarski & Litt, and Melissa Goodman, Amanda Goad, Brendan Hamme, and Aditi Fruitwala of the ACLU Foundation of Southern California are appointed as class counsel for purposes of settlement only.

4.  Named Plaintiffs Pedro Guzman, Nick Ou, Sean Lint, Anthony Oliver, Timothy Walker, Ilich Vargas, William Kennedy, Jonathan Robertson, Steve Aka Lynn Price, Bryan Bagwell, Christopher Crawford, Frederick Crockan, Taheash White, Michael Aka Madison Hatfield, and Kevin Aka Veronica Pratt are qualified to act as representatives of the settlement classes and are preliminarily appointed as class representatives.

---

Case 2:19-cv-01532-DOC-DFM   Document 387-5   Filed 09/06/25   Page 413 of 484
Page ID #:33788
Case 5:14-cv-02171-JGB-SP   Document 103   Filed 02/28/19   Page 3 of 22   Page ID #:1547

5.  JND Legal Administration is appointed as the settlement administrator.

6.  The settlement notice, as set forth in Exhibit B to the Settlement Motion, is approved in form and substance for use in the administration of the Settlement Agreement. The Court grants the parties the authority to finalize the contact information, website address, response dates, and fairness hearing dates in accordance with this Order.

7.  JND Legal Administration is directed to mail the notice and claim form to all individuals entitled to receive notice within two weeks of this Order.

8.  Settlement class members will have until January 7, 2019 to file a claim, opt-out, or file an objection to the Settlement Agreement.

9.  The final approval hearing will be scheduled for February 11, 2019 at 9:00 a.m. in Courtroom 1 of the United States District Court for the Central District of California, Eastern Division located at 3470 12th Street, Riverside, California 92501.

(Id. at 19-20).

## II.   THE SETTLEMENT AGREEMENT

Plaintiffs filed a Settlement Agreement on August 15, 2018. ("Settlement Agreement," Dkt. No. 78.) The Court preliminarily approved the Settlement Agreement on September 10, 2018. (Preliminary Approval Order.) The terms of the Settlement Agreement are discussed below.

### A.  Settlement Classes

The settlement classes for the purposes of the settlement of this case include both a Damages Class and an Injunctive Relief Class.

The Damages Class includes "individuals who, between October 22, 2012 (two years prior to the filing of the original complaint, which is the statute of limitations period under 42 U.S.C. § 1983) and March 31, 2018 (the end of the month in which the settlement was reached in principle) self-identified as gay, bisexual and/or transgender inmates ("GBT inmates") housed in the Alternative Lifestyle Tank ("ALT") of the San Bernardino County Jail facility known as West Valley Detention Center ('WVDC')." (Settlement Agreement §1, ¶ 10.)

The Injunctive Relief Class includes "individuals who currently are, or in the future will be, GBT inmates housed in the San Bernardino County jails, including but not limited to those housed in the ALT." (Id. § 1, ¶ 18.) The finalized class list consisted of 660 individuals. ("Keough Declaration," Dkt. No. 92 ¶ 4.)

---

**B. Release**

All settlement class members agree to release their claims as follows:

The Settlement Agreement, as of the Effective Date, resolves in full all claims against the Released Persons[3] by all of the SCMs,[4] including the Named Plaintiffs, involving violations of law or constitutional rights, including, without limitation, their equal protection rights under federal and California law, their rights under California Civil Code § 52.1, any other rights under any other federal, state or local law, regulation, duty, or obligation, or any other legal theory, action or cause of action, which arise from the class-wide factual allegations alleged in the complaint , as well as any claim regarding the bus transportation of transgender inmates (hereafter "Covered Claims").

When the Settlement Agreement is final, as of the Effective Date, all SCMs, including the Named Plaintiffs, waive all rights to any and all claims relating to damages or reimbursement of any kind for the Covered Claims.  This waiver and release shall include a full release and waiver of unknown rights regarding the Covered Claims that may exist as of the Effective Date.

As of the Effective Date, the SCMs, including the Named Plaintiffs, hereby waive any and all rights to pursue, initiate, prosecute, or commence any action or proceeding before any court, administrative agency or other tribunal, or to file any complaint regarding acts or omissions by the Released Persons with respect to the Covered Claims during the Class Period that fit within the definition of the Damages Class; and further, as it relates to this waiver or Release, expressly waive the provisions of California Civil Code § 1542, which provides that "a general

---

[3] Released Persons refers to:

> Defendants and their affiliates, subsidiaries, predecessors, successors, and/or assigns, together with past, present and future officials, employees, representatives, attorneys, and/or agents of San Bernardino County, including John McMahon, or any of them. "Released Persons" also includes any and all insurance carriers, and/or their representatives and attorneys, for the Released Persons.

(Settlement Agreement § II, ¶ 26)

[4] SCMs stands for "Settlement Class Member," which refers to:

> [A]ny member of the Damages class as defied above (whether or not s/he files a Timely Claim form), including representatives, successors and assigns, who does not file a valid and timely Request for Exclusion as provided for in this Settlement Agreement.

(Settlement Agreement § II, ¶ 28.)

---

**CIVIL MINUTES—GENERAL**                Initials of Deputy Clerk MG

release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

. . .

Any Class Member who does not Opt-Out as set forth in this Settlement Agreement, shall be deemed conclusively to have become an SCM and to be bound by the Settlement Agreement and all subsequent proceedings, orders and judgments herein, regardless of whether s/he files a claim form.

(Settlement Agreement § VI, ¶¶ 21-23, 45.)

## C. Financial Terms

Below is an overview of the financial terms of the Settlement Agreement:

- Gross settlement amount ("Class Fund"): $950,000.00
- Expert, consulting, mediation costs $36,304.49
- Settlement administration costs: $37,500.00[5]
- Service award to class representatives: $55,500.00[6]
- Net settlement amount: $818,195.51
- Attorneys' fees and costs: $1,100,000.00[7]

(MFACS at 3.)

The Class Fund is non-reversionary. (Settlement Agreement §IV, ¶ 11.) However, if 11 to 24 Damages Class members opt-out of the class, Defendants will receive a credit against the Class Fund based on the amount each individual opt-out was due under the initial formula. (Settlement Agreement § XI, ¶ 48.) The credit is not available if 10 or fewer Damages Class Members opt-out. (Id.) If 25 or more Damages Class members or any Named Plaintiffs opt-out, Defendants have the option to use the same credit formula or rescind the Settlement Agreement. (Id. § XI, ¶ 49.) No damages class members opted out of the settlement. (Keough Decl. ¶17.)

---

[5] The Settlement administration cost here differs from the cost listed in the Preliminary Approval because the County has already paid a $2,500 deposit to the Claims Administrator.

[6] This amount differs from the amount listed in the Settlement Agreement because Plaintiff Christopher Crawford passed away and will no longer receive a Service Award. The net settlement amount is also adjusted to reflect this change.

[7] Attorneys' fees and litigation costs (excluding mediation and expert costs) are included in a request for attorneys' fees separate from the settlement amount. (Settlement Agreement ¶ 30.)

Case 2:19-cv-01531-DOC-DFM   Document 387-5   Filed 09/06/25   Page 416 of 484
Page ID #:33589
Case 5:14-cv-02171-JGB-SP   Document 103   Filed 02/28/19   Page 6 of 22   Page ID #:1550

## 1. Damages Class Members

Each Damages Class member is eligible to receive payment. Individual settlement amounts to class participants are paid from the net settlement amount. The portion of the net settlement amount payable to each Damages Class participant will be calculated through a points-based formula. (Settlement Agreement § IV, ¶¶ 8-9.) The total points for each participant will be added together, and each participant's recovery will be a percentage of the net settlement amount based on that class member's percentage of the total points for participants making timely claims. (Id. § IV, ¶ 9.) In addition to this formula, there is a recovery floor of $40 per participant and a recovery ceiling of $10,000 per participant. (Id. § IV, ¶ 10.) This recovery ceiling "is to ensure that outliers who have outsized claims do not distort the meaningfulness of the recovery to the remaining class members. (Such outliers would be entitled to opt out and pursue their own claims if they so chose.)" (Id.)

The formula to calculate the points each Damages Class member receives is designed to account for the fact that the severity of the challenged conditions varied over time and depended on an inmate's sentencing status, security classification, and work eligibility. (MFACS at 5-6.) Those Damages Class members who were low security risks were more adversely affected by the challenged conditions because they would have received more out-of-cell time than inmates deemed a higher security risk. (Id.) Additionally, all Damages Class members were denied access to certain programs whose availability varied based on sentencing status and work eligibility. (Id.) Finally, the challenged conditions before October 14, 2014 were more restrictive and receive higher point values than conditions after October 14, 2014. (Id.) Based on these considerations and others addressed in the Settlement Motion, Plaintiffs divide these confinement conditions into nine categories and assign point values depending on their relative severity. (Settlement Agreement § IV, ¶ 8.) Points are assigned for each day a Damages Class member was incarcerated in a given category and aggregated. (Id.) Below are the nine per diem categories and corresponding point values:

- Category 1: Sentenced, work-eligible (Pre-October 2014)                    100
- Category 2: Sentenced, not work-eligible (Pre-October 2014)                 60
- Category 3: Pre-sentenced, lower security risk (Pre-October 2014)           55
- Category 4: Pre-sentenced, higher security risk (Pre-October 2014)          45
- Category 5: Pre-sentenced, unknown security risk (Pre-October 2014)         45
- Category 6: Sentenced, work-eligible, no job (Post-October 2014)            65
- Category 7: Sentenced, work-eligible, inferior job (Post-October 2014)      50
- Category 8: Sentenced, not work-eligible (Post-October 2014)                35
- Category 9: Pre-sentenced (Post-October 2014)                              20

(Id. § IV, ¶ 8.)

As of the time of the MFACS, Claim Forms from 165 class members have been approved. (MFACS at 3.) This represents approximately 25% of the total 655 class members. (Id. at 11) Based on this number, the mean recovery is $4,000-$5,000. (Id.) On February 7, 2019 Plaintiffs

Case 2:19-cv-01532-DOC-DFM    Document 387-3    Filed 04/06/25    Page 417 of 484
Page ID #:33590
Case 5:14-cv-02171-JGB-SP    Document 103    Filed 02/28/19    Page 7 of 22    Page ID #:1551

filed a notice of additional late claims. ("Late Claims Notice," Dkt. No. 94.) Counsel has been made aware that two claims were filed after the January 7, 2019 cut-off date and that additional class members were incarcerated and did not receive the Class Notice. (Id.) As of February 4, 2019, the Claim Administrator has received ten additional claims. (Id.) Plaintiffs request this Court approve the payment of these ten late claims and any claims postmarked as of February 11, 2019. (Id.) Additionally, class representative Frederick Crockan has attempted to file his claim on multiple occasions, but his claim forms have not been received by the Class Administrator. (Id.) Plaintiffs request the Court deem Crockan to have filed a timely claim. (Id.) Further, Mr. Joe Raymond Fierro, a verified class member, never received a claim form. ("Additional Late Claim Notice," Dkt. No. 95.) Plaintiffs request the court deem Mr. Fierro to have timely filed a claim. (Id.) At the February 11, 2019 hearing Defendants represented they do not oppose this request. Finally, on February 22, 2019, Counsel filed an ex parte application regarding the late filing of Andrew Afoa, who, due to no fault of his own, never received a claim form prior to the cut-off date. (Dkt. No. 98.) Counsel notes Defendant's counsel has no objection to the ex parte application. (Id.) The Court APPROVES these requests.

### 2. Class Representatives

The Settlement Agreement provides a total of $55,500 of the gross settlement amount to the Named Plaintiffs. (Settlement Agreement §IV, ¶ 3.) There are 14 Named Plaintiffs, and each would receive between $2,000 to $5,500 depending on counsel's assessment of their contributions to the litigation. (Id.) The Settlement Agreement proposes exact amounts for each of the Named Plaintiffs in paragraph 3.

### 3. Settlement Administration Costs

The settlement administrator, JND Legal Administration ("JND" or "Administrator"), will be paid from the gross settlement amount. (Id. § IV, ¶ 2.) Class counsel requested bids and selected the most reasonable bid based on price, scope of services, and capabilities of the administrator. (Id. § IX, ¶ 31.) In its bid JND estimated the administration to have a maximum of $40,000. (Id. § IV, ¶ 2.) The cost of administration totaled the $40,000 indicated in the Settlement Agreement. (MFACS at 3; Keough Decl. ¶ 22.) At the February 11, 2019, Defendants counsel informed the Court that the County has already paid $2,500 of the total Claims Administration cost as a deposit, making the outstanding total $37,500.

### 4. Attorneys' Fees and Costs

Class counsel seeks an award of attorneys' fees separate from the gross settlement amount. (Settlement Agreement § IV, ¶ 12.) Class counsel seeks $1,100,000 in attorneys' fees and costs in a separate motion under 42 U.S.C. § 1988 and Cal. Civ. Code § 52.1(h), which provide attorneys' fees for prevailing plaintiffs. (See MAF at 2.) This amount was independently negotiated with the assistance of a professional mediator and, in order to effectuate the settlement, substantially discounted below the amounts Plaintiffs would have sought in an attorneys' fees motion. (Id. at 12; Settlement Agreement § IV ¶ 13.)

Case 2:13-cv-01531-DOC-DFM    Document 387-3    Filed 04/06/25    Page 418 of 484
                                    Page ID #:33693
Case 5:14-cv-02171-JGB-SP   Document 103   Filed 02/28/19   Page 8 of 22   Page ID #:1552

**D.  Injunctive Relief**

The Settlement Agreement also provides for injunctive relief over a three-year period. (MFACS at 16, "Injunctive Relief Agreement," Dkt. No 90-2 at 15.)  The terms of the injunctive relief are detailed in Exhibit 2 and include the development of policies not yet drafted.  (Id. at 16.)  Defendants estimate the resources associated with these Injunctive Terms will be approximately $500,000 per year.  (Id.)

There are nine parts to the proposed Injunctive Terms: (1) create the PREA-GBTI Committee ("the Committee")[8]; (2) establish policies for Housing and Classification Issues; (3) establish inmate worker options for GBTI inmates; (4) require access to programming; (5) require equal tier time for GBTI inmates; (6) require training on GBTI, PREA, and sexual harassment issues for staff, contractors, volunteers, and other inmates; (7) require specific policies for transgender inmates; (8) establish a zero-tolerance policy for harassment and ensuring PREA compliance; and (9) establish procedures to enforce the Settlement Agreement. (See generally "Injunctive Terms," Dkt. No 78-3.)

Importantly, these terms include provisions to ensure that GBTI inmates have comparable access as their peers in general population to programming, education, religious services, tier time, and work.  Additionally, the terms provide for housing that considers an inmate's sexual orientation and gender identity when making assignments, and considers a GBTI inmate's preferences.  Finally, the terms provide specific policies needed to address the needs of transgender inmates, including housing assignment, choice as to the gender of deputies performing searches, and access to hormonal medication to treat gender dysphoria.  (See generally Injunctive Terms; see also MFACS at 14.)

The complete text of the Injunctive Terms is available at Dkt. No. 78-3.

**E.  Notice**

The Settlement Agreement proposed the following procedure to notify the settlement class members of the Settlement Agreement.  The Administrator will be responsible for mailing class notice and the claim form to class members at their last known address.  (Settlement Agreement § IX, ¶ 32.)  The Administrator will use customary means to search for the last known address and do "whatever else is reasonably appropriate in order to reasonably notify Class Members . . . ."  (Id.)  Additionally, Defendants will post a summary notice in the ALT for the duration of the class notice period with a statement that the full notice will be provided on request.  (Id.)

---

[8] "PREA" refers to the Prison Rape Elimination Act, and"GBTI" refers to individuals who are gay, bisexual, transgender, or intersex.

Case 2:19-cv-01532-DOC-DFM   Document 387-6   Filed 02/06/25   Page 419 of 484
Page ID #:33792
Case 5:14-cv-02171-JGB-SP   Document 103   Filed 02/28/19   Page 9 of 22   Page ID #:1553

The class notice describes the particulars of this case, provides the class definition, provides information for claimants to contact the Administrator, notifies the Damages Class members of the case website, and contains a series of questions and answers to help explain the Settlement Agreement.  (Id. ¶ 34; see also "Class Notice," Dkt. No. 81-2.)  The Administrator will mail the class notice as soon as practicable after preliminary approval.  (Settlement Agreement § IX, ¶ 35.)  The Administrator will include in the physical mailing a claim form.  (Id. § X, ¶ 37.)  In addition to physical mail, the Administrator will also gather, to the extent reasonably possible and cost effective, email addresses of class members.  (Id. § IX, ¶ 36.)  A claim form will be timely submitted if it is received before the cutoff date, which Plaintiffs propose should be January 7, 2019.  (Proposed Order at 3.)  If a class member submits a deficient claim form the Administrator will provide mail notice of the deficiency and give the class member 30 days to provide a proper form.  (Settlement Agreement § X, ¶ 39.)  If the original form is received before the cutoff date, the corrected claim will still be considered timely.  (Id.)

A class member who wishes to opt-out of the Damages Class must submit a request to be excluded to the Administrator before the cutoff date.  (Id. § XI, ¶ 43.)  Class members who do not timely opt-out of the Damages Class are deemed to have participated in the settlement and will be bound by the Settlement Agreement and all subsequent proceedings, even if s/he did not file a claim form.  (Id. ¶ 45.)

## F.  Performance of the Settlement Agreement

JND Legal Administration is serving as the settlement administrator.  (Settlement Agreement IX, ¶ 31.)  The Administrator received 165 approved Claim Forms from individuals identified as Settlement Class Members.  (Keough Decl. ¶ 21.)  Four Claim Forms have been denied as duplicative.  (Id.)  382 Claim Forms were submitted by individuals who do not appear on the Class List.  (Id.)  Two Claim Forms were missing signatures or other required information and were deemed deficient.  (Id.)  An additional two Claim Forms were received as of January 14, 2019 with postmarks dated after the January 7, 2019 deadline.  (Id.)  The claims administrator has received a total of 555 claims to date.  (Id.)  On February 7, 2019, Plaintiffs filed a Late Claim Notice informing the Court that 10 late claims were filed.  (Late Claims Notice.)  The Court granted Plaintiffs' request to approve the payment of these late claims.  See supra Part II.C.1.

## III.  Legal Standard

### A.  Class Action Settlement

Class action settlements must be approved by the Court.  See Fed. R. Civ. P. 23(e).  Whether to approve a class action settlement is "committed to the sound discretion of the trial judge."  Class Plaintiffs v. Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992).  A strong judicial policy favors settlement of class actions.  See id.

Nevertheless, the Court must examine the settlement as a whole for overall fairness.  See Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998).  Neither district courts nor

Case 2:13-cv-01632-DOC-DFM   Document 387-5   Filed 04/06/25   Page 420 of 484
Page ID #:33695
Case 5:14-cv-02171-JGB-SP   Document 103   Filed 02/28/19   Page 10 of 22   Page ID #:1554

appellate courts have the power to delete, modify, or substitute provisions in the negotiated settlement agreement.  See id.  "The settlement must stand or fall in its entirety."  Id.

