UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No.  2:23-cv-08682-MWC-DMK                                    Date: May 14, 2026

Title:    Edmond Babakhanlou v. Los Angeles County et al.

Present:  The Honorable Michelle Williams Court, United States District Judge

|  T. Jackson  |  |  Not Reported  |
|---|---|---|
|  Deputy Clerk  |  |  Court Reporter / Recorder  |

Attorneys Present for Plaintiffs:                         Attorneys Present for Defendants:
N/A                                                                              N/A

**Proceedings:  (IN CHAMBERS) ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR FEES AND COSTS; DENYING PLAINTIFF'S MOTION FOR SANCTIONS; DENYING DEFENDANT LOS ANGELES COUNTY'S MOTION FOR JUDGMENT AS A MATTER OF LAW (DKTS. [307], [308], [313])**

Before the Court are three motions.  The first is Defendant Los Angeles County's ("the County") motion for judgment as a matter of law.[1]  *See* Dkt. # 313 ("*Mot. for JMOL*").  Plaintiff Edmond Babakhanlou ("Plaintiff") opposed, *see* Dkt. # 314 ("*JMOL Opp'n*"), and the County replied, *see* Dkt. # 320 ("*JMOL Reply*").  Second is Plaintiff's motion for attorneys' fees and costs.  *See* Dkt. # 307 ("*Mot. for Fees*").  Defendants opposed, *see* Dkt. # 316 ("*Fees Opp'n*"), and Plaintiff replied, *see* Dkt. # 317 ("*Fees Reply*").  The final motion is Plaintiff's motion for sanctions.  *See* Dkt. # 308 ("*Mot. for Sanctions*").  Defendants opposed, *see* Dkt. # 315 ("*Sanctions Opp'n*"), and Plaintiff replied, *see* Dkt. # 318 ("*Sanctions Reply*").  The Court finds these matters appropriate for decision without oral argument.  *See* Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.  After considering the papers, the Court **DENIES** the County's motion for judgment as a matter of law, **GRANTS IN PART** and **DENIES IN PART** Plaintiff's motion for attorneys' fees and costs, and **DENIES** Plaintiff's motion for sanctions.

---

[1] The Court's references to "Defendants" include the following parties: Los Angeles County, Los Angeles County Sheriff's Department, Deputy Frank Rodriguez, "Deputy Hernandez," Dr. Mark Benor, Hector Nery, Fredy Urias, Graciela Placencia, and Janelle Peralta (collectively, "Defendants")

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**


Case No.  2:23-cv-08682-MWC-DMK                                    Date: May 14, 2026

Title:     Edmond Babakhanlou v. Los Angeles County et al.


I.      <u>Los Angeles County's Motion for Judgment as a Matter of Law</u>

        A.      <u>Background</u>

        Plaintiff was formerly incarcerated in Los Angeles County custody, and he alleged that Defendants violated his civil rights during his incarceration. *See generally* Dkt. # 242 ("*FPTC Order*"). From March 2, 2026, to March 19, 2026, the parties participated in a jury trial. *See* Dkts. # 259–305. Plaintiff brought claims for deliberate indifference to serious medical needs under 42 U.S.C. § 1983 and the Eighth and Fourteenth Amendments, for violations of the California Bane Civil Rights Act ("Bane Act"), and for violations of the Americans with Disabilities Act ("ADA") under 42 U.S.C. § 12131 *et seq. See generally FPTC Order*. Plaintiff brought his Eighth Amendment and Bane Act claims against all individual defendants, and he brought his ADA claims against Los Angeles County and the Los Angeles County Sheriff's Department (the "County Defendants"). *See id.* The jury returned a verdict in favor of Defendants on Plaintiff's Eighth Amendment and Bane Act claims. *See* Dkt. # 305 ("*Verdict Form*"). The jury found the County Defendants liable on Plaintiff's ADA claims and awarded him $100,000 in compensatory damages. *See id.*

        The jury instruction on Plaintiff's ADA claims differed from those related to Plaintiff's Eighth Amendment deliberate indifference claim. *See* Dkt. # 295 ("*Jury Instructions*") at 33–36. On the question of disability discrimination under the ADA based on exclusion from participation in services, programs, or activities of a public entity, the Court instructed the jury of the following elements:

> 1. Plaintiff is a "qualified individual with a disability" as that term is later defined in these instructions;
>
> 2. A defendant excluded plaintiff from participation in or denied plaintiff the benefits of the services, programs, or activities of a public entity, or subjected him to discrimination; and
>
> 3. This exclusion or discrimination was by reason of his disability.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**


Case No.  2:23-cv-08682-MWC-DMK                      Date: May 14, 2026

Title:     Edmond Babakhanlou v. Los Angeles County et al.


*See id.* at 33.  On Plaintiff's claim for disability discrimination by failing to provide a reasonable accommodation, the Court instructed the jury of the following elements:

1. Plaintiff Edmond Babakhanlou is a "qualified individual with a disability";

2. Defendant County of Los Angeles or the Los Angeles County Sheriff's Department received adequate notice of the plaintiff's disability and desire for a reasonable accommodation;

3. Defendant County of Los Angeles or the Los Angeles County Sheriff's Department excluded Plaintiff Edmond Babakhanlou from participation in or denied him the benefits of the services, programs, or activities of a public entity;

4. Reasonable modifications in policies, practices, or procedures would have avoided plaintiff's exclusion on the basis of disability;

5. Defendant County of Los Angeles or the Los Angeles County Sheriff's Department failed to make reasonable modifications in policies, practices, or procedures [that] would have avoided exclusion of plaintiff on the basis of disability; and

6. Defendant County of Los Angeles or the Los Angeles County Sheriff's Department did not show that making the modifications would fundamentally alter the nature of the service, program, or activity.

*See id.* at 36.

Defendants objected to these instructions, arguing the instructions should explicitly refer to deliberate indifference with respect to Plaintiff's ADA claims.  *See* Dkt. # 313-1 ("*Burkwitz Decl.*") ¶ 5.  The Court ruled that the jury instructions adequately encapsulated

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**


Case No.  2:23-cv-08682-MWC-DMK                          Date: May 14, 2026

Title:     Edmond Babakhanlou v. Los Angeles County et al.


the controlling law.  Prior to the close of evidence, Defendants moved for judgment as a matter of law under Rule 50(a), but the Court denied the motion.  *See id.*

B.      Legal Standard

The party moving for judgment as a matter of law must show that "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a); *see* Fed. R. Civ. P. 50(b) (allowing for a renewed motion for judgment as a matter of law after trial).  The Court will grant judgment as a matter of law under Federal Rule of Civil Procedure ("Rule") 50(b) "only if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Winarto v. Toshiba Am. Elecs. Components, Inc.*, 274 F.3d 1276, 1283 (9th Cir. 2001).  When evaluating such a motion, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 150 (2000).  The Ninth Circuit has explained that a court "cannot disturb the jury's verdict if it is supported by substantial evidence," *Lambert v. Ackerley*, 180 F.3d 997, 1012 (9th Cir. 1999), which is "evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion" from the same evidence, *Castro v. Cnty. of L.A.*, 833 F.3d 1060, 1066 (9th Cir. 2016) (internal quotation marks omitted).  To bring a renewed motion for judgment as a matter of law following trial under Rule 50(b), a party must have brought a motion for judgment as a matter of law at trial.  *See* Fed. R. Civ. P. 50(b); *see, e.g.*, *Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, 325 F. Supp. 3d 1115, 1118–19 (W.D. Wash. 2018).