In order to approve the class action settlement herein, the Court must conduct a three-step inquiry.  See Adoma v. Univ. of Phoenix, Inc., 913 F. Supp. 2d 964, 972 (E.D. Cal. 2012).  First, it assesses whether the parties have met notice requirements under the Class Action Fairness Act.  Id.  Next, it determines whether the notice requirements of Federal Rule of Civil Procedure 23(c)(2)(B) have been satisfied.  Id.  Finally, the Court must find that the proposed settlement is fair, reasonable, and adequate under Rule 23(e)(3).  Id.

## B.  Attorneys' Fees

Class Counsel also requests approval of its request for attorneys' fees.  In the Ninth Circuit, the court has discretion to use either a percentage of the fund or a lodestar approach in compensating class counsel.  See, e.g., Paul, Johnson, Alston & Hunt v. Graulty, 886 F.2d 268, 272 (9th Cir. 1989); In re Washington Pub. Power Supply Sys. Sec. Lit., 19 F.3d 1291, 1295 (9th Cir. 1994).  When a statutory fee is available, such a statutory fee award is appropriate independent of the class damages fund.  See Staton v. Boeing Co., 327 F.3d 938, 972 (9th Cir. 2003) ("in a class action involving both a statutory fee-shifting provision and an actual or putative common fund, the parties may negotiate and settle the amount of statutory fees along with the merits of the case, ...[and] the amount of such attorneys' fees can be approved if they meet the reasonableness standard when measured against statutory fee principles").  Here, a statutory fee is available under both 42 U.S.C. § 1988 and Cal. Civ. Code § 52.1(h).  "The 'lodestar method' is appropriate in class actions brought under fee-shifting statutes (such as federal civil rights, securities, antitrust, copyright, and patent acts), where the relief sought—and obtained—is often primarily injunctive in nature and thus not easily monetized. . ."  In re Bluetooth Headset Prod. Liab. Litig., 654 F.3d 935, 941 (9th Cir. 2011).

The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer.  Staton 325 F.3d at 965.  Statutory attorneys' fees are not correlated to the size of recovery but instead look to the attorneys' reasonable hours and rates, as well as the public benefit conferred by the litigation.  See City of Riverside v. Rivera, 477 U.S. 561, 575 (1986).

### IV.    Rule 23 Requirements

## A.  Rule 23(a) and (b)

In its Preliminary Approval Order, the Court certified the Settlement Classes in this matter under Rules 23(a) and 23(b)(2) and (3).  (Preliminary Approval Order at 3–8.)  Accordingly, the Court "need not find anew that the settlement class[es] meet[] the certification requirements of Rule 23(a) and (b)."  Adoma, 913 F. Supp. 2d at 974; see also Harris v. Vector Marketing, No. C–08–5198, 2012 WL 381202 at *3 (N.D. Cal. Feb. 6, 2012) ("As a preliminary matter, the Court notes that it previously certified . . . a Rule 23(b)(3) class . . . [and thus] need

Case 8:19-cv-01582-DOC-DFM   Document 387-5   Filed 09/06/25   Page 421 of 484
Page ID #:33698
Case 5:14-cv-02171-JGB-SP   Document 103   Filed 02/28/19   Page 11 of 22   Page ID #:1555

not analyze whether the requirements for certification have been met and may focus instead on whether the proposed settlement is fair, adequate, and reasonable."); In re Apollo Group Inc. Securities Litigation, Nos. CV 04–2147–PHX–JAT, CV 04–2204–PHX–JAT, CV 04–2334–PHX–JAT, 2012 WL 1378677 at *4 (D. Ariz. Apr. 20, 2012). Here, the Settlement Classes have not changed since they were conditionally certified. All the criteria for class certification remain satisfied, and the Court hereby confirms its order certifying the Settlement Classes.

## B. Rule 23(c)(2) Notice Requirements

Rule 23(c)(2)(B) requires the Court "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Similarly, Rule 23(e)(1) requires a proposed settlement may only be approved after notice is directed in a reasonable manner to all class members who would be bound by the agreement. Fed. R. Civ. P. 23(e)(1). In its Preliminary Approval Order, the Court approved the notice sent to Settlement Class members. The claims administrator timely mailed the Notice Packet, provided e-mail notice, established a toll-free number to provide information on the settlement, created a settlement website, and advertised the settlement on the internet through Facebook. (Keough Declaration ¶¶ 7–15.) The Court therefore finds that notice to the Settlement Class was adequate.

## C. Rule 23(e)

Under Rule 23(e), "the claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The primary concern of [Rule 23(e)] is the protection of those class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco, 688 F.2d 615, 624 (9th Cir. 1982). The Court's inquiry is procedural in nature. Id. Pursuant to Rule 23(e)(2), "[i]f the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The Court held a final approval hearing on February 11, 2019. In determining whether a settlement agreement is fair, adequate, and reasonable to all concerned, the Court may consider some or all of the following factors:

(1) the strength of the plaintiff's case;

(2) the risk, expense, complexity, and likely duration of further litigation;

(3) the risk of maintaining class action status throughout the trial;

(4) the amount offered in settlement;

(5) the extent of discovery completed, and the stage of the proceedings;

(6) the experience and views of counsel;

(7) the presence of a governmental participant; and

---

**CIVIL MINUTES—GENERAL**          Initials of Deputy Clerk MG

Case 2:13-cv-01532-DOC-DFM   Document 387-6   Filed 09/06/25   Page 422 of 484
Page ID #:33695
Case 5:14-cv-02171-JGB-SP   Document 103   Filed 02/28/19   Page 12 of 22   Page ID #:1556

(8) any opposition by class members.

<u>Linney v. Cellular Alaska P'ship</u>, 151 F.3d 1234, 1242 (9th Cir. 1998). This list of factors is not exclusive and a court may balance and weigh different factors depending on the circumstances of each case. <u>See</u> <u>Torrisi v. Tucson Elec. Power Co.</u>, 8 F.3d 1370, 1376 (9th Cir. 1993).

### 1. Strength of Plaintiffs' Case

The initial fairness factor addresses Plaintiffs' likelihood of success on the merits. <u>See</u> <u>Rodriguez v. W. Publ'g Corp.</u>, 563 F.3d 948, 964–65 (9th Cir. 2009). In determining the probability of Plaintiffs' success on the merits, there is no "particular formula by which that outcome must be tested." <u>Id.</u> at 965.

Plaintiffs considered their liability case to be strong, especially since California expressly applies strict scrutiny to claims of sexual orientation discrimination. (MFACS at 9.) However, Defendants similarly believe they have a strong defense in asserting that Plaintiffs made voluntary and informed decisions to be housed in the ALT. (<u>Id.</u>) Additionally, Defendants contest that a proper comparison for GBT inmates are general population inmates, and instead assert that protective custody inmates are the proper comparison group. (<u>Id.</u>)

Given the challenges Plaintiffs would face in continued litigation over such issues, the Court finds this factor weighs in favor of approval.

### 2. Risk, Expense, Complexity, and Likely Duration of Further Litigation

Plaintiffs' counsel acknowledges the risk, expense, and likely duration of litigation. (MFACS at 10-11.) Plaintiffs anticipate that even with what they perceive to be strong claims, litigation would take several years. (<u>Id.</u>) This would also greatly increase the costs of litigation. At this stage, Plaintiffs' counsel already seek $1,100,000 in attorneys' fees and costs, and at a substantially discounted rate. (<u>Id.</u> at 7.) Stretched over years of potential litigation, this sum would be substantially larger.

The risk, expense, complexity, and likely duration of further litigation weigh in favor of final approval. Without the Settlement Agreement, the parties would be required to litigate class certification, as well as the ultimate merits of the case—a process which the Court acknowledges is long, complex, and expensive. Settlement of this matter will conserve the resources of this Court and the parties, thus weighing heavily in favor of final approval.

### 3. Risk of Maintaining Class Action Status Throughout the Trial

Because the Court is not aware of any risks to maintaining class-action status throughout trial, this factor is neutral. <u>Barbosa v. Cargill Meat Sols. Corp.</u>, 297 F.R.D. 431, 445 (E.D. Cal. 2013); <u>see also</u> <u>In re Veritas Software Corp. Sec. Litig.</u>, No. 03–0283, 2005 WL 3096079, at *5 (N.D. Cal. Nov. 15, 2005) (<u>vacated in part on other grounds</u>, 496 F.3d 962 (9th Cir. 2007)) (favoring neither approval nor disapproval of settlement where the court was "unaware of any

---

risk involved in maintaining class action status"); Vasquez v. Coast Valley Roofing, Inc., 266 F.R.D. 482, 489 (E.D. Cal. 2010) (finding that there were no facts that would defeat class treatment, the factor was considered "neutral" for purposes of final approval of class settlement).

### 4. Amount Offered in Settlement

In determining whether the amount offered in settlement is fair, a court compares the settlement amount to the parties' estimates of the maximum amount of damages recoverable in a successful litigation. In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000), as amended (June 19, 2000).

In valuing this litigation, Plaintiffs' Counsel estimated each class members would recover a few thousand dollars. (MFACS at 9.) Under this Settlement, the average recovery for claiming class members is $4,000-5,000. (Id.) Additionally, Plaintiffs' Counsel considers the monetary recovery highly favorable when compare to other class actions for damages in the jail context involving over-detentions and strip searches. (Id. at 10.)

Plaintiffs also believe that the Injunctive Terms contribute significant additional value. (Id.) Plaintiffs' counsel, who are experienced in class action litigation regarding civil rights issues, believe the Injunctive Terms are "groundbreaking" and a "model in many respects." (Id. at 10-11.) Plaintiffs' counsel determined that the benefit to the class of this injunctive relief was of such value that they agreed to a significantly reduced fee in return. (Id.)

The Court finds this factor weighs in favor of final approval.

### 5. Extent of Discovery Completed and Stage of the Proceedings

This factor requires the Court evaluate whether "the parties have sufficient information to make an informed decision about settlement." Linney, 151 F.3d at 1239.

Plaintiffs assert they negotiated with Defendants at arms' length and without collusion, which is evidenced by the extensive discovery and mediation process. (MFACS at 14.) Plaintiffs conducted extensive document discovery. (Id. at 12.) Although Plaintiffs did not conduct depositions, there were several meetings with Defendants' counsel to address issues regarding jail operations. (Id.) SBCSD provided both formal and informal discovery concerning the operation and conditions of general population inmates as well as ALT inmates. (Id.) Additionally, Plaintiffs' counsel inspected with an expert consultant WVDC premises where GBT and non-GBT inmates are housed, as well as the Glen Helen Rehabilitation Center. (Id.) The parties further held several in-person settlement conferences through private mediation before the Hon. Carla Woehrle (Ret.). (Id. at 2.)

///

---

Case 2:13-cv-01531-DOC-DFM   Document 387-6   Filed 04/06/25   Page 424 of 484
Page ID #:33699
Case 5:14-cv-02171-JGB-SP   Document 103   Filed 02/28/19   Page 14 of 22   Page ID #:1558

The Court finds the parties have engaged in substantial investigation of the facts and the applicable law.  This factor weighs in favor of granting final approval of the Settlement Agreement.

### 6.  Experience and Views of Counsel

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 528 (C.D. Cal. 2004) (internal citation and quotation marks omitted).  Plaintiffs' counsel has extensive experience serving as counsel in civil rights class actions.  (MFACS at 13.)  Litt is a well-known civil rights lawyer with decades of experience.  (MAF at 10).   McClane has worked on civil rights and criminal defense cases for the last fifteen years.  (Id.)  Battles has been practicing civil rights cases for ten years.  (Id.)  Goodman, Goad, Hamme, Hill, and Fruitwala of ACLU SoCal have 15, 13, 6, 4 and 4 years of experience respectively.  (Id.) Counsel further submits that the proposal is fair.  (MFACS at 11.)  This weighs in favor of final approval.

### 7.  Presence of a Governmental Participant

"The participation of a government agency serves to protect the interests of the class members, particularly absentees, and approval by the agency is an important factor for the court's consideration." Marshall v. Holiday Magic, Inc., 550 F.2d 1173, 1178 (9th Cir. 1977).  Here, the County and SBCSD are government agencies, and as such, their participation and consent to the terms of injunctive relief weigh in favor of approving the settlement.

### 8.  Opposition of Class Members

The existence of overwhelming support for a settlement agreement by the class lends weight to a finding that the settlement agreement is fair, adequate, and reasonable.  DIRECTV, Inc., 221 F.R.D. at 529 ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.").

Here, the record supports that class members have a positive reaction to the proposed settlement.  JND has approved and received 165 Claim Forms.  (Keough Decl. ¶ 21.)  As of the date of the declaration, the settlement administrator had not received any opt-out requests nor any objections to the settlement.  (Id. ¶¶ 17-19.)  Assuming this trend continues, this indicates that the classes approve of the settlement.  Accordingly, this factor weighs in favor of final approval.

///
///
///
///

### D. Settlement Administration Costs

Plaintiffs seek $40,000 in settlement administration costs, the same amount that this Court preliminarily approved as part of the Settlement Agreement.  (MFA at 4; Preliminary Approval Order at 6.)  The Court approves $40,000 in administration costs.

### E. Incentive Awards

The trial court has discretion to award incentives to the class representatives.  See In re Mego, 213 F.3d at 463 (9th Cir. 2000); Pelletz, 592 F. Supp. 2d at 1329.  The criteria courts have used in considering the propriety and amount of an incentive award include: (1) the risk to the class representative in commencing a class action, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort invested by the class representative; (4) the duration of the litigation; and (5) the personal benefit, or lack thereof, enjoyed by the class representative.  Van Vranken v. Atl. Richfield Co., 901 F. Supp. 294, 299 (N.D. Cal. 1995).

The settlement provides a slight benefit to the 15 Named Plaintiffs (ranging from $2000 to $5,500 in addition to their class member formula award, depending on the role and contribution of the class representative).  (MFACS at 17.)  Although there is a larger than normal number of class representatives, it is because Class Counsel determined there were several categories of class representatives necessary to represent class members in custody with standing to seek injunctive relief and class members not in custody who were not subject to PLRA restrictions.  (Id.) Class Counsel also determined that they needed a larger than usual number of class representatives due to the variety of deprivations at which the Complaint was aimed (e.g., drug treatment, mental health treatment, education, work opportunities), for each of which it was important to have a class representative who personally experienced the deprivation.  (Id.)

Here, the class representatives were (either at the time of the filing of the complaint or previously) in SBCSD custody.  (Id. at 19.)  Those who were in custody exposed themselves to risk of retaliation, and those not in custody were still at risk of re- arrest and retaliation.  (Id.)  All Named Plaintiffs put their names in the public arena. (Id.)  Plaintiffs' counsel spent dozens of hours interviewing class representatives while they were in custody, increasing their potential risk and demonstrating their personal participation in the litigation.  (Id.)

Class Counsel asserts the requested amounts are well within the range of court approved incentive payments in recognition of work done on behalf of the class and in consideration of the risk undertaken in bringing the action. (Id.)  "An incentive award of $5,000 per class representative is in line with other awards approved in this circuit."  Weeks v. Kellogg Co., No. CV 09-08102 MMM RZX, 2013 WL 6531177, at *37 (C.D. Cal. Nov. 23, 2013).  See also In re Online DVD-Rental Antitrust Litig., 779 F.3d 934, 943 (9th Cir. 2015) (affirming $5,000 incentive award even though the average class member received only $12); In re Mego, 213 F.3d at 463 (approving a $5,000 incentive award for each class representative).

Case 8:19-cv-01532-DOC-DFM    Document 387-6    Filed 09/06/25    Page 426 of 484
Page ID #:33599
Case 5:14-cv-02171-JGB-SP   Document 103   Filed 02/28/19   Page 16 of 22   Page ID #:1560

Given these Named Plaintiffs' involvement in the case and their assumption of significant risk, the Court AWARDS the following incentive awards:

| NAME | INCENTIVE AWARD[9] |
|---|---|
| Bryan Bagwell | $5,000 |
| Frederick Crockan | $5,000 |
| Pedro Guzman | $3,000 |
| Michael Aka Madison Hatfield | $5,000 |
| William Kennedy | $3,000 |
| Sean Lint | $2,000 |
| Anthony Oliver | $5,500 |
| Nick Ou | $3,000 |
| Kevin Aka Veronica Pratt | $5,500 |
| Steven Aka Lynn Price | $3,000 |
| Jonathan Robertson | $3,000 |
| Illich Vargas | $5,500 |
| Tim Walker | $5,000 |
| Taheash White | $2,000 |
| **TOTAL** | **$55,500.00** |

## V.    ATTORNEYS' FEES AND COSTS

Class counsel seeks $1,100,000 in attorneys' fees and costs in a separate motion under 42 U.S.C. § 1988 and Cal. Civ. Code § 52.1(h), which provide reasonable attorneys' fees for prevailing plaintiffs. (MFACS at 7.)  This amount was independently negotiated with the assistance of a professional mediator and, in order to effectuate the settlement, substantially discounted below the amounts Plaintiffs would have sought in an attorneys' fees motion.  (Id.)

### A.  The Lodestar Approach is Appropriate

The lodestar approach is appropriate because this is a class action brought under fee-shifting statutes where the primary relief sought is injunctive relief.  See In re Bluetooth Headset Prod. Liab. Litig., at 941.  The Ninth Circuit noted it has "repeatedly made it clear that the level of success achieved by a civil rights plaintiff should be measured by more than the amount of damages awarded."  Morales v. City of San Rafael, 96 F.3d 359, 365 (9th Cir. 1996), opinion amended on denial of reh'g, 108 F.3d 981 (9th Cir. 1997).  In Morales, the damages verdict was itself "significant. . . [and] established a deterrent to the City, its law enforcement officials and others who establish and implement official policies."

---

[9] Christopher Crawford passed away and will no longer receive an incentive award.  See supra Part II.C.

Case 2:13-cv-01582-DOC-DFM   Document 387-6   Filed 09/06/25   Page 427 of 484
Page ID #:33700
Case 5:14-cv-02171-JGB-SP   Document 103   Filed 02/28/19   Page 17 of 22   Page ID #:1561

Here, Plaintiffs request $1,100,000 in attorneys' fees, which exceeds the class damages fund. In a case without an available statutory fee, this disparity would be inappropriate. However, in a case like this, it is common for statutory fees to exceed recovered damages, particularly where Plaintiffs obtained significant injunctive relief. Plaintiffs secured injunctive relief on a groundbreaking issue. The parties agree these statutory fees are appropriate. Like in Morales, the relief obtained through this settlement creates a deterrent for state agents has an effect on official policies. The value of this relief is difficult to measure but should not be underestimated given the critical implications for the injunctive class members and the potential for use as a model for other correctional facilities.

Given the nature of this case and the relief granted, this Court finds the lodestar method appropriate in this case.

**B. The Requested Fees are Reasonable**

Class counsel seeks $1,100,000 in attorneys' fees. (MFACS at 7.) This number was negotiated by the parties with the assistance of a professional mediator and represents a significantly discounted lodestar. (Id.)