C.      Discussion

The ADA applies in the prison context.  *Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1063 (9th Cir. 2010).  Pursuant to the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  A prisoner has a claim under the ADA if he was "improperly excluded from participation in, and denied the benefits of, a prison service, program, or activity on the basis of his physical handicap." *Armstrong v. Wilson*, 124 F.3d 1019, 1023 (9th Cir. 1997).

In determining what constitutes a disability under the ADA, the statute provides that a "disability" is: "(A) a physical or mental impairment that substantially limits one or more

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:23-cv-08682-MWC-DMK                    Date: May 14, 2026

Title:     Edmond Babakhanlou v. Los Angeles County et al.

of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Under the implementing regulations, an impairment is substantially limiting if it "significantly restricts as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1)(ii). Major life activities include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Id.* § 1630.2(i). In addition, the regulations enumerate the following factors that should be considered in determining whether an individual is substantially limited in a major life activity: "(1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." *Id.* § 1630.2(j)(2).

The Supreme Court has ruled that a prisoner may state a Title II claim based on "the alleged deliberate refusal of prison officials to accommodate [a prisoner's] disability-related needs in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs." *U.S. v. Georgia,* 546 U.S. 151, 157 (2006). "Daily living activities, including the use of showers, the exchange of laundry, and the receipt of medication, constitute 'services, programs, or activities' under the ADA." *Clark v. California*, 739 F. Supp. 2d 1168, 1230 (N.D. Cal. 2010) (citing *Phipps v. Sheriff of Cook Cnty.*, 681 F. Supp. 2d 899, 916 (N.D. Ill. 2009)); *see also Bettys v. Washington*, No. 3:23-cv-05838-BJR-TLF, 2024 WL 3927100, at *6 (W.D. Wash. July 31, 2024) (highlighting that "access to showers and toilets constitutes a program or service under the ADA") (internal quotation marks and citation omitted).

The County argues that Plaintiff failed to meet the standards set forth in *Duvall v. County of Kitsap*, 260 F.3d 1124 (9th Cir. 2001). *See generally Mot. for JMOL*. *Duvall* explains that "[t]o recover monetary damages under Title II of the ADA or the Rehabilitation Act, a plaintiff must prove intentional discrimination on the part of the defendant." *Duvall*, 260 F.3d at 1138 (citation omitted). The ADA "deliberate indifference" standard is the appropriate test for intentional discrimination. *See id.* "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that . . . likelihood." *See id.* at 1139 (citing *City of Canton v. Harris*, 489 U.S. 378, 389 (1988)). A plaintiff can show discriminatory

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:23-cv-08682-MWC-DMK                    Date: May 14, 2026

Title:    Edmond Babakhanlou v. Los Angeles County et al.

intent by identifying an accommodation that defendants knew or should have known about, and by showing that the defendants failed to act upon the request for that accommodation. *See Hatten v. Robarge*, No. 2:17-CV-2367-DMC-P, 2018 WL 5879784, at *2 (E.D. Cal. Nov. 7, 2018) (citing *Ferguson v. City of Phoenix*, 156 F.3d 668, 674 (9th Cir. 1998)). "The standard for deliberate indifference under the Eighth Amendment is not equivalent to the deliberate indifference standard under the ADA." *Davis v. Dep't of Corrs.*, No. C20-5433 BHS, 2022 WL 101952, at *18 (W.D. Wash. Jan 11, 2022), *rev'd on other grounds*, No. 22-35109, 2023 WL 3615671 (9th Cir. May 24, 2023).

Though the ADA jury instructions may not have used the words "deliberate indifference," they encapsulated *Duvall*'s requirements.  The Court's Instruction No. 30 asked the jury to determine if Plaintiff was a "qualified individual with a disability," if a "defendant excluded plaintiff from participation in or denied plaintiff the benefits of the services, programs, or activities of a public entity, or subjected him to discrimination," and if "[t]his exclusion or discrimination was by reason of his disability." *See Jury Instructions* at 33.  The Court's Instruction No. 33 required the jury to ascertain whether the County Defendants "received adequate notice of the plaintiff's disability and desire for a reasonable accommodation," and whether the County Defendants "failed to make reasonable modifications in policies, practices, or procedures [that] would have avoided exclusion of plaintiff on the basis of disability." *See id.* at 36.  Both instructions speak to *Duvall*'s deliberate indifference requirements of "knowledge that a harm to a federally protected right is substantially likely," and that there was "a failure to act upon that . . . likelihood." *See Duvall*, 260 F.3d at 1139 (citation omitted); *see also Belcher v. Sullivan*, No. 5:18-cv-01457-JLS (SP), 2022 WL 2821353, at *15 (C.D. Cal. Feb. 28, 2022) ("A trial court does not have to use a specific formulation in its jury instructions if the instructions, as a whole, sufficiently inform the jury of the elements." (citations omitted)).

There was ample evidence from which the jury could have found that Plaintiff was entitled to compensatory damages based on the County Defendants' ADA violations.  Plaintiff and his witnesses provided testimony regarding his inability to shower or use the toilet, along with the County Defendants' knowledge of Plaintiff's disabilities.  Plaintiff testified that he was "in such bad shape that [he] couldn't get off of the bed" and "often peed [himself]." *See* Dkt. # 273 at 149:2–13.  That same testimony noted that it was only with the assistance of Plaintiff's cellmate that he was able to reach the shower. *See id.*  When testifying that he was unable to take showers for two and half months, *see id.* at 194:19–20, Plaintiff recounted that he asked County employees to take showers, *see id.* at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:23-cv-08682-MWC-DMK                          Date: May 14, 2026

Title:      Edmond Babakhanlou v. Los Angeles County et al.

194:21–22.   But in the lone instance when County employees assisted Plaintiff in showering, the employee merely instructed Plaintiff to shower without helping Plaintiff remove his clothes.  *See id.* at 194:23–195:6.   Plaintiff's cellmate, Artur Karapetyan, likewise testified that he witnessed a two-week period when Plaintiff was unable to shower. *See* Dkt. # 266 at 252:2–17.   Plaintiff's sister, Maria Abramyan, detailed conversations where Plaintiff described that he could not walk and that the "showers" Plaintiff received were "a couple of seconds [of] cold water . . . ."  *See* Dkt. # 264 at 143:25–144:4.  Though Ms. Abramyan continued complaining to County employees regarding her brother's treatment, those complaints were unsuccessful.  *See id.* at 144:5–11.