District courts using the lodestar method to determine reasonable fees under § 1988 engage in a two-step process. First, courts "apply ... the 'lodestar' method to determine what constitutes a reasonable attorney's fee." Costa v. Comm'r of Soc. Sec. Admin., 690 F.3d 1132, 1135 (9th Cir. 2012); Morales 96 F.3d at 363; Ballen v. City of Redmond, 466 F.3d 736, 746 (9th Cir. 2006). Second, "[t]he district court may then adjust [the lodestar] upward or downward based on a variety of factors." Moreno v. City of Sacramento, 534 F.3d 1106, 1111 (9th Cir. 2008). Statutory attorneys' fees are not correlated to the size of recovery but instead look to the attorney's reasonable hours and rates, as well as the public benefit conferred by the litigation. See City of Riverside v. Rivera, 477 U.S. 561, 575 (1986).

**1. Computation of the Lodestar**

Under the lodestar method, the district court "multiplies the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." Ballen, 466 F.3d at 746 (internal quotation marks omitted); Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). The product of this computation—the "lodestar figure"—is a "presumptively reasonable" fee under 42 U.S.C. § 1988. See Ballen, 466 F.3d at 746.

**a. Reasonable Number of Hours**

To calculate attorneys' fees using the lodestar method, a court must determine the reasonable number of hours for which the prevailing party should be compensated. See, e.g., Fischer v. SJB–P.D. Inc., 214 F.3d 1115, 1119 (9th Cir. 2000). Ultimately, a "reasonable" number of hours equals "[t]he number of hours ... [which] could reasonably have been billed to a private client." Moreno, 534 F.3d at 1111. The prevailing party has the burden of submitting

Case 8:19-cv-01531-DOC-DFM    Document 387-6    Filed 09/06/25    Page 428 of 484
Page ID #:33703
Case 5:14-cv-02171-JGB-SP   Document 103   Filed 02/28/19   Page 18 of 22   Page ID #:1562

billing records to establish that the number of hours it has requested is reasonable.  See In re Wash. Pub. Power Supply Sys. Sec. Litig., 19 F.3d 1291, 1305 (9th Cir. 1994).  Thus, to determine whether attorneys for the prevailing party could have reasonably billed the hours they claim to their private clients, a district court should begin with the billing records the prevailing party has submitted.  Gonzalez v. City of Maywood, 729 F.3d 1196, 1202 (9th Cir. 2013)

Here, Class Counsel provides billing records that were contemporaneously maintained which detail the time spent working on this case.  ("Ex. C," Dkt. No 87-3; "Ex. E," Dkt. No. 88-1.)  In their MFACS, Plaintiffs provide tables that include each timekeeper who worked on the case and the number of hours they worked.  (MFACS at 13.)  Billed hours were spent on activities such as extensive document review and analysis, interviewing class representatives and class members, and settlement negotiations.  (Id. at 12).  Plaintiffs note that negotiating the terms of injunctive relief was particularly time consuming and took several meetings with both the mediator and  counsel.  (Id.)

The Court has no reason to doubt the number of hours provided by Class Counsel.  This is especially true given the substantial discount from Class Counsel's lodestar total, as negotiated in the settlement.  Further, the hours provided by Class Counsel do not account for work done for the MFACS and MAF, ongoing work with the Class Administrator and class members, and an appearance at the final approval hearing.  (Id. at 14.)  Given these reasons and the time-intensive nature of a settlement involving injunctive relief, this Court finds that Class Counsel billed a reasonable number of hours.

### b. Reasonable Hourly Rate

Class Counsel asserts their requested hourly rates are reasonable for attorneys of their skill, experience, and reputation.  California law entitles plaintiff attorneys to their requested rates if those rates are "within the range of reasonable rates charged by and judicially awarded comparable attorneys for comparable work."  Children's Hosp. & Med. Ctr. V. Bonta, 97 Cal. App. 4th, 740, 783 (Cal. Ct. App. 2002).  Federal law similarly instructs that "requested rates [should be] in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation."  Jordan v. Multnomah Cty., 815 F.2d 1258, 1263 (9th Cir. 1987).  In making this showing, "affidavits of the plaintiffs' attorney[s] and other attorneys regarding prevailing fees in the community, and rate determinations in other cases are satisfactory evidence of the prevailing market rate."  Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 980 (9th Cir. 2008)(internal citations and marks omitted).

In calculating the lodestar, Plaintiffs may adjust for delay in payment.  See, e.g., Missouri v. Jenkins, 491 U.S. 274, 282 (1989) ("an appropriate adjustment for delay in payment—whether by the application of current rather than historic hourly rates or otherwise—is within the contemplation of the statute [42 U.S.C. §1988]"); Barjon v. Dalton, 132 F.3d 496, 502–03 (9th Cir. 1997) ("the district court may choose to apply either the attorney's current rates to all hours billed or the attorney's historic rates plus interest").  Generally, for a "fee award to be reasonable, it must be based on current, rather than historic, hourly rates."  Charlebois v. Angels

Case 2:13-cv-01512-DOC-DFM   Document 887-5   Filed 09/06/25   Page 429 of 484
Page ID #:33702
Case 5:14-cv-02171-JGB-SP   Document 103   Filed 02/28/19   Page 19 of 22   Page ID #:1563

Baseball LP, 993 F. Supp. 2d 1109, 1119 (C.D. Cal.2012) (citing Jenkins, 491 U.S. at 282) (lodestar award in settled class action).

To demonstrate the reasonableness of Class Counsel's rates, Plaintiffs' attorneys Barrett S. Litt ("Litt") of Kaye, McClane, Bednarski and Litt ("KMBL") and Amanda Goad of the ACLU Foundation of Southern California ("ACLU SoCal") have submitted declarations attesting to their experience litigating federal civil rights class actions and detailing their work on this case. ("Litt Declaration," Dkt. No. 87; "Goad Declaration," Dkt. No. 88.) Litt is licensed to practice law in the State of California, the U.S. District Courts in the Central, Eastern, and Northern Districts of California, in the Ninth, Fourth, Fifth, Eleventh, and D.C. Courts of Appeal, and in the United States Supreme Court. ("Ex. B," Dkt. No. 87-2.) Litt has been practicing for 45 years and has litigated an extensive list of complex civil rights cases, many of which have involved fee-shifting provisions. (Litt Decl. at 30) Litt asserts he bills an hourly rate of $1,150.00. (Id.)

In addition, Litt's declaration provides information as to the experience and billing rates of Plaintiffs' counsel David S. McLane ("McLane"), Lindsay Battles ("Battles"), and Ron Kaye ("Kaye") of KMBL and Melissa Goodman ("Goodman"), Brendan M. Hamme ("Hamme"), Goad, Tasha Hill ("Hill") and Aditi Fruitwala ("Fruitwala") of ACLU SoCal. (Litt Decl. at 30-45.) Litt further provides information regarding the rates of senior paralegal Julia White and junior paralegals Esteban Gil and Rene Arriaza of KMBL, as well as senior paralegal Duaba Gonzalez of ACLU SoCal. (Id.) Litt provides tables supporting the proposition that each member of Plaintiffs' counsel's rates fall within the range of rates for attorneys and paralegals of comparable experience by comparing Plaintiffs' counsels' rates with others working at prominent civil rights firms and organizations in the Central District of California within a close range of experience. (Id.)

The Court finds the range of rates provided by these tables adequately establishes billing rates for civil rights attorneys in the forum. The relevant portions of this table state that: attorneys practicing civil rights litigation with 26-49 years of experience bill adjusted lodestar rates of $887-$1230 per hour; attorneys practicing civil rights litigation with 23-33 years of experienced bill adjusted lodestar rates of $738-$1220 per hour; attorneys practicing civil rights litigation with 9-15 years of experience bill adjusted lodestar rates of $603-$855 per hour; and attorneys practicing civil rights litigation with 1-6 years of experience billed adjusted lodestar rates of $336-$671 per hour (Id. at 31-43). Litt further notes that fee-paying litigants bringing similars action would pay much higher commercial rates for attorneys of similar or less experience practicing civil rights litigation. (Id.)

Plaintiffs request the hourly rates for attorneys: $875 for McLane, who has 32 years of experience; $600 for Battle, who has 10 years of experience; $875 for Kaye, who has 30 years of experience; $715 for Goodman, who has 15 years of experience; $640 for Goad, who has 13 years of experience; $480 for Hamme, who has six years of experience; $390 for Hill, who has four years of experience; and $390 for Fruitwala, who has four years of experience. (Litt Decl. at 29.) Plaintiffs request the following rates for non-attorney timekeepers: $335 for Julia White, a senior

paralegal; $195 for Diana Gonzalez, a senior paralegal; $175 for Rene Arriaza, a junior paralegal; $225 for Sujata Awasthi, a law clerk; $225 for Evan Ettinghoff, a law clerk. (Id.)

The provided tables reflect that the hourly rates of Plaintiffs' attorneys fall within the reasonable range for attorneys of their experience in this district. Further, the fact that counsel seeks a significantly discounted lodestar weighs in favor of finding that the provided rates are reasonable. Plaintiffs' calculated lodestar total is $2,647,267.35. (Id.) They seek only the discounted amount of $1,100,000. (MFACS at 7.) Accordingly, this Court finds the rates, as reflected in Plaintiffs' motion for attorney's fees and costs are reasonable.

### 2. Adjustments to the Lodestar

After computing the lodestar figure, district courts may adjust that figure pursuant to a "variety of factors." See Moreno, 534 F.3d at 1111. "[T]he district court accounts for the following factors in the lodestar computation: '(1) the novelty and complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of representation, (4) the results obtained, and (5) the contingent nature of the fee agreement.'" Gonzalez v. City of Maywood, 729 F.3d 1196, 1209 (9th Cir. 2013)(citing Kerr v. Screen Guild Extras, Inc., 526 F.2d 67, 70 (9th Cir. 1975)).

The Court has already provided an analysis for many of these factors above, including: (1) the novelty and complexity of the issues; (2) counsel's skill and experience; (4) the results obtained; and (5) the contingent nature of the fee arrangement. In those analyses, the Court found that all these factors weighed in favor of approving the settlement. The Court need not repeat this analysis and finds that these factors weigh in favor of approving Plaintiffs' motion for award of attorney's fees and costs. The Court turns to the remaining factor.

Management of this case involved working with a large number of class representatives, working with two different subclasses, and managing both federal and state law claims. Counsel also compiled and analyzed data over four years. Plaintiffs conducted extensive document discovery. (MAF at 12.) Although Plaintiffs did not conduct depositions, there were several meetings with Defendants' counsel to address issues regarding jail operations. (Id.) Additionally, Plaintiffs' counsel inspected with an expert consultant WVDC premises where GBT and non-GBT inmates are housed, as well as the Glen Helen Rehabilitation Center. (Id.) The parties further held several in-person settlement conferences through private mediation before the Hon. Carla Woehrle (Ret.). (Id. at 2.) The Court finds this factor weighs in favor of approval.

The aforementioned factors weigh in favor of approval. Notably, counsel achieved positive results and already stipulated to a substantially discounted lodestar during settlement. For the reasons stated above, the Court APPROVES Plaintiff's request for $1,100,000 in attorneys' fees.

///

## C. Costs

Federal and state fee shifting statutes allow for reimbursement of litigation expenses that "are normally charged to a fee-paying client, in the course of providing legal services. Reasonable photocopying, paralegal expenses, and travel and telephone costs are thus recoverable pursuant to § 1988." Thornberry v. Delta Air Lines, Inc., 676 F.2d 1240, 1244 (9th Cir. 1982), cert. granted, judgment vacated on other grounds, 461 U.S. 952 (1983).

Here, Plaintiffs request costs for travel, investigators, consultants, filing fees, photocopies, printing, scans, messenger services, telephone calls, postage, computerized legal research, and similar costs normally reimbursed by the client. See, e.g., In re Immune Responses Sec Litig., 497 F. Supp. 2d 1166, 1177-78 (S.D. Cal. 2007). Opinions of federal courts are applicable to determining allowable costs under California law. See, e.g., Bussey v. Affleck, 225 Cal. App. 3d, 1162, 1165 (Cal. Ct. App. 1990), abrogated on other grounds by Robert L. Cloud and Associates, Inc. v. Mikesell, 69 Cal. App.4th 1141 (1999).

The Settlement Agreement provides for payments of costs up to $37,000, payable from the Class Fund. (Settlement Agreement ¶ 30.) Counsel now requests $36,304.49 in costs. (MAF at 21.) This Court has reviewed the provided itemized list of costs and finds they are appropriate. The Court therefore APPROVES the requested amount for costs.

## VI. CONCLUSION

For the reasons stated above, the Court:

1. GRANTS final approval of the Settlement Agreement and Injunctive Terms;

2. APPROVES payment of the ten late claims and any claims postmarked on or before February 11, 2019;

3. APPROVES Plaintiffs' requests to deem Frederick Crockan, Joe Raymond Fierro, and Andrew Afoa to have filed a timely claim;

4. AWARDS Class Counsel attorneys' fees in the amount of $1,100,000.00;

5. AWARDS Class Counsel costs in the amounts of $36,304.49 as provided in the Settlement Agreement;

6. AWARDS the following amounts to the Named Plaintiffs:

///
///
///

Case 2:19-cv-01582-DOC-DFM   Document 387-6   Filed 09/05/25   Page 432 of 484
Page ID #:33705
Case 5:14-cv-02171-JGB-SP   Document 103   Filed 02/28/19   Page 22 of 22   Page ID #:1566

| NAME | INCENTIVE AWARD |
|---|---|
| Bryan Bagwell | $5,000 |
| Frederick Crockan | $5,000 |
| Pedro Guzman | $3,000 |
| Michael Aka Madison Hatfield | $5,000 |
| William Kennedy | $3,000 |
| Sean Lint | $2,000 |
| Anthony Oliver | $5,500 |
| Nick Ou | $3,000 |
| Kevin Aka Veronica Pratt | $5,500 |
| Steven Aka Lynn Price | $3,000 |
| Jonathan Robertson | $3,000 |
| Illich Vargas | $5,500 |
| Tim Walker | $5,000 |
| Taheash White | $2,000 |
| **TOTAL** | **$55,500.00** |

7. ORDERS the payment of $37,500 to the claims administrator; and

8. DISMISSES the Complaint WITH PREJUDICE.

**The Court ORDERS such judgment be entered.**

---

Electronically FILED by Superior Court of California, County of Los Angeles on 07/01/2020 06:52 PM Sherri R. Carter, Executive Officer/Clerk of Court, by C. Coleman,Deputy Clerk

GREENBERG TRAURIG, LLP
Eric V. Rowen (SBN 106234)
Matthew R. Gershman (SBN 253031)
1840 Century Park East, Suite 1900
Los Angeles, California 90067
Telephone:     (310) 586-7700
Facsimile:      (310) 586-7800
Email:          RowenE@GTlaw.com
                GershmanM@GTlaw.com
Attorneys for Respondents and Cross-Petitioners

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| ANN M. SIMONS, individually and as the Designated Representative of Family 3,<br><br>Petitioner,<br><br>v.<br><br>THE ENTERPRISE, a business enterprise, GILAD LUMER, individually and as the Designated Family Representative of Family 1, HARRY LUMER, SR., individually and as the Designated Family Representative of Family 2, STUART RUBIN, individually and as a Representative of Family 4, and DAVID WANK, individually and as the Representative of Family 5,<br><br>Respondents. | CASE NO. 19STCP01994<br>[Related to Case No. BS127141]<br><br>[Assigned for all purposes to Hon. Randolph M. Hammock, Dept. 47]<br><br>**DECLARATION OF ERIC V. ROWEN IN SUPPORT OF RESPONDENTS/CROSS-PETITIONERS' MOTION FOR ATTORNEYS' FEES**<br><br>[Filed Concurrently with Notice of Motion and Motion for Attorneys' Fees and [Proposed] Order]<br><br>Date:<br>Time:<br>Dept.:<br><br>**RESERVATION NO. _____** |
| AND RELATED CROSS-ACTION. | Action filed:  May 21, 2019 |

DECLARATION OF ERIC V. ROWEN IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

ACTIVE 51167828

## DECLARATION OF ERIC V. ROWEN

I, Eric V. Rowen, declare as follows:

1.      I am an attorney at law duly licensed to practice by the State of California and before this Court.  I am a shareholder at Greenberg Traurig, LLP, and am counsel responsible for the representation of Respondents and Cross-Petitioners The Enterprise, Gilad Lumer, Harry Lumer, Sr., Stuart Rubin, and David Wank ("Respondents").  As such, I have personal knowledge of the following facts, except as to those matters which are based on information and belief, as to which I believe them to be true, and I would competently testify thereto if necessary.

### The Enterprise Agreement and underlying arbitration

2.      Respondents and Petitioner Ann Simons ("Petitioner") entered into an Enterprise Agreement in 2001.  In 2008, the Enterprise Agreement was amended to provide for a reorganization and termination of Petitioner's position as Vice President.  Attached hereto as **Exhibit 1** is a copy of the Enterprise Agreement.

3.      In 2008, Petitioner filed the underlying arbitration, seeking to unwind the amendment to the Enterprise Agreement, and Justice John Zebrowski (Ret.) was appointed as the arbitrator in early 2009.  The parties agreed to proceed with the arbitration in phases, with issues relating to governance and the validity of the Amendment to be resolved first in Phase 1.  On March 3, 2010, Justice Zebrowski issued a Partial Final Award for the first phase, which confirmed the validity of the amendment to the Enterprise Agreement and new management structure.  Attached hereto as **Exhibit 2** is a copy of the March 3, 2010 Phase 1 Partial Final Award.

### This Court confirms Justice Zebrowski's Phase I Partial Final Arbitration Award.

4.      In June 2010, Respondents filed a petition to confirm the Phase 1 Partial Final Award, a copy of which is attached hereto as **Exhibit 3**.  After Petitioner filed a peremptory challenge and asserted that the initial judge, the Honorable Ronald M. Sohigian, was prejudiced, the action was reassigned to the Honorable Gregory W. Alarcon, who, on October 7, 2010, entered an Order in favor of Respondents and against Petitioner.  Attached hereto as **Exhibit 4** is a copy of Petitioner's Affidavit of Prejudice Peremptory Challenge to Judicial Officer.  Attached hereto as **Exhibit 5** is a copy of this Court's (Hon. Judge Alarcon) Order confirming the Phase I Partial Final Award.

2
DECLARATION OF ERIC V. ROWEN IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

**Petitioner tries and fails to replace Justice Zebrowski in the arbitration.**

5.    After a multi-year respite to explore settlement negotiations failed, the arbitration proceedings resumed in 2014.  Unhappy with the prior outcome from Phase I, Petitioner sent a letter requesting disqualification of Justice Zebrowski in 2014, a copy of which is attached hereto as **Exhibit 6.**  Petitioner also initially refused to pay the deposit for her share of the fees, in an apparent attempt to get Justice Zebrowski to resign.  Both efforts were unsuccessful.