Plaintiff also offered other evidence of his inability to walk.  Mr. Karapetyan testified that Plaintiff was unable to walk and that there was no wheelchair or walker in Plaintiff's dorm.  *See* Dkt. # 266 at 252:2–17.  At another point, Plaintiff lived in general population housing for at least one week without a walker despite having requested one. *See* Dkt. # 273 at 201:20–202:24.  To ambulate, he "would just grab onto the beds and then help [himself] move," *see id.*, though there were no railings on which Plaintiff could rely outside of showers, *see id.* at 202:18–203:9.  Plaintiff eventually received a functioning walker, but an unknown individual damaged it.  *See id.* at 208:8–15.  Plaintiff requested a replacement, but County employees never heeded his request.  *See id.* at 209:3–5.

The Court will not detail every basis on which the jury could have identified deliberate indifference under the ADA.   But these examples illustrate that County employees denied Plaintiff federally protected rights to shower, urinate, and ambulate, constituting ADA violations.  *See Bettys v. Hamil*, No. 3:20-CV-5078-BHS-DWC, 2021 WL 2079796, at *4 (W.D. Wash. Apr. 20, 2021) ("Nor can it be disputed that access to showers and toilets constitutes a 'program or service' under the ADA." (citing *Pierce v. Cnty. of Orange*, 526 F.3d 1190, 1220 (9th Cir. 2008))); *Ellis v. Williams*, No. 2:23-cv-1962 WBS SCR P, 2025 WL 2176593, at *5 (E.D. Cal. July 31, 2025) (noting that it could not "be disputed that toileting access constitutes a 'program or service'" (citation omitted)); 42 U.S.C. § 12102 (defining disability, in part, as a physical impairment that substantially limits one or more major life activities, including the ability to walk); *see also Casey v. Lewis*, 834 F. Supp. 1569, 1581 (D. Ariz. 1993) (explaining in the Eighth Amendment context that "[d]isabled inmates must be provided with physical accommodations necessary because of their disabilities, including adequate toilet and shower facilities. Further, mobility impaired inmates must be provided with wheelchairs and other mobility aids.").  Regarding the County Defendants' deliberate indifference, Plaintiff and others

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:23-cv-08682-MWC-DMK                          Date: May 14, 2026

Title:     Edmond Babakhanlou v. Los Angeles County et al.

alerted County employees to Plaintiff's disabilities and the harms to his federally protected rights.  Still, County employees failed to act to prevent those harms, satisfying *Duvall*'s rule for compensatory damages.  *See Duvall*, 260 F.3d at 1139 (noting that "[d]eliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that the likelihood." (citation omitted)).  Based on the complaints County employees disregarded—which does not begin to account for those employees' potential preexisting knowledge of Plaintiff's disabilities—there was sufficient evidence for a jury to find "an element of deliberateness."  *See id.* (citations omitted).

The County misunderstands controlling authority.  They argue that because Plaintiff does not identify a specific County employee who acted with deliberate indifference, he cannot receive compensatory damages under the ADA.  *See Mot. for JMOL* at 22–24.  But *Duvall* refers to a "public entity's duty," and nowhere does it contemplate that this entity can avoid liability by requiring proof of deliberate indifference by one individual.  *See Duvall*, 260 F.3d at 1138–39.  The County's reading functionally collapses the inquiries under the Eighth Amendment and the ADA, but—as the County acknowledges—those claims are "analytically distinct."  *See Mot. for JMOL* at 23.  Thus, the County's contortion of the case law is unsuccessful.

Because there was "evidence adequate to support the jury's conclusion," *Castro*, 833 F.3d 1066 (internal quotation marks omitted), the Court must deny the County's motion for judgment as a matter of law.

II.     Plaintiff's Motion for Attorneys' Fees and Costs

        A.     Failure to Meet and Confer

Local Rule 7-3 provides that prior to filing any non-exempt motion, counsel "shall first contact opposing counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution.  The conference shall take place at least seven (7) days prior to the filing of the motion."  C.D. Cal. L.R. 7-3.  Local Rule 7-4 notes that "[t]he Court may decline to consider a motion unless it meets the requirements of L.R. 7-3 through 7-8."  C.D. Cal. L.R. 7-4.  Defendants identify that Plaintiff failed to meet and confer before filing his motion for fees.  *See Fees Opp'n* at 9.  They aver that "there are excessive hours that probably could have been worked out in the meet and confer

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:23-cv-08682-MWC-DMK                    Date: May 14, 2026

Title:     Edmond Babakhanlou v. Los Angeles County et al.

process," and that Plaintiff's counsel has failed to meet and confer several times throughout this litigation.  *See id.*

Plaintiff's counsel does not contend that the parties met and conferred prior to Plaintiff filing his motion for fees.  *See generally Reply ISO Fees.*  Accordingly, Plaintiff failed to comply with the Local Rules.  And "[Plaintiff] presents no evidence that meet and confer efforts would have been futile . . . ."  *Owaidah v. Mazzei*, No. EDCV 18-246-KK, 2020 WL 2405277, at *1 (C.D. Cal. Apr. 9, 2020) (citation omitted) (finding that the moving party's failure to comply with Local Rule 7-3 warranted striking the fees for the time spent preparing the motion for attorneys' fees).  Plaintiff's failure to meet-and-confer deprived Defendants of the opportunity narrow or resolve the issues, and that failure is grounds for the Court to strike the motion.  *See* C.D. Cal. L.R. 7-4.  Rather than strike the motion, however, the Court exercises its discretion to strike the hours Plaintiff's counsel spent preparing the motion for fees as a sanction for failing to meet and confer pursuant to the Local Rules.  Accordingly, the Court excludes Plaintiff's billing entries from March 22, 2026, through April 6, 2026, totaling 22.9 hours.  *See* Dkt. # 307-2 ("*Mkrtchyan Billing Records*") at 20–21.

B.      Request for Attorneys' Fees[2]

i.      *Background*

Plaintiff asks the Court to award various fees and expenses following the jury's March 19, 2026, verdict in favor of Plaintiff on his ADA claim.  For his attorney, Narine Mkrtchyan, he seeks compensation for 1,528.90 hours at a rate of $800 per hour, resulting in a lodestar of $1,223,120.  *See Mot. for Fees* at 14.  For paralegal work on his case, Plaintiff seeks fees for 475 hours at a rate of $75 per hour, resulting in a lodestar of $35,625.  *See id.*  Plaintiff also seeks compensation for various costs that he incurred to bring his case.  *See generally id.*  He identifies litigation costs totaling $60,118.24.  *See id.* at 30–31.

---

[2] Plaintiff's motion was premature since the Court has not yet entered judgment.  *See Petrella v. Metro-Goldwyn-Mayer, Inc.*, No. CV 09-72-GW(MANX), 2010 WL 11578743, at *1 n.2 (C.D. Cal. Apr. 26, 2010) (under Federal Rule of Civil Procedure 54, because"[j]udgment ha[d] not yet been entered, the motion for attorneys' fees [was] premature.").  Still, because the Court can exercise discretion to rule on a fee motion prior to the entry of judgment, it does so here.  *See, e.g.*, *Tapia v. NaphCare Inc.*, No. C22-1141-KKE, 2025 WL 3294972, at *3 (W.D. Wash. Nov. 26, 2025) (identifying that a court "has discretion to defer ruling on attorney's fees").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:23-cv-08682-MWC-DMK                                    Date: May 14, 2026

Title:   Edmond Babakhanlou v. Los Angeles County et al.