**Justice Zebrowski orders a further phasing of the arbitration.**

6.    In 2015, after Petitioner's improper attempts to replace the arbitrator failed, Justice Zebrowski asked the parties to provide updated statements identifying the issues to be tried in Phase II.  On May 15, 2015, both sides updated their arbitration claims.  Attached hereto as **Exhibit 7** is copy of Petitioner's updated claims.  Attached hereto as **Exhibit 8** is a copy of Respondents' updated counterclaims.  On August 5, 2015, Petitioner updated her claims again, filing an Updated Summary of Claims/Issues to be Pursued in Phase II, a copy of which is attached hereto as **Exhibit 9.**

7.    After briefing and argument, and in order to expedite the separation of the two side's respective business interests, Justice Zebrowski ordered further phasing and determined that the separation issues would be adjudicated before any claims for monetary relief.  A copy of Justice Zebrowski's Order explaining that is attached hereto as **Exhibit 10.**

**Phase II concludes with Justice Zebrowski issuing the Phase II Partial Final Arbitration Award.**

8.    Phase II evidentiary hearings were held in December 2015, as well as an additional 18 days spanning August 2017 to August 2018.  After closing briefing and argument, and after receiving and considering comments from both sides about a tentative ruling, Justice Zebrowski issued his Phase II Partial Final Arbitration Award, a copy of which is attached hereto as **Exhibit 11.**

**Petitioner unsuccessfully seeks to vacate the Phase II Partial Final Arbitration Award.**

9.    On May 21, 2019, Petitioner filed a 480-page petition to vacate the Phase II Partial Final Award attaching exhibits A through double-C.  Rather than file her petition in the action in which Judge Alarcon previously confirmed the Phase I Partial Final Award, as required, Petitioner instead sought a new judge by filing her petition as a new action.  Accordingly, Respondents filed a Notice of Related Cases, a copy of which is attached hereto as **Exhibit 12.**  Petitioner responded with a 104-page

3

DECLARATION OF ERIC V. ROWEN IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

ACTIVE 51167828

opposition with exhibits to the related case notice. Attached hereto as **Exhibits 13 and 14** are copies of Petitioner's Opposition and Respondents' Reply, respectively, regarding the Notice of Related Cases. Ultimately, the Court ordered the cases related and ordered this action reassigned to Judge Alarcon. Attached hereto as **Exhibit 15** is a copy of the Court's July 12, 2019, Order relating the two cases. Attached hereto as **Exhibit 16** is copy of the Court's July 12, 2019, Order reassigning this case to Judge Alarcon.

10. Meanwhile, Respondents had to respond to the petition to vacate and did so by cross-petitioning for confirmation of the Phase II Partial Final Arbitration Award. Though Petitioner already had filed a lengthy petition to vacate at the outset of this action, Petitioner filed an additional motion to vacate and supporting declaration that now ballooned to 552 pages with Exhibits A through double-G.

11. On July 29, 2019, Petitioner sought to challenge the related-case and judicial reassignment orders, filing a writ petition with the Court of Appeal (Case No. B299523) (the "Writ Petition'). My firm, on behalf of Respondents, filed a preliminary opposition with the Court of Appeal, a copy of which preliminary opposition is attached hereto as **Exhibit 17.** On August 15, 2019, the Court of Appeal issued a two-sentence Order denying that Writ Petition. A copy of that Order is attached hereto as **Exhibit 18.**

12. After reassignment of this case to Judge Alarcon, and at the same time she filed her Writ Petition, Petitioner also filed a C.C.P. § 170.6 challenge against him, which triggered further rounds of briefing because the challenge was untimely. A copy of Petitioner's challenge is attached hereto as **Exhibit 19**. A copy of Judge Alarcon's subsequent acceptance of the challenge and order to transfer the case to Department 1 is attached hereto as **Exhibit 20**. On August 12, 2019, Department 1 reassigned this case (and the related confirmation action) to Department 96. A copy of that order is attached hereto as **Exhibit 21**.

13. The parties then filed their respective opposition papers to the cross-petitions. To refute Petitioner's motion to vacate and correct the record, Respondents had to present a full picture going back to the beginning of the arbitration that began over a decade before, assembling 48 exhibits in the process. Petitioner filed an opposition and supporting declaration over 690 pages long with exhibits A

4

DECLARATION OF ERIC V. ROWEN IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

*ACTIVE 51167828*

through double-H.  In addition to their respective reply papers, the briefing also included rounds of filings triggered by Petitioner's serial evidentiary objections.

14.    On December 2, 2019, Judge Mohr recused himself, and this matter was reassigned—again—this time to this Department.  A copy of that order is attached hereto as **Exhibit 22.**  On February 27, 2020, this Department heard the matter and—based on Petitioner's false assertions at the hearing—ordered supplemental briefing.  A copy of that order is attached hereto as **Exhibit 23.**  The parties then filed their respective supplemental briefs, along with ancillary briefing regarding Petitioner's objections to Respondent's brief.

15.    On April 7, 2020, this Court issued its ruling, denying Petitioner's petition and motion to vacate, and granting Respondents' cross-petition to confirm the Phase II Partial Final Arbitration Award.  Attached hereto as **Exhibit 24** is a copy of the Court's April 7, 2020 Minute Order.  Respondents submitted a proposed form of judgment, to which Petitioner did not object, and, on May 12, 2020, almost a full year after this action began, this Court entered Judgment in Respondents' favor, providing that "Respondents are the prevailing parties" and "may seek their attorneys' fees for this action by motion."  Attached hereto as **Exhibit 25** is a copy of the Notice of Entry of Judgment.

### **Respondents' Requested Attorneys' Fees Are Reasonable.**

16.    Respondents had a core team of attorneys during this action.  The team for the trial court action consisted of myself, shareholder Matthew R. Gershman, and associates Christopher Ramos, Jamie Vogel, and Kelsey Sherman.  The team for dealing with Petitioner's related failed Writ Petition in the Court of Appeal consisted of myself, shareholders Matthew R. Gershman and Karin Bohmholdt, and associate Kelsey Sherman.

17.    I am a commercial civil litigation shareholder at Greenberg Traurig, LLP, and the Co-Chair of the Real Estate Litigation Practice and Chair of the Western Region Real Estate Litigation Group.  I have particular experience in litigation involving real estate, real estate financing, commercial real estate leasing, real estate related bankruptcies, and trusts holding vast real estate assets, as well as experience in litigation and pre-litigation counseling involving securitized loan portfolios, bond financings, loan and loan portfolio workouts and restructurings, construction financing, partnership and joint venture disputes, complex eminent domain, lease disputes, entitlements, title issues, title insurance,

DECLARATION OF ERIC V. ROWEN IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

*ACTIVE 51167828*

and real property related environmental matters. Attached hereto as **Exhibit 26** is a copy of my biography pulled from the firm's website. I have been lead counsel in the underlying arbitration and related court proceedings since inception in 2008 and have headed up the litigation team in this action, setting overall strategy, developing the facts and arguments, supervising drafting of briefing, handling court appearances, and otherwise directing the litigation.

18. Matthew R. Gershman is a shareholder in Greenberg Traurig, LLP's litigation and appellate groups, with particular experience in disputes involving real estate, family trust management, copyright and trademark claims, and class actions. Attached hereto as **Exhibit 27** is a copy of Mr. Gershman's biography pulled from the firm's website. Mr. Gershman had primary responsibility in this action for drafting the briefing and attending all court appearances, developing case strategy, and for managing the case on a day-to-day basis. For the majority of this action, Mr. Gershman and I were the two attorneys handling the case, with additional assistance of other attorneys as appropriate and as discussed below.

19. Karin Bohmholdt is a shareholder in Greenberg Traurig and the Co-Chair of Greenberg Traurig's Los Angeles Litigation Practice. She has particular experience in appellate work in both state and federal courts, including writs and permissive appeals. Ms. Bohmholdt graduated *magna cum laude* from Loyola Law School in Los Angeles in 2004, and she clerked for the Hon. Stephen S. Trott on the U.S. Court of Appeals for the Ninth Circuit. Attached hereto as **Exhibit 28** is a copy of Ms. Bohmholdt's biography pulled from the firm's website. Ms. Bohmholdt aided with respect to analyzing Petitioner's Writ Petition filed with the Court of Appeal, and with revising Respondents' preliminary opposition thereto.

20. Three litigation associates provided additional assistance. Christopher Ramos and Kelsey Sherman assisted in this action while associate Jamie Vogel was on a leave of absence in 2019. Mr. Ramos was responsible for research and analysis in support of briefing in this action, as well as preliminary drafting of the reply in support of Respondents' Cross-Petition to Confirm the Arbitration Award. Ms. Sherman also assisted with research and analysis in support of briefing in this action, as well as preliminary drafts of Respondents' opposition to Petitioner's peremptory challenge and response to Petitioner's objections to the declaration filed in support of Respondents' opposition to the motion to

6

DECLARATION OF ERIC V. ROWEN IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

*ACTIVE 51167828*

vacate.  Jamie Vogel provided research and analysis in support of late-stage briefing in this action and was assisted with preparation for the hearing on the Petition to Vacate and Respondents' Cross-Petition to Confirm the Arbitration Award.  Mr. Ramos is no longer with the firm and attached hereto as **Exhibit 29** is an archived copy of Mr. Ramos's biography from the firm's website.  Attached hereto as **Exhibit 30** is a copy of Ms. Vogel's biography from the firm's website.  Attached hereto as **Exhibit 31** is a copy of Ms. Sherman's biography from the firm's website.

21.    To be clear, care was taken in the staffing and delegation of responsibility to avoid overlap and duplication. Thus, Mr. Gershman ran point on the briefs and was the lead drafter on the team, while I supervised overall strategy, attended hearings, and had final review on briefs and other drafted documents.  Ms. Bohmholdt aided in dealing with the Writ Petition in the Court of Appeal, and the other junior attorneys contributed primarily in support and research roles, and occasionally with preliminary drafting, as detailed above.  Other billing timekeepers—such as paralegal support—have not been included here in this fee request.

22.    I have reviewed the time entries for this matter to determine how much time was billed by each attorney timekeeper in the core team (and the year in which that time was billed).  The total hours incurred by each such attorney—**with respect to this action in the trial court**—are as set forth in the chart below:

| Attorney Timekeeper | Title | Law School graduation year | Hours (and year in which hours worked) |
|---|---|---|---|
| Eric Rowen | Shareholder | 1982 | 37.5 (2019) |
| | | | 8.0 (2020) |
| Matthew Gershman | Shareholder | 2007 | 90.7 (2019) |
| | | | 16.4 (2020) |
| Christopher Ramos | Associate | 2014 | 63.6 (2019) |
| Jamie Vogel | Associate | 2015 | 11.7 (2019) |
| Kelsey Sherman | Associate | 2018 | 59.8 (2019) |

The total hours incurred by each such attorney—**with respect to dealing with Petitioner's failed Writ Petition in the Court of Appeal**—are as set forth in the chart below:

7

DECLARATION OF ERIC V. ROWEN IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

*ACTIVE 51167828*

| Attorney Timekeeper | Title | Law School graduation year | Hours (and year in which hours worked) |
|---|---|---|---|
| Eric Rowen | Shareholder | 1982 | 4.1 (2019) |
| Karin Bohmholdt | Shareholder | 2004 | 1.9 (2019) |
| Matthew Gershman | Shareholder | 2007 | 5.0 (2019) |
| Kelsey Sherman | Associate | 2018 | 0.7 (2019) |

23.    Respondents' core team of professionals each charged the following hourly rates comparable to the prevailing rates of attorneys of similar skill and experience:

| Attorney Timekeeper | Title | Law School graduation year | Hourly Rate(s) (and year in which hourly rate applied) |
|---|---|---|---|
| Eric Rowen | Shareholder | 1982 | $1,250 (2019) |
| | | | $1,315 (2020) |
| Karin Bohmholdt | Shareholder | 2004 | $880 (2019) |
| Matthew Gershman | Shareholder | 2007 | $830 (2019) |
| | | | $890 (2020) |
| Christopher Ramos | Associate | 2014 | $695 |
| Jamie Vogel | Associate | 2015 | $580 |
| Kelsey Sherman | Associate | 2018 | $445 |

24.    Thus, the total amount of fees incurred for these services—**with respect to this action in the trial court**—based on the hours and rates identified above, are as set forth in the chart below:

| Attorney Timekeeper | Hours (and year in which hours worked) | Hourly Rate(s) (and year in which hourly rate applied) | Fees |
|---|---|---|---|
| Eric Rowen | 37.5 (2019) | $1,250 (2019) | $46,875.00 |
| | 8.0 (2020) | $1,315 (2020) | $10,520.00 |
| Matthew Gershman | 90.7 (2019) | $830 (2019) | $75,281.00 |
| | 16.4 (2020) | $890 (2020) | $14,596.00 |

8

DECLARATION OF ERIC V. ROWEN IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

*ACTIVE 51167828*

| Christopher Ramos | 63.6 (2019) | $695 (2019) | $42,202.00 |
| Jamie Vogel | 11.7 (2019) | $580 (2019) | $6,786.00 |
| Kelsey Sherman | 59.8 (2019) | $445 (2019) | $26,611.00 |
| **TOTAL** | **287.7** | | **$222,871.00** |

The total amount of fees incurred for these services—**with respect to dealing with Petitioner's failed Writ Petition in the Court of Appeal**—based on the hours and rates identified above, are as set forth in the chart below:

| Attorney Timekeeper | Hours (and year in which hours worked) | Hourly Rate(s) (and year in which hourly rate applied) | Fees |
| --- | --- | --- | --- |
| Eric Rowen | 4.1 (2019) | $1,250 (2019) | $5,125.00 |
| Karin Bohmholdt | 1.9 (2019) | $880 (2019) | $1,672.00 |
| Matthew Gershman | 5.0 (2019) | $830 (2019) | $4,150.00 |
| Kelsey Sherman | 0.7 (2019) | $445 (2019) | $311.50 |
| **TOTAL** | **11.7** | | **$11,258.50** |

Thus, the total amount of fees incurred for both the trial court litigation and with respect to dealing with Petitioner's failed Writ Petition in the Court of Appeal is **$234,129.50** ($222,871 + $11,258.50).

25.     Where individual time entries included time incurred for both this proceeding as well as other tasks, such as work related to the arbitration, I conservatively trimmed the time entry to my best reasonable estimate of time incurred solely with respect to the work performed for this proceeding. Thus, the amount requested here represents my best calculation of the reasonable fees incurred as to this action, erring on the side of caution so as not to include any other time.

26.     I personally reviewed the billings on which the summaries above are based, and I supervised the preparation of these summaries based on review of contemporaneous firm records reflecting total billings, and time records reflecting the work performed by our team on a month-by-month basis. I personally am familiar with the way in which such records are kept and can attest that our time records are inputted at or near the time of the events reflected therein and are kept and maintained electronically in the ordinary course of our firm's business.

9

DECLARATION OF ERIC V. ROWEN IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

ACTIVE 51167828

27.     The work involved in this action was substantial and has spanned over one year, causing Respondents to incur the fees requested due, in part, to Petitioner having filed (i) a 480-page petition to vacate with exhibits A through double-C, (ii) a 552-page motion to vacate and supporting declaration with exhibits A through double-G, (iii) a 690-page opposition to Respondents' cross-petition with exhibits A through double-H, (iv) a 104-page opposition to a Notice of Related Cases, (v) serial evidentiary objections throughout this litigation, (vi) an untimely C.C.P. § 170.6 challenge that necessitated further rounds of briefing, and (v) a failed Writ Petition with the Court of Appeal to challenge a related case ruling, which petition necessitated a preliminary opposition.  Additionally, due to several judge reassignments, the hearings on Petitioner's Petition to Vacate and Respondents' Cross-Petition to Confirm were continued several times.  That led to additional time and costs for preparing for oral argument, only for the hearing to be continued again and again.

28.     All things considered, and as detailed herein and in the Motion, these fees were necessarily and reasonably incurred, especially considering the work involved, the experience and skill of the attorneys involved, and the prevailing rates at other comparable law firms in Los Angeles.

29.     For context, Greenberg Traurig, LLP, was ranked in May 2017 as the largest U.S. law firm, with more than 35 locations at that time throughout the United States and abroad and more than 1,700 attorneys in the United States.  Attached hereto as **Exhibit 32** is a copy of an article titled "Turning 50, Greenberg Traurig Tops the Law360 400," <www.law360.com/articles/929048>.  The firm has grown now to have 41 offices worldwide.  The Real Estate Litigation Practice Group that I chair was awarded 2017 "Law Firm of The Year – Real Estate Litigation," U.S. News—Best Lawyers.

30.     With that context in mind, attached hereto as **Exhibit 33** is a copy of The National Law Journal's 2015 survey of hourly billing rates.  According to the 2015 Survey, four years before this case was even filed, when rates were generally lower than those charged in 2019 and 2020, the average partner hourly rates at 49 other comparable firms ranged from $715 to $1,055, and the average associate hourly rates at those same firms ranged from $290 to $678.

31.     By way of further example, in 2018 to support her own fee application in prior litigation between these same parties as evidence of reasonable hourly rates, Petitioner submitted a Thomson Reuters California Region survey from December 2016—which shows that three years before this case

---

10

DECLARATION OF ERIC V. ROWEN IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

*ACTIVE 51167828*

was filed, when rates were generally lower than those charged in 2019 and 2020, partner hourly billing rates ranged from $675 (for a 6th-year partner) to $1,350 (for a 32-year partner), while associate hourly billing rates ranged from $675 to $995 (excluding one outlier 16-year associate's billing rate).  While Petitioners' entire fee application from that prior action are in the Court's records, the filing exceeds 500 pages; accordingly, for the Court's convenience, attached hereto as **Exhibit 34** is a copy of the relevant portions of Petitioners' fee application from that prior action (Case No. BC667970), as well the Thomson Reuters California Region surveys on which Petitioner relied and that she submitted to the Court.  Though the Court denied Petitioner's fee application in that prior litigation, it was because Petitioner was not a prevailing party in that matter either.  Attached hereto as **Exhibit 35** is a copy of the Court's April 18, 2018 Minute Order denying Petitioner's fee application in that case on that ground.

32.    Additionally, a June 2018 Report by PricewaterhouseCoopers LLP ("PWC Survey") further supports the conclusion that the above-referenced hourly rates are consistent with, or less than, the prevailing rates for attorneys with experience at other law firms of similar size and pedigree that operate offices in Los Angeles.  I understand that Greenberg Traurig, LLP's subscription agreement with PricewaterhouseCoopers LLP does not permit me to include the PWC Survey as an exhibit to this declaration.  However, according to the PWC Survey, at other firms of similar size and pedigree that operate offices in Los Angeles, (i) the 1st Quartile for the hourly rate of equity partners with 36-40 years' experience was $1,183, as compared to Mr. Rowen's hourly rates in 2019 and 2020 of $1,250 and $1,315, respectively, (ii) the 1st Quartile for the hourly rate of equity partners with 11-15 years' experience was $988, as compared to Mr. Gershman's hourly rates in 2019 and 2020 of $830 and $890, respectively, and to Ms. Bohmholdt's hourly rate in 2019 of $880, (iii) the 1st Quartile for the hourly rate of associates graduating law school in 2014 was $695, the same as Mr. Ramos's hourly rate in 2019, (iv) the 1st Quartile for the hourly rate of associates graduating law school in 2015 was $640, as compared for Ms. Vogel's hourly rate in 2019 of $580, and (v) the 1st Quartile for the hourly rate of 1st-year associates was $491, as compared to Ms. Sherman's hourly rate as a 1st-year associate of $445.