### ii.    Legal Standard

Courts generally apply the "American Rule," where "each party in a lawsuit ordinarily shall bear its own attorney's fees unless there is express statutory authorization to the contrary." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). Under 42 U.S.C. § 12205, a plaintiff who prevails on claims brought under the ADA may recover reasonable attorneys' fees and costs as determined by the court. *See Shawn Bedwell v. John Hampton*, No. 22cv138-LL-BGS, 2023 WL 3103806, at *4 (S.D. Cal. Apr. 26, 2023); 42 U.S.C. § 12205. Federal courts utilize the lodestar method for determining reasonable attorneys' fees. *See Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). The lodestar method multiples the reasonable number of hours expended on the litigation by a reasonable hourly rate. *See Sorenson v. Mink*, 239 F.3d 1140, 1145 (9th Cir. 2001). The plaintiff bears the burden of showing that both the number of hours and the hourly fee requested are reasonable. *See Hensley*, 461 U.S. at 434.

### iii.    Discussion

### a.    Attorneys' Fees

### 1.    Hours Reasonably Expended

A court must review attorneys' time records to determine whether the hours are adequately documented in a manner that can be billed directly to clients. *See id.* at 433–34. A court must assess whether the hours claimed are vague, block-billed, excessive, or duplicative, or whether the hours in their entirety must be reduced because of limited success in the action. *Cotton v. City of Eureka*, 889 F. Supp. 2d 1154, 1176 (N.D. Cal. 2012). Moreover, "[i]t is well-settled that the court may reduce an attorney's hours for time spent performing clerical work." *Barber v. Vance*, No. 3:16-cv-2105-AC, 2019 WL 3539819, at *3 (D. Or. June 10, 2019). "[F]ees incurred in proceedings prior to the preparation of [a] . . . complaint are not recoverable, unless the pre-preparation time was both useful and of a type ordinarily necessary to advance the . . . litigation to the stage it reached." *Hobbes v. Elec. Polymers, Inc.*, No. 20-cv-01393-BAS-BGS, 2021 WL 9649309, at *9 (S.D. Cal. Mar. 26, 2021) (quoting *Bogan v. City of Boston*, 489 F.3d 417, 427 (1st Cir. 2007) (internal quotation marks omitted)).

Beyond Plaintiff's failure to meet and confer prior to filing his fee motion, the Court must further reduce the number of hours Ms. Mkrtchyan requests. First, the billing records

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:23-cv-08682-MWC-DMK                          Date: May 14, 2026

Title:      Edmond Babakhanlou v. Los Angeles County et al.

include several entries for work prior to the preparation of a complaint and not "of a type ordinarily necessary to advance" the litigation to the stage it reached.  *See id.*; *Mkrtchyan Billing Records* at 1.  Those hours include sending letters to Los Angeles County more than a year before filing the complaint, filing a petition to recall Plaintiff's sentence, and attending a court hearing on a writ of mandate.  *See Mkrtchyan Billing Records* at 1; *see also id.* (listing entries for "[m]otion hearing for recall sentence," "[p]etition for writ of mandate with exhibits filed," and "opposition to demurrer filed").  Plaintiff seems to have retained Ms. Mkrtchyan as part of a separate case, only to later decide to sue in this case.  There is a four-month gap in Ms. Mkrtchyan's billing between June and October 2023, and none of the entries from June or earlier reference preparation of Plaintiff's complaint or related work.  *See id.*  To be sure, the litigation later touched on some of the events that Ms. Mkrtchyan's billing records reference, but that alone is insufficient for a fee award related to that work.  This work was not necessary for Plaintiff to bring his case, requiring the Court to exclude 26 hours from June 2023 and earlier.  *See id.*

Second, Plaintiff did not prevail on most of his claims.  *See Padgett v. Loventhal*, 706 F.3d 1205, 1209 (9th Cir. 2013) ("Fees for work which relates *only* to unsuccessful claims should not be awarded." (emphasis in original) (citation omitted)).  Plaintiff brought three categories of claims at trial: for deliberate indifference to serious medical needs based on 42 U.S.C. § 1983 and the Eighth and Fourteenth Amendments, for violations of the Bane Act, and for violations of the ADA.  *See FPTC Order*.  The first two categories attempted to hold seven defendants liable: Deputy Frank Rodriguez, "Deputy Hernandez," Dr. Mark Benor, Hector Nery, Fredy Urias, Graciela Placencia, and Janelle Peralta.  *See Verdict Form*.  Plaintiff did not prevail on his constitutional or Bane Act claims against any of the defendants.  *See id.*  Though he prevailed on his ADA claim, that success held only Los Angeles County and the Los Angeles County Sheriff's Department liable.  *See id.*  The Court also dismissed several claims before trial began, including claims for municipal liability, negligence, and negligent employment, supervision, and retention.  *See* Dkt. # 163.  And Plaintiff unsuccessfully brought some of his claims against several defendants that the Court dismissed months before trial.  *See, e.g.*, Dkt. # 146; *see also Hubbard v. Rite Aid Corp.*, No. 02CV2497 WQH (BLM), 2006 WL 8455220, at *8 (S.D. Cal. Sept. 18, 2006) ("The Court will not award fees for dismissed parties.").

Still, some of the work on other claims later helped Plaintiff prevail on his ADA claims.  *See Cabrales v. Cnty. of L.A.*, 835 F.2d 1050, 1053 (9th Cir. 1991) (noting that "even if a specific claim fails, the time spent on that claim may be compensable, in full or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:23-cv-08682-MWC-DMK                                    Date: May 14, 2026

Title:      Edmond Babakhanlou v. Los Angeles County et al.

in part, if it contributes to the success of other claims"); *Finkelstein v. Bergna*, 804 F. Supp. 1235, 1249 (N.D. Cal. 1992) ("The Court has made it very clear, however, that there are circumstances in which a plaintiff may be awarded fees for time reasonably spent on some claims or lines of case development on which plaintiff ultimately did not prevail."). But Ms. Mkrtchyan's records offer no detail as to which entries apply to which work, forcing the Court to cut Ms. Mkrtchyan's hours broadly. *See Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 905 (9th Cir. 1995) (stating that "a district court does not abuse its discretion when it resorts to a mathematical formula, even a crude one, to reduce a fee award to account for limited success"); *see e.g.*, *Burnett v. Duna USA Inc.*, No. 2:22-cv-03288-MWC-MBK, 2025 WL 2685618, at *4 (C.D. Cal. Aug. 26, 2025) (identifying that "the lack of specificity in Plaintiff's billing means that the Court can only guess as to the portion of time spent pre-trial on successful claims").