33.    In sum, based on the PWC Survey, and consistent with his extensive experience and successful track record, Mr. Rowen's rates in 2019 and 2020 would rank in the top 25% of 2018 rates charged at comparable firms, though it still would be less than rates charged in 2016 by a partner with

11

DECLARATION OF ERIC V. ROWEN IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

lesser experience according to Petitioner's Thomson Reuters California Region Survey.  Moreover, when comparing 2018 rates from comparable firms to Mr. Rowen's rates in 2019 or 2020, one must keep in mind that 2018 rates were generally lower than those charged in 2019 and 2020.  As for the rest of the core team of professionals, based on the PWC Survey, all their rates during 2019 or 2020 would rank either exactly at or below the top 25% of 2018 rates charged at comparable firms—again, even though rates in 2018 were lower than rates in 2019 and 2020.  The rates for Messrs. Gershman and Ramos, as well as Ms. Bohmholdt, Ms. Vogel, and Ms. Sherman also compare similarly to the rates noted in the surveys from several years prior in 2015 (by the National Law Journal) and 2016 (by Thomas Reuters).

34.     Moreover, the fees requested here also are reasonable when considering the stakes.  Namely, the arbitration award at issue concerned the in-kind allocation of assets based on relative equity values, where the Petitioner's expert in the arbitration opined the assets had a total equity value of $401,600,000, which opinion he revised later to $399,900,000.  **Exhibit 36** is the relevant excerpt from Petitioner's expert's exhibit in the underlying arbitration, showing his original and revised opinions of total equity value.  Respondents' expert in the arbitration opined the assets had a total equity value of $127,617,000, and a copy of the relevant excerpt from that report is attached as **Exhibit 37**.  Either way, as shown in **Exhibit 11** (at pp. 9-11), Justice Zebrowski's Phase II Partial Final Arbitration Award awarded assets equal to 78% of the total equity value to Respondents, and assets equal to 22% of the total equity value to Petitioner.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 1st day of July 2020 at Malibu, California.

_____/s/ Eric V. Rowen_____

---

12

DECLARATION OF ERIC V. ROWEN IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

*ACTIVE 51167828*

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the aforesaid county, State of California; I am over the age of 18 years and not a party to the within action; my business address is **1840 Century Park East, Suite 1900, Los Angeles, California 90067**

On July 1, 2020, I served the **DECLARATION OF ERIC V. ROWEN IN SUPPORT OF RESPONDENTS/CROSS-PETITIONERS' MOTION FOR ATTORNEYS' FEES** on the interested parties in this action by placing the true copy thereof, enclosed in a sealed envelope, postage prepaid, addressed as follows:

| | |
|---|---|
| Gerald Sauer<br>Gregory Barchie<br>Sauer & Wagner LLP<br>1801 Century Park East, Suite 1150<br>Los Angeles, CA 90067<br>Telephone: (310) 712-8100<br>Facsimile:  (310) 712-8108<br>E-mail: gsauer@swattys.com<br>         gbarchie@swattys.com<br>         cyang@swattys.com | *Attorney for Ann Simons, individually and as Designated Registered Agent for Family 3* |

☒    **(BY ELECTRONIC MAIL)**

I served the above-mentioned document electronically on the parties listed at the email addresses above and, to the best of my knowledge, the transmission was complete and without error in that I did not receive an electronic notification to the contrary.

☒    **(STATE)**          I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on July 1, 2020, at Los Angeles, California.

_____
**CHRISTINE C. CRONKRITE**

PROOF OF SERVICE

*ACTIVE 20277252v1*

Case 3:19-cv-01512-DOC-DFM    Document 387-3    Filed 02/06/25    Page 446 of 484
                                    Page ID #:33769
Case 3:19-cv-01713-BAS-AHG    Document 55-2    Filed 06/05/20    PageID.326    Page 1 of 27

THEODORE J. BOUTROUS JR., SBN 132099
  tboutrous@gibsondunn.com
THEANE EVANGELIS, SBN 243570
  tevangelis@gibsondunn.com
NATHANIEL L. BACH, SBN 246518
  nbach@gibsondunn.com
MARISSA B. MOSHELL, SBN 319734
  mmoshell@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:  213.229.7000
Facsimile:  213.229.7520

SCOTT A. EDELMAN, SBN 116927
  sedelman@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2029 Century Park East, Suite 4000
Los Angeles, CA 90067-3026
Telephone:  310.552.8500
Facsimile:  310.551.8741

Attorneys for Defendants Rachel Maddow,
MSNBC Cable L.L.C., NBCUniversal Media,
LLC, and Comcast Corporation

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HERRING NETWORKS, INC., | CASE NO. 19-cv-1713-BAS-AHG |
| Plaintiff, | **DECLARATION OF SCOTT A. EDELMAN IN SUPPORT OF DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS (Cal. Civ. Proc. Code § 425.16(c)(1))** |
| v. | |
| RACHEL MADDOW; COMCAST CORPORATION; NBCUNIVERSAL MEDIA, LLC; and MSNBC CABLE L.L.C., | **COURT TO ISSUE BRIEFING SCHEDULE AND HEARING DATE** |
| Defendants. | Action Filed:  September 9, 2019 |
| | Judge:  Hon. Cynthia Bashant |
| | Magistrate Judge: Hon. Allison Goddard |
| | Courtroom 3B |

EDELMAN DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR
ATTORNEYS' FEES AND COSTS

Case 8:19-cv-01531-DOC-DFM   Document 387-6   Filed 09/05/25   Page 447 of 484
Page ID #:33720
Case 3:19-cv-01713-BAS-AHG   Document 55-2   Filed 06/05/20   PageID.327   Page 2 of 27

I, Scott A. Edelman, declare as follows:

1.     I am an attorney at law licensed to practice in the State of California.  I am a partner at Gibson, Dunn & Crutcher LLP ("Gibson Dunn") and counsel of record for Defendants Rachel Maddow, Comcast Corporation, NBCUniversal Media, LLC, and MSNBC Cable L.L.C. ("Defendants").  I am one of the supervising partners in charge of the work performed on this case by the attorneys and other professionals at Gibson Dunn.

2.     I submit this declaration in support of Defendants' Motion for Attorneys' Fees and Costs pursuant to California Code of Civil Procedure section 425.16(c)(1).  All statements in this declaration are based upon my personal knowledge and, if called upon to testify, I could and would testify to the facts set forth herein.

### Gibson Dunn's Retention and Efforts Defending This Case

3.     On September 9, 2019, Plaintiff Herring Networks, Inc. filed a Complaint for defamation in the United States District Court for the Southern District of California.

4.     Gibson Dunn was retained soon thereafter, and we assembled a team of attorneys experienced in First Amendment jurisprudence, defamation actions, and anti-SLAPP practice.  This team included the following individuals:

- Theodore J. Boutrous, Jr., a partner at Gibson Dunn (a true and correct copy of Mr. Boutrous' biography, showing his credentials and experience, is attached hereto as **Exhibit A**);

- Myself, Scott A. Edelman, a partner at Gibson Dunn (a true and correct copy of my biography, showing my credentials and experience, is attached hereto as **Exhibit B**);

- Nathaniel L. Bach, a senior associate at Gibson Dunn (a true and correct copy of Mr. Bach's biography, showing his credentials and experience, is attached hereto as **Exhibit C**);

Gibson, Dunn &
Crutcher LLP

1

EDELMAN DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR
ATTORNEYS' FEES AND COSTS

Case 8:19-cv-01531-DOC-DFM   Document 387-6   Filed 09/05/25   Page 448 of 484
Page ID #:33783
Case 3:19-cv-01713-BAS-AHG   Document 55-2   Filed 06/05/20   PageID.328   Page 3 of 27

- Marissa B. Moshell, a mid-level associate at Gibson Dunn (a true and correct copy of Ms. Moshell's biography, showing her credentials and experience, is attached hereto as **Exhibit D**); and

- Daniel M. Rubin, a mid-level associate at Gibson Dunn (a true and correct copy of Mr. Rubin's biography, showing his credentials and experience, is attached hereto as **Exhibit E**).

5. I believe all of the aforementioned attorneys were both necessary and reasonable for the litigation of Defendants' successful Motion to Strike and, based on my experience, I believe that Gibson Dunn staffed and litigated this case in a reasonable, efficient, and appropriate manner.

6. Once our team was assembled, Defendants' counsel determined the best method for defeating Plaintiff's Complaint was to file a Special Motion to Strike under California Code of Civil Procedure section 425.16.

7. I communicated our intention of filing an anti-SLAPP motion to Amnon Z. Siegel of Miller Barondess LLP, counsel for Plaintiff, on September 25, 2019. Mr. Siegel would not agree to dismiss the Complaint. Mr. Siegel informed me that he still wanted to move forward with discovery, which he felt was permissible at that phase of the proceedings. As such, I had my team research the permissibility of discovery when defendants file a motion to strike based solely on the complaint and judicially noticeable materials (akin to a Rule 12(b)(6) motion to dismiss), as opposed to factual grounds. The parties met and conferred on this issue, but did not reach agreement on the permissibility of discovery. At no point during the meet and confer process, or anytime thereafter, did Plaintiff offer to dismiss its claim.

8. Substantial efforts went into the preparation of this dispositive motion. Gibson Dunn attorneys researched the legal doctrine of protected opinion, which requires a totality of the circumstances test in which numerous factors may be considered, requiring significant research. Defendants' counsel also researched the case law surrounding substantially true speech. Further, given that Plaintiff brought its

Gibson, Dunn &
Crutcher LLP

2

EDELMAN DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR
ATTORNEYS' FEES AND COSTS

Complaint in federal district court, Gibson Dunn attorneys needed to research the interplay between California's state anti-SLAPP statute and federal procedural law. Gibson Dunn attorneys also spent time analyzing the segment of *The Rachel Maddow Show* that was at the center of Plaintiff's lawsuit.

9.    Defendants filed their Special Motion to Strike on October 21, 2019.

10.    Defendants received Plaintiff's Opposition to their Motion to Strike on December 2, 2019.  The Opposition included three declarations, one of which was from an alleged linguistics expert, Professor Stefan Th. Gries.  Professor Gries submitted a report with 17 single-spaced pages of analysis concerning Rachel Maddow's statement.

11.    Gibson Dunn did not hire an expert to rebut Professor Gries' expert report.  Defendants' counsel understood that evidentiary submissions of this sort were improper at this stage of the proceedings, and chose not to waste time and resources retaining an expert to work on a report that should not be considered.  Plaintiff's improper submission did, however, compel Defendants to research the impropriety of evidentiary submissions in the context of a special motion to strike submitted on a legal basis only.  Defendants' counsel also conducted further research to respond to Plaintiff's other arguments.

12.    Defendants filed their reply brief on December 9, 2019.

13.    The next day, Mr. Siegel contacted Defendants' counsel and informed Defendants of his plan to file an *Ex Parte* Application to Supplement the Record.  Mr. Siegel wanted to submit new *evidence* of a December 9, 2019 episode of *Hardball* with Chris Matthews.  Defendants' counsel again told Mr. Siegel that evidentiary submissions were improper at this stage, and that the video was irrelevant.  Plaintiff nonetheless filed its *Ex Parte* Application on December 11, 2019.

14.    As a result of Plaintiff's *Ex Parte* Application, Defendants' counsel was forced to undertake even further research and briefing to oppose the Application. Defendants filed their Opposition on December 13, 2019.

3

Case 2:19-cv-01532-DOC-DFM    Document 387-6    Filed 09/06/25    Page 450 of 484
Case 3:19-cv-01713-BAS-AHG   Document 55-2   Filed 06/05/20   PageID.330   Page 5 of 27
Page ID #:33785

15.    The Court scheduled an oral argument on Defendants' Motion to Strike and Plaintiff's *Ex Parte* Application to Supplement the Record.  Defendants' counsel spent significant time preparing for the hearing, re-reading nearly thirty cases cited across the briefing, and drafting case summaries and oral argument outlines. Defendants' counsel also reviewed *The Rachel Maddow Show* segment and *The Daily Beast* article on which it was based.  This effort was undoubtedly made more time intensive due to Plaintiff's *Ex Parte* Application to Supplement the Record.

16.    The Court heard telephonic oral argument on May 19, 2020, and issued an Order granting Defendants' Special Motion to Strike on May 22, 2020.  A true and correct copy of the transcript of the hearing on Defendants' Special Motion to Strike is attached hereto as **Exhibit F**.

### Gibson Dunn's Fees

17.    Gibson Dunn was retained on a modified contingency fee basis—NBCU agreed to pay Defendants' counsel a rate of $100,000 for the filing and argument on the Anti-SLAPP Motion.  NBCU further agreed that, if they were successful on the Anti-SLAPP Motion and recovered from Plaintiff, they would pay Gibson Dunn any difference between the $100,00 and the fees actually incurred by counsel.

18.    At the time Gibson Dunn was retained in 2019, our standard hourly rates were as follows:

| Timekeeper | Standard 2019 Rate/Hour |
|---|---|
| Theodore J. Boutrous, Jr. (Partner) | $1,450 |
| Scott A. Edelman (Partner) | $1,335 |
| Nathaniel L. Bach (Senior Associate) | $915 |
| Marissa B. Moshell (Mid-Level Associate) | $625 |
| Daniel M. Rubin (Mid-Level Associate) | $625 |
| Lolita C. Gadberry | $460 |

Gibson, Dunn & Crutcher LLP

EDELMAN DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS

Case 8:19-cv-01531-DOC-DFM   Document 387-3   Filed 09/05/25   Page 451 of 484
Page ID #:33786
Case 3:19-cv-01713-BAS-AHG   Document 55-2   Filed 06/05/20   PageID.331   Page 6 of 27

(Paralegal) | 
Erin E. Kurinsky (Researcher) | $270
Carla H. Jones (Researcher) | $270

19.     Starting in January 2020, our standard hourly rates were as follows:

| Timekeeper | Standard 2020 Rate/Hour |
| --- | --- |
| Theodore J. Boutrous, Jr. (Partner) | $1,525 |
| Scott A. Edelman (Partner) | $1,395 |
| Nathaniel L. Bach (Senior Associate) | $960 |
| Marissa B. Moshell (Mid-Level Associate) | $740 |
| Lolita C. Gadberry (Paralegal) | $480 |
| Duke K. Amponsah (Paralegal) | $480 |

20.     Based on my reading of the relevant case law, fee applications submitted in other district courts in California, and my overall familiarity with rates charged by my firm's competitors, it is my understanding that these rates are comparable to the rates charged by peer firms and attorneys with similar skill and experience.

- Attached hereto as **Exhibit G** is a true and correct copy of an April 2020 fee application submitted in bankruptcy court in the northern district of California, which reflects hourly billing rates for litigation partners and associates from Weil, Gotshal & Manges LLP charged in 2019 and 2020. This fee application shows that Weil charged rates up to $1,325 per hour for litigation partners, and between $595 and $1,050 for litigation associates. Ex. G at 7-9.

Gibson, Dunn &
Crutcher LLP

5

EDELMAN DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR
ATTORNEYS' FEES AND COSTS

- Attached hereto as **Exhibit H** is a true and correct copy of an excerpt from the Public Rates Report issued by Thomson Reuters on January 14, 2020. The Thomson Reuters report shows the rates charged by attorneys for matters in various jurisdictions, including the northern and central districts of California. Exhibit H excerpts those entries pertaining to any district of California entries on the report. The report shows that, in 2019, senior attorneys were charging up to $1,145 per hour for work performed in the northern district of California. Ex. H at 2.

- Attached hereto as **Exhibit I** is a true and correct copy of an excerpt from the Public Rates Report issued by Thomson Reuters in September 2018. The Thomson Reuters report shows the rates charged by attorneys for matters in various jurisdictions, including California districts, from 2006 to 2015. Exhibit I excerpts those entries pertaining to any district of California entries on the report. The report shows that as early as 2012, eight years ago, senior attorneys were charging upwards of $800 per hour in the southern district of California. Ex. I at 257. As early as 2013, seven years ago, certain senior attorneys were already charging over $1,000 per hour in the central district of California. *Id.* at 139.

21.   Gibson Dunn's hourly rates are also appropriate in light of the high degree of sophistication, experience, and excellence that Gibson Dunn attorneys bring to bear on their work (as demonstrated by the success in the present litigation).

22.   I have reviewed Gibson Dunn's timekeeping records for this case, and the time referenced in these records reflects the time actually worked in connection with this matter. I have become very familiar with such records and the processes by which the firm creates and maintains them. In the regular course of business, Gibson Dunn maintains records of time spent by individual attorneys and other professionals with respect to each client matter. In recording their timekeeping entries, attorneys at

Gibson, Dunn &
Crutcher LLP

6

EDELMAN DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR
ATTORNEYS' FEES AND COSTS

Gibson Dunn are required to specify the client and matter, the nature of the work performed, and the amount of time that they expend on a designated task(s).

23. The work performed on this matter by the attorneys and other professionals at Gibson Dunn can be categorized as follows:

- (1) reviewing and analyzing Plaintiff's Complaint and discussing initial strategy to defeat Plaintiff's defamation claim;
- (2) researching and drafting the Anti-SLAPP Motion and supporting documents;
- (3) reviewing and responding to Plaintiff's opposition brief, including Plaintiff's improper evidentiary submission;
- (4) reviewing and responding to Plaintiff's *Ex Parte* Application to Supplement the Record;
- (5) preparing for and attending the hearing on the Anti-SLAPP Motion and Plaintiff's *Ex Parte* Application to Supplement the Record; and
- (6) researching and drafting the Attorneys' Fees Motion and supporting documents.