Plaintiff's successful claims should account for only fifty percent of his attorney's hours. By some measures, Plaintiff prevailed on only one-third of his claims at trial. By others, Plaintiff prevailed against only two out of nine defendants at trial. And another count shows that Plaintiff was successful against only two out of eighteen defendants against whom he brought claims throughout the lawsuit. Had Plaintiff wished to avoid such a crude reduction, Ms. Mkrtchyan's records could have detailed the exact nature of her work so that the Court could evaluate the relationship between that work and Plaintiff's ADA claims. With that detail lacking, however, the Court must follow others who have reduced attorneys' hours based on their cases' shortcomings. *See, e.g.*, *Greater L.A. Council on Deafness v. Cmty. Television of S. Cal.*, 813 F.2d 217, 222–23 (9th Cir. 1987) (reducing fee award to forty percent of the total lodestar amount to account for limited success); *Dodson v. Dollar Tree Stores, Inc.*, No. 2:04-cv-1068-MCE-CMK, 2006 WL 8458732, at *5 (E.D. Cal. Dec. 14, 2006) (reducing fee award by forty-three percent to account for plaintiff's limited success). Still, this reduction does not assume that claims are hermetically sealed, and overlapping factual or legal elements limit the proportion by which the Court must reduce Ms. Mkrtchyan's hours.

But there are other issues with Ms. Mkrtchyan's billing statements. Perhaps the most significant is the dominance of block billing, or the "the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *See Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945 (9th Cir. 2007) (internal quotation marks and citation omitted). "Block billing is disfavored and entitles a district court to reduce hours that are billed in

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:23-cv-08682-MWC-DMK                                Date: May 14, 2026

Title:      Edmond Babakhanlou v. Los Angeles County et al.

such a format." *Biomed Realty, L.P. v. 700 Dexter, LLC*, No. C15-0930-JCC, 2016 WL 11618821, at *1 (W.D. Wash. Dec. 13, 2016) (citation omitted). Ms. Mkrtchyan's records are rife with block billing. Over 125 of the entries in Ms. Mkrtchyan's records are block-billed entries for five hours or more, a strong indication that the records include overbilling. *See Mkrtchyan Billing Records*. And out of the twenty-one pages of billing entries, there is only one entry for less than one hour of work, *see id. Cf. United States v. Allergan, Inc.*, No. SACV 18-203 JVS (KESx), 2023 WL 4754637, at *5 (C.D. Cal. July 24, 2023) ("Courts in the Ninth Circuit generally reduce entries exceeding one hour which lists several unrelated tasks."); *USAA Cas. Ins. Co. v. Nuvo Residential LLC*, No. CV-22-01512-PHX-SPL, 2025 WL 2411033, at *5 (D. Ariz. Aug. 20, 2025) (identifying that because "the majority of the block-billed entries seek to recover for various unrelated tasks and log several hours of work billed in a single entry consisting of unrelated tasks," the court must reduce the requested hours because it could not "discern whether the time spent performing the tasks was reasonable"). Accordingly, the Court must reduce Ms. Mkrtchyan's remaining hours by an additional twenty-five percent.

Another aspect warranting reduction is the vagueness in Ms. Mkrtchyan's descriptions. Examples abound. *See Mkrtchyan Billing Records* at 3 (including entry for 6.2 hour which includes partial work description of "court order notes"); *id.* at 4 (providing that Plaintiff's counsel spent part of 6.2 hours on "[r]eview of discovery"); *id.* at 6 (stating that five hours went to "[r]eview of discovery; preparing deposition notes and reports"); *id.* at 15–16 (noting that part of 9.3 hours went to "follow-up with witnesses"); *id.* at 18 (describing portion of 6.5 hours prior to trial as going to "[r]eview of trial notes"). Where entries are vague, a court must reduce the fee award. *See, e.g.*, *Malem Med., Ltd. v. Theos Med. Sys., Inc.*, No. 13-cv-05236-EMC, 2017 WL 5153300, at *3 (N.D. Cal. Nov. 7, 2017) (reducing fee award for entries like "review documents" and "[p]hone call with client"); *Ctr. for Food Safety v. Vilsack*, No. C-08-00484 JSW, 2011 WL 6259891, at *8 (N.D. Cal. Oct. 13, 2011) ("Work entries are inadequately vague when the district court is unable to discern how the time spent is attributable to the case at hand."); *see also id.* (identifying that courts often reduce awards for work described using vague entries like "telephone calls" and "review of documents"). For Ms. Mkrtchyan's vague entries, the Court will reduce her remaining hours by an additional ten percent.

Lastly, Ms. Mkrtchyan's billing records include many entries for clerical work. *See, e.g.*, *Mkrtchyan Billing Records* at 5 (listing 7.5 hours for "[p]reparing and filing motion to compel; mandatory chambers copies"); *id.* at 5 (stating that a portion of 6.5 hours went

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**


Case No.  2:23-cv-08682-MWC-DMK                    Date: May 14, 2026

Title:      Edmond Babakhanlou v. Los Angeles County et al.


to "filed and sent court copies" of *ex parte* application); *id.* at 15 (noting that a portion of nine hours was used to "review and organize exhibits"); *id.* at 17 (describing entry of 6.2 hours as "[f]iled motion for PO and order to compel/exclude; follow-up with defense counsel re trial subpoenas; review and compile depo clips"); *id.* at 19 (listing three-hour entry as "[f]iled updated objections to d exhibits; response to emails; preparing trial notebook with trial notes; follow-up with non-party witness lawyer"). "'[T]he court should disallow not only hours spent on tasks that would normally not be billed to a paying client, but also those hours expended by counsel on tasks that are easily delegable to non-professional assistance.'" *Lema v. Comfort Inn Merced*, No. 1:10-cv-01131-SMS, 2014 WL 1577042, at *6 (E.D. Cal. Apr. 17, 2014) (quoting *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 553 (7th Cir. 1999)).  Where an attorney attempts to recover for clerical work, a court may reduce an attorney's hours.  *See, e.g.*, *Holdner v. Coba*, No. 3:15-cv-2039-AC, 2016 WL 6662687, at *8 (D. Or. Nov. 9, 2016) ("It is well-settled the court may reduce an attorney's hours for time spent performing clerical work." (citation omitted)).  Though the presence of block billing makes it difficult to parse the time Ms. Mkrtchyan devoted to clerical tasks, the Court will reduce her remaining hours by ten percent.

Accordingly, the Court reduces Ms. Mkrtchyan's requested hours as follows:

| | |
|---|---|
| Hours Requested | 1528.90 hours |
| Reduction of 22.9 Hours for Failure to Meet and Confer | 1506 hours |
| Reduction of 26 Hours for Pre-Litigation Work | 1480 hours |
| 50% Reduction for Lack of Success | 740 hours |
| 25% Reduction for Block Billing | 555 hours |
| 10% Reduction for Vague Entries | 499.5 hours |
| 10% Reduction for Clerical Work | 449.55 hours |
| **Hours Awarded** | **449.55 hours** |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:23-cv-08682-MWC-DMK                               Date: May 14, 2026

Title:     Edmond Babakhanlou v. Los Angeles County et al.