Set forth below are the details of the work completed by the Gibson Dunn attorneys and other professionals, divided by category, through the filing of this Motion for Attorneys' Fees and Costs. This information is a true and accurate reflection of our timekeeping records of amounts incurred:

| Date | Time | Amount Incurred (Rate x Time) | Timekeeper | Task(s) |
|---|---|---|---|---|
| **Reviewing and analyzing Plaintiff's Complaint and discussing initial strategy to defeat Plaintiff's defamation claim** | | | | |
| 9/23/2019 | 0.2 | $183 | Bach, Nathaniel L. | Call with S. Edelman re seeking extension of time to respond. |
| 9/23/2019 | 0.3 | $400.50 | Edelman, Scott A. | Address service of process. |

7

EDELMAN DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS

Case 2:19-cv-01532-DOC-DFM    Document 387-3    Filed 09/05/25    Page 454 of 484
Page ID #:33789
Case 3:19-cv-01713-BAS-AHG    Document 53-2    Filed 06/05/20    PageID.334    Page 9 of 27

| 9/25/2019 | 1.4 | $875 | Moshell, Marissa B. | Call with S. Edelman re response to Plaintiffs' counsel (.2); research for T. Boutrous (.2); draft response to Plaintiffs' counsel (1.0). |
|---|---|---|---|---|
| 9/25/2019 | 0.5 | $457.50 | Bach, Nathaniel L. | Telephone conference with client, T. Boutrous, S. Edelman, T. Evangelis re initial strategy. |
| 9/25/2019 | 1.6 | $2,320 | Boutrous Jr., Theodore J. | Analyzing issues, strategy, participate in strategy call with clients. |
| 9/25/2019 | 0.3 | $400.50 | Edelman, Scott A. | Review complaint, background. |
| 9/25/2019 | 0.5 | $667.50 | Edelman, Scott A. | Research in preparation for call with client. |
| 9/25/2019 | 0.6 | $801 | Edelman, Scott A. | Review correspondence from plaintiffs regarding Rule 26 meeting (.2); correspond with team regarding same (.2); telephone conference with M. Moshell regarding same (.1); update clients (.1). |
| 9/25/2019 | 0.4 | $534 | Edelman, Scott A. | Telephone conference with M. Moshell regarding extension of time to respond. |
| 9/26/2019 | 0.6 | $162 | Kurinsky, Erin E. | Research for M. Moshell. |
| 9/26/2019 | 0.2 | $267 | Edelman, Scott A. | Correspond with client. |
| 9/26/2019 | 0.6 | $801 | Edelman, Scott A. | Address time to respond to complaint with substituted service and email A. Siegel regarding extension. |
| 9/27/2019 | 1.4 | $875 | Moshell, Marissa B. | Draft stipulation and proposed order for extension of time to respond to Plaintiff's Complaint. |

EDELMAN DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS

Gibson, Dunn & Crutcher LLP

Case 2:19-cv-01532-DOC-DFM    Document 387-3    Filed 09/06/25    Page 455 of 484
Page ID #:33728
Case 3:19-cv-01713-BAS-AHG    Document 35-2    Filed 06/05/20    PageID.335    Page 10 of 27

| 9/27/2019 | 0.6 | $801 | Edelman, Scott A. | Correspond with plaintiff's counsel regarding extension. |
|---|---|---|---|---|
| 9/30/2019 | 0.1 | $27 | Jones, Carla H. | Legal research for N. Bach. |
| 10/1/2019 | 0.8 | $500 | Moshell, Marissa B. | Draft corporate disclosure statement. |
| 10/1/2019 | 0.6 | $549 | Bach, Nathaniel L. | Emails with A. Jacobs re joint motion to extend time to respond to complaint (.4); email to M. Moshell re corporate disclosure statement (.2). |
| 10/2/2019 | 0.6 | $375 | Moshell, Marissa B. | Finalize stipulation and rule 7.1 statement for filing and file same. |
| 10/2/2019 | 0.7 | $640.50 | Bach, Nathaniel L. | Emails with client re joint stipulation to extend time to respond to complaint (.4); emails with A. Siegel re meet and confer (.3). |
| 10/07/2019 | 0.5 | $312.50 | Moshell, Marissa B. | Begin preparing notices of appearance. |
| 10/08/2019 | 0.5 | $312.50 | Moshell, Marissa B. | Prepare and file notices of appearance. |
| **Researching and drafting the Anti-SLAPP Motion and supporting documents** | | | | |
| 9/20/2019 | 0.4 | $366 | Bach, Nathaniel L. | Emails with T. Boutrous re anti-SLAPP timing. |
| 9/24/2019 | 1 | $1,450 | Boutrous Jr., Theodore J. | Emails, calls with clients, analyzing issues for anti-SLAPP motion. |
| 9/24/2019 | 0.4 | $366 | Bach, Nathaniel L. | Emails with T. Boutrous re anti-SLAPP motion preparation. |
| 9/25/2019 | 0.8 | $1,068 | Edelman, Scott A. | Prepare for and conference call with clients regarding anti-SLAPP strategy. |
| 9/26/2019 | 2.6 | $1,625 | Moshell, Marissa B. | Calls with N. Bach and T. Boutrous re anti-SLAPP motion (.2); research federal |

9

EDELMAN DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR
ATTORNEYS' FEES AND COSTS

Gibson, Dunn &
Crutcher LLP

| Date | Hours | Amount | Attorney | Description |
|---|---|---|---|---|
| | | | | court procedural question (1.0); research for anti-SLAPP motion (1.4). |
| 9/26/2019 | 2.6 | $2,379 | Bach, Nathaniel L. | Calls with T. Boutrous, S. Edelman, M. Moshell re anti-SLAPP brief (.2); research for and begin drafting anti-SLAPP motion to strike (2.4). |
| 9/27/2019 | 4.1 | $3,751.50 | Bach, Nathaniel L. | Research and draft outline for anti-SLAPP motion (3.6); review materials relevant to anti-SLAPP briefing (.4). |
| 9/28/2019 | 0.3 | $187.50 | Moshell, Marissa B. | Research for anti-SLAPP motion. |
| 9/29/2019 | 0.7 | $437.50 | Moshell, Marissa B. | Research for anti-SLAPP motion. |
| 10/1/2019 | 3 | $2,745 | Bach, Nathaniel L. | Research re anti-SLAPP motion to strike (2.2); prepare outline of same (.8). |
| 10/6/2019 | 2.4 | $2,196 | Bach, Nathaniel L. | Draft talking points for meet and confer call (1.2); review opinion standards re First Amendment (1.2). |
| 10/7/2019 | 4.3 | $2,687.50 | Moshell, Marissa B. | Research for anti-SLAPP motion (4.3). |
| 10/7/2019 | 2 | $1,830 | Bach, Nathaniel L. | Prepare for meet and confer with Plaintiff's counsel (.3); meet and confer call with A. Siegel re Anti-SLAPP motion (.4); emails with M. Moshell re research for anti-SLAPP motion (.5); review case law re same (.8). |
| 10/7/2019 | 1 | $1,335 | Edelman, Scott A. | Prepare for and meet and confer with plaintiff re Anti-SLAPP. |
| 10/8/2019 | 5.3 | $274.50 | Bach, Nathaniel L. | Research opinion cases for anti-SLAPP motion (3.0); |

Gibson, Dunn & Crutcher LLP

EDELMAN DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS

Case 8:19-cv-01633-DOC-DFM    Document 387-3    Filed 09/06/25    Page 457 of 484
Page ID #: 33730
Case 3:19-cv-01713-BAS-AHG   Document 35-2   Filed 06/05/20   PageID.337   Page 12 of 27

| | | | | draft anti-SLAPP motion (2.3). |
|---|---|---|---|---|
| 10/8/2019 | 2.3 | $1,437.50 | Moshell, Marissa B. | Continue research for anti-SLAPP motion (2.3). |
| 10/9/2019 | 4.9 | $4,483.50 | Bach, Nathaniel L. | Drafting anti-SLAPP motion. |
| 10/10/2019 | 5.6 | $5,124 | Bach, Nathaniel L. | Working on anti-SLAPP special motion to strike. |
| 10/10/2019 | 1.5 | $2,175 | Boutrous Jr., Theodore J. | Reading key cases for anti-SLAPP motion. |
| 10/11/2019 | 2 | $2,900 | Boutrous Jr., Theodore J. | Working on anti-SLAPP motion. |
| 10/11/2019 | 8 | $7,320 | Bach, Nathaniel L. | Drafting anti-SLAPP motion to strike (5.8); researching issues re same (2.2). |
| 10/12/2019 | 5 | $4,575 | Bach, Nathaniel L. | Working on draft of anti-SLAPP motion. |
| 10/13/2019 | 6.6 | $6,039 | Bach, Nathaniel L. | Emails with T. Boutrous re comments to Anti-SLAPP motion (.8); further revisions to same (5.8). |
| 10/13/2019 | 4 | $5,800 | Boutrous Jr., Theodore J. | Working on anti-SLAPP motion. |
| 10/14/2019 | 7.7 | $7,045.50 | Bach, Nathaniel L. | Call with T. Boutrous, S. Edelman, T. Evangelis re anti-SLAPP brief (.5); further calls with T. Boutrous re same (.3); further revisions to brief (6.9). |
| 10/14/2019 | 1 | $1,335 | Edelman, Scott A. | Review anti-SLAPP brief (.5); team call re same (.5). |
| 10/14/2019 | 6 | $8,700 | Boutrous Jr., Theodore J. | Working on anti-SLAPP motion. |
| 10/15/2019 | 2.2 | $1,375 | Rubin, Daniel M. | Revise anti-SLAPP motion. |
| 10/15/2019 | 4.9 | $4,483.50 | Bach, Nathaniel L. | Implementing further edits, revisions to anti-SLAPP draft (3.5); emails and calls |

Gibson, Dunn & Crutcher LLP

11

EDELMAN DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS

| | | | | with T. Boutrous, S. Edelman, T. Evangelis re same (.5); emails with D. Rubin re supporting motion documents (.4); emails with T. Boutrous re upcoming client meeting (.5). |
|---|---|---|---|---|
| 10/15/2019 | 1 | $625 | Rubin, Daniel M. | Draft and revise notice of anti-SLAPP motion, request for judicial notice, and proposed order. |
| 10/15/2019 | 4.5 | $6,525 | Boutrous Jr., Theodore J. | Revising, editing anti-SLAPP motion. |
| 10/15/2019 | 2.9 | $3,871.50 | Edelman, Scott A. | Review draft anti-SLAPP Motion, edit same. |
| 10/16/2019 | 7.4 | $6,771 | Bach, Nathaniel L. | Review client comments on draft anti-SLAPP motion (.6); prepare for client meeting (.5); telephonic conference with S. Weiner, T. Hoff, A. Jacobs, T. Boutrous, S. Edelman re same (.6); further revisions to anti-SLAPP motion (5.7). |
| 10/16/2019 | 2.4 | $1,500 | Rubin, Daniel M. | Draft and revise materials in support of anti-SLAPP motion. |
| 10/16/2019 | 0.7 | $934.50 | Edelman, Scott A. | Telephone conference with clients regarding anti-SLAPP motion. |
| 10/16/2019 | 3 | $4,350 | Boutrous Jr., Theodore J. | Review client comments on anti-SLAPP motion, meet with clients, work on motion. |
| 10/17/2019 | 4.7 | $4,300.50 | Bach, Nathaniel L. | Further revisions to anti-SLAPP motion (3.0); emails with T. Boutrous, client re same (.5); review and revise supporting motion documents (RJN, proposed order, notice of motion, |

12

EDELMAN DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS

Gibson, Dunn & Crutcher LLP

| Date | Hours | Amount | Attorney | Description |
|---|---|---|---|---|
|  |  |  |  | notice of lodging) and send same to client (1.2). |
| 10/17/2019 | 0.2 | $125 | Rubin, Daniel M. | Revise materials in support of anti-SLAPP motion. |
| 10/17/2019 | 2.9 | $4,205 | Boutrous Jr., Theodore J. | Start-to-finish editing, revising of anti-SLAPP motion. |
| 10/18/2019 | 0.9 | $823.50 | Bach, Nathaniel L. | Call with A. Jacobs re anti-SLAPP brief (.1); review further edits to same (.5); emails with D. Rubin re upcoming filing and lodging (.3). |
| 10/18/2019 | 5.1 | $3,187.50 | Rubin, Daniel M. | Revise anti-SLAPP motion to strike Plaintiff's complaint. |
| 10/18/2019 | 0.6 | $375 | Rubin, Daniel M. | Confer with N. Bach re filing of anti-SLAPP motion. |
| 10/18/2019 | 1 | $1,450 | Boutrous Jr., Theodore J. | Review clients' latest changes, review, revise anti-SLAPP brief. |
| 10/20/2019 | 2.1 | $1,921.50 | Bach, Nathaniel L. | Further revisions to anti-SLAPP motion, including cite check edits (2.0); email to client re putative final draft (.1). |
| 10/21/2019 | 4.2 | $2,625 | Rubin, Daniel M. | Final proof and cite check of anti-SLAPP motion to strike complaint and supporting materials. |
| 10/21/2019 | 3.6 | $3,294 | Bach, Nathaniel L. | Final review of anti-SLAPP motion, memorandum, request for judicial notice, notice of lodging, proposed order (2.7); emails with client re same (.4); emails and calls with D. Rubin re filing (.5). |
| 10/21/2019 | 0.9 | $562.50 | Rubin, Daniel M. | Confer with N. Bach re anti-SLAPP motion to |

13

EDELMAN DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS

| Date | Hours | Amount | Timekeeper | Description |
|---|---|---|---|---|
| | | | | strike and supporting documents. |
| 10/21/2019 | 1 | $1,450 | Boutrous Jr., Theodore J. | Final revisions to anti-SLAPP motion papers before filing. |
| **Reviewing and responding to Plaintiff's opposition brief, including Plaintiff's improper evidentiary submission** | | | | |
| 12/2/2019 | 4.7 | $2,937.50 | Moshell, Marissa B. | Call with N. Bach re reply brief (.1); research for reply brief (.1); review and analyze moving and opposition papers on anti-SLAPP motion (2.4); begin drafting reply in support of anti-SLAPP motion (2.1). |
| 12/2/2019 | 2.5 | $2,287.50 | Bach, Nathaniel L. | Review opposition to motion to strike and supporting documents (.8); meet with M. Moshell re drafting reply brief (.2); emails with GDC team re reply brief (.3); draft talking points for reply brief (1.2). |
| 12/3/2019 | 1.2 | $1,098 | Bach, Nathaniel L. | Call with A. Jacobs, M. Moshell re reply brief (.5); meeting with M. Moshell re same (.2); reading Plaintiff's cases (.5). |
| 12/3/2019 | 12.1 | $7,562.50 | Moshell, Marissa B. | Call with client and N. Bach re reply brief (.5); meeting with N. Bach re reply brief (.2); draft reply brief (11.4). |
| 12/3/2019 | 2.2 | $1,012 | Gadberry, Lolita C. | Review opposition brief and download cases and statutes cited in same (1.5); organize cases and statutes and forward zip file of same to M. Moshell (.7). |

Gibson, Dunn & Crutcher LLP

EDELMAN DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS

Case 8:19-cv-01532-DOC-DFM   Document 387-3   Filed 09/06/25   Page 461 of 484
Page ID #: 33736
Case 3:19-cv-01713-BAS-AHG   Document 35-2   Filed 06/05/20   PageID.341   Page 16 of 27

| 12/4/2019 | 3.5 | $2,187.50 | Moshell, Marissa B. | Continue drafting reply brief (3.2); correspond with N. Bach re reply brief (.3). |
|---|---|---|---|---|
| 12/4/2019 | 8.6 | $7,869 | Bach, Nathaniel L. | Working on draft of reply in support of motion to strike. |
| 12/5/2019 | 1 | $460 | Gadberry, Lolita C. | Assist N. Bach with organization and printing of case files for T. Boutrous. |
| 12/5/2019 | 5.5 | $5,032.50 | Bach, Nathaniel L. | Revising reply in support of anti-SLAPP motion. |
| 12/5/2019 | 1 | $1,450 | Boutrous Jr., Theodore J. | Work on anti-SLAPP reply. |
| 12/6/2019 | 1.7 | $1,555.50 | Bach, Nathaniel L. | Revisions to reply brief in support of motion to strike. |
| 12/6/2019 | 0.4 | $250 | Moshell, Marissa B. | Research availability of stay of discovery pending appeal of an anti-SLAPP order. |
| 12/7/2019 | 0.7 | $437.50 | Moshell, Marissa B. | Research stays of discovery on appeal from an anti-SLAPP order. |
| 12/7/2019 | 0.8 | $732 | Bach, Nathaniel L. | Draft email memorandum to T. Boutrous re discovery stay on appeal from an anti-SLAPP order. |
| 12/7/2019 | 3.5 | $3,202.50 | Bach, Nathaniel L. | Revising reply brief in support of motion to dismiss. |
| 12/7/2019 | 1.2 | $1,740 | Boutrous Jr., Theodore J. | Work on anti-SLAPP reply. |
| 12/8/2019 | 1.5 | $1,372.50 | Bach, Nathaniel L. | Further revisions to reply in support of anti-SLAPP motion (1.0); emails with T. Boutrous, S. Weiner re discovery stay (.5). |
| 12/9/2019 | 2.8 | $1,750 | Moshell, Marissa B. | Revise and cite check reply in support of anti-SLAPP motion (2.5); file reply in support of anti-SLAPP motion (.3). |

EDELMAN DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS

Gibson, Dunn & Crutcher LLP

| 12/9/2019 | 3.5 | $3,202.50 | Bach, Nathaniel L. | Final revisions to reply in support of motion to strike (2.0); emails with C. O'Hagan, S. Weiner, M. Moshell re same (.5); final proofs of motion before filing (1.0). |
| --- | --- | --- | --- | --- |
| 12/9/2019 | 0.5 | $725 | Boutrous Jr., Theodore J. | Final review of anti-SLAPP reply. |
| **Reviewing and responding to Plaintiff's *Ex Parte* Application to Supplement the Record** | | | | |
| 12/10/2019 | 0.9 | $823.50 | Bach, Nathaniel L. | Emails with A. Siegel, client team re ex parte application to supplement record (.6); call with A. Siegel re same (.2); call with S. Edelman re same (.1). |
| 12/10/2019 | 0.2 | $267 | Edelman, Scott A. | Telephone conference with N. Bach regarding ex parte application. |
| 12/11/2019 | 0.5 | $312.50 | Moshell, Marissa B. | Research for Opposition to ex parte application. |
| 12/11/2019 | 2 | $1,830 | Bach, Nathaniel L. | Draft opposition to ex parte application to supplement evidentiary record (1.5); emails with S. Weiner, M. Moshell re same (.5). |
| 12/12/2019 | 0.3 | $435 | Boutrous Jr., Theodore J. | Review, comment on opposition to ex parte. |
| 12/12/2019 | 4.6 | $4,209 | Bach, Nathaniel L. | Further revisions to opposition to ex parte application to supplement (4.2); emails and call with T. Boutrous re same (.4). |
| 12/13/2019 | 1.2 | $1,098 | Bach, Nathaniel L. | Final revision to and proof of opposition to ex parte application. |

16

EDELMAN DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR
ATTORNEYS' FEES AND COSTS