### 2.     *Reasonable Hourly Rate*

Ms. Mkrtchyan seeks a rate of $800 per hour for her work.  *See generally Mot. for Fees.*  To establish the appropriate rate, a court must identify "the prevailing rate in the community for similar work."  *See Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1158 (9th Cir. 2018) (internal quotation marks and citation omitted).  "Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits."  *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008); *Chaudhry v. City of L.A.*, 751 F.3d 1096, 1110 (9th Cir. 2014) (same).  An attorney must show that their rate is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  *See Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).  "'Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases . . . are satisfactory evidence of the prevailing market rate.'"  *Heritage Pac. Fin. v. Monroy*, 215 Cal. App. 4th 972, 1009 (2013) (quoting *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990)); *see also R.S. ex rel. Y.S. v. Torrance Unified Sch. Dist.*, No. CV 16-5209-MWF (SKx), 2017 WL 11635250, at *3 (C.D. Cal. July 10, 2017) ("In an effort to discern reasonable hourly rates, the Court relies on the judgment of its colleagues in similar circumstances.").

In support of the requested rate, Plaintiff cites two different sources of authority.  *See Mot. for Fees* at 27–29.  First, Plaintiff refers to *McKibben v. McMahon*, which offers a breakdown of reasonable rates as of 2019.  *See* No. EDCV 14-2171 JGB (SPx), 2019 WL 1109683, at *14 (C.D. Cal. Feb. 28, 2019).  That order adopted a table listing compensation ranges for Southern California civil rights attorneys based on their experience, noting:

> [A]ttorneys practicing civil rights litigation with 26–49 years of experience bill adjusted lodestar rates of $887–$1230 per hour; attorneys practicing civil rights litigation with 23–33 years of experienced bill adjusted lodestar rates of $738–$1220 per hour; attorneys practicing civil rights litigation with 9–15 years of experience bill adjusted lodestar rates of $603–$855 per hour; and attorneys practicing civil rights litigation with 1–6 years of experience billed adjusted lodestar rates of $336–$671 per hour.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:23-cv-08682-MWC-DMK                    Date: May 14, 2026

Title:    Edmond Babakhanlou v. Los Angeles County et al.

*See id.* (citation omitted).

Plaintiff also refers to the Real Rate Report.  *See Mot. for Fees* at 28–29.  Though the Real Rate Report largely captures attorneys practicing commercial law, the report includes rates for employment and labor lawyers, who sometimes handle civil rights claims.  The report lists the average partner rate as $801, with a median of $695 and first and third quartiles of $525 and $1,020, respectively.  *See* Wolters Kluwer, *2024 Real Rate Report: The Industry's Leading Analysis of Law Firm Rates, Trends, and Practices* at 120.  Plaintiff also includes Ms. Mkrtchyan's declaration describing her twenty years of experience in criminal and civil rights litigation.  *See* Dkt. # 307-1.  And Plaintiff provides declarations from Thomas Beck and Carol Sobel, endorsing a rate for Ms. Mkrtchyan of $800 and $810, respectively.  *See* Dkts. # 307-5, 307-6.

Defendants argue that Ms. Mkrtchyan's requested rate is excessive, arguing that she failed to provide the requisite detail to get to her $800 figure.  *See id.*  They also refer to Ms. Mkrtchyan spending excessive time on various entries, and cite another court in this District reducing Ms. Mkrtchyan's rate from $810 to $525.  *See id.*

Plaintiff has provided the requisite detail for the Court to deem a rate of $800 per hour appropriate.  Ms. Mkrtchyan has been practicing law for twenty years, and she has developed an expertise handling civil rights cases. *See* Dkt. # 307-4.  Ms. Mkrtchyan offers two declarations from other litigators familiar with her work, provides a case from this District justifying her requested rate here, and refers to the Real Rate Report to further buttress that request.  These materials provide a sufficient basis for the Court to deem $800 a reasonable rate.  *See Dang v. Cross*, 422 F.3d 800, 814 (9th Cir. 2005) (outlining materials a lawyer may use to support the requested rate); *see also Medina v. City of Menlo Park*, No. C 08-3946 WDB, 2009 WL 10710479, at *4 (N.D. Cal. Oct. 2, 2009) (noting that Congress enacted fee shifting statutes to allow courts "to set hourly rates for successfully litigating civil rights claims at levels that will neither signal some denigration of the importance of this kind of litigation nor discourage competent lawyers from agreeing to prosecute civil rights cases.").

Defendants' opposition conflates issues related to the number of hours billed with the rate at which a court must compensate those hours.  As detailed above, Ms. Mkrtchyan's billing required the Court to credit less than thirty percent of her requested hours.  *See supra* Section II.B.iii.a.1.  It would be improper to punish Ms. Mkrtchyan twice for the same errors, and the severe cut to her hours is sufficient to account for excessive billing.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:23-cv-08682-MWC-DMK                    Date: May 14, 2026

Title:      Edmond Babakhanlou v. Los Angeles County et al.

*Cf. Moreno v. City of Sacramento*, 534 F.3d 1106, 1115 (9th Cir. 2008) ("The district [court] further erred by double counting the reduction in hourly rate for some tasks; such double counting is impermissible." (citing *Cunningham v. Cnty. of L.A.*, 879 F.2d 481, 489 (9th Cir. 1988))).  Accordingly, a rate of $800 per hour is appropriate.

>          b.      *Paralegal Fees*

Plaintiff also asks the Court to award paralegal fees for the work of Joshua Petrovi, seeking 475 hours of paralegal work at a rate of $75 per hour.  *See generally Mot. for Fees.* "Paralegal fees are properly included in an award of attorneys' fees."  *See Allied Artists Int'l, Inc. v. Rooks*, No. CV 08-08116 GAF (RZx), 2010 WL 11519557, at *2 n.2 (C.D. Cal. Dec. 8, 2010) (citation omitted).  Defendants do not contest Mr. Petrovi's requested rate of $75 per hour, *see generally Fees Opp'n*, and this rate is appropriate, *see, e.g.*, *Nordyke v. Summit Receivables*, No. 2:17-cv-01705-WBS-AC, 2018 WL 2732455, at *7 (E.D. Cal. June 7, 2018).

But Mr. Petrovi's requested hours are excessive.  Plaintiff seeks compensation for work on other cases, failing to exclude other matters before submitting Mr. Petrovi's logs. *See* Dkt. # 307-3 ("*Petrovi Billing Records*").   After reviewing Mr. Petrovi's billing records, the Court identifies 407.42 hours as work for Plaintiff's case.  *See id.*  As with Ms. Mkrtchyan's hours, the Court must reduce Mr. Petrovi's hours to account for Plaintiff's limited success, again applying a fifty percent reduction.  And though Mr. Petrovi's logs do not suffer from the same block-billing concerns that plagued Ms. Mkrtchyan's, the paralegal billing records are similarly vague.  *See, e.g.*, *id.* at 14 (listing 4.6 hours for "Supplemental Rogs"); *id.* at 17 (recording five hours for "Depo video flagging"); *id.* at 21 (listing six hours for "Time cards"); *id.* at 23 (recording 1.4 hours for "Joint stipulation"). As with Ms. Mkrtchyan, the Court applies a ten percent reduction for the vagueness in Mr. Petrovi's entries.[3]  Accordingly, Plaintiff can recover for paralegal work at a rate of $75 per hour for the applicable time as follows:

---

[3] Though Defendants seek to exclude all hours listed in relation to Mr. Petrovi's time attending trial, that request is based only on their perception of his work from across the courtroom, *see Fees Opp'n* at 17, which is an insufficient basis for the Court to grant their request.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**