Gibson, Dunn &
Crutcher LLP

Case 8:19-cv-01531-DOC-DFM    Document 387-3    Filed 08/06/25    Page 463 of 484
Page ID #: 33738
Case 3:19-cv-01713-BAS-AHG    Document 35-2    Filed 06/05/20    PageID.343    Page 18 of 27

| **Preparing for and attending the hearing on the Anti-SLAPP Motion and Plaintiff's *Ex Parte* Application to Supplement the Record** | | | | |
|---|---|---|---|---|
| 3/9/2020 | 0.2 | $192 | Bach, Nathaniel L. | Emails to M. Moshell re hearing preparation. |
| 3/12/2020 | 5.5 | $4,070 | Moshell, Marissa B. | Prepare one-pagers for oral argument on anti-SLAPP motion. |
| 3/16/2020 | 0.7 | $518 | Moshell, Marissa B. | Review and revise oral argument preparation materials. |
| 4/27/2020 | 0.8 | $768 | Bach, Nathaniel L. | Review Bashant orders re tentative rulings in other cases. |
| 4/27/2020 | 0.3 | $418.50 | Edelman, Scott A. | Correspond with client and N. Bach regarding upcoming hearing. |
| 5/4/2020 | 1 | $1,525 | Boutrous Jr., Theodore J. | Begin hearing preparation. |
| 5/7/2020 | 2.1 | $1,554 | Moshell, Marissa B. | Compile materials for T. Boutrous for hearing preparation. |
| 5/12/2020 | 6.9 | $5,106 | Moshell, Marissa B. | Review and analyze key cases and draft case summaries. |
| 5/12/2020 | 0.3 | $288 | Bach, Nathaniel L. | Reviewing outlines for hearing on anti-SLAPP motion. |
| 5/12/2020 | 1.7 | $1,632 | Bach, Nathaniel L. | Revising outline of talking points for anti-SLAPP hearing. |
| 5/12/2020 | 2.5 | $3,812.50 | Boutrous Jr., Theodore J. | Preparing for hearing on anti-SLAPP motion hearing, including studying briefs, cases |
| 5/13/2020 | 2.3 | $2,208 | Bach, Nathaniel L. | Draft mooting questions for anti-SLAPP hearing. |
| 5/13/2020 | 1.9 | $1,406 | Moshell, Marissa B. | Draft questions and answers for hearing preparation. |
| 5/13/2020 | 2.5 | $3,812.50 | Boutrous Jr., Theodore J. | Hearing preparation. |

EDELMAN DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS

| 5/14/2020 | 2.9 | $2,146 | Moshell, Marissa B. | Meeting with team and client re hearing (.8); research and correspond with team re hearing on anti-SLAPP motion (2.1). |
|---|---|---|---|---|
| 5/14/2020 | 0.9 | $864 | Bach, Nathaniel L. | Pre-hearing call with client, T. Boutrous, S. Edelman, M. Moshell. |
| 5/14/2020 | 1 | $1,395 | Edelman, Scott A. | Review anti-SLAPP materials in preparation for moot session with client. |
| 5/14/2020 | 0.9 | $1,255.50 | Edelman, Scott A. | Moot session with client. |
| 5/14/2020 | 3.9 | $5,947.50 | Boutrous Jr., Theodore J. | Preparing for moot court, strategy session, participate in same, continue to prepare for hearing on SLAPP motion. |
| 5/15/2020 | 0.6 | $444 | Moshell, Marissa B. | Research for hearing on anti-SLAPP motion. |
| 5/16/2020 | 2 | $3,050 | Boutrous Jr., Theodore J. | Prepare for anti-SLAPP hearing. |
| 5/16/2020 | 0.3 | $222 | Moshell, Marissa B. | Research court reporting and hearing transcription for anti-SLAPP hearing. |
| 5/17/2020 | 3 | $4,575 | Boutrous Jr., Theodore J. | Preparing for hearing on anti-SLAPP motion. |
| 5/17/2020 | 0.3 | $222 | Moshell, Marissa B. | Correspond with T. Boutrous re materials for hearing preparation (.1); correspond with N. Bach and court reporter re hearing transcript (.2). |
| 5/18/2020 | 2.2 | $2,112 | Bach, Nathaniel L. | Draft one-sheets and hearing arguments. |
| 5/18/2020 | 1.3 | $962 | Moshell, Marissa B. | Draft one-pager for oral argument (1); correspond with team re hearing preparation (.3). |

Gibson, Dunn & Crutcher LLP

18

EDELMAN DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS

Case 2:19-cv-01532-DOC-DFM    Document 387-6    Filed 09/06/25    Page 465 of 484
Page ID #: 33780
Case 3:19-cv-01713-BAS-AHG    Document 35-2    Filed 06/05/20    PageID.345    Page 20 of 27

| 5/18/2020 | 4.5 | $6,862.50 | Boutrous Jr., Theodore J. | Continue to prepare for hearing on Anti-SLAPP motion. |
|---|---|---|---|---|
| 5/19/2020 | 1.5 | $1,440 | Bach, Nathaniel L. | Prepare for hearing on anti-SLAPP motion (.7); telephonic hearing re same (.6); post-hearing debrief with client (.3). |
| 5/19/2020 | 1 | $740 | Moshell, Marissa B. | Attend telephonic hearing on anti-SLAPP motion (.6); call with team re hearing (.1); correspond with court reporter re hearing transcript (.3). |
| 5/19/2020 | 1.5 | $2,092.50 | Edelman, Scott A. | Attend anti-SLAPP hearing. |
| 5/19/2020 | 4.3 | $6,557.50 | Boutrous Jr., Theodore J. | Final preparations for hearing on anti-SLAPP motion, argue motion, call with clients re same, review transcript. |
| **Researching and drafting the Attorneys' Fees Motion and supporting documents** | | | | |
| 5/22/2020 | 2.2 | $1,628 | Moshell, Marissa B. | Research filing deadline for motion for attorney's fees (1); review order granting anti-SLAPP motion and draft summary (1.2). |
| 5/22/2020 | 0.5 | $480 | Bach, Nathaniel L. | Review order granting anti-SLAPP motion. |
| 5/22/2020 | 0.6 | $915 | Boutrous Jr., Theodore J. | Analyzing anti-SLAPP ruling. |
| 5/25/2020 | 0.6 | $444 | Moshell, Marissa B. | Conduct research for motion for attorneys' fees. |
| 5/26/2020 | 5.1 | $3,774 | Moshell, Marissa B. | Research for attorney fees motion and bill of costs (4); begin drafting attorney fees motion (1.1). |
| 5/27/2020 | 10.1 | $7,474 | Moshell, Marissa B. | Continue drafting and researching for motion for |

19

EDELMAN DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS

| | | | | attorneys' fees (9.9); call with N. Bach re motion for attorneys' fees and costs (.2). |
|---|---|---|---|---|
| 5/27/2020 | 1.2 | $1,152 | Bach, Nathaniel L. | Call with M. Moshell re drafting fee motion (.3); emails with M. Moshell, S. Edelman re same (.3); reviewing fee summary for motion (.6). |
| 5/27/2020 | 1.5 | $720 | Gadberry, Lolita C. | Review and analyze accounting department billing records received from M. Moshell. |
| 5/27/2020 | 0.3 | $418.50 | Edelman, Scott A. | Emails regarding fee application. |
| 5/28/2020 | 8.2 | $6,068 | Moshell, Marissa B. | Continue drafting fees motion. |
| 5/28/2020 | 0.5 | $480 | Bach, Nathaniel L. | Meet and confer with A. Siegel re motion for fees (.3); email to clients re same (.2). |
| 5/28/2020 | 4.5 | $2,160 | Gadberry, Lolita C. | Review billing records and prepare charts of billed time pursuant to the request of M. Moshell. |
| 5/28/2020 | 0.4 | $558 | Edelman, Scott A. | Edit fees motion; emails with M. Moshell regarding research for fees motion. |
| 5/28/2020 | 1.4 | $672 | Amponsah, Duke K. | Research for fees motion and confer with M. Moshell and R. Klyman re same. |
| 5/29/2020 | 7.4 | $5,476 | Moshell, Marissa B. | Draft declaration for S. Edelman in support of attorneys' fees motion. |
| 5/29/2020 | 5.5 | $2,640 | Gadberry, Lolita C. | Review and analyze chart regarding billed time and edit and revise same (5.00); email exchange with M. Moshell regarding |

Gibson, Dunn & Crutcher LLP

20

EDELMAN DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS

| | | | | preparation and review of motion for fees (.50). |
|---|---|---|---|---|
| 5/29/2020 | 0.5 | $697.50 | Edelman, Scott A. | Work on fee application and emails with M. Moshell regarding same. |
| 5/31/2020 | 1.5 | $1,440 | Bach, Nathaniel L. | Revising memorandum in support of fee motion. |
| 6/1/2020 | 2.3 | $1,702 | Moshell, Marissa B. | Review and revise motion for attorneys' fees and supporting declaration (1.8); correspond with team re motion for attorneys' fees (.5). |
| 6/1/2020 | 0.4 | $384 | Bach, Nathaniel L. | Emails with S. Edelman, M. Moshell re motion for fees. |
| 6/1/2020 | 1.0 | $1,395 | Edelman, Scott A. | Edit motion for attorneys' fees, declaration in support. |
| 6/2/2020 | 3.2 | $2,368 | Moshell, Marissa B. | Research for and revise motion for attorneys' fees. |
| 6/2/2020 | 3.5 | $2,590 | Moshell, Marissa B. | Call with S. Edelman and N. Bach re motion for attorneys' fees (.4); continue revising motion for attorneys' fees and supporting declaration (3.1). |
| 6/2/2020 | 1.0 | $1,395 | Edelman, Scott A. | Work on motion for attorneys' fees and telephone conference with N. Bach and M. Moshell regarding same. |
| 6/3/2020 | 3.5 | $2,590 | Moshell, Marissa B. | Revise motion for attorneys' fees and supporting declaration (2.5); compile exhibits for attorneys' fees motion (1). |
| 6/3/2020 | 0.5 | $697.50 | Edelman, Scott A. | Revise motion for attorneys' fees. |
| 6/4/2020 | 4.0 | $2,960 | Moshell, Marissa B. | Research for and revise motion for attorneys' fees and supporting declaration (3.8); call with S. Edelman |

21

EDELMAN DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS

| | | | | re attorneys' fees motion (.2). |
|---|---|---|---|---|
| **Total Hours and Fees** | | | | |
| **TOTAL** | 355.5 | $323,965 | | |

24.    Set forth below are the details of the hours expended by the Gibson Dunn attorneys and other professionals, divided by timekeeper, through the filing of this Motion for Attorneys' Fees and Costs.  This information is a true and accurate reflection of our records:

| Timekeeper | Hours Worked |
|---|---|
| Theodore J. Boutrous, Jr. (Partner) | 55.8 |
| Scott A. Edelman (Partner) | 17.5 |
| Nathaniel L. Bach (Senior Associate) | 135.1 |
| Marissa B. Moshell (Mid-Level Associate) | 113.7 |
| Daniel M. Rubin (Mid-Level Associate) | 16.6 |
| Lolita C. Gadberry (Paralegal) | 14.7 |
| Duke Amponsah (Paralegal) | 1.4 |
| Erin E. Kurinsky (Researcher) | .6 |
| Carla H. Jones (Researcher) | .1 |
| **TOTAL** | 355.5 |

25.    In sum, through the filing of this Motion for Attorneys' Fees and Costs, attorneys and other professionals collectively spent 355.5 hours working on this matter, which resulted in $323,965 in attorneys' fees.  Gibson Dunn is also seeking any

EDELMAN DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS

Gibson, Dunn & Crutcher LLP

Case 3:19-cv-01532-DOC-DFM    Document 387-6    Filed 09/06/25    Page 469 of 484
Page ID #: 33782
Case 3:19-cv-01713-BAS-AHG    Document 35-2    Filed 06/05/20    PageID.349    Page 24 of 27

additional fees incurred in connection with preparing a Reply and attending a hearing on this Motion.

### Gibson Dunn's Costs

26.    In addition to the fees for Gibson Dunn attorneys and other professionals, Defendants incurred certain costs in connection with their Motion to Strike.  I have reviewed Gibson Dunn's record of costs for this case, and I am familiar with such records and the processes by which the firm creates and maintains them.  In the regular course of business, Gibson Dunn maintains records of costs incurred in connection with a particular client and matter.

27.    The costs incurred by Gibson Dunn in connection with this matter can be categorized as follows:

- Courier costs;
- Document retrieval service costs;
- Process server costs;
- Photocopying costs;
- Research costs; and
- Transcript costs.

Set forth below are the details of the costs incurred by Defendants, divided by category, through the filing of this Motion for Attorneys' Fees and Costs.  This information is a true and accurate reflection of our records:

| Date | Cost | Description |
|---|---|---|
| **Courier Costs** | | |
| 10/21/2019 | $11.90 | UPS Delivery of DVD to Amnon Z. Siegel at Miller Barondess LLP |
| 5/8/2020 | $48.99 | Delivery of hearing preparation materials to Theodore J. Boutrous, Jr. |
| **Document Retrieval Service Costs** | | |
| 9/26/2019 | $109.72 | Dun & Bradstreet Document Retrieval Research Costs |

Gibson, Dunn &
Crutcher LLP

23

EDELMAN DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR
ATTORNEYS' FEES AND COSTS

Case 2:19-cv-01532-DOC-DFM   Document 387-6   Filed 09/06/25   Page 470 of 484
Page ID #: 33788
Case 3:19-cv-01713-BAS-AHG   Document 35-2   Filed 06/05/20   PageID.350   Page 25 of 27

| 10/21/2019 | $12.30 | PACER charges for October 2019 |
|---|---|---|
| 12/9/2019 | $1.50 | PACER charges for December 2019 |
| 2/2/2020 | $25.00 | Docket tracking charges through December 2019 |
| 2/28/2020 | $2.50 | Docket tracking charges through January 2020 |
| 4/1/2020 | $15.00 | Docket tracking charges through February 2020 |
| 4/30/2020 | $10.00 | Docket tracking charges through March 2020 |
| 5/31/2020 | $5.00 | Docket tracking charges through April 2020 |
| **Process Server Costs** | | |
| 10/21/2019 | $44.12 | First Legal Network, LLC delivery of Notice of Lodging and DVD to Judge Bashant |
| 10/21/2019 | $31.35 | First Legal Network, LLC delivery of DVD to Gibson Dunn |
| **Photocopying Costs** | | |
| 10/15/2019 | $73.80 | Printing and photocopying in connection with anti-SLAPP motion |
| 10/16/2019 | $6.20 | Printing and photocopying in connection with anti-SLAPP motion |
| 10/23/2019 | $24.80 | Printing and photocopying in connection with anti-SLAPP motion |
| 12/5/2019 | $16.90 | Printing and photocopying in connection with reply brief |
| 3/4/2020 | $4.50 | Printing and photocopying in connection with oral argument preparation |
| 5/7/2020 | $60.30 | Printing and photocopying in connection with oral argument preparation |
| 5/9/2020 | $10.35 | Printing and photocopying in connection with oral argument preparation |
| 5/13/2020 | $13.10 | Printing and photocopying in connection with oral argument preparation |
| 5/18/2020 | $7.50 | Printing and photocopying in connection with oral argument preparation |
| **Research Costs** | | |

24

EDELMAN DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS

Gibson, Dunn & Crutcher LLP

Case 8:19-cv-01582-DOC-DFM   Document 387-6   Filed 09/06/25   Page 471 of 484
Page ID #:33786
Case 3:19-cv-01713-BAS-AHG   Document 35-2   Filed 06/05/20   PageID.351   Page 26 of 27

| 9/26/2019 | $768.00 | Westlaw research costs |
|---|---|---|
| 9/28/2019 | $120.00 | Westlaw research costs |
| 9/29/2019 | $120.00 | Westlaw research costs |
| 9/30/2019 | $121.50 | Bloomberg Law research costs |
| 10/7/2019 | $1,123.20 | Westlaw research costs |
| 10/8/2019 | $120.00 | Westlaw research costs |
| 10/10/2019 | $408.00 | Westlaw research costs |
| 10/13/2019 | $201.60 | Westlaw research costs |
| 10/14/2019 | $1.60 | HeinOnline research costs |
| 10/14/2019 | $120.00 | Westlaw research costs |
| 10/15/2019 | $120.00 | Westlaw research costs |
| 10/16/2019 | $1,012.80 | Westlaw research costs |
| 10/17/2019 | $360.00 | Westlaw research costs |
| 10/18/2019 | $240.00 | Westlaw research costs |
| 10/20/2019 | $360.00 | Westlaw research costs |
| 12/4/2019 | $480.00 | Westlaw research costs |
| 12/7/2019 | $360.00 | Westlaw research costs |
| 12/11/2019 | $120.00 | Westlaw research costs |
| 5/7/2020 | $240.00 | Westlaw research costs |
| 5/14/2020 | $120.00 | Westlaw research costs |
| 5/15/2020 | $240.00 | Westlaw research costs |
| 5/22/2020 | $240.00 | Westlaw research costs |
| 5/26/2020 | $514.40 | Westlaw research costs |
| 5/27/2020 | $931.20 | Westlaw research costs |
| 5/28/2020 | $562.40 | Westlaw research costs |
| **Transcript Costs** | | |
| 5/19/2020 | $166.75 | Transcript order for hearing on anti-SLAPP motion and Plaintiff's ex parte application to supplement the record |
| **Total Costs** | | |
| **TOTAL** | $9,706.28 | |

28.    In sum, through the filing of this Motion for Attorneys' Fees and Costs, Gibson Dunn incurred $9,706.28 in costs.  Gibson Dunn is also seeking any additional costs incurred in connection with preparing a Reply and attending a hearing on this Motion.

Gibson, Dunn &
Crutcher LLP

25
EDELMAN DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR
ATTORNEYS' FEES AND COSTS

Case 2:19-cv-01532-DOC-DFM   Document 337-6   Filed 09/06/25   Page 472 of 484
Page ID #:33787
Case 3:19-cv-01713-BAS-AHG   Document 35-2   Filed 06/05/20   PageID.352   Page 27 of 27

29.   I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed in Los Angeles, California on June 5, 2020.

_____
Scott A. Edelman

Gibson, Dunn &
Crutcher LLP

EDELMAN DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR
ATTORNEYS' FEES AND COSTS

Case 8:19-cv-01514-DOC-DFM   Document 387-6   Filed 09/06/25   Page 473 of 484
Page ID #:33798
Case 8:17-cv-00278-CJC-DFM   Document 462   Filed 02/23/23   Page 1 of 12   Page ID
#:10481

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

|  |  |
|---|---|
| FERMIN VINCENT VALENZUELA, <br><br> Plaintiff, <br><br> v. <br><br> CITY OF ANAHEIM, *et al.*, <br><br> Defendants. | Case No.: SACV 17-00278-CJC (DFMx), consolidated with SACV 17-02094-CJC (DFMx) <br><br> ORDER GRANTING IN SUBSTANTIAL PART PLAINTIFFS' MOTION FOR ATTORNEY FEES [Dkt. 459] |
| VINCENT VALENZUELA and XIMENA VALENZUELA by and through their guardian PATRICIA GONZALEZ, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF ANAHEIM, *et al.*, <br><br> Defendants. |  |

-1-

## I.    INTRODUCTION & BACKGROUND

On July 2, 2016, members of the Anaheim Police Department applied a neck restraint on Fermin Vincent Valenzuela Junior ("Mr. Valenzuela") called the "carotid hold." Mr. Valenzuela died. Plaintiffs Fermin Vincent Valenzuela Senior (Mr. Valenzuela's father), Vincent Valenzuela (Mr. Valenzuela's son), and Ximena Valenzuela (Mr. Valenzuela's daughter) brought this civil rights action against Defendants City of Anaheim (the "City"), Officers Daniel Wolfe, Officer Woojin Jun, and Sergeant Daniel Gonzalez. In November 2019, they presented evidence to a jury supporting their claims for excessive force, deprivation of substantive due process, municipal liability (on both unlawful policy and failure to train theories), wrongful death (on both negligence and battery theories), and violation of the Bane Act, Cal. Civ. Code § 52.1(b).