Case No.  2:23-cv-08682-MWC-DMK                                Date: May 14, 2026

Title:     Edmond Babakhanlou v. Los Angeles County et al.


| Hours Requested | 475 hours |
|---|---|
| Hours Dedicated to *Babakhanlou* Case | 407.42 hours |
| 50% Reduction for Lack of Success | 203.71 hours |
| 10% Reduction for Vague Entries | 183.34 |
| **Hours Awarded** | **183.34 hours** |


    C.    <u>Request for Costs</u>

Plaintiff also asks for $60,118.24 in litigation costs.  Civil rights statutes allow a prevailing party to recover as part of a fee award out-of-pocket expenses that attorneys normally charge to fee-paying clients.  *See Agster v. Maricopa Cnty.*, 486 F. Supp. 2d 1005, 1017 (D. Ariz. 2007) (explaining recovery of expenses under 42 U.S.C. § 1988); *Hensley*, 461 U.S. at 433 n.7 (noting that "[t]he standards set forth [regarding § 1988] are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party'").  Still, a plaintiff may also recover "taxable costs" under Rule 54, *see* Fed. R. Civ. P. 54(d)(1), and a plaintiff may not recover for the same cost twice, *see Taylor-Ewing v. City of L.A.*, No. CV 07-5556-GHK (SSx), 2011 WL 13213579, at *7 (C.D. Cal. Mar. 31, 2011).  Defendants oppose Plaintiff's request for costs by arguing that Plaintiff must file a separate bill of costs.  *See Fees Opp'n* at 7 n.7; *id.* at 8.  But that argument fails to recognize the distinction between special costs recoverable as part of a fee award in civil rights cases and standard taxable costs.  *See Prison Legal News v. Columbia Cnty.*, No. 3:12-cv-00071-SI, 2014 WL 1225100, at *11 (D. Or. Mar. 24, 2014) (noting that the defendants "fail to appreciate the distinction between 'taxable costs' recoverable by a prevailing party pursuant to 28 U.S.C. § 1920 and non-taxable costs that may be awarded as part of a reasonable attorney's fee under an expense-shifting statute, such as 42 U.S.C. § 1988").

Local Rule 54 outlines taxable costs.  *See* C.D. Cal. L.R. 54-3.  Because Plaintiff can recover those costs via a standard application, the Court will preclude Plaintiff from recovering those costs here.  Local Rule 54 references the following costs: clerk's fees; fees for service of process; United States Marshal's Fees; transcripts of court proceedings; deposition transcripts; reporters and other individuals to transcribe a deposition; copying

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**


Case No.  2:23-cv-08682-MWC-DMK                        Date: May 14, 2026

Title:      Edmond Babakhanlou v. Los Angeles County et al.


and reproducing deposition exhibits; statutory witness fees; interpreter's fees; docket fees; fees for court-appointed experts, masters, commissioners, and receivers; certification, exemplification, and reproduction of documents; premiums on undertakings and bonds; visual aids and photographs to be used at trials; and state court costs.  *See id.*  Only Plaintiff's requested costs that Local Rule 54 does not mention are recoverable as part of a fee award.  And for the reasons listed above, the Court will not award costs incurred prior to the commencement of the litigation.  *See supra* Section II.B.ii.a.1.  Nor will the Court award costs with unclear descriptions.  *See All. for the Wild Rockies, Inc. v. Allen*, No. 04-1813-JO, 2010 WL 1008224, at *3 (D. Or. Mar. 15, 2010) ("It is not this court's task to speculate as to the legitimacy of plaintiffs' costs and expenses, and I therefore exercise my discretion to deny any costs."); *see, e.g.*, Dkt. # 307-7 ("*Requested Costs*") at 2 (listing seven entries for "USPS").

Based on these limitations, the Court awards Plaintiff a total of $23,447.91 based on the costs listed below.

| Date | Expense as Described | Cost |
| --- | --- | --- |
| 10/10/2024 | Expert review of medical records | $2,000 |
| 10/24/2024 | Parking for court hearing | $24 |
| 2/28/2025 | Parking for court hearing | $12 |
| 3/13/2025 | Lunch at deposition | $23.85 |
| 3/13/2025 | Parking for deposition | $13 |
| 6/19/2025 | Expert witness fees | $1,500 |
| 7/3/2025 | USPS chamber copies | $34 |
| 8/4/2025 | Expert fees | $7,062.50 |
| 1/6/2026 | Expert fees | $4,187.50 |
| 1/18/2026 | Staples supplies | $88.88 |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:23-cv-08682-MWC-DMK                    Date: May 14, 2026

Title:     Edmond Babakhanlou v. Los Angeles County et al.

| | | |
|---|---|---|
| 1/21/2026 | Witness fees for trial | $360 |
| 2/5/2026 | Expert witness fees for trial | $3,000 |
| 2/6/2026 | Parking for court | $18 |
| 2/7/2026 | Contract attorney fees for pre-trial motions | $865 |
| 2/15/2026 | Parking for DTLA for trial exhibits | $60 |
| 2/15/2026 | Parking at office meetings | $105 |
| 2/15/2026 | Lunch at office meetings with witnesses | $74.39 |
| 2/20/2026 | Parking for court | $18 |
| 3/9/2026 | Expert witness fees trial | $937.50 |
| 3/2/2026 – 3/19/2026 | Parking for trial | $166 |
| 3/2/2026 – 3/19/2026 | Coffee / tea for trial | $60.79 |
| 3/22/2026 | Expert witness fees for trial | $2,837.50 |
| | **TOTAL** | **$23,447.91** |

D.     Award

Thus, the Court awards Plaintiff $396,838.41 in fees and costs based on the following calculation:

---

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**


Case No.   2:23-cv-08682-MWC-DMK                                Date: May 14, 2026

Title:      Edmond Babakhanlou v. Los Angeles County et al.


| Category | Hours Awarded | Applicable Rate | Total |
|----------|---------------|-----------------|-------|
| Ms. Mkrtchyan Attorney Fees | 449.55 hours | $800 per hour | $359,640 |
| Mr. Petrovi Paralegal Fees | 183.34 hours | $75 per hour | $13,750.50 |
| Non-Taxable Costs | | | $23,447.91 |
| **Total Award** | | | **$396,838.41** |


At the time of Defendants' payment, they must also compensate Plaintiff for pre- and post-judgment interest.  *See Alameda Elec. Distribs., Inc. v. Eco Eng'g Inc.*, 808 F. Supp. 3d 1014, 1033 (N.D. Cal. 2025).

III.    Plaintiff's Motion for Sanctions

    A.    Legal Standard

Rule 11 permits a party to bring a motion for sanctions if an attorney presents to the court "a pleading, written motion, or other paper" that is "presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation."  Fed. R. Civ. P. 11(b), (c).  The rule applies to all representations to the court, including papers submitted by signing, filing, or later advocating it.  *See* Fed. R. Civ. P. 11(b).  Sanctions under Rule 11 of the Federal Rules of Civil Procedure are intended to streamline litigation, deter baseless filings, and prevent abusive or dilatory tactics.  *See Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1542 (9th Cir. 1986).  In the Ninth Circuit, "Rule 11 is an extraordinary remedy, one to be exercised with extreme caution."  *Operating Eng'rs Pension Tr. v. A-C Co.*, 859 F.2d 1336, 1345 (9th Cir. 1988).