After five days of trial, the jury returned a verdict in favor of Mr. Valenzuela's children, finding, among other things, that Officers Jun and Wolfe used excessive force when they attempted to use the carotid hold, that Sergeant Gonzalez was liable as the supervising officer, and that the City's policy permitting the carotid hold in nondeadly force situations was unlawful. (Dkt. 358.) The trial proceeded to a second phase on damages. After two additional days of trial, the jury returned with a second verdict, awarding Mr. Valenzuela's children a total of $13.2 million in damages—$3.6 million in loss of life damages, $6 million in pre-death pain and suffering, and $1.8 million to each child for past and future loss of love, companionship, comfort, care, assistance, protection, affection, society, moral support, training, and guidance. (Dkt. 372.) The Court denied Defendants' motions for judgment as a matter of law and for new trial and granted in substantial part Plaintiffs' motion for attorney fees, awarding $1,082,930 in fees incurred through trial. (Dkt. 435.)

-2-

Defendants appealed to the Ninth Circuit, arguing that (1) the officers were entitled to qualified immunity, (2) the City was entitled to judgment as a matter of law because the policy was not unconstitutional, (3) Defendants were entitled to judgment on the Bane Act claim because it was inconsistent with the jury's finding on the Fourteenth Amendment claim, and (4) loss of life damages are not recoverable under 42 U.S.C. Section 1983.  *See Valenzuela v. City of Anaheim*, 6 F.4th 1098, 1101 (9th Cir. 2021); (Mot. at 17–18).  In a published opinion and an unpublished memorandum decision, both of which drew a dissent from Judge Kenneth K. Lee, the Ninth Circuit affirmed this Court's ruling that Section 1983 permitted recovery of loss of life damages and that California state law to the contrary was inconsistent with Section 1983's goals. *Valenzuela*, 6 F.4th 1098, at 1101–02; *Valenzuela v. City of Anaheim*, 2021 WL 3362847 (9th Cir. Aug. 3, 2021).  The Ninth Circuit denied Defendants' petition for panel rehearing and rehearing en banc, but eleven judges dissented on the issue of availability of loss of life damages. *Valenzuela v. City of Anaheim*, 29 F.4th 1093, 1094 (9th Cir. 2022).  Defendants appealed to the United States Supreme Court, and the Supreme Court denied certiorari. *City of Anaheim v. Valenzuela*, 143 S. Ct. 523 (2022) (mem.).

Now before the Court is Plaintiffs' motion for attorney fees for their work responding to Defendants' appeals to the Ninth Circuit and the Supreme Court.  (Dkt. 459 [hereinafter "Mot."].)  Plaintiffs request a lodestar amount of $696,025 in attorney fees. Dkt. 461 [Reply] at 18.)  In opposition, Defendants argue that (1) all of Plaintiffs' attorneys' hourly rates are excessive, and (2) some of those attorneys' hours are excessive and duplicative.  (Dkt. 460 [Opposition, hereinafter "Opp."].)  For the following reasons, Plaintiffs' motion is **GRANTED IN SUBSTANTIAL PART**.[1]  The Court awards Plaintiffs $659,125 in attorney fees.

---

[1]  Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing.  *See* Fed. R. Civ. P. 78; Local Rule 7-15.  Accordingly, the hearing set for March 6, 2023 at 1:30 p.m. is hereby vacated and off calendar.

Case 8:19-cv-01532-DOC-DFM   Document 387-6   Filed 09/06/25   Page 476 of 484
Case 8:17-cv-00278-CJC-DFM   Document 462   Filed 02/23/23   Page 4 of 12   Page ID
#:10484

## II.   ANALYSIS

"The general rule in our legal system is that each party must pay its own attorney's fees and expenses." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 550 (2010).  In an action brought pursuant to 42 U.S.C. § 1983, however, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs."  42 U.S.C. § 1988(b).  A party is considered the prevailing party if it succeeds on any significant issue in litigation that achieves some of the benefit sought in bringing the lawsuit. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  Defendants do not dispute that Plaintiffs prevailed on their claim on appeal that the scope of recoverable survival damages in California for Section 1983 claims includes survival damages for the decedent's loss of life—a question that was previously unclear.  Rather, Defendants contend that the fees Plaintiffs seek are unreasonable.

In assessing the reasonableness of a fee award, a district court considers twelve factors: "(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to the acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases." *Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), *cert. denied*, 425 U.S. 951 (1976).

There is a strong presumption that the lodestar figure represents a reasonable fee. *Morales v. City of San Rafael*, 96 F.3d 359, 363 n.8 (9th Cir. 1996); *see also Harris v. Marhoerfer*, 24 F.3d 16, 18 (9th Cir. 1994) ("Only in rare instances should the lodestar

Case 8:19-cv-01531-DOC-DFM    Document 388-5    Filed 09/06/25    Page 477 of 484
Case 8:17-cv-00278-CJC-DFM    Document 462    Filed 02/23/23    Page 5 of 12    Page ID
#:10485

Page ID #:33790

figure be adjusted on the basis of other considerations.").  The lodestar amount is the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  *Hensley*, 461 U.S. at 433.  Under the lodestar approach, many of the *Kerr* factors have been subsumed as a matter of law.  *Morales*, 96 F.3d at 364 & n.9.

## A. Hourly Rates

The Court first determines Plaintiffs' counsel's reasonable hourly rates.  "The hourly rate for successful civil rights attorneys is to be calculated by considering certain factors, including the novelty and difficulty of the issues, the skill required to try the case, whether or not the fee is contingent, the experience held by counsel, and fee awards in similar cases."  *Moreno v. City of Sacramento*, 534 F.3d 1106, 114 (9th Cir. 2008).  Courts also are guided by "the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation."  *Trevino v. Gates*, 99 F.3d 911, 925 (9th Cir. 1996); *see also Dang v. Cross*, 422 F.3d 800, 813 (9th Cir. 2005).  Once the party claiming fees presents evidence supporting the claimed rate, the burden shifts to the party opposing fees to present equally specific countervailing evidence.  *See Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992).

### 1. Dale Galipo

Dale Galipo, the lead trial lawyer who then reviewed and edited the appellate briefs and delivered oral argument before the Ninth Circuit panel, requests an hourly rate of $1,200.  (Mot. at 7.)  Mr. Galipo graduated from UCLA law school in 1984.  (Dkt. 459-2 [Declaration of Dale K. Galipo] ¶ 3.)  Since 1991, he has managed his own law firm, and he has specialized in civil rights cases over the last two decades.  (*See id.* ¶ 4.)  After trial in this case, the Court found that $1,000 was a reasonable hourly rate for Mr.

-5-

Galipo, citing its recent award in *Craig et.al. v. County of Orange et.al.*, Case No. SACV 17-00491-CJC (KESx), Dkt. 245.

Now, the Court has recently awarded fees for Mr. Galipo's appellate efforts in *Craig. See id.*, Dkt. 280 (hereinafter "*Craig* Order"). The Court found that a $1,200 hourly rate, although high, was reasonable for Mr. Galipo's work over the past three years, pointing to Mr. Galipo's strong reputation within the legal community, his continued consistent record of success with over $85 million in recovery in civil rights cases since 2019, and multiple courts that awarded him $1,100 hourly rates as early as 2020. (*Id.* at 4–6.) The Court finds that $1,200 is a reasonable hourly rate for Mr. Galipo in this case as well.

### 2. Kelsi Brown Corkran

Kelsi Brown Corkran, who led Plaintiffs' team in preparing and finalizing the brief in opposition to Defendants' petition for a writ of certiorari, seeks an hourly rate of $1,075—her billing rate when she left private practice in 2021. (Mot. at 9–11; Dkt. 459-3 [Declaration of Kelsi Brown Corkran, hereinafter "Corkran Decl."] ¶¶ 12, 15.) Ms. Corkran graduated from the University of Chicago with a law degree and a master's degree in public policy in 2005. (Corkran Decl. ¶ 2.) Since 2021, she has been the Supreme Court Director at the Institute for Constitutional Advocacy & Protection ("ICAP"). (*Id.* ¶ 9.) The Court recently awarded an hourly rate of $1,075 for Ms. Corkran's work in *Craig*, (*Craig* Order at 6–7), and finds that rate to be reasonable in this case as well.

//
//
//

-6-

### 3. John Fattahi

John Fattahi, who "had primary responsibility for formulating strategy for, and drafting, Plaintiffs' answering brief and subsequent response to Defendants' petition for rehearing en banc before the Ninth Circuit," requests an hourly rate of $850. (Mot. at 11–14; Dkt. 459-4 [Declaration of John Fattahi, hereinafter "Fattahi Decl."] ¶ 3.) Mr. Fattahi graduated from UCLA School of Law in 2006. (Fattahi Decl. ¶ 4.) He served for one year as a law clerk to then-Chief U.S. District Judge Virginia A. Phillips in the Central District of California, was a litigation associate for two years at Quinn Emanuel Urquhart & Sullivan, LLP, and then worked for about two and a half years in Mr. Galipo's office before opening his own solo practice in 2011. (*Id.* ¶ 6.)

After trial, the Court found that $500 was a reasonable hourly rate for Mr. Fattahi, concluding that it was consistent with the prevailing rate of other attorneys in the Central District who practice civil rights litigation with similar experience, and reflected the lesser novelty and difficulty of the issues during the post-trial stage when Mr. Fattahi participated. (Order at 6.) The Court also considered a then-recent court award to Mr. Fattahi of a $550 hourly rate for second-chairing a police excessive force trial, and fee settlements resulting in $540 and $550 hourly rates. (*Id.*)

Since the Court's last fee award, Mr. Fattahi has gained substantial additional experience. He has successfully defended millions of dollars in judgments obtained by Mr. Galipo on post-trial motions and appeal, and courts have awarded Mr. Fattahi $725 and $775 hourly rates in excessive force cases. (Fattahi Decl. ¶¶ 4, 7.) In addition, whereas the Court's previous $500 rate for Mr. Fattahi was based in part on its determination that "[t]he more novel and difficult legal issues and the impressiveness of the results obtained by the Plaintiffs happened before and during trial, not after trial when

Mr. Fattahi participated," (Dkt. 435 at 38), this appeal involved multiple novel and difficult legal issues, justifying a higher hourly rate. *See Moreno*, 534 F.3d at 114.

The Court finds that $850 is a reasonable hourly rate for Mr. Fattahi's work on appeal. This rate reflects Mr. Fattahi's substantial and increased experience over the last few years, his continued strong reputation within the field, and the skill required to succeed on appeal and the novelty and difficulty of the issues presented on appeal. It is also consistent with the prevailing rate of other attorneys in the Central District who practice civil rights litigation and who graduated law school seventeen years ago. *See Donastorg*, 2021 WL 6103545, at *8 (explaining that the 2020 Real Rate Report lists partners working in commercial litigation at large firms in Los Angeles as earning between $941 and $1,235, with the median rate for litigation partners in Los Angeles at $660 per hour); *cf. McKibben*, 2019 WL 1109683, at *14; (Dkt. 459-1 [Declaration of Carol Sobel, hereinafter "Sobel Decl."] ¶¶ 44–50 [collecting evidence that Mr. Fattahi's requested rate is consistent with the market rate]).

### 4. Joseph Mead

Joseph Mead, who helped research and draft the brief in opposition to Defendants' petition for a writ of certiorari, seeks an hourly rate of $850. (Mot. at 14–15; Dkt. 459-5 [Declaration of Joseph Mead, hereinafter "Mead Decl."] ¶ 10.) Mr. Mead graduated from the University of Michigan Law School *magna cum laude* in 2007. (Mead Decl. ¶ 2.) In 2021, he joined ICAP as Senior Counsel. (*Id.* ¶ 8.) The Court awarded an hourly rate of $850 for Mr. Mead's work in *Craig*, (*Craig* Order at 9–10), and finds that that rate is reasonable in this case as well.

//
//

### 5.   Shelby Calambokidis

Shelby Calambokidis, who helped draft the brief in opposition to Defendants' petition for a writ of certiorari, seeks an hourly rate of $650.  (Mot. at 16–17; Dkt. 459-6 [Declaration of Shelby Calambokidis, hereinafter "Calambokidis Decl." ¶ 5.)  After graduating *summa cum laude* from The University of Alabama School of Law in 2017, Ms. Calambokidis clerked for judges on the United States District Court for the District of Columbia and the Fourth Circuit and served as a law fellow at the American Federation of Labor and Congress of Industrial Organizations (AFL-CIO). (Calambokidis Decl. ¶¶ 2–3.)  In 2021, she joined ICAP as Counsel, where she has worked on multiple civil rights cases in federal district and appellate courts.  (*Id.* ¶ 4.)

The Court finds that $650 is a reasonable hourly rate for Ms. Calambokidis.  This rate reflects her experience in appellate law, the novelty and difficulty of the issues on appeal, and the skill required to litigate the appeal, and is also consistent with the prevailing rate of other attorneys who graduated law school six years ago.  *See Donastorg*, 2021 WL 6103545, at *9 ("The 2020 Real Rate Report provides that the median rate for litigation associates in Los Angeles is $535, with rates of $740 in the upper quartile."); *cf. McKibben*, 2019 WL 1109683, at *14; (Sobel Decl. ¶¶ 58–61 [collecting evidence that Ms. Calambokidis's requested rate is consistent with the market rate]).

### B.   Billed Hours

The Court now determines whether the billed hours are reasonable.  A court may award attorney fees only for the number of hours it concludes were reasonably expended on the litigation.  *Hensley*, 461 U.S. at 434 ("[Counsel] should make a good faith effort to exclude . . . hours that are excessive, redundant, or otherwise unnecessary.").  "[T]he fee

Case 8:19-cv-01531-DOC-DFM    Document 387-3    Filed 09/06/25    Page 482 of 484
Page ID #:33795
Case 8:17-cv-00278-CJC-DFM    Document 462    Filed 02/23/23    Page 10 of 12    Page ID
#:10490

applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of th[e] hours worked." *Gates*, 987 F.2d at 1397–98.

In support of Plaintiffs' motion for fees, each attorney has submitted time records detailing the work they performed on the case. Mr. Galipo and Mr. Fattahi were primarily responsible for tasks related to the Ninth Circuit appeal and billed 391.8 hours to those tasks. Ms. Corkran, Mr. Mead, and Ms. Calambokidis were primarily responsible for tasks related to the Supreme Court petition and billed 281.3 hours to those tasks. The Court has carefully reviewed these five attorneys' billing records and finds that the billed hours are reasonable.

Defendants argue that no work performed by the ICAP attorneys—Ms. Corkran, Mr. Mead, and Ms. Calambokidis—should be compensated because "[i]t was not necessary to bring on three more lawyers to oppose the petition" for certiorari as Plaintiffs already had enough lawyers. (Opp. at 13.) The Court is unpersuaded. Supreme Court litigation is specialized and complex, and it was not unreasonable for Plaintiffs to bring on a team of specialists to handle the petition. This is especially so given that eleven Ninth Circuit judges dissented from the denial of rehearing en banc on the loss of life damages issue, and that the Supreme Court had previously granted review of the primary question presented by Defendants' petition, but ultimately dismissed it as improvidently granted due to a jurisdictional defect. (*See* Corkran Decl. ¶ 14 [citing *Jefferson v. City of Tarrant*, 522 U.S. 75 (1997)].)

Defendants also argue that some of the ICAP attorneys' time duplicates work performed at the Ninth Circuit level or was excessive. (Opp. at 13–14.) They submit annotations on Ms. Corkran's, Mr. Mead's, and Ms. Calambokidis's time records to this effect. (Dkt. 460-1.) However, the Court has reviewed these attorneys' time records and

finds the billed hours reasonable under the circumstances of this case. This was an extremely complex appeal presenting numerous issues, some of which had never been decided before. Thorough research was required both before the Ninth Circuit and the Supreme Court. *See Moreno*, 534 F.3d at 1112 ("When a case goes on for many years, a lot of legal work product will grow stale; a competent lawyer won't rely entirely on last year's, or even last month's, research: Cases are decided; statutes are enacted; regulations are promulgated and amended. A lawyer also needs to get up to speed with the research previously performed. All this is duplication, of course, but it's *necessary* duplication; it is inherent in the process of litigating over time."). It was not unreasonable to spend substantial time researching, drafting, and revising the several briefs involved, or to have multiple people involved in that process. *Cf. id.* ("By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker.").

The Court will make one deduction to the fees Plaintiffs request, however. Plaintiffs seek fees for work performed by Garo Mardirossian and Lawrence Marks. (*See* Mot. at 22 [Lodestar Calculation Table].) However, a review of both attorneys' billing records reveals that nearly all of Mr. Mardirossian's 19.2 hours billed and Mr. Marks' 44.4 hours billed was for "receipt and review" of the various documents on appeal. (*See* Dkt. 459-7, Ex. 1; Dkt. 459-8, Ex. 1.) Neither Plaintiffs' brief nor Mr. Mardirossian or Mr. Marks' declarations explains why their receipt and review of these documents was necessary or even helpful to Plaintiffs' success on appeal. Accordingly, the Court will not award fees for their work.

Finally, Plaintiffs' counsel request compensation for their work related to their motion for attorneys' fees. Time spent establishing an entitlement to fees under 42 U.S.C. § 1988 is compensable. *See Clark v. City of L.A.*, 803 F.2d 987, 992 (9th Cir. 1986). Plaintiffs' counsel included time spent preparing the motion in their original time

-11-

Case 8:19-cv-01515-DOC-DFM   Document 387-5   Filed 09/06/25   Page 484 of 484
Page ID #:33799
Case 8:17-cv-00278-CJC-DFM   Document 462   Filed 02/23/23   Page 12 of 12   Page ID
#:10492

records.  In preparing the reply, Mr. Fattahi billed an additional 27.9 hours.  (*See* Dkt. 461-1 [Supplemental Declaration of John Fattahi].)  The Court will include this additional billed time in its lodestar calculation.

### C. Lodestar Calculation

Based on the above analysis, the lodestar amounts for Plaintiffs' counsel are as follows:

| Attorney | Hourly Rate | Hours | Lodestar |
|---|---|---|---|
| Dale Galipo | $1,200 | 99.7 | $119,640 |
| Kelsi Brown Corkran | $1,075 | 144 | $154,800 |
| John Fattahi | $850 | 320[2] | $272,000 |
| Joseph Mead | $850 | 97.2 | $86,620 |
| Shelby Calambokidis | $650 | 40.1 | $26,065 |
| **Total** | | | **$659,125** |

## III.   CONCLUSION

For the foregoing reasons, Plaintiffs' motion for attorneys' fees is **GRANTED IN SUBSTANTIAL PART**.  Based on the Court's lodestar calculation, Plaintiffs are awarded $659,125 in attorneys' fees.

DATED:      February 23, 2023

_____
CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE

**CC: FISCAL**

---

[2]  This number is calculated based on 193.1 (total billed hours) + 27.9 (hours spent preparing reply).

-12-