A second avenue by which a party may obtain sanctions is under 28 U.S.C. § 1927.  Under that provision, any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927.  Section 1927 authorizes sanctions against attorneys "who wrongfully proliferate litigation proceedings once a case has commenced."  *See Pac. Harbor Cap., Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1117–18 (9th Cir. 1999).  The party seeking

---

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:23-cv-08682-MWC-DMK                         Date: May 14, 2026

Title:       Edmond Babakhanlou v. Los Angeles County et al.

sanctions has the burden of showing that sanctions are justified. *See Tom Growney Equip., Inc. v. Shelley Irrigation Dev, Inc.*, 834 F.2d 833, 837 (9th Cir. 1987).

B.       Discussion

Defendants identify that Plaintiff failed to meet and confer or comply with the procedural requirements of Rule 11. Plaintiff does not contend that he complied with the Local Rules, arguing only that "Plaintiff had provided multiple notices in his motions and at oral hearings that he would be filing a motion for sanctions during and before trial." *See Sanctions Reply* at 3. These shortcomings alone are enough for the Court to deny Plaintiff's motion. *See* C.D. Cal. L.R. 7-4; *Masimo Corp. v. Apple Inc.*, No. 8:20-cv-00048-JVS (JDEx), 2020 WL 5215385, at *2 (C.D. Cal. Aug. 4, 2020) ("The Motion is therefore denied for failure to comply with the Local Rules' pre-filing meet and confer requirement." (citation omitted)); *Michael Williams for CSG LLC on behalf of Simon v. Opvhhjv LLC*, No. 2:21-cv-00165-RAJ, 2022 WL 898612, at *3 (W.D. Wash. Mar. 28, 2022) ("Given the Ninth Circuit's strict adherence to the procedural requirements of a Rule 11 motion for sanctions, the Court here must deny Defendants' motion for failure to comply with the safe-harbor provision." (citing *Radcliffe v. Rainbow Constr. Co.*, 254 F.3d 772, 789 (9th Cir. 2001)). Still, because the Court prefers to adjudicate parties' requests substantively, it will do so.

Plaintiff has failed to show that Defendants' conduct warrants sanctions. First, Plaintiff's motion largely rehashes requests that the Court has already denied. Plaintiff recounts several discovery disputes, including Defendants' alleged obstinance in producing records. *See Mot. for Sanctions* at 7–9. But the terms of Rule 11 preclude an award of discovery sanctions. *See* Fed. R. Civ. P. 11(d) ("This rule does not apply to disclosures and discovery requests, responses, objections, and motions under Rules 26 through 37."). Even under 28 U.S.C. § 1927 and the Court's inherent authority to provide sanctions, such an award would be improper, as Plaintiff requested similar sanctions throughout the litigation multiple times—on many of the same grounds listed here—and never prevailed. *See* Dkts. # 70; 137. Plaintiff also previously filed a request for sanctions in association with trial subpoenas, *see* Dkt. # 189, which the Court already denied, *see* Dkt. # 210. The same is true of Plaintiff's request for sanctions in conjunction with the Court's protective order regarding Defendants' surveillance of Plaintiff. *See* Dkt. # 243 (granting in part and denying in part Plaintiff's motion for protective order).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:23-cv-08682-MWC-DMK                         Date: May 14, 2026

Title:      Edmond Babakhanlou v. Los Angeles County et al.

Plaintiff also seeks sanctions for Defendants' conduct at trial.  *See Mot. for Sanctions* at 10–11.  But the objectionable behavior Plaintiff recounts were all the subject of rulings by the Court during trial, and Plaintiff often benefitted from the Court's orders.  The Court was diligent in ensuring that Defendants complied with all orders, and the jury received specific instructions to disregard Defendants' counsel's actions if they violated the Court's rulings.  Plaintiff blames Defendants' purported transgressions for the jury verdict, ignoring various shortcomings in his case that the jury may have identified.  Not only did the Court actively rule on Plaintiff's objections to address issues contemporaneously, but Plaintiff's counsel broadly referenced sanctions when arguing before the Court.  Plaintiff did not persuade the Court to exercise its inherent authority to impose sanctions at the time, and he falls short again now.

Plaintiff's last justification for sanctions relates to Defendants' refusal to engage in pretrial document preparation.  *See Mot. for Sanctions* at 9–10.  Throughout this litigation, the parties refused to work with one another, but that refusal was not one-sided.  The Court had never witnessed such unprofessionalism from attorneys, let alone experienced ones.  They could not work together to complete basic tasks, and any admonishment from the Court to do so descended into finger-pointing better suited to a playground than a courtroom.  Rather than complying with their obligation to act with civility as officers of the Court, the attorneys became poster children for the most cantankerous aspects of their profession.  Because it was not just Defendants' counsel who engaged in that activity, the Court cannot sanction only half of the problem.  Thus, the Court must deny Plaintiff's motion for sanctions.

Defendants request $2,000 in attorneys' fees for the time spent opposing Plaintiff's motion.  *See Sanctions Opp'n* at 17–18.  Though the Court cannot grant Plaintiff's request for sanctions, it was not so baseless as to warrant imposing a $2,000 penalty on Plaintiff for his request.  *See, e.g.*, *Johannes as Tr. of Connie Von Rudeen Living Tr. v. Advanced Props. Plus*, No. 2:05-CV-01088-PMP-RJJ, 2007 WL 10156214, at *7 (D. Nev. Feb. 16, 2007) ("Although the Court will deny Defendants' motion for sanctions, the motion was not baseless, and the Court therefore will deny Burlison's request that the Court sanction Defendants' counsel for bringing the motion for sanctions."); *S.D. Police Officers' Ass'n v. Aguirre*, No. 05-CV-1581-H (POR), 2007 WL 9734435, at *2 (S.D. Cal. Oct. 9, 2007) (similar).  Had the verdict differed, Defendants may have been the ones renewing previously-denied requests and claiming impropriety in the proceedings.  Because

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:23-cv-08682-MWC-DMK                    Date: May 14, 2026

Title:    Edmond Babakhanlou v. Los Angeles County et al.

Plaintiff's motion was not so unjustified as to warrant an award of fees, the Court denies Defendants' request.

IV.    Conclusion

For the foregoing reasons, the Court **DENIES** Los Angeles County's motion for judgment as a matter of law, **GRANTS IN PART** and **DENIES IN PART** Plaintiff's motion for attorneys' fees and costs, and **DENIES** Plaintiff's motion for sanctions. Plaintiff is entitled to $359,640 in attorneys' fees, $13,750.50 in paralegal fees, and $23,447.91 in non-taxable costs, in addition to pre- and post-judgment interest. Plaintiff shall submit a proposed judgment by end of day on May 22, 2026. The May 15, 2026, hearing is **VACATED**.

   **IT IS SO ORDERED.**

                                                                                    :

                                          **Initials of Preparer**    TJ